UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TELECOM BUSINESS SOLUTION, LLC, *et al.*, | : | Civil Action No.: 1:22-cv-01761 |
| Petitioners, | : | **FILED UNDER SEAL** |
| v. | : | Judge Lewis A. Kaplan |
| TERRA TOWERS CORP., *et al.*, | : | |
| Respondents. | : | Magistrate Judge Robert W. Lehrburger |

## AMENDED PETITION TO CONFIRM PARTIAL FINAL AWARD

Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ," and together with Peppertree, "Petitioners") allege as follows:

### NATURE OF THE PROCEEDING AND RELIEF SOUGHT

1.     Petitioners commence this proceeding seeking the confirmation of the Partial Final Award Concerning Sale of the Company (the "Partial Final Award") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 207.  A true and accurate copy of the Partial Final Award is attached as Exhibit 22 to the Declaration of David A. Landman, dated March 3, 2022 (the "Landman Decl." or the "Landman Declaration").[1]

2.     Additionally, Petitioners seek pre- and post-judgment interest on the amounts awarded in the Partial Final Award at the rates set forth therein.

---

[1]     The Landman Declaration in support of this Petition is filed herewith.

**PARTIES**

3.      Petitioner Telecom Business Solution, LLC is a limited liability company organized under the laws of the State of Delaware.

4.      Petitioner LATAM Towers, LLC is a limited liability company organized under the laws of the State of Delaware.

5.      Petitioner AMLQ is a Cayman Island Exempted Company Limited by Shares.

6.      Respondent Terra Towers Corp. ("Terra Towers") is a company incorporated in the British Virgin Islands, with registered number 1375181, whose registered office is at Commerce House, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, British Virgin Islands.

7.      Respondent TBS Management, S.A. ("Terra TBS," and together with Terra Towers, the "Terra Respondents") is a *Sociedad de Responsabilidad Limitada* organized under the laws of Panama.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction to confirm the Partial Final Award under the New York Convention, 9 U.S.C. § 203, and 28 U.S.C. § 1332(a).

9.      The Terra Respondents consented to this Court's jurisdiction over them by agreeing to arbitrate the parties' disputes in New York, New York. Landman. Decl., Ex. 1 (Shareholders Agreement) § 8.15 (providing, in part, that the Terra Respondents agree that "[t]he seat of the arbitration shall be in New York, New York").

10.     Venue is proper in this Court pursuant to 9 U.S.C. § 9, 9 U.S.C. § 204, and 28 U.S.C. § 1391(b)(3).

**FACTUAL BACKGROUND**

**The Formation of the Company and Petitioners' Investments in the Company**

11.     Peppertree Capital Management, Inc. ("PCMI") is an Ohio-based private equity firm with more than $2 billion in assets under management. PCMI is one of the most successful and experienced investors in the communication infrastructure industry in the United States. Landman. Decl., Ex. 4 at ¶ 1. It has participated in more than one hundred (100) communication infrastructure investments since 2004, most of which involve the development or acquisition of wireless communication towers. *Id*.

12.     AMLQ is a Cayman Island Exempted Company Limited By Shares. *Id.*, Ex. 9, Countercl. at ¶ 1. AMLQ is an investor-backed entity that looks to invest in opportunities in the communication infrastructure industry.

13.     Jorge Hernandez ("Hernandez") is a Guatemalan entrepreneur involved in telecommunications, real estate, services, and technology projects. *Id*., Ex. 6, Countercl. at ¶ 22. In 2006, Hernandez formed Respondent Terra Towers as a site acquisition company and shortly thereafter Terra Towers began constructing built-to-suit solutions for telecommunications operators in Central America, Mexico, the Caribbean, and South America. *Id*., Ex. 6, Countercl. at ¶ 23.

14.     In 2008, Continental Towers LATAM Holdings Limited (the "Company") was formed as Terra Towers' site-operating subsidiary to manage the leasing of space on acquired and/or constructed communications sites to telecommunications operators and tenants in other industries. *Id*.

15.     In 2014 and 2015, through a series of transactions, PCMI, through Peppertree, made large cash investments in the Company. In 2015, AMLQ made an initial equity commitment of over $45 million into the Company. *Id*., Ex. 4 at ¶ 3. Collectively, Peppertree and AMLQ invested

3

nearly $125 million in the Company. As a result of their large capital contributions, Petitioners became minority shareholders in the Company, collectively owning 45.55% of the Company. *Id.*, Ex. 1 at §§ 3.01(b), 3.02(a).

16. Because the Company is closely held, Petitioners' share of the Company cannot be sold on a liquid market. Understanding this reality, and fearing that their large capital investments could be tied up in the Company in perpetuity, Petitioners negotiated for numerous bargained-for minority rights, which are set forth in the Company's Shareholders Agreement.

### **The Shareholders Agreement**

17. On October 22, 2015, the Petitioners and the Terra Respondents executed the Shareholders Agreement. *See generally* Landman Decl., Ex. 1.

18. As the Shareholders Agreement reflects, the parties thereto are sophisticated entities who were represented by counsel of their choosing during the negotiation and execution of the Shareholders Agreement. *Id.*, Ex. 1 at § 8.03.

19. The Terra Respondents were represented by both Holland & Knight LLP and Mayora & Mayora, S.C. *Id.* Peppertree was represented by Thompson Hine LLP, and AMLQ was represented by Ropes & Gray LLP. *Id.*

20. Pertinent to this dispute, Section 5.04(b) of the Shareholders Agreement provides that after a five-year lock-up period—which expired on October 22, 2020—Peppertree or the Terra Respondents "may request, upon written notice to the other" shareholders and the Company, "a sale of all or substantially all of the Company's assets or all or substantially all of the Shares in the Company." *Id.*, Ex. 1 at § 5.04(b). If Section 5.04(b)'s sale process is triggered by either Peppertree or the Terra Respondents, the Company must "retain an Investment Bank to facilitate an Approved Sale," and the Company's shareholders must "vote for, consent to and raise no

objections against such Approved Sale and take all necessary and reasonable actions in connection with the consummation of the" sale. *Id*., Ex. 1 at § 5.04(b)(ii).

21. The Shareholders Agreement also contains a specific performance provision, which provides:

> The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that **the parties shall be entitled to specific performance of the terms hereof**, in addition to any other remedy at Law or in equity. Therefore, each party hereto consents to the issuance of an injunction or enforcement of equitable remedies against him at the suit of an aggrieved party without the posting of any bond or other security, to compel specific performance of all of the terms hereof and to prevent any disposition of Shares in contravention of any terms of this Agreement.

*Id*., Ex. 1 at § 8.12 (emphasis added).

22. Section 8.15 of the Shareholders Agreement, entitled: "Arbitration," provides, in pertinent part, that "any Dispute […] will be finally settled by binding arbitration"[2] and that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of the arbitration." *Id*., Ex. 1 at § 8.15. Section 8.15 also provides: "The seat of the arbitration shall be New York, New York." *Id*.

23. Section 8.15 of the Shareholders Agreement further provides that the "arbitration shall be conducted by three arbitrators," and it creates a party-appointed arbitrator system which is used to select the three-arbitrator panel. *Id*.

---

[2] Pursuant to Section 8.14 of the Shareholders Agreement, Section 8.15 (the arbitration provision) broadly applies to "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement." *Id*., Ex. 1 at § 8.14.

**The Terra Respondents Refused to Sell the Company
Pursuant to Section 5.04(b) of the Shareholders Agreement**

24.     On January 19, 2021, after the expiration of the five-year lock-up period, Peppertree, in accordance with the process set forth in Section 5.04(b) of the Shareholders Agreement, initiated a sale of the Company by providing written notice to the Terra Respondents and the Company.  *Id*., Ex. 2 at p. 2.

25.     On January 27, 2021, the Terra Respondents informed Peppertree that they would not consent to a sale of the Company, in breach of the Shareholders Agreement.  *Id*., Ex. 3 at p. 5.

**Peppertree Initiated Arbitration Due to Terra Respondents' Breaches**

26.     Due to the Terra Respondents' repeated breaches of the Shareholders Agreement and other governing agreements, on February 2, 2021, Peppertree was forced to file a Demand for Arbitration and Statement of Claims (the "Statement of Claims")[3] against the Terra Respondents, DT Holdings, Inc., Hernandez, and Alberto Arzu, one of the Company's Directors.[4]  *See generally id.*, Ex. 4.

27.     Pertinent to this action, Peppertree sought "specific performance of all provisions of the Governing Documents requiring [a] sale of the Company, including Section 5.04 of the Shareholders Agreement."  *Id.* Ex. 4 at ¶ 178.  Specifically, Peppertree alleged that it is "entitled to an award of specific performance, requiring [the Terra Respondents] to perform their obligations under the Governing Documents, including but not limited to, hiring an Investment Bank to facilitate an Approved Sale and to vote for, consent to, and raise no objections against such

---

[3]     When the Arbitration was initiated by Peppertree, AMLQ was merely a notice party.  However, as discussed below, the Terra Respondents filed claims against AMLQ on February 19, 2021 when they filed their Answering Statement, Affirmative Defenses, and Counterclaim.  Thus, AMLQ is currently an active litigant in the Arbitration.

[4]     DT Holdings, Inc., Hernandez, and Mr. Arzu are not parties to Petitioners' claim at issue here that was resolved in the Partial Final Award.  The Company and AMLQ were nominal parties identified in the Statement of Claims, and Peppertree asserted no claims against them.

Approved sale, [and to] take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by [Peppertree]." *Id.*, Ex. 4 at ¶ 186. In its Statement of Claims, Peppertree seeks in excess of $190 million from the Terra Respondents. *Id.*, Ex. 4 at p. 1.

28.     In its Statement of Claims, Peppertree appointed Richard F. Ziegler as its party-appointed arbitrator. *Id.*, Ex. 4 at ¶ 161.

29.     On February 19, 2021, the Terra Respondents filed their Statement of Answer and Counterclaim. *Id.* Ex. 6. Therein, the Terra Respondents denied that Peppertree is entitled to specific performance of Section 5.04 of the Shareholders Agreement, *id.*, Ex. 6 at ¶¶ 177-87, and they asserted various counterclaims against Peppertree, as well as claims against AMLQ, *see generally id*. In total, in their Counterclaims against Peppertree/AMLQ, the Terra Respondents seek more than $185 million, *id.*, Ex. 6 at "RELIEF SOUGHT," putting the total amount in controversy in the Arbitration at over $400 million.[5]

30.     Also on February 19, 2021, the Terra Respondents served Peppertree with their Notice of Appointment of Arbitrator, in which they appointed Mélida Hodgson as their party-appointed arbitrator. *Id.*, Ex. 7.

31.     On March 25, 2021, AMLQ filed its Answering Statement, Affirmative and Other Defenses, and Counterclaims. *See generally id*, Ex. 9. AMLQ's Counterclaims sought "an award of specific performance[] requiring [the Terra Respondents] to perform [their] obligations under the Shareholders Agreement, including, but not limited to, hiring an investment bank to facilitate"

---

[5]     The Terra Respondents also seek additional "hundreds of millions of dollars" of alleged damages relating to the lost enterprise value to the Company. *Id.*, Ex. 6, Countercl. at ¶ 5 and "RELIEF SOUGHT".

7

a sale of the Company. *Id*., Ex. 9 at ¶ 62. AMLQ also "join[ed] Peppertree in designating" Arbitrator Ziegler "as its party appointed arbitrator." *Id*., Ex. 9 at ¶ 44.

32. On April 23, 2021, the International Centre for Dispute Resolution (the "ICDR") informed all counsel in the arbitration that "there were no objections filed in response to Arbitrators Hodgson's and Ziegler's disclosure statements dated March 30 and March 25, respectively." *Id*., Ex. 10 at p. 2. As such, the April 23 letter confirmed "the appointment[s] of Arbitrators Hodgson and Ziegler," and informed counsel that Arbitrator Hodgson and Arbitrator Ziegler would work together "to select the third arbitrator who shall serve as Chair of the Tribunal." *Id*.

33. On May 17, 2021, the parties agreed to a rank-and-strike process pursuant to which the party-appointed arbitrators would present the parties with a list of 5 potential chair candidates. *Id*., Ex. 11 at p. 2. The parties then could "strike up to two of the five and rank the remaining candidates." *Id*. On May 19, 2021, the ICDR acknowledged that "the parties [had] agreed to" the rank-and-strike "method suggested by Arbitrators Hodgson and Ziegler," and stated that it would "wait to hear who [will be] selected as the Chair." *Id*., Ex. 12.

34. On June 18, 2021, Arbitrators Hodgson and Ziegler presented the parties with a list of "five candidates" who had "expressed willingness to serve as the chair of the Tribunal" and who did "not appear to have any disqualifying conflicts or disclosures." *Id*., Ex. 13.

35. On June 28, 2021, Arbitrators Hodgson and Ziegler "inform[ed] [the parties] that as a result of the rank and strike process Mr. Marc Goldstein [was] selected as the president of the Tribunal." *Id*., Ex. 14. On July 13, 2021, Peppertree and AMLQ filed amended pleadings in the Arbitration, *id.,* Exs. 16 and 17, and on July 19, 2021, the ICDR informed the parties "that there were no objections filed in response to Arbitrator Goldstein's disclosure statement dated July 2, 2021 or to the supplemental disclosure made on July 9, 2021." *Id*., Ex. 18. Ultimately, in the July

19 letter, the ICDR informed the parties that "Arbitrator Goldstein ha[d] been confirmed" as the Chair of the Tribunal. *Id.*

### The Tribunal Phased the Arbitration to Address Peppertree/AMLQ's Specific Performance Claim for Sale of the Company

36. On August 6, 2021, shortly after the Tribunal was constituted, Petitioners filed a written submission seeking expedited, phased consideration of (i) their request for specific performance of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) Peppertree's request for specific performance of the provisions of the Shareholders Agreement and Development Agreement related to approval of prospective tower proposals. *Id.*, Ex. 20 at p. 15. The Terra Respondents opposed Petitioners' request and advocated adjudicating all of the parties' claims in a single merits hearing that would take place at least nine months later. *Id.*, Ex. 20 at p. 9.

37. On August 11, 2021, the Tribunal granted Petitioners' request. *Id.*, Ex. 21. The Tribunal ultimately ordered, over the Terra Respondents' objection, expedited consideration of "whether [Petitioners] are entitled to specific performance of the provisions of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) whether Peppertree, derivatively and on behalf of the Company, is entitled to specific performance of Section 1.1(c) of the Development Agreement and Sections 4.03(d) and 4.04 of the Shareholders Agreement, which do not permit the Company to develop new tower sites that have been rejected by the Development Committee or the Board of Directors."[6] *Id.*, Ex. 19 at p. 15. The Tribunal also set a schedule calling for a simultaneous exchange of opening and responsive memorials on those issues, followed by a hearing. *Id.*, Ex. 21.

---

[6] Peppertree's claim for specific performance related to tower development and approval was not fully litigated in Phase 1 and was not decided in the Partial Final Award at issue here.

9

38. On September 27, 2021, the parties submitted their Phase 1 opening memorials, which, with respect to Peppertree/AMLQ's proposed sale claim, contained a combined total of more than 66 pages of argument, 64 exhibits, and six witness statements. *Id.* at ¶ 25.

39. On October 28, 2021, the parties submitted responsive memorials, which contained a combined total of more than 40 pages, seven exhibits, and two witness statements related to the proposed sale claim. *Id.* at ¶ 26.

40. On November 15, 2021, the parties provided written responses to twelve questions from the Tribunal related to the proposed sale claim, totaling more than eleven single-spaced additional pages of argument. *Id.* at ¶ 27.

41. On December 1, 2021, the Tribunal conducted an all-day hearing on Phase 1, which produced nearly 300 transcript pages of argument related to the proposed sale claim. *Id.* at ¶ 28.

42. After the December 1 hearing, the Tribunal permitted the parties to participate in post-hearing briefing. *Id.* at ¶ 29.

43. Specifically, on December 9, 2021, the Terra Respondents submitted a nine-page, single-spaced post-hearing brief. *Id.* at ¶ 30.

44. On January 6, 2022, Peppertree/AMLQ submitted a ten-page post-hearing brief. *Id.* at ¶ 31.

45. On January 13, 2022, the Terra Respondents submitted a nine-page post-hearing reply brief. *Id.* at ¶ 32.

46. On February 10, 2022, the parties filed three-page submissions, supported by attorney declarations, addressing their respective attorneys' fees and costs incurred in connection with Peppertree/AMLQ's Phase 1 proposed sale claim. *Id.* at ¶ 33.

47.     On February 18, 2022, the parties filed three-page responses addressing the fees sought by the opposing party.  *Id*. at ¶ 34.

### The Partial Final Award

48.     On February 24, 2022—after considering the parties' Phase 1 opening and responsive memorials, which included witness statements and exhibits, two rounds of supplemental submissions, fee applications and responses, and hours of oral argument on the proposed sale claim during an all-day Phase 1 hearing—the Tribunal issued the Partial Final Award ordering a sale of the Company and directing the Terra Respondents to reimburse Petitioners for the attorneys' fees and costs incurred in connection with this claim.  *Id*., Ex. 22. The Partial Final Award is unanimous.  *Id*., Ex. 22.

49.     Specifically, in the Partial Final Award, the Tribunal addresses, without limitation, the following: (i) Petitioners' right to specific performance under the Shareholders Agreement; (ii) Petitioners' right to specific performance under the AAA Commercial Rules; (iii) the Terra Respondents' contention that Petitioners are not entitled to specific performance under New York law; (iv) the Terra Respondents' contention that they need discovery in Phase 1; and (v) all of the Terra Respondents' affirmative defenses.  *See generally id*., Ex. 22.

### CLAIMS FOR RELIEF

### Count I – Confirmation of the Partial Final Award Pursuant to the FAA

50.     Petitioners repeat and allege every allegation contained in the preceding paragraphs as if fully restated herein.

51.     This Petition to Confirm is timely because it is brought within the one-year period prescribed by the FAA.  9 U.S.C. § 9.

52.     This Court "*must grant*" the relief sought in this Petition to Confirm, namely, confirmation pursuant to the FAA and the New York Convention, because the Partial Final Award

has not been "vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). In addition, the Partial Final Award will not be subject to vacatur, modification, or correction because it is not infirm.

53. There is more than a barely colorable justification for the outcome reached by the Tribunal in the Partial Final Award.

54. Therefore, the Court should enter an order confirming the Partial Final Award pursuant to 9 U.S.C. § 9.

### Count II - Confirmation of the Partial Final Award Pursuant to the New York Convention

55. Petitioners repeat and allege every allegation set forth in the preceding paragraphs as if fully restated herein.

56. The United States is a contracting party to the New York Convention, subject to the reciprocity reservation set forth in Article I of the New York Convention.

57. The New York Convention has been implemented in the United States by Chapter Two of the FAA. *See* 9 U.S.C. §§ 201, *et seq.*

58. The New York Convention applies to the Partial Final Award because the arbitration provision at issue involves at least one foreign party. *See* 9 U.S.C. § 202.

59. This Petition to Confirm is timely because it is brought within the three-year period prescribed by the New York Convention. 9 U.S.C. § 207.

60. This Court must confirm the Partial Final Award pursuant to the New York Convention. Specifically, the New York Convention provides that this Court "*shall confirm*" the Partial Final Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said convention." *Id*. (emphasis added).

61. None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention apply to the Partial Final Award.

62. There is more than a barely colorable justification for the outcome reached by the Tribunal in the Partial Final Award.

63. Therefore, the Court should enter an order confirming the Partial Final Award pursuant to 9 U.S.C. § 207.

## Count III – Interest on Amounts Due Under the Partial Final Award

64. Petitioners repeat and allege every allegation set forth in the preceding paragraphs as if fully restated herein.

65. The Partial Final Award orders the Terra Respondents to pay Petitioners' fees and disbursements in the total amount of $818,160.30.

66. This Court should award Petitioners pre-judgment interest on the $818,160.30 awarded by the Tribunal from February 24, 2022, the date of the Partial Final Award, to the date of the Court's judgment, at the rates set forth in the Partial Final Award.

67. This Court should also grant post-judgment interest on its judgment confirming the Partial Final Award at the rates set forth therein, running from the date of judgment confirming the Partial Final Award until the judgment is satisfied.

**WHEREFORE**, Petitioners respectfully request an order:

a. Confirming the Partial Final Award pursuant to the FAA, 9 U.S.C. § 9;

b. Confirming the Partial Final Award pursuant to the New York Convention, 9 U.S.C. § 207;

c. Awarding Petitioners pre- and post- judgment interest on the Partial Final Award; and

d. Such other relief as the Court deems just, proper, and equitable.

Dated:  March 3, 2022                                              Respectfully submitted,

By: */s/ David A. Landman*                                         By: */s/ Gregg L. Weiner*
David A. Landman                                                   Gregg L. Weiner
**ULMER & BERNE LLP**                                              Ethan R. Fitzgerald
275 Madison Avenue, Suite 2002                                     **ROPES & GRAY LLP**
New York, New York 10016-1138                                      1211 Avenue of the Americas
Phone: (917) 262-0470                                              New York, New York 10036-8704
Fax:    (917) 262-0480                                             Phone: (212) 596-9000
dlandman@ulmer.com                                                 Fax:    (212) 596-9090
                                                                   gregg.weiner@ropesgray.com
Michael N. Ungar                                                   ethan.fitzgerald@ropesgray.com
(*pro hac vice* forthcoming)
Katherine M. Poldneff                                              Daniel V. Ward
(*pro hac vice* forthcoming)                                       (*pro hac vice* forthcoming)
Gregory C. Djordjevic                                              Katherine M. McDonald
(*pro hac vice* forthcoming)                                       (*pro hac vice* forthcoming)
**ULMER & BERNE LLP**                                              **ROPES & GRAY LLP**
1660 West 2nd Street, Suite 1100                                   Prudential Tower
Cleveland, Ohio 44113-1406                                         800 Boylston Street
Phone: (216) 583-7000                                              Boston, Massachusetts 02199-3600
Fax:    (216) 583-7001                                             Phone: (617) 951-7000
mungar@ulmer.com                                                   Fax:    (617) 951-7050
kpoldneff@ulmer.com                                                daniel.ward@ropesgray.com
gdjordjevic@ulmer.com                                              katherine.mcdonald@ropesgray.com

*Counsel for Petitioners Telecom Business*                         *Counsel for Petitioner AMLQ Holdings*
*Solution, LLC and LATAM Towers, LLC*                              *(Cay), Ltd.*