**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- X

TELECOM BUSINESS SOLUTION, LLC, *et al.*,       :    Civil Action No.: 1:22-cv-01761

           Petitioners,      :    **FILED UNDER SEAL**

    v.      :

           :    Judge Lewis A. Kaplan

TERRA TOWERS CORP., *et al.*,      :

           :    Magistrate Judge Robert W.

           Respondents.      :    Lehrburger

-------------------------------------------------------------- :

           X

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR AMENDED PETITION TO CONFIRM PARTIAL FINAL AWARD

David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:   (917) 262-0480
dlandman@ulmer.com

Michael N. Ungar
(*pro hac vice* forthcoming)
Katherine M. Poldneff
(*pro hac vice* forthcoming)
Gregory C. Djordjevic
(*pro hac vice* forthcoming)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:   (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:   (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(*pro hac vice* forthcoming)
Katherine M. McDonald
(*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:   (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

    A.    The Parties and Peppertree/AMLQ's Investment in the Company ........................ 3

    B.    The Shareholders Agreement ................................................................................. 4

    C.    The Terra Respondents Refused to Comply With Section 5.04(b) of the
        Shareholders Agreement ......................................................................................... 7

    D.    Peppertree Initiated Arbitration Due to Terra Respondents' Breaches of the
        Shareholders Agreement and Other Wrongful Conduct, and the Parties Appointed
        the Tribunal, Which Was Confirmed by the ICDR/AAA ...................................... 7

    E.    The Tribunal Phased the Arbitration to Address Peppertree/AMLQ's Specific
        Performance Claim for the Sale of the Company. ................................................. 11

    F.    In Phase 1, the Parties Submitted Over 100 Pages of Briefing, 8 Witness
        Statements, and Over 70 Exhibits, and Participated in an All-Day Hearing Related
        to Peppertree/AMLQ's Proposed Sale Claim ...................................................... 12

III.  LAW AND ARGUMENT ................................................................................... 14

    A.    The Partial Final Award Must Be Confirmed Pursuant to the Federal Arbitration
        Act ......................................................................................................................... 14

    B.    The Partial Final Award Must Be Confirmed Pursuant to the New York
        Convention ............................................................................................................. 16

IV.   CONCLUSION .................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albtelecom SH.A. v. UNIFI Communications, Inc.*,
   No. 16 Civ. 9001, 2021 WL 1089982 (S.D.N.Y. Mar. 22, 2021) ...........................................18

*Canwest Global Communications v. Mirkaei Tikshoret Ltd.*,
   No. 05 Civ. 4674, 2006 WL 2572097 (S.D.N.Y. Sept. 7, 2006)...........................................15

*Farrell v. Subway Intern., B.V.*,
   No. 11 Civ. 08, 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011) ........................................16, 17

*Fellus v. Sterne, Agee & Leach, Inc.*,
   783 F. Supp. 2d 612 (S.D.N.Y. 2011)...........................................................................14

*First Capital Real Estate Investments, LLC v. SDDCO Brokerage Advisors, LLC*,
   355 F. Supp. 3d 188 (S.D.N.Y. 2019)........................................................................14, 17

*General Electric Co. v. Sampo Corp.*,
   No. 16-CV-2456, 2018 WL 401270 (S.D.N.Y. Jan. 12, 2018) ...........................................15

*KT Corp. v. ABS Holdings, Ltd.*,
   No. 17 Civ. 7859, 2018 WL 3435405 (S.D.N.Y. July 12, 2018) ...........................................3

*Manilow v. Snorkel Productions, Inc.*,
   No. Civ. 1866, 2004 WL 943548 (S.D.N.Y. May 3, 2004).................................................15

*Matthew v. Papua New Guinea*,
   398 Fed.App'x 646 (2d Cir. 2010)....................................................................................3

*Miller v. UBS Financial Services Inc.*,
   No. 18-CV-8415, 2019 WL 1988527 (S.D.N.Y. May 6, 2019) ...........................................15

*New York City District Council of Carpenters v. Nguyen Custom Woodworking,*
   *LLC*, No. 18-cv-3970, 2018 WL 5919520 (S.D.N.Y. Nov. 13, 2018) ...................................14

*Phoenix Bulk Carries (BVI) Ltd. v. Triorient LLC*,
   No. 20-cv-936, 2020 WL 4288031 (S.D.N.Y. July 26, 2020).................................................17

*Professional Sport Service Fi Oy v. Puck Agency LLC*,
   19-CV-5904, 2019 WL 5884558 (S.D.N.Y. Nov. 8, 2019)....................................................16

*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,
   668 F.3d 60 (2d Cir. 2012).....................................................................................16

*STX Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carries Ltd.*,
No. 12 Civ. 5388, 2013 WL 1385017 (S.D.N.Y. Mar. 14, 2012) ........................17

*Superior Energy Services Columbia S.A.S. v. Premium Petroleum Services S. de
R.L.*, 18-CV-7704, 2019 WL 2717692 (S.D.N.Y. June 28, 2019)........................16

**Statutes**

9 U.S.C. § 9................................................................................................................14

9 U.S.C. § 10.......................................................................................................15, 17

9 U.S.C. § 202...........................................................................................................16

9 U.S.C. § 207...........................................................................................................17

**Other Authorities**

Federal Arbitration Act .................................................................................3, 14, 16, 17

## I.    <u>INTRODUCTION</u>

On October 22, 2015, Peppertree Capital Management, Inc. ("PCMI"), through two investment entities, Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and Petitioner AMLQ Holdings (Cay) Ltd. ("AMLQ," and together with Peppertree, "Peppertree/AMLQ"), invested approximately $125 million in cash into Continental Towers LATAM Holdings Limited (the "Company").  As a result of their large capital contributions, Peppertree/AMLQ became minority shareholders in the Company, collectively owning 45.55% of the Company.

Because the Company is closely held, Peppertree/AMLQ's shares of the Company cannot be sold on the open market.  Understanding this reality, and fearing that their large capital investments could be tied up in the Company in perpetuity, Peppertree/AMLQ negotiated for numerous bargained-for minority rights, which are set forth in the Company's Shareholders Agreement.  One issue in the underlying arbitration, which was recently decided by the Tribunal[1] in Peppertree/AMLQ's favor, is Peppertree/AMLQ's bargained-for right to force a sale of the Company after a specified period of time.

Specifically, Section 5.04(b) of the Shareholders Agreement provides, in no uncertain terms, that after a five-year lock-up period—which expired on October 22, 2020—Peppertree or the majority shareholders, Terra Towers Corp. and TBS Management, S.A. (collectively, the "Terra Respondents"), "may request, upon written notice to the other" shareholders and the Company, "a sale of all or substantially all of the Company's assets or all or substantially all of the Shares in the Company."  If Section 5.04(b)'s sale process is triggered by either Peppertree or the Terra Respondents, the Company must "retain an Investment Bank to facilitate an Approved

---

[1]    The "Tribunal" refers to the three-arbitrator Tribunal constituted in the Arbitration (defined below).

Sale," and the Company's shareholders must "vote for, consent to and raise no objections against such Approved Sale and take all necessary and reasonable actions in connection with the consummation of the" sale.

On January 19, 2021, after the expiration of the five-year lock-up period, Peppertree, in accordance with the process set forth in Section 5.04(b) of the Shareholders Agreement, initiated a sale of the Company by providing written notice to the Terra Respondents and the Company. On January 27, 2021, the Terra Respondents informed Peppertree that they would not consent to a sale of the Company, thereby breaching the Shareholders Agreement.  Pursuant to the parties' agreement to arbitrate their disputes, on February 2, 2021, Peppertree commenced an Arbitration[2] against the Terra Respondents and DT Holdings, Inc. ("DTH")[3] seeking, in part, to compel the Terra Respondents to specifically perform, pursuant to Section 5.04(b) of the Shareholders Agreement, by proceeding with a sale of the Company.

On February 24, 2022, after two rounds of briefing which included written submissions, exhibits, written witness statements, additional written submissions in response to the Tribunal's specific questions, an all-day merits hearing, and post-hearing briefing, and briefing on attorneys' fees, the Tribunal—comprised of three highly experienced and qualified arbitrators—issued a unanimous award (the "Partial Final Award"), granting Peppertree/AMLQ's request for specific performance of the Shareholders Agreement relating to the sale of the Company.  The 44-page, well-reasoned and well-supported Partial Final Award ordered that the Company be sold and

---

[2]    The "Arbitration" refers to the proceeding styled, *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et. al.*, ICDR/AAA Case No. 01-21-0000-4309.

[3]    DTH is a respondent in the Arbitration, but it is not a shareholder of the Company.  As such, it is not a party to Peppertree/AMLQ's claim for a sale of the Company pursuant to Section 5.04(b) of the Shareholders Agreement or the Partial Final Award at issue here related to that claim.

awarded Peppertree/AMLQ, as the prevailing parties, more than $800,000 in attorneys' fees and disbursements.

The Partial Final Award must now be confirmed under both the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") because a court must confirm an arbitration award in a summary proceeding absent extraordinary circumstances. *See, e.g., KT Corp. v. ABS Holdings, Ltd.*, No. 17 Civ. 7859, 2018 WL 3435405, at *2 (S.D.N.Y. July 12, 2018) (stating that "confirmation of an arbitration decision" under both the FAA and the New York Convention is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."). Indeed, because the Partial Final Award provides this Court "[w]ith substantially more than just a barely colorable justification for the outcome reached," *Matthew v. Papua New Guinea*, 398 Fed.App'x 646, 649 (2d Cir. 2010), the Court must confirm it pursuant to both the FAA and the New York Convention.

## II.   **BACKGROUND**

### A.   **The Parties and Peppertree/AMLQ's Investment in the Company**

With more than $2 billion in assets under management, PCMI is a private equity firm and one of the most successful and experienced investors in the communication infrastructure industry in the United States.  Landman. Decl., Ex. 4 at ¶ 1.[4]  PCMI has participated in more than one hundred (100) communication infrastructure investments since 2004, most of which involve the development or acquisition of wireless communication towers.  *Id.*  In 2014 and 2015, through a series of transactions, PCMI, through Peppertree, made large cash investments in the Company. As a result, Peppertree became minority shareholders in the Company.  *Id.*, Ex. 4 at ¶ 3.

---

[4]      The Declaration of David A. Landman (the "Landman Decl." or the "Landman Declaration") in support of the Petition is filed herewith.

AMLQ is a Cayman Island Exempted Company Limited By Shares. *Id.*, Ex. 9, Countercl. at ¶ 1. In 2015, AMLQ made an initial equity commitment of over $45 million to acquire a minority equity stake in the Company. *Id.*, Ex. 9, Countercl. at ¶ 3.

Jorge Hernandez "is a Guatemalan entrepreneur involved in telecommunications, real estate, services, and technology projects." *Id.*, Ex. 6, Countercl. at ¶ 22. In 2006, Mr. Hernandez "formed Terra Towers as a site acquisition company and shortly thereafter Terra Towers began constructing built-to-suit solutions for telecommunications operators in Central America, Mexico, Caribbean and South America." *Id.*, Ex. 6, Countercl. at ¶ 23. In 2008, "the Company was formed as Terra Tower's site-operating subsidiary to manage the leasing of space on acquired and/or constructed communications sites to telecommunications operators and tenants in other industries." *Id.* In 2012, DTH "was formed to support the Company's site leasing business." *Id.*, Ex. 6, Countercl. at ¶ 25.

Ultimately, PCMI brought necessary capital and its vast experience in the telecom infrastructure industry to the Company, and the Terra Respondents provided a local presence and construction know-how. *Id.*, Ex. 4 at ¶ 3.

## B. The Shareholders Agreement

On October 22, 2015, Peppertree/AMLQ and the Terra Respondents executed a series of documents related to their investments in the Company, including the Shareholders Agreement. *See generally id.*, Ex. 1. During the negotiation and execution of the Shareholders Agreement, Peppertree/AMLQ and the Terra Respondents were represented by sophisticated legal counsel of their choosing. *Id.*, Ex. 1 at § 8.03. Peppertree was represented by Thompson Hine LLP, AMLQ was represented by Ropes & Gray LLP, and the Terra Respondents were represented by both Holland & Knight LLP and Mayora & Mayora, S.C. *Id.* Pursuant to the Shareholders Agreement, Peppertree/AMLQ contributed, collectively, nearly $125 million of new capital to the Company,

which made them minority shareholders in the Company—owning "45.55% of all of the outstanding Shares in the Company." *Id.*, Ex. 1 at §§ 3.01(b), 3.02(a).

The Shareholders Agreement was drafted to protect Peppertree/AMLQ—as minority shareholders—from potential majority-shareholder oppression.  For example, the Shareholders Agreement establishes a four-member Board of Directors, which consists of two Directors appointed by the Terra Respondents, and two Directors appointed by Peppertree.  *Id*., Ex. 1 at § 4.02(f).  The Shareholders Agreement also makes clear that "the Board shall have the authority to manage the Company," *id.*, Ex. 1 at § 4.04(a), and that the Company's Board will act by "an affirmative vote of a majority of the Directors […] at a duly called meeting at which a quorum is present" or, "in lieu of a meeting, by the unanimous written consent of all Directors." *Id*., Ex. 1 at § 4.03(d).

Because the Company is closely held, and because a market does not exist such that one of the shareholders (especially a minority shareholder) can simply sell its shares to exit the Company, the Shareholders Agreement created a "safety valve" to ensure that the shareholders are not locked into their investment—against their will—into perpetuity.  Specifically, Section 5.04(b) of the Shareholders Agreement provides that upon "the expiration of the Lock-Up Period"—which is defined as a "period of five (5) years starting on the Effective Date [October 22, 2015] and ending on the fifth anniversary of the Effective Date [October 22, 2020]"—either Peppertree or the Terra Respondents "may request, upon written notice to the other" shareholders and the Company, "a sale of all or substantially all of the Company's assets or all or substantially all of the Shares in the Company." *Id*., Ex. 1 at § 5.04(b).  If such a request is made by either Peppertree or the Terra Respondents, "the Company *shall*, within thirty (30) calendar days of receipt of a Proposed Sale Notice, retain an Investment Bank to facilitate an Approved Sale." *Id*. at § 5.04(b)(ii) (emphasis

added).  In addition, "each Shareholder ***shall*** vote for, consent to and raise no objections against such Approved Sale," and the shareholders must "take all necessary and reasonable actions in connection with the consummation of the Approved Sale."  *Id.* (emphasis added).

Section 8.12 of the Shareholders Agreement—entitled: "Specific Performance"— provides, in pertinent part: "[t]he parties hereto agree that irreparable damage would occur in the event any provision of [the Shareholders Agreement] was not performed in accordance with the terms hereof and that the parties ***shall be entitled to specific performance of***" the terms of the Shareholders Agreement, "in addition to any other remedy at Law or in equity."  *Id.*, Ex. 1 at § 8.12 (emphasis added).

The Shareholders Agreement contains an arbitration provision, which provides that "any Dispute […] will be finally settled by binding arbitration," and that the arbitration "shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of the arbitration."  *Id.*, Ex. 1 at § 8.15.  The arbitration provision provides that "[t]he seat of the arbitration shall be New York, New York."  *Id.*  The arbitration provision also creates a party-appointed arbitrator system, stating: "[t]he party initiating arbitration […] shall appoint its arbitrator in its request for arbitration," and "[t]he other party […] shall appoint its arbitrator within thirty (30) calendar days of receipt of the Request and shall notify the Claimant of such appointment in writing," and that "the two arbitrators appointed by the parties shall appoint a third arbitrator."  *Id.*  Section 8.15 of the Shareholders Agreement further states that the "arbitration award shall be in writing and shall be final and binding on the parties," and that the award "may include an award of costs, including reasonable attorney's fees and disbursements."  *Id.*

**C.     The Terra Respondents Refused to Comply With Section 5.04(b) of the Shareholders Agreement**

On January 19, 2021, after the five-year lock-up period had expired, and in accordance with Section 5.04(b) of the Shareholders Agreement, Peppertree requested, in writing, "a sale of all or substantially all of the Company's assets or all or substantially all of the shares in the Company." *Id.*, Ex. 2 at p. 2.  On January 27, 2021, the Terra Respondents responded to the Proposed Sale Notice by stating, in part, that "[t]he directors appointed by Terra will not likely be inclined to approve an Investment Bank proposed by Peppertree." *Id.*, Ex. 3 at p. 5.  The Terra Respondents continued: "With a deadlocked Board, the Company will be unable to appoint an Investment Bank to facilitate an Approved Sale." *Id.*  Thus, despite their contractual agreement to "vote for, consent to and raise no objection against [Peppertree's proposed sale]," and their further agreement to "take all necessary and reasonable actions in connection with the consummation of [Peppertree's proposed sale]," the Terra Respondents refused to proceed with the proposed sale, thereby materially breaching the Shareholders Agreement. *Id.*, Ex. 1 at § 5.04(b).

**D.     Peppertree Initiated Arbitration Due to Terra Respondents' Breaches of the Shareholders Agreement and Other Wrongful Conduct, and the Parties Appointed the Tribunal, Which Was Confirmed by the ICDR/AAA**

Due to the Terra Respondents' repeated breaches of the Shareholders Agreement and other governing agreements, on February 2, 2021, Peppertree was forced to file a Demand for Arbitration and Statement of Claims (the "Statement of Claims")[5] against the Terra Respondents

---

[5]     In the Statement of Claims, Peppertree named the Company as a nominal defendant in connection with various derivative claims it alleged that are not at issue here.  Additionally, when the Arbitration was initiated by Peppertree, AMLQ was merely a notice party.  However, as discussed below, the Terra Respondents filed claims against AMLQ on February 19, 2021 when they filed their Answering Statement, Affirmative Defenses, and Counterclaim, and AMLQ subsequently filed counterclaims against the Terra Respondents.  Thus, AMLQ is currently an active participant in the Arbitration.

and DTH.[6]  *See generally id.*, Ex. 4.   Pertinent to this action, Peppertree sought "specific performance of all provisions of the Governing Documents requiring [a] sale of the Company, including Section 5.04 of the Shareholders Agreement."  *Id.*, Ex. 4 at ¶ 178.   Specifically, Peppertree alleged that it is "entitled to an award of specific performance, requiring [the Terra Respondents] to perform their obligations under the Governing Documents, including but not limited to, hiring an Investment Bank to facilitate an Approved Sale and to vote for, consent to, and raise no objections against such Approved sale, [and to] take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by [Peppertree]."  *Id.*, Ex. 4 at ¶ 186.  In its Statement of Claims, Peppertree has sought in excess of $190 million from the Terra Respondents and DTH.  *Id.*, Ex. 1 at p. 1.

In its Statement of Claims, Peppertree designated Richard F. Ziegler as its party-appointed arbitrator.  *Id.*, Ex. 4 at ¶ 161.  Arbitrator Ziegler graduated from Yale University in 1971, and Harvard Law School in 1975.  *Id.*, Ex. 5 at p. 4.  Arbitrator Ziegler has been a partner at Cleary, Gottlieb, Steen & Hamilton LLP; Senior Vice President, Legal Affairs, & General Counsel at the 3M Company; Co-Chair of Jenner & Block LLP's International Arbitration Practice (from 2008-2019); Co-Chair of Jenner & Block LLP's Complex Commercial Litigation Practice (2007-2008); and Managing Partner of Jenner & Block LLP's New York office (2008-2015).  *Id.*, Ex. 5 at pp. 3-4.  Arbitrator Ziegler is ranked in Chambers Global (Band 1) and Chambers USA (Band 2) for international arbitrators based in the United States.  *Id.*, Ex. 5 at p. 1.

On February 19, 2021, the Terra Respondents filed their Statement of Answer and Counterclaim.  *Id.*, Ex. 6.  Therein, the Terra Respondents denied that Peppertree is entitled to

---

[6]      Peppertree brought claims against individual Respondents Jorge Hernandez and Alberto Arzu as well. Messrs. Hernandez and Arzu are not parties to Peppertree/AMLQ's proposed sale claim or the Partial Final Award at issue here.

specific performance of Section 5.04 of the Shareholders Agreement.  *Id.*, Ex. 6 at ¶¶ 177-87.  They also asserted various claims against Peppertree and AMLQ.  *See generally id.*, Ex. 6, Countercl. In total, in their Counterclaims against Peppertree/AMLQ, the Terra Respondents seek more than $185 million, *id.*, Ex. 6 at "RELIEF SOUGHT," putting the total amount in controversy in the Arbitration at over $400 million.[7]

Also on February 19, 2021, the Terra Respondents served Peppertree with their Notice of Appointment of Arbitrator, which designated Mélida Hodgson as their party-appointed arbitrator. *Id.*, Ex. 7 at p. 1.  Arbitrator Hodgson, like Arbitrator Ziegler, has a very impressive resume.  *See generally id.*, Ex. 8.  She is a graduate of Vassar College, and New York University's School of Law.  *Id.*, Ex. 8 at p. 2.  Arbitrator Hodgson has been a partner at Foley Hoag LLP, Jenner & Block LLP, where she was the head of the International Arbitration Practice at Jenner & Block LLP's New York office, and Arnold & Porter Kaye Scholer LLP.  *Id.*  Arbitrator Hodgson has been named one of the top 100 lawyers focused on Latin America by Latinvex, and she has previously been named to their "top 50 female" lawyers list.  *Id.*, Ex. 8 at p. 1.

On March 25, 2021, AMLQ filed its Answering Statement, Affirmative and Other Defenses, and Counterclaims, asserting counterclaims against the Terra Respondents and seeking damages of over $55 million.  *See generally id.,* Ex. 9.  In its Counterclaims, AMLQ sought "an award of specific performance[] requiring [the Terra Respondents] to perform [their] obligations under the Shareholders Agreement, including, but not limited to, hiring an investment bank to facilitate" a sale of the Company.  *Id.*, Ex. 9 at ¶ 62.  AMLQ also "join[ed] Peppertree in designating" Arbitrator Ziegler "as its party appointed arbitrator."  *Id.*, Ex. 9 at ¶ 44.

---

[7]     The Terra Respondents also seek additional "hundreds of millions of dollars" of alleged damages relating to the lost enterprise value to the Company.  *Id.*, Ex. 6, Countercl. at ¶ 5 and "RELIEF SOUGHT".

On April 23, 2021, the International Centre for Dispute Resolution (the "ICDR") informed all counsel in the arbitration that "there were no objections filed in response to Arbitrators Hodgson's and Ziegler's disclosure statements dated March 30 and March 25, respectively." *Id*., Ex. 10 at p. 2. The April 23 letter also confirmed "the appointment[s] of Arbitrators Hodgson and Ziegler," and informed counsel that Arbitrator Hodgson and Arbitrator Ziegler would work together "to select the third arbitrator who shall serve as Chair of the Tribunal." *Id*.

In May 2021, the parties agreed to a rank-and-strike process pursuant to which the party-appointed arbitrators would present the parties with a list of 5 potential chair candidates. *Id*., Ex. 11 at p. 2. The parties then could "strike up to two of the five and rank the remaining candidates." *Id*. On May 19, 2021, the ICDR acknowledged that "the parties [had] agreed to" the rank-and-strike "method suggested by Arbitrators Hodgson and Ziegler," and stated that it would "wait to hear who [will be] selected as the Chair." *Id*., Ex. 12 at p. 1.

On June 18, 2021, Arbitrators Hodgson and Ziegler presented the parties with a list of "five candidates" who had "expressed willingness to serve as the chair of the Tribunal" and who did "not appear to have any disqualifying conflicts or disclosures." *Id*., Ex. 13 at p. 1. On June 28, 2021, Arbitrators Hodgson and Ziegler "inform[ed] [the parties] that as a result of the rank and strike process Mr. Marc Goldstein [was] selected as the president of the Tribunal." *Id*., Ex. 14 at p. 1.

On July 13, 2021, Peppertree and AMLQ filed amended pleadings in the Arbitration, *id.,* Exs. 16 and 17, and on July 19, 2021, the ICDR informed the parties "that there were no objections filed in response to Arbitrator Goldstein's disclosure statement dated July 2, 2021 or to the supplemental disclosure made on July 9, 2021." *Id*., Ex. 18 at p. 2. Ultimately, the July 19 letter

from the ICDR informed the parties that "Arbitrator Goldstein ha[d] been confirmed" as the Chair of the Tribunal.  *Id.*

Chair Goldstein, like Arbitrators Hodgson and Ziegler, is well-credentialed, and he is highly respected in the international arbitration arena.  *See generally id.*, Ex. 16.  He graduated from the University of Pennsylvania in 1976, and from the University of Virginia's School of Law in 1980.  *Id.*, Ex. 15 at p. 3.   He has worked at Proskauer Rose LLP, where he was the Leader of the International Arbitration Practice, and Hodgson Russ LLP, where he was likewise the Leader of the International Arbitration Practice.  *Id.*, Ex. 15 at p. 1.  Chair Goldstein has been ranked as a Band 1 arbitrator in Chambers USA; he has been named as a "Who's Who Legal" for International Arbitration; and he has been named in Best Lawyers in America as well as in New York Super Lawyers.  *Id.*, Ex. 15 at p. 5.

E. **The Tribunal Phased the Arbitration to Address Peppertree/AMLQ's Specific Performance Claim for the Sale of the Company.**

On August 6, 2021, shortly after the Tribunal was constituted, Peppertree/AMLQ filed a written submission seeking expedited, phased consideration of (i) their request for specific performance of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) Peppertree's request for specific performance of the provisions of the Shareholders Agreement and the related Development Agreement governing approval of prospective tower proposals.  *Id.*, Ex. 19 at p. 15.  Terra opposed Peppertree/AMLQ's request and advocated adjudicating all of the parties' claims in a single merits hearing that would take place at least nine months later.  *Id.*, Ex.  20 at p. 9.

On August 11, 2021, the Tribunal granted Peppertree/AMLQ's request to phase the arbitration.  *Id.*, Ex 21.  The Tribunal ultimately ordered, over Terra's objection, expedited consideration of "whether Peppertree/AMLQ are entitled to specific performance of the provisions

of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) whether Peppertree, derivatively and on behalf of the Company, is entitled to specific performance of [certain provisions of the Shareholders Agreement and Development Agreement], which do not permit the Company to move forward and develop tower sites that have been rejected by the Development Committee or the Board of Directors."[8]  *Id*., Ex. 19 at p. 15.  The Tribunal also set a schedule ordering simultaneous exchanges of opening and responsive memorials on those issues, followed by a hearing.  *Id*., Ex. 21.

> **F.    In Phase 1, the Parties Submitted Over 100 Pages of Briefing, 8 Witness Statements, and Over 70 Exhibits, and Participated in an All-Day Hearing Related to Peppertree/AMLQ's Proposed Sale Claim**

On September 27, 2021, the parties submitted their Phase 1 opening memorials, which, with respect to Peppertree/AMLQ's proposed sale claim, contained a combined total of more than 66 pages of argument, 64 exhibits, and six witness statements.  *Id*. at ¶ 25.  On October 28, 2021, the parties submitted extensive responsive memorials, which contained more briefing, seven exhibits, and two witness statements related to the proposed sale claim.  *Id*. at ¶ 26.  On November 15, 2021, the parties provided written responses to twelve questions from the Tribunal related to the proposed sale claim, totaling more than eleven single-spaced additional pages of argument.  *Id*. at ¶ 27.

On December 1, 2021, the Tribunal conducted an all-day hearing on Phase 1, which produced nearly 300 transcript pages of argument related to the proposed sale claim.  *Id*. at ¶ 28. After the December 1 hearing, the Tribunal permitted the parties to participate in post-hearing briefing.  *Id*. at ¶ 29.  Specifically, on December 9, 2021, the Terra Respondents submitted a nine-

---

[8]     Peppertree's request for specific performance related to approval of prospective tower proposals has not yet been decided and is not addressed in the Partial Final Award.

page, single-spaced post-hearing brief.  *Id.* at ¶ 30.   On January 6, 2022, Peppertree/AMLQ submitted a ten-page post-hearing brief.  *Id.* at ¶ 31.  On January 13, 2022, the Terra Respondents submitted a nine-page post-hearing reply brief.  *Id.* at ¶ 32.[9]

On February 10, 2022, the parties filed three-page submissions, supported by attorney declarations, addressing their respective attorneys' fees and costs incurred in connection with Peppertree/AMLQ's Phase 1 proposed sale claim.  *Id.* ¶ 33.  On February 18, 2022, the parties filed three-page responses addressing the fees sought by the opposing party.  *Id.* at ¶ 34.

Finally, on February 24, 2022—after considering the parties' Phase 1 opening and responsive memorials, which included witness statements and exhibits, two rounds of supplemental submissions, fee applications and responses, and hours of oral argument on the proposed sale claim during an all-day Phase 1 hearing—the Tribunal issued its Partial Final Award, ordering a sale of the Company and directing Terra to reimburse Peppertree/AMLQ for the attorneys' fees and costs incurred in connection with this claim.  *Id.*, Ex. 22.  Specifically, in the Partial Final Award, the Tribunal carefully analyzed and addressed many issues, including: (i) Peppertree/AMLQ's right to specific performance under the Shareholders Agreement; (ii) Peppertree/AMLQ's right to specific performance under the AAA Commercial Rules; (iii) the Terra Respondents' contention that Peppertree/AMLQ are not entitled to specific performance under New York law; and (iv) the Terra Respondents' claimed affirmative defenses.  *See generally id.*, Ex., 22.  The Partial Final Award is __**unanimous**__.

---

[9]       On January 31, 2022, after the parties had made all substantive Phase 1 submissions related to Petitioners' proposed sale claim, the Terra Respondents filed an objection with ICDR, objecting to the continued service of their own party-appointed arbitrator, Arbitrator Hodgson.  After receiving comments from the parties related to this objection, on February 22, 2022, the ICDR denied the challenge and re-affirmed Arbitrator Hodgson.

### III.   LAW AND ARGUMENT

#### A.   The Partial Final Award Must Be Confirmed Pursuant to the Federal Arbitration Act

The Court must confirm the Partial Final Award pursuant to the FAA.  "'Confirmation of an arbitration award'" pursuant to the FAA "is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"  *New York City District Council of Carpenters v. Nguyen Custom Woodworking LLC*, No. 18-cv-3970, 2018 WL 5919520, at *1 (S.D.N.Y. Nov. 13, 2018) *quoting D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Arbitration awards are "'subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation.'" *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) *quoting Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008).  Indeed, Section 9 of the FAA makes clear that a court "*must* grant" a motion to confirm "unless the award is vacated, modified, or corrected."  9 U.S.C. § 9 (emphasis added).  Therefore, "an arbitration award is entitled to strong deference and should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  *Fellus*, 783 F. Sup. 2d at 618; *see also First Capital Real Estate Investments, LLC v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019) ("Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award.").

The Partial Final Award must be confirmed pursuant to Section 9 of the FAA.  First, this Motion is timely because it was filed "within one year after the award [was] made."  9 U.S.C. § 9. The Partial Final Award was issued on February 24, 2022, and the Petition to Confirm the Partial

Final Award (the "Petition")[10] was filed shortly thereafter, on March 2, 2022, well within the one-year period prescribed by the FAA.

Second, there is "more than the required barely colorable justification for" the Tribunal's Partial Final Award. *General Electric Co. v. Sampo Corp.*, No. 16-CV-2456, 2018 WL 401270, at *3 (S.D.N.Y. Jan. 12, 2018). The Partial Final Award is substantively and legally correct and reflects a straightforward application of the plain language of the parties' Shareholders Agreement—namely, Sections 5.04(b) (governing the sale of the Company) and 8.12 (providing for specific performance).

Finally, "[b]ecause there is no valid basis to vacate, modify, or correct" the Tribunal's Partial Final Award, this Motion ***must*** be "granted."[11]  *Manilow v. Snorkel Productions, Inc.*, No. Civ. 1866, 2004 WL 943548, at *1 (S.D.N.Y. May 3, 2004); *see also Canwest Global Communications v. Mirkaei Tikshoret Ltd.*, No. 05 Civ. 4674, 2006 WL 2572097, at *1 (S.D.N.Y. Sept. 7, 2006) (granting a motion to confirm an arbitration award because "there [was] no valid basis to vacate, modify, or correct the award"). The Final Partial Award was not procured by corruption, fraud, or undue means; there was no evident partiality or corruption on the part of the Tribunal; the Tribunal is not guilty of misconduct due to refusing to let the parties be heard; and the arbitrators did not exceed their powers. *See* 9 U.S.C. § 10. To the contrary, the experienced

---

[10]     As used herein, "Petition" refers to both Petitioners' Petition to Confirm Partial Final Award [Dkt. #1] and the Amended Petition to Confirm Partial Final Award that Petitioners are seeking to file under seal.

[11]     The FAA "permits vacatur of an arbitration award under four ***narrow circumstances***: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Miller v. UBS Financial Services Inc.*, No. 18-CV-8415, 2019 WL 1988527, at *2 (S.D.N.Y. May 6, 2019) (emphasis added); *see also* 9 U.S.C. § 10 (setting forth the narrow grounds for vacatur). None of these narrow circumstances apply to the Partial Final Award.

and impartial Tribunal—which consists of two party-appointed arbitrators and a chair who was appointed through an agreed to rank-and-strike process—provided the parties with multiple and ample opportunities to be heard. Indeed, the parties participated in multiple rounds of merits submissions, which included exhibits and witness statements, two rounds of submissions concerning attorneys' fees, an all-day hearing, and post-hearing briefing. In addition, the Tribunal was well within its authority under the AAA Commercial Rules, which govern the Arbitration, to issue the Partial Final Award. There is, therefore, no basis to deny confirmation.

**B.      The Partial Final Award Must Be Confirmed Pursuant to the New York Convention.**

The Court must confirm the Partial Final Award pursuant to the New York Convention. Chapter 2 of the FAA, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature. *Professional Sport Service Fi Oy v. Puck Agency LLC*, 19-CV-5904, 2019 WL 5884558, at *3 (S.D.N.Y. Nov. 8, 2019); *see also* 9 U.S.C. § 202. The New York Convention governs arbitration agreements "involving at least one foreign party." *Farrell v. Subway Intern., B.V.*, No. 11 Civ. 08, 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011); *see also Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) ("The New York Convention applies in this case because Scandinavian is a foreign corporation."). Under the New York Convention, like the FAA, "an arbitrator's decision is given 'substantial deference,' and an arbitrator must simply provide a '[barely] colorable justification' for the outcome reached." *Superior Energy Services Columbia S.A.S. v. Premium Petroleum Services S. de R.L.*, 18-CV-7704, 2019 WL 2717692, at *2 (S.D.N.Y. June 28, 2019) *quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).

16

The Partial Final Award must be confirmed pursuant to the New York Convention as well. *First*, this Motion was filed "[w]ithin three years after an arbitral award falling under the [New York] Convention [was] made." 9 U.S.C. § 207. The Final Partial Award was issued on February 24, 2022, and the Petition was filed shortly thereafter on March __, 2022, well within the three-year period proscribed by the New York Convention.

*Second*, the New York Convention governs because Respondent Terra Towers Corp. is incorporated in the British Virgin Islands, and Respondent TBS Management, S.A. is organized under the laws of Panama. *See Farrell v. Subway Intern., B.V.*, No. 11 Civ. 08, 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011) (stating that the New York Convention governs arbitration agreements "involving at least one foreign party.").

*Third*, none "of the [seven] grounds for refusal or deferral of recognition of enforcement of the award specified in" the New York Convention apply, 9 U.S.C. § 207,[12] and, as noted above, there is no valid basis to vacate, modify, or correct the Tribunal's Partial Final Award pursuant to the FAA. 9 U.S.C. §10.[13] The parties to the Shareholders Agreement did not lack capacity, nor is the Shareholders Agreement invalid. To the contrary, when executing the Shareholders Agreement, the parties were all represented by sophisticated counsel of their choosing. Additionally, the Tribunal was properly appointed and proper notice of appointment was provided.

---

[12] The defenses enumerated in the New York Convention are: (i) "the parties to the arbitration agreement lacked capacity or the agreement was not legally valid;" (ii) "proper notice of the appointment of the arbitrator or of the arbitration proceeding was not given;" (iii) the award "deals with a matter not submitted to arbitration or beyond the scope of the submission;" (iv) "the arbitral authority or procedure was not agreed to by the parties;" and (v) "the award was not yet binding or had been set aside or suspended in the enforcement forum." *STX Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carries Ltd.*, No. 12 Civ. 5388, 2013 WL 1385017, at *2 n.3 (S.D.N.Y. Mar. 14, 2012) *citing Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukr.*, 311 F.3d 488, 494 (2d Cir. 2002). None of these defenses apply to the Partial Final Award.

[13] The Second Circuit "has held that Chapter 1 of the FAA and all of its grounds, express and implied, for modification and vacatur apply under the [New York] Convention where, as in this case, the award was rendered in the United States or pursuant to United States law." *Phoenix Bulk Carries (BVI) Ltd. v. Triorient LLC*, No. 20-cv-936, 2020 WL 4288031, at *3 (S.D.N.Y. July 26, 2020). As noted above, the FAA only permits vacatur in *narrow circumstances*, none of which apply to the Partial Final Award.

Further, the dispute resolved in the Partial Final Award falls squarely within the arbitration clause of the Shareholders Agreement, and the Arbitration is being conducted in New York in accordance with the AAA Commercial Rules, to which the parties expressly agreed in the Shareholders Agreement.  Lastly, the Partial Final Award is final and binding, requiring that Peppertree and the Terra Respondents undertake certain actions within the next thirty (30) days to sell the Company.

*Fourth*, there is more than a "barely colorable justification" for the Tribunal's Partial Final Award.  *See, e.g.*, *Albtelecom SH.A.*, 2021 WL 1089982 at *4 (granting a motion to confirm pursuant to the New York Convention because there was "substantially more" than "a barely colorable justification for the outcome reached.").  As is evident, the Partial Final Award is justified, supported by the AAA Commercial Rules, and entirely consistent with the clear and unambiguous language of the parties' Shareholders Agreement.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Petition as soon as possible, and confirm the Tribunal's Partial Final Award under both the FAA and the New York Convention.

Dated:  March 3, 2022

Respectfully submitted,

By: _/s/ David A. Landman_____
David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ulmer.com

Michael N. Ungar
(*pro hac vice* forthcoming)
Katherine M. Poldneff
(*pro hac vice* forthcoming)
Gregory C. Djordjevic
(*pro hac vice* forthcoming)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

By: _/s/ Gregg L. Weiner_____
Gregg L. Weiner
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(*pro hac vice* forthcoming)
Katherine M. McDonald
(*pro hac vice forthcoming*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*