# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------  X

TELECOM BUSINESS SOLUTION, LLC, *et al.*,  :  Civil Action No.: 1:22-cv-01761
                                       :

           Petitioners,  :  Judge Lewis A. Kaplan

      v.  :

                                         :  Magistrate Judge Robert W.

TERRA TOWERS CORP., *et al.*,  :  Lehrburger

                                       :

          Respondents.  :

-------------------------------------------------------------------  X

## TELECOM BUSINESS SOLUTION, LLC'S, LATAM TOWERS, LLC'S, AND AMLQ HOLDINGS (CAY) LTD.'S MEMORANDUM IN FURTHER SUPPORT OF THEIR AMENDED PETITION TO CONFIRM THE PARTIAL FINAL AWARD AND IN OPPOSITION TO TERRA TOWERS CORP.'S, TBS MANAGEMENT, S.A.'S, AND DT HOLDINGS, INC.'S CROSS-PETITION TO VACATE

David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ulmer.com

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Gregory C. Djordjevic
(admitted *pro hac vice*)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
Katherine M. McDonald
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

125087215_14

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………………1

FACTUAL BACKGROUND……………………………………………………………..…4

I.     THE PARTIES' RELATIONSHIP AND COMPANY'S GOVERNING
       DOCUMENTS………………………………………………………………………4

II.    THE TRIBUNAL CONDUCTED A FULL AND FAIR, EXPEDITED PHASE 1
       PROCESS TO ADDRESS PETITIONERS' NARROW SPECIFIC PERFORMANCE
       CLAIM FOR THE SALE OF THE COMPANY, RESULTING IN THE PARTIAL FINAL
       AWARD………………………………………………………………………..5

III.   THE TRIBUNAL CONDUCTED A FULL AND FAIR PROCESS BEFORE ORDERING
       INTERIM RELIEF DUE TO RESPONDENTS' MISCONDUCT………...8

       A.     The Tribunal Issued the November 12 Order After Respondents Intimidated,
              Harassed, and Improperly Removed Company Management……………….…8

       B.     The Tribunal Issued the March 15 Order After Respondents Blatantly Failed to
              Comply with the Tribunal's November 12 Order……………………….……10

       C.     The February 2 Interim Order Relating to Company Communications Has Been
              Vacated………………………………………………………………………..12

IV.    THE ICDR CONCLUSIVELY REJECTED TERRA'S
       ARBITRATOR BIAS CLAIM………………………………………………………..13

ARGUMENT………………………………………………………………………………15

I.     TERRA CANNOT MEET ITS EXTREMELY HIGH BURDEN IN SEEKING TO
       VACATE THE ARBITRATION AWARD………………………………………..15

II.    THE PARTIAL FINAL AWARD SHOULD BE CONFIRMED………………………16

       A.     The Unanimous Partial Final Award Resulted from a Full
              and Fair Process………………………………………………………………16

              1.     The Tribunal's "Phased" Approach Was Fair and Efficient…………….17

              2.     The Tribunal's Denial of Terra's Discovery Requests Was Fair………...18

       B.     Terra Has Failed to Establish That the Tribunal Manifestly Disregarded the
              Law…................................................................................................19

C.      The Shareholders Agreement Supports the Relief Ordered
        in the Partial Final Award………………………………………………..23

III.    THE TRIBUNAL'S INTERIM ORDERS SHOULD NOT BE VACATED……………24

        A.      The Interim Orders Are, By Their Explicit Terms, Not Final Awards and,
                Therefore, Are Not Subject to Review or Vacatur………………………………24

        B.      The November 12 Order Should Not Be Vacated………………………………26

                1.      Respondents' Request to Vacate the November
                        12 Order is Untimely………………………………………………………26

                2.      Respondents Have Failed to Articulate Any Substantive Basis to Vacate the
                        November 12 Order Because the Tribunal Has Jurisdiction Over Both Terra
                        and DTH…………………………………………………………..…26

        C.      The March 15 Order Should Not Be Vacated……………………………………29

                1.      The Parties Had an Ample and Fair Opportunity to be Heard on the
                        Compliance Issues Addressed by the March 15 Order…………………..29

                2.      Respondents Have Failed to Establish a Substantive Basis to Vacate the
                        March 15 Order Because the Tribunal Has Jurisdiction Over DTH…..…30

                3.      The Tribunal Did Not Violate the FAA by Conducting the February 12
                        Hearing in the Absence of an Attorney for DTH………………………...30

VIII.   THERE IS NO BASIS TO DISQUALIFY ARBITRATOR HODGSON, MUCH LESS
        VACATE THE AWARD BASED ON "EVIDENT PARTIALITY"………………...32

        A.      The ICDR Already Conclusively Disposed of This Issue…………………………32

        B.      Terra Cannot Establish Evident Partiality Warranting Vacatur…………………34

                1.      Terra Has Failed to Demonstrate "Evident Partiality" Based on Arbitrator
                        Hodgson's Affiliation with Arnold & Porter……………………………34

                2.      Arbitrator Hodgson's Nomination as an Arbitrator Candidate in a Purported
                        "Related Arbitration" Does Not Establish
                        "Evident Partiality"………………………………………………………36

        C.      Terra Has Failed to Establish That Arbitrator Hodgson's Disclosures
                Were Inadequate……………………………………………………………………37

CONCLUSION…………………………………………………………………………………39

## TABLE OF AUTHORITIES

*797 Broadway Grp., LLC v. BCI Const., Inc.*,
  57 Misc. 3d 391 (N.Y. Sup. Ct. 2017) ........................................................................35

*Alcatel Space, S.A. v. Loral Space & Communications Ltd.*,
  154 F. Supp. 2d 570 (S.D.N.Y. 2001) ........................................................................22

*Alexander Julian, Inc. v. Mimco, Inc.*,
  29 F. App'x 700 (2d Cir. 2002) ...................................................................................31

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
  754 F.3d 109 (2d Cir. 2014)........................................................................................17

*In re Andros Compania Maritima, S.A.*,
  579 F.2d 691 (2d Cir. 1978)........................................................................................34

*Application of York Hannover Holding A.G. v. Am. Arb. Ass'n*,
  1993 WL 159961 (S.D.N.Y. May 11, 1993) ...............................................................34

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*,
  492 F.3d 132 (2d Cir. 2007)...................................................................................32, 36

*In The Matter of Arbitration Between American Industrial Carriers, Inc. v.*
  *Maywood Maritime Ltd.*,
  1992 WL 84536 (S.D.N.Y. Apr. 10, 1994)..................................................................28

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
  344 F.3d 255 (2d Cir. 2003)........................................................................................15

*Bay Networks Grp., Inc. v. Willemijn Houdstermaatschappij, B.V.*,
  20 F. Supp. 2d 626 (S.D.N.Y. 1998)...........................................................................17

*Briamonte v. Liberty Brokerage, Inc.*,
  2000 WL 351399 (S.D.N.Y. Mar. 31, 2000) ..............................................................24

*Cablevision Sys. Corp. v. Can Muneyyirci*,
  1995 WL 362541 (E.D.N.Y. June 2, 1995) .................................................................28

*CE Int'l Resources Holdings LLC v. S.A. Minerals, Ltd.*,
  2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012) ..........................................................8, 21

*Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*,
  892 F.3d 501 (2d Cir. 2018*)*........................................................................................37

*Cofinco, Inc. v. Bakrie & Bros., N.V.*,
  395 F. Supp. 613 (S.D.N.Y. 1975)..............................................................................19

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,

333 F.3d 383 (2d Cir. 2003)..........................................................................16

*Duferco, S.A. v. Tube City IMS, LLC*,
2011 WL 666365 (S.D.N.Y. Feb. 4, 2011)...........................................17, 18

*Faulkner v. Nat'l Geo. Enters.*,
409 F.3d 26 (2d Cir. 2005)............................................................................32

*Galilea, LLC v. AGCS Marine Ins. Co.*,
427 F. Supp. 3d 518 (S.D.N.Y. 2019)...........................................................34

*Hamerslough v. Hipple*,
2012 WL 5290318 (S.D.N.Y. Oct. 24, 2012) ...............................................16

*Harte v. Ocwen Fin. Corp.*,
2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016) ..............................................27

*Hoatson v. N.Y. Archdiocese*,
280 Fed. App'x 88 (2d Cir. 2008)................................................................32

*Int'l Bus. Machines Corp. v. Comdisco, Inc.*,
1993 WL 155511 (N.D. Ill. May 10, 1993) ..................................................27

*Iran Aircraft Indus. v. Avco Corp.*,
980 F.2d 141 (2d Cir. 1992).........................................................................19

*JLNW, Inc. v. National Retirement Fund*,
2018 WL 4757953 (S.D.N.Y. Sept. 28, 2018)..............................................24

*Kruse v. Sands Bros. & Co., Ltd.*,
226 F. Supp. 2d 484 (S.D.N.Y. 2002)..........................................................39

*KST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*,
2016 WL 5475987 (S.D.N.Y. June 6, 2016) ................................................19

*La Mirada Prod. Co. v. Wassall PLC*,
823 F. Supp. 138 (S.D.N.Y. 1993)...............................................................22

*LTF Constr. Co. v. Cento Sols.*,
2020 WL 7211236 (S.D.N.Y. Dec. 7, 2020) ...............................................16

*Lumms Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*,
256 F. Supp. 2d 594 (S.D. Tex. 2002) .........................................................35

*Maharam v. Patterson*,
369 Fed. App'x 240 (2d Cir. 2009)...............................................................32

*Mandell v. Reeve*,
2011 WL 4585248 (S.D.N.Y. Oct. 4, 2011) ................................................31

*Merck & Co. Inc. v. Pericor Therapeutics, Inc.*,
   2016 WL 4491441 (S.D.N.Y. Aug. 24, 2016) ....................................................36

*Michael v. Mariform Shipping, S.A.*,
   624 F.2d 411 (2d Cir. 1980)............................................................................24

*Nat'l Indemnity Co. v. IRB Brasil Resseguros S.A.*,
   164 F. Supp. 3d 457 (S.D.N.Y. 2016)..............................................................37

*NGC Network Asia, LLC v. PAC Pac. Grp. Int'l, Inc.*,
   2012 WL 377995 (S.D.N.Y. Feb. 3, 2012)........................................................34

*NML Cap., Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)............................................................................28

*Oracle Corp. v. Wilson*,
   276 F. Supp. 3d 22 (S.D.N.Y. 2017)................................................................18

*In re Oxbow Carbon LLC Unitholder Litig.*,
   2018 WL 3655257 (Del. Ch. Aug. 1, 2018) ....................................................22

*Oxford Health Plans LLC v. Sutter*,
   569 U.S. 564 (2013).........................................................................................15

*Palmieri v. Ins. Co. of N. Am.*,
   67 A.D.2d 967 (N.Y. App. Div. 1979) ............................................................35

*PK Time Grp., LLC v. Robert*,
   2013 WL 3833084 (S.D.N.Y. July 23, 2013) ..................................................35

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
   497 F.3d 133 (2d Cir. 2007).............................................................................23

*In re Proto*,
   2000 WL 1593350 (S.D.N.Y. Oct. 24, 2000) ............................................20, 22

*Rai v. Barclays Capital, Inc.*,
   739 F. Supp. 2d 364 (S.D.N.Y. 2010)..................................................15, 34, 36

*Ron Chereskin Studios, Inc. v. Isit U.S.A., Inc.*,
   1995 WL 656969 (S.D.N.Y. Nov. 8, 1995)......................................................34

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
   668 F.3d 60 (2d Cir. 2012)..............................................................................36

*Schmitz v. Zilveti*,
   20 F.3d 1043 (9th Cir. 1994) ..........................................................................35

*Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*,

2020 WL 5237800 (S.D.N.Y. Sept. 2, 2020) ....................................................................15, 32

*Schwartz v. Merrill Lynch Co.*,
   665 F.3d 444 (2d Cir. 2011) .................................................................................................20

*SH Tankers Ltd. v. Koch Shipping Inc.*,
   2012 WL 2357314 (S.D.N.Y. June 19, 2012) .......................................................................25

*Sofia Shipping Co., Ltd. v. Amoco Trans. Co.*,
   628 F. Supp. 116 (S.D.N.Y. 1986).....................................................................................33, 37

*Sperry Int'l Trade, Inc. v. Gov't of Israel*,
   532 F. Supp. 901 (S.D.N.Y. 1982)....................................................................................24, 25

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
   559 U.S. 662 (2010)...............................................................................................................23

*Stone v. Theatrical Inv. Corp.*,
   64 F. Supp. 3d 527 (S.D.N.Y. 2014)......................................................................................27

*Tempo Shain Corp. v. Bertek, Inc.*,
   120 F.3d 16 (2d Cir. 1997).....................................................................................................19

*Transp. Workers Union of Am. v. Veolia Transportation Servs., Inc.*,
   211 F. Supp. 3d 505 (E.D.N.Y. 2016) ...................................................................................18

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009)..............................................................................................29

*Ward v. Ernst & Young U.S. LLP*,
   468 F. Supp. 3d 596 (S.D.N.Y. 2020).....................................................................................25

**Statutes**

9 U.S.C. §10(a) ................................................................................................................................16

9 U.S.C. § 12....................................................................................................................................26

Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay) Ltd. ("AMLQ" and together with Peppertree, "Peppertree/AMLQ" or "Petitioners") hereby submit this Memorandum of Law in further support of their Amended Petition to Confirm Partial Final Award (ECF No. 7) and in opposition to the Cross-Petition to Vacate (ECF No. 27) of Respondents/Cross-Petitioners Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra") and DT Holdings, Inc. ("DTH" and together with Terra, "Respondents").

## PRELIMINARY STATEMENT

This matter involves sophisticated parties represented by sophisticated counsel, who, years ago, negotiated and agreed to be bound by a detailed dispute resolution process through arbitration for any and all disputes involving the company they jointly own, Continental Towers LATAM Holdings Limited (the "Company"). Now, after losing on several issues in the underlying, ongoing arbitration, Respondents seek a do-over. Well-established Second Circuit authority mandates the binding nature of arbitration and the very limited, circumscribed review Federal Courts provide to final arbitration awards. Nonetheless, Respondents ask this Court to vacate both the ***unanimous*** and well-reasoned Partial Final Award and numerous interim orders[1]—the latter of which are not even legitimately subject to review—issued by a tribunal of three highly experienced and well-credentialed New York-based arbitrators (the "Tribunal"). Respondents fail to provide any factual or legal basis to vacate these rulings, let alone to meet the narrow and exacting standard required to vacate an arbitration award set forth in the Federal Arbitration Act ("FAA") and Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").

---

[1] The forty-four page Partial Final Award ordered the contractually required sale of the Company, while the interim orders sought to protect the Company's assets and prohibit Respondents from continuing their pattern of misconduct in breach of the Company's governing documents during the pendency of the arbitration.

Respondents cannot evade the clear agreements they made because they are dissatisfied with the Tribunal's rulings.

The Partial Final Award implemented the straightforward provision of the parties' governing documents requiring a sale of the Company to a third party if either Peppertree or Terra so requested after five years. Peppertree requested a sale pursuant to this provision back in 2020, but Terra resisted, notwithstanding the express requirement to "vote for, consent to[,] raise no objections against . . . and take all necessary and reasonable actions in connection with the consummation of" the sale. Landman Decl. Ex. 1[2] § 5.04(b)(ii). After a fulsome and fundamentally fair process in which both sides made multiple submissions (totaling well over 100 pages, and submitted 8 witness statements and over 70 exhibits) and participated in a full-day hearing, the Tribunal unanimously found Terra had breached this unambiguous sale provision. And based on the specific performance provision of the parties' governing documents (specifying that breaches of the agreements would cause irreparable harm entitling a party to specific performance), as well as New York law and the Tribunal's powers under the American Arbitration Association ("AAA") Commercial Rules, the Tribunal unanimously ordered specific performance of this agreed-upon and unambiguous provision. That was clearly the correct ruling, and one not conceivably subject to vacatur under the narrowly limited review permitted by the FAA. Simply put, there is no basis to retract or further delay the long-overdue mandated sale of the Company.

Concurrently, Respondents' wrongful campaign against Company management has been, and is continuing to be, addressed by the Tribunal, piece by piece, on an interim basis. From December 2021 to the present, the parties to the arbitration have been litigating Respondents' non-

---

[2]  "Landman Ex. __" refers to exhibits to the March 3, 2022 Declaration of David A. Landman ("Landman Decl.") filed with the Amended Petition (ECF No. 9); "Kroup Ex. __" refers to exhibits to the April 1, 2022 Declaration of George W. Kroup filed with the Petition to Vacate (ECF No. 32); and "May 2 Landman Ex. __" refers to exhibits attached to the May 2, 2022 Declaration of David A. Landman ("May 2 Landman Decl.") filed herewith.

compliance with the Tribunal's November 12, 2021 order (restoring the Company's management, consistent with the express contractual requirement that Board approval be obtained to remove Company management) and repeated, improper attempts to remove the Company's management, resulting in the Tribunal's issuance of interim orders that Respondents opposed—but lost.  The interim relief process is not currently subject to review.  The *interim* nature of the relief challenged by Respondents is evident.  Indeed, the February 2, 2022 order challenged by Respondents has already been vacated *sua sponte* because the Tribunal deemed it no longer necessary.

In sum, as set forth herein, Respondents have failed to establish any basis to vacate the Partial Final Award and the interim orders for no less than the following reasons:

(1) The Partial Final Award was the result of a fundamentally fair process in which Terra had ample opportunity to be heard;

(2) In issuing the Partial Final Award, the Tribunal did not "manifestly disregard" applicable New York law, and properly applied the parties' arbitration agreement;

(3) A plain reading of the operative Shareholders Agreement supports the relief ordered in the Partial Final Award;

(4) The Interim Orders are not subject to judicial review because they do not "resolve finally" any issues before the Tribunal;

(5) Respondents have failed to establish a substantive basis to vacate any of the Interim Orders both because they were well within the Tribunal's jurisdiction to issue, and because they were the result of a fundamentally fair process; and

(6) Respondents have failed to establish evident partiality warranting the disqualification of Arbitrator Hodgson, ***their own party-appointed arbitrator***, and the International Centre for Dispute Resolution ("ICDR"), after "careful review" of their objection, conclusively denied it and "re-affirmed" Arbitrator Hodgson in the underlying arbitration.

Accordingly, Peppertree/AMLQ respectfully request that the Court grant their Amended Petition and confirm the Partial Final Award, and deny Respondents' Petition to Vacate in its entirety, and do so as expeditiously as possible to ensure that Respondents' delay tactics are not rewarded.

## FACTUAL BACKGROUND

I.  THE   PARTIES'   RELATIONSHIP   AND   COMPANY'S   GOVERNING
    DOCUMENTS

In 2015, Peppertree and AMLQ collectively invested nearly $125 million in the Company.[3]

Landman Ex. 4 ¶ 3.  Terra owns a majority of the Company's shares and controls its operation;

Peppertree and AMLQ are minority shareholders of the Company.  *Id.* ¶ 38; Landman Ex. 1 §§

3.01(b), 3.02(a).  The parties entered into a set of governing documents, including a Shareholders

Agreement (Landman Ex. 1), a Development Agreement (Kroup Ex. 4), and an Offshore Turnkey

Engineering, Procurement and Management Contract (the "EPC Contract") (May 2 Landman Ex.

1), which provide the following:

- Company actions—including the appointment and removal of Company executives and management—require Board approval.  Landman Ex. 1 §§ 4.04(a), 4.06(a);

- The Company has four Directors—two appointed by Peppertree, and two appointed by Terra.  Landman Ex. 4 at ¶ 41.  The Board may only act by majority vote or unanimous written consent of all Directors.  *Id.* Ex. 1 § 4.03(d);

- The parties agreed that at the end of a five-year lock-up period, either Peppertree or Terra had the right to request the sale of the Company, and the other Board members were required to "vote for, consent to[,] raise no objections against . . . and take all necessary and reasonable actions in connection with the consummation of" the sale.  *Id.* § 5.04(b)(ii).

- The parties "agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof and that ***the parties shall be entitled to specific performance of the terms hereof***."  *Id.* § 8.12 (emphasis added);

- The Shareholders Agreement provides that any dispute "will be finally settled by binding arbitration. . . conducted in accordance with the Commercial Rules of the American Arbitration Association."  *Id.* § 8.15; and

- Both the Development Agreement and EPC Contract contain broad arbitration provisions

---

[3]     A full recitation of the factual background relating to the parties' relationship, governing documents, initiation of the underlying arbitration (the "Arbitration") before the ICDR of the AAA, and Peppertree/AMLQ's specific performance claim for the sale of the Company is set forth in both the Amended Petition to Confirm and Memorandum in Support (ECF No. 8).  To avoid undue duplication, Peppertree/AMLQ will discuss only the most pertinent background facts here and fully incorporates those previous filings by reference.

requiring binding arbitration pursuant to the AAA Commercial Rules.  Kroup Ex. 4 § 3.4; May 2 Landman Ex. 1 § 7.1.2.

The Development Agreement and EPC Contract govern the Company's relationship with Terra's affiliate, DTH.  *See* Kroup Ex. 4; May 2 Landman Ex. 1.  DTH, a holding company, is, like Terra, owned and controlled by Jorge Hernandez (one of Terra's Board representatives).  May 2 Landman Ex. 38, Ex. 25 ¶ 21; *see also* Kroup Ex. 23 at 206:14-207:7.  DTH operates solely through its wholly owned subsidiaries that have a local presence in the communications infrastructure industry in Latin America and provide services to the Company in connection with cell tower development.[4]  Landman Ex. 4 ¶¶ 2, 12.  Because neither the Company nor DTH have employees, pursuant to the Development Agreement, the Company pays DTH a monthly fee of $480,000 to provide services to the Company, including through employees of DTH's subsidiaries. Kroup Ex. 4 § 1.1(f); *id* Ex. 16 at p. 5 n.20.

Due to Respondents' various breaches of the Shareholders Agreement and other governing documents, and misuse of Company funds, on February 2, 2021, Peppertree was forced to commence the underlying Arbitration.  Landman Ex. 4.  Thereafter, the Tribunal of three highly qualified arbitrators was appointed by the parties and confirmed by the ICDR.  *See* Am. Pet. (ECF No. 7) ¶¶ 28, 31-35; Landman Exs. 5, 7-8, 10-15, 18.

## II.   THE TRIBUNAL CONDUCTED A FULL AND FAIR, EXPEDITED PHASE 1 PROCESS TO ADDRESS PETITIONERS' NARROW SPECIFIC PERFORMANCE CLAIM FOR THE SALE OF THE COMPANY, RESULTING IN THE PARTIAL FINAL AWARD

In the Arbitration, Peppertree sought, among other relief, specific performance of Section

---

[4]      The governing documents expressly contemplate that DTH will operate through its subsidiaries to take actions related to the Company.  *See, e.g.,* Kroup Ex. 4 § 1.1(e) ("In connection with each Approved Site, DTH, *directly or through the DTH Entities in each jurisdiction in the Territory*, shall oversee such approved Site's search, development, and construction.") (emphasis added); *id.* § 1.1(f) ("DTH will provide, or will ensure that the *DTH Entities provide*.") (emphasis added); May 2 Landman Ex. 1 §§ 5.2.3, 5.2.4, 5.2.6, 5.2.7.

5.04(b) of the Shareholders Agreement related to the sale of the Company.  Landman Ex. 4.

AMLQ filed counterclaims seeking the same relief the following month.  *Id.*, Ex. 9.[5]

      In August 2021, shortly after the Tribunal was constituted, Peppertree/AMLQ filed a

written submission seeking expedited, phased consideration of their request for specific

performance.  *Id.*, Ex. 19 at 15.  In two separate submissions, Terra[6] opposed this request.  *Id.*, Ex.

20 at 9.  On August 11, 2021, over Terra's objection, the Tribunal ordered expedited consideration

of Peppertree/AMLQ's claim for specific performance of Section 5.04(b) ("Phase 1").  *Id.*

      Terra then sought leave to serve broad discovery requests that were irrelevant to Phase 1.

Kroup Ex. 10.  Peppertree/AMLQ opposed, contending that the Phase 1 sale claim involved

threshold contractual and legal issues that could be addressed with limited documentation already

in the possession of both sides.  May 2 Landman Ex. 2 at 2.  The Tribunal denied Terra's request,

finding that the proposed discovery was "not directly relevant to the Phase 1 specific performance

issue."  Kroup Ex. 11.

      Phase 1 consisted of the following initial process:

- On September 27, 2021, the parties submitted Phase 1 opening memorials, which, with respect to the sale claim, contained a combined total of more than 66 pages of argument, 64 exhibits, and six witness statements.  Landman Decl., ¶ 25; Kroup Exs. 12, 13.

- On October 28, 2021, the parties submitted extensive responsive memorials, which contained more briefing, seven exhibits, and two witness statements related to the sale claim.  Landman Decl. ¶ 26; May 2 Landman Exs. 32, 33.

- On November 15, 2021, the parties provided written responses to twelve questions from the Tribunal related to the sale claim, totaling more than eleven single-spaced additional pages of argument.  Landman Decl. ¶ 27; May 2 Landman Exs. 34, 35.

---

[5]      Contrary to Terra's assertion, Peppertree/AMLQ's request for damages for Terra's breaches of Section 5.04(b) does not render their request for specific performance an "alternative" form of relief.  *See* Resp. Br. (ECF No. 29) at 8.  Rather, they asserted that, depending on the outcome of any sale, an award of monetary damages may be necessary to *supplement* an award of specific performance and compensate Peppertree/AMLQ for the harm caused by Terra's breaches of contract.  Landman Ex. 4 ¶ 11.

[6]      As a shareholder of the Company, only Terra, and not DTH, was a party to Peppertree/AMLQ's Phase 1 claim for a sale of the Company and to the resulting Partial Final Award.

- On December 1, 2021, the Tribunal conducted an all-day hearing on Phase 1, which produced nearly 300 transcript pages of argument related to the sale claim.  Landman Decl. ¶ 28; Kroup Ex. 26.

On December 9, 2021, Terra urged the Tribunal "to consolidate the pending motion for specific performance with a final hearing on the merits affording the parties an opportunity to engage in discovery," effectively abandoning Phase 1 altogether after the parties had litigated it for over four months  May 2 Landman Ex. 3 at 1.

On January 6, 2022, Peppertree/AMLQ made a ten-page responsive submission, pointing out that any documents and other information necessary to decide this claim were already in the possession of the parties.  May 2 Landman Ex. 4 at 2.  On January 13, 2022, Terra submitted a nine-page response in which it failed to identify *even one* specific discovery topic purportedly relevant or necessary to decide the specific performance claim.  May 2 Landman Ex. 5.

On February 24, 2022—after considering the parties' Phase 1 opening and responsive memorials (including witness statements and exhibits, two rounds of supplemental submissions, and oral argument during an all-day Phase 1 hearing)—the Tribunal issued its Partial Final Award, ordering a sale of the Company.  Landman Ex. 22.  The Tribunal confirmed that "it [was] appropriate to grant specific performance at this stage even though there has been no discovery" into Terra's counterclaims against Peppertree/AMLQ because such claims may be addressed in the second phase.  *Id.* at 32 n.11.

The forty-four-page Partial Final Award was both well-reasoned and ***unanimous***.  *See id.* As relevant here, the Tribunal found that specific performance of the forced sale provision of the Shareholders Agreement was warranted pursuant to ***both*** Section 8.12 of the Shareholders Agreement ***and*** AAA Commercial Rule R-47(a), which provides arbitrators with the authority to order specific performance which "the arbitrator deems just and equitable and within the scope of

the agreement of the parties." *Id.* ¶¶ 19-20.  Additionally, while the Tribunal found that pursuant to *CE Int'l Resources Holdings LLC v. S.A. Minerals, Ltd.*, 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012), it was not bound by the "equitable power of the court" because its authority derived from the parties' contract, it also found that the elements of specific performance under New York law were readily satisfied.  *Id.* ¶¶ 43; *see also id.* ¶¶ 37, 44, 49-55.

**III.   THE TRIBUNAL CONDUCTED A FULL AND FAIR PROCESS BEFORE ORDERING INTERIM RELIEF DUE TO RESPONDENTS' MISCONDUCT**

**A.   The Tribunal Issued the November 12 Order After Respondents Intimidated, Harassed, and Improperly Removed Company Management.**

In October 2021, during the Phase 1 proceedings, the Company advised the parties and the Tribunal that Respondents were engaged in a campaign of intimidation and harassment to improperly remove Jorge Gaitan, the Company's CEO, and Carol Echeverria, the Company's COO (collectively, "Management"), ***without Board approval***, and replace them with individuals who would support Respondents in the Arbitration.[7]  *See* Kroup Exs. 14, 16.

On October 15, 2022, Peppertree/AMLQ submitted an Emergency Motion for Expedited Interim Relief (the "Emergency Motion"), seeking, *inter alia*, that the Tribunal restore Mr. Gaitan and Ms. Echeverria to their management positions in the Company.  Kroup Ex. 16.  The Tribunal conducted an extensive process to resolve the issues in the Emergency Motion, which included over fifty pages of briefing, six witness statements, and many exhibits, as well as multiple proffers of testimony, and an evidentiary hearing of over five hours, resulting in over 230 transcript pages:

- On October 11, 2021, the Company submitted a letter setting forth evidence of Respondents' improper attempts to remove Management from their Company positions via witness intimidation and harassment.  Kroup Ex. 14;

- On October 15, 2021, Peppertree/AMLQ filed their Emergency Motion seeking interim

---

[7]   While Mr. Gaitan and Ms. Echeverria had executive and management roles on behalf of the Company, they were employees of a certain DTH subsidiary.  Resp. Br. at 14; Kroup Ex. 3.

relief.  Kroup Ex. 16;

- At the request of the Tribunal, on October 18, 2021, Respondents (jointly), the Company, and Peppertree/AMLQ made further submissions relating to both factual and legal issues posed by the Emergency Motion.  Kroup Ex. 18; May 2 Landman Exs. 6-7;

- On October 19, 2021, the parties made and objected to proffers of testimony, Kroup Ex. 20 and May 2 Landman Exs.8-10, and the Tribunal ruled on which witnesses it would hear from at the upcoming hearing, Kroup Ex. 21;

- On October 20, 2021, Respondents (jointly), the Company, and Peppertree/AMLQ submitted pre-hearing memoranda, multiple witness statements, and exhibits.  Kroup Ex. 22; May 2 Landman Ex. 11; May 2 Landman Decl. ¶ 16;

- On October 21, 2021, the Tribunal and parties participated in an evidentiary hearing of over five hours, resulting in over 230 transcript pages.  Kroup Ex. 23. [8]

On November 12, 2021, pursuant to AAA Commercial Rule 37, the Tribunal granted Peppertree/AMLQ "***interim relief*** in the form of an injunction requiring that DTH immediately restore Jorge Gaitan and Carol Echeverria to the Company positions they occupied as of March 19, 2021, and that Respondents Terra and TBS take all necessary steps to cause DTH to comply with this Order."  Kroup Ex. 24 (the "November 12 Order") ¶ 12 (emphasis added).  The Tribunal also ordered the Company and Respondents to report on Respondents' compliance with the November 12 Order by November 24, and reserved decision on allocation of costs and fees.  *Id.* ¶¶ 12, 14.  Critically, the Tribunal found that Terra breached Section 4.04(a) of the Shareholders Agreement by unilaterally removing Company management ***without*** the required Board approval, and that this breach caused ***irreparable harm*** to Peppertree/AMLQ's bargained-for minority corporate governance rights.  *Id.* ¶¶ 8, 11; *see also* Landman Ex. 1 § 4.04(a)(vi) (requiring Board approval for "the hiring or firing and compensation of members of the Management Team,

---

[8]     Respondents failed to provide this Court with numerous, relevant documents and submissions, including, but not limited to, many of the Company's and Peppertree/AMLQ's submissions and proffers of testimony. Peppertree/AMLQ are supplementing the record via the May 2, 2022 Landman Declaration, filed herewith.

including the Executive Team"). The Tribunal rejected Respondents' arguments that the Tribunal did not have jurisdiction over DTH or its subsidiaries both because DTH agreed to arbitrate disputes related to the Company pursuant to the Development Agreement, and because the parties' agreements could never be enforced by an arbitral tribunal "unless the tribunal could make rulings that affect DTH's relationship with its employees *insofar as those employees were or became members of the Company Management Team*." *Id*. ¶ 6 (emphasis in original).[9]

### B. The Tribunal Issued the March 15 Order After Respondents Blatantly Failed to Comply with the Tribunal's November 12 Order.

Respondents did not comply with, and, in fact, willfully ignored the November 12 Order. As a result, the Tribunal and the parties engaged in an extensive process in which the parties made multiple submissions and participated in a four-hour hearing:

- On November 23, 2021, the Company detailed Respondents' non-compliance with the November 12 Order, while Respondents purported to confirm compliance. May 2 Landman Exs. 16, 17. On December 3, 2021, the Company again detailed Respondents' non-compliance. May 2 Landman Ex. 18;

- In late November and early December 2021, Respondents made numerous submissions relating to their unfounded allegations against Mr. Gaitan in an attempt to remove him from his role at the Company in contravention of the November 12 Order. *See, e.g.,* May 2 Landman Ex. 19; Kroup Ex. 28;

- On January 11, 2022, the Company again submitted a letter detailing Respondents' failure to comply with the November 12 Order. Kroup Ex. 29;

- On January 26, 2022, Peppertree/AMLQ submitted their Motion to Compel Compliance with the November 12 Order. May 2 Landman Ex. 20;

- On January 27, 2022, the Company informed the Tribunal by letter that Respondents continued their retaliatory attacks on Mr. Gaitan by filing a criminal complaint against him in Guatemala merely for testifying in the Arbitration. May 2 Landman Ex. 21;

---

[9]    Contemporaneous with its campaign of intimidation and harassment, Terra also engaged in a months-long campaign to improperly and unilaterally remove Adam Schachter, independent counsel for the Company in the Arbitration, for honoring his commitment that the Company remain neutral in the Arbitration. *See, e.g.*, May 2 Landman Exs. 12, 13; Kroup Exs. 27, 28. Those efforts culminated in a collateral attack on the Tribunal's numerous orders related to Company counsel by Respondents filing an improper action in an improper forum (Florida state court). *See* May 2 Landman Exs. 14, 15.

- On January 28, 2022, all parties submitted witness statements and exhibits in connection with the Motion to Compel Compliance.  May 2 Landman Decl. ¶ 27;

- On February 7, 2022, all parties submitted responsive witness statements and exhibits, May 2 Landman Decl. ¶ 28, and Respondents' submitted a brief in opposition to the Motion to Compel Compliance, May 2 Landman Ex. 24;

- On February 12, 2022, the Tribunal conducted a four-hour oral argument hearing on the Motion to Compel Compliance.  Kroup Ex. 40; and

- On February 15, 2022, DTH made a post-hearing submission.  May 2 Landman Ex. 22.[10]

Allan Joseph, counsel for DTH, refused to attend the February 12 Hearing.  Resp. Br. at 20; Kroup Ex. 41.  Even though the Tribunal and Peppertree/AMLQ made clear that Respondents' non-compliance issues were exigent, Mr. Joseph offered virtually no availability for nearly a month.  When the Tribunal tried to accommodate his purported conflicts by offering evening and weekend availability, *all* counsel agreed, except Mr. Joseph.   May 2 Landman Ex. 23.[11] Ultimately, balancing numerous factors, including (i) the urgency of the matter, (ii) the availabilities of the many attorneys involved and the Tribunal; (iii) the multiplicity of counsel representing Respondents, the alignment of their interests, and their extensive record of joint submissions (mainly if not uniformly led by Terra's counsel); (iv) the fact that the February 12 Hearing would consist of only oral argument; and (v) the flexibility of the Zoom platform, the Tribunal determined "that good cause for postponement of [the February 12] hearing has not been shown."  *Id*.  Mr. Joseph still chose not to attend.  Nonetheless, Terra and DTH made multiple joint submissions on issues related to the February 12 Hearing (May 2 Landman Ex. 24; May 2

---

[10]    Respondents improperly curated the record before this Court to omit **numerous** highly relevant submissions from their briefing—most notably Peppertree/AMLQ's January 26, 2022 Motion to Compel Compliance, which resulted in the March 15 Order, witness statements and exhibits, and even DTH's own post-hearing submission.

[11]    Correspondence between Mr. Joseph and the Tribunal, which Respondents omitted from their briefing, demonstrates that:  (i) when the Tribunal scheduled the February 12 Hearing, Mr. Joseph never represented to the Tribunal that he had a specific conflict on February 12; and (ii) the Tribunal considered and ruled on Mr. Joseph's objection to the hearing date.  May 2 Landman Ex. 23.

Landman Decl. ¶¶ 27-28), and Terra was represented by 10 separate lawyers at the hearing, including 4 attorneys from Carey Rodriguez Milian, LLP, which represents Terra and DTH in this action.  *See* ECF Nos. 27-30.

On March 15, 2022, the Tribunal issued an ***interim*** order, pursuant to AAA Commercial Rule 37, finding that Respondents had failed to comply with the November 12 Order.  Kroup Ex. 45 (the "March 15 Order").  The Tribunal ordered that "DTH shall cause its subsidiaries in Guatemala, Costa Rica, and Panama . . . to publish forthwith" certain corrective statements "reaffirm[ing] the ongoing roles of [Management] in [their] company as fully authorized executive management of [their] affiliate Continental Latam Holdings Limited [the Company]," and that DTH submit proof of compliance.[12]  *Id*. ¶¶ 13-14.  The Tribunal expressly found that prior publications by these same DTH subsidiaries violated the November 12 Order and had "negative effects" on Management's roles for the Company.  *Id*.¶ 12.  The Tribunal reserved the right to allocate costs and fees.  *Id*. ¶ 15.

### C.    The February 2 *Interim* Order Relating to Company Communications Has Been Vacated.

On February 2, 2022, the Tribunal issued an interim order requiring all parties, including DTH, to copy the Board on all communications related to the Company.  Kroup Ex. 37 (the "February 2 Order" and with the November 12 Order and March 15 Order, the "Interim Orders").  On April 25, 2022, the Tribunal issued an order, *sua sponte*, (i) setting forth the details of the full interim relief process, May 2 Landman Ex. 25 (the "April 25 Order") ¶¶ 2-17, 29, 39-40; (ii) explaining that the February 2 Order was necessary because the evidence before the Tribunal as

---

[12]        DTH failed to comply with its obligation to publish the corrective statements, and Peppertree/AMLQ's corresponding request for sanctions is currently pending before the Tribunal.  *See* May 2 Landman Exs. 26, 27.  On April 25, 2022, the Tribunal advised the parties that it intended to schedule a full evidentiary hearing on these compliance issues in late May or early June 2022. *Id*. Ex. 28.

of February 2, 2022, established that DTH was "not communicating with [Peppertree/AMLQ] about DTH's conduct in relation to the Company" and, in fact, concealing such information from Management, *id.* ¶ 23; (iii) confirming that Respondents violated the November 12 Order, *id.* ¶ 21; and (iv) nevertheless vacating the February 2 Order *sua sponte*, after concluding it was no longer necessary, *id.* ¶ 50.  The Tribunal again found that it has the jurisdiction to order DTH to cause its subsidiaries to take certain actions related to the Company.  *Id.* ¶¶ 41(1)-(6).[13]

## IV.   THE ICDR CONCLUSIVELY REJECTED TERRA'S ARBITRATOR BIAS CLAIM

On February 19, 2021, Terra designated Mélida Hodgson as their party-appointed arbitrator.  Landman Ex. 7.  On March 30, 2021, Arbitrator Hodgson disclosed that her firm, Jenner & Block, "has been both adverse to, and represented, assorted affiliates of Goldman Sachs, which [she] underst[ood] to be related to one of the respondents."  May 2 Landman Ex. 29.  On April 23, 2021, the ICDR informed counsel that "there were no objections" to the disclosure.  Landman Ex. 10 at 2.

Nine months later, after a series of adverse rulings from the Tribunal, Terra began to challenge their party-appointed arbitrator's impartiality.  On January 18, 2022, Terra's counsel emailed the ICDR *ex parte* to advise that "Ms. Hodgson was recently nominated to be a party-appointed arbitrator by claimant ATC Sitios del Peru S.R.L. in [the "ATC Arbitration"]," in which DTH was a respondent and claimed the circumstances caused "justifiable doubt" as to her impartiality.  Kroup Ex. 34 at 6.

That same day, the ICDR confirmed that "Ms. Hodgson **has not and will not be** appointed as party-appointed arbitrator [in the ATC Arbitration]."  *Id.* at 5 (emphasis added).  Terra's counsel

---

[13]    Because the Tribunal vacated the February 2 Order, Respondents' Petition to Vacate that order is moot.

responded that they nevertheless intended to challenge her continued service and reserved the right

to make additional objections. *Id.* On January 24, 2022, after joining her new law firm, Arnold &

Porter, Arbitrator Hodgson disclosed:

> As you are aware, I recently joined the law firm of Arnold & Porter (January 18,
> 2022 to be precise). ***We have performed conflict checks and found no issues. As
> was the case with disclosures at my old law firm***, however, I do want to disclose
> that lawyers at Arnold & Porter represent Goldman Sachs on a variety of matters
> not related to this arbitration. I have not been made aware of what these matters are,
> and ***I reaffirm that this circumstance does not in any way affect my independence
> and impartiality in this arbitration***.

Kroup Ex. 33 (emphasis added).  Then, the ICDR emailed all parties inviting "comments with

regard to the information provided by Ms. Hodgson," and separately followed up with Terra to ask

whether it intended to submit any objections.  Kroup Exs. 33, 34.

On January 31, 2022, Terra lodged an objection with ICDR, challenging the continued

service of Arbitrator Hodgson on the grounds that:  (i) "Arbitrator Hodgson was nominated to

serve as the party-appointed counsel by DTH's adversary in another case and failed to disclose

that nomination or any of the surrounding circumstances to the parties in this arbitration"; and (ii)

"Arbitrator Hodgson recently became a partner at a new law firm, and her disclosures and publicly

available information show that her new law firm has ongoing and past relationships with Goldman

Sachs."  Kroup Ex. 36.

On February 9, 2022, the ICDR shared Terra's objection with Peppertree/AMLQ and

invited responses.  On February 16, 2022, Peppertree and AMLQ submitted their respective

responses, contending that Terra's alleged bases for disqualification were vague, conclusory, and

did not demonstrate that Arbitrator Hodgson was not impartial and independent.  May 2 Landman

Ex. 30; Kroup Ex. 42.  AMLQ further advised that, based on its own investigation, Arnold &

Porter "has not represented Goldman & Sachs or any of its affiliates on any new matters since

January 18, 2022, when Arbitrator Hodgson joined the firm."  *Id.*  AMLQ further confirmed that

"Arnold & Porter has since indicated that it will not represent Goldman on any new matters."[14]
*Id.*

On February 22, 2022, the ICDR informed the parties that "[a]fter ***careful review*** of the comments submitted by the parties and pursuant to our authority under the applicable Rules, the ICDR's International Administrative Review Council has determined that ***the challenge is hereby denied and Arbitrator Hodgson is therefore re-affirmed***."  Kroup Ex. 43 (emphasis added). Despite the finality of this decision, on February 25, 2022, Terra renewed its prior objections. Kroup Ex. 44.  The ICDR deemed it unnecessary to respond.  May 2 Landman Ex. 31.

## ARGUMENT

### I.     TERRA CANNOT MEET ITS EXTREMELY HIGH BURDEN IN SEEKING TO VACATE THE ARBITRATION AWARD

As set forth in Petitioners' Brief (ECF No. 8), it is well established that courts afford great deference to an arbitration panel's award.  As such, "[a]rbitration awards are subject to very limited review."  *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 370 (S.D.N.Y. 2010).  "The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the [FAA]."  *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (Kaplan, J.) (internal citations omitted).  A federal court may not vacate an arbitral award merely because it disagrees with the panel's decision.  *Banco de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d 255, 260 (2d Cir. 2003).  The award must be confirmed if there is a "***barely colorable*** justification for the outcome reached."  *Id.* (emphasis added).  Furthermore, "[a]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its

---

[14]     Terra provided this Court with its objection but omitted Peppertree's response.

(de)merits." *Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013).  The Tribunal's award here went far beyond the "barely colorable justification for the outcome reached."  Pet. Br. at 14-18.  It was unanimous, well-reasoned, and should be confirmed by this Court.  *Id.*

Terra, on the other hand, faces an extremely high burden to vacate the Partial Final Award. Vacatur of an arbitration award is rare because the purpose of arbitration is to enhance efficiency and avoid litigation.  *Hamerslough v. Hipple,* 2012 WL 5290318 at *3 (S.D.N.Y. Oct. 24, 2012). Interfering with the arbitration process would "thwart" the usefulness of arbitration, making it the "commencement, not the end, of litigation."  *Id.* (citing *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).  The FAA outlines only four limited bases upon which an award may be vacated.[15]  *See* 9 U.S.C. §10(a).  As set forth below, a court may, in extremely limited circumstances, vacate an award where it was rendered in manifest disregard of the law.  *See infra* at II.B.  None of the limited bases for vacatur are satisfied here.

## II.   THE PARTIAL FINAL AWARD SHOULD BE CONFIRMED

### A.   The Unanimous Partial Final Award Resulted from a Full and Fair Process.

Section 10(a)(3) of the FAA provides for vacatur where "the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).  In determining whether to vacate an arbitration award under Section 10(a)(3), the district court is not to "superintend arbitration proceedings," but must instead determine whether the "procedure was ***fundamentally unfair***."  *LTF Constr. Co. v. Cento Sols.*, 2020 WL 7211236, at *3 (S.D.N.Y. Dec. 7, 2020) (citations omitted) (emphasis added).  The Tribunal's decision to phase

---

[15]     An award may be vacated only (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. §10(a).

the Arbitration and its denial of discovery in the first phase do not come close to meeting this exacting standard.

       1.     <u>The Tribunal's "Phased" Approach Was Fair and Efficient.</u>

The Tribunal was well within its discretion to order a phased approach to the Arbitration. *See Duferco, S.A. v. Tube City IMS, LLC*, 2011 WL 666365, at \*5 (S.D.N.Y. Feb. 4, 2011) *aff'd sub nom. Duferco S.A. v. Tube City IMS, L.L.C.*, 464 F. App'x 28 (2d Cir. 2012) ("arbitrators enjoy broad discretion over procedural aspects of the arbitration, including choosing to bifurcate the proceedings when appropriate.").   AAA Commercial Rule R-32(b) further provides that "the arbitrator, ***exercising his or her discretion***, shall conduct the proceedings with a view to expediting the resolution of the dispute ***and may*** direct the order of proof, ***bifurcate proceedings*** and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case."  (Emphasis added.)

Terra had ample "opportunity to be heard" on the Tribunal's suggested phased approach, and actually made *two* separate submissions in opposition. *See Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 754 F.3d 109, 111 (2d Cir. 2014) (reversing vacatur where arbitrator ordered phased approach "over the objection" of a party and decided dispositive legal issues in first phase).  The fact that the Tribunal invited these submissions is in no way improper.  *See Bay Networks Grp., Inc. v. Willemijn Houdstermaatschappij, B.V.*, 20 F. Supp. 2d 626, 629 (S.D.N.Y. 1998) (rejecting identical argument "that the Panel's *sua sponte* bifurcation of claims denied [Respondent] an opportunity to be heard").

The Tribunal implemented a phased approach, allowing the parties to resolve the most urgent and disputed issues in a timely manner.  All parties can still assert claims and seek damages in the second phase.  Peppertree/AMLQ showed in Phase 1 the right to an exit sale of the Company under Section 5.04(b), and that further delays will cause them irreparable harm.  *See* Kroup Exs.

12 at 20-26; May 2 Landman Ex. 32 at 6-21.  Addressing the sale claim in an initial phase was also both warranted and logical because damages arising from Peppertree/AMLQ's claim for Terra's breaches of Section 5.04(b) cannot be fully quantified until the Company is sold.  Thus, the decision to address Peppertree/AMLQ's sale claim in Phase 1 was well-founded.

2. <u>The Tribunal's Denial of Terra's Discovery Requests Was Fair.</u>

The Tribunal likewise appropriately exercised its discretion in denying Terra's discovery requests in Phase 1.  While "[a]rbitrators must give each of the parties to the dispute an adequate opportunity to present its evidence and argument, [they] need not follow all the niceties observed by the federal courts such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence."  *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (internal citations omitted).  To warrant vacatur, "the challenging party must show that his right to be heard has been ***grossly and totally blocked***, and that this exclusion of evidence prejudiced him."  *Id.* (emphasis added).  AAA Commercial Rule R-32(a) further provides:

> ***The arbitrator has the discretion to vary [the usual] procedure***, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(Emphasis added.).  Accordingly, courts have consistently confirmed awards where arbitrators, in their discretion, denied discovery or declined to hear evidence in the first phase of a bifurcated proceeding.  *See, e.g.*, *Transp. Workers Union of Am. v. Veolia Transportation Servs., Inc.*, 211 F. Supp. 3d 505 (E.D.N.Y. 2016) (confirming award where arbitrator excluded certain evidence in first phase of bifurcated proceeding); *Duferco*, 2011 WL 666365 at *5 (same).

Here, the Tribunal properly found that no discovery was required to adjudicate Peppertree/AMLQ's Phase 1 sale claim and that any pertinent documents and other information were already in the possession of the parties.  That fact was borne out by the Phase 1 process, during which the parties submitted numerous witness statements and dozens of exhibits reflecting

-18-

their correspondence in connection with the sale of the Company.   Incredibly, Terra now complains that the Tribunal "foreclosed [it] from conducting discovery," Resp. Br. at 28, without identifying any specific discovery that would have been relevant or necessary to the Phase 1 sale claim.   *See KST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, 2016 WL 5475987, at *5 (S.D.N.Y. June 6, 2016) (denying vacatur where movant failed to "identify . . . what evidence further discovery . . . would have adduced, such that [the movant] was prejudiced by the panel's decision to issue an award before allowing further development of the record").

None of the three cases Terra cites to support its claim that the Tribunal's denial of discovery was fundamentally unfair actually supports its position.   In *Cofinco, Inc. v. Bakrie & Bros., N.V.,* 395 F. Supp. 613, 615 (S.D.N.Y. 1975), the case fell within the "miniscule proportion of awards [] vulnerable in court" because the party seeking vacatur was completely denied the opportunity to present ***any*** evidence regarding his defense.   *Id.* at 615-16.   Here, Terra had ample opportunities to present evidence concerning the Phase 1 sale claim and, indeed, repeatedly availed itself of those opportunities.

In *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 143-44 (2d Cir. 1992), an arbitrator's final award rejected a party's claim because certain documents had not been introduced at the arbitration, even though the arbitrator had previously instructed that party not to produce those very documents.   That is not the case here.   The Tribunal's Partial Final Award was based on ample evidence introduced by all the parties, not on Terra's failure to produce any evidence, much less evidence that the Tribunal had previously excluded.   *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997), fares no better for Terra.   There, the Court of Appeals found that it was fundamentally unfair to proceed with an arbitration hearing where a material witness could not appear due to a sudden and unforeseen medical emergency.   *Id.* at 17-18, 20.   There was no similar

-19-

inability to produce a material witness here, and *Tempo Shain* is inapposite.

    **B.**    **Terra Has Failed to Establish That the Tribunal Manifestly Disregarded the Law.**

    Terra's argument that the Partial Final Award should be vacated because it was issued in manifest disregard of the law, Resp. Br. at 28-29, is meritless because Terra has failed to identify, let alone establish, that the Tribunal manifestly disregarded any "well-defined, explicit, and clearly applicable" law. *See Schwartz v. Merrill Lynch Co.,* 665 F.3d 444, 452 (2d Cir. 2011).

    To vacate an award based on manifest disregard of the law, a party must meet an incredibly high burden, including proving that: (1) the governing law was "well-defined, explicit and clearly applicable" and (2) the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it. *Schwartz,* 665 F.3d at 452. A court's review of an award under this standard is "severely limited." *Duferco,* 333 F.3d at 389. Vacatur under this standard is appropriately rare because it is a doctrine of last resort, only to be used in "those exceeding rare instances where some ***egregious impropriety*** on the part of the arbitrators is apparent." *Id*. at 389 (emphasis added).[16] Mere disagreement with the outcome does not suffice. *See In re Proto,* 2000 WL 1593350, at *3 (S.D.N.Y. Oct. 24, 2000) (evaluating arbitration award arising out of a company's operating agreement, rejecting plaintiff's argument that "the panel violated general contract law," and holding that "the ***interpretation of a contract is within the arbitrators' discretion to decide, and the issue of the accuracy of the arbitrators' interpretation is not open to judicial review***" (emphasis added)).

    Terra's argument fails to identify any point of law the Tribunal disregarded. Terra alleges only that, "[u]nder New York law, the [Shareholders Agreement] provision in which the parties

---

[16]    Between 1960, when the doctrine was first mentioned by the Second Circuit, and 2003, *out of the at least 48 cases that sought* this standard*, only **four** awards were vacated. See Duferco,* 333 F.3d at 389.

agreed that there would be 'irreparable harm' in the event of a breach *is not dispositive* of Peppertree and AMLQ's right to a specific performance remedy," and that the Tribunal failed to *properly* apply this law when it found that, pursuant to *CE International Resources Holdings LLC v. S.A. Minerals Ltd.*, 2012 WL 6178236 (S.D.N.Y. Dec. 10, 2012), its remedial powers, including the power to grant specific performance, are governed by the AAA Commercial Rules.  Resp. Br. at 28 (emphasis added).  Contrary to Terra's allegations, the cited New York law (which the Tribunal *did* consider) and the AAA Rules are not mutually exclusive.

*First*, the holding in *CE Int'l Resources* is consistent with current New York law.  In *CE Int'l Resources*, this Court merely found that under the FAA, the equitable powers of arbitrators are conferred by the agreement of the parties, including the agreement to apply specific arbitration rules, even if that results in entitlement to relief that would not be available in court.  2012 WL 6178236, at *3-5 (finding that "[h]aving adopted [arbitration] rules that allowed the arbitrator to award interim security, Respondents are bound by their bargain").  Applying these principles, the Tribunal relied on valid New York law to support its finding that its relevant sources of power upon which to grant specific performance are Section 8.12 of the Shareholders Agreement and AAA Commercial Rule R-47(a) (providing arbitrators with the authority to order specific performance when "the arbitrator deems just and equitable and within the scope of the agreement of the parties").  Terra has cited *no* law to the contrary, let alone any "well-defined, explicit, and clearly applicable" Second Circuit law addressing this point.

*Second*, the Partial Final Award plainly demonstrates that the Tribunal did not apply the agreed and binding AAA Commercial Rules to the exclusion of New York specific performance law but, rather, in conjunction with it.  Far from "manifestly disregarding" New York law, the Tribunal painstakingly and expressly found that the key elements of New York specific

performance law—including "no adequate remedy at law" and/or irreparable harm[17]—were satisfied.  Specifically, the Tribunal found that Peppertree/AMLQ substantially performed their obligations under the Shareholders Agreement, and that no New York law suggested that all of Terra's counterclaims must be resolved before Peppertree/AMLQ were entitled to specific performance, Landman Ex. 22 ¶¶ 49-55.  The Tribunal likewise gave "significant **but not dispositive weight** to the contractual stipulation in SHA Section 8.12 of irreparable harm resulting from a breach and giving rise to the right to specific performance [and found that] even if [it] gave no weight to the Section of the SHA, [it] would find **irreparable injury** here for Terra's breach." *Id*. ¶¶ 44 (emphasis added), 37 (similarly finding that Claimants have no adequate remedy at law "taking into consideration Section 8.12 of the SHA, but also **even without regard to Section 8.12**" (emphasis added)).[18]  In essence, Terra's argument is that the Tribunal misapplied New York contract principles when awarding specific performance pursuant to the Shareholders Agreement, **not** that it disregarded the law.  As in *In re Proto*, the Tribunal did not manifestly disregard the

---

[17]     There is no dispute that the standard for specific performance under New York law requires a showing that "(1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Mirada Prod. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993); *see also* Kroup Ex. 12 at 20; May 2 Landman Ex. 32 at 19.

[18]     Respondents' assertion that Peppertree/AMLQ's specific performance claim was "based exclusively on a term in the [Shareholders Agreement] reciting that there would be 'irreparable harm' in the event of a breach" is sheer nonsense, Resp. Br. at 28, as evident from the Award itself, *see* Landman Decl. Ex. 22 at 37.  Peppertree/AMLQ submitted extensive briefing further supporting an award of specific performance, including case law and evidence, showing that Terra's refusal to proceed with a sale is causing them irreparable harm—namely, by (i) obstructing their bargained-for minority shareholder right to exit their investments after five years through a sale of the Company; and (ii) leaving them invested in a Company that they want to sell, with a controlling shareholder that is repeatedly disregarding its express and unambiguous agreements, embezzling Company funds, and constructively discharging Company management to replace them with Terra/DTH loyalists, all without the requisite Board approval.  *See* Kroup Ex. 12 at 25-26; May 2 Landman Ex. 32 at 12-22; *see also Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 154 F. Supp. 2d 570, 584 (S.D.N.Y. 2001) (holding that "the loss of [the plaintiff's] bargained-for minority rights independently satisfy the irreparable harm requirement"); *In re Oxbow Carbon LLC Unitholder Litig.*, 2018 WL 3655257, at *5 (Del. Ch. Aug. 1, 2018), *vacated sub nom. on other grounds, Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition*, LLC, 202 A.3d 482 (Del. 2019) ("A decree of specific performance that results in an Exit Sale addresses directly the harm that the Minority Members otherwise would suffer from losing their right to exit by that means.").

law when it applied fundamental contract principles to interpret the Shareholders Agreement. 2000 WL 1593350, at *3.

Terra cites no analogous case law to support its "manifest disregard" argument, much less case law addressing the rule set forth in *CE Int'l Resources* that a tribunal's equitable powers arise from the parties' agreed arbitration rules.  The only two cases Terra cites are readily distinguished. In *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 142 (2d Cir. 2007), the court found that an arbitration panel blatantly disregarded, and ***failed even to acknowledge, explicit statutory law*** applying to an award of attorneys' fees under the ADEA.  Here, by contrast, the Tribunal found that the elements of New York specific performance law were met.  And, in *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), the court did not even render its decision under a "manifest disregard" standard.  Rather, it found that a tribunal improperly "imposed its own policy choice" by holding that the parties' agreement allowed for class arbitration when the agreement at issue was silent on this point and the tribunal failed to conduct a choice of law analysis.  *Id*. at 673-77.  The Tribunal here did neither of those things.

### C.   The Shareholders Agreement Supports the Relief Ordered in the Partial Final Award.

The Partial Final Award provides that "[Terra] shall cause their appointed members of the Board of Directors of the Company to vote in favor of the engagement of ***an*** Investment Bank ***as defined in the [Shareholders Agreement]***"; Terra is not required to appoint "***the*** Investment Bank" proposed by Peppertree.  *See* Landman Ex. 22 ¶ 72(ii) (emphasis added).  Thus, contrary to Terra's reading, the Award does ***not*** grant "Peppertree and AMLQ sole authority to appoint an Investment Bank."  *See* Resp. Br. at 34.

The Tribunal's directive is wholly consistent with the Shareholders Agreement, which provides that "the Company"—*i.e.*, the Peppertree and Terra Directors—shall "retain ***an***

-23-

Investment Bank to facilitate an approved sale." Landman Ex. 1 § 5.04(b)(ii) (emphasis added).

Erasing any doubt that the Tribunal intended for the relief ordered to track this provision, the

Award expressly cites to and interprets this very provision:

> Section 5.04(b)(ii) commands that the Company **"shall . . . retain an Investment Bank"** and leaves no room for the Company to fail to hire an investment bank on any basis except that it is not an Investment Bank as defined in Section 5.04(b)(i). As the Company must so act, it follows that no Shareholders' representatives on the Board may cast their votes, or threaten that Board votes will be cast, to prevent the hiring of a qualified investment bank to facilitate an Approved Sale.

Landman Ex. 22 ¶ 25. Moreover, Terra cannot evade this provision by simply continuing to refuse

to appoint an Investment Bank that meets the requirements set forth in the Shareholders

Agreement.[19] Finally, even if Terra's contrary interpretation of the Partial Final Award were valid,

any ambiguities must be resolved "in a manner supporting the award." *Briamonte v. Liberty*

*Brokerage, Inc.*, 2000 WL 351399, at *5 (S.D.N.Y. Mar. 31, 2000) (resolving ambiguity in

arbitration award in favor of petitioner and noting the "high standard a party petitioning for a

vacatur or modification of an arbitration award must meet").

## III.   THE TRIBUNAL'S INTERIM ORDERS SHOULD NOT BE VACATED

### A.   The Interim Orders Are, By Their Explicit Terms, Not Final Awards and, Therefore, Are Not Subject to Review or Vacatur.

It is axiomatic that "judicial review is unavailable" on "interim ruling[s] that do[] not

purport to resolve finally the issues submitted" to a tribunal. *Michael v. Mariform Shipping, S.A.*,

624 F.2d 411, 414 (2d Cir. 1980). "Only awards that are final are subject to judicial review."

*Sperry Int'l Trade, Inc. v. Gov't of Israel,* 532 F. Supp. 901, 906 (S.D.N.Y. 1982), *aff'd*, 689 F.2d

301 (2d Cir. 1982). For an order to be final, it must "resolve all the issues submitted to arbitration,

and . . . it must resolve them definitely enough so that the rights and obligations of the two parties,

---

[19]    The Shareholders Agreement defines an "Investment Bank" as "an independent and reputable investment bank with experience in the industry and a cross-border practice." Landman Ex. 1 § 5.04(b)(i).

with respect to the issues submitted, do not stand in need of further adjudication." *JLNW, Inc. v. National Retirement Fund*, 2018 WL 4757953, at *4 (S.D.N.Y. Sept. 28, 2018) (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packing, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)). An interim order is not final and reviewable where further proceedings may affect the viability of the relief ordered, or the panel may be able to revisit the order. *See Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 598, 604 (S.D.N.Y. 2020) (order providing that the panel "may still revisit" the allocation of fee issue was not final); *SH Tankers Ltd. v. Koch Shipping Inc.,* 2012 WL 2357314, at *1, *5-6 (S.D.N.Y. June 19, 2012) (finding that order where the panel expressed its willingness to "revisit and reassess" the ruling was neither final nor reviewable).

Notwithstanding Terra's attempt to retitle certain of the Interim Orders as "awards," they are all, by their explicit terms, non-final, ***interim*** orders, and thus not reviewable by this Court. Each Interim Order states it was entered pursuant to AAA Commercial Rule R-37. *See* AAA Rule R-37 ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods."); *see also Sperry Int'l Trade, Incl.*, 689 F.2d at 306 ("New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties."). Additionally, each Interim Order was expressly styled as an order for "interim" relief. Kroup Exs. 24, 37, 45. Lastly, none of the Interim Orders "finally" or "definitively" resolves any claims in the Arbitration; rather, each Interim Order purposefully provides the Tribunal with the option of revisiting that order. For example, the November 12 Order expressly contemplated "further proceedings" before the Tribunal and reserved allocation of fees and costs. Kroup Ex. 24 at ¶¶ 13-14. The Tribunal ***did*** revisit that order in its March 15 Order, which expressly related to Respondents' failure to comply with the November 12 Order. Kroup Ex. 45. Similarly, the March

15 Order again contemplated the Tribunal's review of Respondents' compliance and reserved decision regarding allocation of costs. Kroup Ex. 45 ¶¶ 14-15. Punctuating the Tribunal's ongoing review, issues related to Respondents' non-compliance with the March 15 Order are *still* pending before the Tribunal. May 2 Landman Ex. 27 at pp. 68-72. The Interim Orders should also be confirmed for the reasons discussed below.

### B. The November 12 Order Should Not Be Vacated.

#### 1. Respondents' Request to Vacate the November 12 Order is Untimely.

Even if the November 12 Order were subject to judicial review as a final award (it is not), it cannot be vacated because Respondents' request is untimely. Pursuant to 9 U.S.C. § 12, notice of a motion to vacate an arbitration award must be served within *three months* of issuance of the award, which period expired on February 12, 2022.[20]

#### 2. Respondents Have Failed to Articulate Any Substantive Basis to Vacate the November 12 Order Because the Tribunal Has Jurisdiction Over Both Terra and DTH.

Contrary to Respondents' assertions, the Tribunal has jurisdiction over both Terra and DTH pursuant to the Company's governing documents. The Tribunal has jurisdiction over Terra pursuant to Section 8.15 of the Shareholders Agreement (the arbitration provision). *See* Landman Ex. 1 § 8.15. DTH also consented to the Tribunal's jurisdiction through both the Development Agreement and EPC Contract. Kroup Ex. 4 § 3.4; May 2 Landman Ex. 1 § 7.1.2. The November 12 Order addresses the roles of joint Company/DTH personnel such as Mr. Gaitan and Ms. Echeverria, and the more general question of Peppertree/AMLQ's rights with respect to the

---

[20]     To the extent Respondents attempt to argue that the three-month deadline did not begin to run with the issuance of the order because compliance with that order was later addressed by the Tribunal, Respondents cannot have it both ways. Either the November 12 Order and March 15 Order are *both* final awards such that Respondents' request to vacate the November 12 Order is untimely, or they are *both* interim orders that are continuing to be addressed by the Tribunal (which is the case here).

Company's relationship with DTH, all issues plainly within the scope of these arbitration clauses.

Moreover, since the Arbitration was filed in February 2021, DTH has never disputed the Tribunal's jurisdiction and, therefore, has waived such challenge.  DTH failed to argue that the Tribunal lacked jurisdiction over it on no less than a dozen occasions,[21] and DTH continues to participate as a party in the ongoing Arbitration.  DTH has thus waived any argument that the Tribunal did not have jurisdiction over it to issue the Interim Orders.  *Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 533 (S.D.N.Y. 2014) (finding waiver where party did not object to jurisdiction and fully participated in an arbitration) (citation omitted).

Given the relationships among the Company, Terra, and DTH, and the framework of the Company's governing documents, the Tribunal likewise has jurisdiction to order DTH to cause its subsidiaries to take certain actions related to the Company.  First, DTH is a holding company without any employees.  It cannot be permitted to do through its subsidiaries what it is otherwise prohibited from doing on its own behalf.  This is a commonplace corporate structure.  *See, e.g.*, *Harte v. Ocwen Fin. Corp.*, 2016 WL 1275045, at *7-8 (E.D.N.Y. Mar. 31, 2016) (where holding company acted *only* through its subsidiaries, there was a strong inference that holding company and subsidiaries were in an agency relationship).  Courts have routinely declined to allow parties' use of operating subsidiaries to obstruct the efficacy of their judgments.  *See, e.g.*, *Int'l Bus.*

---

[21]    These occasions include:  (1) on February 19, 2021, during the first procedural conference; (2) on February 19, 2021, when DTH filed its Answer, May 2 Landman Ex. 36; (3) on February 19, 2021, when DTH designated Ms. Hodgson as its party-appointed arbitrator, Landman Ex. 7; (4) on August 2, 2021, when DTH filed its Answer to Peppertree's Amended Statement of Claim, May 2 Landman Ex 37; (5) on October 18, 2021, when DTH submitted a response to the Emergency Motion, Kroup Ex. 18; (6) on October 19, 2021, when DTH proffered testimony related to the Emergency Motion, Kroup Ex. 20; (7) on October 20, 2021, when DTH made a pre-hearing submission related to the Emergency Motion (in which DTH argued for the first time that the Tribunal had no jurisdiction *over its affiliates*, not DTH, *id.* Ex. 22; (8) on October 21, 2021, when DTH participated in the hearing on the Emergency Motion, Kroup Ex. 23; (9) on January 28, 2022, February 7, 2022, and February 15, 2022 when DTH made a submission related to Peppertree/AMLQ's Motion to Compel Compliance, May 2 Landman Exs. 22, 24; and (10) most recently, on April 12, 2022, when DTH participated in a hearing related to Respondents' failure to comply with the March 15 Order, May 2 Landman Ex. 27.

*Machines Corp. v. Comdisco, Inc.,* 1993 WL 155511, at *1 (N.D. Ill. May 10, 1993) (finding that the parties' stipulation restricting defendant's sale of memory cards applied equally to defendant's foreign subsidiaries); *Cablevision Sys. Corp. v. Can Muneyyirci,* 1995 WL 362541, at *2 (E.D.N.Y. June 2, 1995) (party could not use a non-party "subject to their control" as "a device to circumvent the Court's orders.").

Second, the governing documents here expressly assume that DTH operates through its subsidiaries and will cause its subsidiaries to take certain actions related to the Company. *See, e.g.*, Kroup Ex. 4 §§ 1.1(e) ("In connection with each Approved Site, DTH, ***directly or through the DTH Entities in each jurisdiction in the Territory***, shall oversee such approved Site's search, development, and construction.") (emphasis added); 1.1(f) ("DTH will provide, or will ensure that the ***DTH Entities provide***…") (emphasis added). Thus, DTH contracted not only on its own behalf but as an agent for its subsidiaries.[22] Additionally, if DTH's subsidiaries were permitted to take actions in contravention of agreements and orders to which DTH is bound, such agreements and orders would be rendered meaningless. *See, e.g., In The Matter of Arbitration Between American Industrial Carriers, Inc. v. Maywood Maritime Ltd.*, 1992 WL 84536, at *5-6 (S.D.N.Y. Apr. 10, 1994) (members of arbitration party who were not signatories to the arbitration agreement were bound by arbitration award because it was "an uncontested fact that [the party's name]" "was used as a collective referent in the context of negotiating" the agreements between the parties).

Finally, injunctions are routinely held to bind parties' ***non-party*** officers, agents, servants, and "other persons" to the extent they "are in active concert or participation with [the parties]." *NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir. 2012); *see also Cablevision*

---

[22]     At no point in the Arbitration record or in their Petition to Vacate have Respondents ever contended that DTH lacks the ability to assert control over the conduct of DTH's subsidiaries. In fact, the Tribunal expressly found otherwise. May 2 Landman Ex. 25 ¶ 41(2)-(4).

*Sys. Corp.,* 1995 WL 362541, at *1 (issuing order that both a party and a non-party acted in contempt of a prior court order, prohibiting them from dealing in certain devices where the non-party entity was controlled by the two defendants, and finding that "***an injunction is binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them***" when it so provides (emphasis added) (citations omitted)); *United States v. Philip Morris USA Inc*., 566 F.3d 1095, 1136 (D.C. Cir. 2009) ("[S]ubsidiaries of Defendants may be personally bound by the [injunction] order to the extent that they are agents of or in privity with Defendants in the common corporate business of manufacturing, designing, marketing, or selling cigarettes."). Here, because Respondents admit that Terra and all of the DTH entities are under the common ownership and control of Jorge Hernandez, an individual respondent in the Arbitration, May 2 Landman Ex. 38 at ¶ 13[23], there is no question that the DTH subsidiaries are effectively agents of DTH and acting in concert with Respondents. Therefore, the Tribunal has the authority to prevent DTH from using its subsidiaries to circumvent the November 12 Order.

### C.     The March 15 Order Should Not Be Vacated.

1.     <u>The Parties Had an Ample and Fair Opportunity to be Heard on the Compliance Issues Addressed by the March 15 Order.</u>

Respondents suggest that the process resulting in the March 15 Order was somehow insufficient. Resp. Br. at 33 (claiming the Tribunal "ordered this relief without any showing that the DTH subsidiaries had made false statements or otherwise engaged in wrongful conduct" and "[t]he only justification offered for ordering non-parties to publish statements against their will was the November 12 Award itself."[24]). Contrary to these assertions, Respondents and, indeed,

---

[23]     *See also* Kroup Ex. 23 at 206:14-207:7; May 2 Landman Ex. 25 ¶ 21.

[24]     This contention is patently false. The Company submitted multiple witness statements providing evidence that the corrective statements were necessary due to the prior publication of misleading statements by DTH's

all parties had an ample and fair opportunity to be heard on Peppertree/AMLQ's Motion to Compel Compliance and related issues.  Respondents had at least four opportunities to present both evidence and argument relating to their failure to comply with the November 12 Order:  (1) on January 28, 2022, when they submitted three witness statements and fifteen exhibits, May 2 Landman Decl. ¶ 27; (2) on February 7, 2022, when they submitted five witness statements, thirty-seven exhibits, and a brief, in which they *expressly addressed the publications* of DTH's subsidiaries that necessitated the corrective statements, May 2 Landman Decl. ¶¶ 28, 31, and Ex. 24; (3) at the February 12 Hearing during which the Tribunal heard oral argument, Kroup Ex. 40; and (4) when DTH made a post-hearing submission, May 2 Landman Ex. 22.  Accordingly, the process resulting in the March 15 Order was fundamentally fair.  *See supra* at Argument II.A.1.

2.  <u>Respondents Have Failed to Establish a Substantive Basis to Vacate the March 15 Order Because the Tribunal Has Jurisdiction Over DTH.</u>

Respondents argue that the March 15 Order requiring that certain DTH subsidiaries publish corrective statements clarifying that Mr. Gaitan and Ms. Echeverria retained their roles for the Company should be vacated because the Tribunal does not have jurisdiction over DTH's subsidiaries.  Resp. Br. at 30-32.  As previously discussed, however, the Tribunal has jurisdiction over DTH, and it is well within the Tribunal's authority to issue orders requiring DTH to take actions through its subsidiaries in connection with the Company.  *See supra* at Argument III.B.2.  Notably, the corrective statements are only necessary because ***Respondents*** used the DTH subsidiaries to publish misleading statements, harmful to the Company, incorrectly suggesting that Mr. Gaitan and Ms. Echeverria had no roles for the Company, in contravention of the November

---

subsidiaries.  May 2 Landman Ex. 39 ¶ 15(iii), Ex. 40 ¶ 4.  Indeed, the Tribunal expressly found that the prior publications were in contravention of the November 12 Order and resulted in "negative effects as they relate to Mr. Gaitan's and Ms. Echeverria's roles as they were as of March 19, 2021" and needed to be "rectif[ied]."  Kroup Ex. 45 ¶ 12.

12 Order restoring them to such roles.  Kroup Ex. 45 ¶ 11.  As the Tribunal correctly found, DTH should not be permitted to use the subsidiaries' status as non-signatories to the Development Agreement as an end-run around the Tribunal's orders.  *Id*. ¶¶ 12-13.

### 3.    The Tribunal Did Not Violate the FAA by Conducting the February 12 Hearing in the Absence of an Attorney for DTH.

The Tribunal did not violate the FAA by proceeding with the February 12 Hearing. Pursuant to 9 U.S.C. § 10(a)(3), an arbitration award may be vacated only "where the arbitrators were guilty of misconduct in ***refusing to postpone the hearing, upon sufficient cause shown***, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  (Emphasis added.)  "The expeditious resolution of disputes requires that arbitrators be provided with ***broad discretion and great deference*** in their determinations of procedural adjournment requests."  *Bisnoff v. King,* 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) (emphasis added) (citations omitted).  "[A]s long as there is at least 'a barely colorable justification' for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced."  *Id*. (citations omitted).  Where counsel cannot show good cause, courts in the Second Circuit do not find that a tribunal's failure to postpone a hearing is fundamentally unfair.  *See, e.g., Alexander Julian, Inc. v. Mimco, Inc*., 29 F. App'x 700, 701, 703 (2d Cir. 2002) (it was not fundamentally unfair to hold a hearing without respondent's counsel where he chose not to appear without taking precautions against prejudicing the interests of his client and the arbitrators found that due to scheduling conflicts, the hearing could only be heard on three specific days or not until much later, a delay deemed unacceptable).[25]

---

[25]    *See also Mandell v. Reeve*, 2011 WL 4585248, at *4 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 510 F. App'x 73 (2d Cir. 2013) (finding decision to go forward with hearing not fundamentally unfair where unavailable party's communications objecting to the hearing "failed to proffer the nature or duration of his unspecified scheduling conflict to assist the arbitration panel in assessing the relative inconvenience to the parties and arbitrators of maintaining or adjourning the hearing date.").

Here, the correspondence among counsel and the Tribunal—which Respondents conveniently omitted from their briefing—establishes that Mr. Joseph provided virtually no availability for the February 12 Hearing for an entire month and never represented to the Tribunal that he had a specific conflict on February 12.  May 2 Landman Ex. 23.  After balancing multiple factors, including, but not limited to, the urgency of the issues, the availability of *all* counsel and the Tribunal, and the alignment of Respondents' interests, the Tribunal ultimately determined "that good cause for postponement of [the February 12] hearing has not been shown."  *Id*.  Moreover, nearly all of Respondents' submissions in connection with the February 12 Hearing were joint, and despite Mr. Joseph's absence, Terra was represented by ***ten separate attorneys***, four of whom were from Carey Rodriguez Milian, LLP, which represents both Terra ***and DTH*** in this action. *See* Kroup Ex. 40 at 3-4; ECF Nos. 27-30.  And after the hearing, during which only argument was presented, the Tribunal gave DTH an opportunity to review the hearing transcript and make an additional submission.  Kroup Ex. 41; May 2 Landman Ex. 22.  Under these circumstances, Mr. Joseph's failure to attend the February 12 Hearing provides no basis for vacatur.

## IV.   THERE IS NO BASIS TO DISQUALIFY ARBITRATOR HODGSON, MUCH LESS VACATE THE AWARD BASED ON "EVIDENT PARTIALITY"

The FAA permits a district court to vacate an arbitration award only in limited circumstances, including "where there was evident partiality or corruption in the arbitrators." *Schuyler Line Navigation Co., LLC*, 2020 WL 5237800, at *3 (Kaplan, J.) (citing 9 U.S.C. § 10(a)(2)).  Evident partiality may be found "only when a reasonable person considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side."  *Id.*[26]  This

---

[26]    This standard for disqualification of an arbitrator is more stringent than that for disqualification of a judge. *See Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2007) ("[F]ederal courts ought not to hold arbitrators to the strict impartiality standards applicable to Article III judges[.]") (internal citation omitted).  Regardless, Terra's arguments would fail even applying the standard for judicial recusal.  *See, e.g.*, *Faulkner v. Nat'l Geo. Enters.*, 409 F.3d 26, 41-42 (2d Cir. 2005) (judicial recusal not warranted where judge was former partner of party's counsel and judge previously represented subsidiary of codefendant); *see also Maharam v.*

requires more than the mere appearance of bias. *Id.* The "bias of the arbitrator [must be] direct and definite; mere speculation is not enough." *Sofia Shipping Co., Ltd. v. Amoco Trans. Co.*, 628 F. Supp. 116, 119-20 (S.D.N.Y. 1986). The burden of proving this "direct and definite" bias falls on the party seeking vacatur of the award. *Id.*

### A.    The ICDR Already Conclusively Disposed of This Issue

This Court need not even reach this analysis because the ICDR conclusively found that Arbitrator Hodgson did not have a disqualifying conflict. In executing the Shareholders Agreement, Terra expressly covenanted to abide by the AAA Commercial Arbitration Rules, which contemplate that disputes regarding arbitrator partiality may arise and that such disputes are to be resolved "conclusive[ly]" by AAA officials. *See* AAA Commercial Rule 18(c) ("Upon objection of a party to the continued service of an arbitrator . . . the AAA shall determine whether the arbitrator should be disqualified under the grounds set out [in Rule R-18(a)], and shall inform the parties of its decision, ***which decision shall be conclusive***." (Emphasis added.)

Terra acknowledges that: (i) it submitted a formal objection to the ICDR based on the same grounds raised here—namely, Arbitrator Hodgson's affiliation with Arnold & Porter and her nomination as an arbitrator candidate in a "related arbitration"; (ii) Peppertree/AMLQ submitted responses to Terra's objection; and (iii) the ICDR's International Administrative Review Council denied Terra's challenge to Arbitrator Hodgson's service. *See* Resp. Br. at 28-29. Terra does not suggest that the ICDR's investigation was incomplete or even that its conclusion was invalid. Instead, Terra attempts to evade the ICDR's decision altogether, asking the Court to consider its challenge to Arbitrator Hodgson's impartiality as if it were a new issue.[27]

---

*Patterson*, 369 Fed. App'x 240, 242 (2d Cir. 2009) (judicial recusal not warranted where judge's son owned stock in defendant); *Hoatson v. N.Y. Archdiocese*, 280 F. App'x 88 (2d Cir. 2008) (judicial recusal not warranted where judge's brother was partner at law firm which represented defendant in other litigation).

[27]    To the extent DTH joins in Terra's request for vacatur on evident partiality grounds, it has waived any such

Courts consistently defer to and uphold the AAA's determinations regarding arbitrator partiality. *See, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.*, 427 F. Supp. 3d 518, 527 (S.D.N.Y. 2019) ("[T]he AAA found no issue with either [arbitrator] and accordingly denied petitioners' objections and allowed the proceeding to continue. The Court does not disagree with the conclusion of the AAA."); *NGC Network Asia, LLC v. PAC. Grp. Int'l, Inc.*, 2012 WL 377995, at *3 (S.D.N.Y. Feb. 3, 2012), *aff'd*, 511 F. App'x 86 (2d Cir. 2013) ("In accordance with the Rules, [the losing party] made its objections to the AAA and the AAA determined that [the arbitrator] would not be disqualified. The law in this District and Circuit clearly states that the parties are bound by the AAA's determination."); *Application of York Hannover Holding A.G. v. Am. Arb. Ass'n*, 1993 WL 159961, at *5 (S.D.N.Y. May 11, 1993) (same). Here, too, the ICDR's decision that "[a]fter ***careful review*** of the comments submitted by the parties and pursuant to our authority under the applicable Rules, . . . ***the challenge is hereby denied and Arbitrator Hodgson is therefore re-affirmed***" should be given full deference. *See* Kroup Ex. 43 (emphasis added).

B.     **Terra Cannot Establish Evident Partiality Warranting Vacatur**

Were this Court to consider Arbitrator Hodgson's alleged partiality, Terra has not come close to meeting its burden. Indeed, Terra's challenge to Arbitrator Hodgson's partiality is frivolous. Neither Arbitrator Hodgson's affiliation with Arnold & Porter nor her ***nomination*** by an unrelated party as an arbitrator candidate an unrelated proceeding—entirely unremarkable activities for established arbitrators such as Arbitrator Hodgson—amounts to evident partiality warranting vacatur.

---

objection by not raising it in the Arbitration. *See Rai*, 739 F. Supp. 2d at 374 ("The Second Circuit precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered.") (internal citation and quotations omitted).

1.   Terra Has Failed to Demonstrate "Evident Partiality" Based on Arbitrator
Hodgson's Affiliation with Arnold & Porter.

The Second Circuit has held that "***prior*** contacts between an arbitrator and counsel for one of the parties are insufficient" to meet the "evident partiality" standard. *Ron Chereskin Studios, Inc. v. Isit U.S.A., Inc.*, 1995 WL 656969, at *1 (S.D.N.Y. Nov. 8, 1995) (collecting cases); *see also Palmieri v. Ins. Co. of N. Am.*, 67 A.D.2d 967 (N.Y. App. Div. 1979) (fact that arbitrator was a member of the law firm that had previously represented one of the parties did not support bias claim); *797 Broadway Grp., LLC v. BCI Const., Inc.*, 57 Misc. 3d 391, 397 (N.Y. Sup. Ct. 2017) (arbitrator's firm's prior representation of party that was remote in time and based on a different subject matter did not create arbitrator bias); *In re Andros Compania Maritima, S.A.*, 579 F.2d 691, 701 (2d Cir. 1978) (no evident partiality where arbitrator previously served on 19 arbitral panels with president of a party's agent); *Lumms Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 619-28 (S.D. Tex. 2002) (fact that another lawyer at the arbitrator's firm represented a party's minority shareholder did not support bias claim under Second Circuit law. After all, "if the courts were to disqualify every arbitrator who has had professional contacts with a party or witness, it would be difficult to maintain the arbitration system." *PK Time Grp., LLC v. Robert*, 2013 WL 3833084, at *4 (S.D.N.Y. July 23, 2013) (internal quotations omitted).

That is precisely the circumstance here. Contrary to Terra's claim that Arbitrator Hodgson's new law firm, Arnold & Porter, "has significant and ongoing client relationships with affiliates of Goldman Sachs ['Goldman'], AMLQ's parent," *see* Resp. Br. at 34, Arnold & Porter has not represented Goldman or any of its affiliates on ***any*** matters ***since 2021***, before Arbitrator Hodgson even joined the firm. Chlapowski Decl. ¶ 6.[28] Arnold & Porter's prior representation of

---

[28]   The two purported connections between Arnold & Porter and Goldman Terra cites are completely unfounded. *See* Resp. Br. at 24. ***First***, Stephen Culhane, a partner at Arnold & Porter, left Goldman in 2004. *Id.* ¶ 8. While at Goldman, Mr. Culhane was a lawyer who covered the Private Equity Group ("PEG") of Goldman Sachs Asset

Goldman is therefore wholly insufficient to establish any evident partiality on the part of Arbitrator Hodgson, who is not alleged to have any prior contacts with Goldman whatsoever.[29]

Terra's objection to Arbitrator Hodgson based on her law firm's providing legal services to Goldman rings hollow, and indeed was waived, given Terra's failure to object to Arbitrator Hodgson's identical disclosure related to her initial affiliation with Jenner & Block.  *See* Kroup Ex. 33 ("***As was the case with disclosures at my old law firm***, however, I do want to disclose that lawyers at Arnold & Porter represent Goldman Sachs on a variety of matters not related to this arbitration.") (emphasis added); *see also Rai*, 739 F. Supp. 2d at 374 ("[Petitioner] cannot remain silent about the perceived partiality, and later object when the [arbitrator] reaches a decision he dislikes.  His silence constitutes a waiver of his right to object on those grounds.").  Indeed, Respondents were not only silent, they ***affirmed their choice of Arbitrator Hodgson in spite of her disclosure.***

        2.    <u>Arbitrator Hodgson's Nomination as an Arbitrator Candidate in a Purportedly "Related Arbitration" Does Not Establish "Evident Partiality."</u>

Terra's claim based on Arbitrator Hodgson's nomination as an arbitrator candidate in a "related arbitration" is similarly frivolous.  Arbitrator Hodgson was ***never*** appointed as an arbitrator in that purportedly "related arbitration."  *See* Resp. Br. at 23.  Terra does not detail how

---

Management, L.P.  PEG is a fund of funds business that did and does not make investments directly on behalf of Goldman subsidiaries, such as AMLQ.  *Id.  Second*, Arnold & Porter has only represented the Goldman Sachs Foundation on a discrete matter that concluded in 2019 and resulted in fees of less than $10,000.  *Id.* ¶ 9.

[29]     Terra's lone authority on this point, *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994), is neither controlling nor persuasive as the "reasonable impression of partiality" standard applied there is contrary to the law in this Circuit.  *See, e.g.*, *Applied Indus.*, 492 F.3d at 137 (concluding that "an arbitrator is disqualified only when a reasonable person, considering all of the circumstances, 'would *have* to conclude' that an arbitrator was partial to one side," and that "appearance of partiality" is "a standard we have made clear is too low).  As a result, courts in this Circuit have ***refused*** to follow *Schmitz* in assessing arbitrator bias claims.  *See, e.g.*, *Merck & Co. Inc. v. Pericor Therapeutics, Inc.*, 2016 WL 4491441, at *11 n.3 (S.D.N.Y. Aug. 24, 2016) ("*Schmitz* is . . . distinguishable because the requirement that this Court must perceive partiality so clearly that it 'would *have* to conclude' the arbitrator was biased before vacating the awards differs from the standard elaborated by the Ninth Circuit, which looks only for an impression of possible bias.").

there could be any relationship between the two arbitrations, but in all events, there is no conceivable basis on which Arbitrator Hodgson's **withdrawn nomination** in a separate arbitration could constitute a disqualifying conflict here. *See e.g., Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 75 (2d Cir. 2012) ("[T]he fact that one arbitration resembles another in some respects does not suggest to us that an arbitrator presiding in both is somehow therefore likely to be biased in favor of or against any party.").[30]  Terra's guess that Ms. Hodgson "**may** have had *ex parte* discussions with DTH's adversary in connection with her potential retention that bear on this case," *see* Resp. Br. at 35, is just the type of "mere speculation" that courts caution against in assessing bias claims. *See Sofia Shipping*, 628 F. Supp. at 119.

Critically, courts in this circuit "will not vacate arbitration awards for evident partiality when the party opposing the award identifies no direct connection between [the challenged arbitrator] and the outcome of the arbitration." *Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 507 (2d Cir. 2018) (internal quotation marks and citations omitted).  It is not "appropriate to vacate an award solely because an arbitrator fails to consistently live up to his or her announced standards for disclosure, or to conform in every instance to the parties' respective expectations regarding disclosure." *Scandinavian Reins. Co.*, 688 F.3d at 76-77.  "[N]ondisclosure does not by itself constitute evident partiality." *Id.* at 77.  "The party challenging an award must prove the existence of evident partiality by clear and convincing evidence." *Certain Underwriting*, 892 F.3d at 505 (citations omitted).  Terra has

---

[30]     This other arbitration is in no way "related" to this Arbitration.  Peppertree, who initiated this Arbitration, and AMLQ are not parties to that other arbitration and have no direct knowledge of it.  The other arbitration does not involve the Company or Peppertree and AMLQ necessarily would have been aware of it as Board members and shareholders of the Company.  DTH being a party to both arbitrations does not make the other arbitration "related" to the underlying Arbitration at issue here. *See Nat'l Indemnity Co. v. IRB Brasil Resseguros S.A.*, 164 F. Supp. 3d 457, 480 (S.D.N.Y. 2016), *aff'd*, 675 F. App'x 89 (2d Cir. 2017) ("[O]verlapping service by the same arbitrators in different arbitrations is bound to occur.").

provided no evidence on which a reasonable person would "have to" conclude that Arbitrator Hodgson was partial to Peppertree/AMLQ or that any supposed partiality changed the outcome of the Arbitration. Any such allegation would be wholly undermined by the fact that the Partial Final Award, and the interim orders being challenged, were 3-0 unanimous decisions. Arbitrator Hodgson's vote did not impact the outcomes.

### C.   Terra Has Failed to Establish That Arbitrator Hodgson's Disclosures Were Inadequate

Terra also complains that Arbitrator Hodgson failed to disclose (i) her nomination as an arbitrator candidate in the other proceeding and (ii) the Arnold & Porter partners' alleged "direct line of communication about Goldman Sachs representations with counsel or party in this proceeding." Resp. Br. at 24-25. As an initial matter, even if Arbitrator Hodgson's disclosures were inadequate, that alone would not demonstrate evident partiality. *See* Restatement of International Commercial and Investor-State Arbitration, § 4.11 Reporter's Note f(ii) (Proposed Final Draft Apr. 24, 2019) ("[T]he category of information [that should be] disclosed is much broader than the category of information that can lead to disqualification or, later, to a finding of evident partiality."). In any event, Terra's disclosure-related claims are all deficient.

***First***, as established *supra*, Arbitrator Hodgson was never appointed in the ATC Arbitration. *See* Kroup Ex. 34 at 5 ("Ms. Hodgson has not and will not be appointed as a party-appointed arbitrator in the [ATC arbitration]."). Terra cites no authority requiring an arbitrator who is merely ***nominated*** in another arbitration to disclose that nomination. Moreover, DTH ***was*** made aware of the nomination as party to the ATC Arbitration, and thus to the extent any party could suffer from a lack of information in these circumstances, it is Peppertree/AMLQ, not Terra, DTH's affiliate that is under the same ownership and control as DTH.

***Second***, contrary to Terra's speculative claim, "Goldman Sachs lawyers" have ***not*** been

"in touch with Arnold & Porter about this very litigation." *See* Resp. Br. at 34 ("[I]t appears that Goldman Sachs lawyers have been in contact with Arnold & Porter about this very litigation."). For Goldman to confirm that Arnold & Porter did not and would not represent Goldman on any new matters required no additional, targeted communication with Arnold & Porter at all.  In fact, ***before Arbitrator Hodgson even joined the firm***, Arnold & Porter informed Goldman Sachs Legal Division vendor management personnel—who have no involvement in or direct knowledge of the Arbitration—that Arnold & Porter would not represent Goldman or its affiliates on any new matters because of "conflict issues," but refused to elaborate when asked.  Chlapowski Decl. ¶ 7. Terra's assertions are pure speculation and wholly inadequate to vacate the unanimous rulings of the three-member Tribunal.  *See* Kroup Decl. Ex. 42 at 1; *Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 486-87 (S.D.N.Y. 2002) (court need not consider unsubstantiated factual allegations on motion to vacate arbitral award).

## <u>CONCLUSION</u>

For the foregoing reasons, Peppertree/AMLQ respectfully request that the Court grant their Petition to Confirm the Partial Final Award and deny Respondents' Petition to Vacate in its entirety.

Dated: May 2, 2022
New York, New York

Respectfully submitted,

| | |
|---|---|
| /s/ *Michael N. Ungar* | /s/ *Gregg L. Weiner* |
| Michael N. Ungar | Gregg L. Weiner |
| (*admitted pro hac vice*) | Ethan Fitzgerald |
| Katherine M. Poldneff | **ROPES & GRAY LLP** |
| Gregory C. Djordjevic | 1211 Avenue of the Americas |
| (*admitted pro hac vice*) | New York, NY 10036 |
| **ULMER & BERNE LLP** | Tel:  (212) 596-9000 |
| 1660 W. 2nd St., Ste. 1100 | Fax:  (212) 596-9090 |
| Cleveland, Ohio 44113 | Gregg.weiner@ropesgray.com |
| Tel:  (216) 583-7000 | Christian.reigstad@ropesgray.com |
| Fax:  (216) 583-7001 | |
| mungar@ulmer.com | |
| kpoldneff@ulmer.com | Daniel V. Ward |
| gdjordjevic@ulmer.com | (*admitted pro hac vice*) |
| | Katherine M. McDonald |
| | (*admitted pro hac vice*) |
| David A. Landman | **ROPES & GRAY LLP** |
| **ULMER & BERNE LLP** | 800 Boylston Street |
| 420 Lexington Avenue, Ste. 2733 | Boston, MA 02199-3600 |
| New York, NY 10170 | Tel: (617) 951-7000 |
| Tel:  (917) 262-0470 | Fax: (617) 951-7000 |
| Fax:  (917) 262-0480 | daniel.ward@ropesgray.com |
| dlandman@ulmer.com | Katherine.mcdonald@ropesgray.com |
| | |
| *Counsel for Telecom Business Solution, LLC* | *Counsel for AMLQ Holdings (Cay), Ltd.* |
| *and LATAM Towers, LLC* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on May 2, 2022.

Notice of this filing will be sent to all counsel of record through the Court's electronic notice

system.

<u>*/s/ Gregg L. Weiner*</u>
*Counsel for AMLQ Holdings (Cay), Ltd.*