UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TELECOM BUSINESS SOLUTION, LLC, *et al.*,

Petitioners,

-against-

22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____        │
│ DATE FILED:  1-18-2023               │
└─────────────────────────────────────┘
```

### MEMORANDUM OPINION

Appearances:

Gregg L. Weiner
Ethan Fitzgerald
Daniel V. Ward
Katherine M. McDonald
ROPES & GRAY LLP

David A. Landman
Michael N. Ungar
Katherine M. Poldneff
Gregory C. Djordjevic
ULMER & BERNE LLP
*Attorneys for Petitioners*

Jonathan D. Lupkin
Michael B. Smith
LUPKIN PLLC

Juan J. Rodriguez
CAREY RODRIGUEZ MILIAN, LLP
*Attorneys for Respondents*

LEWIS A. KAPLAN, *District Judge.*

This action is before the Court on the petition of Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay) Ltd. ("AMLQ" and, together with Peppertree, "Petitioners") to confirm an arbitration award (Dkt 7) and the cross-petition of Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra") and DT Holdings, Inc. ("DTH" and, together with Terra, "Respondents") to vacate that award (Dkt 27). Respondents seek also to amend their cross-petition to vacate the arbitration award and to vacate two interim orders issued by the arbitrators. (Dkt 75; Dkt 29)

On February 24, 2022, a three-arbitrator panel (the "Panel") unanimously issued the First Partial Final Award ("FPFA"), which determined that Respondents had breached a forced sale provision in the shareholders agreement (the "SHA") between and among Terra and Petitioners and ordered its specific performance.[1] During the pendency of the arbitration, the Panel issued two interim orders granting emergency injunctive relief to Petitioners due to a troubling pattern of misconduct by Respondents. I assume familiarity with the many filings in this action and set forth only the facts pertinent to the parties' motions below.

### Facts

*The Parties' Contractual Relationship*

On October 22, 2015, Petitioners and Terra entered the SHA whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"), the business of which is the

---

[1]     Dkt 9-22 (hereinafter "FPFA").

development and operation of telecommunications towers in Central and South America.[2]  Pursuant

to the SHA, Terra became the majority shareholder of the Company, holding about 55 percent, and

Petitioners became the minority shareholders of the Company, holding about 45 percent.[3]  The SHA

provides that, five years after the effective date of the agreement (the "Lock-Up Period"), Petitioners

unilaterally could initiate a sale of the Company according to a procedure stated therein.[4]  The SHA

provides also that it is governed by New York law and that the parties to the agreement are "entitled

to specific performance" of any provision under Sections 8.10 and 8.12, respectively.[5]

On the same day that Petitioners and Terra entered into the SHA, the Company entered

into two contracts – a Development Agreement and an Offshore Turnkey Engineering, Procurement

and Management Contract (the "EPC Contract") – that governed the relationship between the

Company and Terra's affiliate, DTH.  Pursuant to these contracts, DTH was paid for construction of

the Company's telecommunications towers.[6]  The agreements between the Company and DTH include

---

[2]

FPFA, at ¶ 1.

The facts are drawn principally from the Panel's FPFA of February 24, 2022 and interim orders of November 12, 2021 and March 15, 2022.  The Court "is not empowered to second-guess the arbitrators' fact-finding or assessment of credibility" and "must accept findings of fact if they are not clearly erroneous." *Acciardo v. Millennium Sec. Corp.*, 83 F. Supp. 2d 413, 417 (S.D.N.Y. 2000) (citing *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 706, 725–26 (2d Cir. 1998); *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 686 (2d Cir. 1996)).

[3]

FPFA, at ¶ 1.

[4]

Dkt 9-1, at 9, 28–31 [hereinafter "SHA"].

[5]

SHA, at 48–49.

[6]

FPFA, at ¶ 2.

DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernandez, who

4

a service agreement whereby the Company pays DTH to provide the "operating and management functions" of the Company – including provision of the Company's CEO and COO (the "Management Team") – in consideration of a stipulated monthly payment by the Company.[7]

On November 4, 2020, two weeks after the expiration of the five-year Lock-Up Period, Petitioners sent a letter to the Company and Respondents purporting to initiate a sale of the Company to Torrecom Partners LP ("Torrecom") pursuant to Section 5.04(b) of the SHA.[8]  On November 24, 2020, Terra replied by letter rejecting the sale contemplated by Petitioners.  Over the following two months, the parties exchanged several communications in which Petitioners sought to retain an investment bank to facilitate a sale of the Company to an unaffiliated third-party purchaser – as provided by Section 5.04(b) of the SHA – and Terra refused, instead seeking to buy out Petitioners' shares in the Company.[9]

On February 2, 2021, Petitioners commenced the arbitration underlying this action (the "Arbitration").  They alleged, *inter alia*, that Terra had breached the SHA by obstructing their proposed sale of the Company and sought damages or specific performance.[10]

*The Phase I Arbitration*

Pursuant to the SHA's dispute resolution provision, the Arbitration was held in New

---

serves as one of Terra's representatives on the Company's board of directors.

[7]     FPFA, at ¶ 3.

[8]     FPFA, at ¶ 10.

[9]     FPFA, at ¶¶ 12–16.

[10]    *Id.*

York City before a three-arbitrator panel under the rules of the American Arbitration Association ("AAA").   Petitioners and Respondents each appointed one arbitrator.   These party-appointed arbitrators in turn appointed the third arbitrator, who acted as chairman of the Panel (the "Chairman").

In August 2021, Petitioners filed a written submission seeking expedited, phased consideration of their request for specific performance.[11]   Respondents opposed this request in two separate submissions.   On August 12, 2021, the Panel granted Petitioners' request for expedited consideration of Petitioners' claim for specific performance of Section 5.04(b) ("Phase 1").[12]

Respondents then sought extensive discovery that purportedly was relevant to the Phase 1 issue of specific performance.   Petitioners opposed this request and the Panel rejected it, concluding that the proposed discovery was "not directly relevant to the Phase 1 specific performance issue."[13]

Phase 1 consisted of the following process:

- On September 27, 2021, the parties submitted Phase 1 opening memorials, which, with respect to the sale provision issue, contained a combined total of more than 66 pages of argument, 64 exhibits, and six witness statements.[14]

- On October 28, 2021, the parties submitted extensive responsive memorials, which contained more briefing, seven exhibits, and two witness statements related to the sale

---

[11]     Dkt 9-19, at 15.

[12]     Dkt 9-21, at 1.

[13]     Dkt 32-11.

[14]     Dkt 9, Landman Decl., at ¶ 25; Dkt 32-12; Dkt 32-13.

claim.[15]

- On November 15, 2021, the parties provided written responses to twelve questions from the Panel related to the sale claim, totaling more than eleven additional single-spaced pages of argument.[16]

- On December 1, 2021, the Panel conducted an all-day hearing on the Phase 1 issue, which produced nearly 300 transcript pages of argument related to the sale claim.[17]

- On December 9, 2021, Respondents requested that the Panel "consolidate the pending motion for specific performance with a final hearing on the merits affording the parties an opportunity to engage in discovery."[18]  On January 6, 2022, Petitioners submitted a ten-page response, arguing principally that "any documents and other information necessary to decide this claim were already in the possession of the parties."[19]  On January 13, 2022, Respondents submitted a nine-page reply brief related to the Phase 1 issue.

On February 24, 2022, upon consideration of the parties' extensive submissions and oral argument during an all-day hearing dedicated to the Phase 1 issue, the Panel issued its unanimous FPFA ordering a sale of the Company.  The Panel determined that "it [was] appropriate to grant

---

[15]
      Dkt 9, Landman Decl., at ¶ 26; Dkt 49-32; Dkt 49-33.

[16]
      Dkt 9, Landman Decl., at ¶ 27; Dkt 49-34; Dkt 49-35.

[17]
      Dkt 9, Landman Decl., at ¶ 28; Dkt 32-26.

[18]
      Dkt 49-3, at 1.

[19]
      Dkt 47, at 7.

7

specific performance at this stage even though there has been no discovery" into Respondents' counterclaims against Petitioners because such claims may be addressed in the second phase of the Arbitration.[20]

*The November 12, 2021 and March 15, 2022 Interim Orders*

In October 2021, during the pendency of the Phase 1 proceedings, independent counsel for the Company informed the parties and the Panel that Respondents were subjecting the Company's executive officers to "an increasing level of harassment and improper pressure."[21] Indeed, counsel advised that "this harassment [recently had] turned into a crisis" and – without swift action by the Panel – would "almost certainly result in actual and significant damage" to the Company.[22] Ultimately, Respondents sought to remove the Company's chief executive and chief operating officers (collectively, the "Management Team") without board approval, in contravention of Section 4.04(a)(vi) of the SHA.[23]

On October 15, 2021, Petitioners submitted an Emergency Motion for Expedited Interim Relief (the "Emergency Motion") to the Panel, seeking, *inter alia*, that the Panel restore the Management Team to its positions in the Company.[24] The Panel promptly conducted an extensive

---

[20]     Dkt 9-22, at 32 n.11.

[21]     Dkt 32-14, at 1–2.

[22]     *Id.*

[23]     *See* SHA § 4.04(a)(vi) (board approval required for "the hiring or firing and compensation of members of the Management Team, including the Executive Team").

[24]     Dkt 32-16.

8

process to resolve the issues in the Emergency Motion, which included over fifty pages of briefing, six witness statements, and many exhibits, as well as multiple proffers of testimony and an evidentiary hearing of over five hours, resulting in over 230 transcript pages.

On November 12, 2021, pursuant to AAA Commercial Rule 37, the Panel granted the Petitioners "interim relief in the form of an injunction requiring that DTH immediately restore [the Management Team] to the Company positions [it] occupied as of March 19, 2021, and that Respondents Terra and TBS take all necessary steps to cause DTH to comply with this Order."[25]

Respondents did not comply with the Panel's interim order in the ensuring months, which resulted in another extensive proceeding entailing numerous submissions and a four-hour hearing.  On March 15, 2022, the Panel issued another interim order, pursuant to AAA Commercial Rule 37, finding that Respondents had failed to comply with the November 12 Order and ordering Respondents to publish certain corrective statements.[26]  Specifically, the Panel ordered Respondents to publish statements "reaffirm[ing] the ongoing roles of [Management Team] in [the] company as fully authorized executive management of [their] affiliate [the Company]."[27]

*Alleged Conflicts of Interest*

At the onset of the Arbitration, on March 30, 2021, the Respondents-appointed arbitrator disclosed that the arbitrator's law firm, Jenner & Block, "has been both adverse to, and represented, assorted affiliates of Goldman Sachs, which [she] underst[ood] to be related to one of the

---

[25]     Dkt 32-24 [hereinafter, the "November 12 Order"].

[26]     Dkt 32-45 [hereinafter, the "March 15 Order"].

[27]     *Id.* at ¶¶ 13–14.

[Petitioners]."[28]   On April 23, 2021, the ICDR informed counsel for Respondents and Petitioners that "there were no objections" to that disclosure.[29]  Nine months later, Respondents emailed the ICDR *ex parte*, informing it that the Respondents-appointed arbitrator "was recently nominated to be a party-appointed arbitrator" by a party adverse to DTH in a separate and unrelated arbitration.[30]  Respondents claimed that this nomination created "justifiable doubt" about their party-appointed arbitrator's impartiality.[31]  That same day, the ICDR responded that the Respondents-appointed arbitrator "has not and will not be appointed as party-appointed arbitrator" in that unrelated arbitration.[32]  On January 24, 2022, after joining a new law firm, Arnold & Porter, the Respondents-appointed arbitrator disclosed that lawyers at her new firm represent Goldman Sachs "on a variety of matters not related to this arbitration."[33]  She disclosed also that her firm had completed a conflicts check, which found no issues, and she "reaffirm[ed] that this circumstance does not in any way affect [her] independence and impartiality in this arbitration."[34]

On January 31, 2022, Respondents submitted an objection to the ICDR, challenging the continued service of their party-appointed arbitrator on the grounds that: (i) the

---

[28]   Dkt 49-29.  Goldman Sachs is the parent company of AMLQ.

[29]   Dkt 9-10, at 2.

[30]   Dkt 32-34, at 6.

[31]   *Id.*

[32]   *Id.*, at 5.

[33]   Dkt 32-33.

[34]   *Id.*

10

Respondents-appointed arbitrator "was nominated to serve as the party-appointed counsel by DTH's adversary in another case and failed to disclose that nomination or any of the surrounding circumstances to the parties in this arbitration" and (ii) she "recently became a partner at a new law firm, and her disclosures and publicly available information show that her new law firm has ongoing and past relationships with Goldman Sachs."[35]  Petitioners submitted their response to Respondents' objections on February 16, 2022.

On February 22, 2022, "[a]fter careful review of the comments submitted by the parties and pursuant to [its] authority under the applicable Rules," the ICDR's International Administrative Review Council denied Respondents' challenge and reaffirmed the Respondents-appointed arbitrator.[36]

Respondents here seek to vacate the FPFA based on the same alleged impartiality of their handpicked arbitrator that already has been reviewed carefully and rejected by the ICDR.  They seek also to amend their cross-petition to seek vacatur of the FPFA on the basis of alleged partiality by the Chairman.  The latter point arose as a result of the Chairman's June 1, 2022 disclosure to the parties that he has a second cousin, also a friend, who is a retired Goldman Sachs partner (the "June 1 Disclosure").[37]  The Chairman further disclosed that his second cousin had retired from Goldman Sachs prior to commencement of the Arbitration and that he had "no knowledge of or connection to the subject matter of this case."[38]  Respondents allege that these disclosures "were in direct contradiction to the [Chairman's] answers on his General Arbitrator Oath Form," which stated that he

---

[35]     Dkt 32-36.

[36]     Dkt 32-43.

[37]     Dkt 77-5, at 4.

[38]     Dkt 76, at 3.

had no "past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind."[39]  On June 8, 2022, upon the motion of the Respondents to disqualify the Chairman, the ICDR concluded that "[a]fter careful review of the comments submitted by the parties and pursuant to our authority under the applicable [AAA Commercial] Rules, . . . the challenge to the [Panel] is hereby denied and the [Panel] is therefore reaffirmed."[40] As with the Respondents-appointed arbitrator, Respondents seek to challenge the impartiality of the Chairman on the same grounds that already were reviewed carefully and rejected by the ICDR.

## Discussion

### Legal Standard

Arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[41] An award should be confirmed so long as there is a "barely colorable justification" for the outcome that the arbitrator reached, even if the Court "disagree[s] with it on the merits."[42]

There are four grounds on which an arbitration award may be set aside: (1) "corruption,

---

[39]

Id.; Dkt 77-5, at 3.

[40]

Dkt 84, Ward Decl., at ¶ 8; Dkt 84-1.

[41]

Rich v. Spartis, 516 F.3d 75, 81 (2d Cir. 2008) (quoting Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)) (internal quotation marks omitted).

[42]

Landy Michaels Realty Corp. v. Local 32B–32J Serv. Employees Int'l, 954 F.2d 794, 797 (2d Cir. 1992).

fraud, or undue means," (2) "evident partiality or corruption in the arbitrators, or either of them," (3) "misconduct [by the arbitrators] in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy,"or (4) the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."[43]  Atop these four discrete grounds is a "judicial gloss" that contemplates vacatur where an award was rendered "in manifest disregard of the law."[44]  Satisfying this standard has been described as a "heavy burden" that requires "more than error or misunderstanding with respect to the law."[45]  Judicial confirmation of an arbitration award is considered "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."[46]

       Respondents seek to vacate the FPFA on three principal bases.  First, Respondents claim that the Panel violated "fundamental fairness" by refusing to provide them with "a fair opportunity to be heard."[47]  Second, Respondents argue that the Panel acted in "manifest disregard of the law" and in excess of its authority by granting specific performance to Petitioners.[48]  Third,

---

[43]

    9 U.S.C. § 10(a)(1)–(4).

[44]

    *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340, 346 n.10 (2d Cir. 2010); *cf. Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662 (2010) (explaining that "manifest disregard" does not amount to a fifth ground for vacatur "separate from those enumerated in the [Federal Arbitration Act]").

[45]

    *T.Co Metals, LLC*, 592 F.3d at 339 (citations and internal quotation marks omitted).

[46]

    *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

[47]

    Dkt 29, at 27.

[48]

    *Id.* at 28.

Respondents claim that there was "evident partiality" by two of the three arbitrators on the Panel in favor of Petitioners.[49]  Respondents' arguments are without merit and the FPFA is confirmed for the reasons set forth below.

*Fairness of the Arbitration Process*

Section 10(a)(3) of the FAA authorizes vacatur where "the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy."[50]  Federal courts do not superintend arbitration proceedings, and this Court's "review is restricted to determining whether the procedure was fundamentally unfair."[51]  Neither the Panel's decision to phase the arbitration nor the Panel's denial of discovery in Phase 1 of the Arbitration constituted misconduct that rendered the Arbitration fundamentally unfair.

First, the Panel's decision to phase the Arbitration was well within the Panel's "broad discretion over procedural aspects of the arbitration, including choosing to bifurcate the proceedings when appropriate."[52]  Moreover, the AAA Commercial Rules provide that the Panel, in "exercising [its] discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute

---

[49]

*Id.* at 34; Dkt 76, at 3.

[50]

9 U.S.C. § 10(a)(3).

[51]

*LTF Constr. Co., LLC v. Cento Sols. Inc.*, No. 20-CV-4097 (LAP), 2020 WL 7211236, at *3 (S.D.N.Y. Dec. 7, 2020) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

[52]

*See Duferco, S.A. v. Tube City IMS, LLC*, 2011 WL 666365, at *5 (S.D.N.Y. Feb. 4, 2011) *aff'd sub nom. Duferco S.A. v. Tube City IMS, L.L.C.*, 464 F. App'x 28 (2d Cir. 2012) ("arbitrators enjoy broad discretion over procedural aspects of the arbitration, including choosing to bifurcate the proceedings when appropriate.").

14

and may direct the order of proof, *bifurcate proceedings* and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case."[53]  The Panel provided Respondents with ample opportunity to be heard on the propriety of the phased approach, and the implementation of that procedure was well-founded.

Second, the Panel's decision to deny Respondents' discovery requests during Phase 1 was within the Panel's discretion to vary procedure and deny discovery.[54]  Although arbitrators "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument," they are not required to hear all evidence offered by a party or "follow all the niceties observed by the federal courts."[55]  Only the "most egregious error which adversely affects the rights of a party" warrants vacatur under FAA Section 10(a)(3).[56]  As set forth above, Respondents had ample opportunity to be heard during the Phase 1 proceedings and have failed to identify any specific category of discovery that was necessary to determination of the Phase 1 issue.  They have failed to establish any misconduct by the Panel that rendered the Arbitration fundamentally unfair.  Vacatur therefore would be improper on this basis.

---

[53]      AAA Commercial Rule R-32(b) (emphasis added).

[54]      *See* AAA Commercial Rule R-32(a); *see also Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 55 (S.D.N.Y. 1997) ("It is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence.").

[55]      *See ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, No. 15 CIV. 4983 (AT), 2016 WL 5475987, at *3 (S.D.N.Y. June 6, 2016) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

[56]      *In re Arbitration Between Interdigital Communications Corp. v. Samsung Electronics Co.*, 528 F. Supp. 2d 340, 354 (S.D.N.Y. 2007).

*Manifest Disregard of the Law*

        Respondents argue that the FPFA was "issued in manifest disregard of the law" and therefore should be vacated.[57]  Specifically, Respondents contend that the Panel "acted in direct contravention of controlling law by refusing to apply the New York law of contractual remedies to a contract governed by New York law."[58]

        This argument is without merit.  To vacate an award based on manifest disregard of the law, a party must establish that there is a "well-defined, explicit and clearly applicable law," the arbitrators actually knew of that law, and they nevertheless improperly applied it.[59]  A court's review of an award under this standard is "severely limited."[60]  Indeed, "manifest disregard of the law" is a "doctrine of last resort" and is limited to those "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent."[61]  No such impropriety occurred here.

        In the FPFA, the Panel unanimously concluded that it was authorized to order specific performance of the SHA's sale provision on several bases, including the New York law of contractual remedies.  First, the Arbitrators concluded that their "remedial powers are derived from the Parties' contract" and therefore that their power to grant specific performance was controlled by Section 8.12

---

[57]    Dkt 29, at 28.

[58]    *Id.*

[59]    *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011).

[60]    *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989)).

[61]    *Id.*

16

of the SHA, which entitled the parties to specific performance of all of the SHA's terms.[62]  Second, the Arbitrators noted that AAA Commercial Rule R-47(a) permitted them to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."[63]  Third, the Arbitrators concluded that even if New York law governed the availability of specific performance, Petitioners had satisfied its requirements.[64]

In short, the Panel plainly did not disregard the law of specific performance.  To the contrary, the Arbitrators expressly considered the elements of New York's specific performance law and found that Petitioners had satisfied each of them.  The Panel concluded, *inter alia*, that Petitioners substantially performed their obligations under the SHA, that New York did not require resolution of Respondents' counterclaims before awarding specific performance, and that Petitioners had no adequate remedy at law "even without regard to Section 8.12 [of the SHA]."[65]  Accordingly, Respondents have failed to establish a manifest disregard of the law.

*Evident Partiality*

Evident partiality may be found "only when a reasonable person, considering all the

---

[62]

FPFA, at ¶¶ 18, 20.

[63]

FPFA, at ¶ 19.

[64]

FPFA, at ¶¶ 37, 44, 49–55.

[65]

FPFA, at ¶¶ 37, 44, 49–55.

17

circumstances, would *have* to conclude that an arbitrator was partial to one side."[66]  While evidence

of actual bias is not required, "partiality may not be based on speculation."[67]  Rather, partiality may

be inferred "from objective facts inconsistent with impartiality."[68]  Here, Respondents have not

provided any evidence of actual bias or objective facts inconsistent with impartiality as to any of the

Arbitrators.

       With respect to the Respondents-appointed arbitrator, the ICDR already has carefully

reviewed and rejected all of Respondents' evidence of a purported disqualifying conflict.  Terra agreed

in the SHA to abide by the AAA Commercial Arbitration Rules, including Rule 18(c) stating that such

decisions by ICDR "shall be conclusive."[69]  This alone is sufficient to reject Respondents' arguments

regarding the partiality of their handpicked arbitrator.[70]  Yet even if the Court considered *de novo* the

partiality of the Respondents-appointed arbitrator, Respondents still would fail.  Neither her affiliation

---

[66]

    *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, No. 20-CV-02772 (LAK), 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (quoting *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (emphasis in original) (internal quotation marks and citation omitted)).

[67]

    *Id.*

[68]

    *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (internal quotation marks and citation omitted).

[69]

    AAA Commercial Rule 18(c).

[70]

    *See, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.*, 427 F. Supp. 3d 518, 527 (S.D.N.Y. 2019) ("[T]he AAA found no issue with either [arbitrator] and accordingly denied petitioners' objections and allowed the proceeding to continue.  The Court does not disagree with the conclusion of the AAA."); *NGC Network Asia, LLC v. PAC. Grp. Int'l, Inc.*, 2012 WL 377995, at *3 (S.D.N.Y. Feb. 3, 2012), *aff'd*, 511 F. App'x 86 (2d Cir. 2013) ("In accordance with the Rules, [the losing party] made its objections to the AAA and the AAA determined that [the arbitrator] would not be disqualified.  The law in this District and Circuit clearly states that the parties are bound by the AAA's determination.").

18

with Arnold & Porter nor her mere nomination – without actual appointment – as an arbitrator by an unrelated party in an unrelated proceeding is sufficient to establish evident partiality by the Respondents-appointed arbitrator.

With respect to the Chairman, Respondents seek to amend their cross-petition to vacate the FPFA due to the Chairman's June 1 Disclosure.  ICDR already has reviewed and rejected disqualification of the Chairman on this ground and per AAA Commercial Rule 18(c), this decision is conclusive.  Nevertheless, taking the June 1 Disclosure into consideration, as well as the myriad criticisms of the Chairman in the Respondents' papers, Respondents have failed to meet their burden of establishing objective facts that are inconsistent with impartiality.  Accordingly, Respondents have failed to establish evident partiality by the Chairman and amendment of the cross-petition to vacate would be futile.[71]

*Review of the Interim Orders*

Respondents seek also to vacate the November 12 Order and March 15 Order on the basis that the Arbitrators "exceeded their powers" by acting beyond the scope of the SHA.[72]  Yet district courts do not have the authority to review interlocutory rulings by arbitration panels.[73]

---

[71]  *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied."); *Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *27 (S.D.N.Y. Sept. 16, 2020) (Because "[t]he new allegations Plaintiffs would bring . . . do not change [the] result, . . . the motion for leave to amend the Complaint is denied as futile.").

[72]  9 U.S.C. § 10(a)(4).

[73]  *See Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 414 (2d Cir. 1980); *see also Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 906 (S.D.N.Y. 1982), *aff'd*, 689 F.2d 301 (2d Cir. 1982) ("Only awards that are final are subject to judicial review.").

19

"Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable."[74]  Indeed, under this Circuit's FAA jurisprudence, "as a general principle, in order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them."[75]

       Here, not only did the Panel expressly designate these rulings as "interim" orders, pursuant to AAA Commercial Rule 37, but the orders expressly contemplated "further proceedings" before the Panel and reserved allocation of fees and costs.  The Panel revisited the November 12 Order due to Respondents' failure to comply with its terms, which resulted in the issuance of the March 15 Order.  Issues related to Respondents' non-compliance with the March 15 Order remain pending before the Panel and therefore are not final and reviewable by this Court.

       In all events, even if judicial review of the interim orders were proper, I would deny Respondents' motion to vacate those orders.  First, the Panel has jurisdiction over DTH, which has waived any jurisdictional argument by fully participating in the Arbitration, including no less than twelve appearances before the Panel.[76]  Thus, it was within the Panel's authority to order Respondents, including DTH, to restore the Management Team to its positions at the Company.  Second, as set forth above, the parties had ample opportunity to be heard regarding Respondents' non-compliance with the November 12 Order, as addressed by the March 15 Order.  The March 15 Order resulted from the

---

[74]     *Michaels*, 624 F.2d at 414.

[75]     *JLNW, Inc. v. Nat'l Ret. Fund*, No. 17-CV-5095 (AJN), 2018 WL 4757953, at *4 (S.D.N.Y. Sept. 28, 2018).

[76]     *See Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 533 (S.D.N.Y. 2014); *Data-Stream AS/RS Technologies, LLC v. China Int'l Marine Containers, Ltd.*, No. 02 Civ. 6530(JFK), 2003 WL 22519456, at *3 (S.D.N.Y. Nov. 6, 2003) ("By participating in the arbitration, [Respondent] effectively waived its right to claim that it should not be a party to the arbitration.").

20

submission of numerous witness statements and exhibits, as well as several briefs and a four-hour oral

argument.  Accordingly, the process resulting in the March 15 Order satisfied the requirements of

fundamental fairness.


*Conclusion*

For the foregoing reasons, Petitioners' petition to confirm the FPFA (Dkt 7) is

GRANTED and Respondents' cross-petition to vacate the FPFA, as well as the November 12 Order

and March 15 Order, (Dkt 27) is DENIED.

Respondents' motion to amend its cross-petition to vacate (Dkt 75) is DENIED as

futile.  The Clerk shall enter judgment accordingly.

SO ORDERED.

Dated:        January 18, 2023

_____
Lewis A. Kaplan
United States District Judge