**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- X
TELECOM BUSINESS SOLUTION, LLC, et al.,        :     Civil Action No.: 1:22-cv-01761
                                               :
                        Petitioners,           :     Judge Lewis A. Kaplan
        v.                                     :
                                               :     Magistrate Judge Robert W.
TERRA TOWERS CORP., et al.,                    :     Lehrburger
                                               :
                        Respondents.           :
------------------------------------------------------------- X
```

## MEMORANDUM IN SUPPORT OF MOTION TO HOLD RESPONDENTS IN CIVIL CONTEMPT AND FOR CONTEMPT SANCTIONS

### I.    INTRODUCTION

Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree")

and AMLQ Holdings (Cay) Ltd. ("AMLQ," and together with Peppertree, "Peppertree/AMLQ")

feel compelled to file this Motion because Terra Towers Corp. and TBS Management, S.A.

(collectively, "Respondents") have failed and refused to comply with this Court's confirmation

order and judgment, ECF Nos. 124, 125 (collectively, the "Order"), which directed them to pay,

jointly and severally, certain amounts owed to Peppertree and AMLQ by February 17, 2023.

Respondents' failure to make the ordered payments is just the most recent example of their years-

long pattern of non-compliance and intransigence in which they have persistently failed to comply

with their legal obligations pursuant to numerous contracts, repeated, binding arbitration orders,

and now a federal court order. As a result, Respondents should be held in civil contempt and

required to immediately remit payment to Peppertree in the amount of $349,844.26 and to AMLQ

in the amount of $494,396.28 (plus additional interest at the ordered rate of 3.25% per annum,

from February 24, 2022, the date of the First Partial Final Award ("FPFA"), to the date of

payment). If Respondents fail to do so, they should be subject to contempt sanctions in the amount of an escalating *per diem* fine to compel compliance.

## II.    BACKGROUND

On January 18, 2023 this Court confirmed in full the FPFA issued by a unanimous three-arbitrator tribunal in the underlying arbitration[1], and denied Respondents' Cross-Petition to Vacate the same. *See* ECF No. 124. It also rendered a final judgment granting Peppertree/AMLQ's Petition to Confirm the FPFA and denying Respondents' Cross-Petition to Vacate.  ECF No. 125. Pursuant to this Court's Order and the FPFA, Respondents must pay, jointly and severally, Peppertree and AMLQ's attorneys' fees, costs, and forum fees related to certain issues in Phase 1 of the underlying arbitration. The FPFA provides, in relevant part:

> (iv) The Claimants' share of the compensation and expenses of the arbitrators totaling US$200,000 (the "Awarded Tribunal Fees") shall be borne by Respondents, jointly and severally. Therefore, Respondents, being jointly and severally liable, shall pay the Peppertree Claimants, within thirty (30) days from the date of this Partial Final Award, the sum of United States Dollars 140,000 (US$140,000), representing that portion of the Awarded Tribunal Fees that have been paid to the arbitrator for proceedings culminating in this Partial Final Award from deposits made to the ICDR by the Peppertree Claimants. The Respondents, being jointly and severally liable, shall reimburse AMLQ, within thirty (30) days from the date of this Partial Final Award, the sum of United States Dollars 60,000 (US$60,000), representing that portion of the Awarded Tribunal Fees that have been paid to the arbitrators for proceedings culminating in this Partial Final Award from deposits made to the ICDR by AMLQ. The amounts payable to the Claimants under this sub-paragraph shall bear simple interest from the date of this Partial Final Award until the date of payment at the rate of three and one quarter percent (3.25%) per annum.
>
> (v) Respondents, being jointly and severally liable, shall pay the Peppertree Claimants, within thirty (30) days from the date of this Partial Final Award, the sum of United States Dollars 199,036.90

---

[1]    *See* ICDR Case No. 01-21-0000-4309, *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*

(US 199,036.90) to reimburse them for attorney fees and costs incurred in connection with proceedings culminating in this Partial Final Award. The amount payable shall bear simple interest from the date of this Final Award until the date of payment at the rate of three and one quarter percent (3.25%) per annum.

(vi) Respondents, being jointly and severally liable, shall pay AMLQ, within thirty (30) days from the date of this Partial Final Award, the sum of United States Dollars 419,123.40 (US 419,123.40) to reimburse them for attorney fees and costs incurred in connection with proceedings culminating in this Partial Final Award. The amount payable shall bear simple interest from the date of this Final Award until the date of payment at the rate of three and one quarter percent (3.25%) per annum.

ECF No. 9-22, FPFA at ¶ 72(iv)-(vi). Pursuant to the FPFA, these payments were originally due on or before March 24, 2022, within thirty (30) days from the date of the FPFA. Because Respondents refused to comply with the FPFA until it was confirmed, they were obligated to make these payments to Peppertree and AMLQ, with applicable interest, no later than **February 17, 2023**—*i.e.*, within thirty (30) days from the date of the confirmation Order.

At the time the FPFA was issued, Respondents owed Peppertree $339,036.90 and owed AMLQ $479,123.40. *See* FPFA at ¶ 72(iv)-(vi). These amounts have increased at the specified interest rate of 3.25% per annum. *Id.* As of the required February 17, 2023 payment date, Respondents, jointly and severally, owed Peppertree a total of $349,844.26, and they owed AMLQ a total of $494,396.28. Respondents failed to pay these—or any—amounts due to Peppertree/AMLQ pursuant to the FPFA as of February 17, 2023.

Counsel for Peppertree and Counsel for AMLQ advised Counsel for Respondents of the upcoming February 17, 2023 deadline for payment of the outstanding amounts multiple times. They first so advised on January 20, 2023—just two days after this Court confirmed the FPFA. *See* Exhibit A. Then, on February 15, 2023, Counsel for Peppertree and Counsel for AMLQ once again sought confirmation that Respondents would comply with their obligations under this

Court's Order and the FPFA and provided wire instructions for the required payments. *See id*. As of the date of this Motion, neither Peppertree nor AMLQ have been paid *any* amount by Respondents.

## III.   LAW AND ARGUMENT

A court's power to hold a party in contempt "serves to protect the due and orderly administration of justice and to maintain the authority and dignity of the court." *CBS Broad. Inc. v. Filmon.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (*quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 754 (1980)). "The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of [it]." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986). A court has inherent authority to enforce its orders. *See Cordius Trust v. Kummerfled,* No. 99 Civ. 3200 (DLC), 2009 WL 3416235 at *5 (S.D.N.Y. Oct. 23, 2009) (citing *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir. 1981)) ("a federal district court has 'the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages.")). A court's inherent power to hold a party in civil contempt may be exercised when (1) the order the party failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *Bridgeport Guardians v. Delmonte,* 371 F.Supp.2d 2d 115, 119 (D. Conn. 2005).

By its January 18, 2023 Order, this Court confirmed the FPFA in full. *See* ECF Nos. 124, 125. Pursuant to the FPFA, Respondents were required to remit payment in the amount of $339,036.90 and $479,123.40 respectively, with interest[2], within 30 days, by February 17, 2023. The January 18, 2023 Order clearly and unambiguously requires Respondents to comply with the

---

[2]       These amounts were subject to an interest rate of 3.25% per annum, running from February 24, 2022, the date of the FPFA, to the date of payment.  ECF No. 9-22, FPFA at ¶¶ 72(iv)-(vi).

FPFA as issued by the arbitration tribunal. By failing to remit payment to Peppertree and AMLQ, despite Peppertree/AMLQ's diligent efforts to seek confirmation of such payment, *see* Ex. A, Respondents have failed to comply with their obligations under the Order and the FPFA.   Thus, Respondents should be ordered to show cause why they should not be held in civil contempt and subject to appropriate contempt sanctions as a result of their unwillingness to do what is required of them, per the Court's Order.[3]

Civil contempt sanctions may serve dual purposes, namely 'to secure future compliance with court orders and to compensate the party that has been wronged.'" *Cordius Trust v. Kummerfeld*, 2009 WL 3416235, at *6 (S.D.N.Y. Oct. 23, 2009) (*quoting Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems*, 369 F.3d 645, 657 (2d Cir. 2004)). A court has "broad discretion to design a remedy that will bring about compliance." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 657 (quotations omitted). When fashioning coercive sanctions, a court considers "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987); *accord Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 658. In

---

[3]       Respondents' appeal to the Second Circuit does not affect this Court's ability to secure compliance with its January 18, 2023 Order confirming the FPFA. Notably, Respondents have not posted a bond or other security sufficient to stay execution of the Court's Order, nor have they even sought such a stay. It is well-established that a District Court retains its jurisdiction to enforce its orders through contempt proceedings. "Where ... the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes." *In re Gushlak*, No. 11-MC-0218 NGG JO, 2012 WL 2564466, at *10 (E.D.N.Y. Jan. 30, 2012), *report and recommendation adopted*, No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). *See also In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994) (concluding that bankruptcy court's actions were not taken without jurisdiction because they were undertaken to enforce decisions that were pending appeal in the S.D.N.Y.).

considering these factors, the contemnor bears the burden to show a lack of financial resources to prevent imposing monetary sanctions. *Id.* When an existing fine has not secured compliance with a court's orders, courts will often "increase the amount of a per diem fine." *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. The Kyrgyz Republic*, No. 12 Civ. 4502 (ALC) (RWL), 2020 WL 7890222, at *3 (S.D.N.Y. Nov. 5, 2020) (collecting cases).

Respondents should be subjected to contempt sanctions in the amount of a *per diem* fine for their failure to comply with the January 18, 2023 Order, which escalates in the event of continued non-compliance. Daily fines have been recognized as appropriate sanctions designed to coerce compliance with a court order, including orders requiring payments.  For example, in *Spectacular Venture, L.P. v. World Star Intern., Inc.*, this Court imposed a daily sanction of "$2,500 for each day defendant fail[ed] to comply with its obligations" (increased by $500/day for each day defendant failed to comply) to pay certain sums owed pursuant to a consent judgment. 927 F. Supp. 683, 684-86 (S.D.N.Y. 1996); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, No. 12 Civ. 4502, 2018 WL 6251982, at *4-5 (S.D.N.Y. Mar. 30, 2018) (imposing "civil contempt sanctions […] of $5,000 per day" due, in part, to the Republic's failure to pay "the amounts due" under "two fee orders" even "though the orders ha[d] [] been outstanding for several months") *report and recommendation adopted*, 2018 WL 5629900 (S.D.N.Y. Oct. 31, 2018).   Indeed, courts in this Circuit routinely impose daily monetary sanctions to coerce compliance with their orders. *See, e.g., Aquavit Pharms. v. U-Bio Med,* No. 19-cv-3351 (VEC), 2021 WL 3862054, at *5-6 (S.D.N.Y Aug. 30, 2021) (ordering defendants to "pay $3,000 each calendar day" that they continued to violate a modified preliminary injunctive order); *see also Gucci Am., Inv. V. Gucci,* No. 07 Civ. 6820 (RMB) (JCF), 2009 WL 440463, at *4 (S.D.N.Y. Feb. 20, 2009) (ordering a party to take certain actions and stating that he "shall be liable for contempt

sanctions in the amount of $1,000 per day for each day that he" fails to abide by the court's order); *Citigroup Inc. v. Seade,* No. 21 Civ. 10413 (JPC), 2022 U.S. Dist. LEXIS 34653 (S.D.N.Y. Feb. 28, 2022) (imposing daily sanctions in an amount of $5,000 per day, increasing by $5,000 every ten days of non-compliance); *Cardell Fin. Corp. v. Suchodolski Assoc.,* at 09 Civ. 6148(VM)(MHD), U.S. Dist. LEXIS 188295 at *217 (S.D.N.Y. July 17, 2012) (imposing coercive sanction in the amount of $1,000 per day of noncompliance with court order).

Respondents' failure to comply with this Court's Order is yet another example of their continued contemptuous misconduct, gamesmanship, and flagrant non-compliance that, as this Court has seen in the parties' other various pending petitions, have plagued the underlying arbitration. By way of example only, although the parties in the underlying arbitration have been litigating disputes between them for *over two years*, and the Tribunal in the arbitration has issued *three*, separate, unanimous, and well-reasoned partial final awards (all of which are/have been before this Court) and various interim orders, **Respondents thus far have failed to comply with a single one[4]**, rendering these awards ineffective and depriving Peppertree/AMLQ of their contractual rights to have their disputes resolved in *binding* arbitration unless Respondents are *forced* to comply. In addition, Respondents have failed to pay the required ICDR forum fees and even sought disqualification of the entire Tribunal (another issue that is pending before this

---

[4]   Respondents will, no doubt, claim that they have *now* taken initial steps to sell Continental Towers LATAM Holdings Limited (the "Company") as required by the FPFA (*i.e.*, agreed to engage an Investment Bank pursuant to the FPFA and governing Shareholders Agreement).  However, they have done so only in response to this Court's Order and while, at the same, taking other actions to frustrate the sale process, including, but not limited to, suing at least three (3) parties who are in the small pool of potential bidders and initiating and/or supporting duplicative and wrongful foreign arbitrations involving the Company, as explained further in the unanimous Third Partial Final Award issuing anti-suit injunctions requiring the termination of such foreign arbitrations (the confirmation of which is also pending before this Court).
   Notably, Respondents already have failed to comply with the Third Partial Final Award both because they have failed to terminate the wrongful foreign arbitrations by the March 6, 2023 compliance deadline, and because they have failed to deposit approximately $54 million into an escrow account, as security for the damages alleged in the four (4) pending foreign arbitrations, by the March 9, 2023 compliance deadline, as ordered by the Third Partial Final Award.

Court)—yet another attempt to undermine the binding arbitration process they agreed to and their obligations thereunder. There is little doubt that such antics will only continue unless and until this Court uses its inherent enforcement powers to ensure that Respondents face serious financial repercussions if they continue to blatantly ignore the rule of law and this Court's binding orders.

While Respondents may try to claim that they are *unable* to make the required payments, as the contemnors, it is *their* burden to establish such "inability **clearly, plainly, and unmistakably**," and "the credibility of [Respondents'] denial is to be weighed in the light of [their] present circumstances." *Dell Inc. v. Compudirect, Inc.*, 316 F.App'x 32, *2 (2d Cir. 2009) (emphasis added) ("The burden of establishing an inability to pay is on the contemnor.") Respondents certainly cannot meet that high burden here because they are anything but impoverished. *First*, since Peppertree initiated the underlying arbitration on February 2, 2021, Respondents' members of the Company's Board have repeatedly funded tower sites, over Peppertree's objections and in breach of the Company's governing documents, siphoning **over $15 million** in unauthorized funds out of the Company, including to pay DT Holdings, Inc. ("DTH"), the Company's *sole and exclusive* tower development partner and Respondents' close affiliate. *Second* public records readily demonstrate that one of the properties of Jorge Hernandez (who owns and controls Respondents and DTH[5]), located in Napa, California, is worth approximately $10 million. *Third*, DTH receives **$480,000 *monthly*** from the Company (of which Peppertree, Terra, and AMLQ are shareholders) for purported "back office" services to the

---

[5]    *See* ECF No. 9-22 (FPFA) at ¶¶ 1, 3 (finding that Respondents are "controlled by Respondent Jorge Hernandez" and DTH is "a company under common control with [Respondents]"); ECF No. 28-44 (Second Partial Final Award) at 5 n.1 ("DTH is controlled by Jorge Hernandez, who is the controlling person of Respondents Terra Towers Corp. and TBS Management S.A."); ECF No. 124 (Order) at 3 n.6 ("DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernandez, who serves as one of Terra's representatives on the Company's board of directors.").

Company, and that is a generous amount by any reasonable estimation. Thus, any claims of impoverishment are not credible.[6]

Peppertree/AMLQ respectfully suggest that, as a coercive sanction, Respondents be ordered to pay a fine in the amount of $2,500 per day to compel compliance with this Court's January 18, 2023 Order. Peppertree/AMLQ further request that such daily fine increase by $1,000 per day (to a total of $3,500 per day, and then $4,500/day, etc.), following every subsequent ten calendar day period of non-compliance. Alternatively, Peppertree/AMLQ are open and receptive to any other coercive and/or monetary sanction that the Court believes will accomplish the task of compelling the reluctant Respondents/contemnors to do what is required of them.

## IV.    CONCLUSION

For the reasons set forth above, Peppertree/AMLQ respectfully request that this Motion be granted, and that the Court hold Respondents in contempt and order coercive, escalating monetary sanctions, as set forth herein, for their failure to comply with the Order. A proposed order for the Court's consideration is attached hereto.

---

[6]       Should Respondents attempt to claim inability to pay as a defense in opposition to this Motion, Peppertree/AMLQ will be happy to provide the Court with further documentation related to these issues.

Dated:  March 14, 2023

Respectfully submitted,

/s/  Michael N. Ungar_____
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Gregory C. Djordjevic
(admitted *pro hac vice*)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:     (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:     (917) 262-0480
dlandman@ulmer.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

/s/  Gregg L. Weiner_____
Gregg L. Weiner
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:     (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
Katherine M. McDonald
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:     (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on March 14, 2023

Notice of this filing will be sent to all counsel of record through the Court's electronic notice

system.

*/s/* Michael N. Ungar

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*
