UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------  X
TELECOM BUSINESS SOLUTION, LLC, et al.,         :   Civil Action No.: 1:22-cv-01761
                                                :
                    Petitioners,                :   Judge Lewis A. Kaplan
          v.                                    :
                                                :   Magistrate Judge Robert W.
TERRA TOWERS CORP., et al.,                     :   Lehrburger
                                                :
                    Respondents.                :
------------------------------------------------------------------  X
```

## I.   INTRODUCTION

It is undisputed that Respondents[1] have failed to pay Peppertree/AMLQ[2] approximately $843,000, in direct violation of the Tribunal's First Partial Final Award (the "FPFA") and this Court's order ([ECF Nos. 124 and 125] the "Order"), which confirmed the FPFA in its entirety. In their Opposition,[3] Respondents do not attempt to argue that they have paid—or that they even intend to pay—the now past-due amounts.  Instead, they contend that they can shirk their payment obligations, without repercussion, because it is Peppertree/AMLQ's obligation to locate Respondents' assets, chase them down, and execute against them under Fed. R. Civ. P. 69.

To reach this flawed conclusion, Respondents mislabel the FPFA—which granted Peppertree/AMLQ equitable relief in the form of specific performance of the governing Shareholders Agreement—a "money judgment," and then rely on inapposite case law to argue that money judgments must be enforced by writs of execution.  Respondents' key premise—that the FPFA is a "money judgment"—is unsupported, however, because "[t]he *substance* of the [FPFA] determines its proper characterization." *Ecopetrol S.A. v. Offshore Exploration and Production*

---

[1]      "Respondents" refers to Terra Towers Corp. and TBS Management, S.A.

[2]      "Peppertree/AMLQ" refers to Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ").

[3]      The "Opposition" or the "Opp." refers to Respondents' Memorandum in Opposition to Motion for Civil Contempt.  *See generally* ECF No. 145.

*LLC*, 172 F. Supp. 3d 691, 965-96 (S.D.N.Y. 2016) (emphasis added).  Because the FPFA is, in substance, an award granting equitable relief, *not* a money judgment, it need not be enforced solely pursuant to Rule 69.

Even if the FPFA were considered a money judgment, federal courts in New York routinely permit parties to enforce monetary components of final judgments via contempt proceedings and award escalating monetary sanctions, as Peppertree/AMLQ have requested in their Motion.[4] Enforcement of the FPFA via contempt sanctions is especially appropriate here given Respondents' history of recalcitrance and defiance, including their repeated representations that they will not pay—and that they have no intention of paying—the approximately $843,000 due to Peppertree/AMLQ pursuant to the FPFA.  Given this position, which is apparent in the Opposition, their "you have to chase us to collect" argument rings especially hollow.

Accordingly, the Opposition is meritless, and this Court should grant Peppertree/AMLQ's Motion and award the escalating daily sanctions requested therein.  Such coercive sanctions provide the best chance of securing compliance with the FPFA and this Court's Order.

## II.   **RELEVANT BACKGROUND**

On January 19, 2021, Peppertree exercised its bargained-for right under Section 5.04(b) of the Shareholders Agreement to sell the Company.[5]   In flagrant breach of the Shareholders Agreement, Respondents **refused** to consent to a sale, and the Arbitration ensued.[6]  Two years, and millions of dollars' worth of fees and expenses later, the Company still is not sold due to Respondents' resistance.  Respondents do not want to sell the Company because it is a significant

---

[4]      The "Motion" refers to Peppertree/AMLQ's pending Motion to Hold Respondents in Civil Contempt and for Contempt Sanctions [ECF No. 136].

[5]      *See* ECF No. 9-2.  The "Company" refers to Continental Towers LATAM Holdings Limited.

[6]      *See* ECF No. 9-3 at 5; *see also* ECF No. 9-4.

source of income for Jorge Hernandez, who owns and controls Respondents and its affiliate, DTH,[7] and it behooves him to oppose the Company's sale by any means necessary.

Respondents have the funds necessary to pay the approximately $843,000 worth of fees awarded to Peppertree/AMLQ; they simply do not want to comply with this Court's Order to pay them.  Since the Arbitration was initiated, Respondents' members of the Company's Board have repeatedly funded tower sites, over Peppertree's objections and in breach of the Company's governing documents, siphoning well over *$15 million* in unauthorized funds out of the Company and into DTH.  DTH also receives an exceedingly generous *$480,000 monthly* from the Company for purported "back office" services.  The Company contributes funds towards Mr. Hernandez's lavish lifestyle, including his residential property in Napa, California, which public records reveal is worth approximately *$10 million*.

As demonstrated throughout the Arbitration, Respondents refused to comply with almost any order or ruling against them.  That is why coercive sanctions are the best chance of getting their attention.  Ironically, the ferocity of their Opposition illustrates this very point.  There is no dispute that Respondents violated the Order and FPFA; they tacitly concede this fact in their Opposition.  Respondents instead try to shift blame to Peppertree/AMLQ by nonsensically arguing that Peppertree/AMLQ "only circulated two e-mail communications" seeking to procure Respondents' compliance.[8]  Yet, even those communications were not required because Respondents' payment obligations were clear from the Order.  Tellingly, Respondents do not—and cannot—represent to this Court that they intend to pay the amounts due or are taking any steps to comply with the Order.  They simply shirked their obligations under the FPFA and the Order and are refusing to pay.

---

[7]     "DTH" refers to DT Holdings, Inc.

[8]     Opp. at 3.

3

In order to avoid contempt sanctions, Respondents attempt to split the FPFA into two separate awards—an order for equitable relief, and a money judgment.[9]  While they finally purport to comply with some of this Court's Order, they must comply with **all** of it.  Moreover, it is an exaggeration to suggest that their compliance with the FPFA has been smooth when it has been anything but.  Mere weeks before the Court issued the Order, and shortly thereafter, Respondents' agents caused the Company's subsidiaries to initiate a number of arbitrations in foreign jurisdictions, such as Peru and Guatemala, against Peppertree, AMLQ, and the Company.[10]  The Tribunal determined that Respondents, DTH, and Mr. Hernandez were behind the foreign arbitrations, granted Peppertree/AMLQ's motion for an anti-suit injunction, and found, notably for these purposes, that the foreign arbitrations "***serve[] Respondents' longstanding opposition to the sale of the Company by thwarting the interest of prospective buyers in considering an acquisition of the Company***."[11]

Moreover, on March 13, 2023, Respondents sought to revive a meritless lawsuit they filed in Florida against Torrecom Partners, LLC, a prospective purchaser of the Company, by filing a motion to lift the stay entered to pause the suit until the Arbitration concludes.[12]  This too serves to thwart interest in the Company by prospective purchasers.  In their motion, Respondents **admit** that the foreign arbitrations stifle the Company's sale: "a buyer is yet to be identified who would endeavor to purchase a company ***now embroiled in trans-national*** " litigation."[13]  The timing of

---

[9]      *See* Opp. at 3 (stating that Peppertree/AMLQ "have not filed a writ of execution seeking enforcement of the money judgment *component* of the FPFA") (emphasis added); *see also* Opp. at 14 ("Respondents have already begun to comply with the equitable relief portions of the FPFA.").

[10]      *See generally* ECF No. 133-47 (the Tribunal's Third Partial Final Award).  Peppertree/AMLQ's Petition to Confirm the Third Partial Final Award, requiring Respondents and DTH to terminate the foreign arbitrations (which they have not done to date) is currently pending before this Court.  *See* ECF Nos. 131-33.

[11]      *Id*. at ¶ 76 (emphasis added); *see also id.* at ¶ 52 ("***the Foreign Arbitrations obstruct the parties' ability to effectuate [the FPFA] because the Foreign Arbitrations impair prospects for the sale of the Company***.") (Emphasis added).

[12]      Respondents' Motion to Lift Stay is attached as **<u>Exhibit A</u>**.

[13]      Ex. A at 7 (emphasis added).

Respondents' motion to lift a stay that has been in place since 2021 is no coincidence.  Suing prospective purchasers chills the market and makes would-be buyers weary.[14]

Respondents then contend that the fee portion of the FPFA is somehow wholly separate from the rest of the award, and constitutes a "money judgment" that is subject to Federal Rule 69.[15] They argue that Peppertree/AMLQ must now "go fish" for Respondents' assets by issuing discovery under Rule 69(a)(2), and then execute on whatever assets Peppertree/AMLQ are able to locate.[16]  As explained below, Respondents' attempt to parse the FPFA into two separate awards is belied by established law, which requires this Court to look at the substance of the FPFA *as a whole* to determine its proper characterization.  Even a cursory review of the FPFA reveals that it is an equitable award, which granted Peppertree/AMLQ's request for specific performance, not a money judgment.[17]  And, in any event, courts in this district routinely enforce money judgments via contempt sanctions.  Thus, coercive sanctions are entirely appropriate.

### III.   LAW AND ARGUMENT

#### A.   Rule 69 Does Not Apply to the FPFA Because It Is an Equitable Award

##### 1.   The substance of the FPFA is an equitable award ordering specific performance of the Shareholders Agreement, *not* a money judgment.

Federal Rule of Civil Procedure 69 provides that "[a] money judgment is enforced by a writ of execution."  In an obvious attempt to avoid contempt sanctions, Respondents attempt to

---

[14]     Peppertree/AMLQ reserve the right to address Respondents' compliance with other components of the FPFA at the appropriate time.

[15]     Opp. at 3.

[16]     *Id.* at 1, 3, 4, and 11.

[17]     *See, e.g.,* ECF No. 9-22 at ¶ 5 ("this Partial Final Award concerns only ***specific performance*** with respect to the SHA process for sale of the Company") (emphasis added); *see also id.* at 11 (heading entitled: "The Tribunal's Analysis of Claimants' ***Entitlement to Specific Performance*** of the Sale of the Company Under Section 5.04(b) of the Agreement") (emphasis added).

relabel the FPFA as simply a "money judgment," and then contend that it "must be enforced through writ of execution."[18]  In *Ecopetrol S.A. v. Offshore Exploration and Production LLC*, however, the court made clear that "[t]he substance of the [FPFA] determines its proper characterization." 172 F. Supp. 3d 691, 965-96 (S.D.N.Y. 2016).  Contrary to Respondents' position, the FPFA is, in substance, an award granting Peppertree/AMLQ's request for specific performance of the forced sale provision of the Shareholders Agreement—*equitable relief*.[19]

The equitable nature of the FPFA is especially clear when contrasted with the pure money judgments at issue in the inapposite cases cited by Respondents.  For example, unlike here, the award at issue in *Ecopetrol S.A.* had no equitable relief component but, instead, was "an arbitral award assessing damages for a breach of contract claim between private parties." 172 F. Supp. 3d at 697.  Likewise, the "final award of damages and costs" at issue in *Carte Blance (Singapore) Pte., Ltd. v. Carte Blanche Intern., Ltd*. awarded a party nearly $9 million in damages but no equitable relief at all.  888 F.2d 260, 263 (2d Cir. 1986).  The award at issue in *Nykcool A.B. v. Pacific Fruit Inc*. was also a pure money judgment with no equitable relief component.  No. 10 Civ. 3867, 2012 WL 1255019, at *2 (S.D.N.Y. Apr. 16, 2012).  Unsurprisingly, Respondents fail to support their contention that the FPFA is a money judgment with a single analogous case.  *See Albahary v. City and Town of Bristol, Conn.*, 96 F. Supp. 2d 121, 122 (D. Conn. 2000) (addressing a "Supplemental Judgment on Attorney's Fees" with no equitable relief component, in the context of 28 U.S.C. § 1961, not Rule 69); *see also Gill v. Bausch & Lomb Supplemental Retirement Income Plan I*, No. 6:09-CV-6043, 2015 WL 2129546, at *4 (W.D.N.Y. May 6, 2015) (same); *MidAmerica Federal Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 962 F.2d 1470, 1471-76

---

[18]     Opp. at 11.
[19]     *See generally* ECF No. 9-22, ¶ 72(ii) ("Respondents . . . shall cause their appointed members of the Board of Directors of the Company to vote in favor of the engagement of an Investment Bank . . ."); ¶ 72(iii) ("The Approved Sale of the Company shall proceed on the basis of [Peppertree's] Proposed Sale Notice . . .").

(10th Cir. 1992) (same); *Advanced Video Technologies LLC v. HTC Corp.*, No. 11 Civ. 06604, 2019 WL 13214942, at *7 (S.D.N.Y. Jan. 31, 2019) (addressing request for attorneys' fees, in the context of Rule 60, without an equitable relief component).  Instead, they ignore the substance of the FPFA, which ordered specific performance under the Shareholders Agreement, myopically focusing on the prevailing party attorneys' fees awarded to Peppertree/AMLQ, and then label the FPFA—in its entirety—a money judgment.  Respondents' argument is contrary to governing law.

**2.    This Court can—and should—hold Respondents in contempt for failing to comply with the FPFA.**

Because the FPFA is, in substance, an order for specific performance, not a money judgment, this Court can—and should—hold Respondents in contempt for violating it.  *See, e.g., Petrello v. White*, 2008 WL 5432230, at *6 (E.D.N.Y. Dec. 30, 2008) (stating that violations of "specific performance decree[s]" are "punishable by contempt"); *see also Skydive Arizona, Inc. v. Quattrocchi*, 2010 WL 3023290, at *2 (D. Ariz. Dec. 20, 2007) (finding that the plaintiff "ha[d] made a *prima facie* showing of contempt" because there was no "dispute that defendant ha[d] failed to comply with the Court Order of specific performance"); *J.B. Hunt Transport, Inc. v. BNSF Railway Co.*, 9 F.4th 663, 669 n.1 (8th Cir. 2021) ("if and when an arbitrator awards specific performance, a court confirms that award, and BNSF still refuses to perform would it be proper for Hunt to initiate contempt proceedings.").  A court properly exercises its authority to issue contempt sanctions where: (1) the order the party failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *See Hammer v. Amazon,* 392 F. Supp. 2d 423, 434 (E.D.N.Y. 2005).  These elements are readily satisfied here.

*First*, the Court's Order confirming the FPFA is clear and unambiguous.  The Order granted Peppertree/AMLQ's "petition to confirm the FPFA" and denied "Respondents' cross

7

petition to vacate the FPFA… ."[20]   The FPFA, in turn, clearly and unambiguously ordered Respondents to pay Peppertree/AMLQ's attorney's fees and forum fees "within thirty (30) days from the date of" the FPFA.[21]

*Second*, the proof of noncompliance is clear and convincing: nowhere in the Opposition do Respondents dispute that they have not complied (because they cannot).

*Finally*, Respondents have not diligently attempted in a reasonable manner to comply with the Court's Order and the FPFA.  To the contrary, they incorrectly contend that the burden is somehow on Peppertree/AMLQ to begin "undertaking legitimate execution efforts."[22] Respondents take the unsupportable position that Peppertree/AMLQ should be forced to "go fish" for Respondents' assets (which are likely located outside of the United States), and then contend that Peppertree/AMLQ should execute on those assets if and when they are located.[23]  Nowhere in the Opposition do they explain how they have attempted to comply with the FPFA and the Order—because they have not done so.

     **B.**    **Even if the FPFA Were Considered a Money Judgment, This Court Routinely Enforces Judgments Like the FPFA Via Contempt Sanctions**

Federal courts in New York routinely permit enforcement of monetary components of judgments, including attorneys' fees awards, via contempt sanctions.  *See, e.g.*, *SEC v. Bronson*, 602 F. Supp. 3d 599, 615 (S.D.N.Y. 2022) (collecting cases); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").  Tellingly, Respondents' attempt to distinguish *Spectacular Venture, L.P. v. World Star Intern., Inc*., 927 F. Supp. 683 (S.D.N.Y. 1996)

---

[20]    ECF No. 124 at 20.
[21]    ECF No. 9-22 at 42-43.
[22]    Opp. at 13.
[23]    Opp. at 1, 3, 4, 11, 12, and 13.

(Kaplan, J.), an analogous case where *this* Court ordered escalating contempt sanctions when a party refused to comply with a money judgment, is limited to two words: "factually irrelevant."[24] This failure to meaningfully address *Spectacular Venture* speaks volumes.

In *Spectacular Venture*, this Court issued a series of escalating contempt sanctions when a defendant failed to pay money owed pursuant to a consent judgment. *Id*. at 684. Specifically, when it became clear that the defendant would not comply with the Court's order, the Court "held defendant in contempt, directed it to pay the $15,253.50 then in arrears, imposed a coercive fine of $500 per day…for each day the consent judgment was not complied with, and awarded counsel fees of $2,500 to plaintiff and against defendant." *Id*. The defendant also ignored this order, and the Court then "directed the defendant to pay the [] installment, awarded additional counsel fees against defendant in the amount of $1,500, and increased the amount of the daily coercive fine by $1,000 per day… ." *Id*. The court also held defendant's principal, Thomas Reynolds, "in civil contempt, fining him $250 per day…for each day the defendant failed to comply with the consent judgment." *Id*. This decision demonstrates this Court's authority to issue escalating contempt sanctions in response to a party's failure to pay funds owed pursuant to a money judgment. Importantly, *Spectacular Venture* is not an anomaly and is consistent with established case law from this district. *See, e.g., Klein v. Aicher*, 2021 WL 1948010, at *1-5 (S.D.N.Y. May 14, 2021) (holding a party in civil contempt "due to his failure to pay [the defendant] $74,160 in attorneys' fees and costs as ordered by the Court"); *see also Barcia v. Sitkin*, 1995 WL 527696, at *7 (S.D.N.Y. Sept. 7, 1995) ("Defendants are in contempt of court for their failure to reimburse plaintiffs' attorney's fees and costs."). This is no doubt that this Court can—and should—use its authority to impose contempt sanctions to force Respondents to *fully* comply with the FPFA.

---

[24]   Opp. at 12.

Enforcement of the FPFA via contempt sanctions is especially appropriate here where Respondents have purposefully failed to comply with every order of the Tribunal in the underlying Arbitration, as set forth in the various motions pending before this Court to confirm the Tribunal's Second and Third Partial Final Awards.[25]  True to form, Respondents have now repeatedly made clear that they do not intend to pay the amounts due to Peppertree/AMLQ pursuant to the FPFA and this Court's Order.  Even in their Opposition, instead of representing that they intend to comply with their payment obligations, Respondents repeatedly argue that Peppertree/AMLQ should engage in time (and money) wasting discovery to enforce the Order—presumably to attempt to locate Respondents' significant foreign assets.[26]  While Peppertree/AMLQ could engage in motion practice and discovery in the face of Respondents' bad-faith intransigence, this would only further waste both the Court's and the parties' resources, which is, no doubt, Respondents' goal.  In this context, a finding of contempt and order for coercive monetary sanctions is not only permissible, but necessary and appropriate to ensure Respondents' compliance with this Court's Order.

## IV.   **CONCLUSION**

For the foregoing reasons, and for those more fully set forth in the Motion, Peppertree/ AMLQ respectfully request that the Motion be granted in its entirety.

---

[25]      *See* ECF No. 94-103 (Second Partial Final Award) at ¶ 9 (finding that Respondents engaged in "a multi-faceted effort" to "present [] th[e] Tribunal and the Company's Board a false narrative of misconduct" so that they could "collaterally attack the [Tribunal's] November 12 Order and refuse to comply with it on the basis of" Respondents' manufactured "criminal complaints"); *see also* ECF No. 133-47 (Third Partial Final Award) at ¶ 52 (stating that the foreign arbitrations, which the Tribunal determined were likely initiated by Respondents and/or Mr. Hernandez, "obstruct the Parties' ability to effectuate [the] [FPFA] because [they] impair prospects for the sale of the Company," and also "constitute a collateral attack on [the] [Second Partial Final Award] because the Tower Rejection Breach counterclaim might be arbitrated piecemeal, potentially country by country across the eight countries of the Company's territory, in defiance of [the Tribunal's] stay of proceedings on those very claims and the compliance conditions [the Tribunal] established for lifting that stay.").

[26]      Opp. at 1, 3, 4, 11, 12, and 13.

Dated:  April 4, 2023

Respectfully submitted,

/s/ *Michael N. Ungar*
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Gregory C. Djordjevic
(admitted *pro hac vice*)
**ULMER & BERNE LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:     (216) 583-7001
mungar@ulmer.com
kpoldneff@ulmer.com
gdjordjevic@ulmer.com

David A. Landman
**ULMER & BERNE LLP**
275 Madison Avenue, Suite 2002
New York, New York 10016-1138
Phone: (917) 262-0470
Fax:     (917) 262-0480
dlandman@ulmer.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

/s/ *Gregg L. Weiner*
Gregg L. Weiner
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:     (212) 596-9090
gregg.weiner@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
Katherine M. McDonald
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:     (617) 951-7050
daniel.ward@ropesgray.com
katherine.mcdonald@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on April 4, 2023

Notice of this filing will be sent to all counsel of record through the Court's electronic notice

system.

*/s/* Michael N. Ungar

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*