**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC, and AMLQ HOLDINGS (CAY) LTD.,<br><br>                     Petitioners,<br><br>   -against-<br><br>TERRA TOWERS CORP., TBS MANAGEMENT, S.A., and DT HOLDINGS, INC.<br><br>                     Respondents. | Case No. 1:22-cv-01761-LAK |
| TERRA TOWERS CORP., TBS MANAGEMENT, S.A., and DT HOLDINGS, INC.<br><br>                 Cross-Petitioners,<br><br>   -against-<br><br>TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC, and AMLQ HOLDINGS (CAY) LTD.,<br><br>                 Cross-Respondents. | |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION FOR**
**PRELIMINARY AND PERMANENT**
**ANTI-SUIT INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    The Company is incorporated in the British Virgin Islands............................. 3

    Gaitán and Quisquinay are appointed as executives of the Company. .............. 4

    Gaitán is removed as CEO in 2016. ............................................................... 4

    Peppertree/AMLQ deliberately stunted the growth of the Company. ............... 5

    Gaitán left his position at Proyectos in late 2021. .......................................... 7

    The tribunal orders DTH to reinstate Gaitán as CEO of the Company............. 8

    Terra/DTH comply — and ask for clarification on Gaitán's role in their
    subsidiaries.................................................................................................... 9

    Gaitán brought labor suits against DTH, Proyectos, Desarrolladora, and
    Jorge Hernandez seeking severance. ..............................................................10

    Local affiliates of Terra/DTH publicly disassociate from Gaitán. ...................11

    The tribunal requires the local affiliates to re-associate with Gaitán...............11

    Gaitán is accused of criminal conduct in multiple jurisdictions. .....................12

        A.Guatemala criminal action. ..................................................................12

        B.El Salvador criminal action. ................................................................12

        C.Honduras criminal action.....................................................................13

    The tribunal issues the Second Partial Final Award. .......................................13

    Peppertree/AMLQ have ignored the Company's management's concerns. ......14

    Quisquinay asks a court in the British Virgin Islands to identify his CEO. .....14

    Death by a thousand footnotes.......................................................................15

ARGUMENT ...................................................................................................17

The Court should decline to interfere with the sovereignty of the BVI because
the case does not meet the threshold requirements for an anti-suit injunction ......18

A.   An anti-suit injunction would restrict the British Virgin Islands from
     supervising its own corporation. ..............................................................18

B.   None of the parties to the BVI Declaratory Action are before the Court....20

     1.   The Court cannot issue an anti-suit injunction against parties not before
     it. ...................................................................................................21

     2.   Quisquinay should not be enjoined as an agent of the Company from suing
     the Company...........................................................................................21

     3.   Quisquinay is not acting as an agent of Terra/DTH. ..........................23

C.   This Court has not been asked to determine who the Company's CEO is
     — or if that question is arbitrable. ...........................................................24

     1.   Peppertree/AMLQ have not attempted to compel arbitration...........25

     2.   No judgment of this Court establishes who the Company's CEO is. 25

D.   The BVI's sovereign right to control its own corporation outweighs the
     other *China Trade* factors. .....................................................................27

E.   Peppertree/AMLQ have failed to show any risk of irreparable harm (or a
     likelihood of success) and therefore are not entitled to a preliminary
     injunction. ..............................................................................................29

CONCLUSION ..............................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Canon Latin Am., Inc. v. Lantech (CR), S.A.*,
  50 F.3d 597 (11th Cir. 2007) ........................................................................ 22

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
  837 F.2d 33 (2d Cir. 1987) ..................................................................... 17, 18

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..................................................................................... 30

*Garpeg, Ltd. v. U.S.*,
  583 F.Supp. 789 (S.D.N.Y. 1984) ................................................................ 23

*Gau Shan Co., Ltd. v. Bankers Trust Co.*,
  956 F.2d 1349 (6th Cir. 1992) ...................................................................... 18

*Hidalgo v. 4-34-68, Inc.*,
  988 N.Y.S.2d 64 (2d Dep't 2014) ................................................................. 26

*In re Vivendi Uni., S.A. Securities Lit.*,
  2009 WL 3859066 (S.D.N.Y. Nov. 19, 2009) ......................................... 21, 24

*International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*,
  441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) ................................................... 23

*Jolen, Inc. v. Kundan Rice Mills, Ltd.*,
  2019 WL 1559173 (S.D.N.Y. Apr. 9, 2019) ............................................ 18, 29

*Karaha Bodas Co. L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  500 F.3d 111 (2d Cir. 2007) ...................................................................25, 28

*Karaha Bodas Co. L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003) ........................................................................ 27

*Laif X Sprl v. Axtel, S.A. de C.V.*,
  310 F.Supp.2d 578 (S.D.N.Y. 2004) ........................................................28, 29

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
   390 F.3d 194 (2d Cir. 2004) ................................................................. 17, 18, 19, 25

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
   731 F.2d 909 (D.C.C. 1984) ................................................................. 26

*MasterCard Intern. Inc. v. Fed. Int'l de Football Ass'n*,
   2007 WL 631312 (S.D.N.Y. Feb. 28, 2007) .......................................... 28

*McNeill v. New York City Housing Authority*,
   719 F. Supp. 233 (S.D.N.Y. 1989) ........................................................ 22

*Motorola Credit Corp. v. Uzan*,
   2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) .............................................. 24

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ................................................. 17, 18, 20, 21, 24, 25

*Software AG, Inc. v. Consist Software Solutions, Inc.*,
   2008 WL 563449 (S.D.N.Y. Feb. 21, 2008) .......................................... 24

*Storm LLC v. Telenor Mobile Communications AS*,
   No. 06-cv-13157, 2006 WL 3735657 (S.D.N.Y. Dec. 15, 2006) ............ 24

*Symbion Power Holdings LLC v. Bouka*,
   No. 23-cv-1439, 2023 WL 3266784 (S.D.N.Y. May 4, 2023) ................ 21

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997) ................................................................... 27

## PRELIMINARY STATEMENT

Juan Francisco Quisquinay, the CFO of the Company incorporated in the British Virgin Islands, Continental Towers LATAM Holdings, Ltd., asked a High Court in the British Virgin Islands to declare the identity of his Company's CEO. This question has taken a life of its own and has locked the shareholders of his Company in litigation for years. Quisquinay does not ask the British Virgin Islands court to determine who the CEO of his Company should be. Or why someone should not be. Quisquinay asks only one question: who *is* my CEO?

Enjoining Quisquinay from pursuing his declaratory action interferes with the sovereignty of the British Virgin Islands in governing a British Virgin Islands' company. The Company whose shareholders voluntarily decided to incorporate there to take advantage of all its corporate benefits and is subject to the laws of the British Virgin Islands. Comity alone is sufficient for the Court to decline to issue an anti-suit injunction.

If telling the British Virgin Islands court it cannot oversee its own corporate citizen is not enough, Peppertree/AMLQ do not satisfy the conditions necessary for the issuance of an anti-suit injunction. *First*, none of the parties to the British Virgin Islands case appear before this Court. *Second*, this Court has not been asked to decide who is the Company's CEO (or if that question is arbitrable). Not in the November 12, 2021 order of the arbitral tribunal, which Peppertree/AMLQ expressly requested the tribunal not convert into a partial final award to shield it from the Court's jurisdiction. Or in the second partial final award currently pending vacatur before the Court, because the award did not appoint Gaitan as the CEO of the Company.

Peppertree/AMLQ try to remedy these deficiencies by asking the Court to issue an anti-suit injunction on behalf of the arbitration currently pending in New York. But that argument is a *non-sequitur* — an anti-suit injunction requires that the enjoining court's jurisdiction be infringed. The Court has no standing to act on behalf of an arbitral tribunal by way of an injunction. And no motion to compel arbitration is before the Court because Quisquinay is not bound by any arbitration clause. Quisquinay is not a party before this Court, not a party in the arbitration, and not subject to the jurisdiction of the United States.

Instead, Peppertree/AMLQ continue to vilify Terra/DTH, just like they did to the arbitration's tribunal. They accuse Terra/DTH of unconscionable conduct until the law no longer matters. This approach worked to procure four arbitral awards from a tribunal which has ignored its jurisdictional constraints to serve Peppertree/AMLQ's interests and *sua sponte* punish Terra/DTH. But this Court should not follow suit.

In what can only be described as death by a thousand footnotes, Peppertree/AMLQ re-accuse Terra/DTH of: (1) planting the bribery article that Peppertree/AMLQ themselves introduced to the tribunal; (2) puppeteering various managers of the Company's subsidiaries to prosecute foreign arbitrations; and (3) engaging in unethical conduct which has forced their previous counsel to withdraw. But after over a year of their witch hunt, Peppertree/AMLQ have not presented one piece of evidence to support their footnote warfare — and they have in fact admitted they have no actual idea if their accusations against Terra/DTH are true. Yet the arbitral tribunal has accepted it all as fact. The arbitral activism which has followed has yielded four partial awards, three of which have the sole purpose of sanctioning Terra/DTH and are currently subject to vacatur proceedings before this Court.

But maybe all of that is just a distraction. Even before Peppertree/AMLQ initiated arbitration, they abandoned the Company's local subsidiaries and its management. For years, Peppertree/AMLQ refused to approve tower development in Latin America. And they have communicated these refusals to Company management in an antagonistic manner — while ignoring managements' repeated concerns that the Company's operations are suffering as a result. While Terra/DTH can be compensated by money damages for Peppertree/AMLQ's decision to cripple the Company, the Company's managers are without any remedy before this Court or the New York arbitration.

But for Peppertree/AMLQ it is unfathomable, that after years of refusing to build towers, ignoring managements' concerns that their businesses are declining, and then demanding the Company be sold, that Company management has developed interests adverse to theirs and turned to their respective legal systems for help.

## STATEMENT OF FACTS

### The Company is incorporated in the British Virgin Islands.

Terra Towers Corp. and TBS Management S.A. (together "Terra"), the majority shareholders, and Telecom Business Solution, LLC, LATAM Towers LLC (together "Peppertree") and AMLQ Holdings (Cay.) Ltd. ("AMLQ"), the minority shareholders, make up all the shareholders of Continental Towers LATAM Holdings Limited (the "Company").[1] The Company is incorporated in the British Virgin Islands.[2] Because the

_____

[1] A copy of the Shareholders Agreement (the "SHA") is attached to the Declaration of Daniel V. Ward (ECF No. 173, hereinafter "Ward Ex. __") Ward Ex. 1 p. 3.
[2] *Id.*

Company does business throughout Latin America, it created eight subsidiaries — one for each country where it operates.[3]

DT Holdings, Inc. ("DTH"), an affiliate of Terra, provides construction services to the Company under the Development Agreement.[4] In addition, DTH has its own local subsidiaries, which entered into separate SG&A agreements with their corresponding Company subsidiary to provide the Company administrative services. For example, Proyectos Terrestres, S.A. ("Proyectos," a Guatemalan subsidiary of DTH) entered into a contract with Continental Towers de Guatemala Limitada, the Company's subsidiary in Guatemala to provide back-office services.[5]

**Gaitán and Quisquinay are appointed executives of the Company.**

The parties signed the SHA on October 22, 2015, which appointed Jorge Gaitán, Jr. ("Gaitán") and Juan Francisco Quisquinay ("Quisquinay") to serve as the CEO and CFO of the Company, respectively.[6] No other appointments were made at that time and any other appointments required board approval.[7]

**Gaitán is removed as CEO in 2016.**

In 2016, at Peppertree's insistence, the Company's board replaced Gaitán as CEO with Alberto Arzu ("Arzu") and made Gaitán the COO.[8] Subsequently, on March 9, 2021, Arzu chose to step down as CEO and director of the Company, stating he stepped down

---

[3] *Id*. at p. 5.
[4] Ward Ex. 2.
[5] Copies of the local agreement is attached to the Declaration of Juan J. Rodriguez (filed herewith, hereinafter "Rodriguez Ex. __") as Rodriguez Ex. 1.
[6] Ward Ex. 1 § 4.06.
[7] *Id*.
[8] Rodriguez Ex. 2.

from "all positions I may hold as director of the Company [and its various subsidiaries]" and no replacement was appointed.[9]

**Peppertree/AMLQ deliberately stunted the growth of the Company.**

The Company was formed in 2015 for the sole purpose of owning and operating wireless telecommunications towers in South and Central America.[10] The Shareholders Agreement, between Terra, Peppertree, and AMLQ established that "[t]he purpose of the Company is to develop, own, acquire, and operate, directly and indirectly through the Company subsidiaries, Tower in the Territory."[11] The Company acquired towers primarily through the Development Agreement it entered into with DTH or the purchase of existing tower portfolios.[12] To acquire these towers, the SHA established the "Development Committee," comprised of the Company's directors.[13] Terra and Peppertree each appointed two members of a four-member Development Committee.[14] The Company's Board consisted of the same four directors.

In 2016, Peppertree gave Terra a "take it or leave it" offer that any new tower development had to be financed by a Goldman Sachs affiliated credit facility.[15] Terra rejected this financing option because (1) the interest rate (10.5%) was materially higher than the rate the Company could obtain by financing through other reputable banks (6%), (2) it restricted tower development in two countries the Company operated in, (3) required

---

[9] Rodriguez Ex. 3.
[10] Ward Ex. 1 § 3.01.
[11] *Id.*
[12] Ward Ex. 2.
[13] Ward Ex. 1 § 4.04(b).
[14] Ward Ex. 1 § 4.04(b).
[15] Rodriguez Ex. 4 ¶ 51.

amendments to the Development Agreement to give Peppertree/AMLQ more control of the Company and (4) it had provisions allowing Goldman Sachs to acquire the Company in the event of a default.[16] Terra rejected the offer.

In response to Terra's rejection of Goldman's financing, Peppertree's appointed Development Committee members took a position adverse to the Company's interest: "we are not going to approve any new tower builds," and rejected roughly 3,000 tower proposals over the next 3 years.[17]

Peppertree's systematic rejection of towers has continued throughout the arbitration. Terra raised the issue with the tribunal. In response, the tribunal asked the parties about stipulating to a procedure where any proposed tower rejected by Peppertree could be brought to the tribunal to review if the rejection was made in bad faith.[18] Peppertree's original position supported such a stipulation, because it was "inarguable" that Peppertree had to "make decisions in good faith in compliance with [its] fiduciary obligations both as stewards of investment dollars and client money."[19] But after counsel consulted with their clients about the tribunal's proposed stipulation to oversee Peppertree's rejections, Peppertree responded equivocally: it will continue to consider tower proposals in good faith but it opposes allowing the tribunal to police the reasons for its rejections.[20]

---

[16] *Id*. ¶¶ 51, 60.
[17] Rodriguez Ex. 5 p. 1.
[18] Rodriguez Ex. 6 p. 334:11-337:14.
[19] *Id*. p. 292:19-293:1.
[20] *Id*. p. 366:11-376:23; *see also* p. 361:18-364:18 (Terra jumped at the opportunity for the tribunal to review the reasons for Peppertree's rejections).

**Gaitán left his position at Proyectos in late 2021.**

On September 27, 2021, Gaitán, an employee of Proyectos who provided services to the Company in Gautemala, asked members of his team to empty his office at Proyectos.[21] The next day, Jorge Hernández ("Hernandez") — principal of DTH — held a meeting at Proyectos's offices.[22] Hernández and several Proyectos employees say Gaitán was acting suspiciously and obstructively at the meeting; Gaitán and Carol Echeverría (who has now been appointed COO of the Company by the tribunal) say they were harassed and prevented from leaving the meeting.[23] Thereafter, Gaitán never returned to his position at Proyectos, and stopped working as an independent contractor at Desarrolladora de Tierras, S.A. ("Desarrolladora"), another Guatemalan entity providing services to the Company.

As discussed in more detail below, Gaitan and Echeverria filed labor lawsuits after this meeting. And in addition, Echeverría filed a criminal complaint for "Femicide," on the basis of the harassment she claims to have suffered at the September 28, 2021, meeting.[24] In support of her complaint, Echeverria, Gaitan, and Juan Ignacio Berger submitted witness statements. On March 21, 2023, the presiding judge issued a final order dismissing Echevarria's complaint due to multiple factual inaccuracies.[25] Namely, Echeverría's and Berger's witness statements, both of whom were present at the meeting.[26] The dismissal was based on two factual inconsistencies: (i) the entry and exit logs of Echeverría from

---

[21] Rodriguez Ex. 7 ¶¶ 28-30.
[22] *Id*. at ¶¶ 42-54.
[23] *Id*.
[24] Rodriguez Ex. 9.
[25] Rodriguez Ex. 9.
[26] Rodriguez Ex. 10.

Proyectos's office's parking garage during the time she claimed they were "held hostage" shows she left the building on multiple occasions — for hours at a time; and (ii) there are "selfies" taken by Echeverría and Gaitán on their cell phones during the meeting — proving their cell phones were never confiscated.[27][28] The judge dismissed the action because he determined that no crime had been committed.

**The tribunal orders DTH to reinstate Gaitán as CEO of the Company.**

After Gaitán's fall out with DTH's subsidiaries, he flew to New York to meet with Peppertree's counsel to discuss the situation. Terra/DTH were not told about these *ex parte* meetings until after Gaitan requested the Company reimburse him for his travel expenses,[29] and Peppertree disclosed its fees in connection with the November 12, 2021 order.[30] Terra/DTH are still in the dark about what was actually discussed at the meeting(s) between the Company's proclaimed "CEO" and the minority shareholders.

The next business day, the Company's counsel sent a letter to the arbitral tribunal on Gaitan's behalf, omitting that he had already met with Peppertree/AMLQ in New York to discuss their stories without Terra/DTH's involvement.[31] Peppertree/AMLQ's emergency request to the tribunal to reinstate Gaitán to his positions in DTH's affiliates followed on October 15, 2021.[32]

After receiving briefing and holding a hearing on the emergency request, on November 12, 2021, the tribunal ordered that "DTH immediately restore Jorge Gaitán [Jr.]

---

[27] *Id.*
[28] Rodriguez Ex. 11; Ex. 12.
[29] Rodriguez Ex. 13 p. 7.
[30] Rodriguez Ex. 14 p. 3.
[31] Rodriguez Ex. 15.
[32] Ward Ex. 15 p. 18-21.

and Carol Echeverría to the Company positions they occupied as of March 19, 2021."[33]
How DTH — the only non-shareholder of the Company in the arbitration — could
reinstate Gaitán to any position in the Company has yet to be explained by the tribunal,
despite Terra/DTH's request for clarification.[34]

      The November 12, 2021 order DTH to restore Gaitan's position at DTH and the
Company.[35] But Gaitán never held any position in DTH. The tribunal had actually intended
to require Proyectos and Desarrolladora, (both subsidiaries of DTH) to rehire Gaitán —
something neither Peppertree/AMLQ nor the Company had any right to do under either the
Shareholders Agreement or the Development Agreement, or any of the SG&A
agreements.[36]

**Terra/DTH comply — and ask for clarification on Gaitán's role in their subsidiaries.**

      Terra/DTH asked the tribunal to reconsider or clarify the portions of the award
which contradicted the facts before them.[37]

      Still, within the time prescribed by the November 12, 2021 order, Terra/DTH
notified the tribunal that it had complied with the order.[38] As the order expressly declined
to take any action regarding Gaitán's position at DTH (or its affiliates), Terra/DTH notified

---

[33] Ward Ex. 23.
[34] Rodriguez Ex. 16.
[35] Ward Ex. 23.
[36] Ward Ex. 1; Ward Ex. 2.
[37] Rodriguez Ex. 16.
[38] Rodriguez Ex. 17.

the tribunal that Gaitán was no longer with Proyectos or Desarrolladora, and that Gaitán had sued Proyectos and Desarrolladora in Guatemala.[39]

Ultimately, the tribunal refused to give any meaningful clarity as to DTH's attempted compliance.[40] And Peppertree/AMLQ quickly sought to hold Terra/DTH in contempt for failing to comply.[41]

Terra/DTH confirmed Gaitan access to his Company email and invited him to Company meetings to discuss the day-to-day operations of the Company.  Gaitan has refused to communicate through his Company emails and has not attended any management meetings.

**Gaitán brought labor suits against DTH, Proyectos, Desarrolladora, and Jorge Hernandez seeking severance.**

On January 6, 2022, Gaitán filed his labor suit alleging wrongful termination against DTH, Desarrolladora, Proyectos, and Jorge Hernandez.[42]

Contrary to the relief the tribunal has continually tried to impose against DTH and indirectly against Proyectos and Desarrolladora (Gaitán's rehiring), Gaitán's Guatemalan labor lawsuit for wrongful termination has demanded as his sole and exclusive remedy the severance payment that he allegedly would be entitled to.[43]

The tribunal's November 12, 2021 order has put Proyectos and Desarolladora in a position of having to rehire Gaitán and publicly reassociate with him, while being sued by

---

[39] *Id.*
[40] Rodriguez Ex. 18.
[41] Rodriguez Ex. 19.
[42] Rodriguez Ex. 20
[43] *Id.*

him for severance and damages for alleged wrongful termination. The tribunal made clear from the hearing held on February 12, 2022, that it considered Proyectos's and Desarrolladora's continued payment of Gaitán's compensation as a condition "associated with their work for the Company that was to be restored."[44]

**Local affiliates of Terra/DTH publicly disassociate from Gaitán.**

Four days after Gaitán brought his labor suit against Proyectos and Desarrolladora for wrongful termination, these local affiliates of DTH deemed it necessary to issue a public statement clarifying that they were no longer associated with Gaitán — in light of his history of misrepresenting himself as holding titles he did not have.[45] These publications did not reference Gaitán's role within the Company.

**The tribunal requires the local affiliates to re-associate with Gaitán.**

Two days after these publications, Peppertree/AMLQ requested the tribunal sanction Terra/DTH for non-compliance with the November 12, 2021 order.[46]

As a result of Peppertree/AMLQ's sanction request, on March 15, 2022, the tribunal ordered Proyectos and Desarrolladora to publicly issue the following statement: "[w]e reaffirm the ongoing roles of Mr. Gaitán Castro and Ms. Echeverría de Reyes in our company…."[47] Leading up to the March 15, 2022 order, the tribunal asked Peppertree/AMLQ if they wanted to have the November 12, 2021 order re-issued as an enforceable partial final award; *Peppertree/AMLQ declined the offer*.[48]

---

[44] Rodriguez Ex. 21.
[45] Rodriguez Ex. 22.
[46] Rodriguez Ex. 19.
[47] Ward Ex. 32.
[48] *Id*. ¶ 5.

**Gaitán is accused of criminal conduct in multiple jurisdictions.**

While the tribunal remained fixated on maintaining Gaitán's role in DTH's subsidiaries (and while Gaitán simultaneously sued those subsidiaries for severance), formal criminal investigations into Gaitán arose in multiple Latin American countries. The criminal action in Guatemala was brought by Proyectos, and the criminal actions in El Salvador and Honduras were brought by management of the Company's subsidiaries — Terra/DTH have no involvement in or control over the latter two investigations, directly, through agents, or otherwise. All the criminal actions carry significant risk for the Company's subsidiaries and their management if the Company (or its subsidiaries) continue to associate with Gaitán.[49]

### A.    Guatemala criminal action.

Proyectos filed a criminal complaint in Guatemala for destruction of business computer records, improper use of business information, and theft on January 13, 2022.[50] The judge presiding over the case has denied requests to dismiss the case and has ordered the criminal investigation of Gaitán and three other defendants be continued.[51]

### B.    El Salvador criminal action.

On March 3, 2023, Antonieta Granillo (an attorney in El Salvador), general manager of the Company's El Salvador subsidiary notified the Company's board that the authorities in El Salvador were conducting a criminal investigation against Gaitán.[52] In El Salvador, Gaitán is under investigation for illicit negotiations with local mayors, and

---

[49] Rodriguez Ex. 23.
[50] Rodriguez Ex. 24.
[51] Rodriguez Ex. 25.
[52] Rodriguez Ex. 23.

falsely representing his title in the Company. Both of which open up the Company's subsidiary to liability — or any other person found to be aiding Gaitán during the investigation.[53]

### C.    Honduras criminal action.

On April 25, 2023, Gaitán sent a letter to the Company's board notifying them of a criminal complaint filed in Honduras by the Company's local subsidiary against him for disclosure of trade secrets, damage to data and computer systems, falsification of financial documents, and usurpation of identity of others.[54]

**The tribunal issues the Second Partial Final Award.**

On Saturday, August 12, 2022, the tribunal issued the Second Partial Final Award ("SFPA"), in which it:

- stayed proceedings on Terra/DTH's counterclaims;

- imposed conditions on the participation of Terra/DTH's counsel in the arbitration;

- barred Terra/DTH from asking the tribunal to remove Gaitán or Echeverría from their positions, or from asserting claims against the Peppertree/AMLQ-appointed directors for having failed to support that removal, based on conduct occurring prior to July 22, 2022; and

- shifted Peppertree/AMLQ's share of the tribunal's fees and expenses to Terra/DTH.[55]

---

[53] *Id.*
[54] Rodriguez Ex. 26.
[55] Ward Ex. 50 ¶ 52-53.

The SFPA did not appoint Gaitán as CEO of the Company. But it does reference the tribunal's November 12, 2021 order, which appointed Gaitan to his role in the Company as of March 19, 2021.[56]

**Peppertree/AMLQ have ignored the Company's management's concerns.**

While the parties arbitrate their disputes here in the United States, the Company's eight Latin American subsidiaries have been largely ignored by Peppertree/AMLQ. Management from the Company's subsidiaries have vocalized their frustration to the Company's board members.[57] And the limited support Terra/DTH have been able to provide to the Company's subsidiaries, Peppertree/AMLQ immediately frame as evidence of collusion.[58]

**Quisquinay asks a court in the British Virgin Islands to identify his CEO.**

On March 3, 2023, Quisquinay filed a declaratory judgment action in the British Virgin Islands against the Company and Gaitán, asking the court to declare who is the current CEO of the Company (the "BVI Declaratory Action").[59] Quisquinay attached to the BVI Declaratory Action most material documents from the New York arbitration, including but not limited to:

- Shareholders Agreement;
- Development Agreement;
- November 21, 2021 order;
    - Adam Schachter's letter to the tribunal;
    - Peppertree's emergency motion for interim relief;

---

[56] Ward Ex. 50 ¶ 8.
[57] Rodriguez Ex. 27; Ex. 28.
[58] Rodriguez Ex. 29.
[59] Rodriguez Ex. 30.

     ○  March 19, 2021, Framework Agreement;

- four partial final awards from the New York arbitration;
- Peppertree's Demand for Arbitration;
- confirmation/vacatur petitions before this Court; and
- various interim orders of the New York arbitral tribunal.[60]

On July 7, 2023, Peppertree/AMLQ filed an application to intervene in the BVI Declaratory Action as shareholders of the Company seeking (1) to be joined as parties; (2) a permanent stay of the proceedings in deference to the New York arbitration proceedings; and (3) as an alternative, a judgment dismissing the action on the basis that a New York arbitration has already determined that Gaitán is the rightful CEO of the Company.[61] The application on intervention of Peppertree and Goldman is scheduled for hearing in March 2024.[62] The parties have jointly agreed to instruct counsel for the Company in the BVI to seek a stay of proceedings as to the Company given the fact that Peppertree/AMLQ are making substantive arguments in the proceedings, and because the directors of the Terra/DTH intend to apply to intervene as interested parties in order to be heard on these issues.

**Death by a thousand footnotes.**

Since Peppertree filed its demand for arbitration, it has embedded prejudicial footnotes in its submissions which are only meant to poison the well against Terra/DTH.

---

[60] Rodriguez Ex. 31. (Due to the size of the filing, and that all of the documents have already been filed before this Court, Terra has attached the BVI complaint's index in lieu of every individual document).
[61] Ward Ex. 58
[62] Ward Ex. 59

These footnotes serve no other purpose and are never accompanied by evidentiary support. For example:

- "It is noteworthy that Peppertree has been investing in tower companies since 2004 and has never been on either side of any litigation, but litigation is a normal course of dealing for the Terra Respondents."[63]

- "That Respondents felt the need to request to file sixteen (16) separate witness statements to address the issues raised in the Motion is, in and of itself, suspect."[64]

But these allegations only foreshadowed the irreversible slander to come.  And reappear now in Peppertree/AMLQ's motion for anti-suit injunction.[65] Peppertree/AMLQ have repeatedly accused Terra/DTH, without any basis in fact and in front of the arbitration's tribunal and this Court, of:

(1) planting the bribery article that Peppertree/AMLQ introduced to the tribunal;[66]

(2) puppeteering various managers of the Company's subsidiaries to prosecute foreign arbitrations;[67] and

(3) engaging in unethical conduct which has forced their previous counsel to withdraw.[68]

And Peppertree/AMLQ continue to claim it was the tribunal which asked to see the document referencing the bribery article. But the tribunal's request was only in response to Peppertree's footnote volunteering the publication by stating: "Peppertree is happy to provide these letters at the Tribunal's request,"[69] which the tribunal specifically referenced

---

[63] Rodriguez Ex. 32 fn. 4.
[64] Rodriguez Ex. 33.
[65] ECF 172, fns. 9, 11, 14.
[66] Rodriguez Ex. 34 fn. 7; Ex. 35, fns. 2, 3; Ex. 36, fn.1; Ex. 37, fn. 6.; Ward Ex. 39.
[67] Rodriguez Ex. 38, fn. 5; ECF No. 148, fn. 13; ECF No. 137, fn. 4.
[68] Rodriguez Ex. 29 fn. 16; ECF No. 83 fn. 8; Case No. 1:22-cv-07301-LAK, ECF Doc. No. 27 fn. 29 (Filed under seal).
[69] Rodriguez Ex. 39 fn. 1.

when requesting the document.[70] Rather than solely submitting the requested letters,

Peppertree included  its own letter to Terra's counsel which included their unsubstantiated

allegations and  referenced the bribery article.

Peppertree/AMLQ are the architects of their own prison. As explained in

Terra/DTH's petitions to vacate the second[71] and third partial final awards,[72] and their

petition to disqualify the arbitration's tribunal for evident partiality,[73] Peppertree/AMLQ

should not be allowed to force Terra/DTH to drink from the well they have poisoned.

## ARGUMENT

Federal courts have the power to enjoin foreign suits by persons subject to their

jurisdiction.[74] Because an injunction on foreign litigation restricts the court of a foreign

sovereign, anti-*foreign*-suit injunctions should be "used sparingly," and granted "only with

care and great restraint."[75] Therefore, a court should heavily weigh principles of comity in

deciding whether to impose a foreign anti-suit injunction.[76]

A court can only impose an anti-suit injunction if two conditions are met: "the

parties are the same in both matters, and resolution of the case before the enjoining court is

dispositive of the action to be enjoined."[77] Only if those two requirements are met, can the

---

[70] Rodriguez Ex. 40.

[71] ECF Nos. 108, 109, & 121.

[72] ECF Nos.  141, 142, & 158.

[73] Case No. 1:22-cv-07301-LAK, ECF Doc. No. 15 (filed under seal).

[74] *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987).

[75] *Id*. at 35-36 (internal citations and quotations omitted).

[76] *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 200 (2d Cir. 2004) (citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654-55 (2d Cir. 2004)).

[77] *Paramedics*, 369 F.3d at 652.

court then consider the *China Trade* factors.[78] The five *China Trade* factors a court should consider are: (1) frustration of a policy in the enjoining forum; (2) whether the foreign action would be vexatious; (3) whether the foreign proceedings present a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) whether the proceedings in the other forum prejudice other equitable considerations; or (5) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.[79]

**The Court should decline to interfere with the sovereignty of the BVI because the case does not meet the threshold requirements for an anti-suit injunction**

### A.   An anti-suit injunction would restrict the British Virgin Islands from supervising its own corporation.

A court should give substantial weight to principles of comity when making the decision to impose an anti-foreign-suit-injunction.[80] Such an order infringes on the jurisdiction of the court of a foreign sovereign.[81]

The Company's shareholders made the voluntary decision to incorporate the Company in the British Virgin Islands. Peppertree/AMLQ cannot now run back to the United States for protection from a British Virgin Islands' court controlling the Company's corporate governance under its laws of incorporation.[82]

---

[78] *Id.*

[79] *See Jolen, Inc. v. Kundan Rice Mills, Ltd.*, 2019 WL 1559173, at *2 (S.D.N.Y. Apr. 9, 2019).

[80] *China Trade* 837 F.2d at 35-36.

[81] *Id.*

[82] *See Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992) (dissolving anti-foreign-suit injunction because principles of comity outweigh a party's economic hardship, rather it "conveys the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling to even allow the possibility.").

Quisquinay seeks a declaration from a British Virgin Islands court as to who is the current CEO of the Company under British Virgin Islands law. Whether the British Virgin Islands court agrees that the Shareholders Agreement delegates the appointment of the Company's CEO to a New York arbitration tribunal is a question of British Virgin Islands law. This Court should refrain from interfering with the British Virgin Islands' sovereignty over its corporation.

The instant case raises the same sovereignty concerns the Second Circuit confronted in *LAIF X SPRL v. Axtel, S.A. de. C.V.*, where it affirmed the denial of an anti-suit injunction.[83] In *Axtel*, LAIF X (the proclaimed majority shareholder of the company in dispute — Axtel) initiated arbitration in New York against Telinor and Blackstone.[84] LAIF X sought to nullify a share transfer between Telinor and Blackstone — alleging the transfer violated Axtel's shareholder's agreement and deprived LAIF X of its status as majority shareholder.[85] While LAIF X demanded arbitration of the issue, Telinor filed a declaratory action in Mexico seeking a declaration that the way LAIF X acquired its shares of Axtel was in violation of the company's governing documents, and therefore void.[86]

Axtel was a Mexican corporation, and whether LAIF X was a shareholder was an issue of Mexican law.[87] The Second Circuit in *Axtel* affirmed the denial of the anti-suit injunction because (1) Telinor was already participating in the arbitration, and (2) enjoining

---

[83] *Axtel*, 390 F.3d at 200.
[84] *Id*. at 196-197.
[85] *Id*.
[86] *Id*. at 198.
[87] *Id*. at 200.

Telinor from proceeding with its lawsuit would interfere with the sovereignty of Mexico to control a company incorporated there.[88]

The case before this Court gives even less reason to enjoin the BVI Declaratory Action because Quisquinay is not a party to any arbitration agreement and cannot be forced to arbitrate his dispute. And if this Court believes he is acting as an agent of Terra/DTH, there is nothing to compel because they have continued to participate in the arbitration.

**B.      None of the parties to the BVI Declaratory Action are before the Court.**

A court can only issue an anti-suit injunction against parallel litigation if "the parties are the same in both matters…."[89] The parties before the enjoining court do not need to be identical to those in the foreign action, only sufficiently similar.[90] Peppertree/AMLQ fail to meet this requirement because no party before this Court appears in the BVI Declaratory Action.

The only parties to the BVI Declaratory Action are Quisquinay, Gaitán, and the Company. None are before this Court.

Peppertree/AMLQ advance three positions to meet the similarity requirement. *First*, they assert that the parties to the BVI Declaratory Action and the New York arbitration are the same.[91] *Second*, they ask the Court to join the Company to this action so as to then enjoin the Company's agents.[92] *Third*, they argue the Court should find that

---

88 *Id.*
89 *Paramedics*, 369 F.3d at 652.
90 *Id.*
91 ECF 172 at 22.
92 ECF 172 at n. 5.

20

Quisquinay is prosecuting the BVI Declaratory Action as an agent of Terra/DTH so as to

then enjoin Quisquinay as Terra/DTH's agent.[93]

       1.    *The Court cannot issue an anti-suit injunction against parties*
              *not before it.*

     Quisquinay, the petitioner in the BVI Declaratory Action is not a party before this

Court. The Company is not a party before this Court. The Court does not have jurisdiction

to enjoin parties to an arbitration only because it sits in review of the arbitration's awards.[94]

So while the Company may be a party to the arbitration — a nominal party at that — it is

not a party in any capacity before this Court.

     The fact that Peppertree/AMLQ's attempt to enjoin litigation they are not a party to

(or would themselves be bound by) distinguishes this case from every case relied upon to

show the parties to the actions are sufficiently similar.[95]

       2.    *Quisquinay should not be enjoined as an agent of the*
              *Company from suing the Company.*

     Peppertree/AMLQ argue in a footnote, the irony, that the Court should join the

Company to this action as a nominal respondent, and then enjoin the Company's officers

(Quisquinay) from prosecuting the BVI Declaratory Action.

     Quisquinay is not a party to the arbitration agreements at issue here, and this Court

should not enjoin him from bringing a lawsuit suit vindicating his statutory rights under

---

[93] ECF 172 at 23.

[94] *See Paramedics*, 369 F.3d at 652; *In re Vivendi Uni., S.A. Securities Lit.*, 2009 WL
3859066 at *5 (S.D.N.Y. Nov. 19, 2009) (stating the first requirement for an anti-suit
injunction requires "that the parties be the 'same' in the action in the enjoining court and
the action to be enjoined.").

[95] *See Symbion Power Holdings LLC v. Bouka*, 2023 WL 3266784 at *3-4 (S.D.N.Y. May
4, 2023).

British Virgin Islands law.[96] It would be quite an effective strategy if a company could enjoin its employees from suing the company because they are its agents (which raises employment law questions).

Peppertree/AMLQ cite to one case where a court in this district attempted such a two-step maneuver, *McNeill v. New York City Housing Authority*[97] In *McNeill*, section 8 housing recipients brought a class-action lawsuit against the New York City Housing Authority ("NYC Housing Authority") for their practice of suspending "Section 8" subsidies when the plaintiffs' landlords failed to make repairs to their apartments,[98] something the plaintiffs had no control over, and the NYC Housing Authority failed to offer them opportunities to cure.[99] The plaintiffs sought to join their landlords to the action for their violation of federal housing law, and to then enjoin the landlords from bringing actions in housing court to recover NYC Housing Authorities share of rent it had not paid to the plaintiffs because it withheld Section 8 subsidies.[100]

*McNeill* is about as factually inapposite as it gets from the instant proceeding. Here, Peppertree/AMLQ are trying to enjoin the CFO of a British Virgin Islands company from litigating his statutory right granted to him under British Virgin Islands law. An action which Peppertree/AMLQ are not parties on either side of the litigation.

---

[96] *See Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 50 F.3d 597, 602 (11th Cir. 2007).
[97] 719 F. Supp. 233 (S.D.N.Y. 1989).
[98] *Id*. at 238.
[99] *Id*.
[100] *Id*. at 251, 254.

3.      *Quisquinay is not acting as an agent of Terra/DTH.*

Peppertree/AMLQ's third attempt to meet the substantial similarity requirement, that Quisquinay is acting as an agent of Terra/DTH fares no better. All the cases Peppertree/AMLQ rely upon the relationships among the affiliated corporations that were parties to the different suits. Every single agency analysis found direct ownership and control over the party proceeding in a foreign forum. And none of them found an agency relationship between a corporation over an individual. Quisquinay is acting in his role of CFO of the Company. Even if Terra/DTH severed all relationship they had with Quisquinay — terminating Quisquinay from his role at DTH — it would not affect Quisquinay's standing in the BVI Declaratory Action because he brings the action as the CFO of the Company.

Quisquinay, a Guatemalan national, is CFO of the Company, which is incorporated in the British Virgin Islands. Quisquinay has no ability to come before this Court, or the New York arbitration, and ask them to hear his claim because he is not a party to the arbitration clause under the New York Convention which is the basis for jurisdiction to both this Court and the tribunal of the New York arbitration.[101]

In *International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, the court found that the identical parties requirement was met where the owner of the company, Dantas (present before the court) had his company file a related suit in Brazil, that the court had already established Dantas owned and controlled.[102] Similarly, but

---

[101] *See Garpeg, Ltd. v. U.S.*, 583 F.Supp. 789, 798-99 (S.D.N.Y. 1984) (although predating *China Trade*, the case was cited positively in the Second Circuit's *China Trade* opinion).
[102] 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006).

perhaps even more factually distinct, in *Storm LLC v. Telenor Mobile Communications AS*, the court enjoined a party from proceeding in collusive litigation in Ukraine between Storm and its affiliate, where it asked the Ukrainian court to enjoin Telenor from proceeding with arbitration in New York.[103] Carving out exclusive jurisdiction.

The same distinction is found in all of Peppertree/AMLQ's case law: companies owned by parties before the enjoining court cannot be used as proxies to litigate elsewhere.[104] Terra/DTH have no more control over Quisquinay as CFO of the Company than Peppertree/AMLQ. Terra/DTH could terminate Quisquinay from all Terra/DTH positions he holds, but it would have no effect on Quisquinay's ability to continue the BVI Declaratory Action, as the unanimously appointed CFO of the Company.

## C. This Court has not been asked to determine who the Company's CEO is — or if that question is arbitrable.

A court can issue an anti-suit injunction only if "the case before the enjoining court would be dispositive of the enjoined action." [105] Peppertree/AMLQ advance a straw-man argument — that the Court should issue an anti-suit injunction to protect a ruling of the arbitration's tribunal.[106]

Rather, courts in the Second Circuit have found anti-suit injunctions in aid of arbitration appropriate when necessary to: (1) compel arbitration of certain issues or (2)

---

[103] No. 06-cv-13157, 2006 WL 3735657 at *5 (S.D.N.Y. Dec. 15, 2006).
[104] *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003); *Software AG, Inc. v. Consist Software Solutions, Inc.*, 2008 WL 563449, at *24 (S.D.N.Y. Feb. 21, 2008); *Vivendi Uni.*, 2009 WL 3859066 at *1 (enjoining a defendant in the SDNY from continuing a French action where it asked the French court to enjoin the plaintiff's in the SDNY from continuing the case).
[105] *Paramedics*, 369 F.3d at 653.
[106] ECF 172 p. 22-24.

protect the court's judgment on the merits (because it confirmed an arbitration award). For example, in *Paramedics*, the Second Circuit found that a court's order compelling arbitration of an issue was a judgment that would be infringed if the arbitral issue could be litigated by the parties elsewhere.[107] Similarly in *Karaha Bodas*, an anti-suit injunction was appropriate where foreign litigation attempted to undo an arbitration award which had been confirmed and was a judgment of the court.[108]

      Neither situation is present here.

      1.    *Peppertree/AMLQ have not attempted to compel arbitration.*

      Peppertree/AMLQ have not brought a motion to compel arbitration. Quisquinay is not a party in the arbitration or a party to the agreements which empower the arbitral tribunal with jurisdiction. And to the extent Peppertree/AMLQ allege he is acting as an agent of Terra/DTH, it is undisputed that Terra/DTH continue to submit to the jurisdiction of the arbitrators.[109] Therefore, and because Peppertree/AMLQ have not brought a motion to compel arbitration, the issue of whether Quisquinay must arbitrate the identity of his Company's CEO is not before this Court.

      2.    *No judgment of this Court establishes who the Company's CEO is.*

      Peppertree/AMLQ contend two rulings of the arbitration's tribunal allow the Court to enjoin the BVI Declaratory Action. The November 12, 2021 order and the Second Partial Final Award. But neither are judgments of this Court.

---

[107] *See Paramedics*, 369 F.3d at 653.
[108] *See Karaha Bodas Co. L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 118 (2d Cir. 2007).
[109] *See Axtel*, 390 F.3d at 200.

The Court declined to review the November 12, 2021 and March 15, 2022 orders because they were interim orders not subject to the Court's jurisdiction.[110] In fact, Peppertree/AMLQ rejected the tribunal's offer to transform the November 12, 2021 order into a partial final award — to keep it insulated from the Court's review.[111] They cannot now come to the Court asking it to protect the order it affirmatively hid from this Court's jurisdiction.

Next, the SPFA has not been confirmed by this Court.[112] But even if the Court did confirm it, it does not resolve the issue of who the Company's CEO is.

The only mention of the Company's CEO is in the award's procedural history section. There, it notes that the November 12, 2021 order appointed Gaitán as CEO. But findings of fact are not included in a court's judgment.[113] The true legal effect of the SPFA are that it: (1) stayed Terra/DTH's counterclaims in the arbitration; (2) restricted Terra/DTH's attorneys from participating in the arbitration unless accompanied by a lawyer who has been barred in New York for at least 20 years; (3) restricted Terra/DTH from requesting the tribunal remove Gaitán or Echeverría from their positions in the Company for conduct prior to July 22, 2022 (or from bringing a claim against Peppertree-appointed directors for failing to remove Gaitán or Echeverría); and (4) awarded fees and

---

[110] Memorandum Opinion, ECF No. 124 p. 18-19.
[111] Ward Ex. 32.
[112] *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 (D.C.C. 1984) (noting that anti-foreign-suit injunctions before a judgment of the court is rendered offends principles of comity).
[113] *Hidalgo v. 4-34-68, Inc.*, 988 N.Y.S.2d 64, 67 (2d Dep't 2014).

costs to Peppertree/AMLQ.[114] Conversely, if the Court decides to vacate the Second Partial Final Award, it would not be a dispositive judgment that Gaitán is no longer the CEO.

Finally, even if the Court found that the rulings of the tribunal were soon to be judgments of this Court that it felt were necessary to protect and believed that Quisquinay was acting as an agent of Terra/DTH by prosecuting the BVI Declaratory Action, it should still decline to issue an anti-suit injunction. The courts of the British Virgin Islands have secondary jurisdiction to review the arbitration awards under the New York Convention and have the right to refuse to enforce them.[115] The Second Circuit in Y*usuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, made clear that the New York Convention specifically contemplates a court in a secondary jurisdiction refusing to enforce an arbitration award pursuant to Section V of the Convention.[116] The Court has no discretion to interfere in that process.[117] Whether the British Virgins Islands finds the tribunal's appointment of Gaitán to CEO as offending its public policy is for its courts to decide, and the United States cannot interfere with that process.

> **D.      The BVI's sovereign right to control its own corporation outweighs the other *China Trade* factors.**

If the Court finds that Peppertree/AMLQ meet the two requirements discussed above, the five factors set out in *China Trade* favor denying Peppertree/AMLQ's motion for anti-suit injunction against Quisquinay.

---

[114] Ward Ex. 50 pp. 52-54.

[115] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 369-370 (5th Cir. 2003).

[116] *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).

[117] *Karaha Bodas*, 335 F.3d 373-74.

*First*, the court should weigh federal policies that would be frustrated if it does not grant an anti-suit injunction. The United States policy for enforcing arbitration clauses is on equal footing with that of its policy "against interfering with proceedings before a foreign sovereign."[118] And Peppertree/AMLQ have failed to prove that Quisquinay is subject to any applicable arbitration clause. The *Storm* case is facially inapplicable because the collusive foreign litigation sought to enjoin the claimant in the applicable arbitration from proceeding with the case.[119]

*Second*, whether the foreign proceeding is vexatious. A proceeding is vexatious "where a foreign proceeding threatens to undermine a federal judgment."[120] As explained above, the issue of the Company's CEO is not a judgment of the Court, nor is it under review by the Court.

*Third*, as to whether the parallel proceeding is "a threat to the issuing court's *in rem* or *quasi in rem* jurisdiction…."[121] This does not refer to a suit that is just proceeding in parallel "but is attempting to carve out exclusive jurisdiction over the action…."[122] There are no such allegations of exclusivity here. Rather, Peppertree/AMLQ argue that this is Terra/DTH's attempt to disrupt the Company's sale.[123] In fact, the investment bank Peppertree/AMLQ retained (that Terra/DTH were forced to accept) to facilitate the sale of the Company has recently informed the parties that it is conflicted from selling the Company, because it must first sell Torrecom, a competitor to the Company.

---

[118] *Laif X Sprl v. Axtel, S.A. de C.V.*, 310 F.Supp.2d 578, 581 (S.D.N.Y. 2004).
[119] *Storm LLC*, 2006 WL 3735657 at *5.
[120] *Karaha Bodas*, 500 F.3d at 126.
[121] *MasterCard Intern. Inc. v. Fed. Int'l de Football Ass'n*, 2007 WL 631312 at *9 (S.D.N.Y. Feb. 28, 2007).
[122] *Id*.
[123] ECF No. 172, p. 26.

Besides further unsupported allegations by Peppertree/AMLQ of Terra/DTH's desire to burn the Company to the ground, the SFPA does not determine Gaitán's role as CEO, as discussed above.

*Fourth*, whether the proceedings in the British Virgin Islands prejudice other equitable consideration.[124] The BVI Declaratory Action is not delaying, or even interfering with the ongoing arbitration. And whether the British Virgin Islands should be allowed to hear litigation over its own company weighs heavily against issuing an anti-foreign-suit injunction.[125]

*Fifth*, whether there is risk of delay, inconvenience, additional expense, and inconsistent judgments.[126] Although Peppertree/AMLQ argue that they have incurred substantial time and money litigating the issue, most of those fees have been shifted to Terra/DTH by the arbitration's tribunal. As to Peppertree/AMLQ's continued argument this is Terra/DTH's action in the British Virgin Islands, they have failed to provide make such a showing.

### E.   Peppertree/AMLQ have failed to show any risk of irreparable harm (or a likelihood of success) and therefore are not entitled to a preliminary injunction.

Peppertree/AMLQ assert they will suffer irreparable harm due to (1) the threat of inconsistent rulings, and (2) denial of their bargained-for right to final binding arbitration.[127]

---

[124] *Laif X* (District Court), 310 F.Supp. at 581.
[125] *Id*.
[126] *Jolen*, 2019 WL 1559173 at *5.
[127] ECF No. 172, 28-29.

*First*, the BVI Declaratory Action is not governed by, nor does it impede, the parties' arbitration agreement. Quisquinay's filing in the British Virgin Islands attached almost all (if not all) the material rulings of the arbitration panel and this Court. It is possible that the British Virgin Islands court yields to these rulings as establishing Gaitán as the CEO. It is also possible that an interim order of an arbitral panel is not recognized as a binding injunction on a corporation in the British Virgin Islands. Whatever the British Virgin Islands' court ruling may be, this Court should decline to interfere with that process.

As discussed above, Quisquinay is not a party to any arbitration agreement, and cannot be compelled to arbitrate his dispute. Peppertree/AMLQ's right to compel arbitration against Terra/DTH regarding Company disputes over the Company does not apply to the world at large, or even the Company's employees.[128]

*Second*, for all the reasons stated above, Peppertree/AMLQ are not entitled to an anti-suit injunction, and therefore are not likely to succeed on the merits. Quisquinay is not subject to this Court's jurisdiction and for that reason it cannot enjoin him from bringing his suit. Finally, Quisquinay raises a dispute among directors of a deadlocked Board implicating the issue of an appointment of a Company CEO consistent with British Virgin Islands corporate law.

---

[128] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

**CONCLUSION**

For all the reasons set forth and incorporated by reference herein, the Court should deny Peppertree and AMLQ's motion for preliminary and permanent anti-suit injunction.[129]

Dated:      New York, New York
            August 17, 2023

                                    Respectfully submitted,

                                    **CAREY RODRIGUEZ, LLP**

                                    By: */s/ Juan J. Rodriguez*
                                    Juan J. Rodriguez

                                    1395 Brickell Avenue, Suite 700
                                    Miami, Florida 33131
                                    Tel: (305) 356-5486
                                    jrodriguez@careyrodriguez.com
                                    *Admitted Pro Hac Vice*

---

[129] The proposed order, ECF No. 174, submitted by Peppertree/AMLQ in conjunction with its motion contains the same overbroad and unenforceable requirements as the tribunal's Third Partial Final Award. It could arguably be construed to require Terra/DTH to take unlawful acts to enjoin proceedings they are not bringing. In this case, that would include forcing Quisquinay to forego his individual statutory rights under British Virgin Islands law. It also misrepresents that Quisquinay is a Company director appointed by Terra, he is not, and as discussed above, all shareholders approved his appointment as CFO.