UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                              Petitioners,

           -against-                                   22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

                              Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9-6-2023

### MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This action is before the Court on the petition of Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay) Ltd. ("AMLQ" and, together with Peppertree, "Petitioners") to confirm an arbitration award (Dkt 131) and the cross-petition of Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra") and DT Holdings, Inc. ("DTH" and, together with Terra, "Respondents") to vacate that award (Dkt 140).

        On February 22, 2023, a three-arbitrator panel (the "Tribunal") unanimously issued the Third Partial Final Award ("TPFA"), which, *inter alia*, ordered Respondents to terminate two separate, duplicative, and unauthorized foreign arbitrations that were initiated by Respondents' employees or contractors in both Peru (the "Peru Arbitration") and Guatemala (the "Guatemala Arbitration," and collectively with the Peru Arbitration, the "Foreign Arbitrations"). I assume familiarity with the many filings in this action, as well as the Court's prior decisions in this case, and

2

set forth only the facts pertinent to the parties' motions below.

*Facts*

On February 24, 2022, the Tribunal[1] issued its unanimous First Partial Final Award ("FPFA"), which ordered a sale of Continental Towers LATAM Holdings Limited (the "Company") pursuant to the Shareholders Agreement among Terra, Peppertree, AMLQ, and the Company (the "SHA").[2] The FPFA was confirmed by this Court on January 18, 2023.[3]

On August 12, 2022, the Tribunal issued its Second Partial Final Award ("SPFA"), which sanctioned Respondents for engaging in a "multi-faceted effort . . . to present th[e] Tribunal and the Company's Board a false narrative of misconduct and criminality by" the Company's chief executive officer and chief operating officer.[4] In the SPFA, the Tribunal ordered a "stay of

---

[1] The "Tribunal" refers to the arbitral tribunal that was empaneled in the underlying action entitled: *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "NY Arbitration"). The NY Arbitration is administered by the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association (the "AAA").

[2] *See* Dkt 9-22.

The facts are drawn principally from the Tribunal's FPFA of February 24, 2022, SPFA of August 12, 2022, and TPFA of February 22, 2023. The Court "is not empowered to second-guess the arbitrators' fact-finding or assessment of credibility" and "must accept findings of fact if they are not clearly erroneous." *Acciardo v. Millennium Sec. Corp.*, 83 F. Supp. 2d 413, 417 (S.D.N.Y. 2000) (citing *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 706, 725–26 (2d Cir. 1998); *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 686 (2d Cir. 1996)).

[3] *See* Dkts 124, 125.

[4] *See* Dkt 133-18, at ¶ 9.

3

proceedings on Respondents' counterclaims" in the NY Arbitration, that would be lifted "only if Respondents . . . demonstrate[d] to the satisfaction of the Tribunal that they have complied in full with" the SPFA, the FPFA, and other orders of the Tribunal.[5] The Respondents' counterclaims remain stayed pursuant to the SPFA.

In December 2022, three of the Company's wholly owned subsidiaries and those subsidiaries' managers submitted a request for arbitration to the Arbitration Center of the Chamber of Commerce of Lima in Lima, Peru related to the Company and asserting claims substantially identical to Respondents' counterclaims that had been stayed in the NY Arbitration.[6] Then, in January 2023, the Company's two Guatemala-based wholly owned subsidiaries initiated the Guatemala Arbitration, in which they also asserted claims substantially identical to those stayed by the Tribunal in the NY Arbitration.[7] Although the parties differ between the NY Arbitration and the Foreign Arbitrations, the Tribunal has found that "[t]he real parties in interest . . . are precisely the same."[8]

On January 20, 2023, Petitioners filed a motion in the NY Arbitration seeking an anti-suit injunction relating to the Foreign Arbitrations (the "Motion"). Over the following three weeks, the parties submitted "more than 80 (mostly single-spaced) pages of briefing and more than

---

[5] Dkt 133-18, at 53.

[6] *See* Dkt 133-47, at ¶ 2.

[7] *See id.*, at ¶ 5.

[8] *Id.*, at ¶ 126.

1,300 pages of exhibits," and the Tribunal heard nearly four hours of argument on the Motion.⁹ The Tribunal unanimously issued the TPFA on February 22, 2023.

> In the TPFA, the Tribunal made, *inter alia*, the following factual and legal findings:
>
> - "The real parties in interest in the Foreign Arbitrations and in this [NY] Arbitration are precisely the same."¹⁰
>
> - "Respondents at a minimum have supported the Foreign Arbitrations, and . . . Respondents' proffer of a Board resolution purporting to seek dismissal of the Foreign Arbitrations was a pretense to mask their ongoing support for the Foreign Arbitrations."¹¹
>
> - Respondents have made the "same claims and sought the same damages already claimed by Respondents in [the NY Arbitration] in counterclaims submitted in 2021."¹²
>
> - Respondents "acknowleg[ed] that the foreign tribunals lack jurisdiction over [Petitioners] and agree[d] that the Foreign Arbitrations are 'bizarre.'"¹³
>
> - Respondents "breached the implied covenant of good faith and fair dealing" in the SHA and the Company's other governing documents.¹⁴

Based on those findings, among others, the Tribunal issued the TPFA, which "require[d] Respondents to bring about the termination of the Foreign Arbitrations and [to] prevent

---

⁹ *See* Dkt 142, at 2; Dkt 133-41.

¹⁰ Dkt 133-47, at ¶ 126.

¹¹ *Id.*, at ¶ 78.

¹² *Id.*, at ¶¶ 2, 11.

¹³ *Id.*, at ¶ 117.

¹⁴ *Id.*, at ¶ 116.

5

new ones, and [to] bear financial risk if they fail[ed] to do so."[15]  Specifically, the Tribunal ordered Respondents to:

- "cause the Foreign Arbitrations to be terminated within 10 days of the date of" the TPFA;[16]

- "notify and submit sufficient proof to th[e] Tribunal of the termination of the Foreign Arbitrations not later than the first business day after the 10th day from the issuance of" the TPFA;[17]

- "prevent the commencement of any similar Foreign Arbitration or other legal proceeding involving all or any of the subject matter of Respondents' counterclaims" in the NY Arbitration;[18]

- "not present in any forum as an excuse for non-compliance with th[e] [TPFA] that their efforts to bring about termination of the Foreign Arbitrations, or to prevent the commencement of other similar Foreign Arbitrations or proceeds, were appropriate but unsuccessful;"[19]

- "pay the legal fees and expert fees, and related expenses, of [Petitioners] and the Company in the pending Foreign Arbitrations and any new Foreign Arbitrations or proceedings promptly upon presentation of invoices, and Respondents shall indemnify and hold harmless the Company and [Petitioners] . . . against any and all damages, liabilities, awards, judgments, costs and expenses that may result from their involvement as parties to the pending Foreign Arbitrations and any new Foreign Arbitrations or proceedings;"[20]

- "deposit into an escrow account upon terms acceptable to Claimants, as security for

---

[15] *Id.*, at ¶ 127.

[16] *Id.*, at 42, ¶ 1.

[17] *Id.*, at 42, ¶ 2.

[18] *Id.*, at 42, ¶ 3.

[19] *Id.*, at 43, ¶ 4.

[20] *Id.*, at 43, ¶ 5.

the full performance of indemnification obligations imposed" in the TPFA, "an amount equal to one-half of the money damages demanded in the Foreign Arbitrations: $41,416,371.17" if Respondents "fail to accomplish the requirements of paragraphs 1 and 2 above within 15 days from the date of th[e]" TPFA;"[21] and

- "make additional deposits to the escrow of one-half of the maximum damages demanded" if "any new Foreign Arbitration or proceeding covered by paragraph 3 [of the TPFA] [is] filed," and, "[i]f no reference is made to damages in a specific sum or range, the additional deposit for any such Foreign Arbitration or proceeding shall be $10 million."[22]

On August 30, 2023, Petitioners informed the Court that the Guatemala Arbitration had issued an injunction on August 23, 2023[23], which directly conflicts with the Judgment of this Court dated January 18, 2023 (the "Guatemala Ruling").[24] Specifically, it purportedly enjoins Petitioners and certain of the Company's subsidiaries from: (i) engaging in transactions that change the equity interests that Petitioners hold in certain of the Company's subsidiaries, (ii) disposing of or granting use or possession of any assets or property of the Company's subsidiary in Guatemala, and (3) terminating or modifying any contracts entered into by the Company's subsidiary in Guatemala.[25]

In view of the Guatemala Ruling, Petitioners move for expedited consideration of their motion to confirm the Tribunal's TPFA.

---

[21] *Id.*, at 43, ¶ 6.

[22] *Id.*, at 43, ¶ 7.

[23] *See* Dkt 181.

[24] *See* Dkts 124, 125.

[25] *See* Dkt 181, Ex. B, at ¶ 173.

*Discussion*

*Legal Standard*

Arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[26] An award should be confirmed so long as there is a "barely colorable justification" for the outcome that the arbitrator reached, even if the Court "disagree[s] with it on the merits."[27]

There are four grounds on which an arbitration award may be set aside: (1) "corruption, fraud, or undue means," (2) "evident partiality or corruption in the arbitrators, or either of them," (3) "misconduct [by the arbitrators] in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy," or (4) the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."[28] Atop these four discrete grounds is a "judicial gloss" that contemplates vacatur where an award was rendered "in manifest disregard of the law."[29] Satisfying

---

[26] *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997)) (internal quotation marks omitted).

[27] *Landy Michaels Realty Corp. v. Local 32B–32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992); *see also Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (Kaplan, J.) ("The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the [FAA]." (internal citations omitted)).

[28] 9 U.S.C. § 10(a)(1)–(4).

[29] *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340, 346 n.10 (2d Cir. 2010); *cf. Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662 (2010) (explaining that "manifest disregard" does not amount to a fifth ground for vacatur "separate from those enumerated in the [Federal Arbitration Act]").

this standard has been described as a "heavy burden" that requires "more than error or misunderstanding with respect to the law."[30] Judicial confirmation of an arbitration award is considered "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."[31]

Respondents seek to vacate the TPFA on four principal bases. First, Respondents claim that the Tribunal acted in "manifest disregard of law" in implementing a burden-shifting framework. Second, Respondents argue that the Tribunal denied Respondents a full and fair opportunity to be heard in violation of 9 U.S.C. § 10(a)(3). Third, Respondents claim that the Tribunal exceeded its authority under Section 10(a)(4). Fourth and finally, they claim that the Tribunal demonstrated "evident partiality" under Section 10(a)(4). Respondents' arguments are without merit and the TPFA is confirmed for the reasons set forth below.

*Manifest Disregard of the Law*

First, Respondents argue that the TPFA was issued in "manifest disregard of the law" and therefore should be vacated.[32] They contend that the "law establishing that the movant bears the burden of proof on a motion for a mandatory injunction is well-defined, explicit, and clearly applicable in this instance."[33]

---

[30] *T.Co Metals, LLC*, 592 F.3d at 339 (citations and internal quotation marks omitted).

[31] *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

[32] Dkt 141, at 20.

[33] *Id.*

This argument is without merit. To vacate an award based on manifest disregard of the law, a party must establish that there is a "well-defined, explicit and clearly applicable law," the arbitrators actually knew of that law, and they nevertheless improperly applied it.[34] A court's review of an award under this standard is "severely limited."[35] Indeed, "manifest disregard of the law" is a "doctrine of last resort" and is limited to those "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent."[36] No such impropriety occurred here, as it was within the Tribunal's discretion to adopt the burden-shifting framework.[37]

*Fairness of the Arbitration Process*

Second, Respondents argue that the TPFA should be vacated under Section 10(a)(3) of the FAA, which authorizes vacatur where "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."[38] Federal courts do not superintend arbitration proceedings, and this Court's "review

---

[34] *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011).

[35] *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989)).

[36] *Id.*

[37] *See* AAA Rule R-32(a)-(b); *see also In re September 11 Litigation*, 811 F. Supp. 2d 883, 894 (S.D.N.Y. 2011); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 49 (2d Cir. 2015) ("where one party has knowledge or access to information that renders that party better able than his adversary to explain what actually transpired, courts have tended to put the onus on that party to do so").

[38] 9 U.S.C. § 10(a)(3).

is restricted to determining whether the procedure was fundamentally unfair."[39]

Although arbitrators "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument," they are not required to hear all evidence offered by a party or "follow all the niceties observed by the federal courts."[40] Only the "most egregious error which adversely affects the rights of a party" warrants vacatur under FAA Section 10(a)(3).[41] Respondents had ample opportunity to be heard during the proceedings that culminated in the TPFA, including – by Respondents' own estimation – "more than 80 (mostly single-spaced) pages of briefing," "more than 1,300 pages of exhibits," and a three-hour hearing with arguments from both sides.[42] Respondents have failed to identify any evidence that they were prevented from presenting and likewise have failed to establish any misconduct by the Tribunal that rendered the Arbitration fundamentally unfair. Vacatur therefore would be improper on this basis.

*Tribunal Allegedly Exceeded Its Authority*

Third, Respondents argue that the TPFA should be vacated because the Tribunal

---

[39] *LTF Constr. Co., LLC v. Cento Sols. Inc.*, No. 20-CV-4097 (LAP), 2020 WL 7211236, at *3 (S.D.N.Y. Dec. 7, 2020) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)); *see also Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) ("The challenging party must show that his *right to be heard has been grossly and totally blocked*," and that "this exclusion of evidence prejudiced him." (internal citations omitted) (emphasis in original)).

[40] *See ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, No. 15 CIV. 4983 (AT), 2016 WL 5475987, at *3 (S.D.N.Y. June 6, 2016) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

[41] *In re Arbitration Between Interdigital Communications Corp. v. Samsung Electronics Co.*, 528 F. Supp. 2d 340, 354 (S.D.N.Y. 2007).

[42] *See* Dkt 142, at 2.

"exceeded [its] powers" pursuant to Section 10(a)(4) of the FAA.[43]

The Second Circuit has "consistently accorded the narrowest of readings to the [FAA's] authorization to vacate awards 'where the arbitrators exceeded their powers.'"[44] Indeed, courts in this Circuit "have been reluctant to vacate commercial arbitration awards on this ground, especially where there is no express restriction on the remedies an arbitrator is authorized to award in the arbitration agreement."[45] The scope of an arbitrator's authority "generally depends on the intention of the parties to an arbitration," which "is determined by the [parties'] agreement."[46]

In the present case, the SHA and the Company's other governing documents grant the Tribunal broad authority to arbitrate "any controversy, claim or dispute arising out of or related to or in connection with" the SHA.[47] Furthermore, Section 8.15 of the SHA provides that "[t]he arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the

---

[43] Dkt 142, at 20.

Although Respondents refer to Section 10(a)(2), *see* Dkt 142, at 20, the Court understands this to have been a typographical error and that Respondents intended to cite Section 10(a)(4), which addresses vacatur "where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10(a)(4).

[44] *Andros Compania Maritima, S.A. & Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir. 1978) (quoting 9 U.S.C. § 10(d)).

[45] *Sanluis Devs., LLC v. CCP Sanluis, LLC*, 498 F. Supp. 2d 699, 706 (S.D.N.Y. 2007) (internal citation omitted).

[46] *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (quotation omitted).

[47] Dkt 133-1, at §§ 8.14, 8.15.

12

[AAA]."[48] In addition, both the SHA and the AAA Rules authorize the Tribunal to order specific performance and injunctive relief.[49]

Respondents contend that the Tribunal exceeded its authority because the SHA "reserves for the Board all authority to act concerning, among other things, 'the commencement, settlement, payment, discharge or satisfaction of any litigation, claim, liability or obligation . . . involving . . . the Company or any Company Subsidiary and any Shareholder . . . .'" Yet the Tribunal already has rejected the factual bases upon which the Respondents' argument is grounded.

Respondents assert that the Petitioners' "only unresolved dispute with Terra regarding the foreign arbitrations was a nascent difference of opinion regarding whether to remove the general managers responsible for the foreign arbitrations."[50] But Petitioners' motion to the Tribunal plainly argued that the Foreign Arbitrations needed to be enjoined because they constituted an ongoing breach of the SHA and threatened their ability to arbitrate claims in the pending Arbitration before the Tribunal. Indeed, contrary to Respondents' assertions, the Tribunal found that they "at a minimum have supported the Foreign Arbitrations, and . . . Respondents' proffer of a Board resolution purporting to seek dismissal of the Foreign Arbitrations was a pretense to mask their ongoing support for the Foreign Arbitrations."[51] This Court does not credit Respondents' factual assertions, which are contrary to the unanimous findings of the Tribunal and to

---

[48] Dkt 133-1, at § 8.15.

[49] *See* Dkt 133-1, at § 8.12; AAA Rules 37, 47.

[50] Dkt 142, at 20.

[51] Dkt 133-47, at ¶ 78.

13

commonsense in view of the Guatemala Ruling.[52] Ultimately, the Tribunal concluded that "[i]t [was] a violation of the [SHA], including its covenant of good faith and fair dealing, for Respondents to assert that the Foreign Arbitrations should be allowed to '*play out*' . . . for any length of time."[53]

In view of the Tribunal's broad grant of authority under both the SHA and the AAA Rules, as well as the demanding standard for vacatur, vacatur is not warranted here.[54]

*Evident Partiality*

Fourth and finally, Respondents claim that the TPFA should be vacated because it was the product of "evident partiality" of the Tribunal under 9 U.S.C. § 10(a)(2).

This Court already rejected substantially similar claims in its opinion confirming the FPFA.[55] Respondents' arguments again fail for the reasons set forth in this Court's prior decision, not the least of which is that Respondents agreed in the SHA to abide by the AAA Commercial

---

[52] *See Application of Ballabon v. Straight Path IP Group, Inc.*, No. 15-cv-5016, 2015 WL 6965162, at *9 (S.D.N.Y. Nov. 10, 2015) ("An arbitrator's factual findings are generally not open to judicial challenge, and a court accepts the facts as the arbitrator found them" because, "[a]fter all, it is the arbitrator's view of the facts that the parties [] agreed to accept.").

[53] Dkt 133-47, at ¶ 127 (emphasis in original).

[54] Respondents' argument that the Tribunal exceeded its authority by seeking to enforce its prior awards, *see* Dkt 148 at 24-25, likewise is rejected. While it is undisputed that the Tribunal lacks the authority to enforce or "protect" its prior awards, there is no evidence that the Tribunal attempted to do so by issuing the TPFA. *See* Dkt 142, at 24 (citing *Coscarelli v. ESquared Hospitality LLC*, No. 18-cv-5943 (JMF), 2021 WL 293163, at *10 (S.D.N.Y. Jan. 28, 2021)).

[55] Dkt 124, at 16-18.

14

Arbitration Rules, including Rule 18(c) stating that decisions by the ICDR, such as its wholesale rejection of all of the Respondents' bias claims, "shall be conclusive."[56] This alone is sufficient to reject Respondents' motion.[57]

*Conclusion*

For the foregoing reasons, Petitioners' petition to confirm the TPFA (Dkt 131) is GRANTED and Respondents' cross-petition to vacate the TPFA (Dkt 140) is DENIED.

The Clerk shall enter judgment accordingly.

SO ORDERED.

Dated:	September 6, 2023

	_____
	Lewis A. Kaplan
	United States District Judge

---

[56] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-cv-1761 (LAK), 2023 WL 257915, at *7 (S.D.N.Y. Jan. 18, 2023) (citing AAA Commercial Rule 18(c)).

[57] Even if the Court were to consider Respondents' bias claims *de novo*, they still would fail. Evident partiality may be found "only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, No. 20-CV-02772 (LAK), 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (quoting *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (emphasis in original) (internal quotation marks and citation omitted)). While evidence of actual bias is not required, "partiality may not be based on speculation." *Id.* Rather, partiality may be inferred "from objective facts inconsistent with impartiality." *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (internal quotation marks and citation omitted). Respondents have failed to set forth any objective facts that are inconsistent with the Tribunal's impartiality.