# EXHIBIT B

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**International Arbitration Tribunal**

**CASE NUMBER 01-21-0000-4309**

**ARBITRATION PURSUANT TO THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION**

**BETWEEN:**

TELECOM BUSINESS SOLUTION, LLC, on its own behalf and derivatively, on behalf of CONTINENTAL TOWERS LATAM HOLDINGS LIMITED, and LATAM TOWERS, LLC, on its own behalf and derivatively on behalf of CONTINENTAL TOWERS LATAM HOLDINGS LIMITED,

Claimants,

vs.

TERRA TOWERS CORP., TBS MANAGEMENT,S.A., DT HOLDINGS INC., JORGE HERNANDEZ and ALBERTO ARZÚ,

Respondents,

and

CONTINENTAL TOWERS LATAM HOLDINGSLIMITED,

Nominal Respondent,

---

TERRA TOWERS CORP., TBS MANAGEMENT,S.A., DT HOLDINGS INC. derivatively and on behalf of CONTINENTAL TOWERS LATAM HOLDINGS LIMITED,

Counterclaimants,

vs.

TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC, F. HOWARD MANDEL, JOHN RANIERI, RYAN LEPENE, and AMLQ HOLDINGS (CAY) LTD.,

Counterclaim Respondents.

-and-

CONTINENTAL TOWERS LATAM HOLDINGS LIMITED,

Nominal Respondent.

---

AMLQ HOLDINGS (CAY) LTD.,

Counterclaimant,

vs.

TERRA TOWERS CORP. and TBS MANAGEMENT,S.A.

Counterclaim Respondents.

---

**PROCEDURAL ORDER NO. 2023-09**
**CONCERNING PHASE 2 OF THE ARBITRATION**

Presently before the Tribunal for determination are three applications, one by Claimants and two by Respondents. The Claimants have submitted a proposed Amended and Restated Demand for Arbitration and Statement of Claims ("Amended Pleading"), and seek the consent of the Tribunal under AAA Commercial Rule R-6(b) for this Amended Pleading to be filed and the new claims asserted therein to be arbitrated in this arbitration. Respondents object to the filing of the Amended Pleading in several respects, and we therefore must consider those objections in connection with the question of Tribunal consent to the amendment. Additionally, Respondents apply for the lifting of the stay of proceedings on their counterclaims, and Respondents apply in the alternative for a stay of the arbitration, measured either by the time required to complete the sale of the Company, or, alternatively, until the U.S. District Court for the Southern District of New York (the "SDNY") decides the *sub judice* Respondents' petition to vacate our Second Partial Final Award ("PFA-2") and Claimants' petition for recognition and enforcement of PFA-2. At issue in that enforcement/vacatur proceeding is the portion of PFA-2 that prescribes the conditions for the Tribunal lifting the stay of proceedings on the Respondents' counterclaims.

## I. Respondents' Objections to the Tribunal Granting Consent for Claimants to Assert Additional Claims

AAA Commercial Rule R-6(b) (2013 Rules) provides the process for the filing of a "new or different claim" by a Claimant, notification of same to the Respondent, and the time frame for Respondent to submit an answer to the new or different claim. Rule R-6(b) also states: "After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent." In conformity with Rule R-6(b), in Procedural Order 2023-07 on August 18, 2023 we invited the Parties to submit "in a manner compliant with AAA Commercial Rule R-6,

any proposed additional or amended claims or counterclaims, including submissions as to why the Tribunal should permit them to be included in the arbitration at this time, and any adjustments to the relief requested on existing claims."

In response, and based on agreed extension of the time for compliance with PO 2023-07, Claimants presented the Amended Pleading on October 11, 2023, including a redline version of the Amended Pleading showing the new claims and the additional allegations relating to those claims. In their letter-brief submission on October 11, 2023, Claimants sought the consent of the Tribunal under Rule R-6(b) for submission of the Amended Pleading. Respondents in their submission of October 18, 2023 object to the Amended Pleading in certain specified respects, as discussed below. Claimants in a reply submission on October 24, 2023 contend that Respondents' objections lack merit and that Tribunal consent to the Amended Pleading should be granted as to all amendments therein.

Unless any of Respondents' objections to our giving consent to the filing of the Amended Pleading has substantial merit, the Tribunal will give its consent. Procedurally, this case is at the beginning of a Phase II that will involve arbitration of certain claims raised in Claimants' earlier pleadings, so the addition of the proposed new claims does not involve material delay of the Phase II merits hearing and award. Further, none of the claims now proposed for inclusion in the Amended Pleading come as a surprise to the Tribunal nor should they surprise the Respondents. They are intrinsic to the evolution of the dispute since the arbitration was commenced in February 2021, and result from the facts that (i) the Company has not been sold, (ii) Respondents have commenced other litigations and arbitrations that Claimants allege to be harmful to the prospects of a Company sale and/or the value to be obtained from such a sale, and (iii) Claimants allege that they have borne costs that Claimants allege ought to have been borne either by Respondents or the Company, or were incurred because of what Claimants allege to be wrongful conduct by Respondents. Examples of such costs that Claimants now seek to recover as damages are compensation of Mr. Gaitán and Ms. Echeverría as Company officers, defense costs for the foreign arbitrations and BVI litigation, and the fees and expenses of Company counsel in this arbitration and other proceedings in which the Company has been named as a party.

With this preface, we address Respondents' objections to the Amended Pleading:

1. **Objection to Breach of Contract Claim Arising from BVI Action[1]**: **Overruled**. Respondents contend that the Tribunal lacks jurisdiction over the plaintiff in the BVI Action, Juan Francisco Quisquinay, who is the Chief Financial Officer of the Company and of Respondent DT Holdings. Respondents also contend that the Tribunal has already ruled that it lacks jurisdiction over Mr. Quisquinay. (Respondents' October 18, 2023 submission at p. 2). But in fact we have not ruled that we lack jurisdiction over Mr. Quisquinay; we only observed that Mr. Quisquinay was not a party. And in our view whether the Tribunal could obtain jurisdiction over Mr. Quisquinay is irrelevant at this stage. When we denied Claimants' application for leave to proceed with an application for an arbitral anti-suit injunction against the BVI Action, we referred to the fact that Mr. Quisquinay is not a party to this arbitration and stated that the denial of leave was "without prejudice to renewal if Mr. Quisquinay becomes a party to the arbitration." (Procedural Order 2023-03 dated June

[1] Respondents' October 18, 2023 submission at p. 2, sub-para. (i).

5, 2023). That left open the question of whether he could become a party, but Claimants did not elect to seek his joinder as a party and instead sought an injunction against the BVI Action in the SDNY. Whether the BVI Action is a breach of the arbitration clauses in the Shareholders Agreement and its related agreements is an issue the Tribunal has not decided, In the Amended Pleading, Claimants allege that the BVI Action is being pursued in breach of these arbitration clauses and that the prosecution of the BVI Action causes harm to the prospects of a Company sale. (E.g., Amended Pleading at paras. 194-205). Whether costs incurred in relation to the BVI Action are recoverable as damages caused by such a breach similarly has not been determined and similarly presents the basis for a claim. Whether all or some costs related to the BVI Action have been or will be sought, and/or recovered by Claimants in the BVI Court or in the SDNY may affect the availability of damages if the Tribunal finds a breach. But Respondents present no applicable legal rule or principle that precludes the Tribunal from potentially treating these costs as damages for breach of the contractual duty to arbitrate if such a breach is established.

2. Objection to Claim for Recoupment of Advanced Expenses for Company Management and Company Counsel[2]: **Overruled**. It is not correct, as Respondents contend, that the Tribunal "ruled" on these claims in the sense of having made a final determination that precludes the claims Claimants seek to advance. Upon a suggestion made by the Tribunal to address the risk that the Company would be left without the services of Mr. Schachter's firm due to non-payment of its fees, Claimants elected to address the Company's non-payment of salaries of Mr. Gaitan and Ms. Echeverría, and the Company's non-payment of the fees and expenses of Company's counsel, by advancing those sums and reserving the right to claim recoupment from one or more Respondents in this arbitration. The Tribunal's suggestion was made in para. 2 of PO 2022-07 on April 26, 2022 as follows:

> The Tribunal considers that the question of sanction, if any, needs to separated from the issue of payment in view of the stated timing considerations and potential withdrawal of Company counsel. Therefore we invite comments from Claimants (but not only Claimants) on whether Claimants would accept to pay those fees and expenses in the first instance (without, or perhaps with, an Order from the Tribunal in the nature of an interim measure) with the understanding that a claim would be deemed to arise for money damages from Respondents in favor of Claimants for the amounts paid by Claimants; such claim would be heard and determined in Phase 2 or if appropriate on a separate accelerated track.

After Claimants proposed to advance the fees of Company counsel, we did not rule that Claimants are entitled to the recoupment, but indicated only that Claimants could apply for such recoupment. As we stated in Procedural Order 2022-08 on May 9, 2022 at ¶ 21: "Further, we adopt Claimants' proposal that in Phase 2 of the arbitration Claimants be permitted to pursue a claim for recovery as damages the amounts paid by Claimants for fees and expenses of Company counsel. Accordingly leave to make such claims after

[2] Id. at sub-para. (ii)

payments have been made is granted to Claimants under Rule R-6(b)." No reason appears at this time to depart from the position we adopted in May 2022.

3. **Objection to Claim for Breach of Contract/Violation of AAA Commercial Rules (damages) Claiming Arbitration Fees[3]: Overruled**. This proposed new claim relates to the decision of Respondents to discontinue payment of their share of AAA invoices to collect deposits for the Tribunal's fees and expenses, and Claimants' ensuing decision to advance Respondents' AAA-invoiced share of such deposits to avoid suspension and potentially termination of the proceedings. (*See* AAA 2013 Commercial Rules R-56, R-57). Respondents object that some of the claimed arbitrator fees and expenses have already been awarded in PFA-2 (Respondents' October 19, 2023 submission at p. 3). Claimants acknowledge this, but state that in the event PFA-2 is vacated, the vacatur would not affect their right to be made whole for their advances of Respondents' share of deposits for fees of the Tribunal. (Claimants' October 24, 2023 submission at pp. 2-3).

   We accept that Claimants may plead a claim that is based in part on a contingency that may arise, *i.e.* potential vacatur of PFA-2, and note that should this occur, the question of whether and to what extent Respondents should be treated as the prevailing parties for cost allocation purposes in connection with the proceedings that culminated in PFA-2 would be re-opened. With the exception of the fees awarded in PFA-2, we understand Claimants' proposed claim to be made for alleged breaches -- of the Respondents' duty to bear 50% of the fees and expenses of the Tribunal, prior to any cost reallocation based on outcome or other considerations -- that have not been adjudicated by the Tribunal, and the Claimants state clearly that they do not seek any double recovery. (Claimants' October 24, 2023 submission at p. 3). The obligation of a party under the AAA Rules to provide its share of deposits for the Tribunal's fees is a continuing obligation, applicable on each occasion when the AAA requests that the deposit account be replenished. This is true also of the obligation of a Claimant to advance the unpaid share of a non-paying Respondent in order to avoid suspension of the arbitration leading to eventual termination. Accordingly, this claim is not precluded by PFA-2, is based on Respondents' conduct since the date of the prior version of Claimants' Statement of Claims, and is otherwise proper.

4. **Objection to Claim for Breach of Contract / Violation of AAA Commercial Rules (Damages) Claiming Arbitration Vendor Fees.[4] Overruled.** Respondents contend that Claimants' claim for vendor expenses in connection with certain proceedings has been waived because Claimants did not claim such expenses at the time they submitted claims for other arbitration costs. In our view the question of waiver is not such a clear bar that it should prevent assertion of the claim. The waiver issue may be raised by Respondents as a defense to the claim.

[3] Id. at p. 3 sub-para. (iii)

[4] Id. at p. 3 sub-para. (iv)

5. **Objection to Claim for Damages Based on Company Sale Breach Determined in First Partial Final Award ("PFA-1")**[5]: **Overruled**. We disagree with Respondents' contention that the Tribunal is *functus officio* with respect to this proposed claim. (Respondents' October 11, 2023 submission at p. 3). The Tribunal did not adjudicate in PFA-1 the Claimants' claim for a damages remedy for breach of the obligation to sell the Company. Adjudication of that damages claim was expressly reserved to Phase 2 in the procedural decision that determined that we would address the specific performance claim in Phase 1. (*See* Procedural Order No. 3 dated August 12, 2021 and Claimants' August 6, 2021 submission referenced therein). Claimants did not make an express election of remedies. The issues of *res judicata*, or of other defenses that damages should not be awarded for the same Company sale breach as to which specific performance has already been awarded, belong to the merits, and if raised by Respondents will be decided in Phase 2.

Accordingly, the Tribunal consents to the submission of Claimants' Amended Pleading. Respondents may file "an answer to the proposed change of claim," with regard to the amendments objected to in their October 19, 2023 submission, on or before the 14th calendar day from the date of this Order (AAA Rule R-6(b)).

**II. Respondents' Application to Lift the Stay of Proceedings on Their Counterclaims Based on Partial Compliance with the Conditions Stated in PFA-2**

As necessary background to our decision on this application, we quote the relevant provisions of PFA-2 and Procedural Order No. 2022-14 entered on the same date as PFA-2.

PFA-2 stated at *dispositif* para. 1 at p. 53:

> The stay of proceedings on Respondents' counterclaims provided for in Procedural Order No. 2022-14, entered on the date of this Award, shall be lifted only if Respondents shall demonstrate to the satisfaction of the Tribunal that they have complied in full with this Award, with PFA-1 (unless that Award is vacated or its recognition and enforcement is refused), and our Orders dated November 12, 2021, December 8, 2021 (including full reimbursement to Claimants of any expenditures borne by Claimants for the fees of the Company's counsel under PO 2022-08), and March 15, 2022.

PO 2022-14 stated: "In conformity with the Tribunal's Second Partial Final Award entered on this date ("PFA-2"), all proceedings on Respondents' counterclaims are stayed until such time as the Tribunal is satisfied of the fulfillment of the conditions for lifting of the stay as provided in PFA-2."

Respondents' contention that the Tribunal should lift the stay on proceedings on their counterclaims rests mainly on a contention that we have the power to do so. (*E.g.*, Respondents'

[5] Id. at p. 3, para. following sub-para. (iv).

October 24, 2023 submission at p. 2). While this power is a necessary condition for lifting the stay, here it is not a sufficient condition. As the above-quote passages from PFA-2 and PO 2022-12 make clear, the Tribunal has power to lift the stay of proceedings on Respondents' counterclaims only if certain specified conditions are satisfied by Respondents. What is at issue is whether -- despite our AAA Rule R-58 sanction in PFA-2 that confined our power to lift that stay to "***compli[ance] in full***" with PFA-1 and PFA-2, and also with three identified Orders -- we retain power to lift the stay, as Respondents' urge, based on only partial, not full, compliance. Respondents' application is premised on what they admit to be very limited compliance.

We conclude that we do not have such power because the AAA Rules adopted by the Parties forbid us to reconsider the merits of an award and to revise an award to reach a different result in whole or in part. See AAA Commercial Rule R-50 (in the 2013 Rules): "The arbitrator is not empowered to re-determine the merits of any claim already decided." To permit the lifting of the counterclaims stay based on partial rather than full compliance with the conditions stated in PFA-2 would be a prohibited re-determination of the merits in PFA-2.

We also are not persuaded by Respondents' argument that our power to modify orders, which are not awards, should be exercised to modify the three Orders identified for "compli[ance] in full" in PFA-2. Respondents seek to have us modify those Orders so that the scope of "full compliance" would be reduced.

For the stay sanction we imposed in PFA-2 to have the finality necessary to constitute an Award, the requirements for full compliance had to be placed beyond the Tribunal's power to modify. Modification of the identified Orders to reduce the scope of conduct required for full compliance with the Orders would also be a prohibited redetermination of the merits of PFA-2 under Rule R-50. That is not to say we have no power to modify those Orders. It is only to say that the test of full compliance with the stay sanction in PFA-2 must refer to compliance with those Orders as they existed on August 12, 2022, the date of PFA-2.

We also note that Respondents' position that we have power now to modify those Orders is in tension with the position they advanced in 2022, when we conducted a full evidentiary process with respect to potential changes in those Orders. At that time Respondents refused to submit evidence the Claimants sought from them and that the Tribunal ordered to be produced, and they declined even to cross-examine Mr. Gaitán and Ms. Echeverría, all based on their contention that our Orders were actually Awards as a matter of law, and that the Tribunal was therefore without power to order production of evidence, conduct a hearing, or re-visit those Orders.

We need not address here Respondents' position that they are no longer legally capable of complying with certain requirements that PFA-2 identified for lifting the stay, because Respondents acknowledge here that they have not made any attempt to comply with other requirements for which they have not identified any legal or other impediment to compliance. (Respondents' October 11, 2023 submission at p. 7 para. 12). Instead, Respondents seek to have the stay lifted notwithstanding their ability to comply with those requirements, including paying amounts indisputably due to Claimants, simply because they contend that Claimants' ability to defend against Respondents' counterclaims will not be impaired by Respondents' continued non-compliance. (Id.). We need not address here the consequences for our ability to lift the stay if

Respondents were to comply in full with all requirements set out in PFA-2 save for those, if any, as to which it were to make a good faith, compelling showing of legal or factual impossibility.

Accordingly, Respondents' application to lift the stay of proceedings on Respondents' counterclaims is denied.

## III. Respondents' Application to Stay the Arbitration

Having denied Respondents' application to lift the stay of counterclaim proceedings, we proceed to Respondents alternative application to stay the arbitration.

Neither Respondents nor Claimants sets forth expressly what they consider to be the legal standards that the Tribunal should apply to an application to stay the arbitration. In the absence of such guidance from the Parties, we consider that an application for a stay should be guided by principles similar to those we have applied to Claimants' earlier applications for interim relief. This entails that (1) the applicant has the burdens of proof and persuasion, (2) the applicant should demonstrate that denial of the requested stay would imminently threaten harm to the applicant that is irreparable or is not adequately reparable by money damages, (3) the applicant should have at least a good arguable case on the underlying merits, and (4) it would be more equitable, as between the Parties, to grant the relief than to deny it.

Respondents' primary submission is that Phase 2 should be stayed until sale of the Company has been completed. (October 11, 2023 submission at p. 17, para. 42) While Respondents assert that Phase 2 might be more narrowly focused and less costly for both sides after the Company is sold, that argument does not demonstrate an imminent threat of irreparable harm. If a Company sale occurs during Phase 2 and obviates completion of Phase 2 or alters the scope of Phase 2 so that certain costs already incurred are redundant, Respondents can make a claim to be compensated for the costs that they allege to have been unnecessarily incurred. (We express no opinion on the merits of such a compensation claim).

The underlying "merits" on this branch of the stay application consist of the factual premise that the Company is likely to be sold in the near future, such that the contours of Phase 2 would be impacted early on in Phase 2. But without commenting in detail on the evidence the Parties have presented concerning the status of efforts to sell the Company, we can say that we see no indication that a sale of the Company is imminent. According to the evidence presented in connection with this application, the Parties have a still-unsolved protracted impasse on the final terms of an engagement letter with an investment bank. Thus Respondents "good arguable case on the merits" burden is not sustained.

The balance of equities favors Claimants. We determined in PFA-3 that the Peru and Guatemala arbitrations are improper and should be enjoined. Respondents have not complied with that injunction and instead sought to have our PFA-3 vacated. The SDNY denied vacatur and confirmed PFA-3, and neither before nor after the SDNY confirmed our injunction did the Respondents cause

those arbitrations to be discontinued.[6] Additional foreign arbitrations, in which similar relief is sought, have been filed by Company affiliates in El Salvador and Honduras. The result of granting the stay would be to facilitate the progress of adjudication of the Respondents' counterclaims in foreign arbitral fora that we and the SDNY have determined to be improper (specifically as to the Peru and Guatemala cases), at a cost to Claimants that they are wrongfully compelled to bear, and with attendant risk of the entry of awards in those arbitrations followed by further proceedings concerning enforcement or vacatur of those foreign awards. This scenario is inequitable to the Claimants and is not counterbalanced by any equitable consideration favoring Respondents that they have presented in their stay application.

Respondents' subsidiary submission is that Phase 2 should be stayed for the duration of proceedings to vacate PFA-2 in the SDNY. (October 11 submission at p. 17, para. 43). The only form of irreparable (or not adequately reparable) harm to Respondents from going forward with this arbitration would appear to be the risk of an award in this arbitration that is inconsistent with an adjudication that might *legitimately* be obtained in another forum.

As to the proceedings Respondents have legitimately brought in the SDNY and the US Second Circuit Court of Appeals we see no such risk. If the SDNY vacates PFA-2 and thus permits arbitration in this case of Respondents' counterclaims, then those counterclaims will be arbitrated on their merits. If the timing of any such vacatur causes additional expense that might have been saved by including those counterclaims in Phase 2 from its beginning, Respondents may assert a claim to be compensated for such expense (which we state without offering any view on the merits of such a claim). And at any rate it is evident here that Respondents could avoid such expense by meeting the requirements in PFA-2 for the lifting of the counterclaims stay, and this could be done without prejudice to their position on vacatur/enforcement of PFA-2 in the SDNY.

As to the other litigations and foreign arbitrations that have been commenced by Respondents, Company affiliates, or in one case (the BVI Action) by the CFO of the Company and Respondent DT Holdings, we do not regard the risk of inconsistent outcomes to be a justification for a stay of this arbitration. Respondents have not established before this Tribunal that any of those proceedings is non-arbitrable under the Shareholders' Agreement and the related agreements between the Parties. Any deference we might show to those proceedings, anticipating a potential issue-preclusive or other outcome-determinative impact here, would need to based on the jurisdictional legitimacy of those cases – which Respondents have not shown *prima facie*. As to the Peru and Guatemala arbitrations, we specifically determined in PFA-3 that those arbitrations violate the arbitration clauses of the Parties' agreements, and on that basis we granted injunctive relief.

Whereas Respondents propose, in one alternative version of their submission, that the stay of arbitration be measured by the time required to complete the vacatur and enforcement process in the SDNY as to PFA-2, their position relies on the likelihood that they will prevail in having PFA-2 vacated. PFA-1 was enforced by the SDNY in January 2023, and Respondents do not bring to our attention any reversible error in the SDNY enforcement judgment that is likely to result in

[6] We are mindful of Respondents' contentions that they lack capacity to cause the termination of the foreign arbitrations. Our decision today implies no determination upon those contentions beyond what we determined in PFA-3.

reversal in the Second Circuit. The Parties' respective applications to enforce and to vacate PFA-2 have been fully briefed in the SDNY and an adjudication is awaited. Respondents make no showing in their application that PFA-2 is any more likely than the already-enforced PFA-1 or PFA-3 to be vacated in the SDNY. For these reasons, Respondents have not sustained their burden to show that they have a viable position – a good arguable case -- that PFA-2 will be vacated such that the stay of arbitration on the counterclaims would be annulled.

As to the balance of equities, what we have said above in regard to Respondents' primary submission is equally applicable to their subsidiary submission.

Accordingly, Respondents' application for stay of Phase 2 is denied.

## IV. Next Steps in Phase 2 of the Arbitration

Annexed as Appendix A to this Order is a schematic Procedural Timetable for Phase 2. The Tribunal has indicated four weeks in 2024 when the merits hearing could be held, and the Tribunal will hold those weeks available until the date for submission of comments on the schematic Timetable. The Parties should select one of the weeks identified by the Tribunal that is mutually available. Then the Parties should mutually agree to the maximum possible extent on the deadlines for the indicated pre-hearing activities, following the suggested timing guidance of the Tribunal unless that guidance is not appropriate in the joint determination of the Parties, or either of them. Disagreement with the Tribunal's schematic, as to the pre-hearing steps to be included or the timing or content of those steps, should be set forth in written comments to be received, together with the Timetable to the extent it is completed, on or before the business day preceding the date of the forthcoming status conference that the Case Managers are endeavoring to schedule, or if the status conference is not able to be scheduled within the week of October 30, 2023, on November 3, 2023.

It is SO ORDERED this 26th day of October 2023

Marc J. Goldstein, for the Tribunal

**Appendix A - Phase 2 Schematic Procedural Timetable**

| | |
|---|---|
| Exchange Requests for Documents | 30 days from Order adopting timetable |
| Submit Proposed Arbitral Subpoenas | 30 days from Order adopting timetable |
| Identify Retained Experts to Tribunal | Upon retention but not later than 60 days from Order adopting timetable |
| Submit Completed Redfern or Stern Schedule | at most 60 days from Requests |
| Completion of Information Exchange | at most 90 days from Requests |
| Completion of Non-Party Evidence Process | at most 90 days from subpoena issuance |
| Pre-Hearing Memorials* | ~ 60 days before Merits Hearing |
| Pre-Hearing Reply Memorials* | ~ 21 days before Merits Hearing |
| Final Pre-Hearing Status Conference | ~ 14 days before Merits Hearing |
| Merits Hearing | Select one week among 2024 weeks of: May 6, May 13, July 15, July 22 |
| Post-Hearing Memoranda (if any) | TBD during or after hearing |
| Post-Hearing Oral Summations (if any) | TBD during or after hearing |

*Memorials and Reply Memorials shall include Witness Statements, Expert Reports, Hearing Exhibits and Memoranda of Law. The Witness Statements shall set forth completely the direct testimony of the witness. The Expert Reports shall set forth completely the opinions of the Experts and the basis for the opinions.