UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TELECOM BUSINESS SOLUTIONS, LLC, *et al.*,

                Petitioners,

        -against-                         22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

                Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge*.

        This matter is before the Court on the motion of Telecom Business Solutions, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay), Ltd. ("AMLQ" and, together with Peppertree, "Petitioners") for an anti-suit injunction against Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra") and DT Holdings, Inc. ("DTH" and, together with Terra, "Respondents").[1] The motion is made in response to foreign litigation filed by Respondents' agent in the British Virgin Islands (the "BVI Action").[2]

        The Court assumes familiarity with the facts and procedural history of this case recounted in the parties' filings and prior decisions of this Court and the Court of Appeals.[3]

---

[1] Dkt 171.

[2] *Quisquinay v. Continental Towers LATAM Holdings Limited*, No. BVIHCOM2023/0042.

[3] *See* Dkts 124, 182; *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *1 (2d Cir. Feb. 6, 2024) (summary order).

2

*Discussion*

"The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established."[4]  "[P]rinciples of comity," however, "counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'"[5]

An anti-suit injunction against parallel litigation may be imposed only if two threshold conditions are satisfied.  First, the parties to the action in the enjoining court must be the same as those in the parallel litigation.  Second, "resolution of the case before the enjoining court [must be] dispositive of the action to be enjoined."[6]  Provided both conditions are satisfied, courts then consider five factors set out in the *China Trade* case:  "whether the parallel litigation would: '(1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment.'"[7]

"To qualify for an anti-suit injunction" under the first threshold condition, "the parties need not be exactly identical; it is enough if they are substantially similar"[8] "such that their

---

[4] *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987).

[5] *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (quoting *China Trade*, 837 F.2d at 36).

[6] *Id.*

[7] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (alteration marks omitted) (italics added) (quoting *Ibeto Petrochemical Industries Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir.2007)).

[8] *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 403 (S.D.N.Y. 2018).

interests are represented by one another."⁹  Substantially for the reasons articulated by Petitioners, the Court finds that the parties in the two proceedings are substantially similar.¹⁰  Although Respondents are not named parties to the BVI Action, they are nonetheless parties to it by virtue of "their long-time employee and agent, [Juan Francisco] Quisquinay," who filed the action "purportedly in his capacity as CFO of the Company."¹¹  Petitioners argue persuasively that Quisquinay "is clearly advancing Respondents' interest" in bringing the BVI Action, and that he is "controlled by and acting on behalf of Respondents."¹²  Further, while Quisquinay brought the BVI Action against the Company rather than Petitioners, the Petitioners "are the real parties in interest to the BVI Action" because they, along with Terra, own the Company.¹³  In sum, both the action in this Court and the parallel BVI Action are disputes among the Company's shareholders.

With regard to the second threshold condition, resolution of an issue before the enjoining court is dispositive of the parallel action where the former "actually decided the claims raised in the" latter.¹⁴  The sole issue raised in the BVI Action is the identity of the Company's chief

---

9
    *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007); *accord Paramedics*, 369 F.3d at 652 ("substantial similarity and affiliation" suffice).

10
    Dkts 172 at 22–24, 184 at 2–4.

11
    Dkt 172 at 18, 23.

    This opinion refers to Continental Towers LATAM Holdings Limited as the "Company."

12
    *Id*. at 23; *see* dkt 184 at 2.

13
    Dkt 172 at 23.

14
    *Karaha Bodas*, 500 F.3d at 121.

4

executive officer ("CEO").[15] As Petitioners explain, the arbitral tribunal resolved this exact issue previously in its Second Partial Final Award ("SPFA"),[16] which the Court recently confirmed.[17] Respondents' contention that the SPFA's resolution of this issue amounts only to a "finding[] of fact . . . not included in [the tribunal's] judgment"[18] is unpersuasive for the two reasons explained by Petitioners: first, the distinction between the tribunal's factual and legal findings is irrelevant and, second, the tribunal's determination of the Company's CEO was necessarily a legal one because it turned on the interpretation of the Company's shareholders agreement.[19]

Having found that the threshold anti-suit injunction conditions are met, the Court proceeds to consider whether the *China Trade* factors are satisfied. It finds that they are.

First, permitting the BVI Action to proceed would frustrate the strong United States policy of enforcing arbitration clauses. As the Second Circuit explained in *Arciniaga v. General Motors Corporation*, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Court of Appeals has] often and emphatically applied.'"[20] This policy "applies

---

[15] The BVI Action's "statement of claim" seeks "[a] declaration as to whether there is a CEO of [the Company], and if so, a declaration as to the identify of the CEO." Dkt 173-54 at 5. It seeks no other relief besides costs. *Id*.

[16] Dkt 173-53 at 24 n.16.

[17] Dkt 207.

[18] Dkt 179 at 26.

[19] Dkt 184 at 5 & n.6.

[20] 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted).

5

with particular force in international disputes."[21]  Respondents argue that the strong policy favoring the enforcement of arbitration clauses is counterbalanced by the "equal[ly]" strong "policy 'against interfering with proceedings before a foreign sovereign.'"[22]  But, as Judge Rakoff explained in *Laif X Sprl*, the former policy outweighs the latter where "the foreign action interferes with the U.S. court's own jurisdiction[ and] . . . is designedly vexatious or calculated to cause material and burdensome delay."[23]  Here, those considerations militate for prioritizing the policy of enforcing arbitration clauses.

Second, the BVI Action is vexatious because it appears calculated to frustrate the arbitration process.  As explained above, the BVI Action seeks to relitigate an issue already resolved by the arbitral tribunal.  This factor is so compelling that it may be "alone sufficient to support [the] foreign anti-suit injunction."[24]

Third, the BVI Action threatens this Court's jurisdiction in several ways.[25]  Most obviously, the BVI Action threatens to undermine this Court's confirmation of the SPFA, which definitively resolved the identity of the Company's CEO.  In addition, the BVI Action appears aimed at thwarting the First Partial Final Award's order, which this Court confirmed, that the

---

[21] *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 CIV. 13157 (GEL), 2006 WL 3735657, at *8 (S.D.N.Y. Dec. 15, 2006) (quoting *Paramedics*, 369 F.3d at 654).

[22] Dkt 179 at 28 (quoting *Laif X Sprl v. Axtel, S.A. de C.V.*, 310 F. Supp. 2d 578, 581 (S.D.N.Y.), aff'd, 390 F.3d 194 (2d Cir. 2004)).

[23] *Laif X Sprl*, 310 F. Supp. 2d at 581.

[24] *Paramedics*, 369 F.3d at 654.

[25] Dkt 184 at 8.

6

Company be sold.[26]

Fourth, equitable considerations weigh in favor of granting the injunction. As Petitioners note, they "will be harmed if a[n] . . . injunction is not entered because they will be forced to litigate simultaneously in New York and the BVI, despite the bargained-for Arbitration Agreement mandating that shareholder and Company disputes be arbitrated in New York."[27] In addition, "the BVI Action prejudices [Petitioners] by harming the prospects of the contractually-mandated sale of the Company ordered by the Tribunal and this Court, as manufactured uncertainty regarding who is responsible for management of the Company makes the Company less attractive to prospective buyers."[28]

Fifth, the risks that the BVI Action will cause delay, inconvenience, unnecessary additional litigation expense, and inconsistency between this Court's and the BVI court's judgment are manifest.[29]

---

[26] Dkt 124 at 6, 20.

[27] Dkt 172 at 26 (internal quotation and alteration marks omitted).

[28] *Id*. at 27.

[29] Dkt 172 at 27–28.

## *Conclusion*

For the forgoing reasons, Petitioners' motion for a permanent anti-suit injunction is granted.[30]

SO ORDERED.

Dated: February 20, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[30] Petitioners appear to seek also an award for fees and expenses incurred in bringing this motion and defending the BVI Action. Dkt 174 (proposed order). To the extent that Petitioners made such an application, it is denied without prejudice.