**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

TELECOM BUSINESS SOLUTION, LLC, LATAM   :    Civil Action No.: 1:22-cv-01761
TOWERS, LLC, AMLQ HOLDINGS (CAY), LTD.   :
  :    Judge Lewis A. Kaplan
           Petitioners,   :
     v.   :    Magistrate Judge Robert W.
  :    Lehrburger
TERRA TOWERS CORP., TBS MANAGEMENT,   :
S.A., DT HOLDINGS, INC., JORGE HERNANDEZ   :
  :
           Respondents.    X

----------------------------------------------------------------

### PETITIONERS' MEMORANDUM OF LAW IN SUPPORT
### OF THEIR PETITION TO CONFIRM FIFTH PARTIAL FINAL AWARD

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:     (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:     (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business*
*Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:     (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:     (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings*
*(Cay), Ltd.*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................5

    A.    Respondents' Repeated Breaches of the Shareholders Agreement Forced
          Peppertree to Initiate the New York Arbitration.......................................................6

    B.    The Tribunal Ordered That the Arbitration Proceed in Phases...............................9

    C.    The Tribunal Issued Four Separate Partial Final Awards Against Respondents, All
          of Which Are Confirmed by This Court .................................................................10

    D.    Respondents Continued to Siphon Millions from the Company, Which Remains
          Unsold Due to Their Repeated Attacks on Both the Arbitration and the Tribunal
          that Have Been Previously Condemned by this Court.............................................12

    E.    The Parties Engaged in a Full and Fair Process to Litigate Phase 2 of the
          Arbitration.............................................................................................................14

    F.    The Tribunal Issued the Unanimous 5PFA in Response to Respondents'
          Egregious Misconduct and Flagrant Violations of the Company's Governing
          Documents, Awarding Peppertree/AMLQ Over $300 Million in Damages .........27

III.  LAW AND ARGUMENT .................................................................................29

    A.    The 5PFA Should Be Confirmed Pursuant to the Federal Arbitration Act ...........29

    B.    The 5PFA Should Be Confirmed Pursuant to the New York Convention ............32

IV.   CONCLUSION...................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Alternative Media, Inc. v. Frasure*,
2022 WL 14786789 (S.D.N.Y. Oct. 26, 2022)........................................................31

*Albtelecom SH.A v. UNIFI Commc'ns, Inc.*,
2021 WL 1089982 at *4 (S.D.N.Y. Mar. 22, 2021) ...............................................34

*Application of Ballabon v. Straight Path IP Group, Inc.*,
2015 WL 6965162 (S.D.N.Y. Nov. 10, 2015) ........................................................32

*Arias-Agramonte v. C.I.R.*,
2000 WL 1617999 (S.D.N.Y. Oct. 30, 2000) .........................................................35

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*,
102 F.3d 677 (2d Cir. 1996)....................................................................................32

*Eyewonder, Inc. v. Abraham*,
2010 WL 3528882 (S.D.N.Y. Sept. 3, 2010) .........................................................30

*Farrell v. Subway Intern., B.V.*,
2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011) ........................................................33

*Fellus v. Sterne, Agee & Leach, Inc.*,
783 F. Supp. 2d 612 (S.D.N.Y. 2011)...............................................................4, 30

*Manilow v. Snorkel Prods., Inc.*,
2004 WL 943548 (S.D.N.Y. May 3, 2004) ............................................................31

*McNeill v. New York City Hous. Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989).........................................................................35

*Miller v. UBS Fin. Servs. Inc.*,
2019 WL 1988527 (S.D.N.Y. May 6, 2019) ..........................................................31

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukr.*,
311 F.3d 488 (2d Cir. 2002)....................................................................................34

*Parrella v. Orange Rabbit, Inc.*,
2021 WL 4462809 (S.D.N.Y. Sept. 29, 2021)........................................................35

*Phoenix Bulk Carries (BVI) Ltd. v. Triorient LLC*,
2020 WL 4288031 (S.D.N.Y. July 26, 2020) .........................................................34

*Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*,
   2019 WL 5884558 (S.D.N.Y. Nov. 8, 2019) .......................................................................33

*Rich v. Spartis*,
   516 F.3d 75 (2d Cir. 2008).................................................................................................30

*Securities America, Inc. v. Smith*,
   2024 WL 4025873 (N.D.N.Y. Sept. 3, 2024) ....................................................................34

*STX Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carries Ltd.*,
   2013 WL 1385017 (S.D.N.Y. Mar. 14, 2012) ...................................................................34

*Superior Energy Servs. Columbia S.A.S. v. Premium Petroleum Servs. S. de R.L.*,
   2019 WL 2717692 (S.D.N.Y. June 28, 2019) ...................................................................33

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
   2024 WL 446016 (2d Cir. Feb. 6, 2024)..................................................................... *passim*

*Telecom Business Solution, LLC v. Terra Towers Corp.*,
   2023 WL 257915 (S.D.N.Y. Jan. 18, 2023) ............................................................... *passim*

*Terra Towers Corp. v. Gelber Schachter & Greenberg, P.A.*,
   Civ. Action No. 1:22-cv-06150-LAK (S.D.N.Y) ..........................................................11, 33

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997)................................................................................................33

**Statutes**

9 U.S.C. § 9 ...............................................................................................................................30

9 U.S.C. § 10 ....................................................................................................................... 31, 34

9 U.S.C. § 202 ...........................................................................................................................33

9 U.S.C. § 207 ..................................................................................................................... 33, 34

**Other Authorities**

Fed. R. Civ. P. 19 ......................................................................................................................34

Fed. R. Civ. P. 20 ................................................................................................................ 34, 35

Fed. R. Civ. P. 21 ................................................................................................................ 34, 35

Federal Arbitration Act ...................................................................................................... *passim*

AAA Commercial Rule R-6......................................................................................................15

AAA Commercial Rule R-37....................................................................................................30

AAA Commercial Rule R-47....................................................................................................30

Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ" or "Petitioners") hereby respectfully submit this Memorandum in Support of their Petition to Confirm (the "Petition") the Tribunal's Fifth Partial Final Award ("5PFA").[1]

## I.    **INTRODUCTION**

Peppertree/AMLQ's Petition seeks confirmation of the 5PFA, which—like each of the ***four previous Arbitration awards this Court has already confirmed*** in this action—was issued unanimously by the three-member Tribunal in a well-reasoned, 200-page decision that concluded over a year of extensive and thorough proceedings.  In the 5PFA, the Tribunal characterized this case as "deeply troubling" for "anyone who cares about international arbitration as a viable dispute resolution process", and ordered Respondents to compensate Peppertree/AMLQ for the massive harm they have incurred due to Respondents' years of rampant and "increasingly disturbing" misconduct and flagrant disregard of Peppertree/AMLQ's contractual rights.   The Tribunal awarded  Peppertree/AMLQ  **$300,749,761  in  damages**,  including  **$25,166,643  in  punitive damages,**  for  which  each  of  the  Respondents  is  jointly  and  severally  liable.   The  Tribunal's findings in the 5PFA include that:

- Respondents failed to engage in the required process to sell the Company, resulting in an ongoing breach of the Company's governing documents, and instead engaged in multiple efforts to actively interfere with, and prevent, a sale of the Company.  Ex. 191, ¶¶ 18, 20,

---

[1]    The 5PFA was issued in an arbitration administered by the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association ("AAA"), captioned *Telecom Business Solution, LLC,* et al. *v. Terra Towers Corp.*, et al., AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration"), and presided over by a panel of three highly  qualified  and  experienced  arbitrators  (the  "Tribunal").    The  Arbitration  is  among  Peppertree/AMLQ, Respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), Terra's affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH"), Jorge Hernández, Alberto Arzu, Alejandro Sagastume, and William  Mendez  (together,  the  "Terra  Directors"),  and  Continental  Towers  LATAM  Holdings  Limited  (the "Company").  Terra, DTH, and Hernandez are referred to herein as "Respondents".  Unless otherwise noted, all other defined terms herein shall have the same meaning as in the Petition.

and 21.[2]  "The Company cannot be sold unless Terra agrees to sell or is effectively compelled by legal process to sell.  Up to now, despite more than four years of arbitration before this Tribunal that has gone against Respondents at every step, Respondents have not agreed, and they have not recognized the [1PFA] Judgment (or the Judgments enforcing our other awards) as a source of compulsion."  *Id.* ¶ 57.

- "We have made four partial final awards, all of them against the respondents, and none of them has been complied with in any respect."  *Id.*, Preamble, ¶ (1).

- Respondents are responsible for the publication of multiple false news articles designed to prevent a sale of the Company and intimidate Peppertree, AMLQ, the Company's Management, and the Tribunal: "Moreover, in this award we find that respondents have been responsible for the publication – on several obscure, anonymous and untraceable websites that purport to offer 'news' of interest to the arbitral community – of multiple 'articles' that vilified the claimants, falsely accusing one of them of Foreign Corrupt Practices Act violations, and defamed the Tribunal, first by asserting in March 2022 that the chair had taken a bribe from one of the claimants at the time of his appointment."  *Id.*, ¶ (5); *see also id.*, ¶ (6).

- Respondents are liable for over $350 million in damage they caused to Peppertree/AMLQ and the Company as a result of (i) their multiple breaches of their obligation to sell the Company; (ii) their siphoning Company funds to DTH in breach of the Company's governing documents; (iii) causing Peppertree/AMLQ to incur millions in expenses and attorneys' fees in response to Respondents' wrongful ouster of Company Management and attacks on Management, Peppertree/AMLQ, the Company, and the Arbitration itself, including through numerous collateral litigations.  *Id.* ¶¶ 38-39, 76-60.

- Any Company sale proceeds must be placed in escrow to secure the damages awarded in the 5PFA, *see id.* ¶ 67, because the Tribunal "fail[ed] to see how awarding more potentially uncollectable money damages would be an adequate remedy if Respondents sequester or encumber proceeds of a Company sale to prevent their being applied to satisfy the damages awarded in [the 5PFA]," *id.* ¶ 62.

- Hernandez is subject to arbitral jurisdiction and personally liable for the substantial damages he and the other Respondents caused Peppertree/AMLQ.  *Id.*, Award, ¶¶ 2, 3.a.; *see also id.* ¶¶ 164-68.

- In awarding over $25 million in punitive damages against Terra, DTH, and Hernandez, personally, the Tribunal explained that "[g]iven the win-at-all-cost attitude reflected in the respondents' conduct, there is perhaps no sum that would serve effectively to deter such conduct on another occasion by these respondents."  *Id.* ¶ 280.

The Court is surely familiar with the parties' dispute and the sustained bad faith efforts by

Respondents to prevent a sale of the Company at all costs.  In February 2022, at the conclusion of

---

[2]    Unless otherwise noted, exhibit references herein refer to the exhibits attached to the Declaration of Gregg L. Weiner ("Weiner Decl.") filed herewith.

the first phase of the Arbitration ("Phase 1"), the Tribunal issued an award of specific performance requiring Respondent Terra to comply with its contractual obligation to facilitate the sale of the Company (the "First Partial Final Award" or "1PFA"), which it owns jointly with Peppertree/AMLQ.  The Court confirmed that award in January 2023 in a decision that was affirmed by the Second Circuit in February 2024.  *See Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016 (2d Cir. Feb. 6, 2024).  The 1PFA proceedings were limited to Peppertree/AMLQ's requests for specific performance of certain provisions of the Company's governing documents and did not address numerous other claims by Peppertree/AMLQ arising out of Respondents' rampant misconduct, including claims for damages, which were specifically bifurcated from Phase 1 and reserved for a second phase (Phase 2).

While Peppertree/AMLQ had hoped that, after the 1PFA was issued, the parties could work together to sell the Company before Phase 2 commenced, as originally contemplated and ordered by the Tribunal, Respondents have done anything and everything in their power to ensure that the Company remains unsold and to interfere with the Arbitration.  Indeed, this Court has had to intervene on multiple occasions to address (i) Respondents' no-holds-barred campaign to terminate the Company's independent Chief Executive Officer ("CEO") and Chief Operating Officer ("COO") (collectively, "Management"), including by filing false criminal charges against them; (ii) a series of improper, collateral foreign arbitrations designed to undermine both the Arbitration and the required sale; (iii) countless other improper collateral litigations seeking to undo the Tribunal's (and this Court's) rulings; and (iv) repeated and baseless attempts to disqualify the highly qualified and well-respected Tribunal by concocting phony claims of impartiality (which both the ICDR and this Court have repeatedly rejected, but which Respondents nonetheless continued to press in Phase 2).   All the while, Respondents have perversely benefitted from

thwarting a sale by siphoning millions from the Company in improper and unauthorized payments to Respondent DTH, which, like the Company's majority shareholder Terra, is owned and controlled by Respondent Jorge Hernández.

Notwithstanding Respondents' unending and unlawful delay tactics, the Arbitration proceeded to Phase 2 in October 2023, resulting in the March 24, 2025 issuance of the 5PFA.  The 5PFA was the culmination of a highly robust and fair process, including extensive pre- and post-hearing briefing, multiple evidentiary hearings during which the parties had the opportunity to present both party and non-party witness testimony and documentary evidence, a live, four (4) day merits hearing, and multiple rounds of post-hearing oral argument.  In the end, the Tribunal issued the ***unanimous*** 5PFA in Peppertree/AMLQ's favor and awarding Peppertree/AMLQ **$300,749,761 in damages**, including **$25,166,643 in punitive damages** and $15,130,798.21 in attorneys' fees and costs, and ordered Respondents to deposit approximately $54 million into an escrow account as security for the damages awarded.  Ex. 190 at ¶¶ 3-16, 18.  As set forth in its thorough 200-page ruling, the Tribunal determined that such relief was warranted based on Respondents' ongoing violations of the Company's governing documents and malicious misconduct, all designed to interfere with the Tribunal's awards and this Court's judgments confirming the same—including the awards and judgments requiring a sale of the Company.

The unanimous, well-reasoned, and well-supported 5PFA should be confirmed.  It is not subject to vacatur under the exceedingly narrow and exacting standards required to vacate an arbitration award under the Federal Arbitration Act ("FAA") and Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").  As this Court previously ruled in confirming the 1PFA, "[j]udicial confirmation of an arbitration award is considered 'a summary proceeding that merely makes what is already a final arbitration award a

judgment of the court.'" *Telecom Business Solution, LLC v. Terra Towers Corp.*, No. 22-cv-1761 (LAK), 2023 WL 257915, at *4 (S.D.N.Y. Jan. 18, 2023) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).  Well-established Second Circuit authority mandates the binding nature of the arbitration and the very limited, circumscribed review federal courts provide to final arbitration awards.  Indeed, "[a]rbitration awards are subject to 'very limited review' to 'avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"  *Id.* (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).  Thus, an award should be confirmed so long as there is a "barely colorable justification for the outcome that the arbitrator reached."  *Id.* (quoting *Landy Michaels Reality Corp. v. Local 32B-32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)).

The 5PFA easily clears this deferential standard.  Far more than providing the required "**barely colorable justification** for the outcome reached," *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (emphasis added), the unanimous and well-reasoned 5PFA—issued by a panel of three highly experienced arbitrators—is supported by substantial findings of fact based on a robust evidentiary record, New York law (which governs the Company's agreements), and the applicable AAA Commercial Arbitration Rules (the "Commercial Rules").  Accordingly, it should be confirmed as promptly as possible so that Peppertree/AMLQ can recover the extensive damages they have been awarded, after being subjected to years of delay, disruption, and lawlessness by Respondents.  For these reasons and the reasons set forth herein, Peppertree/AMLQ respectfully request that their Petition to Confirm the 5PFA be granted.

## II.    **BACKGROUND**

Having already confirmed four partial final awards issued by the Tribunal and having issued several other orders in favor of Petitioners, this Court well knows the facts surrounding the

parties' relationship, the initial stages of the Arbitration, the events that led to those awards, and related proceedings. For the convenience of the Court, however, those facts are set forth in paragraphs 17 to 95 of the Petition and incorporated by reference herein. The facts surrounding the proceedings that led directly to the issuance of the 5PFA are set forth in paragraphs 96 to 160 of the Petition and summarized herein.

**A. Respondents' Repeated Breaches of the Shareholders Agreement Forced Peppertree to Initiate the New York Arbitration**

Peppertree initiated the Arbitration on February 2, 2021, by filing a Demand for Arbitration and Statement of Claims ("SOC") with the AAA against Terra/DTH, as well as Terra Directors Jorge Hernández and Alberto Arzu. *See generally* Ex. 5; Pet. ¶ 58.[3] Peppertree sought relief for breaches of contract and of fiduciary duty that Respondents had committed in failing to facilitate a sale of the Company, and by causing the Company to make millions in unauthorized payments to DTH.[4]

**1. *Respondents Violated Section 5.04(b) of the Shareholders Agreement on Multiple Occasions by Refusing to Sell the Company***

Section 5.04(b) of the SHA provides that after a five-year lock-up period that ended in October 2020, Terra or Peppertree could request a sale of the entire Company to an unaffiliated

---

[3]    Because the SOC included derivative claims on behalf of the Company, the Company had to be represented in the Arbitration by independent counsel that is not beholden to any shareholder. *See generally* Ex. 5. On March 19, 2021, the parties to the Arbitration—Peppertree, AMLQ, Terra, DTH, and the Company—all executed a letter agreement (the "March 19 Agreement") which set forth the "general framework under which" the Company would be represented by Adam Schachter of Gelber Schachter & Greenberg, P.A. ("GSG"), who had been retained by Jorge Gaitán, in his capacity as the Company's CEO, at the recommendation of Terra's counsel, Danielle Kirby. *See* Ex. 9. This retention was only proper because it was approved by both Peppertree and Terra, which make up the Company's Board.

[4]    On February 19, 2021, Terra filed its Statement of Answer and Counterclaim, naming AMLQ as a counterclaim respondent, and DTH and Terra Directors Hernández and Arzu filed a Response to Demand. *See generally* Exs. 7, 8. On March 25, 2021, AMLQ filed its Answering Statement, Affirmative and Other Defenses, and Counterclaims in the Arbitration. *See generally* Ex. 11. On July 13, 2021, AMLQ filed its First Amended Counterclaims against Terra in the Arbitration, *see* Ex. 17, and Peppertree filed its First Amended Demand for Arbitration and Statement of Claims in the Arbitration, *see* Ex. 18. On August 3, 2021, Terra filed its Answering Statement, Affirmative Defenses and Amended Counterclaims. *See* Ex. 20.

Third Party Purchaser (an "Approved Sale"). Ex. 1. Peppertree/AMLQ conditioned their substantial investment in the Company on the ability to exit their investment for any reason (or no reason at all) provided by Section 5.04(b). Exs. 97, 98. The provision contemplated that a sale would occur by either (i) a shareholder procuring an offer from a third party (a "Proposed Offer") and that offer being accepted; *or* (ii) if a sale was requested without first obtaining a Proposed Offer or the Proposed Offer was rejected as being too low, requiring the retention of "an Investment Bank to facilitate an Approved Sale and each shareholder [being obligated to] vote for, consent to and raise no objections against such Approved Sale and take all necessary and reasonable actions in connection with the consummation of the Approved Sale as requested by the Proposing Shareholders." Ex. 1 § 5.04(b)(ii). The parties also agreed that if a Proposed Offer was rejected as being too low by an Objecting Shareholder, that shareholder would accept all of the risk that the Company could end up selling for less than the amount of the Proposed Offer by agreeing that "the difference between the amount of the Proposed Offer and the purchase price of the Approved Sale shall be deducted from the proceeds otherwise due to the Objecting Shareholders." *Id.*

Terra breached Section 5.04(b) on two separate occasions in late 2020 and early 2021. *First*, Terra breached Section 5.04(b) by refusing to sell the Company after it rejected a proposed offer from Torrecom Partners LP ("Torrecom"), an unaffiliated third party purchaser that sought to purchase the Company in November 2020 for $407,800,000 (the "Torrecom Offer"). *See* Ex. 97 at ¶¶ 21-22. On November 24, 2020, Terra rejected the Torrecom Offer based on (i) a purported "opinion" by its chosen Investment Bank, UBS, that the $407,800,000 being offered by Torrecom was "materially lower than the average multiple for comparable transactions in the tower industry and the territory in which the Company operates," and (ii) a baseless assertion that the Torrecom

Offer was not a "bona fide" offer. *See id.* ¶ 24. Terra nonetheless conceded that the required sale process had been triggered and that the Company had to retain an Investment Bank to facilitate an Approved Sale pursuant to Section 5.04(b)(ii). Yet, instead of complying with its contractual obligations, Terra refused to permit the Company to engage an Investment Bank to sell the Company after rejecting the Torrecom Offer. *Id.* ¶ 26.

*Second*, Terra refused to sell the Company pursuant to a valid sale notice that did not attach a proposed offer. On January 19, 2021, pursuant to Section 5.04(b), Peppertree sent another proposed sale notice to Terra demanding a sale of the Company, this time without attaching a proposed offer. *See id.* ¶ 27; ECF No. 7 (Amended Petition to Confirm 1PFA) at ¶ 24; *see also* ECF No. 9-2. Again, instead of complying with its contractual obligation to sell the Company, on January 27, 2021, Terra informed Peppertree that it would not consent to a sale, in breach of the Shareholders Agreement. *See* ECF No. 7 at ¶ 25; *see also* ECF No. 9-3 at 5.

### 2.    *Respondents Violated the Company's Governing Documents to Funnel Millions from the Company to DTH*

The SOC also sought to hold Respondents liable in damages for the millions of dollars that they caused the Company to pay to DTH by failing to honor the Company's governing documents. As early as 2017, Respondents failed and refused to apply funds owed to the Company through the Offset Right for the development and construction of future tower sites. Ex. 98 at ¶ 22. These amounts total **$6.58 million**. *Id.* In fact, since Peppertree/AMLQ invested in the Company, Respondents have almost wholly ignored and failed to apply the Offset Right. *Id.*

In late 2020, Respondents also began using Company funds to pay to develop tower sites that had been rejected by the Company's Board, in violation of both the Shareholders and Development Agreements, which require majority Board approval for such development and expenditures. *See* Ex. 2 § 1.1(c); Ex. 1 §§ 4.03(d), 4.04(b), and 4.04(a)(xiii). While only some

tower sites are profitable and/or a good investment for the Company, DTH and Hernández have a financial interest in developing *all* tower sites since the Company pays DTH exclusively for each one.

**B.    The Tribunal Ordered That the Arbitration Proceed in Phases**

On August 6, 2021, shortly after the Tribunal was constituted, Petitioners filed a written submission seeking expedited consideration of (i) their request for specific performance of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) Peppertree's request for specific performance of the provisions of the Shareholders Agreement and Development Agreement related to approval of prospective tower proposals, with all other claims to be adjudicated in a later phase of the proceedings. *Id.*, Ex. 21 at 15. Terra opposed Petitioners' request and advocated adjudicating all of the parties' claims in a single merits hearing that would take place at least nine months later. *Id.* at 9

On August 12, 2021, the Tribunal granted Petitioners' request. Ex. 22. The Tribunal ultimately ordered, over Terra's objection, expedited consideration of "whether [Petitioners] are entitled to specific performance of the provisions of Section 5.04(b) of the Shareholders Agreement related to the sale of the Company; and (ii) whether Peppertree, derivatively and on behalf of the Company, is entitled to specific performance of Section 1.1(c) of the Development Agreement and Sections 4.03(d) and 4.04 of the Shareholders Agreement, which do not permit the Company to develop new tower sites that have been rejected by the Development Committee or the Board of Directors."[5] Ex. 22 at 15. With respect to Petitioners' claim for specific performance of their Section 5.04(b) sale right, Petitioners sought a determination that Terra was obligated to

---

[5]    While fully briefed, Peppertree's claim for specific performance related to tower development and approval was not litigated to conclusion in Phase 1 and was not decided in the 5PFA at issue here.

"vote for, consent to and raise no objections against [an] Approved Sale" facilitated by an Investment Bank pursuant to the January 2021 Sale Notice only, not the Torrecom Offer. Exs. 96, 122. All other claims—including all of the parties' damages claims and those arising from the Torrecom Offer—were reserved for Phase 2. Exs. 96, 122.

### C.    The Tribunal Issued Four Separate Partial Final Awards Against Respondents, All of Which Are Confirmed by This Court

#### 1.    In Phase 1, the Tribunal Issued the 1PFA, Ordering the Required Sale of the Company

Between September 2021 and February 2022, the parties engaged in extensive briefing in the Arbitration relating to Peppertree/AMLQ's specific performance claims to enforce Section 5.04(b) of the Shareholders Agreement, which requires an exit sale of the Company, and to stop Respondents' development of tower sites that had not been approved by the Company's Board. On February 24, 2022, after considering the parties' extensive briefing—which included numerous exhibits and witness statements—and holding an all-day hearing, the Tribunal issued the unanimous 1PFA, ordering that the Company be sold. ECF No. 9-22.[6] On January 18, 2023, this Court confirmed the 1PFA in its entirety and rendered a final judgment, thereby ordering the sale of the Company. *See* ECF Nos. 124, 125. The Court's decision confirming the 1PFA was affirmed by the Second Circuit in February 2024. *See Telecom Bus. Sol., LLC*, 2024 WL 446016.

#### 2.    The Tribunal Issued the Second Partial Final Award, Sanctioning Respondents and Their Counsel for Their Continued, Baseless Attacks on Company Management

On August 12, 2022, after extensive submissions and proceedings, the Tribunal issued its Second Partial Final Award ("2PFA"), sanctioning Respondents for additional misconduct in engaging in a "multi-faceted effort […] to present th[e] Tribunal and the Company's Board a *false*

---

[6]    The parties agreed to defer Peppertree's specific performance claim related to unauthorized tower sites; therefore, the Tribunal did not rule on this claim in Phase 1. *See* Petition ¶¶ 72-73, and 73 n.6.

*narrative* of misconduct and criminality by" the Company's CEO and COO. *See* Ex. 26 at ¶ 9 (emphasis added). As relevant here, in the 2PFA, the Tribunal ordered a "stay of proceedings on Respondents' counterclaims" in the Arbitration, that "shall be lifted only if Respondents demonstrate to the satisfaction of the Tribunal that they have complied in full with this Award," the 1PFA, and other of the Tribunal's orders. *Id*. at p. 53, ¶ 1. Respondents are not, and have never been, in compliance with the 1PFA, 2PFA, and other orders of the Tribunal; thus, Terra's Counterclaims in the Arbitration were stayed.[7] On February 20, 2024, this Court confirmed the 2PFA in its entirety. ECF No. 207. On May 1, 2024, the Court denied Respondents' motion for reconsideration of the order confirming the 2PFA, condemning their conduct as "vexatious and inappropriate." ECF No. 233.

### 3. The Tribunal Issued the Third and Fourth Partial Final Awards, Ordering Termination of the Improper Collateral Foreign Arbitrations

On February 23, 2023, the Tribunal issued the Third Partial Final Award ("3PFA") ordering Respondents to terminate improper, duplicative, and nonsensically circular foreign arbitrations filed by the Company's subsidiaries in Peru, Guatemala, Honduras, and El Salvador (collectively, the "Foreign Arbitrations") against another of the Company's subsidiaries, Peppertree, and AMLQ, seeking damages for Peppertree's allegedly improper rejection of certain tower sites. Ex. 27 (3PFA); *see also* Petition ¶¶ 83-84. On April 10, 2023, the Tribunal also issued the Fourth Partial Final Award ("4PFA"), in which it awarded Peppertree/AMLQ costs and fees in connection with the Foreign Arbitrations and 3PFA. Ex. 28. On September 6, 2023, this Court confirmed the 3PFA, ECF Nos. 182-83, and on February 8, 2024, this Court confirmed the 4PFA,

---

[7]    DTH has not asserted counterclaims in the Arbitration.

ECF Nos. 202-03. Despite this Court's confirmation of the 3PFA, Respondents still have refused

to terminate the Foreign Arbitrations, which remain ongoing.

> **D.     Respondents Continued to Siphon Millions from the Company, Which Remains Unsold Due to Their Repeated Attacks on Both the Arbitration and the Tribunal that Have Been Previously Condemned by this Court**

Respondents continued their attempts to undermine the Arbitration through both the filing

of additional collateral litigations to undo the Tribunal's orders, and a slew of baseless attacks on

the Tribunal. Respondents' conduct has, by design, created an environment in which the Company

has remained unsold in the four years since the Torrecom Offer. In that time, Respondents have

caused the Company to pay DTH over $37 million for unauthorized tower sites alone. Exs. 96,

122. ***First***, on March 7, 2022, Terra filed an improper and duplicative lawsuit in Florida state court

against Peppertree, AMLQ, Mr. Schachter, and GSG, seeking to rescind the March 19 Agreement

that the Tribunal had already ruled was valid and to remove Mr. Schachter and GSG as independent

counsel for the Company in the Arbitration on that basis (the "Florida Action"). Ex. 97 at ¶¶ 37-

38; *see also* Ex. 24; Petition ¶ 90. Peppertree/AMLQ subsequently removed the Florida Action

and had it transferred to this Court, where Peppertree/AMLQ's Motion to Dismiss and Motion to

Compel Arbitration remain pending. *See Terra Towers Corp.,* et al. *v. Gelber Schachter &*

*Greenberg, P.A.,* et al, Civ. Action No. 1:22-cv-06150-LAK (S.D.N.Y.).

***Second***, on August 19, 2022, just a week after issuance of the 2PFA, Terra/DTH filed a

Petition to Disqualify the Tribunal in New York State Court based on manufactured bribery

allegations against the Chair of the Tribunal that Respondents themselves had likely planted.

Peppertree/AMLQ properly removed the case and had it transferred to this Court: *Terra Towers*

*Corp.,* et al. *v. Telecom Business Solution, LLC,* et al., Civil Action No. 1:22-cv-07301-LAK

(S.D.N.Y) (the "Disqualification Proceeding"). After full substantive briefing, this Court properly

denied the Petition to Disqualify. Disqualification Proceeding ECF No. 59. On March 19, 2024,

Terra/DTH publicly filed a Motion for Reconsideration, *id*. ECF Nos. 60-62, which the Court properly rejected on May 1, 2024, *id*. ECF No. 73.

*Third*, in spring 2023, Respondents, through their agent Juan Francisco Quisquinay ("Quisquinay"), the CFO of the Company and of DTH, attempted to undo the Tribunal's rulings and again oust Mr. Gaitán from his role as CEO of the Company. On May 15, 2023, Peppertree learned that Quisquinay, purportedly in his capacity as CFO of the Company, filed an action in March 2023 in the Eastern Caribbean Supreme Court in the High Court of Justice, Commercial Division, Virgin Islands against the Company and Mr. Gaitán (but not the Company's shareholders), for the sole purpose of seeking a declaratory judgment regarding the identity of the Company's CEO (the "BVI Action")—an issue that the Tribunal had already decided. Ex. 97 at ¶¶ 39-40; *see also* Ex. 29. On July 20, 2023, Peppertree and AMLQ filed a Motion for a Preliminary and Permanent Anti-Suit Injunction in this Court, seeking that the Court enjoin the BVI Action, including to preserve the integrity of the Tribunal's finding that Mr. Gaitán is the Company's CEO and to prevent potentially conflicting rulings regarding the identity of the Company's CEO. ECF Nos. 171-73. After the parties fully briefed the motion, on February 20, 2024, this Court granted the motion and issued the necessary anti-suit injunction. ECF Nos. 208-09. In its decision, the Court noted that "the BVI Action appear[ed] aimed at thwarting the [1PFA]'s order, which this Court confirmed, that the Company be sold." ECF No. 209 at 5-6.

*Fourth*, in the months leading up to issuance of the 5PFA, Respondents have done anything and everything in their power to undermine and interfere with the Arbitration as well as to delay the issuance of the 5PFA, including (i) filing *additional* collateral foreign proceedings in violation of the Tribunal's prior awards and this Court's judgments; (ii) continuing their vicious attacks on Company Management, including by causing the Company's CEO to be incarcerated in Guatemala

on March 6, 2025; and (iii) escalating their targeted disinformation campaign to spread lies about the Arbitration and related proceedings, including via false attacks expressly targeting Peppertree, AMLQ, Company Management, the Tribunal, and even the AAA/ICDR.  This documented history is set forth in detail in Peppertree/AMLQ's Memorandum of Law in Support of Their Motion for a Preliminary and Permanent Anti-Suit Injunction and for Civil Contempt Sanctions, filed with this Court on March 18, 2025.  ECF No. 244.

Indeed, all of these wrongful actions were designed to ensure the Company remains unsold by undermining the Arbitration and the Tribunal's rulings therein, and publicizing disputes related to the Company.  Meanwhile, Respondents continued to embezzle money from the Company and funnel it to Terra's Hernández-controlled affiliate, DTH, including by continuing to take millions of dollars for the development of unauthorized tower sites that had not been approved by the Company's Board.  *See* Ex. 96 at 28-30 (demonstrating that since August 2020, Respondents caused the Company to pay DTH over $37 million for unauthorized tower sites).

### E. The Parties Engaged in a Full and Fair Process to Litigate Phase 2 of the Arbitration

#### 1. *Despite Respondents' Continued Attempts to Delay, Phase 2 Commenced*

Peppertree/AMLQ and Respondents had agreed to stay Phase 2 to the Arbitration until this Court resolved their cross-petitions to confirm and vacate the 1PFA, and that agreed stay terminated by its own terms on January 18, 2023 when this Court confirmed the 1PFA.  *See* Ex. 30 at 3.  Subsequently, Respondents continued to obstruct the required sale, including through the filing of improper and disruptive collateral litigations, such as the Foreign Arbitrations and BVI Action.  As such, Peppertree/AMLQ realized that the parties could not wait to litigate Phase 2 after the Company was sold because, if Respondents had their way, that would never happen.

On July 18, 2023, the Tribunal issued an email order, asking the parties to submit a status report regarding the status of the Foreign Arbitrations addressed by the 3PFA; the status of the BVI Action and any other SDNY or Second Circuit proceedings related to the Arbitration; and the parties' views on a timetable and procedure to finish the Arbitration. Ex. 30. On August 4, 2023, the parties submitted their status reports. Exs. 31, 32. In their status report, Peppertree/AMLQ advised the Tribunal that (a) Respondents had failed to terminate the Foreign Arbitrations in violation of the 3PFA; (b) Respondents had failed to terminate the BVI Action and Peppertree/AMLQ's Motion for a Preliminary and Permanent Anti-Suit Injunction was then pending before this Court; (c) there were other collateral litigations initiated by Respondents that were pending, including the Florida Action, proceedings against Company Management in foreign jurisdictions, and proceedings against potential bidders of the Company, such as Torrecom; and (d) Peppertree/AMLQ requested that Phase 2 commence immediately. Ex. 31. Not surprisingly, Respondents argued that "Phase two of this arbitration should not commence until after the Company has been sold," Ex. 32 at 21, even though they were purposefully obstructing the sale, as they had been doing for years.

On August 9, 2023, the Tribunal issued Procedural Order No. 2023-06, ordering the parties to make written submissions by August 25, 2023 regarding various questions affecting Phase 2, including, without limitation, the Tribunal's jurisdiction to award money damages for any breach of contract found in the 1PFA. Ex. 35. On August 18, 2023, the Tribunal issued Procedural Order No. 2023-07 relating to proposed Phase 2 proceedings, in which it directed the parties to make submissions by September 11, 2023[8] regarding: (a) any proposed additional or amended claims

---

[8]  At Respondents' request, this deadline was extended to October 11, 2023 with respect to submissions relating to proposed additional or amended claims or counterclaims.

or counterclaims; (b) comments on what should be the final disposition of Respondents'
Counterclaims (which were stayed pursuant to the sanction in the 2PFA); and (c) the submissions
ordered in P.O. 2023-06, which were previously due on August 25, 2023.  Ex. 36.  On September
11, 2023, the parties made their submissions to the Tribunal pursuant to P.O. 2023-06.  In their
submission, Peppertree/AMLQ argued that the Tribunal retained jurisdiction to award money
damages for any breach of contract found to have occurred in the 1PFA for many, independent
reasons, and made clear that their Phase 2 claims included multiple breaches of the sale provision
of the Shareholders Agreement (Section 5.04(b)) that were never litigated in Phase 1 in the first
instance, such as Terra's breach of Section 5.04(b) with respect to the Torrecom Offer.  Ex. 37.  In
their submission, Respondents contended that the Tribunal had no jurisdiction to award such
damages.  Ex. 38.

On October 11, 2023, Peppertree/AMLQ made their submission in response to P.O. 2023-
07, setting forth why they should be permitted to amend their claims pursuant to Commercial Rule
R-6 and submitting a Consolidated Amended Statement of Claims (the "Amended SOC") jointly
on behalf of both Peppertree and AMLQ.  Ex. 39.  Peppertree/AMLQ also argued that the Tribunal
should not lift the stay of Respondents' Counterclaims required by the 2PFA because Respondents
purposefully failed to comply with the Tribunal's prior orders and awards, and continued to make
misrepresentations to the Tribunal regarding the Foreign Arbitrations in order to obstruct the
required sale of the Company.  *Id*. at 5-11.

In addition, because Sagastume and Mendez had been appointed as Directors of the
Company and taken wrongful actions after Peppertree/AMLQ filed their last amended pleadings
years ago in 2021, in the Amended SOC, Peppertree/AMLQ added Sagastume and Mendez as
parties.  Ex. 39 at ¶¶ 37-38.  In the Amended SOC, Peppertree/AMLQ alleged, *inter alia*, the

following claims:  (a) breach of Section 5.04(b) of the Shareholders Agreement based on both failure to sell the Company multiple times and frustration of the sale, including through filing collateral litigations; (b) breach of the EPC Contract and Development Agreement for failure to apply the Offset Right; (c) breach of the Shareholders Agreement and Development Agreement by making and/or causing the Company to make unauthorized Company expenditures that were not approved by the Board, including such expenditures to develop unauthorized towers; (d) breach of fiduciary duty against the Individual Directors; (e) breach of Section 8.15 of the Shareholders Agreement (the arbitration provision) by filing and litigating the Florida Action and BVI Action, both of which addressed issues that were already decided in the Arbitration; (f) tortious interference with the Shareholders Agreement against DTH and Hernández for their interference with the sale of the Company and initiation of collateral litigations in violation of Section 8.15 of the Shareholders Agreement; and (g) various claims for recoupment of all of Peppertree/AMLQ's significant expenditures as a result of Respondents' litany of improper conduct, including, but not limited to: (i) payment of Company counsel fees Respondents refused to permit the Company to pay; (ii) payment of Company Management's salaries and expenses that Respondents refused to permit the Company to pay; (iii) advancement of Management's legal fees in connection with the improper attacks on Management initiated by Respondents—fees for which Respondents would not permit the Company to properly indemnify Management; and (iv) payment of Respondents' share of AAA/ICDR fees totaling hundreds of thousands of dollars that Respondents refused to pay in an attempt to frustrate the Arbitration.  *See id.* ¶¶ 301-483.  In their October 11, 2023 submission, Respondents confirmed they did not seek to add additional counterclaims. Ex. 40.  Incredibly, Respondents also affirmatively sought a stay of Phase 2.  *Id.* ¶¶ 40-43.

On October 19, 2023, Peppertree/AMLQ also made a submission commenting on Respondents' October 11, 2023 submission. Ex. 43. Therein, Petitioners argued that the stay on Respondents' counterclaims should not be lifted due to Respondents' continued, purposeful noncompliance with the Tribunal's orders and awards, and that a continued, unwarranted stay of Phase 2 would be highly prejudicial to Peppertree/AMLQ given that Peppertree initiated the arbitration nearly three years ago and Respondents continued to engage in rampant misconduct. *Id.* On October 19, 2023, Respondents also made a submission setting forth their objections to Peppertree/AMLQ's proposed Amended SOC. Ex. 44. On October 24, 2023, Respondents made another submission providing their comments and positions on the issues raised by Peppertree/AMLQ and the Company in their respective October 19, 2023 submissions. Ex. 45. On October 24, 2023, Peppertree/AMLQ submitted comments to Respondents' October 19, 2023 Submission, which objected to Peppertree/AMLQ's proposed Amended SOC. Ex. 46. On October 25, 2023, all Respondents submitted an Answering Statement, Affirmative Defenses, and Counterclaim in response to the Amended SOC. Ex. 47.

On October 26, 2023, the Tribunal issued Procedural Order No. 2023-09 concerning Phase 2 of the Arbitration in which it (a) accepted the Amended SOC in full; (b) rejected Respondents' application to lift the stay of their Counterclaims set forth in the 2PFA because it was undisputed that Respondents had failed to meet the conditions thereof; and (c) rejected Respondents' request to stay Phase 2 of the Arbitration, instead ordering that Phase 2 commence, that a status conference be scheduled, and that the parties submit a Procedural Timetable for Phase 2. Ex. 48.

On November 3, 2023, the parties participated in a status conference regarding the commencement of Phase 2. Ex. 49. After additional submissions from the parties, Exs. 50, 51, on November 10, 2023, the Tribunal issued Procedural Order No. 2023-10, in which it confirmed

certain procedures that would apply to Phase 2 of the Arbitration and ordered a Phase 2 timetable, including deadlines for discovery, a final merits hearing to commence on July 15, 2024, and pre- and post-hearing submissions.  Ex. 52.

>### 2. Discovery Commenced, and the Tribunal Sanctioned Respondents for Their Abject Failure to Engage in the Discovery Process

Starting in November 2023, the parties began to engage in the Phase 2 discovery process. On November 30, 2023, Peppertree/AMLQ and Respondents each submitted Requests for the Production of Documents (the "Requests") directed to each other.   Weiner Decl. ¶ 57. Subsequently, on January 11, 2024, the parties submitted responses to the Requests, *id*. ¶ 60, and on January 25, 2024, they each submitted replies in further support of the Requests, *id*. ¶ 61.  On January 30, 2024, Peppertree/AMLQ and Respondents engaged in a meet and confer regarding their discovery requests.  Ex. 58.

On February 1, 2024, the parties submitted the full Stern Schedules of their Requests to the Tribunal, setting forth any disputes for the Tribunal to resolve.  *See* Exs. 57, 58 (reflecting the parties' full and completed discovery schedules and objections).   As set forth in Peppertree/AMLQ's correspondence to the Tribunal and completed schedule, Respondents refused to produce documents in response to all of Peppertree/AMLQ's requests and only at the January 30, 2024 meet and confer suggested, for the first time, that they *may* be willing to produce some documents in response to only seven (7) of Peppertree/AMLQ's requests, all of which related to Respondents' own stayed Counterclaims.  *See* Ex. 58.

After significant briefing and submissions during which all parties had an opportunity to be heard, Petition ¶¶ 96-112, on March 1, 2024, the Tribunal issued its rulings on the parties' requests for production.  Exs. 65-67.  Therein, the Tribunal ordered Respondents to produce documents in response to 18 of the 36 Peppertree/AMLQ discovery requests at issue, Ex. 65, and

ordered Peppertree/AMLQ to produce documents in response to six (6) of Respondents' 25 discovery requests at issue,[9] Ex. 67.  The Tribunal denied many of Respondents' requests because they sought documents related solely to their stayed Counterclaims, which were not defenses to Peppertree/AMLQ's pending claims and thus not relevant to Phase 2.  *See id*.

While Peppertree/AMLQ made timely and substantial productions in March and April 2024, complied with the Tribunal's discovery orders, and engaged in the document discovery process in good faith, Respondents wholly failed to do so.  *See* Petition ¶¶ 117-27.  After the parties each made a series of discovery submissions, on April 11, 2024, Peppertree/AMLQ and Respondents each made simultaneous submissions regarding compliance with the Tribunal's March 1, 2024 discovery orders.  Exs. 83, 84.  In their submission, Peppertree/AMLQ set forth Respondents' track record of discovery non-compliance; their willful violation of Procedural Order No. 2024-02 (in which the Tribunal enforced 18 of Peppertree/AMLQ's discovery requests); and their abject failure to produce a single document responsive to 17 of the 18 enforced discovery requests.  Ex. 83.  As a result, Peppertree/AMLQ requested that the Tribunal sanction Respondents' for their bad faith conduct in refusing to meaningfully participate in the discovery process.  *Id*. at 5.  On April 16, 2024, Peppertree/AMLQ and Respondents each made simultaneous responsive submissions regarding discovery compliance, Exs. 85, 86, and on April 17, 2024, Respondents made a further submission, arguing that Peppertree did not comply with its discovery obligations, Ex. 87, to which Peppertree/AMLQ responded, Ex. 88.

On May 3, 2024, the Tribunal issued Procedural Order No. 2024-10, in which it set forth the facts underlying the parties' discovery disputes in great detail; found that Respondents engaged

---

[9]    Importantly, Peppertree/AMLQ had already agreed to produce documents in response to many of Respondents' requests, which were not at issue before the Tribunal.

in *profound and sanctionable* discovery misconduct by failing to produce virtually any responsive documents and did not even dispute their non-compliance; and that "Respondents' contention that Claimants['] application for sanctions should be denied on the basis of Claimants' own misconduct is not adequately supported and is not accepted." Ex. 91. The Tribunal sanctioned Respondents for their bad faith conduct, ordering that (a) Respondents may not use as evidence or cross examination material for impeachment purposes, any documents that have been produced by Peppertree/AMLQ in the information exchange process, except such documents that (i) the parties agree can be used, (ii) are already readily available to Respondents, or (iii) Peppertree/AMLQ identify as an exhibit; (b) Respondents are jointly and severally liable for Peppertree/AMLQ's costs of the information exchange process; and (c) Peppertree/AMLQ's request that the Tribunal order adverse inferences as a sanction is held in abeyance to the time of the Tribunal's Phase 2 award but that Peppertree/AMLQ may include their requested adverse inferences in their Phase 2 Opening Pre-Hearing Memorial. *Id*. at 28-29. Subsequently, Peppertree/AMLQ made their fee submissions, Exs. 108, 109, which Respondents opposed, Ex. 117.

In parallel with the party discovery process that resulted in Procedural Order No. 2024-10, the parties also engaged in discovery with non-parties to the Arbitration. Peppertree/AMLQ and Respondents each asked the Tribunal to summon six (6) witnesses to produce relevant documents and provide live testimony in extensive written submissions. Ultimately, the Tribunal heard testimony from only two (2) non-party individuals, each of whose testimony was sought by Respondents: Maria Scotti of Torrecom, and Dagan Kasavana of Phoenix Tower International ("PTI"). *See generally* Exs. 55; 71; 76; 82; 118. On April 19, 2024, after identifying and exchanging relevant documents, the parties participated in a witness hearing during which they questioned Ms. Scotti, the CEO of Torrecom. Ex. 90. On May 30, 2024, again after identifying

relevant documents, the parties also participated in a witness hearing during which they questioned Mr. Kasavana, the CEO of PTI.  Ex. 111.

### 3. *Respondents Resurrected Their Baseless and Previously-Rejected Efforts to Disqualify the Tribunal, Which Were Again Rejected by the ICDR*

As discovery was getting underway, Respondents again tried to assert phony claims of bias and impartiality against the highly-experienced, three-member Tribunal in yet another effort to disqualify the Tribunal.  Beginning in December 2023 and on multiple occasions thereafter, Respondents asked the ICDR to disqualify the Tribunal from presiding over the Arbitration on the basis of the Tribunal's proper and well-supported prior orders and awards—including those that this Court had confirmed, thereby already rejecting arguments that they somehow demonstrated evident partiality by the Tribunal—and even irrelevant, personal blog posts made by the Chair of the Tribunal.  After extensive briefing, those objections were conclusively rejected by the ICDR on March 12, 2024, and again on April 18, 2024. Ex. 89.  Respondents then raised many of those same arguments ***again*** in asking this Court to reconsider its decision denying their petition to disqualify the Tribunal, which this Court rejected on May 1, 2024.  *See* Disqualification Proceeding, Case No. 22-cv-7301, ECF Nos. 61, 66, 74.

### 4. *At the Eleventh Hour, the Terra Directors Sought to Improperly Delay the Arbitration*

Following Respondents' failed bids to disqualify the Tribunal, on May 3, 2024—after over three (3) years of arbitration and only two (2) months before the final Phase 2 merits hearing—the Terra Directors engaged in a new improper delay tactic by filing a Petition to Stay the Arbitration in New York State Court, arguing that only a court and not the Tribunal could resolve their objections to the Tribunal's jurisdiction, even though they had never previously sought court intervention.  *See Hernández,* et al. *v. Telecom Business Solution, LLC,* et al., Case No. 24-cv-03457 (LAK) (S.D.N.Y. 2024) ("Stay Proceeding" or "Stay Proc."), ECF No. 6-2.  On May 6,

2024, Peppertree/AMLQ filed a Notice of Removal and had the case transferred to this Court. Stay Proc. ECF No. 1.

In their Opening Pre-Hearing Memorial in the Arbitration, Respondents also requested that the Tribunal stay Phase 2 of the Arbitration without first seeking the required leave to do so. Ex. 102 at 34. On May 29, 2024, the Tribunal noted Respondents' improper stay request and ordered Respondents to advise the Tribunal by June 1, 2024 whether they maintain or withdraw that application. Ex. 110. On June 1, 2024, Respondents expressly sought that the Tribunal stay the Phase 2 hearing in its entirety pending this Court's resolution of the Stay Proceeding. Ex. 112. On June 3, 2024, Peppertree/AMLQ made an email submission opposing Respondents' request for a stay. Ex. 113. On June 5, 2024, Respondents made a formal submission to the Tribunal in support of their request to stay the entire Arbitration, Ex. 114, and, on June 6, 2024, Peppertree/AMLQ responded, reiterating their opposition to a last minute stay designed to unnecessarily delay the Arbitration, Ex. 115. Ultimately, the Tribunal provided Respondents with no less than four opportunities to brief the Terra Directors' objections to arbitral jurisdiction in their pre- and post-hearing submissions in the Arbitration and both while and after they briefed those same objections in this Court. *See* Exs. 96, 102, 122, 129, 167, 170, 171, 172.[10]

### 5.    *The Parties Engaged in a Fulsome Pre-Hearing Submissions Process*

The parties engaged in a fulsome Phase 2 pre-hearing submissions process, in which they made substantial evidentiary submissions to the Tribunal. On May 20, 2024, Peppertree/AMLQ

---

[10]    Although the Terra Directors claimed their Petition to Stay was a purported emergency, they never filed a Motion for Temporary Restraining Order or any other request for emergency relief in the Stay Proceeding. On June 10, 2024, however, Peppertree/AMLQ filed a Motion to Dismiss the Petition to Stay, arguing that the Stay Proceeding was merely a ploy to delay Phase 2 of the Arbitration and that the Terra Directors had waived their right to Court intervention by waiting years to bring their jurisdictional challenges to the Court's attention. *See* Stay Proc. ECF Nos. 22, 24. The parties fully briefed the motion, Stay Proc. ECF Nos. 29, 31, and on July 12, 2024, this Court granted the Motion to Dismiss, finding that the Terra Directors forfeited their right to seek judicial intervention because they waited months or years to seek a judicial stay, "which strongly suggests gamesmanship," Stay Proc. ECF No. 34 at 8.

and Respondents each made their opening pre-hearing submissions. Peppertree/AMLQ submitted: (a) a 45-page Opening Pre-Hearing Memorial, Ex. 96, and related appendices; (b) two (2) witness statements, Exs. 97, 98; (c) two (2) expert reports, Exs. 99, 100; and (d) 161 exhibits, Ex. 101. Respondents submitted: (a) a 45-page Opening Pre-Hearing Memorial, Ex. 102; (b) two (2) witness statements, Exs. 103, 105; (c) one (1) expert report, Ex. 106; and (d) 156 exhibits, Ex. 107. In their Pre-Hearing Opening Memorial, Peppertree/AMLQ sought *over $286 million*[11] in damages for the multiple breaches and other wrongful conduct alleged in the Amended SOC plus punitive damages, pre- and post-judgment interest, and an award of all fees and costs incurred in connection with the Arbitration and related proceedings. *See* Ex. 96 at 2-3.

On June 28, 2024, Peppertree/AMLQ and Respondents each made their responsive pre-hearing submissions. Peppertree/AMLQ submitted: (a) a 25-page Responsive Pre-Hearing Memorial, Ex. 122, and related appendices; (b) three (3) witness statements, Exs. 123-25; (c) two (2) expert reports, Exs. 126, 127; and (d) 90 additional exhibits, Ex. 128. Respondents submitted: (a) a 26-page Responsive Pre-Hearing Memorial, Ex. 129, and related "annexes," one of which improperly consisted of 39 single-spaced pages of new argument in Response to Peppertree's witness statements,[12] Exs. 130-32; (b) two (2) witness statements, Exs. 133, 135; (c) one (1) expert report, Ex. 193; and (d) 220 additional exhibits, Ex. 130.

On July 5, 2024, the Company and Peppertree/AMLQ made submissions to the Tribunal objecting to certain of Respondents Phase 2 exhibits submitted with their pre-hearing memorials, Exs. 137, 138, and, on July 11, 2024, Respondents responded to these objections, Exs. 147, 148.

---

[11]    As noted in the Memorial, Respondents' misconduct was ongoing and Peppertree/AMLQ's damages were increasing every month; as such, Peppertree/AMLQ reserved the right to update their damages. *Id*. at 2 n.3.

[12] The Tribunal ultimately excluded this annex as it was over 1.5 times as long as the 25-page permissible limit on responsive pre-hearing memorials and its inclusion in the record would have been highly inequitable by affording Respondents more than double the responsive briefing granted to Peppertree/AMLQ.

Also on July 5, 2024, less than 2 weeks before commencement of the Phase 2 hearing, all of Respondents' arbitration counsel sought to withdraw, and new counsel for Respondents purported to appear in the Arbitration. Ex. 139. On July 9, 2024, the parties, including Respondents' new counsel, engaged in a procedural conference in advance of the final Phase 2 hearing at which they discussed Respondents' engagement of new counsel as well as procedural matters related to the upcoming Phase 2 merits hearing. Ex. 145. On July 10, 2024, the Tribunal issued Procedural Order No. 2024-15, in which it set forth the procedural details of the Phase 2 merits hearing and granted Respondents' application for change of counsel. Ex. 146.

### 6.    *The Tribunal Conducted a Live Four-Day Arbitration Hearing*

From July 15, 2024 to July 18, 2024, the parties participated in the final Phase 2 merits hearing, conducted by the Tribunal live in New York, New York. *See* Exs. 150-153. During that hearing, the parties presented Opening Statements, and called and questioned seven (7) witnesses. *See generally id.* The proceedings lasted for four (4) full days, resulting in over 1600 transcript pages. *See id.*

### 7.    *The Parties Engaged in an Extensive Post Hearing Submissions Process, Including Multiple Submissions and Two (2) Days of Oral Argument, and the Tribunal Closed the Phase 2 Record*

The parties engaged in a fulsome post-hearing submissions process, in which they each made substantial argumentative submissions to the Tribunal. On August 30, 2024, Peppertree/AMLQ and Respondents each made their opening post-hearing submissions. Peppertree/AMLQ submitted: (a) a 42-page Opening Post-Hearing Memorial, Ex. 167, and related appendices; (b) a supplemental expert report updating continuing damages, Ex. 168; and (c) 21 additional exhibits, likewise only updating continuing damages, Ex. 169.[13] Respondents submitted

---

[13]    Upon Respondents' objection, the Tribunal declined, without prejudice, to accept in the record Peppertree/AMLQ's additional expert report, exhibits, and appendices with respect to updated, ongoing damages.

a 45-page Opening Post-Hearing Memorial.  Ex. 170.  On September 27, 2024, Peppertree/AMLQ and Respondents each submitted a Responsive Post-Hearing Memorial.  Exs. 171, 172.

On October 9, 2024, the Tribunal conducted another live, six (6) hour hearing in New York, during which both Peppertree/AMLQ and Respondents presented closing arguments to the Tribunal and answered the Tribunal's questions.  Ex. 173.  On October 16, 2024, the Tribunal conducted an additional two and one-half (2 ½) hours of post-hearing argument via Zoom.  Ex. 174.  Although only Peppertree/AMLQ's claims were being litigated and, therefore, Peppertree/AMLQ should have been afforded the final rebuttal, the Tribunal granted Respondents an opportunity to provide a written sur-rebuttal, which they submitted on October 21, 2024.  Ex. 175.

In sum, in addition to the dozens of other Phase 2 submissions the parties made leading up to their primary pre-hearing submissions, the parties' Phase 2 hearing submissions contained nearly 300 pages of substantive pre- and post-hearing briefing; nine (9) witness statements; over 600 exhibits; and six (6) expert reports (which also contained additional exhibits and/or appendices).  Respondents did not seek any additional post-hearing briefing or argument.

Subsequently, on December 6, 2024, the Tribunal asked the parties "whether they have any further proofs to offer or witnesses to be heard in Phase 2 of the arbitration" because it was "keen to declare the Phase 2 record closed, and to establish an agreed timetable for issuance of the Phase 2 award."  Ex. 176.  Peppertree/AMLQ responded on December 11, 2024, confirming their agreement "that the Phase 2 evidentiary record should be closed," Ex. 177; however, Respondents failed to respond.  On December 16, 2024, the Tribunal confirmed "[n]either party has registered objection to our declaration of intention to close the Phase 2 record" and, therefore "declare[d] the Phase 2 record closed . . . save as to submissions on costs," which the Tribunal ordered to be made

on both January 10, 2025 and January 17, 2025.  Ex. 178.  Thereafter, the Tribunal confirmed multiple times that the Phase 2 record was closed.  Exs. 179, 185, 186.

Following the closure of the Phase 2 record, on both January 10, 2025 and January 17, 2025, Peppertree/AMLQ and Respondents each made opening and responsive submissions to the Tribunal regarding the fees and costs they sought in the arbitration.  Exs. 180-183.  Then, on February 13, 2025, the Tribunal sought the parties' comments on draft remedial provisions it was considering including in the final Phase 2 award.  Ex. 187.  On February 19, 2025, Peppertree/AMLQ, Respondents, and the Company each submitted their comments.  Exs. 188-190.

> **F.  The Tribunal Issued the Unanimous 5PFA in Response to Respondents' Egregious Misconduct and Flagrant Violations of the Company's Governing Documents, Awarding Peppertree/AMLQ Over $300 Million in Damages**

On March 24, 2025, the Tribunal issued the unanimous, well-reasoned, and well-supported 5PFA, awarding Peppertree/AMLQ **$300,749,761** in damages, including **$25,166,643 in punitive damages** and $15,130,798.21 in attorneys' fees and costs, and ordered Respondents to deposit approximately $54 million into an escrow account as security for the damages awarded based on Respondents' multiple, repeated breaches of the Company's governing documents.  Ex. 191 at ¶¶ 3-16, 18.  The 200-page 5PFA explains a portion of the factual history supporting the 5PFA, which is set forth in summary fashion herein.  *See id*. ¶¶ 1-11.  The following are only some of the Tribunal's findings in this robust and sound award:

- Respondents failed to engage in the required process to sell the Company, resulting in an ongoing breach of the Company's governing documents, and instead engaged in multiple efforts to actively interfere with, and prevent, a sale of the Company. *Id*., ¶¶ 18, 20, and 21.  "The Company cannot be sold unless Terra agrees to sell or is effectively compelled by legal process to sell.  Up to now, despite more than four years of arbitration before this Tribunal that has gone against Respondents at every step, Respondents have not agreed, and they have not recognized the [1PFA] Judgment (or the Judgments enforcing our other awards) as a source of compulsion."  *Id*. ¶ 57.

- Any Company sale proceeds must be placed in escrow to secure the damages awarded in the 5PFA, *see id.* ¶ 67, because the Tribunal "fail[ed] to see how awarding more potentially uncollectable money damages would be an adequate remedy if Respondents sequester or encumber proceeds of a Company sale to prevent their being applied to satisfy the damages awarded in [the 5PFA]," *id.* ¶ 62.

- Respondents are responsible for the publication of multiple false news articles designed to prevent a sale of the company and intimidate Peppertree, AMLQ, the company's Management, and the Tribunal: "Moreover, in this award we find that respondents have been responsible for the publication – on several obscure, anonymous and untraceable websites that purport to offer 'news' of interest to the arbitral community — of multiple 'articles' that vilified the claimants, falsely accusing one of them of Foreign Corrupt Practices Act violations, and defamed the Tribunal, first by asserting in March 2022 that the chair had taken a bribe from one of the claimants at the time of his appointment." *Id.*, ¶ (5); *see also id.*, ¶ (6).

- "We have made four partial final awards, all of them against the respondents, and none of them has been complied with in any respect." *Id.*

- Hernandez is subject to arbitral jurisdiction and personally liable for the substantial damages he and the other Respondents caused Peppertree/AMLQ. *Id.*, Award, ¶¶ 2, 3.a.; *see also id.* ¶¶ 164-68.

- In awarding over $25 million in punitive damages against Terra, DTH, and Hernandez, the Tribunal explained that "[g]iven the win-at-all-cost attitude reflected in the respondents' conduct, there is perhaps no sum that would serve effectively to deter such conduct on another occasion by these respondents." *Id.* ¶ 280.

- Respondents' misconduct is "deeply troubling" and their "efforts to undermine enforcement of the [Tribunal's] awards" are "disturbing." *Id.*, Preamble, ¶ (1).

- The Company's CEO and his father are being criminally prosecuted in foreign countries "on charges that [the Tribunal] determined to be false in [their] Second Partial Final Award" and that "at least one of the criminal charges is premised on the fact that the CEO participated in a hearing in this case in October 2021, providing testimony that [the Tribunal] found credible." *Id.*, ¶ (4). "Respondents by continuing to claim that the CEO committed 'crimes,' and causing public prosecutors in Central America to accept this claim, are defying our authority and that of the SDNY Court." *Id.*

- "Some of the conduct by respondents and/or their proxies may be prosecutable as violations of federal and state criminal laws in the United States." *Id.*, Preamble, ¶ (10).

- Because Respondents breached the Company's governing documents in failing to apply the contractual Offset Right and caused the Company to develop unauthorized tower sites without the requisite Board approval, Peppertree/AMLQ are entitled to an award of equitable relief in the form of approximately $54 million in escrow deposits. *See id*. ¶¶ 76-107.

- Peppertree/AMLQ are entitled to reimbursement of expenses they incurred as a result of Respondents' failure to cause the Company to pay independent Company counsel fees, Company Management's salaries, and Company Managements' legal fees incurred as a result of Respondents' vicious and escalating attacks against them in foreign jurisdictions. *Id*. ¶¶ 108-46. Peppertree/AMLQ are likewise entitled to reimbursement of legal fees incurred to defend against improper collateral litigations initiated by Respondents or their agents and Respondents' false FCPA-related allegations directed at Peppertree/AMLQ and Company Management. *Id*. ¶¶ 147-60.

- Peppertree/AMLQ prevailed on their claim for tortious interference with contract against Hernandez/DTH; Hernandez/DTH acted with malice; and the restrictions and obligations imposed in the Tribunal's 2PFA, 3PFA, and 4PFA, as well as a mandatory injunction to comply with the 1PFA, requiring that the Company be sold, apply to each of them. *Id*. ¶ 3.

## III.    LAW AND ARGUMENT

### A.    The 5PFA Should Be Confirmed Pursuant to the Federal Arbitration Act

The Court should confirm the 5PFA pursuant to the FAA. As this Court previously ruled in confirming the 1PFA, "[j]udicial confirmation of an arbitration award is considered 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Telecom Business Solution, LLC v. Terra Towers Corp.*, No. 22-cv-1761 (LAK), 2023 WL 257915, at *4 (S.D.N.Y. Jan. 18, 2023) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). Indeed, "[a]rbitration awards are subject to 'very limited review' to 'avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Id*. at *4 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Section 9 of the FAA makes clear that a court "***must*** grant" a motion to confirm "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). An arbitration "award should

be confirmed so long as there is a '***barely colorable justification***' for the outcome that the arbitrator reached, even if the Court 'disagree[s] with it on the merits.'" *Telecom Business Solution, LLC*, 2023 WL 257915 at *4 (quoting *Landy Michaels Realty Corp.*, 945 F.2d at 797) (emphasis added).

The 5PFA should be confirmed pursuant to Section 9 of the FAA. ***First***, the Petition to Confirm the 5PFA (the "Petition") is timely because it was filed well "within one year after the award [was] made" on March 24, 2025. *See* 9 U.S.C. § 9.

***Second***, there is far more than a "barely colorable justification" for the 5PFA. *Fellus*, 783 F. Supp. 2d at 618. The AAA Commercial Rules grant the Tribunal broad authority to issue relief, including damages, injunctive relief, and declaratory judgments. *See, e.g.,* Commercial Rule R-47(a) (providing the Tribunal with the authority to "grant ***any remedy or relief*** that [it] deems just and equitable and within the scope of the agreement of the parties"); Commercial Rule R-47(c) (providing that "[i]n the final award, the arbitrator ***shall*** assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55" and that "[t]he arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate"); Commercial Rule R-47(d) (confirming arbitrators may award "interest at such rate and from such date as the arbitrator(s) may deem appropriate" and attorneys' fees); Commercial Rule R-37(a) (granting the Tribunal the authority to "take ***whatever*** interim measures [it] deems necessary, including [granting] injunctive relief") (emphasis added); *see also Eyewonder, Inc. v. Abraham*, No. 08 CV 3579 GBD, 2010 WL 3528882, at *4 (S.D.N.Y. Sept. 3, 2010) ("In light of the presumption toward confirming an arbitration award, and absent specific justification for vacating the arbitrator's determination that injunctive relief was appropriate, this Court confirms the Award and issues an order granting injunctive relief."); *Advanced Alternative Media, Inc. v. Frasure*, No. 21-CV-2837 (PKC), 2022 WL 14786789, at *3–4 (S.D.N.Y. Oct. 26,

2022) (granting petition to confirm arbitration award including declaratory relief).  As the Second Circuit found when affirming this Court's judgment confirming the 1PFA, "'New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties, including fashion[ing] relief that a court might not properly grant.'"  *Telecom Bus. Sol., LLC*, 2024 WL 446016, at *4 (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015)).

*Finally*, because there is "no valid basis to vacate, modify, or correct" the 5PFA, the Petition should be granted.[14]  *See Manilow v. Snorkel Prods., Inc.*, No. Civ. 1866, 2004 WL 943548, at *1 (S.D.N.Y. May 3, 2004).  Respondents may try to argue—as they have on no fewer than eight (8) occasions in the past—that the Tribunal is biased, and that the 5PFA should be vacated on that basis.  That argument is baseless.  As with the prior four awards that this Court has confirmed, the 5PFA was not procured by corruption, fraud, or undue means; there was no evident partiality or corruption on the part of the Tribunal; the Tribunal is not guilty of misconduct due to refusing to let the parties be heard; and the Tribunal did not exceed its power.  *See* 9 U.S.C. § 10. To the contrary, the highly qualified, experienced, and impartial Tribunal—which consists of two (2) party-appointed arbitrators and a chair who was appointed through an agreed to rank-and-strike process—provided the parties with multiple and ample opportunities to be heard, including, but not limited to, multiple submissions totaling hundreds of pages of briefing and six (6) days of hearings and argument.  And Respondents' renewed efforts to disqualify the Tribunal at the

---

[14]    The FAA "permits vacatur of an arbitration award under four ***narrow circumstances***: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  *Miller v. UBS Fin. Servs. Inc.*, No. 18-CV-8415, 2019 WL 1988527, at *2 (S.D.N.Y. May 6, 2019) (emphasis added); *see also* 9 U.S.C. § 10 (setting forth the narrow grounds for vacatur).  None of these narrow circumstances apply to the 5PFA.

beginning of Phase 2 were—yet again—soundly and thoroughly rejected by the ICDR.  In sum, the process that culminated in the 5PFA was both robust and incredibly fair to both sides.  *See Telecom Bus. Sol., LLC*, 2024 WL 446016, at *4 (finding the process leading up to the 1PFA was fundamentally fair, which "requires only that the arbitrator 'give each of the parties to the dispute an adequate opportunity to present its evidence and argument'" (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

Moreover, even if this Court were to somehow disagree with the Tribunal's factual findings or interpretation of the governing contracts, that is insufficient to overturn the 5PFA.  Specifically, under established Second Circuit law, "the mere fact that an arbitrator erroneously decides the facts is not a ground for vacating [an] [arbitration] award."  *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 687 (2d Cir. 1996); *see also Application of Ballabon v. Straight Path IP Group, Inc.*, No. 15cv5016 (DLC), 2015 WL 6965162, at *9 (S.D.N.Y. Nov. 10, 2015) ("An arbitrator's factual findings are generally not open to judicial challenge, and a court accepts the facts as the arbitrator found them" because, "[a]fter all, it is the arbitrator's view of the facts that the parties [] agreed to accept.").  Similarly, in rejecting Respondents' appeal of this Court's judgment confirming the 1PFA, the Second Circuit already found, "[t]he district court correctly deferred to the panel's interpretation of the parties' contract."  *Telecom Bus. Sol., LLC*, 2024 WL 446016, at *5 (citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("An arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.").  Accordingly, there is no basis to deny confirmation of the 5PFA.

## B.     The 5PFA Should Be Confirmed Pursuant to the New York Convention

This Court should confirm the 5PFA pursuant to the New York Convention as well. Chapter 2 of the FAA, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as

commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature. *Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*, 19-CV-5904, 2019 WL 5884558, at *3 (S.D.N.Y. Nov. 8, 2019); *see also* 9 U.S.C. § 202. The New York Convention governs arbitration agreements involving at least one foreign party. *Farrell v. Subway Intern., B.V.*, No. 11 Civ. 08, 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011). Under the New York Convention, like the FAA, "an arbitrator's decision is given 'substantial deference,' and an arbitrator must simply provide a '[barely] colorable justification' for the outcome reached." *Superior Energy Servs. Columbia S.A.S. v. Premium Petroleum Servs. S. de R.L.*, 18-CV-7704, 2019 WL 2717692, at *2 (S.D.N.Y. June 28, 2019) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

The 5PFA should be confirmed pursuant to the New York Convention. ***First***, the United States District Court for the Southern District of Florida has already found that the arbitration provision in the Shareholders Agreement unequivocally "falls under the New York Convention," a fact that the court noted Terra did not dispute in that action or when the Disqualification Proceeding and the Stay Proceeding were removed to this Court pursuant to the Convention. *See Terra Towers Corp. v. Gelber Schachter & Greenberg, P.A.*, Case No. 1:22-cv-06150-LAK, ECF No. 66 at p. 4. ***Second***, because the 5PFA was issued on March 24, 2025, the Petition is being filed well within the three-year limit to confirm arbitration awards falling under the New York Convention. *See* 9 U.S.C. § 207. ***Third***, none "of the [seven] grounds for refusal or deferral of recognition of enforcement of the award specified in" the New York Convention apply, *id.*,[15] and,

---

[15] The defenses enumerated in the New York Convention are: (i) "the parties to the arbitration agreement lacked capacity or the agreement was not legally valid;" (ii) "proper notice of the appointment of the arbitrator or of the arbitration proceeding was not given;" (iii) the award "deals with a matter not submitted to arbitration or beyond the scope of the submission;" (iv) "the arbitral authority or procedure was not agreed to by the parties;" and (v) "the award was not yet binding or had been set aside or suspended in the enforcement forum" and a "court may also refuse to confirm an award if the subject matter of the difference is not capable of settlement by arbitration or recognition or enforcement of the award would be contrary to the public policy of the forum where enforcement is sought." *STX*

as noted above, there is no valid basis to vacate, modify, or correct the 5PFA pursuant to the FAA.
*See* 9 U.S.C. §10.[16]

       **Fourth**, there is far more than a "barely colorable justification" for the 5PFA.  *See, e.g.*, *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16 Civ. 9001, 2021 WL 1089982 at \*4 (S.D.N.Y. Mar. 22, 2021) (granting a motion to confirm pursuant to the New York Convention because there was "substantially more" than "a barely colorable justification for the outcome reached").  The 5PFA is supported by the robust factual record established in the Arbitration, as detailed in the Petition and 5PFA itself, as well as by the Commercial Rules, by which the parties unequivocally agreed to be bound, and New York law.[17]

---

*Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carries Ltd.*, No. 12 Civ. 5388, 2013 WL 1385017, at \*2 n.3 (S.D.N.Y. Mar. 14, 2012) (citing *Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukr.*, 311 F.3d 488, 494 (2d Cir. 2002) and N.Y. Conv., art. V).  None of these defenses apply to the 5PFA.

[16]  The Second Circuit "has held that Chapter 1 of the FAA and all of its grounds, express and implied, for modification and vacatur apply under the [New York] Convention where, as in this case, the award was rendered in the United States or pursuant to United States law."  *Phoenix Bulk Carries (BVI) Ltd. v. Triorient LLC*, No. 20-cv-936, 2020 WL 4288031, at \*3 (S.D.N.Y. July 26, 2020).  As noted above, the FAA only permits vacatur in *narrow circumstances*, none of which apply to the 5PFA.

[17]  The Court should join Hernández as a respondent in this action pursuant to its authority under Federal Rules of Civil Procedure 19, 20, and/or 21, because the 5PFA holds that he is jointly and severally liable for the damages awarded to Peppertree/AMLQ, Petitioners seek confirmation of the entire 5PFA, and the Court therefore cannot accord complete relief among the existing parties without his presence. *See* Fed. R. Civ. P. 19 ("[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest"); Fed. R. Civ. P. 20 ("Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also Securities America, Inc. v. Smith*, 1:24-cv-00126, 2024 WL 4025873, at \*3-4 (N.D.N.Y. Sept. 3, 2024) (finding that "Additional Petitioners" were necessary parties under Rule 19 because "the Award before the Court indicates that Additional Petitioners are liable for 90% of the damages awarded to Respondent, while Petitioner is liable for the remaining 10%"; Respondent seeks confirmation of the entire arbitration award; and, thus, the Court "'cannot accord complete relief among the existing parties,' without the presence of Additional Petitioners"); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 251, 254 (S.D.N.Y. 1989) (adding new defendants under Rule 20 and enjoining them from prosecuting certain litigation); *Parrella v. Orange Rabbit, Inc.*, 2021 WL 4462809, at \*5 (S.D.N.Y. Sept. 29, 2021), *appeal dismissed*, 2022 WL 1310736 (2d Cir. Feb. 24, 2022) (joining arbitration party to arbitration confirmation proceeding to ensure that all relevant parties were bound by confirmation order); *Arias-Agramonte v. C.I.R.*, No. 00 CIV. 2412, 2000 WL 1617999, at \*4 (S.D.N.Y. Oct. 30, 2000) ("Rule 21 allows a district

IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant the Petition as soon as possible, and confirm the Tribunal's 5PFA under both the FAA and the New York Convention.

Dated:  March 27, 2025                              Respectfully submitted,

By:  */s/ Michael N. Ungar*                         By:  */s/ Gregg L. Weiner*
Michael N. Ungar                                    Gregg L. Weiner
(admitted *pro hac vice*)                           Andrew S. Todres
Katherine M. Poldneff                               Ethan Fitzgerald
**UB GREENSFELDER LLP**                             **ROPES & GRAY LLP**
1660 West 2nd Street, Suite 1100                    1211 Avenue of the Americas
Cleveland, Ohio 44113-1406                          New York, New York 10036-8704
Phone: (216) 583-7000                               Phone: (212) 596-9000
Fax:    (216) 583-7001                              Fax:    (212) 596-9090
mungar@ubglaw.com                                   gregg.weiner@ropesgray.com
kpoldneff@ubglaw.com                                andrew.todres@ropesgray.com
                                                    ethan.fitzgerald@ropesgray.com

David A. Landman
**UB GREENSFELDER LLP**                             Daniel V. Ward
1700 Broadway, Suite 1802                           (admitted *pro hac vice*)
New York, New York 10019-7710                       **ROPES & GRAY LLP**
Phone: (917) 262-0470                               Prudential Tower
Fax:    (917) 262-0480                              800 Boylston Street
dlandman@ubglaw.com                                 Boston, Massachusetts 02199-3600
                                                    Phone: (617) 951-7000
*Counsel for Petitioners Telecom Business*          Fax:    (617) 951-7050
*Solution, LLC and LATAM Towers, LLC*               daniel.ward@ropesgray.com

                                                    *Counsel for Petitioner AMLQ Holdings*
                                                    *(Cay), Ltd.*

---

court to add a party 'at any stage of the action and on such terms as are just,' in the court's discretion. [Here], justice requires that the Attorney General be added as a second respondent.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on March 27, 2025.

Notice of this filing will be sent to all counsel of record through the Court's electronic notice

system.

*/s/ Gregg L. Weiner*     
*Counsel for AMLQ Holdings (Cay), Ltd.*
