May 9, 2025

Gregg L. Weiner                              Michael N. Ungar
Ropes & Gray LLP                             UB Greensfelder LLP
1211 Avenue of the Americas                  1660 W. 2nd Street, Ste. 1100
New York, NY 10036                           Cleveland, Ohio 44113

**BY CM/ECF & HAND DELIVERY**

The Honorable Lewis A. Kaplan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    ***Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.,***
       No. 22-cv-01761[1]

Your Honor:

        Pursuant to the Court's May 6, 2025 order (ECF No. 300), we write in opposition to the relief requested by Magali Merino Ascarrunz and Alejandro Garzaro Perez (together, the "Peru Contemnors"), purporting to act on behalf of the Company's subsidiaries in Peru in their May 5, 2025 letter (ECF No. 298, the "Peru Letter"), and by Terra/DTH in their May 5, 2025 letter (ECF No. 299, the "Terra/DTH Letter" and, together with the Peru Letter, the "Letters"), regarding their failure to comply with this Court's Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies (ECF No. 295, the "Order").[2]  The Letters are nothing more than the latest "vexatious and inappropriate" attempt to delay and avoid compliance with the Court's orders.  ECF No. 233.

                                            ***

        Compliance with the Court's Order should not have been difficult.  Among other things, by May 5, 2025, Respondents were required to cause the termination of the improper proceedings

---

[1] As the Court knows, we represent petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ") in the above-captioned action.  This action arises from an arbitration administered by the International Centre for Dispute Resolution of the American Arbitration Association captioned *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration") and presided over by a panel of three highly qualified and experienced arbitrators (the "Tribunal"). The Arbitration is pending among Peppertree/AMLQ, Continental Towers LATAM Holdings Limited (the "Company"), and respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), respondent and Terra affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH"), Terra/DTH's controller Jorge Hernandez ("Hernandez" and together with Terra/DTH, the "Respondents").  Terra is the majority shareholder of the Company together with minority shareholders Peppertree and AMLQ.

[2] Unless otherwise noted, all defined terms used herein shall have the same meaning as in the Order.

that **they had unilaterally initiated** in the BVI and El Salvador and vacatur of any relief they obtained in those proceedings, and Jorge Hernandez was required to sign an affidavit attesting to the efforts undertaken to terminate those proceedings. **Neither** has happened. The proceedings have not been terminated. In lieu of compliance, Respondents appear to have once again taken ineffectual half-measures, feigning attempted compliance to avoid sanctions, without taking the actual steps needed to terminate the proceedings. And Hernandez—in an **unsigned, unsworn** declaration that he did not even purport to give under penalty of perjury as required by 28 U.S.C. § 1746—again seeks to distance himself from any responsibility for compliance based on the phony claim that he does not own Terra/DTH, while not actually disputing that has the ability to control and direct the actions of their subsidiaries and agents, who have *de facto* control the Company's operations. This is the same fiction that Respondents have proffered before, which both this Court and the Tribunal have rejected time and time again. The Peru Contemnors likewise seek to further perpetuate this fiction, filing their own request for an extension to seek reconsideration of the Order, pretending as though they are somehow acting independently of Hernandez and Terra/DTH, and claiming that they were not on notice of the Order until six days after it was issued.

In short, the Letters are an effort, engineered by Hernandez, to try to avoid compliance and avoid sanctions, premised on another phony claim of alleged good faith, and denial of responsibility, power, or control. There is no basis to reconsider the Order or stay enforcement of its sanctions. Far from being "unnecessary" (Terra/DTH Ltr. at 1), enforcement of the sanctions is critical. Without severe sanctions, Hernandez will never comply, and he will continue to direct those on his payroll to follow suit. The delay tactics of Hernandez and his agents, described herein, should not be viewed in isolation; rather, they are part of a four-year saga of continuous improper behavior and disregard of this Court's orders, which has inflicted significant harm on Peppertree/AMLQ and the Company, as recognized in the Order itself and the 5PFA. Accordingly, the Peru Contemnors' last-minute request for a stay of their obligation to comply and an extension of time to seek reconsideration, and Respondents' request for a stay of the sanctions for civil contempt, should be rejected. The Court should enforce the sanctions it already ordered, and consider issuing the additional "more onerous" sanctions contemplated by the Order. Order at 43.

## I.    There is No Basis to Delay the Effect of the Court's Order

Nowhere in the Letters do Terra/DTH or the Peru Contemnors claim they have complied with the Order by terminating the El Salvador Action or the BVI Actions. Nevertheless, the Peru Contemnors waited until the last minute to ask the Court to extend the deadline for them to file a motion for reconsideration of the Order and stay the Order as to themselves entirely once they do so (*see* Peru Ltr. at 2), and Terra/DTH ask that the sanctions in the Order not take effect for another 14 days. *See* Terra/DTH Ltr. at 1. The Court should reject this obvious attempt to make an end-run around the Order and further undermine the Court's judgments.

Terra/DTH's claim that they "have undertaken good faith steps to purge the finding of contempt" (*id.*), is not even supported by the evidence they filed with their Letter, let alone any credible evidence in light of their years of openly flouting the directives of the Tribunal and this Court that culminated in the Order and the 5PFA. Terra/DTH assert that they "began efforts to

comply" by "propos[ing] resolutions . . . that direct the dismissal of the El Salvador Action and the vacatur of the relief granted in the BVI Actions" at *the Company* level, adopting such resolutions as revised by Peppertree, and sending them "to the relevant individuals and entities." *Id.* But nothing in this Court's Order directs the Company or board members appointed by Peppertree to take any action. Respondents' suggestion that Company board resolutions are a pre-requisite to termination of the El Salvador Action and the BVI Actions is nonsense, as those proceedings were initiated without the authorization of the Company's board, in violation of the Company's governing documents. *See* ECF No. 245-1 § 4.04(a)(viii). Indeed, Respondents' attempt to somehow shift the onus of complying with the Order onto Peppertree and the Company is contrary to the purpose of the Order itself. As a result, the Court should reject Terra/DTH's board resolution charade.

Even if action by the Company was required to terminate the proceedings (it is not), Terra/DTH offer no excuse for why they waited until the eve of the Court's May 5 deadline to propose board resolutions. *See* Ex. 4 (Terra proposed board resolutions on May 3).[3] Nor do Terra/DTH offer any explanation as to how their actions have actually done anything to cause the termination of the El Salvador Action or the BVI Actions. They claim that "Ms. Granillo has replied that she will undertake the steps to dismiss the El Salvador Action," without describing what those steps are, or making any such representations with respect to the El Salvador-Related BVI Action. Terra/DTH Ltr. at 1 (citing ECF No. 299-1). Similarly, they offer no evidence whatsoever to support their claim that "Continental Towers El Salvador has submitted a request to dismiss the El Salvador Action." *Id.* For his part, Hernandez hollowly asserts that he "do[es] not control the actions of Ms. Granillo, who is [purportedly] an employee of Continental Towers El Salvador, Ltda. [and] not an employee of DT Holdings or its subsidiaries." ECF No. 299-3 ¶ 8; *see also* Section II, *infra*. Contrary to this self-serving assertion, the Company has no employees and, as the Tribunal has determined, the "Company Subsidiary Managers [including Granillo, Ortiz, Merino, and Garzaro] have multiple roles at DTH, working on Tower development and operations both for Company-adopted Tower projects and for non-Company Tower projects. Thus, as a practical matter and in day-to-day operations, the Company Subsidiary Managers throughout the territory, including in Peru and in Guatemala, work for Mr. Hernandez." ECF No. 263-4 (3PFA) ¶ 4.[4]

So too with the Peru Contemnors. All Terra/DTH can say to their credit is that they "have indicated their intent to comply." Terra/DTH Ltr. at 1-2 (citing ECF No. 299-2). Yet, Terra/DTH make no attempt to square this representation to the Court with the fact that the Peru Contemnors have indicated to this Court their intent to move for reconsideration of the Order and request that they be relieved of their obligations under it in the meantime. *See generally* Peru Ltr. Indeed, the

---

[3] Citations to "Ex." refer to exhibits to the declaration of Gregg L. Weiner being filed herewith.

[4] The Company contracted with Terra's affiliate, DTH, to provide management services to the Company and its subsidiaries. *See* ECF No. 272-2 (Development Agreement) § 1.1(f) (requiring that DTH will provide services to the Company including "bookkeeping, marketing/leasing and related Site visits"). Therefore, DTH employees, agents, or contractors serve as the Company's management team and provide these services to the Company. By claiming that Granillo, Ortiz, Merino, and Garzaro are purported "employees" of Company subsidiaries and disclaiming any knowledge of their roles (even though Hernandez was a Director of the Company), Hernandez again attempts to improperly undo binding factual findings that have already been made in the Arbitration in connection with the 3PFA.

evidence of the Peru Contemnors' "intent" offered by Terra/DTH only further evidences their gamesmanship and bad faith. While claiming to act in "good faith and clear willingness . . . to collaborate and comply," the Peru Contemnors assert that ***Peppertree and the Company*** should be the ones to seek vacatur of the orders in the Peru-Related BVI Action. ECF No. 299-2 at 2. And they make this assertion purportedly based on advice from "the leading BVI law firm, Walkers," that was not rendered until May 5 (*id.* at 1), the day compliance with the Order was due, even though Walkers is of course the same firm that filed both of the BVI Actions, ***without any input or approval by either the Company or the Peppertree-appointed Directors***. *See* ECF Nos. 245-21, 245-22. Peppertree/AMLQ's BVI counsel has since contacted Walkers directly to demand that they terminate the BVI Actions and vacate any relief granted therein, explaining that Walker's purported advice that Peppertree and the Company are best-positioned to accomplish this is incorrect as a matter of BVI law. *See* Ex. 7.

Moreover, far from being in good faith, the Peru Contemnors' purported offer to comply is conditioned on the Company's directors (including those appointed by Peppertree) agreeing that the Peru Contemnors "are and will remain free of any potential past, present, or future liability of any kind" (ECF No. 299-2 at 2), even though this Court has already determined that they are subject to monetary sanctions for contempt of its judgments. Tellingly, even since the Letters were filed, Terra's appointees to the Company's board have continued to assert that the underlying Peru Arbitration is a valid means for the Peru Contemnors "to fulfill their fiduciary duties of developing business opportunities to enhance the company's value." *See* Ex. 5.

In sum, Respondents had fourteen days to withdraw the BVI Actions and the El Salvador Action. They did nothing until this Court's deadline was upon them. And then they took the unnecessary and ineffective actions described herein.. Accordingly, Terra/DTH's "efforts" at compliance are highly distinguishable from those that justified suspending sanctions in the primary authority they cite, in which the Court found it was "not unreasonable" that a contemnor took nine days to "locate all possible accounts and submit authorizations to produce records" in response to two subpoenas. *In re Various Grand Jury Subpoenas*, 2017 WL 564676, at *3 (S.D.N.Y. Feb. 13, 2017).[5]

Finally, granting the relief requested in the Letters would also serve to undermine this Court's directive that the sale process of the Company commence no later than June 9, 2025, which is Hernandez's ultimate goal. *See* Order at 46 ¶ 4.1. Allowing the continued pendency of the BVI Actions and the El Salvador Action will continue to impair and impede the prospects of a sale, as has already been found. *See id.* at 21, 27-28, 41.

---

[5] *Cf.* Order at 19 ("The TPFA provides that 'whereas the Tribunal has determined that Respondents have full capacity to bring about the termination of the Foreign Arbitrations, they shall not present in any forum as an excuse for noncompliance with this Award that their efforts to bring about termination of the Foreign Arbitrations were appropriate but unsuccessful.' That is exactly what Respondents have done here.") (cleaned up).

## II.    Hernandez's Unsworn Declaration Fails to Comply with the Order, and Hernandez's Attempt to Evade the Court's Jurisdiction Should Be Rejected

Respondents have also failed to comply with the Order's requirement that they submit an affidavit from Hernandez stating the measures taken to effectuate the termination of the El Salvador Action and BVI Actions and the vacatur of any relief granted therein.  *See* Order at 47-48, ¶¶ 5.2, 6.2.  To begin, instead of submitting an affidavit as required by the Order, Respondents purportedly submitted a declaration, supposedly in order to avoid "certain apostille obligations." Terra/DTH Ltr. at 3.  Not only did Hernandez have more than enough time to file an affidavit, but his non-compliant alternative declaration is patently deficient.  Notably, Hernandez does not swear to the truth of his statement, and despite citing 28 U.S.C. §1746 for "unsworn declarations," did not include the statutory language stating that his declaration is "true and correct under penalty of perjury."

In his "declaration," Hernandez also parrots the fictions that have been previously rejected by this Court.  First, he claims not to "own" Terra/DTH, which this Court and the Tribunal have rejected time and time again (though he tellingly stops short of denying "control" over them).  *See* Order at 40; ECF No. 245-3 ¶ 13 (Hernandez testimony that his "family is the ultimate owner of DT[H] and the ultimate decisionmaker for all of the DT[H] companies"); *see also* ECF No. 245-6 (3PFA) ¶ 57; ECF No. 124 (1PFA Judgment), n. 6 ("DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernández"); ECF No. 245-6 (2PFA) at ¶ 40, subparagraph 7 (the "undisputed evidentiary record in this case [shows] that a single individual, Jorge Hernández, controls DTH and each of its individual-country DTH affiliates . . . .")).  Second, Hernandez claims that Granillo, Ortiz, Merino, and Garzaro are not DTH employees.  *See* ECF No. 299-3 ¶¶ 8-9, 11. But even if these contemnors are not formally employed by DTH, that does not mean they do not have contractor or other agency relationships with DTH, which Hernandez notably does not deny. *See* ECF No. 245-6 ¶ 3 (explaining the Company's subsidiaries are managed by the "employees *and contractors*" of DTH affiliates) (emphasis added).

Hernandez also contests the Court's jurisdiction over him and previews the motion to quash the service made on him that he has now made.  (*See* ECF Nos. 299-3 ¶ 5; 301-02 (the "Motion to Quash").  But Hernandez does not contest (nor could he) that he has notice of the Order, which is all that is needed to find him in contempt.  *See* Order at 38.  This assertion is therefore not only irrelevant, but it is wrong, and displays the further gamesmanship Hernandez is engaging in, and will continue to engage in, to avoid the consequences of his actions.  Indeed, the Motion to Quash was filed on behalf of Mr. Hernandez by the same counsel representing Terra/DTH in this action and representing all Respondents in the Arbitration, even though, for *weeks*, Respondents' counsel refused to confirm whether they represent Hernandez in this action or accept service on his behalf. *See* Exs. 1-3.  The Court should not countenance such continued improper bad faith conduct. Peppertree/AMLQ reserve all rights to oppose the Motion to Quash and to serve Hernandez via alternative means if necessary, even though service has been properly effected upon Hernandez under the governing rules.[6]

---

[6] Evading service on Hernandez is just one of several bad faith strategies Respondents are employing in an attempt to avoid liability and the judgments of this Court.  For example, when Peppertree/AMLQ served Terra/DTH and

### III.    The Peru Contemnors Should Not be Permitted to Seek Reconsideration of the Order or an Extension of Time to Seek Reconsideration

Nothing about the Court's unambiguous Order merits reconsideration, let alone a stay of enforcement.  Yet the Peru Contemnors ask for both, with their only basis for doing so being their counsel's late entry to proceedings that have now been ongoing for over four years (and in which Respondents have had a revolving door of different counsel).  *See* Peru Ltr. at 2-3.  As an initial matter, their claim that they received notice of the Order six days after it was issued is not credible given that they are transparently being directed and orchestrated by Hernandez, and in any case is not a basis for an extension of time to move for reconsideration, which they have had ample time to do.  The Court properly found that the BVI Contemnors (including the Peru Contemnors), "by initiating and maintaining the BVI Actions, committed and continue to [commit] contempt of" the Court's 3PFA Judgment.  Accordingly, the Court ***already gave*** Respondents and their agents a 14 day-long last chance to comply with their obligations under that judgment.  ECF No. 295 at 48 ¶¶ 6.1, 6.2.  The Peru Contemnors have done nothing to comply.  *See* Section I, *supra*.  And they make no attempt to justify a stay of their obligations to comply with the Order, or explain any reason why the Court should reconsider its decision.

### IV.    Conclusion

For these reasons, Peppertree/AMLQ respectfully request that the Court deny the relief requested in the Letters and enforce the sanctions in the Order.

Respectfully submitted,


*/s/ Gregg L. Weiner*                                      */s/ Michael N. Ungar*
Gregg L. Weiner                                            Michael N. Ungar

*Counsel for AMLQ Holdings (Cay), Ltd.*      *Counsel for Telecom Business Solution, LLC and LATAM Towers, LLC*

---

Hernandez with discovery requests in aid of execution of the Court's monetary judgments, Respondents' counsel requested, and was granted, an extension of the deadline to respond on behalf of Terra/DTH (while refusing to accept service on behalf of Hernandez).  *See* Ex. 3.  But instead of providing timely responses to the requests, Respondents tried to side-step their obligation to respond or face additional contempt sanctions by making a half-baked, non-monetary offer to satisfy the relatively nominal monetary judgments—an offer that Peppertree/AMLQ rejected, yet the information requests remain unanswered.  *See* Ex. 6.  Peppertree/AMLQ reserve all rights to seek further relief from the Court as needed to address these ploys, including holding Respondents in contempt of their discovery obligations.