

PRYOR CASHMAN LLP                                   New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806          pryorcashman.com

**James S. O'Brien**

Direct Tel: 212-326-0121
Direct Fax: 212-326-0806
JO'Brien@pryorcashman.com

May 12, 2025

<u>**VIA ECF**</u>

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> **Re:** ***Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.,***
> <u>**Case No.: 1:22-cv-01761**</u>

Your Honor:

We represent non-parties Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Alejandro Garzaro Perez (the "Peru Non-Parties"). We write in reply to Petitioners Peppertree[1] and AMLQ's[2] opposition (ECF No. 305, the "Peppertree/AMLQ Letter" or the "Opposition Letter") to the Peru Non-Parties' request (ECF No. 298, the "Peru Non-Parties Extension Request") to a short extension of the deadline: (i) to seek reconsideration of the Court's Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies (ECF No. 295, the "Injunction"), and (ii) for compliance with paragraph 6 of the Injunction.[3]

The Peppertree/AMLQ Letter is a blatant attempt to litigate prematurely the Peru Non-Parties' request for reconsideration and to taint the Court's consideration of their extension request, which is based on exigent circumstances. Specifically, the Peppertree/AMLQ Letter preemptively tries to poison the Court's perception of the Peru Non-Parties through unsupported allegations and innuendo, and by misleadingly showing an incomplete record of the recent exchanges concerning

---

[1] "Peppertree" refers collectively to petitioners Telecom Business Solution, LLC and LATAM Towers, LLC.

[2] "AMLQ" refers to petitioner AMLQ Holdings (Cay), Ltd.

[3] By filing this Reply to the Peppertree/AMLQ Letter, the Peru Non-Parties do not submit themselves to the jurisdiction of this Court and expressly reserve all available defenses, including but not limited to challenges to the Court's jurisdiction. This Reply is not intended to, and does not, constitute a waiver of any defense or objection available to the Peru Non-Parties.



the Peru-Related BVI Proceeding and Peppertree's role in it.[4]

## I.    The Exigent Circumstances Faced By The Peru Non-Parties Warrant The Extension.

The Peru Non-Parties, as such, did not immediately receive notice of the Injunction.  They did not learn of it until Monday, April 28, 2025, only eight (8) days before compliance therewith was due.

When they learned of the Injunction, the Peru Non-Parties did not have counsel in the United States since they have not been parties to the above-captioned action (or any action or dispute seated in the United States).  Due to the serious matters described in the Injunction that refer to and address them directly, the Peru Non-Parties immediately sought to retain counsel.  That process was not automatic, and much less so when trying to do so in a foreign country with a different legal culture.  Ultimately, they were able to retain the Florida firm of Shutts & Bowen LLP, mid-afternoon on May 1, 2025, and we were retained mid-afternoon on May 2, 2025.  That is, the Peru Non-Parties were able to secure legal representation just three (3) days before compliance with the Injunction was due.

The docket contains in excess of 300 entries, with the majority of the relevant pleadings sealed and available only to counsel for the parties of record.  As such, the Peru Non-Parties have not been able to obtain copies of a number of the papers on which the Court based its Injunction, but not all, since they are sealed, and have not been able to view the papers filed in connection with the pending extension motions.

Peppertree and AMLQ allege that it "is not credible" that the Peru Non-Parties received notice of the Injunction almost a week after its issuance.  But, other than the Petitioners' beliefs, they offer nothing substantive to discredit that affirmation.  Peppertree and AMLQ's allegations are mere speculation as evidenced by the fact that Peppertree itself, on May 5, 2025, sent a threatening letter to all of the alleged contemnors identified in the Injunction, including the Peru Non-Parties, purporting to notify them.  *See* Ex. 1, Letter from the Directors of Continental Towers LATAM Holdings Limited (the "Company") appointed by Peppertree.  What is not credible is Peppertree and AMLQ's supposition that the Peru Non-Parties knew immediately about the Injunction when it was issued on April 22, despite purporting to give them notice of it on May 5, fourteen days later.  Peppertree's May 5 letter can only be explained if Peppertree believed that the recipients, including the Peru Non-Parties, did not learn about the Injunction on April 22 or shortly thereafter.

---

[4] The Peru-Related BVI Proceeding refers to Case No. BVIHCOM2024/0577, filed before the Eastern Caribbean Supreme Court in the High Court of Justice, Commercial Division, British Virgin Islands (the "BVI Court"), under the title *Telecom Business Solutions S.R.L. et al. v. Continental Towers Holding Corp., et al.*

PRYOR CASHMAN LLP

The Honorable Lewis A. Kaplan
May 12, 2025
Page 3

Similarly, Peppertree and AMLQ ignore the fact that the Peru Non-Parties just retained counsel (which they actually do not dispute), or the fact that the Peru Non-Parties and their recently retained counsel do not have access to the full record (which they also do not dispute). Rather, Peppertree and AMLQ allege that the proceedings at issue before the Court have been ongoing for over four years and that "Respondents"[5] have had "a revolving door of different counsel." The Peru Non-Parties, however, are by definition not parties and, consequently, are not privy to those lengthy proceedings. Respondents' counsel, however many they have had, represent only Respondents, not the Peru Non-Parties. The Peru Non-Parties are not changing counsel. This is the first time they have hired counsel in the United States to represent them.

As it will be further explained in the Peru Non-Parties' motion for reconsideration, the Peru Non-Parties are not "being directed and orchestrated by [Jorge] Hernandez" as the Peppertree/AMLQ Letter claims. Mrs. Magali Merino Ascarrunz and Mr. Alejandro Garzaro Perez (the "Peru Individual Non-Parties") are not Respondents' "agents," do not "work for Mr. Hernandez," and are not "DTH Managers" as Petitioners have alleged. The Peru Non-Parties, including the Peru Individual Non-Parties, will present the merits of their full position on this in their motion for reconsideration, but for purposes of this reply, in short, they have nothing to do with any action engaged or prosecuted by entities or persons in New York, Guatemala, El Salvador, or any other place other than Peru. No court or tribunal in proceedings in which the Peru Non-Parties, Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Marino Ascarrunz, and Alejandro Garzaro Perez, have been a party has ever made those findings.

The Peru Non-Parties, including the Peru Individual Non-Parties, are independent from Mr. Hernandez and the Respondents. Mrs. Merino and Mr. Garzaro are employed, and paid, by Telecom Business Solution S.R.L. *See* Ex. 2, Peru Individual Non-Parties' Employment Agreements. They hold positions solely at Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., and Collocation Technologies Peru, S.R.L. (the "Peru Corporate Non-Parties") and represent only their interests.[6]

II.    **Peppertree Fails To Provide A Complete Record Concerning The Peru-Related BVI Proceeding And Peppertree's Role In It.**

Peppertree/AMLQ loosely use in their Opposition Letter accusatory words towards the Peru Non-Parties that, as noted before, are not only unfounded, but also actually describe their own conduct. Peppertree cries wolf of "gamesmanship and bad faith," when Peppertree itself fails to disclose to the Court the complete record of the recent exchanges concerning the Peru-Related

---

[5] "Respondents" refers collectively to Terra Towers Corp., TBS Management, S.A., and DT Holdings, Inc.

[6] Indeed, the Employment Agreements identify as one of their key premises that Mrs. Merino and Mr. Garzaro have initiated actions solely to defend the interests of Telecom Business Solution S.R.L. *See* Ex. 2, p. 2.

**PRYOR CASHMAN LLP**

The Honorable Lewis A. Kaplan
May 12, 2025
Page 4


BVI Proceeding.  The truth of the matter is that Peppertree apparently would prefer for the Peru-Related BVI Proceeding to keep "being an issue" to hammer before this Court.

The Peru Non-Parties already have expressed to the Company three times their willingness to find ways to effectuate the Company's request and their intent to vacate, dismiss, terminate and/or withdraw the Peru-Related BVI Proceeding, and have acted consistent with those statements.  *See* Ex. 3, Peru Non-Parties' May 4 Letter; Ex. 4, Peru Non-Parties' May 5 Letter; and Ex. 5, Peru Non-Parties' May 8 Letter.  The Peru Non-Parties contacted the well-known BVI law firm of Walkers to consult regarding what steps could be taken to effectuate the Company's request.  *Id*.  The Peru Non-Parties communicated to the Company's Board the outcome of their consultations and twice sought confirmation how to proceed given the options available under BVI law.  *Id*.

Peppertree, in turn, delayed its confirmation of, and agreement to, a proposed written resolution of the Board of Directors of the Company requesting that the Peru-Related BVI Proceeding be vacated, dismissed, terminated and/or withdrawn.  Not until the evening of May 5, the date compliance with the Injunction was due, did the Peru Non-Parties receive the Company's Resolution confirming that instruction (the "Board Resolution").  *See* Ex. 6, Board Resolution of May 5 with transmittal email.

Now, as evidenced in its Opposition Letter, Peppertree is rejecting the most expeditious course of action to unwind the Peru-Related BVI Proceeding advised by the Peru Non-Parties' BVI counsel, as provided and supposedly intended in the Resolution.

Walkers has provided a Declaration in support of this reply.  *See* Ex. 7, Walkers Declaration.  Walkers confirms that the BVI Proceeding has concluded.  *Id.*, ¶ 6.  That matter was limited to the recognition, on an *ex parte* basis, of one partial award on jurisdiction and one award on interim relief issued in Peru.  *Id.*, ¶ 5 & 6. The BVI Court recognized the awards (the "Recognition Order"). *Id.*, ¶ 7.  No enforcement relief was sought, and thus, none was adjudicated.  *Id.*, ¶ 6.

Walkers explains that there are three potential courses of action available with varying degrees of viability to seek to set aside the limited Recognition Order, namely: (i) that the applicants, Telecom Business Solution S.R.L., Collocation Technologies Peru S.R.L., Continental Towers Peru S.R.L., Magali Merino Ascarrunz, and Alejandro Garzaro Perez (the "Applicants") seek unilaterally to discharge the Recognition Order; (ii) that the same Applicants seek to appeal the Recognition Order; or, (iii) that the Company be the one applying to set aside the Recognition Order and submitting with the application a consent order that will be joined by the Applicants for the discharge of the Recognition Order.  *Id.*, ¶ 10.

Walkers advises that options (i) and (ii) are not certain to succeed, are not straightforward, and would entail significant expenditure and time.  *Id.*, *generally* ¶ 11-15.  As to option (i), as



The Honorable Lewis A. Kaplan
May 12, 2025
Page 5

noted by Walkers, "if the application is filed with a certificate of urgency, it is possible, but not certain, that the application could be heard before the end of term in July 2025. Otherwise, it is likely the application would come up for hearing in the new term (following the Court's August recess), between September and December 2025." *Id.*, ¶ 13. Option (ii) is no simpler or faster: "The BVI Court of Appeal sits in the Virgin Islands three times in each calendar year. Although the Court will, occasionally, list an appeal for hearing in another member state, it will do so only in the most urgent of cases. Consequently, such an appeal may take many months to be heard and would also involve very considerable expense. It is also not certain to succeed. If the appeal is filed with a certificate of urgency, it is possible, but not certain, that the application could be heard in either the October 2025 or the February/March 2026 session. Otherwise, I anticipate that the appeal would come up for hearing in the June/July 2026 term." *Id.*, ¶ 15.

As to option (iii), meaning application by the Company with consent from the Applicants— the Peru Non-Parties, Walkers outlines how the BVI Court "could issue an order within four weeks of filing" and concludes that "this is not only the most straightforward, expeditious, and cost-effective option, but also is the option most likely to succeed in accomplishing the intent of the Resolution." *Id.*, ¶ 17.

So, when Peppertree/AMLQ reject in their Opposition Letter to "be the ones to seek vacatur of the orders in the Peru-Related BVI Action," that is code for wanting to keep alive the Peru-Related BVI Proceeding. Notably, no mention is made in the Peppertree/AMLQ Opposition Letter of the fact that the Peru Non-Parties offered expressly their concurrence and collaboration: "if option (iii) is your preferred option, we will task Walkers with the preparation of the papers and submit for your consideration. These papers would be joined by the Applicants' consent." *See* Ex. 4, Peru Non-Parties' May 5 Letter.

The same can be said of Peppertree and AMLQ's demands, absent pursuing option (iii), to "terminate the BVI Actions and vacate any relief granted therein." Such statement basically amounts to demanding the Peru Non-Parties to delay compliance with the Board's directive and instead just file "something," *i.e.*, options (i) or (ii) above, with no prospects of success or prompt resolution and with the only possible explanation that Peppertree wants it that way so that the Peru-Related BVI Proceeding remains at issue on the mind of the Court.[7]

---

[7] As expressly stated at the onset of this Reply, the Peru Non-Parties make full reservation of their rights, including to respectfully challenge the Court's jurisdiction as it pertains to them. With that being established, what is clear from the Walkers Declaration is that none of the three possible courses of action to be pursued in the BVI in order to vacate the Recognition Order and implement the Board Resolution, could have been done within the time limits imposed by the Injunction to avoid the coercive sanctions set forth therein. Stated differently, based on the Walkers Declaration, the Injunction does not provide a real and meaningful opportunity for the BVI Contemnors, which includes the Peru Non-Parties, to purge themselves of the alleged contempt, thus further warranting the extension hereby requested for the Peru Non-Parties to seek reconsideration of the Court's Injunction, as well as for compliance with paragraph 6 of the Injunction.

**PRYOR CASHMAN LLP**

The Honorable Lewis A. Kaplan
May 12, 2025
Page 6

\*\*\*

   The Peppertree/AMLQ Opposition Letter confirms the need for the extension by fourteen (14) days of the deadline for the Peru Non-Parties to seek reconsideration of the Court's Injunction, as well as for compliance with paragraph 6 of the Injunction. Upon filing a motion for reconsideration, the Peru Non-Parties will request the Court to stay the effect of the Injunction as against them until the Court has had an opportunity to consider and rule on the motion for reconsideration.

        Sincerely,


        */s/ James S. O'Brien, Jr.*
        James S. O'Brien, Jr.

        *Counsel for Peru Non-Parties, Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Marino Ascarrunz, and Alejandro Garzaro Perez*

cc: Counsel of record (via ECF)
  Aliette D. Rodz, Esq., Shutts & Bowen LLP (via email)
  Eduardo de la Peña Bernal, Esq., Shutts & Bowen LLP (via email)
  Martha M. Ferral, Esq., Shutts & Bowen LLP (via email)