**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

Telecom Business Solution, LLC, *et al.*,

        Petitioners,

   v.

Terra Towers Corp., *et al.*,

        Respondents.

———————————————————————

Civil Action No.: 1:22-cv-01761

Judge Lewis A. Kaplan

Magistrate Judge Robert W. Lehrburger

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE OPPOSITION
TO THE PETITION TO CONFIRM AND MOTION TO VACATE</u>**

1

TABLE OF CONTENTS

INTRODUCTION……………………………………....................................................................3

BACKGROUND.......................................................................................................................5

ANALYSIS ...............................................................................................................................8

I.      The Court should vacate 5PFA because the tribunal exceeded its powers ...................8

        A.    The tribunal exceeded its powers as to the claim for Ongoing Breach and the Torrecom Rejection Breach and the creation of new, equitable relief ....................9

        B.    The tribunal failed to issue a mutual, final, and definite award on damages and the post-sale escrow ....................................................................................................15

        C.    The tribunal manifestly disregarded New York law requiring the interpretation of every word in a contract, requiring vacatur of the damages awarded for the Ongoing Breach Claim ........................................................................................17

II.     The Court should refuse to confirm 5PFA because 5PFA violates Article V(2)(b) (the "public policy exception"), Article V(1)(a) (the incapacity of the claimants), and Article V(1)(b) (lack of due process) ..............................................................19

        A.    5PFA violates the public policy of the United States because it awards double compensation and grants relief for derivative claims that plainly violate applicable law........................................................................................................................19

        B.    Enforcement of 5PFA should be denied because the petitioners, as shareholders of the Company, were under an incapacity to bring a derivative claim ....................22

        C.    The Court should deny enforcement of 5PFA because the tribunal decided to formulate new claims and create new remedies, without prior notice to the parties, leaving the respondents unable to present their case .............................................23

CONCLUSION ..........................................................................................................................29

**TABLE OF AUTHORITIES**

## Cases

*187 Concourse Associates v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) ...................................11

*A&G Coal Corp. v. Integrity Coal Sales, Inc.*, No. 13-2411-cv, 2-3 (2d Cir. May. 9, 2014).........11

*Ahdout v. Hekmatjah CA2/4*, No. B255395, 10 (Cal. Ct. App. Jul 15, 2015) ..............................23

*Angelo Gordon Real Estate Inc. v. Benlab Realty, LLC*, 216 AD.3d 420, 421 (1st Dept 2023) ...19

*Atlantis Information Technology, Gmbh v. Ca, Inc.*, 485 F. Supp. 2d 224, 230 (E.D.N.Y 2007) ..15

*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ...................................26

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, Docket No. 15-1133-cv(L), 37-38 (2d Cir. Jan. 18, 2017)...........................................................................................................................10

*CBF Industria de Gusa S/A, et al. v. AMCI Holdings Inc., et al.*, No. 12-cv-2581, 20-21 (S.D.N.Y. Jan. 13, 2023) ................................................................................................................24

*Corcoran v. Ardra Insurance*, 156 A.D.2d 70, 75-76 (N.Y. App. Div. 1990) ..............................24

*Europcar Italia, S.P.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998) ...........................21

*FCI Group, Inc. v. City of New York*, 54 AD.3d 171, 176 (1st Dept 2008) ..................................19

*Good Samaritan Hospital Medical Center Inc. v. New York State Department of Health*, 45 Misc. 3d 844, 850 (N.Y. Sup. Ct. 2014) .................................................................................................22

*Grant v. County of Erie, Erie County Youth Detention Services*, 542 F. App'x 21 (2d Cir. 2013).26

*In re Marine Pollution Service, Inc.*, 857 F.2d 91, 96 (2d Cir. 1988) ............................................12

*Iran Aircraft Industries and Iran Helicopter Support and Renewal Company v. Avco Corporation*, 980 F.2d 141, 146 (2d Cir. 1992) ..............................................................................26

*Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011)............................................19

*Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708 (2006) .......................................................25

*Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998) ................................................19

*Leeward Constr. Co. v. Am. Univ. of Antigua-College of Med.*, 826 F.3d 634, 640-41 (2d Cir. 2016) ................................................................................................................................................11

*Local 1199, Drug, Hospital, Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ................................................................................................................................11

*Marie Powell v. National Board of Medical Examiners, et al.*, 364 F.3d 79 (2d Cir. 2004)..........26

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976).............................................26

*Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 115 (3d Cir. 1996) .......................................................12

*Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986) ................17

*Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)....................................17

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950) ...................25

*Ozkaptan v. CitiGroup, Inc.*, No. 1:20-cv-00747, 4 (S.D.N.Y. Nov. 6, 2020) ........................21, 23

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (Rakta)*, 508 F.2d 969, 975 (2d Cir. 1974) ........................................................................................................25

*Porzig v. Benson*, 497 F.3d 133, 143 (2d Cir. 2007) .....................................................................19

*Qingdao Free Trade Zone Genius Int'l Trading Co., LTD v. P and S International, Inc.*, No. 3:08-cv-01292, 7 (D. Or. Sep 16, 2009)................................................................................................26

*Rodrigo R. Pagaduan v. Carnival Corporation*, No. 19-3400, 2 (2d Cir. Nov 25, 2020) .............25

*Santiago v. Genting N.Y. LLC*, 2024 NY Slip Op 31365(U) (N.Y. Sup. Ct., New York Cty. 2024) ......................................................................................................................................................19

*Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) ...........................................11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ....................................19

*Telecom Bus. Sol. v. Terra Towers Corp.*, No. 23-144, p. 11 (2d Cir. Feb. 6, 2024).....................17

*The Burlington Insurance Company v. NYC Transit Authority*, 29 N.Y.3d 313, 321 (NY 2017)..14

*The Matter of Viking Pump Inc. and Warren Pumps LLC*, 27 N.Y.3d 244 (NY 2016) ...............20

*Tom Doherty Associates, Inc. D/B/A Tor Books v. Saban Entertainment, Inc., et al.*, 60 F.3d 27 (2d Cir. 1995).................................................................................................................................15

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013) .........................................................................................................................21

*Waehner v. Frost*, 1 Misc. 3d 893, 895 (N.Y. Sup. Ct. 2003) ...................................................22, 23

*Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 110 (2d Cir. 2019) ...........................................................12

*Westinghouse Elec., Etc. v. Intern. Broth*, 561 F.2d 521, 524 (4th Cir. 1977) ...............................12

*Westview Associates v. Guaranty National Insurance*, 95 N.Y.2d 334, 339 (NY 2000) ..............20

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).......10

*Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)........................................................................18

*Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016)................................11

**Statutes**

9 U.S.C. 10(a) .................................................................................................................................11

**Treaties**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards .................10, 23, 25

**Other**

BVI Companies Act .....................................................................................................................23, 24

Commercial Arbitration Rules and Mediation Procedures 2013 .....................................................16

The respondents, Terra Towers Corporation ("Terra"), TBS Management S.A. ("TBS") (collectively, the "Terra Parties"), and DT Holdings Inc. ("DT Holdings"), by and through undersigned counsel, hereby oppose the Petition to Confirm the Fifth Partial Final Award (the "Petition") and move to vacate the Fifth Partial Final Award ("5PFA"), and in support thereof, states as follows:

**INTRODUCTION**

Casting aside its own rulings, 5PFA departed from the parties' submissions in favor of the case the tribunal wanted to see, not the actual arguments before it. 5PFA is not the kind of instrument that should be treated as an award or given effect for the following reasons:

- The tribunal exceeded its powers when it created new breaches of contract, awarded damages that pre-dated those breaches, and changed the "but for" scenario for awarding damages in a way that directly contradicted its own rulings.

- The tribunal exceeded its powers when it formulated new claims for equitable relief, months after informing the parties that no such claims for equitable relief existed and denying discovery on that basis.

- There is no mutual, final, and definite award because the damages calculation is subject to set off from counterclaims that might still exist, fails to apply deductions proved by the respondents, and is subject to an unclear reconciliation and adjustment in the future.

- The tribunal manifestly disregarded New York contract law by finding that a material term was unambiguous "surplusage" that could be disregarded as a matter of "common sense."

- 5PFA violates public policy prohibiting double recovery or allowing for a derivative claim where a shareholder openly refused to follow applicable law.

- By refusing to seek leave from the High Court of BVI, the petitioners were under an incapacity that prevented them from seeking derivative relief.

- The tribunal has rendered 5PFA, which is subject to the respondents' counterclaims and affirmative defenses, while changing the evidentiary rules and conditions necessary to permit the respondents to defend themselves.

6

For these reasons and those stated herein, the respondents respectfully request that the Tribunal vacate 5PFA or refuse to enforce it.

**BACKGROUND**

5PFA comes as a part of Phase 2 of the arbitration proceedings, ostensibly the damages portion of a dispute started in 2021 by the petitioners. The Terra Parties and DT Holdings presume that the Court is familiar with the prior factual history, and they pick up after the issuance of the Third Partial Final Award ("3PFA") and the Fourth Partial Final Award ("4PFA").

On October 11, 2023, the petitioners filed their Amended and Consolidated Statement of Claims (the "Consolidated Claims"). ECF 320, Ex. 1, p. 13. Under the heading "Claims," the Consolidated Claims sought the following:

- Related to the "Sale of Company," damages for breach of contract (Consolidated Claims, p. 85), declaratory relief (*id.*, p. 87), and specific performance. *Id.*, p. 89. The petitioners alleged that there was an offer from another tower company, Torrecom, that the Terra Parties should have accepted. This is the Torrecom Offer referenced below.

- Related to the "Obstruction of the Sale of the Company," damages (*id.*, p. 92).

- Derivative claims related to the "Offset Right" seeking damages  (*id.*, p. 94), declaratory relief (*id.*, p. 95), and specific performance. *Id.*, p. 96.

- Derivative claims for damages related to payment of selling, general, and administrative expenses (the "SG&A Expenses" of USD 480,000 per month payable to DT Holdings) and the construction of towers (the "Towers Claim" of USD 165,000 per tower payable to DT Holdings). *Id.*, p. 98.

- Damages for breaches of fiduciary duty related to the Offset Right, the SG&A Expenses, and the Towers Claim. *Id.*, p. 99.

- Related to collateral litigation and recoupment of various expenses, damages. *Id.*, p. 100, 101, 103, 105, 107, and 109.

- For intentional interference with contract, damages. *Id.*, p. 110.

- For damages suffered by the petitioners and the Company, an accounting. *Id.*, p. 111.

7

There was no claim for injunctive relief of any sort. The petitioners named Jorge Hernandez, Alberto Arzu, Alejandro Sagastume, and William Mendez in their capacities as directors of the Company. *Id.*, p. 19.

There was then further litigation on compliance with the Second Partial Final Award ("2PFA"), 3PFA, and 4PFA. The Terra Parties and DT Holdings had long expressed their concerns about a "squeeze out merger" where the petitioners would acquire the Company at below-market value. *See* Letter dated December 9, 2021, attached as ECF 320, Exhibit 2. In 2PFA, the tribunal stayed the counterclaims brought by the Terra Parties. ECF 94-103, p. 54. The tribunal imposed a number of conditions that, upon being met, would lift the stay. *Id*.

This did not fully resolve how the parties should proceed with Phase 2. After submissions from the parties, the tribunal issued Procedural Order 2024-06. *See* ECF 320, Exhibit 3. It declined to consider the counterclaims or allow document production on them unless they pled a "material breach of the SHA [Shareholders Agreement] *in its entirety* by [the petitioners][.]" ECF 320, Ex. 3, p. 4 (emphasis in original). The tribunal declined to apply some affirmative defenses and limited the defense of unclean hands to a "contractual obligation" of the Terra Parties and DT Holdings that the petitioners seek "to enforce and not to a 'collateral matter.'" *Id.*, p. 6. The tribunal then decided not to consider unclean hands as to the only two equitable claims: accounting and specific performance of the Offset Right. *Id.*, p. 7. The counterclaims were barred as defenses and in information exchange, with the possibility of returning should conditions be met. *Id.*, p. 9. There is no award, partial or otherwise, converting Procedural Order 2024-06 into a final award.

Briefing in preparation for the Phase 2 hearing took place, with hearings scheduled for July 15-18, 2024. On the Friday before the hearing started, July 12, 2024, the tribunal issued

Procedural Order 2024-16, inviting the parties to submit sworn statements and any documents related to certain website articles regarding the arbitration. ECF 320, Ex. 4. The hearing followed that Monday, and the Terra Parties and DT Holdings objected on the record to any expansion beyond the claims submitted in the Consolidated Claims. Day 4 Hearing Transcript, pp. 1546:23 to 1547:13, attached as ECF 320, Ex. 5.The petitioners were quite open that their damages claims related to the sale of the Company were in exchange for their shares. Day 1 Hearing Transcript, pp. 114:16 to 115:21, attached as ECF 320, Ex. 6. To avoid double recovery, the petitioners contended that the damages sought could also be paid from the sale proceeds. *Id*.

The hearing concluded, and as ordered, on July 26, 2024, the Terra Parties and DT Holdings presented witness statements of Alberto Arzú, Alejandro Sagastume, Andrés Porras, Jorge Hernández, Kristha Pineda, and William Mendez. Respondents' Submission dated July 26, 2024, attached as ECF 320, Exhibit 7. The respondents offered these individuals for cross-examination. *See e.g.,* ECF 320, Ex. 7, p. 8. Similarly, the petitioners submitted two sworn statements and the inconclusive results of their investigations. *See* Petitioners' Submission dated July 26, 2024, attached as ECF 320, Exhibit 8. The tribunal asked if any party sought an evidentiary hearing. *See* Email dated August 7, 2024, attached as ECF 320, Exhibit 9. The petitioners declined. Petitioners' Submission dated August 23, 2024, p. 1, attached as ECF 320, Exhibit 10. The Terra Parties and DT Holdings did not object to the tribunal calling these individuals. The tribunal did not take up the offer.

Two rounds of post-hearing briefs followed, with closing arguments in New York on October 9, 2024, continued remotely shortly thereafter.

On March 24, 2025, the parties to the arbitration received an electronic copy of 5PFA. ECF 257, p. 54. March 27, 2025, the petitioners filed their two-count Petition, seeking

confirmation pursuant to the Federal Arbitration Act (the "FAA") and confirmation pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). ECF 257, pp. 62-63. This opposition and motion follows the briefing schedule entered on April 11, 2025. ECF 286.

Mindful of the restraints on challenging arbitral awards, the petitioners will devote these papers to text of 5PFA and the underlying proceedings, instead of engaging in a lengthy recitation of facts. The failure to address a finding in 5PFA should not be construed as agreement but rather a conscious decision to focus on the grounds of review and vacatur available.[1]

ANALYSIS

This District Court is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997), *citing* N.Y. Convention, art. V(1)(e)); *see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, Docket No. 15-1133-cv(L), 37-38 (2d Cir. Jan. 18, 2017). "Parties seeking to enforce arbitration awards through federal-court confirmation judgments may not divest the courts of their statutory and common-law authority to review both the substance of the awards and the arbitral process for compliance with § 10(a) and the manifest disregard standard." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (citations omitted).

---

[1] The motion and opposition are being filed on behalf the company respondents. The petitioners have not effected service on Mr. Hernandez. ECF 308. Undersigned counsel has appeared specially on behalf of Mr. Hernandez only for purposes of contesting service. This filing is not made on Mr. Hernandez's behalf.

I.    **The Court should vacate 5PFA because the tribunal exceeded its powers**

Under the Federal Arbitration Act, a party seeking to vacate an arbitration award must prevail on one of the four grounds in 9 U.S.C. 10(a)(1)-(4). A "judicial gloss" on these grounds exists where an arbitration award may be set aside if it was rendered in "manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted); *A&G Coal Corp. v. Integrity Coal Sales, Inc.*, No. 13-2411-cv, 2-3 (2d Cir. May. 9, 2014).

A.    **The tribunal exceeded its powers as to the claim for Ongoing Breach and the Torrecom Rejection Breach and the creation of new, equitable remedies**

Arbitration is a creature of contract, and the arbitral tribunal's authority is limited by the contract and the questions submitted by the parties to arbitration. *187 Concourse Associates v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005). Arbitrators cannot impose obligations outside the contract. *ATT Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). "The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission." *Local 1199, Drug, Hospital, Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992); *see also Leeward Constr. Co. v. Am. Univ. of Antigua-College of Med.*, 826 F.3d 634, 640-41 (2d Cir. 2016) (requiring that the damages must come from the parties' arguments). As one circuit has reasoned, vacatur is appropriate where the arbitral tribunal decides issues not submitted to it. *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 115 (3d Cir. 1996).

The arbitrators also cannot depart in favor of a concern for equity, which would be little more than the arbitral tribunal's own brand of industrial justice. *In re Marine Pollution Service, Inc.*, 857 F.2d 91, 96 (2d Cir. 1988); *see also Westinghouse Elec., Etc. v. Intern. Broth*, 561 F.2d 521, 524 (4th Cir. 1977) (affirming vacatur for awarding relief not warranted in underlying

agreement). Stated another way, an arbitral tribunal cannot discard the parties' agreement in favor of its own policy preferences. *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 110 (2d Cir. 2019).

As the petitioners have freely admitted, "[m]any of the remedies that came from the arbitrators, frankly, were not suggested by us[.]"[2] This admission is telling. The petitioners submitted numerous amendments to their statement of claim, and the tribunal agreed that there could be no amendment without leave. *See* Respondents' Rebuttal Post-Hearing Brief, p. 3 FN 3, attached as ECF 320, Exhibit 11. There is no argument that leave was sought. 5PFA is a drastic departure from the Consolidated Claims.

      1.    <u>The tribunal exceeded its powers when it identified breaches of contract never claimed by the petitioners, changed the "but for" scenario, and awarded damages that pre-dated the newfound breaches</u>

At the hearing, Petitioners confirmed that they were seeking a damages award against which they would convey their shares in the Company, and the claims arising from the Company sale all related to the potential sale of the Company to Torrecom, a transaction that would have started in 2021. This is the same Torrecom Offer mentioned above. This was the case before the Tribunal, who decided to rule on something completely different.

The tribunal was well aware of the claims. 5PFA goes to great lengths to attempt to characterize its decisions as contained within the Consolidated Claims. ECF 270, Ex. 4, p. 19, ¶ 11. The tribunal was also cognizant of the standard for determining a breach of contract. ECF 270, Ex. 4, p. 45, ¶ 54. The respondents thus believed, rightfully, that they had to show there was no breach of contract in rejecting the Torrecom Offer or that the petitioners had failed to prove any damages flowing from the breach.

---

[2] ECF 293, Hearing Transcript, p. 41:14-15 (Mr. Ungar speaking).

The petitioners also were careful to describe the damages claim as one intimately connected to transfer of the shares. To avoid double recovery, the petitioners clarified that their damages could be paid in exchange for the shares. ECF 320, Ex. 6, pp. 114:16 to 115:21. Their claim was in the alternative to a sale of the Company, not in addition to it. The only exception, as pled by the petitioners, would be a situation where the value of a sale of the Company was lower than 2020. ECF 320, Ex. 1, p. 86. The tribunal did something very different.

Without the petitioners identifying a breach of contract in 2023, 5PFA found that the Ongoing Breach claim had two breaches of contract, both in 2023, not 2021. The claim, as formulated only by the tribunal, identified a breach in 2023 for failing to comply with 1PFA and another breach in 2023 for the Terra Parties' interpretation of 1PFA. ECF 270, pp. 27, 28, ¶¶ 18, 20. The Tribunal went on to change the "but for" used to calculate damages. The "but for" was no longer closing the Torrecom Offer. Rather, the "but for" was the Terra Parties submitting a compliant rejection of the Torrecom Offer. *Id*., p. 29, ¶ 22(1). The petitioners never pled this formulation of the damages claims.

There is a larger problem with this theory, in addition to the departure from the petitioners' claims. The "but for" is a tool to determine damages,[3] but in 5PFA, the "but for" precedes the date of the breach by two years and presumes that the Terra Parties rightfully rejected the Torrecom offer. In other words, the "but for" requires a breach of contract that did not occur.

Predictably, the tribunal's departure from the petitioners' claims led to other absurd results. The tribunal permitted the petitioners to contradict their own view of whether the Terra

---

[3] "It is well established in our law that 'but for' causation, or causation in fact, is '[t]he cause without which the event could not have occurred.'" *The Burlington Insurance Company v. NYC Transit Authority*, 29 N.Y.3d 313, 321 (NY 2017).

Parties had submitted a valid "opinion" that would justify rejecting the Torrecom Offer. ECF 270, Ex. 4, p. 37. The tribunal recognizes that damages must flow from the breach, but then it pre-dated the vast majority of the damages to 2021. ECF 270, p. 202, ¶ 13(a). The petitioners' claims did not seek damages that pre-dated the breach—for good reason. Damages must follow the breach, and if the respondents knew that the tribunal was going to award damages for breaches that had not occurred, then the respondents would have presented ample authority showing that New York law does not allow damages to pre-date the breach of contract.

    2.    <u>The tribunal exceeded its powers when it crafted, without notice nor granting the respondents the opportunity to be heard, equitable relief that the petitioners did not seek</u>

As further addressed below, the tribunal recognized and informed the parties prior to the hearing that there were no equitable claims other than one for accounting and another for specific performance of the Offset Right. *See* Section II(C)(3). The respondents had every reason to accept this ruling at face value. The tribunal dismissed an entire set of defenses, including discovery on those defenses, because, in material part, there was no other claim for equitable relief. ECF 320, Ex. 3. The tribunal then went on to award equitable relief, reforming the parties' agreements in the process.

Regarding the SG&A Expenses, the tribunal permitted the petitioners to make a new claim for a permanent injunction in the petitioners' post-hearing brief. ECF 270, p. 67, ¶ 92. The petitioners did not cite to any rule or law that provided the elements of the proposed injunction. *See* Post-Hearing Brief, p. 33,[4] attached as ECF 320, Exhibit 12. The tribunal did not either. ECF 270, pp. 61-62, ¶¶ 92-93. The petitioners never invoked a breach of the implied covenant of good

---

[4] The respondents use the page number at the top of the PDF, making it easier to find the page by entering the number at the top.

faith. ECF 320, Ex. 12, pp. 26-27. The implied covenant of good faith makes no appearance in the Consolidated Claims or post-hearing briefs. The claim was a creation of the tribunal, and the respondents should have received the chance to argue that this new claim was outside the submissions of the parties and duplicative of the claims for breach of contract. *See, e.g. Atlantis Information Technology, Gmbh v. Ca, Inc.*, 485 F. Supp. 2d 224, 230 (E.D.N.Y 2007) (citations omitted).

It is also unclear if any breach of the implied covenant of good faith can form the basis for a permanent injunction. No law was cited. The petitioners did not allege irreparable harm, only that they should have received the money. ECF 320, Ex. 12, p. 33. The tribunal found that there was an amorphous "misapplication" of these funds, but it never defined the misapplication. ECF 270, p. 68, ¶ 92. It then claimed a "lost opportunity" that was never alleged by the petitioners as a basis for irreparable harm. *Id*. There is no engagement with New York law on this point. Given the chance, the respondents would have pointed the tribunal to the requirement that the opportunity be unique, not the continued operation of the business. *See, e.g., Tom Doherty Associates, Inc. D/B/A Tor Books v. Saban Entertainment, Inc., et al.*, 60 F.3d 27 (2d Cir. 1995). The petitioners also received relief that differed from what they requested. The petitioners sought a suspension of all payments of SG&A Expenses. ECF 320, Ex. 12, p. 33. The tribunal instead ordered an escrow arrangement controlled by Mr. Gaitan, who does not work for DT Holdings, the contractually mandated recipient of the money. ECF 320, Ex. 12, p. 68, ¶ 93.

Naturally, the respondents objected to the petitioners adding a new claim in the post-hearing brief. ECF 320, Ex. 11, pp. 8-9, ¶¶ 20-21. But there was little more they could do. The respondents never knew the basis for the permanent injunction identified by the tribunal, the

application of the elements, and the ultimate relief under consideration. The resolution of this claim was an excess of powers by the tribunal.

Turning to the tower construction claim, the tribunal issued an interim measure requiring deposit of USD 37 million into an escrow account to satisfy the damages award. ECF 270, pp. 64-65, ¶¶ 85-86. The petitioners did not request this relief, and it is "interim," not final, by its very nature.[5] The "necessity" standard cited by the tribunal is not in Rule 37. The petitioners did not come up with it. There is no finding of irreparable harm. It is unclear if the sum is actually damages since it can be returned to the respondents. ECF 270, 64, ¶ 85. The remedy granted is foreign to the case submitted to the tribunal, and it is therefore an excess of powers.

Concluding with the Offset Right claim, the tribunal recognized three causes of action: damages, declaratory relief, and specific performance. ECF 270, Ex. 4, pp. 76-77. The tribunal denied the damages claim. ECF 270, Ex. 4, p. 76, ¶ 105. It sustained the claims for declaratory relief and specific performance (*id*.), but then it issued a mandatory injunction. *Id*., p. 77, ¶ 107. The petitioners did not request a mandatory injunction. The injunction is not the specific performance of contractual obligations, cited by the tribunal and provided in the Shareholders Agreement. ECF 270, Ex. 4, p. 76, ¶ 106. This would require DT Holdings to build towers by taking money out of pocket and putting it into escrow (a remedy not requested), pending a decision by the Company to build towers in the following 12 months. *Id*., pp. 77-78. The petitioners' witnesses testified that this is not how the agreements work. ECF 320, Ex. 11, p. 15. The claim for a permanent injunction did not exist, the remedy was not sought, and the relief

---

[5] (a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods. (b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

does not comply with any contractual terms such that it could form the basis of specific performance. This claim is yet another example of the tribunal exceeding its powers.

**B.    The tribunal failed to issue a mutual, final, and definite award on damages and the post-sale escrow**

When this Circuit first authorized the confirmation of interim arbitral awards, it reasoned that "[i]t would be a perversion" of the purpose of arbitration to deny a party "the same prompt and commercially important relief from an arbitration panel that it could have received from a court." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986). Confirmation is only appropriate where the award "finally and conclusively" disposes of "a separate and independent claim" that is not "subject to [either] abatement [or] set-off." *Id.* at 283. "Policy considerations, no less than the language of the Act and precedent construing it, indicate that district courts should not be called upon to review preliminary rulings of arbitrators." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980); *see also Telecom Bus. Sol. v. Terra Towers Corp.*, No. 23-144, p. 11 (2d Cir. Feb. 6, 2024) (November 12 and March 15 orders unreviewable because they did not conclusively resolve the issues raised and contemplated further proceedings on the sufficiency of compliance). Where this Circuit has enforced interim orders, they are based on the parties' dispute resolution framework and "require specific action and do not serve as a preparation or a basis for further decisions by the arbitrators." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).

1.    <u>The damages awarded recognize but do not apply setoffs, depriving the number of finality</u>

The tribunal engaged in an analysis of the amount of money that the petitioners would have received, had there been a rightful rejection of a Notice of Sale. The tribunal agreed with the respondents that there should be deductions for transfer taxes. ECF 270, Ex. 4, pp. 30, 37, ¶¶

22(3), 36. But it never applied these deductions, leaving them open to future calculation. Or alternatively, there might be some form of "reconciliation." ECF 270, Ex. 4, ¶ 40. It is unclear how the recognized setoffs will function or when they will be applied. Other deductions were litigated but not decided. This includes necessary divestment of towers within 500 feet of a competitor. The parties litigated the existence of this deduction, but the tribunal never ruled on it. And the entirety of 5PFA might be subject to future setoff in the (unlikely) event that the tribunal ever decides that the respondents have satisfied the conditions to lift the stay of the counterclaims. 5PFA thus lacks the necessary finality to be an enforceable award.

2.    Without the request of a party, the tribunal created equitable relief on an interim basis, thwarting the requirement of finality

Despite foreswearing equitable relief, a topic addressed below, the tribunal created numerous forms of equitable relief in 5PFA. The post-sale escrow is particularly inappropriate. Citing Rule 37, a rule regarding interim relief (ECF 270, Ex. 4, pp. 49-50, ¶ 61, the tribunal took a claim but did not finally resolve it. Because the relief is interim in nature, there is no final conclusion as to nature of the relief or even a connection to any claim in the Consolidated Claims. The tribunal then proceeded to exclude the jurisdiction of courts outside the United States, an expansion of power that is both unnecessary (this Court can enforce its orders) and contrary to notions of comity that apply to arbitration awards. To be enforceable, a final award cannot be interim and subject to further change. But this is precisely what the tribunal did in 5PFA.

**C.    The tribunal manifestly disregarded New York law requiring the interpretation of every word in a contract, requiring vacatur of the damages awarded for the Ongoing Breach Claim**

Vacatur for manifest disregard of the law requires a showing that "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly

applicable," and that "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011) (citations omitted). The Supreme Court has characterized this as straying "from interpretation and application of the agreement and effectively" dispensing the tribunal's "own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Some examples of manifest disregard include ignoring the applicable legal principles. *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998). The Second Circuit has also faulted the absence of a transparent analysis that "handicaps" review. *Porzig v. Benson*, 497 F.3d 133, 143 (2d Cir. 2007).

Here, the tribunal manifestly disregarded the legal principle that every term in a contract should be construed so as not to render any term "surplusage." "It is settled rule that 'a contract is to be construed so as to give effect to each and every part' and not to render part of its language "mere surplusage." *Santiago v. Genting N.Y. LLC*, 2024 NY Slip Op 31365(U) (N.Y. Sup. Ct., New York Cty. 2024), *citing FCI Group, Inc. v. City of New York*, 54 AD.3d 171, 176 (1st Dept 2008) (rejecting a contract interpretation that would cause part of the contract language superfluous); *see also Angelo Gordon Real Estate Inc. v. Benlab Realty, LLC*, 216 AD.3d 420, 421 (1st Dept 2023). A construction "cannot be countenanced under our principles of contract interpretation" that renders contract terms as surplusage. *The Matter of Viking Pump Inc. and Warren Pumps LLC*, 27 N.Y.3d 244 (NY 2016); *Westview Associates v. Guaranty National Insurance*, 95 N.Y.2d 334, 339 (NY 2000).

The tribunal was tasked with interpreting the word "unaffiliated" as an adjective before the defined terms "Third-Party Purchaser." ECF 270, Ex. 4, pp. 39-40, ¶ 41. The respondents cited prevailing New York law that every term must be given effect. ECF 270, Ex. 4, p. 42, ¶ 46

FN 12. The tribunal recognized the legal principle and chose not to apply it. The tribunal found that the word "unaffiliated" is unambiguous and did not require parol evidence. ECF 270, Ex. 4, p. 41, ¶ 44. The tribunal could have referred to other terms in the Shareholders Agreement that demonstrated the parties' intent to prohibit the shareholders and their affiliates from having any connection with the potential buyer in an "Approved Sale." These clauses included the non-compete and the prohibition on any restrictive covenants following a sale The respondents had made these points. The tribunal decided to depart from applicable law and describe "unaffiliated" as "surplusage." ECF 270, Ex. 4, p. 42, ¶ 46 FN 12. The tribunal relied on its own "common sense" that "mere surplusage" could exist and not be applied. This is manifest disregard of New York law.

As the Court of Appeals has repeatedly held, contract construction cannot render terms as "surplusage." The Appellate Division has called this a "settled rule." The tribunal disregarded this rule, invoking the precise term, "surplusage," that New York law prohibits. Citing to "common sense" in a footnote, without any support in New York law, does not change the analysis. There is no "common sense" exception to the rule, and it would be dangerous to conclude otherwise. Parties select New York law, and often New York courts and arbitration in New York, relying on the "settled rule" that the terms in their contracts will be given effect. The tribunal has breached this rule, openly, and the Court should vacate 5PFA.

The manifest disregard identified above would defeat the Torrecom Rejection Breach. The tribunal could not reach the conclusion that the respondents breached the Shareholders Agreement when they rejected the Torrecom Offer because they had a valid basis to do so. The Torrecom Offer would not have been to an "unaffiliated Third Party Purchaser" since Peppertree would have continued to own the Company. This directly impacts any damages, which derive

exclusively from the Torrecom Offer. The tribunal also merged the "Torrecom Reject Breach" into the "ongoing breach claim." ECF 270, Ex. 4, p. 31, ¶ 36. Removing one component of the ongoing breach claim undermines the entire claim, requiring vacatur of this portion of 5PFA.

II.  **The Court should refuse to confirm 5PFA because 5PFA violates Article V(2)(b) (the "public policy exception"), Article V(1)(a) (the incapacity of the claimants), and Article V(1)(b) (lack of due process)**

Under the New York Convention, the party seeking to avoid confirmation or recognition of the award must prove that one of the seven defenses in the New York Convention applies. *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013). The respondents address the applicable defenses below.

A.  **5PFA violates the public policy of the United States because it awards double compensation and grants relief for derivative claims that plainly violate applicable law**

1.  <u>By granting both specific performance and an independent damages claim based on the purchase of the Company, 5PFA awards double recovery that violates public policy</u>

The Second Circuit has held that the "public policy exception" should only be applied "where enforcement would violate our most basic notions of morality and justice." *Europcar Italia, S.P.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998) (citations omitted). Courts in New York have recognized that double recovery "violates public policy." *Good Samaritan Hospital Medical Center Inc. v. New York State Department of Health*, 45 Misc. 3d 844, 850 (N.Y. Sup. Ct. 2014). "[D]uplicative recoveries and windfalls should be avoided." *Waehner v. Frost*, 1 Misc. 3d 893, 895 (N.Y. Sup. Ct. 2003) (citations omitted) (refusing to enforce arbitral award). In recent years, this District Court has refused to enforce an award that would have resulted in a windfall while also violating foreign law. *Ozkaptan v. CitiGroup, Inc.*,

No. 1:20-cv-00747, 4 (S.D.N.Y. Nov. 6, 2020) (denying enforcement where Citigroup would "effectively pay double"). This articulation of public policy should control here.

The tribunal awarded specific performance, requiring the Company to be sold. The petitioners then sought damages where payment would be in exchange for their shares in the Company. ECF 320, Ex. 1, p. 86. The tribunal held a phase two to litigate the damages from the failure to sell the Company, but phase two never contemplated a scenario where the Company would have to be sold and then the respondents would have to pay the purchase price again. This is precisely what the tribunal decided.

In 5PFA, the tribunal recognized that the only damages calculation was from the Torrecom Offer. ECF 270, Ex. 4, p. 48, ¶ 58. There is no dispute that the offer was to purchase the Company. The petitioners did not present any damages calculation for the value of the Company (*id*.), and other than the derivative claims and relief connected to arbitration costs, there was no other damages claim that could not be compensated by either specific performance or purchase of the petitioners' shares as satisfaction of the petitioners' claim.

The respondents are not quarrelling with the 1PFA Judgment. They merely seek a clear, precise method to satisfy any judgment rendered that only involves the Company being sold once. 5PFA does not achieve this end. By awarding damages based on the sale of the Company, following or alongside the actual sale of the Company, 5PFA creates a windfall for the petitioners, who can sell the Company to a third party then later seek from the respondents the purchase price again. The tribunal recognized that specific performance is an "alternative

remedy" to damages but made it duplicative. *See* Ex. 3.[6] This result violates public policy, and the respondents request that the Court refuse to enforce 5PFA.

        2.      <u>The tribunal disregarded statutory requirements for bringing a derivative action, resulting in a separate violation of public policy</u>

Expressions of public policy often find their genesis in statutory law. In both cases cited above, the courts looked to statutory restrictions, finding that the public policy can be codified in statute. *Ozkaptan*, No. 1:20-cv-00747, at 7 (citing UK tax law requirements); *Waehner*, 1 Misc. 3d at 895 (citing common law, CPLR 4545, and General Obligations Law § 15-108); *see also Ahdout v. Hekmatjah CA2/4*, No. B255395, 10 (Cal. Ct. App. Jul 15, 2015). Similar considerations apply here.

The respondents presented the tribunal with BVI Companies Act 184C, which is particularly relevant. Respondents' Post-Hearing Brief, p. 44, attached as ECF 320, Exhibit 13 The Company is incorporated in BVI, and subsection 6 is controlling: "[e]xcept as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company." *See* BVI Companies Act, attached as ECF 320, Ex. 14, p. 129. The petitioners are a "member" because they are a shareholder. *Id*., p. 128. They had to seek leave from the "Court," which is defined as the High Court of BVI. *Id*., p. 18. This never happened. Not only was the tribunal aware of this requirement, but it also totally failed to address it in 5PFA. The petitioners did not dispute its applicability. 5PFA thus fails to comply with public policy, as articulated in the BVI Companies Act, and any derivative relief cannot proceed absent leave of the High Court of BVI.

---

[6] "Claimants also seek specific performance "in the alternative" to damages or declaratory relief[.]"

**B.  Enforcement of 5PFA should be denied because the petitioners, as shareholders of the Company, were under an incapacity to bring a derivative claim**

Article V(1)(a) of the New York Convention provides for denial of petition to confirm where "[t]he parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity[.]" Analyzing the background of the provision, the Appellate Division concluded that incapacity refers to concerns from "the drafters . . . with ensuring that both parties be properly represented during the arbitration proceeding" and "the parties' capacities at the time of arbitration." *Corcoran v. Ardra Insurance*, 156 A.D.2d 70, 75-76 (N.Y. App. Div. 1990). That court applied the "law of the party's home jurisdiction, as opposed to the law of the state in which the award was made or the law of the underlying contract." *Id.*; *see also CBF Industria de Gusa S/A, et al. v. AMCI Holdings Inc., et al.*, No. 12-cv-2581, 20-21 (S.D.N.Y. Jan. 13, 2023) (analyzing incapacity during the arbitration).

This line of reasoning is particularly applicable here, where the Court must determine capacity as it relates to brining a derivative claim. "Capacity to sue depends on whether the person who is bringing suit has authority to use the courts of the jurisdiction in question. This is a problem of power and depends neither on the court involved nor on the cause of action asserted." *Basch v. Talley Industries, Inc.*, 53 F.R.D. 9, 11 (S.D.N.Y. 1971). Capacity to sue on behalf of a corporation is determined by the law where it is organized. Fed. R. Civ. P. 17(b)(2).

The Company is a corporation organized in BVI, and there is a specific regime for bringing a derivative claim. As stated above, the tribunal was well aware of the requirements of the BVI Companies Act and chose not to apply them. This is not the kind of capacity issue that goes to the making of the arbitration agreement. None of the parties to the Shareholders Agreement could have known there would be a derivative claim in the future, and like the court

in *Corcoran*, a specific statutory scheme provides the answer. The arbitration should not have continued without leave of the High Court, and the resulting award should be denied recognition and enforcement.

    **C.**    **The Court should deny recognition and enforcement of 5PFA because the tribunal decided to formulate new claims and create new remedies, without prior notice to the parties, leaving the respondents unable to present their case**

Article V(1)(b) provides for denial of recognition and enforcement where a party "was otherwise unable to present his case." "This provision essentially sanctions the application of the forum state's standards of due process." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (Rakta)*, 508 F.2d 969, 975 (2d Cir. 1974). A party is entitled to "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rodrigo R. Pagaduan v. Carnival Corporation*, No. 19-3400, 2 (2d Cir. Nov 25, 2020), *citing Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708 (2006) (*quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950)).

The availability of notice and the opportunity to be heard arises in many contexts, and since Article V(1)(b) applies the "forum state's standards of due process," there is no limitation to only arbitration cases. In *Pagaduan*, the Second Circuit cited to *Jones v. Flowers*, a Supreme Court case regarding a taking, to determine if the petitioner had received "American standards of due process." *Pagaduan*, No. 19-3400 at 2. In another arbitration case, the Second Circuit applied principles of due process from a social security benefits denial. *Iran Aircraft Industries and Iran Helicopter Support and Renewal Company v. Avco Corporation*, 980 F.2d 141, 146 (2d Cir. 1992), *citing Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976). One court, denying enforcement of an award, applied principles from enforcing a judgment. *Qingdao Free*

*Trade Zone Genius Int'l Trading Co., LTD v. P and S International, Inc.*, No. 3:08-cv-01292, 7 (D. Or. Sep 16, 2009).

A court cannot grant relief without notice and the opportunity to be heard. This applies when a court dismisses a claim based on an unpled affirmative defense. *Grant v. County of Erie, Erie County Youth Detention Services*, 542 F. App'x 21 (2d Cir. 2013). "In general, a district court's failure to provide an opportunity to be heard prior to a *sua sponte* dismissal" is grounds for reversal. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) (citations omitted). Similarly, when a court "grants relief not requested and of which the opposing party has no notice . . . the unasked for relief should not be granted." *Marie Powell v. National Board of Medical Examiners, et al.*, 364 F.3d 79 (2d Cir. 2004).

There are three core portions of 5PFA that fall afoul of Article V(1)(b): the Ongoing Breach Claim, the equitable reformation of the agreements that dealt with the derivative claims, and the denial of the opportunity to present affirmative defenses and counterclaims. The respondents address each in turn.

1.  <u>The respondents never received notice or an opportunity to be heard regarding alleged breaches in 2023 for the "Ongoing Breach Claim"</u>

As addressed above, the Ongoing Breach Claim is largely a creature of 5PFA. The respondents entered Phase 2 responding to only a breach related to the Torrecom Offer in 2021, not the two breaches identified in 2023. The "but for" was the acceptance of the Torrecom Offer, not its rejection. The tribunal created a different "but for" scenario. In 5PFA, the tribunal granted unasked for relief without giving the respondents notice and an opportunity to be heard. The Court should thus deny confirmation of 5PFA.

2.    There was no request to equitably reform the relevant agreements in order to grant derivative relief or any of the injunctions

Prior to the briefing on Phase 2, the tribunal decided that there were only two equitable claims: accounting and specific performance of the Offset Right claim. ECF 320, Ex. 3. The respondents have addressed above how the tribunal created new claims of equitable relief, granting a series of injunctions, one of which relies on a breach of the implied covenant of good faith, terms that did not appear in the parties' submissions. 5PFA creates new claims and remedies without granting the respondents notice and an opportunity to be heard, and the Court should not enforce 5PFA as a result.

3.    The tribunal created additional conditions such that the respondents could never be heard on their affirmative defenses

As exemplified in 5PFA, the tribunal has no intention to hearing the respondents' affirmative defenses or allow for the satisfaction of the conditions to consider the counterclaims. 5PFA is ripe with this defect. And by refusing to consider the respondents' defenses prior to ruling on the Phase 2 claims, 5PFA deprived the respondents of the opportunity to be heard, mandating denial of the petition confirm.

The tribunal's approach to the respondents' defenses crystallized before the hearing on Phase 2. In Procedural Order 2024-06, the tribunal decided, before the hearing that led to 5PFA, that the respondents could not present any affirmative defenses, or any discovery related to them, except for the allegations on the Tower Rejection Breach. ECF 320, Ex. 3, p. 8. The tribunal never clarified if the allegations related to the Tower Rejection Breach were admissible. The tribunal expressly discarded the defense of unclean hands because there was no claim for equitable relief. *Id*. The defenses not rejected out of hand were then kept in abeyance pending compliance with "the conditions for lifting the stay" imposed by 2PFA. Simple enough. But the

tribunal effectively made it impossible for the respondents to be heard on their affirmative defenses.

As a threshold matter, this construction of the parties' claims and defenses foreclosed any ruling on the respondents' defense. By deciding on the relief in 5PFA without ruling on the counterclaims and affirmative defenses, the defenses disappeared. The relief has been granted, and the respondents will never have a chance for their counterclaims or affirmative defenses to be considered. The passage will only harden this conclusion. There is no realistic method by which the respondents can ever satisfy any condition that will change the tribunal's mind, which is already made up. To ensure this result, the tribunal created a web of contradictory rules, applicable only to the respondents, and changed the conditions for compliance, *de facto* dismissing all of the respondents' defenses.

When applied to the claims, the tribunal dismissed the respondents' defense of unclean hands because there were no equitable claims. Then the tribunal granted an equitable remedy on the derivative claims without considering the defense of unclean hands. The defense was therefore gone, preventing the respondents from making their case before it could be made.

The tribunal then went a step further. Effectively preventing the respondents from ever getting a fair hearing on their counterclaims or affirmative defenses, the tribunal issued rulings regarding 2PFA that demonstrate purportedly "final" conclusions that are odds with reality. The tribunal claims that the respondents have procured Mr. Gaitan's imprisonment. ECF 270, Ex. 4, p. 8. There was no evidence before the tribunal on this point, nor anything submitted to this Court. The tribunal concludes there was a vexatious prosecution of Mr. Gaitan (ECF 270, Ex. 4, p. 8), even though there was no final decision on this point. The tribunal opines on the falsity of charges in El Salvador (ECF 270, Ex. 4, p. 8), even though those charges were filed after 2PFA.

There is a "finding" that the respondents caused public prosecutors to reach certain conclusions. ECF 270, Ex. 4, p. 8. Again, there is no evidence presented on this point. And the tribunal concludes that the respondents defied this Court. *Id*., p. 8. As it relates to 2PFA, this statement is incorrect. There is a statement that the tribunal has understood its Confidentiality Order to prevent public disclosure of the orders and awards (ECF 270, Ex. 4, p. 10), while the tribunal has published 1PFA and published all the partial final awards despite the absence of a motion to unseal. The tribunal references "crimes" (ECF 270, Ex. 4, p. 11) but never details what those supposed crimes are, the standard of proof, or even the applicable law.

The tribunal further demonstrates a lack of engagement with the evidence or desire to hear the defenses and counterclaims raised by the respondents. The tribunal concludes that Mr. Hernandez owns the respondents without ever providing an evidentiary basis when this is in direct contradiction to Mr. Hernandez's testimony. ECF 270, Ex. 4, p. 12.

This lack of engagement with the respondents' defenses continues in repeated findings of "fact" that lack an evidentiary basis, such as the (uncited) proposition that all members of Company Management (including at the subsidiary level) are DT Holdings employees. ECF 270, Ex. 4, p. 13. This is incorrect. By not considering the respondents' evidence, the tribunal deprived itself of the facts regarding the operation of DT Holdings and the relationship between the Company's subsidiaries and their respective Company Management. The same is true of the assumption that 2PFA, 3PFA, and 4PFA were "significant" to the Company's operations. ECF *Id.*, p. 13. This is incorrect. The Company has a clean audit and is indisputably in excellent financial health. ECF 320, Ex. 13, p. 16. The tribunal argues that the respondents did not ask for a decision in relation to the claimants' procurement of the Torrecom bid (ECF 270, Ex. 4, p. 32), but the tribunal had already decided it would not consider any counterclaim or defense. ECF 320,

Ex. 3. The respondents could not therefore develop the argument, a shortcoming then held against them by the tribunal. ECF 270, Ex. 4, p. 32.

Then there are the new conditions imposed in 5PFA for compliance with 2PFA. The tribunal found, for the first time, that the respondents also had to rehire Mr. Berger and Ms. Umana. ECF 270, Ex. 4, p. 89. These additional conditions show that the respondents will never be heard on their counterclaims since new conditions are likely to arise. The tribunal applied different evidentiary rule, requiring a formal request to admit evidence into the record. ECF 270, Ex. 4, p. 87. No such formality applies to the claimants. The tribunal expected the respondents to cross-examine Mr. Gaitan, even though his appearance was a surprise. *Compare* ECF 270, Ex. 4, p. 93 *with* Transcript of October 9 Hearing, p. 6:17-25, attached as ECF 320, Exhibit 16. And the tribunal refused to receive evidence that other individuals were responsible for the publication of the articles underlying the findings of malice. Day 2 Hearing Transcript, p. 821:2-16, attached as ECF 320, Exhibit 17. The parties submitted witnesses on the issue of the news articles. ECF 320, Ex. 7. The petitioners did not call the witnesses, and the tribunal then blamed the respondents for not providing the witness testimony. ECF 270, Ex. 4, p. 120. The tribunal omitted their statements by stating that the witnesses "declined to be cross-examined." ECF 270, Ex. 4, p. 130, FN 55. This is incorrect—no one declined to be cross-examined. The tribunal ordered production of documents. *Id*. But when no documents existed, following a diligent search, the tribunal drew the adverse inference that the documents existed. *Id*. The tribunal routinely held that it could not alter 2PFA, but then it faulted the respondents for not providing testimony to show that 2PFA was erroneous. ECF 270, Ex. 4, p. 124. The tribunal proceeded to amend its prior awards, without any request from any party. ECF 270, Ex. 4, p. 197. In sum, there is never a universe

where the respondents have an opportunity to present, much less prevail on, their counterclaims and affirmative defenses, and enforcement should be denied.

**CONCLUSION**

Based on the foregoing, the petitioners respectfully request that this Court vacate 5PFA or deny its recognition and enforcement.

Dated: May 15, 2025                                    Respectfully submitted,


_____/s/_____                                    _____/s/_____
Rodney Quinn Smith II                                Lucila I. M. Hemmingsen
(admitted *pro hac vice*)                            **The Fladgate Firm PC**
**GST LLP**                                          305 Broadway, 7th Floor
78 SW 7th Street, Suite 500                          New York, NY
Miami, FL 33130                                      Phone: (646) 369-5843
Phone: (305) 856-7723                                lh@hemmingsenadr.com
quinn.smith@gstllp.com

*Counsel for Respondents*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this document complies with the word count limitations. There are 9,336 words in this document.

_/s/ Quinn Smith_
Rodney Quinn Smith II