**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X
TELECOM BUSINESS SOLUTION, LLC, *et al.*,           :    Civil Action : 1:22-cv-01761
                                                                         :
                        Petitioners,                            :    Judge Lewis A. Kaplan
            v.                                                      :
                                                                         :    Magistrate Judge Robert W.
TERRA TOWERS CORP., *et al.*,                          :    Lehrburger
                                                                         :
                        Respondents.                          :
------------------------------------------------------------------ :
                                                                        X

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FURTHER CIVIL CONTEMPT SANCTIONS AND EMERGENCY INJUNCTIVE RELIEF

Michael N. Ungar                                    Gregg L. Weiner
(admitted *pro hac vice*)                        Andrew S. Todres
Katherine M. Poldneff                             Ethan R. Fitzgerald
**UB GREENSFELDER LLP**                   **ROPES & GRAY LLP**
1660 West 2nd Street, Suite 1100          1211 Avenue of the Americas
Cleveland, Ohio 44113-1406                   New York, New York 10036-8704
Phone: (216) 583-7000                          Phone: (212) 596-9000
Fax:    (216) 583-7001                           Fax:    (212) 596-9090
mungar@ubglaw.com                             gregg.weiner@ropesgray.com
kpoldneff@ubglaw.com                          andrew.todres@ropesgray.com
                                                              ethan.fitzgerald@ropesgray.com

David A. Landman
**UB GREENSFELDER LLP**                   Daniel V. Ward
1700 Broadway, Suite 1802                     (admitted *pro hac vice*)
New York, New York 10019-7710          **ROPES & GRAY LLP**
Phone: (917) 262-0470                          Prudential Tower
Fax:    (917) 262-0480                           800 Boylston Street
dlandman@ubglaw.com                          Boston, Massachusetts 02199-3600
                                                              Phone: (617) 951-7000
*Counsel for Petitioners Telecom Business*    Fax:    (617) 951-7050
*Solution, LLC and LATAM Towers, LLC*    daniel.ward@ropesgray.com

                                                              *Counsel for Petitioner AMLQ Holdings*
                                                              *(Cay), Ltd.*

**Table of Contents**

**Page**

I.    FACTUAL BACKGROUND ................................................................................2

    A.    Peppertree/AMLQ Seek Relief from the Tribunal....................................................3

    B.    Mr. Gaitan is "Violently" Moved to a Hearing Resulting in an Order That
          He be Transferred to a Maximum-Security Prison ..................................................5

    C.    The Tribunal Finds There Is an "Imminent Threat to Mr. Gaitan's Life"
          and Orders Peppertree/AMLQ to Seek the Instant Relief ......................................6

II.    ARGUMENT .................................................................................................10

    A.    The Court Should Find Respondents Have Committed Additional Acts of
          Contempt and Direct Them to Immediately Cure Their Contempt ......................10

    B.    In the Alternative, the Court Should Issue Emergency Injunctive Relief
          Pursuant to Fed. R. Civ. P. 65 to Preserve the *Status Quo* and Prevent
          Continued Irreparable Harm to the Company and Its Shareholders,
          Company Management, and Company Counsel....................................................12

III.   CONCLUSION..............................................................................................16

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Antonyuk v. Hochul*,
  635 F. Supp. 3d 111 (N.D.N.Y. 2022) ..............................................................12, 13

*Berger v. Heckler*,
  771 F.2d 1556 (2d Cir. 1985) ................................................................................12

*Heisman Trophy Trust v. Smack Apparel Co.*,
  595 F. Supp. 2d 320, (S.D.N.Y. 2009) ..................................................................15

*Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*,
  725 F. Supp. 2d 389 (S.D.N.Y. 2010) ...................................................................13

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
  704 F. Supp. 2d 305, (S.D.N.Y. 2010) ..................................................................15

*Quinlan v. Lender*,
  422 N.Y.S.2d 634 (Sup. Ct. 1979) ........................................................................11

*WFMC 2016-LC25 W. Bay Area Boulevard LLC v. Tyler*,
  2022 WL 17487730 (S.D.N.Y. Dec. 7, 2022) .......................................................11

*Widakuswara v. Lake*,
  No. 25-CV-2390 (JPO), 2025 WL 945869 (S.D.N.Y. Mar. 28, 2025)..................13

*Zeiler v. Deitsch*,
  500 F.3d 157 (2d Cir. 2007) ..................................................................................12

**Other Authorities**

Fed. R. Civ. P. 65 ...............................................................................................2, 12, 15

Peppertree/AMLQ[1] respectfully request emergency relief, including additional sanctions and injunctive relief, pertaining to the continued incarceration of Company CEO Jorge Gaitán and his father.  Since the Parties were last before this Court, things have escalated to a dangerous level that now threatens the lives of the Company's CEO and his father. In response, ***the Tribunal has ordered—and the Company has requested—Peppertree/AMLQ to make this emergency request*** to address the unconscionable escalation of Respondents' attacks on Mr. Gaitán that have now culminated in ***Mr. Gaitán and his father being violently dragged to an ex parte court hearing during which they were ordered to be transferred to a maximum security prison in Guatemala, where they will face undue duress, the threat of unspeakable physical harm, and, worst of all, imminent danger to their lives***.  As detailed below, Respondents' actions—which include filing even more baseless criminal proceedings against Mr. Gaitán, his personal counsel, and now the Company's counsel, as well as baselessly accusing Peppertree/AMLQ of obstruction of justice— have all been in response to this Court's April 22 Order and ensuing Arbitration proceedings, and are occurring just days before Peppertree/AMLQ are required by the Court to notify Respondents of the Investment Bank they propose to effectuate the Court-ordered sale of the Company.

Since Peppertree/AMLQ began seeking relief ordering Respondents to withdraw their criminal complaints, Respondents have gone to new lows in their long-running campaign to block

---

[1] This action arises from an arbitration administered by the International Centre for Dispute Resolution of the American Arbitration Association captioned *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration") and presided over by a panel of three highly qualified and experienced arbitrators (the "Tribunal").  The Arbitration is pending among petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ" or "Petitioners"), Continental Towers LATAM Holdings Limited (the "Company"), and respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), respondent and Terra affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH"), and Terra/DTH's controller, respondent Jorge Hernandez ("Hernandez" and together with Terra/DTH, the "Respondents").  Terra is the majority shareholder of the Company together with minority shareholders Peppertree and AMLQ.  Unless otherwise noted, all defined terms used herein shall have the same meaning as in the Court's April 22, 2025 Order (ECF No. 295, the "April 22 Order").

the sale of the Company, and have made clear they are willing to risk Mr. Gaitán's physical safety to make the Company unsalable. That risk is now intolerably high and can only be mitigated by swift and forceful relief from this Court. As the Tribunal has observed, Respondents' endless attacks put them in further contempt of the Court's judgment confirming the First Partial Final Award ordering the sale of the Company (ECF No. 124, the "1PFA Judgment"). Accordingly, the Court should, pursuant to its inherent authority to enforce its own judgments and/or, alternatively, pursuant to Fed. R. Civ. P. 65, order Respondents to immediately cure that contempt by withdrawing the improper, baseless, and harassing criminal complaints they initiated, or risk further sanctions.

## I.   FACTUAL BACKGROUND

As noted, Peppertree/AMLQ are making the instant request at the direction of the Tribunal, and at the request of the Company, following Arbitration proceedings concerning Mr. Gaitán's incarceration that ensued after the Court issued its April 22 Order. *See generally* Exs. 8, 11.[2] As set forth in more detail below, after the April 22 Order was issued, Peppertree/AMLQ informed the Tribunal they intended to seek injunctive relief requiring Respondents to withdraw the criminal complaints that had resulted in Mr. Gaitán's incarceration. In direct response to that request and to a declaration from Mr. Gaitán's personal counsel detailing the baseless nature of the allegations against him, Respondents preemptively escalated their attacks. First, Respondents refused to guarantee Mr. Gaitan's safety while Peppertree/AMLQ's request was pending. Then, they threatened Peppertree/AMLQ with criminal consequences for even making the request, and initiated more bogus criminal proceedings against Mr. Gaitán, his counsel, and counsel for the Company. Finally, the day before the Company's submission regarding the request was due, Mr.

---

[2] Citations to "Ex." refer to the exhibits to the Declaration of Katherine M. Poldneff, filed herewith.

Gaitán and his father were violently removed from their place of incarceration and ordered to be relocated to a maximum-security prison in connection with yet another false criminal complaint based on manufactured evidence the Tribunal had already rejected.  All of this occurred while Respondents were refusing to comply with the April 22 Order, Hernandez sought to evade the Court's jurisdiction,[3] and the deadline for Respondents to engage Peppertree/AMLQ's chosen Investment Bank to sell the Company drew closer.

### A.    Peppertree/AMLQ Seek Relief from the Tribunal

On May 8, 2025, following submissions by Peppertree/AMLQ and Respondents, the Tribunal conducted a status conference during which Respondents gloated that they indeed were behind the complaints initiating the Guatemala Criminal Matters and the El Salvador Criminal Action, while also telling the Tribunal that in its April 22 Order, this Court had "rejected the biggest portion of the request by" Peppertree/AMLQ.  Ex. 6 at 21:1-2, 27:18-28:6.  Notably, Respondents' counsel refused to guarantee Mr. Gaitán's personal safety during the pendency of any application for relief regarding his incarceration.  *See id.* at 75:15-79:13.  The Tribunal directed Peppertree/AMLQ to make such application by May 15, and invited the Company to submit a declaration from Mr. Gaitán's personal counsel to provide more information regarding the proceedings against him.  *See id.* at 84:19-87:4.

On May 14, 2025, the Company submitted the sworn declaration of Mr. Gaitán's counsel, Ana Lucia Alejos Botran, in which she confirmed that DTH's subsidiary in Guatemala has "requested the incarceration of Mr. Gaitán and/or other members of the Company's Management

---

[3] As determined by this Court, Hernandez is currently in contempt of this Court's orders.  Thus, he need not be served with further process in connection with this present Motion for further contempt sanctions. Hernandez is represented by counsel in this proceeding and on notice of the Court's prior orders.  As such, Hernandez's pending Motion to Quash Service of Process (ECF No. 301), to which Peppertree/AMLQ will respond, has no bearing on this Court's authority to issue further findings of contempt against Hernandez.

Team no fewer than four times" and that, even after purportedly conducting its own investigation, the prosecutor in the Guatemala Criminal Matters "is relying on the same criminal allegations that were previously submitted by" the DTH subsidiary. Ex. 7 ¶¶ 10 n.8, 12. Ms. Alejos Botran further confirmed that in the El Salvador Criminal Action, the prosecution is relying on "factual allegations [that] are the same as when the complaint was filed in May 2022," meaning "the only relevant evidence presented" is a purported forensic audit which the Tribunal previously determined in the 2PFA to have "*no merit*." *Id.* ¶ 23 (emphasis added); Ex. 2 ¶ 80. That determination was already confirmed by this Court (ECF No. 207)—and unanimously affirmed by the Second Circuit (ECF No. 315). In addition, Ms. Alejos Botran's declaration confirmed the frivolous nature of the March 17 complaint Hernandez personally initiated accusing Mr. Gaitán and others, including Ms. Alejos Botran, of conspiracy to attempt murder—of which Peppertree/AMLQ informed this Court on April 4, 2025 (ECF No. 275)—and that she herself had been subjected to another criminal complaint *after the Tribunal requested her declaration*. *See* Ex. 7 ¶¶ 2 n.2, 27.

That same day, in response to Peppertree/AMLQ's request that Respondents produce the complaints and communications with prosecutors they had *admitted to having*, Respondents' counsel tellingly refused, and instead, accused Peppertree/AMLQ of "attempt[ing] to interfere with the work of the prosecution and criminal courts" and threatened that they risked "legal consequences under obstruction of justice and analogous principles." Ex. 8.

On May 15, 2025, Peppertree/AMLQ submitted an application for injunctive relief asking the Tribunal to order Respondents to terminate the criminal proceedings they had initiated against Mr. Gaitán and the Company. *See generally* Ex. 9. Therein, Peppertree/AMLQ demonstrated that the Tribunal's factual determinations in its Second Partial Final Award ("2PFA") collaterally

estopped Respondents from relitigating the allegations underlying the Guatemala Criminal Matters and El Salvador Criminal Actions. *See id.* at 3-8, 13-15. Peppertree/AMLQ also argued that the voluminous record of Respondents' abuse and manipulation of foreign legal systems to bring collateral actions, including criminal proceedings, supported the logical inference that the other criminal complaints Respondents had filed against Mr. Gaitán and the Company were likewise baseless, and that, in any event, an adverse inference to that effect could be drawn because ***Respondents had not disputed*** that they were behind those actions but had refused to produce the complaints they had made to prosecutors. *See id.* at 8-13, 15-18.

### B. Mr. Gaitan is "Violently" Moved to a Hearing Resulting in an Order That He be Transferred to a Maximum-Security Prison

The next day, the Company's independent counsel made a submission providing "an extremely troubling update" that:

    i. "Mr. Gaitán and his father had been 'violently' taken into custody by officials at the Mariscal Zavala prison in Guatemala City" and possibly "coerced into signing documents under threats of physical violence";

    ii. "Mr. Gaitán and his father are now defendants in a new criminal complaint purportedly based on cybercrime allegations concerning emails that were sent from the vicinity of the Mariscal Zavala prison"; and

    iii. Yet another complaint had been filed "against the Company's management team, their personal lawyers, and against Company Counsel" that was based on an interview with Guatemalan prosecutors given by Juan Francisco Quisquinay—the Company and DTH CFO that initiated the frivolous action in the BVI that the Court enjoined in February 2024 (ECF No. 209)—in which Quisquinay "reference[d] communications between Company Counsel and Respondents' counsel in this arbitration, Diego B. Gosis, to support the familiar (but false) accusation that Company Counsel communicated through the use of illegal electronic devices with Mr. Gaitán."

Ex. 10. Notably, the reported, malicious violence against Mr. Gaitán occurred just one day before the Company's comments regarding Peppertree/AMLQ's application were due, and less than a week before Peppertree/AMLQ were due to comply with this Court's order to propose an

Investment Bank to facilitate the sale of the Company pursuant to the April 22 Order. This is in line with Respondents' long-standing pattern of taking improper obstructive actions to interfere with the Arbitration and the Tribunal's orders and awards, including the 1PFA ordering a sale of the Company, around the time that something significant (and often unfavorable to Respondents) happens in the Arbitration or related litigation. *See, e.g.*, ECF No. 270-4 (5PFA) ¶¶ 226-27 (finding Respondents engaged in "a strategy of resistance to [the 1PFA] by counterattack [that] is corroborated by many other elements in the history of this matter" and then tying Respondents' wrongful conduct, warranting punitive damages, to significant events in the Arbitration and related litigation).

### C.  The Tribunal Finds There Is an "Imminent Threat to Mr. Gaitan's Life" and Orders Peppertree/AMLQ to Seek the Instant Relief

On May 17, 2025, the Tribunal issued a procedural order in which it determined "that there is an imminent threat to Mr. Gaitán's life and health" and that "Respondents are responsible for the proceedings that have led to Mr. Gaitán's incarceration," which are "predicated exclusively on factual allegations propounded by Respondents that this Tribunal has previously adjudicated to be unsubstantiated" in its Second Partial Final Award ("2PFA"), which, again this Court has already confirmed in a judgment unanimously affirmed by the Second Circuit. Ex. 11 ¶¶ 2-3. The Tribunal further found that the criminal complaint based on "cybercrime allegations" that Company counsel had reported was based on "purported facts that were also submitted to the Tribunal, unsolicited, by Respondents' counsel," and the Tribunal rejected them "as unreliable *prima facie*." *Id.* ¶ 4; *see also* Exs. 4, 5.

Notably, the Tribunal observed that "Mr. Gaitán's, and his father's, incarceration . . . may impede the sale of the Company . . . ." *Id.* ¶ 7. Accordingly, and because the Tribunal determined that it could not "effectively address" the threat to Gaitán "in view of the procedural posture of the

arbitration and the apparent imminence of the threat," the Tribunal determined that this Court was the proper forum to determine whether the attacks on Mr. Gaitán "constitute additional acts of contempt" of the Court's 1PFA Judgment and "the severity of contempt sanctions to be imposed and the timing of their imposition." *Id.* ¶¶ 2, 7.

On May 19, 2025, Company counsel submitted another update to the parties, echoing the Tribunal's sentiment that immediate relief was required and further explaining the imminent threat to Mr. Gaitan, his father, and the Company itself. Therein, independent Company counsel confirmed "two recent developments that represent a very troubling and disturbing escalation of the attacks against the Company" and Mr. Gaitán. *See* Ex. 12 ("May 19 Company Submission") at 2; *see also* Ex. 13 (Ms. Alejos's verification of facts set forth in the May 19 Company Submission); Ex. 14 (Mr. Gaitán's verification of facts set forth in the May 19 Company Submission). These include: (i) "events that may result in the transfer of Mr. Gaitán to a maximum-security prison in Guatemala where his life would almost certainly be in grave danger"; and (ii) "yet another criminal complaint in Guatemala that not only targets Mr. Gaitán and the [Company] management team but now for the first time takes aim at the *lawyers in [the A]rbitration* by asserting absurdly false claims against the *Company's counsel, Adam Schachter*." *Id.* (emphasis in original). Specifically, the violent raid that led to Mr. Gaitán's forcible removal from the prison "was prompted by an *ex parte* hearing where the prosecutor referenced accusations by an unnamed complainant against Mr. Gaitán concerning his alleged possession of electronic devices and, as the purported evidence of these alleged crimes, alleged email communications sent in the name of Mr. Gaitán and an email forensic analysis by '*Cyber Security Group*'"—the very "same accusations, and the same report, advanced by Respondents and their counsel in th[e] [A]rbitration", which was **previously rejected** by the Tribunal *Id.* at 3. "As such, the apparent

7

basis for the raid appears to be allegations that were made by Respondents in the [A]rbitration that lacked any evidentiary support," including because since the date of Mr. Gaitán's incarceration, Company counsel has never communicated with Mr. Gaitán via electronic means. *Id*. at 3-4.

Company counsel also noted that the maximum security prison to which Mr. Gaitán and his father were ordered to be transferred, Pavoncito, "is known for its ***extreme levels of gang violence, including a report of a fight between rival gangs that left seven dead and five beheaded***." *Id*. at 5 (emphasis added). "From the Company's perspective," the evidence in the May 19 Company Submission "confirms that the *ex parte* hearing that purportedly authorized the raid at Marisca Zavala [the prison in which Mr. Gatain and his father were originally incarcerated] was not motivated by any desire to search and seize any alleged contraband—***it was borne out of a wicked design to secure Mr. Gaitán and his father's transfer to a prison where they can be silenced once and for all***." *Id*. at 5 (emphasis added).

The May 19 Company Submission also readily demonstrated that Respondents' attacks were escalating ***in direct response to this Court's efforts to address their wrongdoing***. Indeed, Respondents' newest criminal complaint was filed just ***one day before*** this Court's April 9 hearing, and Quisquinay's interview with the prosecution making false allegations in connection with that complaint occurred ***just hours after*** this Court issued its April 22 Order. *See id*. at 6, 8. It is based on false and "ludicrous" allegations that Company counsel "is part of a 'criminal enterprise' dedicated to 'robbing, defrauding, extorting' Latin American 'enterprises,' while also being involved in 'money laundering' and in 'illegal communications' with prison inmates," which Company counsel has verified are "*demonstrably and categorically false*". *Id*. at 7 (emphasis in original). Importantly, the evidence provided with the May 19 Company Submission establishes

that Respondents' agents—including but not limited to Mr. Quisquinay[4] and Mr. Gosis, Respondents' counsel in the Arbitration—supported the new complaint and "supplied additional, purported evidence of some sort of alleged crime" on the part of Company counsel by disclosing and providing to foreign prosecutors correspondence among counsel in the Arbitration where Mr. Gosis misrepresents Company counsel's clear communications. *Id.* at 8-9. Of course, the prosecutors in the criminal proceedings could not possibly have known of or had access to any of the Arbitration correspondence unless it was first raised and then provided by Respondents.

Finally, in its May 19 Company Submission, the Company urges that, given these grave, new facts, the parties seek "urgent relief for the Company's CEO, as well as for the Company's Management Team and Company Counsel." *Id.* at 10. In accordance with the Tribunal's recent directive in P.O. 2025-03, the Company seeks relief on an emergency basis to stop the improper criminal proceedings Respondents are maliciously initiating, participating in, and otherwise supporting, *id.* at 11-12 (setting forth chart of seven (7) such wrongful proceedings), all of which attack Company Management and/or independent Company counsel based on false allegations of misconduct and likewise interfere with and frustrate the required sale of the Company. *Id.* at 14-15.

---

[4] As noted in the May 19 Company Submission, "this is not the first time Mr. Quisquinay has worked with Respondents' counsel to attempt to manipulate the [A]rbitration proceeding in an inappropriate manner." *Id.* at 9. Indeed, the Tribunal has already found this to be the case when, in the 5PFA, it found that "[t]he commencement of [the] BVI Action by Mr. Quisquinay purporting to seek a judicial declaration to contradict [the Tribunal's prior finding] that Mr. Gaitán was the CEO of the Company – was malicious under the actual malice standard applied under New York law for malicious prosecution, *i.e.*, the proceeding was commenced 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" ECF No. 270-4 ¶ 262 (citing *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)). Similarly, in this Court's order granting its first anti-suit injunction against the wrongful BVI action initiated by Quisquinay on Respondents' behalf, this Court explicitly found that Quisquinay "is clearly advancing Respondents' interest in bringing the BVI Action, and that he is controlled by and acting on behalf of Respondents." ECF No. 209 at 3 (internal quotations omitted).

II.    **ARGUMENT**

    A.    **The Court Should Find Respondents Have Committed Additional Acts of Contempt and Direct Them to Immediately Cure Their Contempt**

In its April 22 Order, this Court determined that Respondents were in contempt of the Court's 1PFA Judgment. *See* Apr. 22 Order at 32. As set forth above, the Tribunal's May 17 procedural order and the record of the proceedings leading up to it speak for themselves in establishing Respondents' unconscionable attacks on Mr. Gaitán in furtherance of that contempt. Indeed, in considering Peppertree/AMLQ's May 15, 2025 request for relief related to Mr. Gaitán, the Tribunal explicitly found, "[t]his Tribunal is therefore not a proper forum to address additional actions of Respondents that may impede [the] sale of the Company and that ***may constitute additional acts of contempt and may bear on the severity of contempt sanctions to be imposed and the timing of their imposition***." Ex. 11 ¶ 7 (emphasis added). And as the Court observed in its May 15, 2025 order denying Respondents' motion to stay the coercive monetary sanctions ordered in the April 22 Order, Respondents' recent actions "smack of what has been seen all along – attempts to delay and avoid their obligations." ECF No. 317 at 4.

Since this Court scheduled its hearing on Petitioners' prior motion for preliminary and permanent injunction and for civil contempt sanctions, Respondents have only intensified their efforts to defy and interfere with this Court's Orders as clearly evident from the following limited sampling of events that have transpired, all in the lead-up to the deadline set by this Court for Petitioners to identify a proposed investment bank to sell the Company:

| Date | Event |
|------|-------|
| **March 19, 2025** | This Court schedules oral argument for **April 9, 2025** on Petitioners' motion for a preliminary and permanent injunction and for civil contempt sanctions. |
| **April 8, 2025** | New criminal complaint filed in Guatemala against the Company's management team, their personal lawyers, and against independent Company counsel (Adam Schachter). |
| **April 9, 2025** | Oral argument held on Petitioners' motion for a preliminary and permanent injunction and for civil contempt sanctions. |
| **April 22, 2025**<br><br>**(11:12 AM EST)** | This Court issues MEMORANDUM OPINION GRANTING ANTI-SUIT INJUNCTION AND COERCIVE CIVIL CONTEMPT REMEDIES |
| **April 22, 2025**<br>**(3:40 PM Guatemala Time)**<br><br>**(5:40 PM EST)** | Later the same day, Quisquinay provides interview in support of new criminal complaint against Company counsel, among others. |
| **May 2, 2025** | Respondents' counsel, Mr. Gosis, makes submission in Arbitration attaching report of purported "IT expert" in support of claim that Mr. Gaitan and/or his family are responsible for whistleblower wakeup emails and requesting a "full investigation by the Tribunal on the purported communications between Mr. Schachter or anyone in his firm and Mr. Gaitan after his incarceration [sic]." |
| **May 14, 2025** | Respondents' counsel, Mr. Gosis, threatens Petitioners:<br><br>"As a second point, the attempts by your clients to interfere with the work of the prosecution and criminal courts in those jurisdictions may well carry legal consequences under obstruction of justice and analogous principles, which respondents disclaim any part in." |
| **~May 15, 2025** | New action initiated against Mr. Gaitán and his father purportedly based on cybercrime allegations concerning emails that were sent from the vicinity of the Mariscal Zavala prison—a claim initially made by Respondents in the Arbitration. |
| **May 21, 2025** | Deadline for Petitioners to notify Respondents in writing of the investment bank they wish to propose to facilitate sale of the Company. |

Accordingly, the "different and more onerous consequences" for Respondents' contempt that the Court warned of—including civil confinement of the contemnors—are now warranted. Apr. 22 Order at 43.  At a minimum, the Court should order Respondents to cure their contempt by immediately withdrawing the criminal complaints (and other filings) that have led to the proceedings against Mr. Gaitán and his father and their incarceration.

To be sure, this relief—an additional finding of contempt and order to cure that contempt or face further penalties—is distinct from the relief the Court declined to grant in the April 22 Order when it declined to find Respondents in contempt of the 2PFA Judgment or that the Guatemala Criminal Matters and the El Salvador Criminal Action met the standard for issuing an anti-suit injunction.  *See* Apr. 22 Order at 25-26, 32-33.[5]  Indeed, courts have enjoined parties before them from continuing to prosecute criminal actions that constituted "harassment for harassment's sake."  *Quinlan v. Lender*, 422 N.Y.S.2d 634, 635 (Sup. Ct. 1979).

> **B.      In the Alternative, the Court Should Issue Emergency Injunctive Relief Pursuant to Fed. R. Civ. P. 65 to Preserve the *Status Quo* and Prevent Continued Irreparable Harm to the Company and Its Shareholders, Company Management, and Company Counsel**

There can be no question that the Court has broad discretion to issue relief to enforce its judgments, including ordering contempt sanctions, as it previously did in its April 22 Order. *See Zeiler v. Deitsch,* 500 F.3d 157, 170 (2d Cir. 2007) ("Once confirmed, the [arbitral] awards become enforceable court orders, and, when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them."); *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) ("Thus, [t]he measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.") (internal quotations omitted); *Id.* at 1569 ("Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even

---

[5] To the extent the Court determines that the relief sought herein requires reconsideration of these aspects of the April 22 Order, Peppertree/AMLQ respectfully submit that the facts discussed herein warrant such reconsideration and note that the Court "always has inherent authority to reconsider its own interlocutory orders, even *sua sponte*." *WFMC 2016-LC25 W. Bay Area Boulevard LLC v. Tyler*, 2022 WL 17487730, at *4 (S.D.N.Y. Dec. 7, 2022).  For example, the Company's verified submissions, including the Alejos declaration—none of which were before the Court in connection with the April 22 Order—establish, *inter alia*, (i) the specific nature of and allegations in the criminal proceedings sought to be enjoined; (ii) that the baseless allegations in these criminal proceedings were already rejected by the Tribunal, including in the confirmed 2PFA; and (iii) Respondents' initiation and continued involvement in and support of these proceedings is designed to interfere with the Arbitration (including the resulting 1PFA Judgment). *See generally*, Exs. 5, 8, 10, 11.

absent a finding of contempt."). However, in the event the Court declines to order the requested injunctive relief on this basis, under these highly exigent circumstances, Peppertree/AMLQ are also entitled to emergency interim injunctive relief pursuant to Fed. R. Civ. P. 65(b)(1).

"In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction." *Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 124 (N.D.N.Y. 2022). "Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief." *Id*. at 125.

"With regard to the first part of the first element, a 'likelihood of success' requires a demonstration of a 'better than fifty percent' chance of success." *Id*. (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). A movant seeking mandatory injunctive relief "must demonstrate a 'clear' or 'substantial' likelihood of success, rather than a mere likelihood of success." *Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*, 725 F. Supp. 2d 389, 393–94 (S.D.N.Y. 2010). "To plead irreparable harm, '[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Widakuswara v. Lake*, No. 25-CV-2390 (JPO), 2025 WL 945869, at *9 (S.D.N.Y. Mar. 28, 2025) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999)).

13

Petitioners undoubtedly meet the test for a temporary restraining order here.  Respondents are indisputably, and as already found by the Tribunal in the fully confirmed 2PFA, responsible for the initiation of the criminal actions that have resulted in the imprisonment of Mr. Gaitan.  The Tribunal's findings were confirmed in the declaration of Ms. Alejos Botran.  This conduct is clearly designed to thwart the sale of the Company, as ordered by this Court, and, therefore, violates the 1PFA Judgment. Thus, Petitioners have already demonstrated, and certainly have a substantial likelihood of success of demonstrating, that Respondents are in violation of this Court's orders. The balance of equities likewise clearly tips in Petitioners' favor. Neither Respondents nor the public would suffer from entry of the requested relief. *Widakuswara v. Lake*, No. 25-CV-2390 (JPO), 2025 WL 945869, at *10 (S.D.N.Y. Mar. 28, 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)  ("To weigh these final factors, 'courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief ... pay[ing] particular regard for the public consequences' that would result in granting the emergency relief sought."). Here, Respondents' conduct has not only plainly violated this Court's orders, it has put the lives of the Company's CEO and his father in grave danger. Under these circumstances the equities weigh in favor of taking immediate action now to protect the wellbeing of the CEO and his father.

Furthermore, the interference with the confirmed order to sell the Company through the incarceration (and threatened death) of the Company's CEO undoubtedly constitutes actual and imminent harm that cannot be remedied by an award of damages. If he remains imprisoned, ***or worse***, there is no award of money damages that can compensate.  Respondents' actions are also causing irreparable damage to the Company and Peppertree/AMLQ as its shareholders. Injunctive relief to protect the *status quo* is critical to preserve the interests of Peppertree/AMLQ, the

Company, and Company management, including Mr. Gaitan and his father, and independent Company counsel. *See generally* Ex. 9 at 21. As the Tribunal found in its 3PFA relating to similarly improper collateral proceedings, such proceedings interfere with the required sale of the Company and, thereby, cause irreparable harm. Ex. 3 ¶¶ 98-99 (finding money damages to be inadequate to compensate Peppertree/AMLQ for interference with the sale).

Claimants are irreparably harmed for the additional reason that, as the Tribunal found in its November 12, 2021 interim order, "the breach of a negotiated corporate governance provision that has intrinsic value to a minority shareholder"—such as the Shareholder Agreement provisions requiring Board approval to appoint Company counsel that are at issue here—constitute an irreparable injury under New York law. Ex. 1 ¶ 10 (citing *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114-15 (2d Cir. 2003), and collecting other cases).[6]

Finally, the public interest would be served by the requested relief. The relief is sought in furtherance of enforcement of an existing order of this Court and is designed to protect the well-being of a person who has been viciously attacked based false allegations of criminality, as previously determined by this Court in confirming the 2PFA.[7]

---

[6] Respondents' years-long efforts to remove Mr. Schachter from his proper role as independent Company counsel in the Arbitration (which the Tribunal reaffirmed in the 5PFA, *see* ECF No. 270-4 ¶ 115) has escalated to a fever pitch given Respondents' initiation of the new criminal complaint against him. Critically, in the 5PFA, the Tribunal ordered that Mr. Schachter have a substantial role in distribution of proceeds from the sale of the Company and certain other relief ordered by the Tribunal. *See, e.g.*, ECF No. 270-4 at ¶ 65(1), ¶ 107(3), p. 193 ¶ 8. Thus, there can be no genuine dispute that seeking (or orchestrating) his removal furthers Respondents' longstanding efforts to delay and interfere with the required sale of the Company and this Court's 1PFA Judgment.

[7] Although Rule 65(c) provides that a party post a bond prior to the issuance of a temporary restraining order or preliminary injunction, "[i]t is well-settled that a district court has wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010); *see also Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 329 (S.D.N.Y. 2009) (same). There is no conceivable harm that would result from ordering Respondents to withdraw their complaints initiating (and other filings in) the improper and baseless criminal proceedings against Mr. Gaitan and Company counsel at issue here, the underlying allegations of which the Tribunal has already rejected as being based on a false narrative of misconduct. Because Respondents cannot show that they will be harmed by this Court's issuance of the requested emergency injunctive relief, and

### III.    <u>CONCLUSION</u>

For these reasons, Peppertree/AMLQ respectfully request that the Court grant the present Motion and order contempt sanctions and emergency injunctive relief in the form of the proposed order filed herewith, an expedited briefing schedule, and any other relief that the Court deems appropriate under these extraordinary and highly exigent circumstances.   Peppertree/AMLQ appreciate the Court's prompt attention to this request, will provide further information as requested, and will, of course, make themselves available for any hearings the Court may order.

---

because this Court did not require Peppertree/AMLQ to post a bond for the similar injunctive relief issued in its prior orders (including the April 22 Order), this Court should not require Peppertree/AMLQ to post a bond here.

Dated: May 20, 2025

Respectfully submitted,

By: */s/ Michael N. Ungar*
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:  (216) 583-7001
mungar@ ubglaw.com
kpoldneff@ ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:  (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:  (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:  (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on May 20, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

/s/ Gregg L. Weiner
Counsel for AMLQ Holdings (Cay), Ltd

18