**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------- X
TELECOM BUSINESS SOLUTION, LLC, et al.,         :    Civil Action No.: 1:22-cv-01761
                                                :
                        Petitioners,            :    Judge Lewis A. Kaplan
         v.                                     :
                                                :    Magistrate Judge Robert W.
TERRA TOWERS CORP., et al.,                     :    Lehrburger
                                                :
                        Respondents.            :
----------------------------------------------------------------- X
```

**PETITIONERS' MEMORANDUM IN OPPOSITION TO PERU**
**NON-PARTIES' MOTION FOR RECONSIDERATION OF, OR**
**ALTERNATIVELY, FOR RELIEF FROM, APRIL 22, 2025 MEMORANDUM OPINION**

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    LEGAL STANDARD .....................................................................................................2

    A.     Local Civil Rule 6.3 ...........................................................................................2

    B.     Rule 59(e) ............................................................................................................3

    C.     Rule 60(b) ............................................................................................................5

III.   ARGUMENT ..................................................................................................................6

    A.     The Court Should Disregard the Declarations and Exhibits ...................................6

    B.     The Motion Should Be Denied Because the Peru Contemnors Wholly Fail
        to Establish Their Entitlement to The Extraordinary Relief of
        Reconsideration ...................................................................................................7

        1.     The Court Should Reject the Peru Contemnors' Attempt to
            Relitigate the Tribunal's Findings in the 3PFA that Merino and
            Garzaro Are Respondents' Agents, In Active Concert and
            Participation with Them ...........................................................................7

            a.     The Court Properly Relied on Findings of Fact Made by the
                Tribunal in the 3PFA, and those Findings Cannot Be
                Undone on a Motion for Reconsideration of the April 22
                Order ............................................................................................8

            b.     The Peru Contemnors Fail to Challenge the Court's
                Determination that They Are Furthering Respondents'
                Interests in the Peru Arbitration and the Peru-Related BVI
                Action .........................................................................................10

        2.     The Peru Contemnors Fail to Establish that the Extraordinary
            Remedy of Reconsideration Is Warranted or Appropriate Here ...............13

        3.     Even If Some Heightened Review of the Peru Contemnors' Contacts
            with the Forum Were Required, the Court Here Had Specific
            Jurisdiction to Issue the April 22 Order Given that the Peru
            Contemnors Purposefully Directed their Conduct in Violating the
            3PFA Judgment to this Forum ................................................................15

IV.    CONCLUSION ..............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 310 Associates*,
   346 F.3d 31 (2d Cir. 2003).................................................................................5, 6

*Ades v. Deloitte & Touche*,
   843 F. Supp. 888 (S.D.N.Y. 1994)..............................................................................4

*Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*,
   965 F. Supp. 2d 402 (S.D.N.Y. 2013), *aff'd*, 577 F. App'x 11 (2d Cir. 2014).........................4

*ClearOne Communications, Inc. v. Bowers*,
   651 F.3d 1200 (10th Cir. 2011) ............................................................................4, 5

*Cohen v. Koenig*,
   932 F. Supp. 505 (S.D.N.Y. 1996).............................................................................4

*Cyrus v. City of New York*,
   450 F. App'x 24 (2d Cir. 2011) ...............................................................................8

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010)...................................................................................5

*Farkas v. Ellis*,
   783 F. Supp. 830 (S.D.N.Y.), *aff'd*. 979 F.2d 845 (2d Cir. 1992) ...........................................4

*Federman v. Artzt*,
   339 F. App'x 31 (2d Cir. 2009) ...............................................................................5

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)..................................................................................16

*Havens v. James*,
   76 F.4th 103 (2d Cir. 2023) ................................................................................2, 3

*Heyman v. Kline*,
   444 F.2d 65 (2d Cir. 1971)....................................................................................4

*Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*,
   609 F.3d 122 (2d Cir. 2010)...................................................................................6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013)....................................................................................4

*Lee v. Marvel Enters., Inc.*,
    765 F. Supp. 2d 440 (S.D.N.Y. 2011)..................................................................5

*Maldonado v. Local 803 I.B. of T. Health & Welfare*,
    490 F. App'x 405 (2d Cir. 2013) ......................................................................6

*McCarthy v. Manson*,
    714 F.2d 234 (2d Cir. 1983)..............................................................................5

*Morisseau v. DLA Piper*,
    532 F. Supp. 2d 595 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009)........................3

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)................................................................................6

*Padilla v. Maersk Line, Ltd.*,
    636 F. Supp. 2d 256 (S.D.N.Y. 2009)..............................................................4

*S.E.C. v. Homa*,
    514 F.3d 661 (7th Cir. 2008) ..........................................................................6

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)..............................................................................3

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    621 F. Supp. 2d 55 (S.D.N.Y. 2007)..............................................................7

*Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*,
    106 F. Supp. 2d 519 (S.D.N.Y. 2000)............................................................6

*Tiffany (NJ) LLC v. Forbse*,
    2012 WL 3686289 (S.D.N.Y. Aug. 23, 2012) ...................................................... 37

*Warren v. Garvin*,
    219 F.3d 111 (2d Cir. 2000)..............................................................................6

**Statutes & Court Rules**

S.D.N.Y. Local Civ. R. 6.3. ..............................................................................3, 4, 6, 7

Fed. R. Civ. P. 59(e) ......................................................................................3, 4, 5

Fed. R. Civ. P. 60(b) .....................................................................................5, 6, 3

Fed. R. Civ. P. 65(d) .........................................................................................7

Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ,") and together with Peppertree, "Petitioners"), hereby submit their Memorandum in Opposition to the Motion for Reconsideration of, or Alternatively, for Relief from, April 22, 2025 Memorandum Opinion (ECF No. 323) ("Motion" or "Mot.") filed by Magali Merino Ascarrunz and Alejandro Garzaro Perez (together, the "Peru Contemnors"), purporting to act on behalf of Telecom Business Solution S.R.L. ("TBS Peru"), Continental Towers Peru, S.R.L. ("CT Peru"), Collocation Technologies Peru, S.R.L. ("CLL Peru" and, together with TBS Peru and CT Peru, the "Peru Subsidiaries").[1]

## I.    **INTRODUCTION**

There is no basis to reconsider or grant the Peru Contemnors relief from this Court's April 22, 2025 Memorandum Opinion. The Motion, in effect, seeks procedurally improper and belated reconsideration of a determination made by the Tribunal over two (2) years ago in the Third Partial Final Award ("3PFA")—an award confirmed by this Court and by the Second Circuit—that the Peru Contemnors are agents of Respondents, acting on behalf of Terra, DTH, and Hernandez, in initiating and perpetuating the Peru Arbitration.

The gist of the Peru Contemnors' challenge (presented in declarations submitted improperly without leave of the Court) is that **after** the 3PFA, their employment was transferred from a DTH subsidiary to a subsidiary of the Company. This assertion smacks of bad faith: (i) the

---

[1] This action arises from an arbitration administered by the International Centre for Dispute Resolution of the American Arbitration Association captioned *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration") and presided over by a panel of three highly qualified and experienced arbitrators (the "Tribunal").  The Arbitration is pending among petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ" or "Petitioners"), Continental Towers LATAM Holdings Limited (the "Company"), and respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), respondent and Terra affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH," and Terra/DTH's controller, respondent Jorge Hernandez ("Hernandez" and together with Terra/DTH, the "Respondents").  Terra is the majority shareholder of the Company together with minority shareholders Peppertree and AMLQ.  Unless otherwise noted, all defined terms used herein shall have the same meaning as in the Court's April 22, 2025 Order (ECF No. 295, the "April 22 Order").

employment agreements themselves are invalid, as they were not approved by the Company's Board in violation of the Company's governing documents, and (ii) the changed employment arrangements are an obvious *ex post* sham, designed to evade the 3PFA and provide cover for their ongoing actions in concert with Respondents and Hernandez, in violation of the 3PFA Judgment. The Peru Contemnors should not be rewarded for trying to end-run the 3PFA and this Court's judgment.  The repeated holding—most recently in the April 22, 2025 Order—that the Peru Contemnors are ***not*** independent of Respondents, should not be reconsidered.

Nor does their pages-long argument on personal jurisdiction provide a basis for the Court to revisit the April 22 Order. That, too, is irrelevant given well-settled Second Circuit precedent that a non-party who, with notice of an injunction, aids and abets a party in violating the injunction, is subject to civil contempt remedies. *See Havens v. James*, 76 F.4th 103, 111-112 (2d Cir. 2023). The Peru Contemnors fail to meet their high burden to show that the Court overlooked controlling law or facts in holding them in contempt for aiding and abetting Respondents' violation of the 3PFA Judgment. Nor have they established "extraordinary circumstances" warranting relief.

Simply put, in defiance of the 3PFA, and this Court's judgment confirming the Award, the Peru Contemnors pressed ahead with the Peru arbitration; decisions were issued; and the Peru Contemnors initiated new proceedings in the British Virgin Islands seeking to register the decisions issued in the Peru Arbitration.  Nothing in the Motion justifies reconsideration of the April 22 Order, which found the Peru Contemnors in contempt.  Accordingly, the Court should deny the Motion.

## II.    LEGAL STANDARD

### A.    Local Civil Rule 6.3

"The standard for granting a motion for reconsideration under Local Civil Rule 6.3 is strict, as 'reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked.'" *Tiffany (NJ) LLC v. Forbse*, No. 11 CIV. 2012 WL 3686289, at *5 (S.D.N.Y. Aug. 23, 2012) (quoting *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008)). "Because 'such motions are not vehicles for taking a second bite at the apple,' in making a motion for reconsideration, 'a party may not advance new facts, issues or arguments not previously presented to the Court.'" *Id*. (internal citations omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 256–57 (2d Cir. 1995).

Local Civil Rule 6.3 provides that "[n]o affidavits shall be filed by any party unless directed by the Court." Joint Local Rules, S.D.N.Y. and E.D.N.Y., Local Civil Rule 6.3. This Court has specifically applied the requirement to obtain leave to file an affidavit to non-parties as well, despite the text of the rule. *See Tiffany (NJ) LLC,* 2012 WL 3686289, at *5  (finding non-party's motion for reconsideration "procedurally defective" because non-party did not seek permission to file a declaration "which was therefore submitted in violation of the Local Civil Rule"; "Given that [non-party's] motion is predicated entirely on the facts divulged in the declaration, the procedural deficiency is in itself grounds to deny the motion.").

## B.    Rule 59(e)

"'[R]econsideration of a previous order is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 598 (S.D.N.Y. 2008) (citation omitted) (Rule 59(e) motion denied), *aff'd*, 355 F. App'x 487 (2d Cir. 2009). Federal Rule of Civil Procedure ("Rule") 59(e) and Local Rule 6.3 "are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*., 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (recon. denied), *aff'd*, 577 F. App'x 11 (2d Cir. 2014). Rule 59(e) "is to be narrowly construed and strictly applied so as

3

to avoid repetitive arguments on issues that have been considered fully by the court." *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994) (recon. denied).

"Because the reviewing standard is strict, timely motions for reconsideration are usually denied unless the movant offers controlling decisions or facts that the Court originally overlooked, and that the movant could reasonably believe would have altered the Court's original decision. Any controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the Court in the underlying motion." *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258 (S.D.N.Y. 2009) (recon. denied); *accord Cohen v. Koenig*, 932 F. Supp. 505, 506–07 (S.D.N.Y. 1996) (recon. denied); *Farkas v. Ellis*, 783 F. Supp. 830, 832-33 (S.D.N.Y.) (re-argument denied), *aff'd*. 979 F.2d 845 (2d Cir. 1992). "Other limited circumstances for granting a motion for reconsideration include where the movant demonstrates that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Padilla*, 636 F. Supp. 2d at 259 (citing *Virgin Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *accord, Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (denial of reconsideration affirmed where movant "did not present any new facts or controlling law that the court overlooked that might reasonably be expected to alter the court's decision and order").

The decision whether to deny a motion to alter or amend the judgment under Rule 59(e) is "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983) (affirming denial of Rule 59(e) motion); *accord Morisseau*, 532 F. Supp. 2d at 598.

C.     **Rule 60(b)**

Rule 60(b) permits a court to "relieve a *party* or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b) relief is "not ordinarily . . . available to non-parties." *Federman v. Artzt*, 339 F. App'x 31, 33-34 (2d Cir. 2009). The Second Circuit has found that non-parties have standing to seek Rule 60(b) relief only in exceedingly narrow circumstances, not present here. *Id.* Even assuming that a non-party has standing under Rule 60(b) to seek relief from a final judgment or order, the non-party must show that "extraordinary circumstances" exist to justify extension of this drastic relief and that their interests were not adequately represented in the litigation preceding the final judgment or order. *Id.* at 34; *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 448 (S.D.N.Y. 2011).

Rule 60(b)(1) applies where a party asserts that an order or judgment was made on the basis of an error of the party itself, or on the basis of a legal or factual mistake made by the court. *In re 310 Associates*, 346 F.3d 31, 34-35 (2d Cir. 2003). Rule 60(b)(6) only applies if the reasons offered for relief for judgment are not covered under the more specific provisions of Rule 60(b)(1)-(5). *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000). A movant seeking vacatur under Rule 60(b)(6) must meet a high burden to demonstrate that "extraordinary circumstances" warrant relief. *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986).

A "Rule 60(b) motion may not be used 'to relitigate issues already decided.'" *Maldonado v. Local 803 I.B. of T. Health & Welfare*, 490 F. App'x 405, 406 (2d Cir. 2013). Rule 60(b) motions are "addressed to the sound discretion of the district court", and are generally "disfavored." *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010); *Lee*, 765 F. Supp. 2d

at 448 ("'Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases.'").

## III.    **ARGUMENT**

### A.    **The Court Should Disregard the Declarations and Exhibits**

The Peru Contemnors filed Declarations of Magali Merino Ascarunz ("Merino"), Jorge Alejandro Garzaro Perez ("Garzaro"), and Rosalind Nicholson ("Nicholson") and related Exhibits in support of the Motion. (*See* ECF Nos. 324-326). The Peru Contemnors never received leave from the Court to file them, as required under Local Civil Rule 6.3. For that reason alone, the Court should disregard the Declarations and Exhibits attached.

Local Civil Rule 6.3 governs Motions for Reconsideration and provides that "[n]o affidavits shall be filed by any party unless directed by the Court." Joint Local Rules, S.D.N.Y. and E.D.N.Y., Local Civil Rule 6.3. As this Court held in *System Management Arts Inc. v. Avesta Technologies Inc.*, "[a] motion for reconsideration is not the proper avenue for the submission of new material"; thus, "[s]uch material should be stricken and disregarded." *Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 106 F. Supp. 2d 519, 520–21 (S.D.N.Y. 2000) (striking declaration and attached exhibits filed without leave, citing Local Rule 6.3); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 68 (S.D.N.Y. 2007) ("a party may only submit new evidence in connection with a reconsideration motion with the court's permission" (citing Local Rule 6.3)); *id.* at 68 n.10 ("a party cannot evade Local Rule 6.3's strictures simply by submitting evidence without an accompanying, authenticating affidavit" because "allowing a party to submit documentary evidence without an accompanying affidavit would allow circumvention of Federal Rule of Evidence 901's authentication requirement"). This aspect of Local Civil Rule 6.3 applies with equal force to non-parties. *See Tiffany (NJ) LLC*, 2012 WL 3686289, at *5.

To the extent that the Declarations and Exhibits thereto consist of purportedly new evidence, the Peru Contemnors make no attempt to demonstrate that it is proper for the Court to consider such evidence (it is assuredly not). That plus their failure to seek leave before submitting the Declarations and Exhibits, as required by Local Civil Rule 6.3, require the Court to disregard both the improper Merino, Garzaro, and Nicholson Declarations, and the attached Exhibits , when considering the Motion.

> **B.    The Motion Should Be Denied Because the Peru Contemnors Wholly Fail to Establish Their Entitlement to The Extraordinary Relief of Reconsideration**

The Peru Contemnors assert two purported bases for the Court to reconsider its April 22 Order as it relates to the Peru Contemnors. Neither one meets the high standard required for the Court to grant the extraordinary relief that the Peru Contemnors request here.

> **1.    The Court Should Reject the Peru Contemnors' Attempt to Relitigate the Tribunal's Findings in the 3PFA that Merino and Garzaro Are Respondents' Agents, In Active Concert and Participation with Them**

The Motion improperly seeks to relitigate findings of fact made by the Tribunal in the 3PFA, which the Court relied upon in its April 22 Order, and by this Court in its confirmation of that award and the Contempt Motion. The Peru Contemnors argue that Merino and Garzaro now are employed and paid by the Company subsidiaries, and that they are independent from Respondents and Hernandez. (ECF No. 323, at 4-5). In particular, they claim that Merino and Garzaro's employment was transferred from DT Holdings to the Company subsidiaries in August 2023. (*Id*., at 6). The Peru Contemnors rely on the unauthorized declarations of Merino and Garzaro, and their unauthorized employment agreements purportedly evidencing the transfer of their employment. The agreements are invalid because they were not authorized by the Company Board; because they post-date the 3PFA; and because they do not establish that the Court overlooked any controlling facts put before the Court in the underlying briefing on the Contempt

7

Motion. The Peru Contemnors' attempt to undo, or collaterally attack, the factual underpinnings of the 3PFA judgment should be rejected out of hand.

> a. *The Court Properly Relied on Findings of Fact Made by the Tribunal in the 3PFA, and those Findings Cannot Be Undone on a Motion for Reconsideration of the April 22 Order*

Merino is the General Manager of TBS Peru, one of the Company's wholly owned Peru-based subsidiaries. Garzaro is the General Manager of Collocation Peru and Continental Peru, two of the Company's wholly owned Peru-based subsidiaries. Merino and Garzaro are employed and paid by DTH and/or its subsidiaries; and are beholden to Hernández, who owns and controls both Terra and DTH. They indisputably are agents of DTH and Hernandez, in active concert and participation with Respondents, as the Tribunal and this Court correctly found.

In the 3PFA, issued on February 22, 2023, the Tribunal found that, "in reality, the [Company's] operations are run by [DTH]—100% owned by Mr. Hernandez—through its affiliates organized in and under the laws of each country". (ECF No. 133-47, ¶ 3). The Tribunal also found that:

> **The evidence of Respondents' control over the Manager Claimants [*i.e.*, Merino and Garzaro, among others] is considerable, while the evidence that they are acting without Respondents' blessing here is almost nil.** Respondents have not disputed that Mr. Hernandez has the sole discretion to terminate the Manager Claimants from their non-Company positions at DTH. And the Manager Claimants provided evidence in this arbitration – extensive witness statements that argued the merits of Terra's Tower Rejection breach counterclaims in support of Terra's position on those claims . . . , at times when those issues were not actively the subject of our proceedings. Also, the Manager Claimants were in the forefront of Respondents' failed effort, before the Company's Board and in turn before the Tribunal, to justify disobedience to our Interim Relief Orders on the basis that Mr. Gaitan's alleged misconduct was a compliance risk to the Company.

(ECF No. 133-47, ¶ 57 (emphasis added)).

The Tribunal found that Petitioners "shifted the burden of proof to Respondents on the disputed fact issue of Respondents' support for the Foreign Arbitrations by presenting evidence of

(1) Respondents' and especially Mr. Hernandez's ability to direct and control, and indeed to dictate through intimidation, the conduct of the Manager Claimants and other employees of DTH and its affiliates to act unilaterally to affect their status adversely upon only his own whim and preference, and (2) the prior written testimony in this arbitration in support of Respondents' positions including but not limited to the Tower Rejection Breach counterclaim by the Manager Claimants: Ms. Merino and Messrs. Garzaro and Ortiz." (ECF No. 133-47, ¶ 75). Thus, the Tribunal found specifically that Merino and Garzaro—non-parties legally identified with DTH, TBS Peru, CT Peru, and CLL Peru—were acting on behalf of, and in active concert and participation with, Respondents and Hernandez in initiating, perpetuating, and failing to terminate the Foreign Arbitrations in Peru. The Tribunal also found that "[t]he real parties in interest in the Foreign Arbitrations and in th[e] Arbitration are precisely the same. The FACCs in the Foreign Arbitrations have no separate economic interest from that of their ultimate parent company, the Company, and the Manager Claimants stand in the capacity of agents for the FACCs so their own personal economic interests are irrelevant." (*Id.*, ¶ 126). The 3PFA "require[d] Respondents to bring about the termination of the Foreign Arbitrations and [to] prevent new ones, and [to] bear financial risk if they fail[ed] to do so." (*Id.*, ¶ 127).

This Court confirmed the 3PFA on September 6, 2023. (ECF Nos. 182; 183). The Second Circuit affirmed this Court's order and judgment confirming the 3PFA on April 23, 2025.

In the April 22 Order, the Court addressed Respondents' "attempt to relitigate the Tribunal's findings [in the 3PFA] that they have control over the claimants in the Peru arbitration"; found no "authority indicating that the Court may second-guess arbitrators' fact-finding in the context of ordering relief to protect a judgment confirming an arbitral award"; and further opined that, even if the Court could revisit the arbitrators' findings of fact, the doctrine of collateral

estoppel prevents Respondents from relitigating issues that were decided by the Tribunal. (ECF No. 295, at 16-19). The same principles apply to foreclose the Peru Contemnors' attempt to relitigate the Tribunal's findings and to collaterally attack the Court's April 22 Order here.

As the Court found, "Respondents had a full and fair opportunity to litigate the issues underlying the [3PFA] – including their control over the claimants in the Peruvian arbitration – and the [3PFA] unambiguously ordered them to terminate the Peruvian arbitration." (ECF No 295, at 35). "Respondents violated the Court's judgment confirming the [3PFA] because they did not cause the Peruvian arbitration to be terminated. Furthermore, the initiation of the Peru-Related BVI Action by Peruvian arbitration claimants violated the [3PFA's] order that 'Respondents shall prevent the commencement of any similar Foreign Arbitrations or other proceeding involving all or any of the subject matter of Respondents' counterclaims in this arbitration'". (*Id.*, at 35-36).

> ### b.    The Peru Contemnors Fail to Challenge the Court's Determination that They Are Furthering Respondents' Interests in the Peru Arbitration and the Peru-Related BVI Action

Foremost among the smoke and mirrors the Peru Contemnors erect to evade consequences for their actions is their phony claim that in August 2023—**six months after the 3PFA was issued**—their "employment was transferred" from DTH to the Peru Subsidiaries in a transparent, post hoc attempt to distance Respondents from the Foreign Arbitrations. (ECF No. 323, at 6). But this argument fails to undermine the Court's determination that the Peru Contemnors are being controlled by Respondents. (*See* ECF No. 295, at 16-19). To begin, any such transfer was unauthorized, as the Company's governing Shareholders Agreement clearly provides that Company subsidiaries such as the Peru Subsidiaries cannot enter into such agreements without the authorization of the Company's board. (*See* ECF No. 245-1 §§ 4.04(a) (xviii) (requiring Board approval for "entry by the Company or a Company Subsidiary into any agreement, or the consummation by the Company or a Company Subsidiary of any transaction . . . not included in

the Annual Budget")).  The Peru Contemnors make no argument that the purported "transfer of employment" was authorized by the Board. Indeed, the agreements they submitted with the Motion show that they themselves were the only ones acting on behalf of the Peru Subsidiaries in connection with these agreements.  (See ECF Nos. 324-1, 325-1 (Merino agreed to the transfer of her own employment and that of Garzaro on behalf of TBS Peru)).[2]

And in any event, even if the Peru Contemnors are no longer DTH employees—and they do not dispute that they were DTH employees when they initiated the Peru Arbitration—it is beyond dispute that they have been in "active concert and participation" with Respondents in continuing the Peru Arbitration and initiating the Peru-Related BVI Action.[3]   Indeed, even since the April 22 Order was issued, Respondents and the Peru Contemnors continue to sing from the same songbook, continuing to assert that the Peru Arbitration is a valid means for the Peru Contemnors "to fulfill their fiduciary duties of developing business opportunities to enhance the company's value"—i.e., to prosecute Terra's stayed Arbitration counterclaims.  (ECF No. 306-5).

Nor do the Peru Contemnors provide the Court with any evidence to establish that they were not acting on behalf of Respondents in initiating the Peru-Related BVI Action.  Like their unauthorized transfer of employment, the Peru-Related BVI Action was not authorized by the Company's Board, as required by the Shareholders Agreement.  (See ECF No. 245-1 §

---

[2] Tellingly, the declarations explain that when the Company was formed in 2015, their employment was transferred from CLL Peru to DT Peru "with the full participation and knowledge of the Company's Board."  ¶ 13.  They make no such assertion—because they cannot—that the transfer of employment back to CLL Peru after the 3PFA was done with any participation and knowledge of the Company's Board.

[3] Indeed, even as employees of a company subsidiary, they were not allowed to retain counsel and initiate the Peru related BVI proceedings without Board authorization. See ECF No. 245-1 §§ 4.04 (viii) (requiring Board approval for "the commencement, settlement, payment, discharge or satisfaction of any litigation, claim, liability or obligation (absolute, accrued, asserted or unasserted, contingent or otherwise) involving (A) DTH or any of the DTH Entities under the EPC Contracts; (B) the Company, the Initial A Shareholders or DTH under the Development Agreement or (C) the Company or any Company Subsidiary and any Shareholder or any  Affiliate or Related Entity of a Shareholder pursuant to any other agreement, arrangement or transaction.")

4.04(a)(vii)).  And the Peru Contemnors do not dispute that they had notice of the 3PFA and 3PFA Judgment when they initiated the Peru-Related BVI Action.  Indeed, the Peru Arbitration decisions attached to the Peru Contemnors' declarations specifically reference the 3PFA.  (*See* ECF No. 324-2 at 23, 27-28; 325-2 at 23, 27-28).

Finally, and tellingly, the Peru Contemnors attempt to excuse their non-compliance with the April 22 Order by continuing to advance the absurd claim that the onus for causing the termination of the Peru-Related BVI Action is on *Peppertree*.  (*See* ECF No. 323, at 9-11).  Again, the Peru Contemnors rely on another unauthorized declaration from their BVI counsel claiming that, as a matter of BVI law, the most efficient and reliable means for causing the termination of the Peru-Related BVI Action requires action by the Company, not the Peru Subsidiaries, and that "none of the three possible courses of action to be pursued in the BVI . . . could have been done within the time limits imposed by the April 22 Order . . . ."  (*Id.* at 11 n.5; *see also* ECF No. 326).[4]

Not so.  As set forth in the declaration of Scott Tolliss filed herewith, the Peru Contemnors can successfully apply to revoke the order issued in the Peru-Related BVI Action, and could have done so (or pursued an appeal) before compliance with the April 22 Order was required.  *See* Rau Decl. ¶¶ 10-28.  As Mr. Rau also observes, the Peru Contemnors' assertion that the Company could more easily cause the termination of the Peru-Related BVI Action overlooks key considerations, including the fact the Company does not have BVI counsel, and the Peru Contemnors have improperly conditioned their consent to an application by the Company, on the Company agreeing that the Peru Contemnors "are and will remain free of any potential past, present, or future liability of any kind or nature toward" the Peru Subsidiaries.  *See id.* ¶¶ 29-32 (quoting ECF No. 299-2).

---

[4] Also telling is that the Peru Contemnors' BVI counsel makes no such representations with respect to the El Salvador-related BVI Action, which they also initiated and which the Court has ordered to be terminated.

### 2. The Peru Contemnors Fail to Establish that the Extraordinary Remedy of Reconsideration Is Warranted or Appropriate Here

The Peru Contemnors fail to point out controlling decisions or facts that the Court originally overlooked that might reasonably be expected to alter the Court's April 22 Order. Nor have they met the high burden under Rule 60(b) to show "extraordinary circumstances" warranting relief.

As a threshold matter, the Peru Contemnors evidently concede that *Havens v. James*, 76 F.4th 103 (2d Cir. 2023), is controlling authority (ECF No. 323, at 14-15), thus reaffirming the Court's reliance on *Havens*. As set forth in the April 22 Order, *Havens* provides:

> Courts may hold in contempt a non-party who, with notice of an injunction, aids and abets a party in violating the injunction. "Under an aiding-and-abetting theory, a court first must conclude that 'the party subject to the court's mandate committed contempt.'" "A court must next conclude that 'the challenged action' of the nonparty 'was taken for the benefit of, or to assist, a party subject to the decree' in violating the injunction." "The enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct."

(ECF No. 295, at 38-39 (quoting *Havens*, 76 F.4 at 111-112)). The Peru Contemnors rely on the exact same holdings in their brief. (ECF No. 323, at 14-15). The Court did not overlook them.

The Peru Contemnors then argue that "[t]here can be no adjudication of liability or sanctions against a non-party without affording it a full opportunity at a hearing, after adequate notice, to present evidence"; and, further, that the court must have personal jurisdiction over the non-party before it can hold a hearing or sanction a non-party. (ECF No. 323, at 15). But they rely on inapposite case law concerning attempts to enforce an injunction against **non-parties not found to be aiding and abetting a party in violating an injunction**. Those cases—*NML Capital*, *Gucci*, and *Tiffany*—do not control here, where the April 22 Order rests on findings that the Peru

Contemnors had notice of the injunction and nevertheless aided and abetted Respondents in violating it.[5]

Notably, the Peru Contemnors evidently concede that, as the Court found, each of them (Merino, Garzaro and, by extension, the Company's Peru subsidiaries) received actual notice of the Court's judgment confirming the 3PFA. (ECF No. 295, at 41-42 n.186)[6]. They also evidently concede that, as the Court found, they refused to terminate the Peru arbitration for Respondents' benefit, and that they were "responsible for the foreign actions and therefore taking actions for the benefit of Respondents and to assist them in violating the [3PFA]." (*Comp*. ECF No. 295, at 41 (Court's findings), *with* ECF Nos. 323; 324; 325). In fact, they **admit** that they initiated the arbitration in Peru against Peppertree and the Company in order to "end[] the abusive exercise of rights by the class B partner, Peppertree, over the Peruvian Subsidiaries, and specifically the Peru Corporate Non-Parties." (ECF No. 323, at 7). This is an obvious reference to the factual basis for Terra's Counterclaims in the Arbitration, and only serves to confirm that the Peru Contemnors were aiding and abetting Respondents' violation of the 3PFA Judgment.

The Court relied on the Tribunal's findings of fact in the 3PFA to arrive at these conclusions and hold that the Peru Contemnors are subject to civil contempt remedies. (ECF No. 295, at 41). As set forth above, there is no basis for the Court to revisit those fact findings, and the Peru Contemnors' purported evidence—even if considered by the Court—is not new, and does not establish that the Court overlooked any controlling fact in issuing the April 22 Order.

---

[5] As the Tenth Circuit has observed, *Canterbury Belts Ltd*. appears to have been wrongly-decided, as the court there "erroneously rel[ied] on one of its earlier decisions, i.e., *Heyman v. Kline*, 444 F.2d 65 (2d Cir. 1971)" which "was distinguishable . . . because the nonparty at issue therein was not found to have acted in concert with the party in the case" and, thus, *Heyman*, "in the absence of 'active concert or participation' by the nonparty, required typical proof of personal jurisdiction over the nonparty." *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215 (10th Cir. 2011).

[6] The Peru Contemnors do not contest this finding, either in their brief or in the declarations of Merino and Garzaro. (*See* ECF Nos. 323; 324; 325).

**3.      Even If Some Heightened Review of the Peru Contemnors' Contacts with the Forum Were Required, the Court Here Had Specific Jurisdiction to Issue the April 22 Order Given that the Peru Contemnors Purposefully Directed their Conduct in Violating the 3PFA Judgment to this Forum**

The Peru Contemnors contend that the Court lacks personal jurisdiction over them because they are foreign non-parties and, thus, that the Court cannot hold them accountable for their contempt of the 3PFA Judgment. (*See* ECF No. 323, at 16-22).

Courts routinely exercise personal jurisdiction in contempt proceedings over non-parties on the basis that non-parties may not assist, aid, or abet a violation of an order that directly binds a party over whom the Court has personal jurisdiction—even in the absence of other contacts between the non-parties and the forum. *See, e.g.*, *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010); *see also ClearOne Commc'ns,* 651 F.3d at 1216  (holding non-party "submitted himself to the district court's jurisdiction" by violating injunctive orders in active concert or participation with the defendants); *S.E.C. v. Homa*, 514 F.3d 661, 675 (7th Cir. 2008) ("Jurisdiction over persons who knowingly violate a court's injunctive order, even those without any other contact with the forum, is 'necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.'"). Such "decisions rely on the theory that intentionally violating an asset freeze injunction is conduct 'designed to have purpose and effect in the forum,' and that the authority to force compliance 'is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014).

The Peru Contemnors cite *Gucci America, Inc. v. Weixing Li* where the Second Circuit "found no case . . . applying such an analysis in the context of a *foreign* nonparty with only limited contacts in the forum." 768 F.3d 122, 137 (2d Cir. 2014). The court went on, however, to say that "[t]he question whether the exercise of personal jurisdiction is appropriate in this context may

15

depend, in part, on the nature of the foreign nonparty's contacts with the forum." *Id*. at 137-38. Notably, in *Gucci America* the non-party bank was <u>not</u> found to be in active concert and participation with a party, such that its violation of the asset freeze injunction aided and abetted the party. *Gucci* therefore is readily distinguishable from the instant case, in which the Peru Contemnors were found to be aiding and abetting Respondents' violation of the 3PFA Judgment.

Even if this Court reads *Gucci* to require some heightened review of the Peru Contemnors' contacts with the forum (it should not), the Court should find that it has specific personal jurisdiction over the Peru Contemnors. The Court's judgment confirming the Tribunal's awards for both prohibitory and mandatory injunctive relief in the 3PFA constitutes an injunction of this Court to which Rule 65(d) applies. The 3PFA both mandated that "Respondents . . . cause the Foreign Arbitrations to be terminated within 10 days" and prohibited "the commencement of any similar Foreign Arbitration or other legal proceeding involving all or any of the subject matter of Respondents' counterclaims in this arbitration." (ECF No. 245-6 (3PFA) at 42). In the April 22 Order, the Court relied on the Tribunal's fact findings in the 3PFA to conclude that the Peru Contemnors aided and abetted Respondents' violation of the 3PFA. The Peru Contemnors therefore directly caused—and, indeed, continue to cause—Respondents to flout this Court's orders. This suffices to show that the Peru Contemnors have purposefully directed their conduct toward this forum, establishing the required minimum contacts.

Further, it is equitable for the Court to exercise specific personal jurisdiction over the Peru Contemnors. "[Parties] may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Eli Lilly*, 617 F.3d at 195. The Tribunal's fact findings include a finding that Respondents and Hernandez control Merino and Garzaro; thus, it is evident that Respondents have ignored, dodged, and, in effect, nullified the

3PFA Judgment by carrying out prohibited acts (perpetuating the Peru Foreign Arbitrations and initiating and perpetuating the Peru-Related BVI Action), and omitting to perform required acts (termination of the Foreign Arbitrations), through the Peru Contemnors. The movants' conduct is directed toward this forum in defiance of the 3PFA Judgment.

Thus, the Court had personal jurisdiction over the Peru Contemnors given that they had actual knowledge of the 3PFA Judgment, and they nevertheless aided and abetted a violation of that order and judgment. This is no basis for reconsideration.

* * *

In sum, the Peru Contemnors have not shown that the Court overlooked controlling decisions or facts that were put before the Court in the underlying Contempt Motion; nor have they identified any intervening change in controlling law, new evidence, or manifest injustice arising therefrom.  The Motion thus should be denied.  *See Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011) (affirming denial of motion for reconsideration where movant "fail[ed] to point to any case law or other relevant information that the district court overlooked", and his arguments merely "amount[ed] to a disagreement with the district court's conclusions").

IV.    **CONCLUSION**

For the foregoing reasons, the Court should deny the Peru Contemnors' Motion for

Reconsideration, and grant such other and further relief as this Court deems just and warranted.

Dated:  May 30, 2025                              Respectfully submitted,

By:  /s/ Michael N. Ungar                         By:  /s/ Gregg L. Weiner
Michael N. Ungar                                  Gregg L. Weiner
(admitted *pro hac vice*)                         Andrew S. Todres
Katherine M. Poldneff                             Ethan Fitzgerald
**UB GREENSFELDER LLP**                           **ROPES & GRAY LLP**
1660 West 2nd Street, Suite 1100                  1211 Avenue of the Americas
Cleveland, Ohio 44113-1406                        New York, New York 10036-8704
Phone: (216) 583-7000                             Phone: (212) 596-9000
Fax:    (216) 583-7001                            Fax:    (212) 596-9090
mungar@ubglaw.com                                 gregg.weiner@ropesgray.com
kpoldneff@ubglaw.com                              andrew.todres@ropesgray.com
                                                  ethan.fitzgerald@ropesgray.com
David A. Landman
**UB GREENSFELDER LLP**                           Daniel V. Ward
1700 Broadway, Suite 1802                         (admitted *pro hac vice*)
New York, New York 10019-7710                     **ROPES & GRAY LLP**
Phone: (917) 262-0470                             Prudential Tower
Fax:    (917) 262-0480                            800 Boylston Street
dlandman@ubglaw.com                               Boston, Massachusetts 02199-3600
                                                  Phone: (617) 951-7000
                                                  Fax:    (617) 951-7050
*Counsel for Petitioners Telecom Business*        daniel.ward@ropesgray.com
*Solution, LLC and LATAM Towers, LLC*

                                                  *Counsel for Petitioner AMLQ Holdings (Cay),*
                                                  *Ltd.*