UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Telecom Business Solution, LLC, *et al.*, | Civil Action No.: 1:22-cv-01761 |
| Petitioners, | Judge Lewis A. Kaplan |
| v. | |
| Terra Towers Corp., *et al.*, | Magistrate Judge Robert W. Lehrburger |
| Respondents. | |

**NON-PARTIES' REPLY IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION OF, OR ALTERNATIVELY,
FOR RELIEF FROM, APRIL 22, 2025 MEMORANDUM OPINION**

Non-Parties, TBS Peru, CT Peru, CLL Peru ("**Peru Subsidiaries**"), Magali Merino Ascarrunz, and Alejandro Garzaro Perez—file this reply in support of their motion for reconsideration of, or alternatively, for relief from, the April 22, 2025 Contempt Order (DE:322-326, "**Motion**") as to them only, and in response to Petitioners' opposition to the Motion (DE:353).

## ARGUMENT

**I.    Non-Parties' Declarations and Exhibits Are Properly Before the Court.**

Petitioners argue the Court should disregard the declarations and exhibits filed in support of the Motion (DE:324-326) because they claim Local Rule 6.3 required the Non-Parties to obtain leave of Court before filing those materials. DE:353 at 6-7. Rule 6.3 does not prohibit *non-parties* from filing affidavits; instead, it provides that "[n]o *party* is to file an affidavit unless directed by the court." (emphasis added). Relying on *Tiffany (NJ) LLC v. Forbse*, 2012 WL 3686289 (S.D.N.Y. Aug. 23, 2012) (DE:353 at 3, 6), Petitioners claim Rule 6.3 applies to non-parties, but they overlook that *Tiffany* was appealed to the Second Circuit, which vacated that portion of the district court's order. *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 Fed. Appx. 550, 552-53 (2d Cir. 2014) ("**Tiffany II**") ("We vacate this portion of the [original order challenged by the foreign non-party on reconsideration] and remand for the district court to: (1) consider whether it has personal jurisdiction necessary to order the [non-party] to comply with the asset freeze; and (2) apply principles of international comity before deciding whether to order the [non-party] to comply."). Petitioners also overlook that the Motion seeks relief under Federal Rules of Civil Procedure 59(e) and 60(b) (DE: 323 at 1, 13-14, 22-23), neither of which prohibits affidavits or declarations.

The Non-Parties are not parties to this action and were not represented at the proceedings resulting in the Contempt Order entered against them. Under fundamental principles of due

2

process, they have a right to a fair and meaningful opportunity to be heard on their challenge to the Contempt Order. *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) (There can be "no adjudication of liability against a [non-party] without affording it a full opportunity at a hearing, after adequate notice, to present evidence. In such a hearing, before any finding of liability or sanction against a non-party, questions of personal jurisdiction may be properly raised.") (internal quotations and citation omitted). That right is illusory without the ability to present evidence to support their position on the issues raised in the Motion.

**II.     The Non-Parties Have Established a Right to Reconsideration.**

The Contempt Order *directly enjoins* the Non-Parties by requiring them to terminate the Peru-BVI Proceeding within a two-week timeframe—and, if they do not, non-parties Merino and Garzaro face substantial coercive fines. DE:295 at 48 [¶¶ 6, 6.1, and 6.2]. Petitioners try to characterize the injunction as something it is not: the Contempt Order does not merely give *notice* to the Non-Parties of an injunction under Federal Rule of Civil Procedure 65(d) (DE:353 at 16), nor does it grant an injunction against them Non-Parties for pursuing certain arbitration in Peru (*id.* at 1-2, 10, 11, 14, 16-17). Rather, it enjoins the Non-Parties for what happened in November 2024 when the Peru-BVI Proceeding was filed.

Petitioners try to shift the focus to the Peru Arbitration to sidestep the fact that in November 2024, when the Peru-BVI Proceeding was filed, non-parties Merino and Garzaro had no employment relationship with any DTH subsidiary. *See* DE:323 at 6-7, 324 at 2-6, and 325 at 3-6. That fact is critical because Peppertree's request for anti-suit injunction and sanctions against the Non-Parties was based on its assertion that, at the time the Peru-BVI Proceeding was filed in November 2024, Merino and Garzaro worked for, and were paid by, DTH; but Merino and

3

Garzaro's employment agreements refute that and show that, by then, they had been exclusively in TBS Peru's payroll for over one year  *See id.*

Petitioners cannot refute what the employment agreements show, so they resort to arguing the contracts are invalid because they were not approved by Continental's Board.  Petitioners' argument has no merit.

As a matter of Peruvian law, the employment agreements cannot be disregarded as a sham.  *See Declaration of Carlos Alberto Cornejo Vargas,* a Peruvian employment attorney ("**Cornejo Decl.**").  The employment agreements were registered with the relevant authorities (including the tax authorities), Merino and Garzaro's pay stubs show the employment transfer took effect, and their status as General Managers of the Peru Subsidiaries is fully recognized before the public commercial registries.  *See Supplemental Merino and Garzaro Declarations*.  Contrary to Petitioners' allegations, the Shareholders Agreement ("**SHA**") has no bearing here.  The Peru Non-Parties are not parties to it.  The Peru Subsidiaries are governed by their own bylaws that give ample authority to their General Managers and representatives to enter into employment agreements.  *See Declaration of Carlos Alberto Cornejo Vargas*; *see also Supplemental Merino and Garzaro Declarations*, respectively, at ¶5.  Also, the payroll transfer did not result in new appointments—Merino and Garzaro remained in the same roles they had performed for the Peru Subsidiaries for over a decade.  *See* DE:323 at 6-7, 324 at 2-6, and 325 at 3-6.

Even under the terms of the SHA, a Board resolution was not needed to change the payroll source for Merino and Garzaro.  As explained by Garzaro and Merino in their Supplemental Declarations (at ¶9, respectively), the salary they receive has always originated from, and been

4

included in, the annual budget of TBS Peru. Therefore, it was not necessary to obtain Board approval pursuant to the SHA. *Id*;[1] *see also* DE:245-1, SHA §§4.04(a)(xviii).

Even if the Peru Arbitration had been the basis for the Contempt Order (it was not) and if this Court concluded it has specific personal jurisdiction over the Non-Parties, the Court would still need to conduct an international comity analysis before exercising personal jurisdiction over the non-parties. *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 138-140 (2d Cir. 2014); *Tiffany II*, 589 Fed. Appx. at 555.

When Petitioners finally address the personal jurisdiction issue, they claim the Non-Parties have minimum contacts with New York "by aiding and abetting Respondents' violation of the 3PFA Judgment." DE:353 at 15-17. Not so. As discussed in the Motion and the supporting declarations and exhibits, the Non-Parties are independent from Respondents and Jorge Hernandez, they deny aiding and abetting any violation of the TPFA by Respondents, and have no contacts with this forum. DE:323-325; *see also* DE:338-1, Hernandez Declaration at ¶¶ 10-11.

Petitioners try to confuse the issue on reconsideration by incorrectly suggesting the Contempt Order grants an injunction against the Non-Parties for pursuing the Peru Arbitration (DE:353 at 16-17). The Contempt Order shows otherwise. The Non-Parties are enjoined from pursuing *the Peru-BVI Proceeding in November 2024*, not the Peru Arbitration. Peppertree used Merino and Garzaro's alleged employment at DTH in November 2024 as the hook to justify the injunction against them. The record presented by the Non-Parties refutes Peppertree's predicate.

---

[1] Peppertree knows this, but rather than acknowledge it, creates a straw man argument that twists Merino's and Garzaro's words in their first declarations to imply that when the corporate structure was created and their payroll source was transferred from CLL Peru to DT Peru, the Continental Board approved such change. That is not true. Tellingly, Peppertree offers no evidence showing any such resolution was issued. There was none. The fact that Continental's Board had "knowledge" of the original transfer or "participated" in establishing new corporate structures, does not mean the Board needed to approve any transfer of employment of Garzaro, Merino, or any employee in CT Peru, CLL Peru or TBS Peru.

Contrary to Petitioners' contention (DE:353 at 13-17), under these circumstances, to directly enjoin foreign non-parties based on their purported violation of a prior injunction (the TPFA) entered against a named party, the Court must first conduct a personal jurisdiction analysis and afford the non-parties due process. *See Gucci*, 768 F.3d at 134 ("a district court can enforce an injunction against a nonparty … only if it has personal jurisdiction over that nonparty") (citation omitted); *NML Capital*, 727 F.3d at 243.

Even if the Court concludes it has personal jurisdiction over the Non-Parties, the Contempt Order needs modification. The record shows that immediately after the Non-Parties learned of the Contempt Order, they undertook diligent efforts to work with the Continental Board to fulfill the intent of Continental's Board resolutions addressing the injunction (and the Contempt Order complied with). DE:323 at 9-11. Contrary to Petitioners' claims (DE:353 at 12), the Non-Parties have thoroughly outlined, and now do so again via a new Declaration from BVI Counsel showing the most reliable and efficient way to set aside the Recognition Order in the Peru-BVI Proceedings, requires Continental's cooperation. *See Walkers Supplemental Declaration; see also* (DE:326) (Option 3, application by Continental to BVI Court for an order setting aside the Recognition Order, with the Non-Parties consenting to same). That is why a Board Resolution clearly confirming the Board's directive to pursue that option is needed. Petitioners, however, are unwilling to entertain that option, because they prefer to keep the issue alive and continue badgering the Non-Parties. *See* DE:353 at 12; *see also Supplemental Declarations of Merino and Garzaro*, respectively, at Exs. G and H, respectively. Petitioners' argument that such option cannot be pursued because Continental does not have counsel (DE:353 at 12) is non-sensical. Non-Parties offered to prepare the submission to pursue Option 3 and have agreed to consent to same. *See*

6


*Supplemental Declarations of Merino and Garzaro*, respectively, at ¶18. Continental only needs to sign the papers at *no cost*.

As a practical matter, the Contempt Order needs to be modified because setting aside the Recognition Order issued in the Peru-BVI Proceeding will take longer than the two-week timeframe in the Contempt Order, particularly if Peppertree continues obstructing the Non-Parties' actions to fulfill the Contempt Order. *See* DE:323 at 9-11. Also, for Merino and Garzaro, the amount of the coercive fines are excessive; they cannot afford to pay the fines. *See Supplemental Declarations of Merino and Garzaro*, at ¶11.

In sum, the Non-Parties respectfully request the Court to reconsider and vacate that part of the Contempt Order that applies to them based on the arguments and evidence presented. *See Kelly Toys Holdings LLC v. 19885566 Store*, 2024 WL 532290, *1-2 (S.D.N.Y Feb. 9, 2024) ("reconsideration may be granted where the moving party points to matters that 'might reasonably be expected to alter the conclusion reached by the [C]ourt.'") (citation omitted). Alternatively, if the Court denies that relief, they request that—in light of the immediate steps taken to comply with the Court's directives and the time needed to set aside the Recognition Order in the Peru-BVI Proceeding under the most efficient option—the Court should at least modify the Contempt Order to: (i) extend the time for compliance (subject to monthly status reports) consistent with the timeframes associated with the options set out in the Walkers Declaration; and (ii) eliminate the coercive civil fine provisions against Merino and Garzaro.

Dated: June 5, 2025                                          Respectfully submitted,

                                                             <u>s/ Eduardo De la Peña Bernal</u>

| | |
|---|---|
| **PRYOR CASHMAN LLP** | **SHUTTS & BOWEN LLP** |
| James Stephen O'Brien, Jr | Eduardo De la Peña Bernal |
| Erik Bakke | Aliette D. Rodz |
| 7 Times Square, Ste. 40th Floor | Martha Ferral |
| New York City, NY 10036 | 200 S. Biscayne Blvd., Ste. 4100 |
| (212) 421-4100 | Miami, FL 33131 |
| Fax: (212) 326-0806 | (305) 358-6300 |
| ebakke@pryorcashman.com | edelapena@shutts.com |
| jobrien@pryorcashman.com | arodz@shutts.com |
| | mferral@shutts.com |

*Counsel for the Non-Parties, Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Marino Ascarrunz, and Alejandro Garzaro Perez*

### CERTIFICATE OF SERVICE

I hereby certify that this reply was filed electronically on June 5, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

<u>/s/ Eduardo De la Peña Bernal</u>

### CERTIFICATE OF COMPLIANCE

I hereby certify that this reply complies with the word count limitations of Local Civil Rule 6.3.

<u>/s/ Eduardo De la Peña Bernal</u>