June 6, 2025

| | |
|---|---|
| Gregg L. Weiner | Michael N. Ungar |
| Ropes & Gray LLP | UB Greensfelder LLP |
| 1211 Avenue of the Americas | 1660 W. 2nd Street, Ste. 1100 |
| New York, NY 10036 | Cleveland, Ohio 44113 |

<u>**BY HAND DELIVERY & EMAIL**</u>

The Honorable Lewis A. Kaplan
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   ***Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.,***
       No. 22-cv-01761[1]

Your Honor:

As detailed in our brief in support of additional contempt sanctions that is being filed today ("Additional Sanctions Motion"), we write on behalf of Peppertree/AMLQ to inform the Court of Respondents' utter failure to comply with basic discovery obligations in the expedited proceedings ordered by this Court on May 21, 2025 (ECF No. 334) in advance of the June 17th hearing. Respondents have refused to respond to discovery in good faith by outright refusing to produce several categories of documents based on discovery limitations that were never imposed by your Honor. Additionally, in response to Peppertree/AMLQ's Fed. R. Civ. P. 30(b)(6) deposition notice, Respondent DTH produced an inadequate witness: a non-employee attorney who did not speak English, knew nothing about the noticed deposition topics, and was unable to give complete and knowledgeable answers as he was required to do.

Respondents' failure to comply with discovery obligations is not surprising, or new: Respondents consistently flouted their discovery obligations—including in respect of their baseless criminal proceedings—throughout the Arbitration, and the Tribunal has issued numerous adverse inferences against them. Accordingly, for the reasons set forth in Peppertree/AMLQ's Additional Sanctions Motion, Peppertree/AMLQ are seeking additional adverse inferences in this

---

[1] As the Court knows, we represent petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ") in the above-captioned action. This action arises from an arbitration administered by the American Arbitration Association captioned *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration") and presided over by a panel of three highly qualified and experienced arbitrators (the "Tribunal"). The Arbitration is pending among Peppertree/AMLQ, Continental Towers LATAM Holdings Limited (the "Company"), and respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), respondent and Terra affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH"), and respondent Jorge Hernandez ("Hernandez" and together with Terra/DTH, the "Respondents"), whom both the Tribunal and this Court have already found to control Terra/DTH.

contempt proceeding against Respondents for refusing to produce the documents and information requested and for failing to make available a proper and educated 30(b)(6) witness for deposition.

Respondents are on notice of the possibility of adverse inferences as a sanction for discovery non-compliance in this contempt proceeding—a topic of extensive discussion at the hearing before your Honor on May 21, at which your Honor ordered the additional discovery that Respondents have again refused to provide. Petitioners request in the Additional Sanctions Motion that adverse inferences be drawn here. Nonetheless, out of an abundance caution, to ensure that Respondents have a final opportunity to address these deficiencies, Peppertree/AMLQ are also submitting this letter-motion detailing the deficiencies below and requesting that the Court direct Respondents to cure them promptly.

I. **Respondents Invent False Limitations on the Scope of Discovery as an Excuse to Withhold Critical Responsive Documents**.

At midnight on Thursday May 29—Respondents' deadline to ***produce*** documents responsive to Peppertree/AMLQ's Requests for Production of Documents—Respondents transmitted their "Response to First Set of Requests for the Production of Documents Directed to Respondents" ("Respondents' Objections"). Ex. 1.[2] The primary basis for Respondents' refusal to produce multiple categories of relevant documents—including, but not limited to, <u>any communications at all</u> - is that they were somehow outside the scope of the "limited discovery" ordered by your Honor at the May 21 hearing.[3] This objection is meritless because the Court issued no such order that could reasonably be interpreted to preclude basic, focused requests for communications on subjects directly relevant to the issues before the Court. Nonetheless, Respondents improperly relied on this absurd pretext to **produce <u>zero</u> emails, text messages, or any other communications whatsoever** by and between the Respondents and any third parties related to the very criminal proceedings that are directly at issue in the expedited proceedings ordered by this Court. Then, when asked about this failure, their 30(b)(6) witness could not explain anything. *See, e.g.* Ex. 5 at 54:25–57:6; 60:10–61:22; 68:24–69.

For example, Request for Production No. 3 sought "All Communications between or among Respondents, their Agents, and any Person, prosecutor, government authority, or Entity concerning the Criminal Actions, Potential Criminal Actions, or the matters set forth in their

---

[2] Peppertree/AMLQ promptly sent correspondence advising Respondents of the multiple deficiencies in their production, including "that none of the objections made by Respondents were made at any point in the week since Petitioners served their Requests for Production" and that Respondents failed even to attempt to meet and confer regarding any alleged issues regarding the scope of Peppertree/AMLQ's Requests for Production. Ex. 2 at 2 (the "Discovery Correspondence"). Respondents failed to respond and have made no effort to meet and confer or cure their deficiencies.

[3] Respondents did not produce emails, text messages, or any other communications by and between the Respondents or any third parties related to the very criminal proceedings that are directly at issue in Claimant's Motion for Preliminary Injunction and the expedited proceedings on that Motion ordered by this Court based on their assertion that "the limited scope [of discovery] ordered at the hearing" only requires Respondents to produce 'documents produced in the criminal proceedings' and no other 'Documents' or 'Communications' as those terms are defined, consistent with the Court's rules. Ex. 2 at 2.

Declarations submitted in the above-captioned case…" Ex 1. at 9.[4] Although this request undoubtedly seeks communications at the heart of the proceedings before the Court, Respondents simply refused to produce any documents whatsoever, relying instead on their unsupported objection that "**[t]his request is outside the scope of the limited discovery ordered by Judge Kaplan**." Ex 1. at 9 (emphasis added). As this Court may recall, a central feature of Peppertree/AMLQ's Motion for Further Civil Contempt Sanctions and Emergency Injunctive Relief (the "Contempt Motion") was the interview of Juan Francisco Quisquinay (the CFO of both DTH and the Company) "with the prosecution making false allegations in connection with that complaint occurred *just hours after* this Court issued its April 22 Order." ECF. No. 330 at 11. It defies both reality and common sense that there would be no communications relating to this encounter; however, **Respondents produced zero communications on this subject**.

As another example, Peppertree/AMLQ requested "Communications with any media outlets or public relation firms or agencies regarding the Criminal Actions or Potential Criminal Actions." Ex. 1. at 7. Respondents refused to produce any responsive documents based on unfounded and arbitrary purported limitations on the scope of discovery.[5] Peppertree/AMLQ know such documents exist. Indeed, there is a publicly available article that shows that Terra Towers is working with a public relations agency by the name of "Media Theory," and has used this agency to issue statements regarding the criminal actions against Mr. Gaitan. Ex. 3 at 2 ("The response came from a public relations agency, **Media Theory, who sent the letter on behalf of Terra Towers**.") (emphasis added).

II. **Respondents Refuse to Provide Basic Information Regarding the Ownership & Control of DTH.**

Respondents are also improperly withholding basic information regarding the ownership and control of respondent DTH, claiming this basic information also falls outside the limited scope of discovery that Respondents have invented to cover these proceedings. Mr. Hernandez, at his June 1st deposition, outright refused to provide the names of the "elders" who now allegedly "control DT Holdings." Ex. 4, Hernandez Transcript, at 23:12–14. He stated he would "consider" providing the information about who controls DTH to counsel "as long as you tell me who you're going to share it." *Id*. at 24:7–11. Mr. Hernandez further testified that DTH is owned by a family trust, yet he couldn't name that trust, claimed he didn't have the trust documents (*Id*. at 73:3–5), could not (or would not) provide specifics regarding the trust (*Id*. at 72:20–73:23), and claimed he wasn't a beneficiary of the trust in any way (*Id*. at 21:2–13). Likewise, DTH's own 30(b)(6) witness could not, and would not, provide information regarding the ownership or control of DTH. Ex. 5, Pimentel Transcript, at 69:19–70:4. In fact when asked "[w]ho's the ultimate decision-maker for DT Holdings?" he responded "[a]t this time, the prior directors renounced their positions, and that's the reason why I was retained to provide this deposition." *Id*. at 69:25–70:4.

---

[4] Page cites, except for deposition transcripts, are to the ECF page number.
[5] Respondents stated they "have no obligation to produce documents responsive to Request (E), which are [sic] also irrelevant for establishing what documents were presented in the Criminal Actions." Ex 1. at 7.

Following the depositions of Mr. Hernandez and DTH's 30(b)(6) representative, counsel for Peppertree/AMLQ followed up with counsel for Respondents, seeking basic documents and information regarding DTH's ownership and control that Mr. Hernandez and DTH's 30(b)(6) representative could not, or would not, provide at their depositions. Respondents' counsel **refused** to provide any of the requested information, parroting Terra/DTH's objection that the requests were "outside the scope of the limited discovery authorized by Judge Kaplan." Ex. 6 at 2.

### III. The Non-Employee Attorney DTH Produced as Its 30(b)(6) Representative Had Virtually No Knowledge of the Noticed Topics, and Was Woefully Unprepared to Respond to Questions on Those Topics.

In response to Peppertree/AMLQ's Notice of Rule 30(b)(6) Deposition of DT Holdings, Inc. (the "30(b)(6) Notice," Ex. 7), DTH identified as its corporate representative an attorney by the name of Raul Pimentel, who admitted that he was being paid for his testimony. Ex. 5 at 21:8-20. Prior to being engaged as DTH's 30(b)(6) representative, Mr. Pimentel had no prior involvement in, nor familiarity with, *any* of the fifteen criminal matters specifically identified in the 30(b)(6) Notice. *Id*. at 43:14-19.[6] Moreover, Mr. Pimentel failed to even speak with Mr. Quisquinay, DTH's CFO and a key criminal complainant, or to make any attempt to contact him at all in preparation for the deposition. *Id*. at 46:6-9. Moreover, Mr. Pimentel had no knowledge of this Court's April 22 Order and could offer no explanation as to why Mr. Quisquinay—the Company's CFO—was providing testimony against Mr. Gaitan to a foreign prosecutor just hours after Your Honor issued the April 22 Order—a key issue before the Court. *Id*. at 63:19-65:3. Mr. Pimentel likewise had "no idea" who told Mr. Quisquinay to go to the authorities on April 22, 2025, *id*. at 73:7-9, or who provided Mr. Quisquinay with the false information that he then related to the Guatemalan prosecutor on April 22, 2025, *id*. at 73:10-13.

***

Peppertree/AMLQ request that this Court find Respondents' objections on the basis of purported limitations on discovery imposed by your Honor to be without merit and order Respondents promptly to produce the improperly withheld communications. If Respondents have objections to producing any documents on the basis of privilege, they should be ordered to produce a privilege log identifying any such documents in accordance with Local Civil Rule 26.2. Peppertree/AMLQ request that this Court order Respondents to produce such a privilege log together with any future production. In addition, Respondents should be ordered to produce a competent and educated corporate designee for two additional hours of deposition in advance of the June 14 reply deadline. Finally, Respondents should be ordered to provide the basic information requested by Peppertree/AMLQ on June 2, 2025 regarding the current ownership and control of Respondents. *See* Ex. 6 at 3. Peppertree/AMLQ reserve all rights to submit supplemental briefing in support of their Additional Sanctions Motion in respect of any additional discovery that Respondents provide (or fail to provide) in response to this application.

---

[6] To prepare for his role as DTH's paid 30(b)(6) witness, Mr. Pimentel reviewed only documents supplied to him by Respondents' counsel and only spoke with Respondents' counsel. *Id*. at 43:21-44:1. He failed to speak with any of the complainants in the criminal actions (who are DTH representatives), representatives of the complainants, prosecutors, or witnesses in any of the criminal matters (many of whom are also DTH representatives). *Id*. at 45:11–22.

Respectfully submitted,

| | |
|---|---|
| */s/ Gregg L. Weiner* <br> Gregg L. Weiner | */s/ Michael N. Ungar* <br> Michael N. Ungar |
| *Counsel for AMLQ Holdings (Cay), Ltd.* | *Counsel for Telecom Business Solution, LLC and LATAM Towers, LLC* |

cc:   All counsel of record.