**APPENDIX – Timeline of Events Relevant to Motion for Further Findings of Contempt and Sanctions**

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 1 | 10/2020 – 01/2021 | Terra refuses to sell Continental Towers LATAM Holdings, Ltd. (the "Company") as required by proposed sale notices, including a proposed offer from Torrecom. | Ex. 7 p. 8 ¶¶ 10-11, p. 10-11 ¶¶ 15-17 |
| 2 | 02/02/21 | Peppertree initiates the New York Arbitration to enforce its right under the Shareholders Agreement to force a sale of the Company, seeking an order of specific performance to enforce the forced sale provisions of the Shareholders Agreement. Respondents oppose Peppertree's request, raising various defenses against requiring a sale. | Ex. 7 p. 4 ¶ 4, p. 11, ¶ 17 |
| 3 | 03/19/21 | Peppertree, AMLQ, and Respondents execute the Framework Agreement appointing Adam Schachter and his firm GSG as Company Counsel and Gaitán as CEO of the Company. Respondents later argue the Framework Agreement was "void" following the Tribunal's issuance of the November 12, 2021 Order requiring Respondents to reinstate Gaitán and Echeverria as Company Management. *See* Row Nos. 9, 15. | Ex. 1 |
| 4 | 03/31/21 | Mere months after Torrecom offered to purchase the Company, and in an attempt to chill the pool of potential bidders, Terra publicly sues Torrecom in Florida state court for tortious interference with contractual relationship, aiding and abetting breach of fiduciary duty, and conspiracy to breach fiduciary duty for an alleged "squeeze-out merger" at a "depressed price" with Peppertree and AMLQ. | Ex. 2 |
| 5 | 05/21/21 | Referring to the Torrecom lawsuit, *see* Row No. 4, Hernandez states during a podcast that "we're not afraid to fight back if someone wants to take away our company . . . ." | Ex. 2 at 16:16 -16:17. |
| 6 | 09/28/21 | In the midst of the Phase 1 Arbitration proceeding over Petitioners' request for an order of specific performance to sell the Company, Hernandez holds Gaitán (Company CEO) and Echeverria (Company COO) captive and replaces them without the requisite Board approval. The Tribunal later determined, in the 2PFA confirmed by this Court, that Hernandez acting for the Respondents forced Gaitán and Echeverría out of their DTH positions in September 2021 because he considered them to be "***insufficiently supportive of the Respondents' position in this arbitration.***" *See* Row No. 17. | Ex. 8 p. 5, ¶ 8-9; p. 33 ¶ 78 (1) |

---

[1] All defined terms have the same meaning as those in Petitioners' Motion for Further Findings of Contempt and Sanctions, to which this appendix is attached.

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 7 | 10/20/21 | Hernandez submits a witness statement in the Arbitration that his family is the "ultimate owner of DT" and the "ultimate decisionmaker for all of the DT companies as needed." | Ex. 4 p. 5, ¶ 13 |
| 8 | 10/20/21 | Gaitán submits a witness statement in the Arbitration detailing the events of September 28, 2021, including Hernandez accusing Gaitán of removing DTH property, which would two months later serve as the basis for the criminal complaints filed by DTH agents against Gaitán in December 2021 and January 2022. See Row Nos. 10, 12. | Ex. 8 p. 25 n.17, p. 29-32<br><br>Ex. 5 p. 18-21, ¶ 43-50 |
| 9 | 11/12/21 | The Tribunal issues an interim order requiring Respondents to restore Company Management, including Gaitán, to their Company roles. | Ex. 8 p. 5, ¶ 8-9 |
| 10 | 12/16/21 | Shortly before the Tribunal issues the 1PFA ordering a sale of the Company, Carlos Guzman Lopez (DTH "proxy") files the first criminal complaint against Gaitán in Guatemala alleging Gaitán disclosed "confidential information" in his October 20, 2021 witness statement in the Arbitration. See Row No. 8. | Ex. 8 p. 24, ¶ 48, p. 25 ¶ 50, p. 37 ¶ 81 |
| 11 | 01/13/22 | William Rene Mendez (father of Terra's in-house counsel William Mendez Araujo, later a Director appointed by Terra to the Company's Board), on behalf of Proyectos Terrestres, S.A. (DTH subsidiary), files a criminal complaint in Guatemala against Eduardo Perez Gonzalez (unknown individual); later, this complaint would be amended to include allegations against Gaitán. See Row No. 12. | Ex. 8 p. 39-42, ¶¶ 83, 85 |
| 12 | 01/20/22 | William Rene Mendez amends the January 13, 2022 criminal complaint to be against Gaitán and alleges purported criminal conduct relating to Gaitán's October 20, 2021 witness statement in the Arbitration and the events that took place when Hernandez improperly ousted Gaitán as CEO on September 28, 2021. See Row No. 8. | Ex. 8 p. 20 ¶ 8, p. 39-42, ¶¶ 83, 85, p. 49-51 ¶ 101 |
| 13 | 02/24/22 | The Tribunal issues the First Partial Final Award ("1PFA") ordering a sale of the Company. | Ex. 7. |
| 14 | 02/25/22 | Two days after the Tribunal orders the sale of the Company, a false blog post is published on an obscure (and apparent disinformation) website called NewsZoom, which baselessly alleges that Peppertree violated the | Ex. 24 p. 93-94 ¶¶ 157-159, p. 122-127 ¶¶ 218-225 |

| No. | Date | Description[1] | Source |
|---|---|---|---|
| | | FCPA by supporting Gaitán as CEO of the Company and discloses confidential information only revealed in the Arbitration.[2] | |
| 15 | 03/07/22 | Just weeks after the Tribunal orders the sale of the Company, Terra sues Petitioners and Company Counsel in Florida to rescind the March 19, 2021 Framework Agreement that the parties executed that designated Adam Schachter as Company Counsel and Gaitán as CEO. *See* Row No. 3. The case was removed to this Court and this Court dismissed the case on April 1, 2025. | *Terra Towers Corp. v. Schachter*, 2025 WL 1004750 (S.D.N.Y. Apr. 1, 2025) |
| 16 | 05/13/22 | Tierras Nacionales (DTH subsidiary) and Carlos Guzmán López (DTH "proxy") file a criminal complaint in El Salvador against Gaitán and his father for the alleged crime of fraudulent administration based on a purported audit showing a misappropriation of funds. | Ex. 37 ¶¶ 17-19 |
| 17 | 08/12/22 | The Tribunal Issues the 2PFA sanctioning Respondents for noncompliance with the November 12, 2021 Order, *see* Row No. 9, finding that the December 2021 and January 2022 criminal complaints constituted a "multi-faceted effort by Respondents to present to this Tribunal and to the Company's Board a false narrative of misconduct and criminality by Gaitán and Echeverria", and stating that "finality with regard to the status of [Gaitán and Echeverria] is desirable for the process of [a] sale of the Company to proceed in an efficient way." *See* Row Nos. 10-12. | Ex. 8 ¶ 4, 9 |
| 18 | 01/18/23 | This Court confirms the 1PFA, ordering a sale of the Company. | ECF Nos. 124; 125 |
| 19 | 02/09/23 | Hernandez informs the Board of the Company that he is resigning as a director. | Ex. 9 |

---

[2] This blog post—again published two days after the Tribunal ordered the sale—would be the first of many instances throughout this Arbitration of the Respondents' use of a public disinformation campaign to attack Gaitán, the Arbitration Tribunal, Petitioners, the ICDR (including individual ICDR administrators) in furtherance of Respondents' efforts to oppose a sale. The Tribunal thoroughly detailed this disinformation campaign—including the overwhelming evidentiary and circumstantial support that Hernandez and those he controls are behind that disinformation campaign—in a Procedural Order issued on July 12, 2024 on the eve of the Phase 2 hearing. In that Procedural Order, the Tribunal concluded that Respondents, including Hernandez, had likely committed federal crimes. Respondents have never produced any e-mail communications relating to these matters, despite being ordered to do so in the Arbitration. *See* Ex. 16. The Tribunal again detailed this disinformation campaign in the 5PFA. *See* Ex. 24 ¶¶ 218-261.

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 20 | 03/07/23 | Just weeks after this Court confirms the order of specific performance to sell the Company, Juan Francisco Quisquinay (DTH CFO) sues the Company and Gaitán in the BVI to challenge Gaitán's status as CEO of the Company after the Tribunal already determined he was the proper CEO in the November 12, 2021 Order and 2PFA. *See* Row Nos. 9, 17. This Court later issued an antisuit injunction enjoining that BVI proceeding (ECF No. 208). | Ex. 10 |
| 21 | 6/5/2023 | Despite having purported to resign as a director of the Company, *see* Row No. 19, Hernandez holds a meeting at his office in St. Helena, California with Terra officer Michel Buhler and Jesse Davis of Citibank, the investment bank that the Company's shareholders had selected to facilitate a sale of the Company. At that meeting, Hernandez insisted that escrow requirements for a sale are not required under the Shareholders Agreement or the 1PFA (conduct that this Court has held to be in contempt of its judgment confirming 1PFA). | Ex. 11 |
| 22 | 10/11/23 | The parties commence Phase 2 of the Arbitration proceeding, in which Petitioners seek damages in respect of Respondents' refusal to sell the Company to Torrecom in accordance with the Shareholders Agreement, refusal to comply with a second proposed sale notice under the Shareholders Agreement, and various other violations of the Shareholders Agreement and breaches of duty concerning the ongoing business of the Company. | Ex. 12 |
| 23 | January 2024 | Hernandez files a criminal complaint against Gaitán, Echeverria, and Juan Ignacio Berger (another member of the Company's independent management team led by Gaitán and Echeverria) alleging that they presented false testimony and evidence in a proceeding in Guatemala where Echeverria sought protective measures from Hernandez and others. | Ex. 37 p. 2 n.1 |
| 24 | 01/11/24 | Respondents refuse to produce communications or documents in response to Petitioners' document requests in the Arbitration, including in relation to the sale, Respondents' opposition to the sale, proceedings relating to Gaitán and Company management, and Respondents' communications with third parties (including those affiliated with the websites that published fake news stories related to the Arbitration). The Tribunal found Respondents' failure to produce documents "profound" as there was "not even a contention advanced by counsel" that a "diligent and thorough search" for responsive documents was made, and "nearly all the documents" they did produce were already in Petitioners' possession. | Ex. 24 p. 119, ¶ 213(2); p. 126, ¶ 223. Ex. 13 |
| 25 | 02/06/24 | The United States Second Circuit Court of Appeals ("Second Circuit") affirms this Court's confirmation of 1PFA. | *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2024 WL 446016 |

-4-

| No. | Date | Description[1] | Source |
|---|---|---|---|
| | | | (2d Cir. Feb. 6, 2024) |
| 26 | 02/20/24 | This Court confirms the 2PFA. | ECF No. 207 |
| 27 | 02/20/24 | On the same day this Court confirms the 2PFA, it also grants Petitioners' motion for anti-suit injunction ordering Respondents to terminate the BVI Action filed by Quisquinay challenging Gaitán's role as the Company CEO. | ECF Nos. 208-209 |
| 28 | 05/03/24 | Terra directors (including Hernandez) sue Petitioners in NY state court to stay the Arbitration over three years after it commenced to contest jurisdiction shortly before the commencement of the July 2024 Phase 2 Hearing concerning Petitioners' damages claims. Petitioners remove the action to this Court, and this Court denies the Terra Directors' petition. | *Hernandez v. Telecom Bus. Sol., LLC*, 2024 WL 3401092 (S.D.N.Y. July 12, 2024) |
| 29 | 05/11/24 | At the same time Hernandez and the other Terra Directors are contesting jurisdiction in the Arbitration, *see* Row No. 28, Respondents make a submission in the Arbitration again seeking to remove Gaitán as CEO of the Company based on evidence of "disloyalty" to the Company and Terra, including evidence of purported threatening text messages concerning Hernandez. Respondents do not file a criminal complaint about these "threatening" text messages until ten months later, and after Gaitán is already in prison. *See* Row Nos. 44 and 45. | Ex. 14 |
| 30 | 05/13/24 | Two days later, the Tribunal rejects Respondents' application to remove Gaitán as CEO, *see* Row No. 29, finding that their application is <u>better suited for this Court</u> in light of the confirmed 2PFA, and noting "[t]his is an arbitration that has been uniquely influenced in its course by what the Tribunal has found to have been ***contrivances of false evidence*** by the Respondents, [and] collaboration by many of Respondents' co-counsel either in the ***creation of false or improper evidence*** or in its presentation to the Tribunal." Respondents never submit the application to this Court, but instead file a criminal complaint ten months later. | Ex. 15 at 3 ¶¶ 3-4, 8 ¶ 19 |
| 31 | 07/15/24-07/19/24 | The parties participate in the week-long Phase 2 Hearing in the Arbitration concerning Petitioners' damages claims related to Respondents' failure to sell the Company. | Ex 24 p. 162 ¶ 275 |

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 32 | 08/29/24 | A few months after another unsuccessful attempt to remove Gaitán as CEO and the Arbitration hearing concerning Petitioners' damages related to Respondents' failure to sell the Company, the court in El Salvador issues an arrest warrant and requests Interpol red notices which ultimately result in the incarceration of Gaitán and his father, *see* Row Nos. 43 and 44, related to the criminal complaint filed by Tierras Nacionales (DTH subsidiary) and Carlos Guzmán López (DTH "proxy") on May 13, 2022, *see* Row No. 16. The Tribunal previously found in the 2PFA that the misappropriation of funds allegations underlying that criminal complaint "had no merit", which this Court confirmed, and the Second Circuit later affirmed. *See* Row Nos. 17, 26, 58. | Ex. 47 p. 10 ¶ 19 |
| 33 | 10/09/24 | During closing arguments of Phase 2 of the Arbitration, Respondents' counsel objects to Gaitán's presence and notes that he is "very concerned" that Gaitán attended the closing arguments in person and that Respondents could not meet the conditions on the stay of their counterclaims if "[Gaitán] goes through an airport and gets stopped by the police because of the Interpol Red Notice, and he cannot then be restored to whatever position the [2PFA] mandates that he does", again espousing the circular argument that the criminal actions against Gaitán initiated by Respondents prevent Respondents from complying with the 2PFA. The Tribunal rejects the objection stating that Gaitán "is the CEO of the company and in that capacity is an appropriate party representative to be present . . . ." | Ex. 19, at 1684:2-1688:3 |
| 34 | 12/16/24 | The Tribunal notified the parties to the Arbitration that they would issue the 5PFA on January 31, 2025. | Ex. 20 |
| 35 | 12/26/24 | Ten days later, Desarrollos Terrestres Peru S.A. (DTH Subsidiary) initiated a criminal action against the Company and its subsidiaries in Peru. | Ex. 28 p. 3 ¶¶ 4-9 |
| 36 | 01/09/25 | Just weeks before the parties expect to receive the 5PFA, and three years after criminal complaints alleging the same conduct were brought by DTH agents (*see* Row Nos. 10, 12), Gaitán was criminally charged by a prosecutor in Guatemala alleging the same conduct that the Tribunal previously rejected in the 2PFA as a "false narrative of criminality", which this Court confirmed, and the Second Circuit later affirmed. | Ex. 37 p.7 ¶ 12, Exhibit AB-4 |
| 37 | 02/13/25 | Tribunal sends draft "remedial provisions under consideration for inclusion in the forthcoming [5PFA]" for the parties' comments. The provisions of the draft award contemplate Gaitán, as Company CEO, having discretionary control over the disbursement of SG&A payments to DTH until the Company is sold. The provisions also contemplate Company Counsel having oversight and control of an escrow account in which DTH was to deposit $39 million as an equitable remedy, and which would hold and disburse Company sale proceeds upon such a sale. | Ex. 21 at 1. |

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 38 | 02/17/25 | Four days after the Tribunal shared the draft award provisions giving Gaitán and Company Counsel responsibilities relating to the ongoing management and planned sale of the Company, and despite the Tribunal's prior finding (confirmed by this Court) of the importance of having "finality" over the status of Gaitán's role as CEO in order to proceed with a sales process, a court in El Salvador requested that Interpol issue red notices for Gaitán and his father, related to the criminal complaint filed by Tierras Nacionales (DTH subsidiary) and Carlos Guzmán López (DTH "proxy") on May 13, 2022, *see* Row No. 16. The Tribunal previously found in the 2PFA that the misappropriation of funds allegations underlying that criminal complaint "had no merit", which this Court confirmed, and the Second Circuit later affirmed. *See* Row Nos. 17, 26, 58. | Ex. 37 ¶¶ 17-19; Ex. 8 ¶ 80 |
| 39 | 02/19/25-02/20/25 | Habitos Organizales (company owned and/or controlled by Hernandez), represented by Raul Pimentel Mata (Respondents' 30(b)(6) deponent), obtains an *ex parte* order freezing Echeverria's personal bank accounts and prohibiting her from leaving Guatemala. | Ex. 32 at 4 |
| 40 | 02/28/25 | Proyectos Terrestres, S.A (DTH subsidiary) files several criminal complaints against the Company's subsidiaries, *see* Row Nos. 40-42, including a criminal complaint against the Company's subsidiary, Continental Towers de Guatemala, Limitada. | Ex. 26 |
| 41 | 03/03/25 | Proyectos Terrestres, S.A (DTH subsidiary) files a criminal complaint against an undisclosed individual. | Ex. 26 |
| 42 | 03/04/25 | Proyectos Terrestres, S.A (DTH subsidiary) files a criminal complaint against the Company's subsidiary, Colocation Technologies, Limitada. | Ex. 26 |
| 43 | 03/05/25 | Guatemala initiates extradition proceedings in relation to the criminal action in El Salvador, *see* Row No. 16, and Gaitán's father is arrested. | Ex. 37 at 10-11 ¶ 20. |
| 44 | 03/06/25 | Gaitán is arrested on March 6, 2025 due to an extradition request from El Salvador following an arrest warrant issued in the case related to the Tierras Nacionales Criminal Complaint in El Salvador, which had been filed years earlier in May 2022. *See* Row No. 16. | Ex. 37 at 8, 10 ¶ 15, 20. |
| 45 | 03/17/25 | While Gaitán is incarcerated, *see* Row No. 44, Hernandez files a criminal complaint against Gaitán, Echeverria, Alejos, and others, for attempted murder and conspiracy to commit murder based on the allegedly "threatening" text messages the Respondents submitted to the Tribunal ten months earlier, in May 2024. *See* Row No. 29. Hernandez, when asked at his deposition whether these text messages constitute a crime, admitted "No, in my view, it needs to be investigated." Hernandez, when asked why he waited ten months to file a criminal | Ex. 22<br><br>Ex. 48 at 61:20-61:25. |

| No. | Date | Description[1] | Source |
|---|---|---|---|
| | | complaint regarding the "threatening" text messages, stated the Tribunal "didn't take any action" and "dismissed this." Ex. 48 at 59:16-59:21. | |
| 46 | 03/17/25 | Hugo Ortiz (DTH agent and manager who initiated several of the foreign arbitrations enjoined by the now confirmed and affirmed 3PFA) notifies the Board of the Company that 163 towers of the Company's subsidiaries Colocation Technologies Ltda. and Continental Towers de Guatemala Ltda. were seized by the government, as a "precautionary measure." Carlos Guzman Lopez, the same DTH agent that filed the December 2021 criminal complaint against Gaitán that the Tribunal deemed part of a "false narrative of criminality", is named as a co-plaintiff in the request for this precautionary measure, and the lawyer who signed the 163 tower seizure documents, Walter Sierra Herrera, is the same attorney who signed the April 10, 2025 criminal complaint for Hernandez. *See* Row No. 53. | Ex. 23 |
| 47 | 03/18/25 | Petitioners file a motion for a preliminary and permanent anti-suit injunction and civil contempt sanctions based on Respondents' continued support of foreign proceedings in violation of this Court's judgments ordering a sale of the Company (1PFA) and ordering Respondents to terminate the foreign proceedings (3PFA). | ECF Nos. 243-245 |
| 48 | 03/24/25 | The Tribunal issues the Fifth Partial Final Award ("5FPA") awarding $300,749,761 in damages, including $25,166,643 in punitive damages and ordering Respondents to deposit approximately $54 million into an escrow account as security for the damages awarded, to be overseen by Company Counsel. The Tribunal also finds Hernandez subject to arbitral jurisdiction and personally liable "for the substantial damages he and other Respondents caused Petitioners." | Ex. 24 ¶¶ 164-68 |
| 49 | 03/26/25 | In accordance with the 5PFA, Company Counsel seeks the parties' suggestions for the role of escrow agent to oversee the escrow account created to hold the sale proceeds of the Company as ordered in the 5PFA. | Ex. 38 |
| 50 | 03/27/25 | Respondents' counsel responds to the correspondence at Row No. 49 and states that "Respondents disclaim any role in any violation of criminal laws of all relevant jurisdictions resulting from the implementation of the escrow devices described in the [5PFA]." Respondents' counsel continues to ask how Company Counsel is communicating with Gaitán while he is in prison despite Company Counsel's repeated statements that he is doing so lawfully, all as part of a transparent effort to argue that Gaitán cannot serve as CEO while in prison. | Ex. 35, att. A-2 |
| 51 | 04/08/25 | "Rafael Carrera" (unknown individual) files a criminal complaint against Gaitán, Company Counsel, and Gaitán's personal lawyers, including Alejos Botran, alleging they are "part of a criminal structure dedicated to robbery, fraud, extortion, and the violation of industrial property rights of Latin American companies." An X account by the same name has regularly published defamatory statements about Gaitán and other members of Company Management. | Ex. 47 ¶ 18 |

| No. | Date | Description[1] | Source |
|---|---|---|---|
| 52 | 04/08/25 | Hernandez allegedly receives death threats in a letter giving him "an ultimatum of certain days . . . that [he has] to allow Gaitán to get out of jail." | Ex. 48 at 48:1-48:7 |
| 53 | 04/10/25 | Hernandez files a new criminal complaint against Gaitán on the basis of the death threat letter. *See* Row No. 52. The lawyer who signed this criminal complaint for Hernandez, Walter Sierra Herrera, is the same attorney who signed the 163 tower seizure documents. *See* Row No. 46. | Ex. 22 |
| 54 | 04/22/25 | This Court issues April 22 Order finding Terra, DTH, and Hernandez in contempt of this Court's judgments confirming the 1PFA and 3PFA and issuing sanctions for their noncompliance. | ECF No. 295 |
| 55 | 04/22/25 | Mere hours after this Court issued the April 22 Order, *see* Row No. 54, Juan Francisco Quisquinay—who has played a direct role in facilitating Respondents' attempts to undermine the Tribunal and this Court, *see e.g.*, Row No. 20—gave a statement to Guatemalan prosecutors claiming to have evidence that Gaitán was unlawfully using electronic devices to communicate with Mr. Schachter while in prison. | Ex. 38; Ex. 40 |
| 56 | 05/02/25 | Respondents make a submission in the Arbitration stating that due to Gaitán's incarceration, "performance of any role in or for the Company is legally impossible" because Guatemala law prohibits Gaitán from sending any electronic communications from prison and that therefore Respondents cannot restore Gaitán as CEO and the stay on their counterclaims should be lifted. Respondents also alleged that "tracking analysis" they had commissioned demonstrated that Gaitán was sending emails while in prison from an email account titled, whistleblower@peppertreewakeup.com, and that this "further ma[d]e it untenable that [Gaitán] occupy the position of CEO of the Company." The Tribunal promptly rejected Respondents' "tracking analysis" as "unreliable *prima facie*," including because it provided no evidence that Gaitán actually communicated through electronic means from prison. | Ex. 33 at 2; Ex. 39 at 3 |
| 57 | 05/05/25 | One day before sanctions would begin to accrue for Respondents' failure to "purge their contempt" under the April 22 Order, *see* Row No. 54, Respondents seek an extension for such sanctions to accrue, purporting to have taken substantial steps to purge their contempt. This Court rejects that extension, finding Respondents have not demonstrated "sincere, diligent, good faith and effective attempts to comply" with the April 22 Order. The Peru Contemnors also seek an extension of the deadline to file a motion for reconsideration of the April 22 Order. | ECF Nos. 298, 299, 317 |
| 58 | 05/14/25 | The Second Circuit affirms this Court's confirmations of the 2PFA, 3PFA, and 4PFA. | *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2025 |

-9-

| No. | Date | Description[1] | Source |
|---|---|---|---|
| | | | WL 1177768 (2d Cir. Apr. 23, 2025) |
| 59 | 05/15/25 | A raid occurs at Mariscal Zavala prison where Gaitán and his father are incarcerated, and the basis for that raid is the complaint Quisquinay had made (*see* Row No. 55), claiming that Gaitán was in violation of a Guatemalan law prohibiting the "use of mobile terminal equipment in detention centers." Gaitán and his father are "violently extracted" and eventually transferred to a dangerous maximum-security prison called Pavoncito because of the same cybercrime allegations Respondents made in the Arbitration less than two weeks earlier, *see* Row No. 56. | Ex. 40; Ex. 50 at 16 |
| 60 | 05/19/25 | Company Counsel notifies the parties to the Arbitration of the raid and Gaitán's transfer to Pavoncito prison. *See* Row No. 59. | Ex. 40 |
| 61 | 05/17/25 | The Tribunal instructs Petitioners to seek emergency relief in this Court due to the imminent threats to Gaitán's and his father's lives, stating that "Respondents are responsible for the proceedings that have led to Mr. Gaitán's incarceration," which are "predicated exclusively on factual allegations propounded by Respondents that this Tribunal has previously adjudicated to be unsubstantiated" in the 2PFA. | Ex. 39 |
| 62 | 06/02/25 | Hernandez fails to timely file a third affidavit of compliance with the April 22 Order. | ECF No. 295 |
| 63 | 06/03/2025 | Respondents' counsel Walkers withdraws their representation in the El Salvador-Related BVI Action without providing a reason. | Ex. 46 |
| 64 | 06/06/25 | The Peru-Related BVI Action and El Salvador-Related BVI Action remain pending despite the anti-suit injunction ordered by this Court in the April 22 Order. *See* Row No. 54. | ECF No. 295 |