UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Telecom Business Solution, LLC, *et al.*, | Civil Action No.: 1:22-cv-01761 |
| Petitioners, | Judge Lewis A. Kaplan |
| v. | |
| Terra Towers Corp., *et al.*, | Magistrate Judge Robert W. Lehrburger |
| Respondents. | |

### NON-PARTIES' RESPONSE IN OPPOSITION TO PETITIONERS'[1] MOTION FOR FURTHER FINDINGS OF CIVIL CONTEMPT AND SANCTIONS

Non-Parties, Telecom Business Solution S.R.L. ("**TBS Peru**"), Continental Towers Peru, S.R.L. ("**CT Peru**"), Collocation Technologies Peru, S.R.L. ("**CLL Peru**"), Magali Merino Ascarrunz ("**Ms. Merino**"), and Jorge Alejandro Garzaro Perez ("**Mr. Garzaro**") (collectively, the "**Peru Non-Parties**")—file this response in opposition to Petitioners' Motion for Further Findings of Civil Contempt and Sanctions (DE 367-368, "**Motion**") as to them only.[2]

As part of their modus operandi in these proceedings to muddy the waters and paint everyone with the same brush before this Court, Petitioners have made a habit of lumping the Peru Non-Parties, without

---

[1] The parties to this action are the claimants in an underlying New York arbitration—Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "**Peppertree**"), and AMLQ Holdings (Cay), Ltd. ("**AMLQ**," and together with Peppertree, "**Petitioners**")—and the respondents in that arbitration—Terra Towers Corporation ("**Terra**"), TBS Management, S.A. ("**TBS**"), and DT Holdings, Inc. ("**DTH**") (together, DTH, Terra, and TBS are "**Respondents**"). *See* DE 295 at 1-4.

[2] By filing this Response, the Peru Non-Parties do not submit themselves to the jurisdiction of this Court and expressly reserve all available defenses, including but not limited to challenges to the Court's jurisdiction. This Response is not intended to, and does not, constitute a waiver of any defense or objection available to the Peru Non-Parties. As alleged in the Peru Non-Parties' Motion for Reconsideration (DE 322, 323, the "**Reconsideration Motion**") of the Court's April 22, 2025 Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies (DE 295, the "**Contempt Order**"), the Court does not have personal jurisdiction over them. And, as non-parties, they were not afforded due process before the Contempt Order was entered against them.

any actual evidence, in actions or matters where and on which the Peru Non-Parties have not partaken. Petitioners' Motion is the latest egregious example of this strategy. Petitioners seek in their Motion further findings of contempt and sanctions, directed not only to Respondents but also, beyond belief, to the Peru Non-Parties, concerning criminal proceedings that none of the Peru Non-Parties filed, caused to be filed, control or *can* control in any way.

Enough is enough. The Peru Non-Parties are not parties in this action, and should not continue to be dragged into this case by Petitioners without merit or jurisdiction. Petitioners have not shown – nor can they – that the Peru Non-Parties initiated or maintained any of the criminal proceedings at issue in their Motion. Moreover, the Peru Non-Parties would have no means to protect themselves from the severity of such a contempt order as they would be unable to purge such contempt. Compliance is impossible since they cannot terminate criminal complaints they did not file, retract witness statements they did not submit, or withdraw support of criminal actions where they have had no participation whatsoever. Petitioners' Motion thus must fail as to the Peru Non-Parties.[3]

## BACKGROUND

Petitioners' Motion seeking new findings of contempt and the imposition of additional sanctions against Respondents and others (including, without basis, the Peru Non-Parties) is premised on the initiation and continued prosecution of a number of alleged criminal actions against the Company's[4] Management, including its CEO Jorge Gaitan, and the Company itself, in Guatemala (13 criminal actions), El Salvador (2 criminal actions linked according to Petitioners

---

[3] The Peru Non-Parties do not address the merits of Petitioners' contentions as to Respondents or any other person or entity other than the Peru Non-Parties.

[4] "Company" refers to Continental Towers Latam Holdings Limited.

2

to the Guatemalan proceedings), and Peru (one proceeding allegedly initiated by DT Peru[5] late in 2024 pursuant to a supposed press report), and to Respondents' alleged discovery violations following the Court's May 21, 2025 hearing ordering expedited discovery concerning these criminal actions, and other collateral issues.[6]  *See* DE 367-1 at Ex. A; DE 368.

Petitioners devote the first 19 pages of their 33-page Motion to their Introduction and Factual Background sections, setting forth a so-called "parade of horribles" that according to them, justify the relief they are seeking.  *See* DE 368 at 1-19.  Notably absent from this 19-page tirade, is any mention that the Peru Non-Parties, or any of them, had anything to do with any of the criminal complaints in any way.  Despite that, Petitioners submitted with their Motion a proposed Order directing Respondents, their agents, and others, ***including without any evidence or grounds, the Peru Non-Parties***, to withdraw all criminal complaints, witness statements in said criminal proceedings, or other support therefor.  *See* DE 367-1 at Ex. B.

As set forth in the declarations submitted by Ms. Merino and Mr. Garzaro in support of this Response, neither Ms. Merino, nor Mr. Garzaro, nor TBS Peru, CT Peru, or CLL Peru, have had anything to do with the criminal proceedings in Guatemala, El Salvador, or Peru.  They have not filed, caused to be filed or participated in the filing, submission or commencement of any of the criminal proceedings, supported the prosecution or any accusation related to any of the criminal proceedings, and thus, are not able to take any action to withdraw criminal complaints, witness statement, or support because they provided none.  *See* Merino and Garzaro Declarations filed contemporaneously herewith.[7]  Indeed, nowhere in their Motion do Petitioners allege otherwise,

---

[5] "DT Peru" refers to Desarrollos Terrestres Peru, S.A.

[6] This is the second time Petitioners try this.  The Court had found already in its Contempt Order that Petitioners had not met either of the threshold conditions for an anti-suit injunction as to the criminal actions and matters.  *See* DE 295 at 26.

[7] As has been stated in the different Peru Non-Parties' submissions in these proceedings (DE 298, DE 322-326, DE 359-363), including the declarations that Ms. Merino and Mr. Garzaro have had to submit in these proceedings, including now (DE 324-325, DE 360-361), the Peru Non-Parties have had nothing to do with any action commenced

nor can they. *See* Motion, DE 367, 368. Rather, Petitioners allege that it is Respondents themselves who are behind the criminal proceedings. *See* Motion (DE 368 at 9).[8]

Again, without addressing the merits of the relief sought by Petitioners as it pertains to others, the Peru Non-Parties oppose the proposed order submitted by Petitioners (DE 367-1) in the form presented because there are no grounds whatsoever to support it as to the Peru Non-Parties. *Id.* at Ex. B. The Peru Non-Parties should not be subject to any such order or any further contempt and accompanying imposition of sanctions. Indeed, the proposed order reflects at Exhibit A that the criminal complaints were initiated by 8 separate entities/individuals, **none of them the Peru Non-Parties**. Then, in overreaching fashion, seeks further findings of civil contempt and sanctions against no less than 46 different entities and individuals, in addition to Respondents, regardless of their involvement with the criminal actions. When will this stop? For the foregoing reasons, as well as the reasons more fully set forth in the Reconsideration Motion, if the Court is inclined to grant such extraordinary relief, the Peru Non-Parties respectfully request that the proposed order be modified to exclude the Peru Non-Parties.[9]

---

or prosecuted by entities or persons in Guatemala or El Salvador. The same can be said concerning the alleged DT Peru initiated criminal action on December of 2024. As noted by both Ms. Merino and Mr. Garzaro, "[t]o further make this patently clear, [they] have not even read the alleged complaint that initiated this alleged DT Peru Criminal Action, or anything in the fiscal file No. 6269-2024 that supposedly contains it. When this alleged DT Peru Criminal Action was filed (December of 2024), [their] employment relationship with DT Peru had been severed for more than 16 months (since August of 2023) and with it any role or function [they] had in said company. *See* DE 324 at ¶ 16, DE 325 at ¶ 16, DE 360 at ¶3-4, DE 361 at ¶ 3-4.

[8] The only mentions of the Peru Non-Parties are in passing and then only concerning the so-called "Peru-Related BVI Action," which is completely irrelevant to the criminal proceedings at issue in the Motion and which is thoroughly addressed by the Peru Non-Parties in their Reconsideration Motion and related papers *See* DE 322, 323.

[9] Moreover, the Peru Non-Parties are not Respondents' agents, they do not work for Jorge Hernandez, and are not DTH Managers, as Petitioners have improperly alleged at different times. *See* DE 323, DE 324 at ¶ 17, including its Exhibit A, & DE 325 at ¶ 17, including its Exhibit A.

**ARGUMENT**

A. **Petitioners Have Not Met Their Burden of Proving That The Peru Non-Parties Disobeyed an Order of This Court, Much Less the Contempt Order, with Respect to the Criminal Actions.**

"Before issuing a contempt order, a district court must find that the alleged contemnor had notice of the underlying order, that the terms of the order were clear and unambiguous, and that proof of noncompliance was clear and convincing." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 789 F.3d 29, 33 (2d Cir. 2015). "A court may hold a party in contempt when the moving party establishes by clear and convincing evidence that the alleged contemnor violated a district court's order." *Sexton v. Lecavalier*, 11 F. Supp.3d 439, 442 (S.D.N.Y. 2014). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *In re Johns Manville Corporation*, 666 B.R. 476, 484 (S.D.N.Y. 2025). "Courts should only resort to civil contempt if there is '**no fair ground of doubt**' about a party's wrongful conduct.'" *Id*. (emphasis added). The burden of proof to show wrongdoing is on the movant, here Petitioners, and cannot be shifted or evaded. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("[T]he party seeking to hold another in civil contempt bears the burden of proof to establish the offense by clear and convincing evidence"); *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) ("[W]e underscore that it is the moving party…who bears the burden of establishing the three factors [needed to show contempt]. Accordingly, the relevant inquiry is not whether defendants adequately rebutted plaintiffs' evidence, but rather, whether *plaintiffs' evidence alone* was adequate to establish that (1) the order was clear and unambiguous, (2) defendants did not, in fact, comply with the order (and the **evidence of the noncompliance must be clear and convincing**), and (3) the defendants did not diligently attempt to comply with the order in a reasonable manner") (emphasis added); *BeautyBank, Inc. v. Harvey Prince LLP*, 811 F.Supp.2d

5

949, 956 (S.D.N.Y. 2011) ("The movant bears the burden of proving contempt by 'clear and convincing' evidence").

The focus of Petitioners' Motion are the criminal actions in Guatemala, El Salvador, and Peru. It is clear from Petitioners' Motion that the Peru Non-Parties did not engage in any conduct, wrongful or otherwise, to bring, or cause to be brought, any of the criminal actions. In fact, Petitioners have put forth not a scintilla of evidence to the contrary. *See* Motion. But that has not stopped Petitioners from attempting to improperly use the Contempt Order as the hook to justify the injunction against them, including the pursuit of further findings of contempt, the imposition of additional sanctions, and taking the opportunity to improperly inject them into these issues involving criminal actions currently before the Court. *Id.*

The Contempt Order, as it relates to the Peru Non-Parties, deals with a certain BVI Proceeding.[10] (DE 295, at 6). This is a red herring. There is no relation whatsoever to the relief sought by Petitioners in their Motion. (DE 368, at 5). Notably, and stating same loosely and peripherally, in Petitioners' view, the Peru Non-Parties have failed to purge their alleged contempt concerning the BVI Actions, which is simply false as it is Peppertree that is obstructing compliance.[11] This claim does not give rise to additional sanctions relating to the criminal actions that are the basis for the relief sought in Petitioners' Motion before the Court. The Motion expressly claims that new findings of contempt and additional sanctions are needed, and requests, inter alia, that the Court find Respondents and their agents ***again*** in further contempt of the 1PFA,

---

[10] In the Reconsideration Motion and Reply thereto, (DE 322, 323, 359), the Peru Non-Parties have explained to this Court the actions they have taken since learning of the Contempt Order and the reasons why the withdrawal of the Peru-Related BVI Action has been delayed. But that does not translate into the Peru Non-Parties engaging in the conduct complained of in the Motion. And any evidence thereof is far from being clear and convincing, it is simply non-existent.

[11] And in any event, the Peru Non-Parties reiterate what they have said in their Reconsideration Motion. Namely, that respectfully, the Court should reconsider the Contempt Order as it pertains to the Peru Non-Parties for, among other reasons, lack of personal jurisdiction and due process concerns.

and in contempt of the 2PFA. *Id.* at 10. This is consistent with Petitioners' pattern of mincing words to their benefit to muddy the waters and bring every possible person or entity under the sun to respond for Respondents' actions or inactions.

But that does not meet the clear and convincing standard required to find the Peru Non-Parties in further contempt or warrant additional coercive sanctions, which is the burden Petitioners must meet. Petitioners have made no showing: (i) that the Peru Non-Parties brought, instituted, maintained, or caused to be brought, instituted, or maintained, any of the criminal actions at issue; or (ii) that the Peru Non-Parties have provided witness statements or supported, in any way, the criminal actions; or (iii) that the Peru Non-Parties can cause the withdrawal of any criminal complaints, witness statements, and any other support.[12]

In summary, Petitioners have provided no proof that the criminal complaints were initiated or filed by the Peru Non-Parties, and they cannot avail themselves of the Contempt Order. Thus, even if the Court were to find that the Peru Non-Parties have violated the Contempt Order, they have not, such finding would be irrelevant to the current issue before the Court now, which is centered solely on the criminal actions. In order to hold the Peru Non-Parties in further contempt, Petitioners would need to prove, by clear and convincing evidence, that they were somehow involved in the filing, supporting, maintaining, or prosecuting the criminal actions. Petitioners have failed to meet their burden. And since they have no evidence of involvement by the Peru

---

[12] Petitioners cannot use the NY awards, or any related judgment, to evade their burden of proof here, because no award or judgment, has found that the Peru Non-Parties, or any of them, participated, much less initiated, these criminal proceedings. Petitioners cannot simply resort to the usual, and wrong allegation that "you are an agent, therefore, you must have filed it." No tribunal or court has found that the Peru Non-Parties filed these criminal complaints. And the Peru Non-Parties have demonstrated that they are not the same as the named Respondents. *See* Merino Decl. at 17; Garzaro Decl. at 17. Among other things, as stated in the Reconsideration Motion, in August of 2023, almost two years ago, Ms. Merino and Mr. Garzaro's employment was transferred to TBS Peru, and solely remains there. *See* Merino Decl. DE 360 at ¶¶ 3-4, Garzaro Decl. DE 361 at ¶¶ 3-4.

Non-Parties because none exists, they attempt to relitigate the Contempt Order and issues corresponding to the Peru-Related BVI Action as if it would allow them to bridge the gap. It does not.[13]

### B. The Peru Non-Parties Cannot And Would Not be Able To Purge Their Contempt

Contempt sanctions can be civil or criminal. *Great Lakes Education Loan Services, Inc. v. Leary*, 629 B.R. 360, 371 (S.D.N.Y. 2021). "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). That determination "turns on several factors, including whether the sanction is intended to be compensatory or punitive; whether it is payable to the court or to the injured party; whether it is based on past wrongful conduct or is intended to coerce future compliance; and whether any opportunity to purge the sanction is provided." *Mackler*, 225 F.3d at 142. Civil contempt sanctions may be compensatory, or both, but they "may not be imposed as a purely punitive measure." *Paramedics Electromedicina Com., Ltda v. GE Med. Sys.*, 369 F.3d 645, 657 (2d Cir. 2004). By contrast, criminal contempt sanctions "are intended to punish a contemnor or to vindicate a court's authority." *In re Stockbridge Funding Corp.*, 158 B.R. 914, 917 (S.D.N.Y. 1993). "In *Bagwell*, the Supreme Court delineated the nature of coercion in civil contempts and determined that a hallmark of coercive sanctions was that 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.' " *CBS Broad.*, 814 F.3d at 101 (quoting *Int'l Union.*, 512 U.S. at 828, 114 S.Ct. 2552).

---

[13] It is not clear whether Petitioners are seeking new sanctions based on the Contempt Order, or new contempt findings based on the criminal complaints. What is clear is that this is contrary to Judge Kaplan's instructions to Petitioners at the May 21, 2025 hearing when he denied the May 20, 2025 Motion seeking emergency relief in the form of further civil contempt sanctions. Judge Kaplan expressly suggested to Petitioners to have papers on the issue of new contempt sanctions separate from the papers seeking a further contempt adjudication, both of which appear to be what Petitioners are seeking in their Motion. (DE 369-41 at 25).

"An opportunity to purge is essential." *Great Lakes Education Loan Services, Inc. v. Leary*, 629 B.R. 360, 371 (S.D.N.Y. 2021).

As stated above, and in the Merino and Garzaro Declarations filed contemporaneously herewith at ¶¶ 4-20, respectively, the Peru Non-Parties have nothing to do with any criminal action commenced or prosecuted by entities or persons in Guatemala, El Salvador, and Peru. *Id.*

The Peru Non-Parties, including the Peru Individual Non-Parties, have no connection to those actions, and there are no allegations by Petitioners in the Motion to the contrary. The Peru Non-Parties would have no means to protect themselves against the alleged contempt if the proposed order were to be entered as to them, which is a fatal flaw. Compliance would be impossible since they cannot withdraw criminal complaints they did not file, retract witness statements they did not submit, or facilitate the termination of the criminal proceedings given they had no participation whatsoever in commencing them. Allowing this to happen, would render the sanctions against the Peru Non-Parties criminal in nature. As noted above, "[i]n civil contempt cases, the 'opportunity to purge is essential.' The imposition of sanctions tied to a finding of civil contempt is appropriate only after the contemnor has had an opportunity to purge." *In re Various Grand Jury Subpoenas*, 248 F.Supp.3d 525, 527 (S.D.N.Y. 2017)); *see also Matter of Ngan Gung Restaurant, Inc.*, 195 B.R. 593, 598 (S.D.N.Y. 1996) (failure to impose remedy that could be purged by compliance made sanction a criminal contempt sanction). Here, no such opportunity to purge would be available to the Peru Non-Parties if the proposed Order is entered in its present form, and consequently, no finding of civil contempt and sanctions can be made here as against them.

## CONCLUSION

For the foregoing reasons, as well as the reasons more fully set forth in the Motion for Reconsideration on behalf of the Peru Non-Parties, if the Court is inclined to grant the

9

extraordinary relief sought by Petitioners, the Peru Non-Parties respectfully request that the proposed order be modified to exclude, *in toto*, the Peru Non-Parties, and for such other relief as deemed necessary and proper.

Dated: June 12, 2025                                Respectfully submitted,

                                                    *s/ Eduardo De la Peña Bernal*

| | |
|---|---|
| **PRYOR CASHMAN LLP** | **SHUTTS & BOWEN LLP** |
| James Stephen O'Brien, Jr | Eduardo De la Peña Bernal |
| Erik Bakke | Aliette D. Rodz |
| 7 Times Square, Ste. 40th Floor | Martha Ferral |
| New York City, NY 10036 | 200 S. Biscayne Blvd., Ste. 4100 |
| (212) 421-4100 | Miami, FL 33131 |
| Fax: (212) 326-0806 | (305) 358-6300 |
| ebakke@pryorcashman.com | edelapena@shutts.com |
| jobrien@pryorcashman.com | arodz@shutts.com |
| | mferral@shutts.com |

*Counsel for the Non-Parties, Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Marino Ascarrunz, and Alejandro Garzaro Perez*

### CERTIFICATE OF SERVICE

I hereby certify that this reply was filed electronically on June 12, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

                                                    */s/ Eduardo De la Peña Bernal*