UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                           Petitioners,

                -against-

TERRA TOWERS CORP., *et al.*,

                           Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22-cv-1761 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __06/13/2025__

## MEMORANDUM OPINION

Appearances:

        Gregg L. Weiner
        Ethan Fitzgerald
        Daniel V. Ward
        Katherine M. McDonald
        ROPES & GRAY LLP

        David A. Landman
        Michael N. Ungar
        Katherine M. Poldneff
        Gregory C. Djordjevic
        ULMER & BERNE LLP

        *Attorneys for Petitioners*

        Rodney Quinn Smith, II
        GST LLP

        Lucila I.M. Hemmingsen
        THE FLATGATE FIRM PC

        *Attorneys for Respondents and Non-Party Jorge Hernandez*

2

LEWIS A. KAPLAN, *District Judge.*

Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") and Respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), and DT Holdings, Inc. ("DTH," and together with Terra, "Respondents") are engaged in a highly contentious, ongoing arbitration before a three-arbitrator tribunal (the "Tribunal"). Terra and DTH are controlled by non-party Jorge Hernandez ("Hernandez").

Petitioners purportedly served Hernandez with a Motion for Preliminary and Permanent Anti-Suit Injunction and Civil Contempt Sanctions ("Contempt Motion"). The Court largely granted the motion, imposing sanctions upon Hernandez, among others. Petitioners moved also to confirm the Fifth Partial Final Award ("5thPFA Petition") and purportedly served that on Hernandez as well.

Hernandez now moves to quash service of the Contempt Motion and the 5thPFA Petition.

### Background

The Court assumes familiarity with the underlying facts and procedural history. In sum, Petitioners and Terra in 2015 entered into a shareholders agreement ("SHA") whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"), the business of

which is the development and operation of telecommunications towers in Central and South America.[1]  The SHA was signed on behalf of Terra and the Company by Hernandez.[2]

A.    *Arbitration Proceedings and Attempt to Stay*

Petitioners commenced the arbitration underlying this action (the "Arbitration") on February 2, 2021.  They alleged, *inter alia*, that Terra had breached the SHA by obstructing the proposed sale of the Company, which they contended was required pursuant to the SHA.  On February 24, 2022, the Tribunal issued its unanimous first partial final award ("FPFA"), which ordered a sale of the Company.  The FPFA was confirmed by this Court on January 18, 2023,[3] and the Second Circuit later affirmed the confirmation of the FPFA.[4]

The Tribunal has issued four additional partial final awards.  This Court has confirmed the Tribunal's second, third, and fourth partial final awards (in addition to the first),[5] and the Second Circuit has affirmed the confirmation of those awards.[6]  Among other relief, those awards

---

[1]

Dkt 9-22 at ¶ 1.

[2]

Dkt 245-1 at 53.

[3]

*See* Dkts 124; 125.

[4]

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *1 (2d Cir. Feb. 6, 2024) (summary order).

[5]

Dkts 207; 208 (confirming second partial final award); Dkts 182; 183 (confirming third partial final award); Dkts 202; 203 (confirming fourth partial final award).

[6]

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-7312, 2025 WL 1177768 (2d Cir. Apr. 23, 2025).

ordered Respondents to terminate foreign proceedings that Respondents and others brought to undermine the Arbitration, and to prevent new ones.[7]  The petition to confirm the fifth partial final award ("5thPFA")[8] remains pending.


       *B.*     *Contempt Motion, 5thPFA Petition, and Motion to Quash*

       Respondents have not complied in substantial part with any of the Tribunal's awards or with this Court's judgments confirming them.[9]  Consequently, on March 18, 2025, Petitioners filed the Contempt Motion, which sought (1) to enjoin foreign legal proceedings and (2) the entry of civil contempt sanctions to coerce compliance.[10]  The Contempt Motion sought to enjoin and sanction not only Respondents, but also non-parties affiliated with them, including Hernandez.[11]

       The Tribunal issued the 5thPFA on March 24, 2025.  It there ruled, *inter alia*, that (1) it had jurisdiction to determine Petitioners' claims against Hernandez under the doctrine of direct

---

[7]      Dkt 133-47 at ¶ 127.

[8]      Dkt 262-41 (5thPFA); Dkt 257 (5thPFA Petition).

[9]      *See* Dkt 295 at 2, 29–38.

[10]      Dkt 243.

[11]      The Court's Memorandum Opinion Granting Anti-Suit Injunction and Civil Contempt Remedies granted in part the relief sought by Petitioners.  The Court enjoined Respondents, their agents, and persons in active concert or participation with them — including Hernandez — from prosecuting, litigating, participating in, or taking any action to obtain or enforce relief granted in foreign actions in El Salvador and the British Virgin Islands. Dkt 295 at 44–45.  The Court further held that Hernandez was in civil contempt of this Court's orders because (1) he abetted Terra's non-compliance with the FPFA, and (2) he was legally identified with Respondents, who were (and are) in civil contempt of this Court's judgments confirming the FPFA and the third partial final award.  *Id.* at 38–42.

5

benefits estoppel,[12] (2) Hernandez was liable for tortiously interfering with the SHA,[13] (3) Hernandez was liable, jointly with Terra and DTH, for punitive damages of $25,166,643,[14] and (4) the restrictions and obligations imposed on Respondents by the Tribunal's first four partial final awards were imposed on Hernandez.[15]

   Shortly thereafter, on March 28, 2025, Petitioners' process server sought to serve Hernandez with copies of the Contempt Motion and the 5thPFA Petition.[16]  According to the process server's affidavit, he personally delivered the Contempt Motion, the 5thPFA Petition, and associated documents to Hernandez's son at an address in St. Helena, California, believed to be a Hernandez residence ("St. Helena Property").[17]

   Hernandez now moves to quash service of the Contempt Motion and the 5thPFA Petition.[18]  He contends that he resides in Guatemala and that the St. Helena Property is not his dwelling place or usual place of abode.  Hernandez further asserts that his son, to whom the process server gave the papers, was not authorized to receive service on his behalf.  Hernandez does not

---

[12]
  5thPFA at ¶¶ 164–68.

[13]
  *Id.* at ¶¶ 172–95.

[14]
  *Id.* at ¶¶ 276–81.

[15]
  *Id.* at 191–92.

[16]
  Dkt 265.

[17]
  *Id.*

[18]
  Dkt 302.

6

dispute that he had actual notice of the Contempt Motion and 5thPFA Petition at all relevant times.[19]

### *Discussion*

I.    *Legal Standards*

    A.    *Contempt Motion*

Under Local Civil Rule 83.6, service of a motion to adjudicate a person in civil contempt who has not appeared through an attorney "must be made personally, together with a copy of this Local Civil Rule 83.6, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons."

Rule 4(e)(2)(B) provides that "an individual . . . may be served in a judicial district of the United States by . . . leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Rule 4(f)(3) provides that "an individual . . . may be served at a place not within any judicial district of the United States by other means not prohibited by international agreement, as the court orders."

    B.    *5thPFA Petition*

Under Section 9 of the Federal Arbitration Act, notice of an application to confirm an arbitral award "shall be served upon the adverse party . . . . If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within

---

19

    *See generally id.*

which the adverse party may be found in like manner as other process of the court."[20] "In the Second Circuit, the phrase 'in like manner as other process of the court' refers to Rule 4."[21]

## II.    Timeliness of Motion to Quash

As an initial matter, Petitioners argue that this motion is untimely. "The defense of improper service of process . . . must be raised in a reasonably timely fashion or it is waived."[22] Courts have deemed this defense waived where a party did not raise it for over a year after the commencement of an action.[23] Here, Petitioners filed the Contempt Motion on March 18 and the 5thPFA Petition on March 27, and they attempted personal service of those documents on Hernandez on March 28. Hernandez filed the motion to quash on May 5. Petitioners have not identified any authority supporting the argument that such a delay constitutes waiver. Accordingly, the motion is timely.

---

[20] 9 U.S.C. § 9.

[21] *Absolute Nevada, LLC v. Grand Majestic Riverboat Co.*, LLC, 646 F. Supp. 3d 426, 439 (S.D.N.Y. 2022) (quoting *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1277 (2d Cir. 1971)).

[22] *Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.*, 775 F. Supp. 133, 136 (S.D.N.Y. 1991).

[23] *See, e.g.*, *Tatas v. Ali Baba's Terrace, Inc.*, No. 19 CIV. 10595 (ER), 2022 WL 993566, at *7 (S.D.N.Y. Mar. 31, 2022) (defense waived where it was raised 22 months after the matter was filed and 12 months after defendants interposed an answer); *Burton v. N. Dutchess Hosp.,* 106 F.R.D. 477, 481 (S.D.N.Y. 1985) ("Since the commencement of this action three and one-half years ago, defendants repeatedly have failed to avail themselves of opportunities to contest the sufficiency of service of process.")

8

III.    *Service of the Contempt Motion*

    A.    *Compliance with Local Civil Rule 83.6*

        At the time the Contempt Motion purportedly was served on him, Hernandez had not appeared in this action through an attorney.  Accordingly, as set forth above, Local Civil Rule 83.6 required personal service of the Contempt Motion on Hernandez "together with a copy" of the Rule.

        Petitioners concede that a copy of the Rule was not included among the documents delivered to the St. Helena Property.[24]  Nevertheless, Petitioners argue that "the Court should exercise its inherent authority to excuse the technical failure to personally serve a copy of the Local Rule on Hernandez."[25]

        Although Petitioners characterize their non-compliance as minor, excusing such a defect would frustrate the purpose of the rule — to inform the recipient of the service and procedures to which they the recipient is entitled and to emphasize the seriousness of the proceeding.  Petitioners cite *Absolute Nevada, LLC v. Grand Majestic Riverboat Co. LLC*,[26] in which the court excused the failure to provide a copy of Local Rule 83.6.[27]  But the court there did so because a copy of the rule already had been nailed to the alleged contemnor's front door and mailed to him twice.  No

---

[24]

    Dkt 342 at 20.

[25]

    *Id.* at 21.

[26]

    No. 19-CV-11479 (PKC), 2020 WL 5209730 (S.D.N.Y. Sept. 1, 2020).

[27]

    *Id.* at *6.

comparable delivery was made here.[28]

        In the present circumstances, the Court does not excuse this technical defect in service. It therefore concludes that Hernandez was not served effectively with the Contempt Motion. Consequently, the Court need not now reach the question of whether the St. Helena Property is a Hernandez "dwelling place or abode" such that delivery a copy of the Contempt Motion to his son there was effective under Rule 4(e)(2)(B). Nevertheless, the quashing of the previous service of the Contempt Motion — while it makes prudent the vacatur of the contempt findings and sanctions against imposed on Hernandez personally — does not leave Petitioners without a means of bringing Hernandez before the Court and going forward anew with their contempt motion as against Hernandez.

### B.    *Alternate Service Under Rule 4(f)(3)*

        Local Civil Rule 83.6 authorizes personal service "in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons," including under Rule 4(f)(3).[29] In determining whether to order alternative service under Rule 4(f)(3), the Court considers first whether

---

[28]

    After the attempted service of the Contempt Motion at the St. Helena Property on March 28, Petitioners later mailed a thumb drive to the St. Helena Property containing hundreds of documents, including Local Civil Rule 83.6. Dkt 281. This delivery was not consistent with "the manner provided by for by the Federal Rules of Civil Procedure for the service of a summons" as required under Local Civil Rule 83.6. And this belated delivery does not resemble the multiple deliveries that justified the waiver of the rule's requirement in *Absolute Nevada*.

[29]

    *See, e.g.*, *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, No. 12 CIV. 8087 CM, 2013 WL 324061, at *1 (S.D.N.Y. Jan. 24, 2013).

the Court should exercise its discretion to permit such service.[30]  If so, the Court considers next whether alternative methods are prohibited by international agreement and comport with constitutional notions of due process.[31]

### 1.    Whether Alternative Method of Service is Warranted

"The court enjoys broad discretion in fashioning alternative methods of service under Rule 4(f)(3)."[32]  A party "is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4(f)(3)."[33]  "Nonetheless, before authorizing service under Rule 4(f)(3), some district courts have required: '(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'"[34]  "Imposing such a requirement has been viewed as necessary 'in order to prevent parties from whimsically seeking alternate means of service and

---

[30]    *Convergen Energy LLC v. Brooks*, No. 20-CV-3746 (LJL), 2020 WL 4038353, at *3 (S.D.N.Y. July 17, 2020)

[31]    *Id.* at *5.

[32]    *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 397 (S.D.N.Y. 2014).

[33]    *TushBaby, Inc. v. Jinjang Kangbersi Trade Co.*, No. 24-CV-6150 (JMF), 2025 WL 358409, at *2 (S.D.N.Y. Jan. 31, 2025).

[34]    *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265–66 (S.D.N.Y. 2012) (quoting *United States v. Lebanese Canadian Bank SAL*, 2012 WL 2035997, at *4 (S.D.N.Y. June 6, 2012)).

11

thereby increasing the workload of the courts.'"[35]

Petitioners attempted to serve Hernandez at the St. Helena Property through a process server[36] and by mail.[37]  Hernandez disputes residence at the St. Helena property, despite the uncontested facts that his family trust owns it, he personally appeared in front of the St. Helena Planning Commission to discuss his plans for the property, his son lives there, his wife and daughter operate a business near the property, and a car registered in his name was in the driveway at the time of the process server's visit.[38]  Petitioners have requested that Hernandez's counsel, Mr. Smith, accept service on Hernandez's behalf.[39]  Smith refused that request.[40]  There is, to be sure, an internationally agreed means of service — in this case, the Inter-American Convention on Letters Rogatory and Additional Protocol ("IACAP"), to which Guatemala, the claimed place of Hernandez's sole residence, is a signatory.[41]  But while service under IACAP is an acceptable means

[35]

    *Id.* at 266 (quoting *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)).

[36]

    Dkt 265.

[37]

    Dkt 281.

[38]

    *See* Dkt 342.

[39]

    Dkt 343-19.

[40]

    Dkt 343-20.

[41]

    Signatories and Ratifications – Additional Protocol to the Inter-American Convention on Letters Rogatory, Org. of Am. States.  Guatemala is not a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. See Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (last updated March 21, 2024), Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

of service, "it is 'neither mandatory nor exclusive,' even where . . . both parties reside in signatory states."[42]            In all the circumstances, and given the considerable delays associated with the IACAP process,[43] the Court concludes that Petitioners have attempted reasonably to serve Hernandez.

Petitioners have shown also that circumstances warrant the Court's intervention. Hernandez's attempt to avoid service of the Contempt Motion and the 5thPFA Petition is the latest episode in a long-running series of misconduct intended to thwart the provisions of the SHA, the awards of the Tribunal, and the judgments of this Court.  For example, Hernandez caused Terra's non-compliance with the FPFA's order to sell the Company and is responsible for the initiation of foreign arbitrations intended to thwart this Court's judgments.[44]  Moreover, service on Hernandez is a procedural formality — there is no doubt that Hernandez has actual notice of the Contempt Motion and the 5thPFA Petition.

Accordingly, the Court determines that an order authorizing service by other means — thus requiring Hernandez to respond to the Contempt Motion — is warranted here.

---

[42]
    *Soc. Enter. LLC v. Sociedad Agricola Cato S.A.*, No. 15-CV-4158 (RJD), 2015 WL 13743436, at *2 (E.D.N.Y. Oct. 6, 2015) (quoting *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, No. 92 Civ. 4528(SS), 1994 WL 198696, at *5 (S.D.N.Y. May 19, 1994)).

[43]
    *See* Inter-American Service Convention and Additional Protocol, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Inter-American-Service-Convention-Additional-Protocol.html (last visited June 12, 2025) ("The time required to execute a Convention request is not much faster than the letters rogatory procedure in some countries.  As a general rule it may take from 6 months to a year for a request to be executed.").

[44]
    Dkt 295 at 39–42.

### 2. Alternative Methods of Service

#### i. Service on Quinn Smith

Petitioners propose that the Court authorize service by electronic mail to Hernandez's United States-based counsel, Quinn Smith.[45]   Some courts, including this one, have authorized alternative service on a foreign individual's United States counsel.[46]   Nevertheless, there is an equally convenient alternative.

#### ii. Service via Email

Petitioners "do not need to demonstrate that email is authorized by [an international agreement] or by [Guatemalan] law to seek relief under Rule 4(f)(3)."[47]   No more is required than that no pertinent international agreement prohibits service by email.   The Court has not identified any provision of the IACAP or any other pertinent international agreement that does so.

As set forth in *Convergen Energy v. Brooks*:

The remaining question, therefore, is whether service by email comports with due process. Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.  Email service has also

---

[45]

Dkt 342 at 18.

[46]

*See, e.g., Giuffre v. Prince Andrew, Duke of York*, 560 F. Supp. 3d 744, 746 (S.D.N.Y. 2021); *Zanghi v. Ritella*, No. 19-cv-5830 (NRB), 2020 WL 589409, at *7 (S.D.N.Y. Feb. 5, 2020) ("[S]ervice on a foreign defendant's U.S. counsel 'is a common form of service ordered under Rule 4(f)(3).'") (quoting *Jian Zhang v. Biang.com, Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013)).

[47]

*Convergen Energy LLC v. Brooks*, No. 20-CV-3746 (LJL), 2020 WL 4038353, at *6 (S.D.N.Y. July 17, 2020).

14

> repeatedly been found by courts to meet the requirements of due process. Concerns about whether an e-mail from a party with whom the recipient that has not previously corresponded is likely to be flagged as spam are captured within the due process analysis.[48]

Here, the record includes multiple emails sent and received by Jorge Hernandez at the email address jhernandez@terratowerscorp.com.[49] Service to this email address reasonably is calculated to notify Hernandez of the Contempt Motion and the 5thPFA Petition — both of which he already has actual notice of.

Accordingly, the Court authorizes service on Hernandez via email as an alternative method of formal service under Rule 4(f)(3).

III.    *5thPFA Petition*

For the reasons set forth above, the Court authorizes also alternative service of the 5thPFA Petition on Hernandez via email. Accordingly, the Court need not rule on whether Hernandez was served effectively with the 5thPFA Petition at the St. Helena Property.

IV.    *Effect on Contempt Sanctions Against Hernandez and Pending 5thPFA Petition*

In light of the conclusion that Hernandez was not effectively served with the Contempt Motion, the civil contempt sanctions imposed against Hernandez in the Court's Memorandum Opinion Granting Anti-Suit Injunction and Civil Contempt Remedies[50] will be

---

[48]     *Id.* (internal citations and quotation marks omitted).

[49]     *See, e.g.*, Dkts 143-11; 143-20; 143-25; 143-30; 143-32; 149-1.

[50]     Dkt 295.

15

vacated.  Hernandez shall have seven days from the date of email service of the Contempt Motion, together with a copy of Local Rule 83.6, within which to file any opposition thereto.  He shall have fourteen days within which to file any further opposition to the petition to confirm the 5th PFA and/or a motion to vacate it.

### *Conclusion*

Jorge Hernandez's motion to quash service (Dkt 302) is granted to the extent that the Court rules that Hernandez was not effectively served with the Contempt Motion and 5thPFA Petition.   The sanctions previously imposed against Hernandez personally in the Court's Memorandum Opinion Granting Anti-Suit Injunction and Civil Contempt Remedies are vacated.

Petitioners may serve the Motion for Preliminary and Permanent Anti-Suit Injunction and Civil Contempt Sanctions with a copy of Local Civil  Rule 83.6 and the Petition to Confirm Fifth Partial Final Award on Hernandez by email to jhernandez@terratowerscorp.com.  Hernandez shall file any opposition to the Contempt Motion no later than June 20, 2025.  Any reply papers with respect to that motion must be filed by June 27, 2025.  In addition, Hernandez shall file any opposition to the 5thPFA Petition and/or any motion to vacate the 5th PFA no later than June 27, 2025.  Petitioners shall file any reply in support of their petition to confirm and/or opposition to a petition to vacate that award by July 17, 2025.  Hernandez shall file any reply in support of any

16

motion to vacate the 5th PFA no later than July 24, 2025.

SO ORDERED.

Dated:        June 13, 2025

/s/ Lewis Kaplan
_____
Lewis A. Kaplan
United States District Judge