**United States District Court**
**Southern District of New York**

---

Telecom Business Solution, LLC, *et al.*,

               Petitioners,

    v.

Terra Towers Corp., *et al.*,

               Respondents.

---

Civil Action No.: 1:22-cv-01761

Judge Lewis A. Kaplan

Magistrate Judge Robert W. Lehrburger

### RESPONSE IN OPPOSITION TO PETITIONERS' MOTION FOR
### FOR CIVIL CONTEMPT AND SANCTIONS AGAINST JORGE HERNANDEZ

Rodney Quinn Smith, II
(admitted *pro hac vice*)
**GST LLP**
78 SW 7th Street, Suite 500
Miami, FL 33130
Phone: (305) 856-7723
Fax: (305) 856-7724
quinn.smith@gstllp.com

*Counsel for Mr. Hernandez*

Lucila I. M. Hemmingsen
**The Fladgate Firm PC**
305 Broadway, 7th Floor
New York, NY
Phone: (646) 369-5843
lh@hemmingsenadr.com

## Table of Contents

INTRODUCTION.........................................................................................................4

BACKGROUND...........................................................................................................5

LEGAL ARGUMENT ...................................................................................................9

I.    Petitioners still cannot provide any legal support for an injunction designed to effectively halt foreign criminal proceedings....................................................9

    A.    There is no basis to seek "further findings of civil contempt" because Respondents have purged the contempt as to Judgment No. 1 and the El Salvador component of Judgment No. 2 ...............................................................11

    B.    Petitioners have failed to show that the criminal proceedings will block the sale of the Company ...................................................................................................11

    C.    There is no basis for any finding of contempt of the 1PFA Judgment against Mr. Hernandez ...................................................................................................12

    D.    An anti-suit injunction against Mr. Hernandez would be wholly inappropriate in light of recent threats of violence..............................................................12

    E.    The record demonstrates that Mr. Hernandez is not aiding or abetting any non-compliance with the April 22 Order........................................................13

II.    There is no basis for adverse inferences when Mr. Hernandez is not in contempt and has complied with his discovery obligations....................................................16

    A.    Mr. Hernandez is not in contempt of 1PFA, 2PFA, or 3PFA ..................................17

    B.    Petitioners cannot meet any of the three elements required for an adverse inference.........................................................................................................17

III.    Civil confinement is inappropriate, and there is no basis for criminal contempt sanctions...............................................................................................................18

CONCLUSION ...........................................................................................................19

## Table of Authorities

**Cases**

*Armstrong v. Guccione*, 470 F.3d 89, 101 (2d Cir. 2006) ..............................................................18

*Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398, 417-418 (1964)......................................10

*Chevron Corp. v. Donziger*, 296 F.R.D. 168, 222 (S.D.N.Y. 2013).................................................17

*International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ......................................................................................................................14

*Lead Creation Inc. v. The Partnerships and Unincorporated Associations identified on Schedule A*, No. 1:22-cv-10377, 2 (S.D.N.Y. Mar 8, 2023) ........................................................................14

*Maggio v. Zeitz*, 333 U.S. 56, 73 (1948) ......................................................................................18

*Oetjen v. Central Leather Co.*, 246 U.S. 297, 303-304, 38 S. Ct. 309 (1918) ..............................10

*Quinlan v. Lender*, 102 Misc. 2d 127, 129 (N.Y. Sup. Ct. 1979).......................................................9

*Sassower v. Signorelli*, 99 A.D.2d 358, 358 (N.Y. App. Div. 1984) ................................................9

*Spectacular Venture, L.P. v. World Star International, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996) ............................................................................................................................................19

**Other**

American Convention on Human Rights "Pact of San Jose, Costa Rica" Nov. 22, 1969, O.A.S.T.S. No. 36, 1144 U.N.T.S. 123, 9 I.L.M. 673 ............................................................ 10-11

Constitution of the Republic of Guatemala ..................................................................................10

Respondent, Jorge Hernandez, hereby responds to Petitioners' Memorandum of Law in Support of their Motion for Preliminary and Permanent Anti-Suit Injunction and for Civil Contempt Sanctions (ECF 243, 244) (the "First Sanctions Motion") and Petitioners' Memorandum of Law in Support of their Motion for Further Findings of Civil Contempt and Sanctions (the "Second Sanctions Motion"), filed by Telecom Business Solution, LLC; LATAM Towers, LLC (together, "Peppertree"); and AMLQ Holdings (Cay), Ltd. ("AMLQ"), and in support thereof states as follows.

## INTRODUCTION

Even with evidence of the Terra Parties and DT Holdings purging the contempt of Judgment No. 1 and the El Salvador component of Judgment No. 2, the Peru Non-Parties demonstrating an intent to comply halted only by Petitioners intransigence, and Mr. Hernandez voluntarily providing a deposition on his reports to foreign prosecutors, Petitioners persist in seeking an anti-suit injunction and contempt sanctions against Mr. Hernandez. Mr. Hernandez is not aiding and abetting any violation of the April 22 Order, and the First and Second Sanctions Motions should be denied for the following reasons:

- Despite months of litigating this issue, Petitioners have failed to provide any legal basis to justify violating principles of international comity by issuing an anti-suit injunction precluding Mr. Hernandez from giving evidence of threats against him and his family to foreign prosecutors;

- Petitioners have failed to provide any basis for contempt of the 1PFA judgment against Mr. Hernandez;

- Now that Mr. Hernandez no longer controls the Terra Parties or DT Holdings, he cannot aid or abet the actions of subsidiaries of the joint venture company[1] or be held liable for complying with an order that directs the Peru Non-Parties to take steps that Mr. Hernandez cannot compel them to take;

---

[1] For ease of reference, Mr. Hernandez uses the term "joint venture company," which was used during the hearing on June 17, 2025, to refer to Continental LATAM Holdings Ltd., the entity owned by the Terra Parties and Petitioners.

- An anti-suit injunction denying Mr. Hernandez access to Guatemalan courts would be improper where Mr. Hernandez has received threats of violence related to this case; and

- There is no basis for an adverse inference when Mr. Hernandez had no discovery obligations, voluntarily sat for his deposition, and is not in contempt of 1PFA or 2PFA.

For these reasons and those set forth below, Mr. Hernandez respectfully requests that the Court deny the First and Second Sanctions Motions in their entirety.

**BACKGROUND**

*The Proceedings before this Court from March 18 to May 7*

On March 18, 2025, Petitioners filed their First Sanctions Motion, seeking an order that Respondents "withdraw, dismiss, and/or terminate" a number of foreign lawsuits. ECF 243-1, p. 6. After briefing and oral argument, the Court issued its Memorandum Opinion on April 22, 2025 (the "April 22 Order"). ECF 295. The April 22 Order contained contempt findings as to Judgment No. 1 (the order enforcing 1PFA) and Judgment No. 2, split into the El Salvador Contemnors and the BVI Contemnors.[2] April 22 Order, pp. 47-48. The Terra Parties, DT Holdings, Jorge Hernandez, and the Peru Non-Parties have all timely filed notices of appeal. ECF 339; 340; and 341.

Petitioners then returned to the arbitral tribunal, seeking much the same relief regarding the foreign criminal proceedings as the First Sanctions Motion.

---

[2] Mr. Hernandez is not a party to the 1PFA Judgment (also referred to as Judgment No. 1), the 2PFA Judgment, the 3PFA Judgment (also referred to as Judgment No. 2), or the 4PFA Judgment.

*The Proceedings before the Arbitral Tribunal*

On May 15, 2025, Petitioners sought injunctive relief from the arbitral tribunal. ECF 376-1. Petitioners requested a partial final award requiring the Terra Parties, DT Holdings, and Mr. Hernandez to "take any and all necessary actions to facilitate the termination of the Criminal Actions." ECF 376-2. The facts relevant to that request are set forth in the opposition filed by Terra Towers Corp., TBS Management S.A. (the "Terra Parties"), and DT Holdings Inc. ("DT Holdings"). ECF 375, pp. 5-6, which Mr. Hernandez incorporates herein by reference.

*The Proceedings before this Court from May 8 to the present*

The Peru Non-Parties have entered an appearance and are seeking reconsideration of the April 22 Order. ECF 322. The briefing is continuing separate from Mr. Hernandez, who is taking no position other than urging compliance with the April 22 Order. ECF 371-2, p. 2. The four individuals identified in the April 22 Order, Ms. Granillo, Mr. Ortiz, Ms. Merino, and Mr. Garzaro, are not employees of DT Holdings or its subsidiaries. *Id.* Mr. Hernandez does not own or control the Terra Parties or DT Holdings. ECF 371-2, p. 1. He also does not own or control the Peru subsidiaries of the joint venture company.

On May 20, 2025, Petitioners filed a motion for civil contempt sanctions, preliminary injunction, and temporary restraining order. ECF 330. The facts relevant to Ms. Alejos and her testimony are set forth in the opposition filed by the Terra Parties and DT Holdings. ECF 375, p. 6, which Mr. Hernandez incorporates by reference.

Petitioners and Respondents have different views on the content of the hearing on May 21, 2025. ECF 369-41. Mr. Hernandez presumes familiarity with the scope of the expedited discovery (Hr'g Tr. at 20:19–21:5), the assertion of "information asymmetry" (*id.* at 7:14-24 & 10:7-12), the "seven days to provide either designations or any evidence that hasn't yet been

presented" (*id*. at 21:10-12), and Petitioners' agreement to "serve the document request by tomorrow," *id*. at 21:15-16—that is, by May 22, 2025.

The promised "document request" for "any evidence that hasn't yet been presented" mushroomed into nine separate requests, all of which were directed at Mr. Hernandez as well as the Terra Parties and DT Holdings. *See* ECF 374-2. Mr. Hernandez presumes the Court's familiarity with the new requests sent on May 29—i.e., the deadline for responding to the May 22 Requests (ECF 374-3), along with the lack of any meaningful objection to the documents produced. ECF 375, pp. 7-8. After not mentioning Mr. Hernandez during the hearing on May 21, 2025, Petitioners attempted to notice Mr. Hernandez's deposition in New York. ECF 374-4, p. 10. The Terra Parties and DT Holdings objected to the notice on the grounds that Mr. Hernandez is not an officer, employee, or director of the Terra Parties or DT Holdings. ECF 374-5. There was no further communication on this point, but the lack of affiliation with Mr. Hernandez was communicated on May 25, four days before the deadline for the document requests.

The Terra Parties and DT Holdings objected to the May 29 Requests that had arrived only hours earlier. *See* ECF 365-1. Petitioners complain that they should have received an objection earlier than May 29. ECF 365, p. 2. This must exclude the email dated May 25. ECF 374-5.

Mr. Hernandez voluntarily appeared as a witness, even though he was not subject to deposition by notice and Petitioners had not requested his testimony at the hearing on May 21. ECF 374, pp. 2-3. The depositions exceeded the time allotted. ECF 374, p. 3.

That same day, a corporate representative testified in response to the notice dated May 22. ECF 374-4, p. 1. Mr. Pimentel testified that he "had no conversation with Jorge Hernandez" about Mr. Pimentel's involvement as the corporate representative. ECF 369-49, p. 19:6-10. Mr. Pimentel further testified that Mr. Hernandez has no role in the "day-to-day operations of DT

Holdings and/or any of its affiliates." *Id*., p. 69:15-18. Petitioners asked Mr. Hernandez about his control and ownership of the Terra Parties and DT Holdings. ECF 369-48, pp. 38:16-40:7. Mr. Hernandez testified that he has never owned these entities. *Id*., p. 38:16-22. Mr. Hernandez further testified that he resigned about four years ago. *Id*., p. 39:1-19. Mr. Hernandez could not recall the name of the entity "above Terra." *Id*., p. 73:1-2. The Terra Parties and DT Holdings have routinely disclosed the name of this entity as part of the disclosure statements filed in the appeals. *See, e.g.,* ECF 369-18, p. 2.

*The Proceedings in Guatemala*

On April 9, 2025, Mr. Hernandez received a death threat. ECF 369-30. The document referenced where Mr. Hernandez's children go to school, where his wife spends her time, and the location of a house. ECF 369-30, p. 3. The threat ordered Mr. Hernandez to "stop messing around with the case of Analucía Alejos." *Id*. It stated that Mr. Hernandez is "going to realize that there are more expensive things than losing a business with the gringos of Peppertre [sic]." *Id*. The threat concluded by stating "We don't give twice notice [sic] Be careful [sic]." *Id*. Petitioners received this document on May 29 as well as during Mr. Hernandez's deposition. ECF 376-3. Mr. Hernandez also testified that his children who are citizens of the United States and Canada are receiving death threats. ECF 369-48, p. 9:6-15; 23:23-24:6; 113:7-11. Mr. Hernandez reported the threat to the authorities. ECF 369-48, pp. 23:21-24:6; p. 70:21-23. Petitioners asked Mr. Hernandez if he could send a letter to the prosecutors requesting the withdrawal of the complaints regarding the death threats against him and his family. *Id*., pp. 112:21-113:11.

During his deposition, Mr. Hernandez was not asked about the complaint filed by @RafaelCarrera. This is the complaint that featured prominently at the hearing and the reply

filed on June 14, 2025. ECF 383, p. 3. Petitioners seek an adverse inference but did not put any questions to Mr. Hernandez. *Id*., FN 3.

*Compliance with the April 22 Order*

Regarding Judgment No. 1, the FPFA Contemnors have complied with the April 22 Order as of June 4, 2025. ECF 371. Compliance was timely and full. *Id*. The Terra Parties and DT Holdings have thus moved for an order confirming the purging of contempt as to Judgment No. 1.

Regarding Judgment No. 2, the Terra Parties and DT Holdings have sought to comply, providing the declarations of Mr. Hernandez. The individuals in charge of the local entities, all of which are subsidiaries of the joint venture company, not any of the Terra Parties and DT Holdings, have confirmed their intent to comply. ECF 299-2, 299-1. On May 21, 2025, the Terra Parties and DT Holdings informed the Court that the El Salvador Action had been dismissed. ECF 338-1, p. 2. Following the Court's instructions, a certified translation is being provided.

LEGAL ARGUMENT

I.     **Petitioners still cannot provide any legal support for an injunction designed to effectively halt foreign criminal proceedings**

As this Court observed, "[a]n anti-suit injunction is one that prevents a litigant from pursuing litigation before a foreign tribunal." April 22 Order, p. 24 (citations omitted). The relief that "would cause the termination of the pending criminal actions in foreign courts . . . would qualify as anti-suit injunction." *Id*., pp. 24-25. Petitioners did not appeal these conclusions. Now, they argue that the "extraordinary remedy . . . requiring Respondents to withdraw all such complaints is both warranted and appropriate" where there are "exceptional circumstances." Second Sanctions Mot., p. 27. There is no valid basis for this relief as to Mr. Hernandez.

Mr. Hernandez adopts the reasoning regarding the limitations of *Quinlan v. Lender* and *Sassower v. Signorelli* (ECF 375, p. 15), neither of which received any mention at the hearing on June 17, 2025. The cases cited by the Terra Parties and DT Holdings have even greater force as it relates to Mr. Hernandez. ECF 375, p. 16. Mr. Hernandez is the named complainant in only two of the cases referenced in Petitioners' requested relief. ECF 367-1, pp. 6-7. Both of those cases relate to threats made directly, or in reference, to Mr. Hernandez and his family. *Id*. The defendants are not any of Petitioners, and all of the defendants are in Guatemala. The threats are personal to Mr. Hernandez and his family. Any injunction that reexamines and perhaps condemns the activities of the Guatemalan prosecutors in relation to these complaints would violate comity and "imperil the amicable relations between governments and vex the peace of nations." *Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398, 417-418 (1964), (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 303-304, 38 S. Ct. 309 (1918); punctuation omitted).

Mr. Hernandez, as a Guatemalan citizen, has rights under the Guatemalan Constitution and the Inter-American Convention on Human Rights, which is applicable in Guatemala. Requiring him to notify "the prosecutors that they no longer believe those complaints should be pursued" (Second Sanctions Mot., p. 28) would likely violate these rights. This would include Article 5, giving Mr. Hernandez the "right to do what the law does not prohibit"[3] and Article 29, providing Mr. Hernandez "free access to the tribunals, dependencies and offices of the State." Unlike the United States, in matters of human rights, Article 46 provides that "the treaties and agreements approved and ratified by Guatemala [] have preeminence over the internal law[.]" The Interamerican Convention on Human Rights contains a right to access the courts (Article 25)

---

[3] The Library of Congress provides a link (https://guides.loc.gov/law-guatemala/constitution) to an English version: http://constituteproject.org/constitution/Guatemala_1993.

and a guarantee of the freedom of thought and expression. Article 13, American Convention on

Human Rights "Pact of San Jose, Costa Rica" Nov. 22, 1969, O.A.S.T.S. No. 36, 1144 U.N.T.S.

123, 9 I.L.M. 673 (also known as the "Inter-American Convention").[4] The requested sanctions

would thus infringe on human rights treaties, and Petitioners have provided no legitimate basis

for the Court to do so.

A.   There is no basis to seek "further findings of civil contempt" because
     Respondents have purged the contempt as to Judgment No. 1 and the El Salvador
     component of Judgment No. 2

As noted in their filing on June 9 (ECF 371), the FPFA Contemnors have purged the

contempt as to Judgment No. 1. Mr. Hernández did his part, completing the required elements to

purge contempt of Judgment No. 1. The El Salvador Contemnors also have purged their

contempt. Petitioners do not seek any further findings of contempt in relation to 3PFA, and those

proceedings (related only to the BVI Actions) are outside the control of Mr. Hernandez. There

can therefore be no "further findings of civil contempt" absent an independent factual basis, and

Petitioners have offered none.

B.   Petitioners have failed to show that the criminal proceedings will block the sale of
     the Company

There is no evidence that the criminal proceedings will block the sale of the Company. To

the contrary, the sale of the shares of assets of the joint venture company will not be impeded, in

any way, by Mr. Hernandez's responses to the violent threats made against him. Nor is Mr.

Hernandez behind the other criminal cases. Mr. Hernandez has testified that he does not control

the Terra Parties or DT Holdings, and Petitioners did not ask him a single question about the

other criminal cases. Petitioners have had the documents from those cases since May 29, but

---

[4] An easily accessible version maintained by the Organization of American States is available
here: https://www.oas.org/dil/treaties_b-32_american_convention_on_human_rights.pdf.

have failed to identify any evidence of Mr. Hernandez's alleged involvement. There is thus no

basis to conclude that Mr. Hernandez is aiding or abetting any of the criminal cases, excluding

the two irrelevant criminal complaints that Mr. Hernandez filed to protect himself and his family.

C.    There is no basis for any finding of contempt of the 1PFA Judgment against Mr.
       Hernandez

Petitioners complain that the joint venture company has not been sold, but the sale

process is underway. A director appointed by the Terra Parties and another appointed by

Peppertree will be leading the sale process on behalf the Company. The Peppertree-appointed

director could reject any offer that is made or impose terms that a potential buyer will not accept,

keeping the sale from closing. Mr. Hernandez has no role in directing the Investment Bank or

accepting or rejecting any proposal. He is not a director of the Terra Parties and has no role in

rejecting or approving a proposed sale. In other words, the existence of the future sale of the

Company cannot be a basis for contempt.

D.    An anti-suit injunction against Mr. Hernandez would be wholly improper in light
       of recent threats of violence

Petitioners continue to demand that Mr. Hernandez withdraw the criminal complaints he

has filed based on threats to him and his family. Second Sanctions Mot., p. 6. This demand

ignores the serious nature of the threats at issue. The April 9 threat references personal details

about Mr. Hernandez's family, including where Mr. Hernandez's wife spends her time and where

his children go to school. Under Guatemalan law, Mr. Hernandez had the right to report these

threats of violence to the local authorities for the proper investigative processes to follow, for his

and his family's safety. Petitioners have zero evidence that these threats lack credibility. And it

would be highly improper to deprive Mr. Hernandez of the protection of local authorities through

an anti-suit injunction based on mere speculation that the threats might not be serious.

E.    <u>The record demonstrates that Mr. Hernandez is not aiding or abetting any non-compliance with the April 22 Order</u>

Mr. Hernandez is respectful of the April 22 Order and its finding that he, as a non-party (p. 38), aided and abetted the contempt of Judgment No. 1 and Judgment No. 2. But the factual record has been developed such that this finding should not continue into the future.

1.    *The issue of compliance with Judgment No. 1 is no longer on the table*

On June 9, 2025, the Terra Parties and DT Holdings submitted evidence of complete compliance with Judgment No. 1. ECF 371. Mr. Hernandez fulfilled his role with a declaration, as required by Section 4.2 of the April 22 Order. ECF 371-2. There is thus no basis for a finding of contempt (continued or otherwise).

Petitioners responded, not by denying compliance with the April 22 Order but rather by hypothesizing future acts of potential contempt. ECF 382. There is now no evidence of contempt with Judgment No. 1 or the 1PFA Judgment, and Mr. Hernandez cannot aid or abet unsupported, potential contempt. The hearing did not detail any impact that Mr. Hernandez's two criminal complaints can have on the sale, and Petitioners are not making a case that Mr. Hernandez exercises control such that he is directing any other relevant actions. The only record evidence, confirmed by the depositions of Messrs. Hernandez and Pimentel, is that Mr. Hernandez does not exercise any control over DT Holding. Any contempt sanction as to Judgment No. 1 is therefore unwarranted.

2.    *Mr. Hernandez is not aiding or abetting any non-compliance with Judgment No. 2, which either no longer exists or cannot exist*

As this Court has recognized before, "[a] preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration. An injunction should be modified only when the changed circumstances demonstrate that

continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties." *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (internal citations omitted). This standard has been consistently applied. *Lead Creation Inc. v. The Partnerships and Unincorporated Associations identified on Schedule A*, No. 1:22-cv-10377, 2 (S.D.N.Y. Mar 8, 2023) (vacating preliminary injunction).

The basis for the injunctions underlying the BVI Actions is the 3PFA. April 22 Order, p. 16. That award is now over two years old, having been issued on February 22, 2023. ECF 277-4, p. 45. Since that time, the facts have changed substantially.

Ms. Ascarrunz and Mr. Garzaro, formerly employees of subsidiaries of DT Holdings who were providing services to the subsidiaries of the joint venture company, are no longer employees of DT Holdings. Ms. Ascarrunz is not an employee of DT Holdings. ECF 324, pp. 5-6; ECF 361, pp. 2-3. On August 1, 2023, after the 3PFA, her employer is now an entity indirectly owned by the joint venture company. ECF 324, p. 3. Similarly, Mr. Garzaro's employment was transferred to a subsidiary of the joint venture company. ECF 325, pp. 5-6; ECF 360, pp. 2-3. Mr. Hernandez does not control the subsidiaries of the joint venture company, which instead respond to the instructions of the board of directors of that company. Mr. Hernandez is therefore not aiding or abetting any activity in relation to the BVI Actions, and he cannot take any steps to terminate those actions, regardless of how the termination is ordered to come about.

Similarly, Mr. Hernandez no longer controls DT Holdings. Mr. Hernandez resigned from this role years ago, as he testified in his deposition. ECF 369-4, p. 39:14-19. He does not own DT Holdings or the entity upstream from DT Holdings. *Id*., p. 39:1-9. The beneficial owner is a trustee, and Mr. Hernandez does not control the trustee. *Id*, p. 40:4-21 . There is nothing that Mr.

Hernandez can do to compel Ms. Ascarrunz and Mr. Garzaro through DT Holdings. He can only ask them to comply, as he has done.

The litigation on the motion for reconsideration illustrates the futility of holding Mr. Hernandez in contempt in relation to the BVI Actions. The current debate revolves around the kind of request necessary to vacate the BVI Actions. A unilateral request is uncertain and could take months to resolve. ECF 323, pp. 10-11. A joint request requires action by the joint venture company (p. 10), which Mr. Hernandez certainly does not control, along with action by the Peppertree parties, again outside his control (pp. 10-11). The dispute continues to play out without his involvement. ECF 360, pp. 5-6; ECF 361, pp. 5-6. There is no evidence that Mr. Hernandez is aiding or abetting this legal dispute, and in any event, it appears there is no dispute as to the desire to vacate the BVI Actions but rather the method. This is far from a showing that Mr. Hernandez is in contempt.

The latest instrument, the 5PFA, does not change the analysis. The arbitral tribunal purported to bind Mr. Hernandez retroactively to the prior partial final awards. ECF 377-1, p. 105, FN 46. Petitioners did not request this relief, nor was Mr. Hernandez afforded notice and the opportunity to oppose it. It would be manifestly unjust to now issue an anti-suit injunction, or any finding of aiding and abetting the BVI Actions, based on this unlitigated finding.

In sum, there is no showing that Mr. Hernandez is aiding and abetting the BVI Actions, and to the extent that the 3PFA or the 3PFA Judgment provide a basis to find Mr. Hernandez responsible for the BVI Actions, and the anti-suit injunction contained therein, there are changed circumstances that justify a different result now. Mr. Hernandez is not in charge of DT Holdings, and Ms. Ascarrunz and Mr. Garzaro are no longer employees of a subsidiary of DT Holdings. Mr. Hernandez thus has no control over them or the companies they manage.

3.    *Mr. Hernandez should not be held responsible for complying with his legal obligation to report the threats against him and his family*

Finally, as discussed in the opposition filed by the Terra Parties and DT Holdings, there are legal obligations in Guatemala and El Salvador to report evidence of a crime. ECF 376-11; 376-12. The obligation exists in El Salvador as well as in Guatemala. ECF 376-11, p. 4 (El Salvador); 376-12, p. 3 (Guatemala). The text of the relevant laws requiring reporting of crimes are referenced in the footnotes to the Sandoval Declaration (ECF 376-11, pp. 5-7) and mentioned in the Merida Declaration. ECF 376-12, p. 3.The failure to meet this obligation in El Salvador comes with a sentence of 50-100 days in prison. ECF 376-12, p. 4. In Guatemala, there is a fine, as Petitioners' local counsel cites (ECF 369-54, pp. 2-3), but there are practical consequences that extend much further. These include civil liability and having the conviction in one's personal record, impacting their life in a myriad of ways. ECF 376-12, p. 3. Petitioners cannot expect Mr. Hernandez to refuse to report the threats against him. After a report, the local authorities investigate and then make their own independent determination.

## II.    There is no basis for adverse inferences when Mr. Hernandez is not in contempt and has complied with his discovery obligations

The discovery dispute launched by Petitioners and litigated by the Terra Parties and DT Holdings has nothing to do with Mr. Hernandez. The production obligations did not include Mr. Hernandez, a non-party, and Mr. Hernandez voluntarily appeared for a deposition. Mr. Hernandez had no discovery obligations, and the one he voluntarily assumed, his presence at a deposition, is not the source of any dispute lodged by Petitioners. Any adverse inference is thus unwarranted.

A.    Mr. Hernandez is not in contempt of the 1PFA, 2PFA, or 3PFA

As stated above, Mr. Hernandez has met the requirements to purge the contempt of Judgment No. 1. There was no contempt of the 2PFA in the April 22 Order, and nothing has changed to merit a finding of contempt. There has been no alteration of the 2PFA, and the arbitral tribunal has not issued a new award as to the matter discussed therein. Regarding the 3PFA, Mr. Hernandez is not aiding and abetting anything related to the BVI Actions and urging compliance with the April 22 Order. Without any contempt of the 1PFA, 2PFA, or 3PFA, there is no basis for adverse inferences or any contempt sanctions.

B.    Petitioners cannot meet any of the three elements required for an adverse inference

As this Court has previously opined, an adverse inference sought on the basis that the evidence was not produced in time requires the party seeking the instruction to show "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 222 (S.D.N.Y. 2013). Petitioners' complaint over the scope of the discovery ordered does not touch Mr. Hernandez at all, who had no obligations to produce any documents. As a non-party, he was not bound by the requests, and he does not control the Terra Parties or DT Holdings. Mr. Hernandez thus could not fail to "timely produce" or have a "culpable statement of mind." There is also no need to reach the relevance of the documents. A request for adverse inferences is therefore meritless.

### III.    Civil confinement is inappropriate, and there is no basis for criminal contempt sanctions

Petitioners' demand for coercive civil confinement is extreme and unwarranted. *First*, Respondents have purged their contempt following the approval of an investment bank to facilitate the sale of the Company. Thus, there are no "ongoing—and escalating—violations of the Court's orders," as Petitioners suggest. Second Sanctions Mot., p. 29. *Second*, the specific demand that Mr. Hernandez be incarcerated because of his personal criminal complaints is baseless. Mr. Hernandez availed himself of the protections of Guatemalan law by advising the authorities that he had received death threats. Reporting suspected criminal activity and seeking the protection of law enforcement (for himself, his wife, and his minor children) does not violate any order of this Court. In any event, an order purporting to compel foreign prosecutors to halt their investigations would present serious comity concerns, and an order purporting to compel Mr. Hernandez to withdraw or denounce his complaint would run roughshod over fundamental First Amendment principles. *Third*, the Court should reject the suggestion that Mr. Hernandez be incarcerated because of the conduct of *other* corporate entities filing their own criminal complaints in El Salvador, Peru, and elsewhere. Coercive measures of any kind are improper where "there is 'no wilful disobedience but only an incapacity to comply.'" *Armstrong v. Guccione*, 470 F.3d 89, 101 (2d Cir. 2006) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 73 (1948). *Fourth*, the Court should also reject Petitioners' attempt to expand the scope of relief provided in the 1PFA. The arbitral tribunal ordered the Terra Parties to proceed with the sale of the Company. Petitioners now appear to argue that the award also provides Mr. Gaitán immunity from both criminal investigation and criminal prosecution is all jurisdictions around the world until that sale is effectuated. The 1PFA says no such thing.

Even though Mr. Hernandez was not properly served, he still undertook to comply with the April 22 Order. Mr. Hernandez has provided the requested sworn testimony, and the Terra Parties and DT Holdings have satisfied the elements to purge the contempt of Judgment No. 1. As to the El Salvador Action, Mr. Hernandez has provided a declaration with his understanding that the El Salvador Action has been dismissed. ECF 338-1. The Terra Parties and DT Holdings are procuring the certified translation to confirm the dismissal that occurred on May 7. And in relation to the BVI Actions, the Peru Non-Parties are taking their own approach, with their own counsel, arguments, and deadlines.

In relation to the expedited discovery ordered on May 21, Mr. Hernandez had no discovery obligations but still voluntarily participated. He sat past the two hours required by the Court and answered the questions put to him. Petitioners may be dissatisfied with the answers, but they have not argued that the answers were contumacious conduct. This is far from a sign of willing non-compliance.

An order of civil confinement of Mr. Hernandez would be especially inappropriate where Mr. Hernandez does not live in the United States and has not demonstrated an intent to routinely come to the United States. He lives in Guatemala, and once his children graduate from high school, he plans to move to a different country, not the United States. ECF 369-48, p. 67:20-25. Without a reasonable prospect that Mr. Hernandez will be subject to service of such an order, "there would be little point in issuing it." *Spectacular Venture, L.P. v. World Star International, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996).

## CONCLUSION

For the foregoing reasons, Mr. Hernandez respectfully requests that the Court deny the First and Second Sanctions Motions in their entirety.

Dated: June 20, 2025                          Respectfully submitted,


_____/s/_____                            _____/s/_____
Rodney Quinn Smith II                        Lucila I. M. Hemmingsen
(admitted *pro hac vice*)                    **The Fladgate Firm PC**
**GST LLP**                                  305 Broadway, 7th Floor
78 SW 7th Street, Suite 500                  New York, NY
Miami, FL 33130                              Phone: (646) 369-5843
Phone: (305) 856-7723                        lh@hemmingsenadr.com
quinn.smith@gstllp.com


*Counsel for Mr. Hernandez*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this document complies with the word count limitations. There are 5,617 words in this document.


_/s/ Quinn Smith_
Rodney Quinn Smith II