**United States District Court**
**Southern District of New York**

---

Telecom Business Solution, LLC, *et al.*,

        Petitioners,

    v.

Terra Towers Corp., *et al.*,

        Respondents.

---

Civil Action No.: 1:22-cv-01761

Judge Lewis A. Kaplan

Magistrate Judge Robert W. Lehrburger

## MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION TO CONFIRM AND CROSS-PETITION TO VACATE <u>THE FIFTH PARTIAL FINAL AWARD</u>

Rodney Quinn Smith, II
(admitted *pro hac vice*)
**GST LLP**
78 SW 7th Street, Suite 500
Miami, FL 33130
Phone: (305) 856-7723
Fax: (305) 856-7724
quinn.smith@gstllp.com

Lucila I. M. Hemmingsen
**The Fladgate Firm PC**
305 Broadway, 7th Floor
New York, NY
Phone: (646) 369-5843
lh@hemmingsenadr.com

*Counsel for Jorge Hernández*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ........................................................................................1

    A.       The Business Relationship ..........................................................1

    B.       The Arbitration Clauses ..............................................................4

    C.       Mr. Hernández's Role ................................................................5

    D.       The Arbitration ..........................................................................7

          1.      Mr. Hernández's Objection to Jurisdiction ...................7

          2.      Phase 1: The First Four Partial Final Awards................8

          3.      Phase 2: The Fifth Partial Final Award ......................10

ARGUMENT ............................................................................................................13

I.      THE COURT SHOULD VACATE OR, IN THE ALTERNATIVE, DECLINE TO
ENFORCE THE AWARD BECAUSE THE TRIBUNAL LACKED
JURISDICTION OVER MR. HERNÁNDEZ. ................................................13

    A.       This Court Owes the Tribunal's Findings and Conclusions No Deference. ..........14

    B.       The Tribunal Lacked Jurisdiction Over Mr. Hernández, Who Is Not a
Party to the Shareholders Agreement or Development Agreement. .....................15

          1.      Mr. Hernández Did Not Directly Benefit from the Agreement. ...............16

          2.      Mr. Hernández Is Not the Alter Ego of Any Signatory to the
Arbitration Agreement. ..............................................................................21

II.    THE TRIBUNAL SHOULD DECLINE TO ENFORCE THE AWARD
BECAUSE PETITIONERS LACKED THE CAPACITY TO SUE MR.
HERNÁNDEZ DERIVATIVELY ON BEHALF OF THE COMPANY. ..........................24

III.   THE COURT SHOULD VACATE THE AWARD BECAUSE THE TRIBUNAL
EXCEEDED ITS AUTHORITY. ....................................................................25

IV.   THE TRIBUNAL SHOULD VACATE THE AWARD BECAUSE THE
TRIBUNAL FAILED TO ISSUE A MUTUAL, FINAL, AND DEFINITE
AWARD. ......................................................................................................27

CONCLUSION ..........................................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir 1997) ...............................25

*Arhontisa Maritime Ltd. v. Twinbrook Corp.*, 2001 WL 1142136, at *4
(S.D.N.Y. Sept. 27, 2001) ...........................................................................................21

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). ...15

*Basch v. Talley Industries, Inc.*, 53 F.R.D. 9, 11 (S.D.N.Y. 1971) .................................................24

*Bilyeu v. Johanson Berenson LLP*, 809 F. Supp. 2d 547, 561 (W.D. La. 2011) ...........................20

*Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 493 (S.D.N.Y. 2018)............14, 23

*Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) ......................................16

*Certain Underwriters at Lloyd's, London v. Allied Pros. Ins.*, 2023 WL 4449570, at *5 & n.4
(W.D.N.Y. July 11, 2023).............................................................................................18

*CollegeStreet Import and Export (Tianjin) Co. Ltd. v. TL x HF LLC*, 2025 WL 979756, *8
(S.D.N.Y. Apr. 2, 2025)................................................................................................19

*Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 240 (S.D.N.Y. 2003)................21

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 589
(S.D.N.Y. 2024) ................................................................................................14,15,21,22

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 947 (1995) ....................................14

*Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68 (2d Cir. 2021)....................................15,16,17

*GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*, 2016 WL 3525358, at *4
(S.D.N.Y. June 22, 2016) ............................................................................................21

*Green v. XPO Last Mile, Inc.*, 504 F. Supp. 3d 60, 68 (D. Conn. 2020)........................................19

*Imagineering, Inc. v. Lukingbeal,* 94 Civ. 2589, 1997 WL 363591, at *5 n.11 (S.D.N.Y. June 30,
1997) ...............................................................................................................................22

*Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1280 (D. Utah 2018) ...................20

*In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 96 (2d Cir. 1988)................................................26

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975)..23

*Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 348 (S.D.N.Y. 2018) ....................................14,16,19,20

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–CIO v. Custom Air Systems, Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) ....................................................................................................22

*MAG Portfolio Consult., GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ................................................................................................................15,17

*Matter of Arb. Between Keystone Shipping Co. and Texport Oil Co.*, 782 F. Supp. 28, 30-31 (S.D.N.Y. 1992) ...........................................................................................................24

*Med-IM Dev. Inc. v. General Elec. Cap. Corp.*, 2008 WL 901489, at *4 (S.D.N.Y. Mar. 31, 2008) ....................................................................................................16

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)..................15,22

*Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986) ................27

*Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980)....................................27

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963) .........................................................................................................14,21

*Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020) ..................................................26

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ..........................................27

*Rafferty v. Xinhua Finance Ltd.*, 2011 WL 335312, at *8 (S.D.N.Y. Jan. 31, 2011) ....................20

*Salim Oleochemicals, Inc. v. M/V Shropshire*, 2001 WL 428255, at *5 n.3 (S.D.N.Y. Apr. 25, 2001) ...............................................................................................................22

*Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *7 (S.D.N.Y. Feb. 13, 2004)..........................23

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ......................15,23

*Trina Solar US, Inc. v. Jasmin Solar Pty Ltd*, 954 F.3d 567, 570 (2d Cir. 2020)................14,18,19

*Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., Inc.*, 933 F. Supp. 1170, 1179 (S.D.N.Y. 1996)......................................................................................................23

*Veera v. Janssen*, 2005 WL 1606054, at *4 (S.D.N.Y. July 5, 2005)....................................19,20,22

iii

**Other**

9 U.S.C. § 10 ................................................................................................................... 13

BVI Companies Act ........................................................................................................... 25

New York Convention, Article V ....................................................................... 13,21,24,25

## INTRODUCTION

Jorge Hernández never agreed to arbitrate any dispute with Petitioners.[1] Nor did he agree to arbitrate any dispute with the Company, in whose name Petitioners purported to bring derivative claims in the arbitration. This Court should vacate the fifth partial final award ("5PFA") as to Mr. Hernández or deny its recognition and enforcement for the following reasons:

- There is no basis to apply direct benefits estoppel. Mr. Hernández is not an owner and was only a director of Terra Towers Corp., until November 2018, long before the arbitration. Mr. Hernández timely objected to the Tribunal's jurisdiction and subsequently petitioned this Court for an injunction halting the arbitration. The Court deferred the initial determination of arbitrability to the Tribunal and reserved its own independent determination of jurisdiction if the issue were "raised in *post*-arbitration judicial proceedings." Memorandum Opinion at 9, No. 1:24-cv-03457-LAK (S.D.N.Y. July 12, 2024) (ECF 34).

- Vacatur is otherwise warranted because Petitioners lacked the capacity to bring a derivative action, the tribunal exceeded its authority by awarding remedies that the petitioners did not request, and the tribunal did not issue a mutual, final, and definite award, instead issuing an interim award with no final damages amount.

For these reasons and those stated below, 5PFA should have no effect on Mr. Hernandez.

## FACTUAL BACKGROUND

### A.    The Business Relationship

Mr. Hernández is a Guatemalan businessman who has since his youth worked for his family's businesses in the construction, real estate, telecommunications, and technology sectors. Declaration of Jorge Hernández of June 28, 2025 ("JH Decl.") ¶¶ 1, 6–7. The family business has developed projects for international companies. *Id.* ¶ 7.

This dispute involves the business's telecommunications arm. Around 2006, the family formed Terra Towers Corp. ("Terra") to pursue a "build-to-lease" model developing antenna

---

[1] Telecom Business Solution, LLC, LATAM Towers, AMLQ Holdings (Cay), Ltd. (**"Petitioners"**).

infrastructure for telecommunication service providers. *Id.* ¶ 8. In 2008, Terra incorporated a subsidiary, Continental Towers Holding Corp., to manage the commercial leasing of the towers. *Id.* ¶ 9. That company then incorporated various operating subsidiaries in Guatemala, El Salvador, Honduras, Nicaragua, Costa Rica, Panamá, Colombia, and Perú. *Id.*

In 2010, Terra formed TBS Management, S.A. ("TBS"), a Panamanian limited liability company, to manage and provide certain telecommunication services for Terra. *Id.* ¶ 10.

In 2012, the family formed DT Holdings, Inc. ("DTH"), a Panamanian limited liability company, to support Terra's site-leasing business by providing services to develop, build, and maintain towers. *Id.* ¶ 11.

By early 2015, Terra had outgrown the family-business model. Outside investors sought to participate through the formation of a new corporate structure. In particular, Peppertree Capital and Goldman Sachs approached Terra to provide an outside equity investment. *See id.* ¶¶ 27–28. These sophisticated parties bargained over a suite of agreements specifying the structure, management, and operations of the new company. *Id.* ¶ 28. The new company would carry a new name, Continental Towers LATAM Holdings, Ltd. (the "Company"), and a new corporate structure for a similar business purpose—namely acquiring, financing, building, installing, and leasing telecommunications towers. Ex. 1 ("Shareholders Agreement" or "SHA") § 3.01(a).

In October 2015, the affiliates of Goldman Sachs, Peppertree, and the family business entered into certain agreements governing the Company's corporate structure and business operations. These agreements consisted of:

- The Shareholders Agreement between the Company, Peppertree LATAM, Peppertree TBS, AMLQ, Terra, and TBS;

- the Subscription and Contribution Agreement between the Company, Peppertree LATAM, Peppertree TBS, AMLQ, Terra, and TBS (the "Subscription Agreement"), Ex. 2;

- the Development Agreement between the Company, Terra Towers, TBS, and DTH (the "Development Agreement"), Ex. 3 ("Dev. Agmt."); and

- the Offshore Turnkey Engineering, Procurement and Management Contract between the Company and DTH (the "EPC Contract"), Ex. 4.

There were also various local "onshore" EPC contracts between a local subsidiary of the Company in a given territory and the corresponding local subsidiary of DTH. Ex. 5 (J. Hernández witness statement, Jan. 28, 2022) at ¶ 2.

Under the Shareholders Agreement, the four seats of the Company board were divided among the majority and minority shareholders. Two seats went to the majority "A shareholders" (Terra and TBS); two seats to the minority "B shareholders" (the two Peppertree entities); and zero seats to the minority "C shareholder" AMLQ. SHA § 4.02. As negotiated by the parties, the Shareholders Agreement named Hernández as one of the A shareholders' initial board seats and chairman of the board. *Id.* § 4.02(e)–(f). The Shareholders Agreement also provides for an "Approved Sale" process after the running of a five-year "lock-up period." *Id.* § 5.04(b). At the end of the lock-up period, the A or B shareholders could initiate the Approved Sale process to sell the Company. *Id.*

The Development Agreement regulated (i) the process by which Terra presented opportunities for the development of telecommunication towers by the Company's local subsidiary and (ii) certain outsourcing services rendered by DTH and its local subsidiaries to the Company and its local subsidiaries. Dev. Agmt. §§ 1.1(a), (c); *id.* § 1.1(f). In consideration for these services, the Company paid a service fee to DTH. *Id.* § 1.1(f).

The Offshore EPC Contract was entered into by the Company and DTH, whereas the onshore EPC Contracts were each entered into by a local subsidiary of the Company in the

3

various jurisdictions and a corresponding local subsidiary of DTH. Ex. 5 ¶ 2. Under the Offshore EPC Contract, DTH is the contractor that, through its local subsidiaries, develops, constructs, and delivers telecommunication towers to the Company's local subsidiaries, and the Company pays DTH and its applicable subsidiary a $175,000 fee for each telecommunication tower constructed and delivered. Dev. Agmt. § 2.1.1.2.

All of these agreements were executed after arms-length negotiations between sophisticated business parties, represented by sophisticated counsel.

### B.    The Arbitration Clauses

With the investment from Peppertree and Goldman Sachs, the contracting parties agreed to settle certain of their disputes by arbitration. The parties to the Shareholders Agreement agreed to resolve "any controversy, claim or dispute arising out of or relating to or in connection with this Agreement including, without limitation, any dispute regarding its breach, termination, enforceability or validity hereof" by "binding arbitration . . . conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of the arbitration" and seated in New York. SHA §§ 8.14, 8.15. The parties to the Development Agreement incorporated the arbitration clause in the Shareholders Agreement. *See* Dev. Agmt. § 3.5. None of the Offshore EPC Contract or the Onshore EPC Contracts contains an arbitration clause calling for arbitration in the United States.

Mr. Hernández is not a party to the Shareholders Agreement, the Development Agreement, or any of the EPC Contracts. In the Shareholders Agreement, the parties agreed expressly that:

> This Agreement will be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns and successors and nothing herein, express or implied, is intended to or will confer upon any other person or entity, any legal or equitable right, benefit or

remedy of any nature whatsoever under or by reason of this Agreement.

SHA § 8.08. In the Development Agreement, the parties similarly agreed that "[t]his Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors" and that "[n]othing in this Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights or remedies under or by reason of this Agreement." Dev. Agmt. § 3.7. Similarly, the Shareholders Agreement prohibits finding the board directors, "individual or severally . . . liable, responsible or accountable in damages or otherwise to the Company or to any Shareholder for any acts performed or omitted by him while serving as a Director or an officer or agent of the Company." SHA § 4.03. None of Peppertree, Goldman Sachs, Terra, TBS, or any other entity executed an arbitration clause with Mr. Hernández in his personal capacity.

### C. Mr. Hernández's Role

Mr. Hernández works with his family's businesses. JH Decl. ¶¶ 6-7. Relevant to this dispute, some of his efforts have focused on telecommunications. *Id.* ¶ 7. But Mr. Hernández was not the founder of the family business and has never been its ultimate beneficial owner. *See id.* ¶¶ 6-7, 12. With respect to the entities in this dispute, his roles are as follows:

Terra & TBS: Mr. Hernández does not own shares in Terra. Terra is owned by an offshore trust (the "Foreign Trust"). *Id.* ¶ 12. Mr. Hernández is not a settlor, trustee, trust protector, or beneficiary of the Foreign Trust. *Id.* ¶¶ 18. Mr. Hernández served as a director of Terra at the time of the Shareholders Agreement and continued as such until November 2018. *Id.* ¶ 13. He has never owned shares in TBS, which is likewise owned by the Foreign Trust. *Id.* ¶ 14. Mr. Hernández served as an administrator and president of TBS from May 2016 to December 2018. *Id.* ¶ 15. As the ultimate sole owner of Terra and TBS, the Foreign Trust makes appointments to

their boards of directors. *Id.* ¶¶ 26. Mr. Hernández has never had authority over who the Foreign

Trust appoints to the boards of Terra or TBS. *Id.* ¶ 27. In 2018, the Foreign Trust asked

Mr. Hernández to resign as a director of both Terra and TBS. *Id.* ¶¶ 13, 15. Since then, he has not

held any directorship for Terra or TBS. *See id.* And Mr. Hernández has not had any authority

over Terra's or TBS's business or management decisions or employment decisions since he

resigned. *Id.* ¶ 20. Since his resignations, Mr. Hernández has had no control or authority over

business or management decisions. JH Decl., ¶ 27.

DT Holdings: Mr. Hernández does not own shares in DTH, which, like Terra and TBS, is

owned by the Foreign Trust. *See* JH Decl. ¶ 16-17. As is true of Terra and TBS, the Foreign

Trust, not Mr. Hernández, makes appointments to DTH's board of directors. *Id.* ¶ 26.

Mr. Hernández has also never been a director or employee of DTH. *Id.* ¶ 17.

The Company: Mr. Hernández does not own shares in the Company, which is wholly

owned by majority shareholders Terra and TBS, and minority shareholders Telecom Business

Solution, LLC, Latam Towers LLC, and AMLQ Holdings. *Id.* ¶ 19; Ex. 6 at 179 ¶¶ 33–36.

Mr. Hernández was one of four directors of the Company and held one of two board seats

allocated to Terra and TBS. JH Decl. ¶ 21; Ex. 6 at 179–80, ¶¶ 37–38. Following adverse

developments in the arbitration, Mr. Hernández lost his directorship of the Company. The

Foreign Trust asked Mr. Hernández to resign, which he did on February 9, 2023. JH Decl. ¶ 21;

*see* Ex. 7 (resignation letter, Feb. 9, 2023). The Foreign Trust replaced Mr. Hernández with

William Rene Mendez Araujo, and Mr. Hernández had no role in the nomination, selection, or

appointment of Mr. Mendez. JH Decl. ¶ 22; Ex. 7.

### D.    The Arbitration

On November 4, 2020, Petitioners sent a letter to the Company and its shareholders purporting to initiate a sale of the Company to Torrecom Partners LP ("Torrecom").  Terra objected, and a shareholder dispute arose between Terra and Petitioners concerning the Shareholders Agreement and the sale of the Company.

Four months later, in February 2021, Petitioners initiated arbitration against Terra, TBS, and DTH. *See* Ex. 8 (Petitioners' Initial Demand). Petitioners later amended their demand in August 2021, but also "joined" Alberto Arzú and Mr. Hernández as Respondents "in their capacities as Directors of the Company." *Id.* at ¶ 29. Petitioners sought relief "derivatively" against Mr. Hernández "in the right of and for the benefit of the Company and its shareholders to redress injuries suffered by the Company as a direct result of the violations of law, breaches of fiduciary duty, corporate mismanagement, self-dealing, embezzlement, and abuse of control, as well as the aiding and abetting thereof." *Id.* ¶¶ 154, 226.

### 1.    Mr. Hernández's Objection to Jurisdiction

Mr. Hernández timely objected to the Tribunal's jurisdiction. *See* Ex. 9 at 2. Mr. Hernández renewed this objection in August 2021 after Peppertree's amended demand maintained the derivative claims against him in his capacity as director. Ex. 10 at 2. Mr. Hernández asserted no counterclaims. When constituted, the Tribunal recognized Mr. Hernández's timely objection to its jurisdiction, noting that he and the other individual defendants "expressly reserve their jurisdictional challenges to the Tribunal's jurisdiction over them and nothing herein shall be deemed a waiver of such challenge." Ex. 11 (Procedural Order No. 2) at 2 n.1.

Thereafter, the Tribunal divided the proceedings in two phases: Phase 1 would address Petitioners' claims for specific performance related to the sale of the company and the construction of towers, while Phase 2 would address claims related to the continued development of towers and the claims against individual directors.

### 2. Phase 1: The First Four Partial Final Awards

The Tribunal has issued five "Partial Final Awards," including the 5FPA at issue here. The other four awards are summarized below:

First Partial Final Award ("1PFA").[2] In February 2022, the Tribunal issued a "First Partial Final Award." The Tribunal found that the respondent companies had breached the forced-sale provision of the Shareholders Agreement and awarded specific performance. The award directed that respondents Terra and TBS "shall cause their appointed members of the Board of Directors of the Company to vote in favor of the engagement of an Investment Bank." 1PFA ¶ 72(ii).

In February 2022, Petitioners sought confirmation of the 1FPA. Mr. Hernández was not a party to the 1FPA, nor to the confirmation proceedings before this Court. On January 18, 2023, the Court confirmed the 1FPA and rendered Judgment No. 1 enforcing its terms. Terra, TBS, and DT Holdings appealed, and the Second Circuit confirmed Judgment No. 1 on February 6, 2024.

Second Partial Final Award ("2PFA").[3] In August 2022, the Tribunal issued a "Second Partial Final Award" concerning the status of the executive management of the Company and the removal of Jorge Gaitan as CEO of the Company. The Tribunal entered a stay of the respondents' counterclaims, imposed certain requirements on their counsel, and ordered that respondents were barred from bringing certain claims relating to Mr. Gaitán and Ms. Echeverría.

---

[2] *See* ECF 9-22 (1PFA); ECF 124 (confirming 1PFA).
[3] *See* ECF 173-53 (2PFA) ECF 207 (confirming 2PFA).

In September 2022, Petitioners sought confirmation of the 2FPA. Mr. Hernández was not a party to the 2FPA, nor to the confirmation proceedings before this Court. On February 20, 2024, the Court confirmed the 2PFA and rendered Judgment No. 3. On April 23, 2025, the Second Circuit affirmed.

Third Partial Final Award ("3PFA").[4] In February 2023, the Tribunal issued a "Third Partial Final Award." The Tribunal ordered the respondent companies to terminate two foreign arbitrations that were initiated by respondents' employees or contractors in both Peru and Guatemala. *See* 3PFA at ¶¶ 3, 43, 53, 55-58, 68, 73, 116; *id.* at 42-43 ("Award").

In February 2023, Petitioners sought confirmation of the 3FPA. Mr. Hernández was not a party to the 3FPA, nor to the confirmation proceedings before this Court. On September 6, 2023, the Court confirmed the 3PFA and rendered Judgment No. 2. On April 23, 2025, the Second Circuit affirmed.

Fourth Partial Award ("4PFA").[5] In March 2025, the Tribunal issued a "Fourth Partial Final Award." That award quantified attorney fees, expenses, and arbitrator fees that were originally awarded as part of the Third Partial Award.

In May 2023, Petitioners sought confirmation of the 4FPA. Mr. Hernández was not a party to the 4FPA, nor to the confirmation proceedings before this Court. On February 8, 2024, the Court confirmed the 4PFA and rendered Judgment No. 4. On April 23, 2025, the Second Circuit affirmed.

*     *     *

---

[4] *See* ECF 143-62 (3PFA); ECF 183 (confirming 3PFA).
[5] *See* ECF 153-5 (4PFA); ECF 202 (confirming 4PFA).

Throughout the proceedings leading to these awards, Mr. Hernández participated only in his official capacity as a director of the Company. While doing so, he repeatedly asserted his objection to the Tribunal's jurisdiction over claims asserted against him. And the Tribunal repeatedly recognized Mr. Hernández's preserved objections to its jurisdiction and authority. *See, e.g.*, Ex. 12 (Procedural Order No. 2024-11) at 3 ("Respondents have maintained objections to arbitral jurisdiction on behalf of [the Individual] Respondents.").

Mr. Hernández never participated in his personal capacity. Rather, his participation remained limited to his capacity as a director for the Company. The respondent companies submitted witness statements or testimony from Mr. Hernández in support of ***their*** defenses and counterclaims—not his. In all, the respondent companies submitted four witness statements from Mr. Hernández, all of which were filed a year or more before he resigned his directorship of the Company. After his resignation, Mr. Hernández provided no further evidence in the arbitration.

### 3.     Phase 2: The Fifth Partial Final Award

In Phase 2, the threshold jurisdictional question came to the fore. Mr. Hernández and the other individual respondents sought a judicial stay in New York state court, which was later removed to this Court. After briefing and a hearing, the Court concluded that Mr. Hernández and the other individual respondents had forfeited their right to seek judicial relief at this stage. *See* Memorandum Opinion, No. 1:24-cv-03457-LAK (S.D.N.Y. July 12, 2024) (ECF 34). At the same time, the Court noted that the individual respondents, having preserved their objections before the Tribunal, could otherwise pursue their arbitrability objections in post-arbitration judicial proceedings. *See id.* at 9 ("[T]o be clear, this holding does not leave petitioners without the possibility of judicial relief should they lose on the point before the arbitration tribunal.

Arbitrability issues that have effectively been preserved can be raised in *post*-arbitration judicial proceedings." (internal quotation marks omitted)).

The Tribunal initiated Phase 2 in October 2023. Petitioners filed a Consolidated Amended Demand for Arbitration and Statement of Claims, which asserted new claims against the individual respondents for tortious interference and breach of fiduciary duty. Ex. 13 (Petitioner's Consolidated Amended Demand) ¶¶ 383–389, 484–493.  Mr. Hernández again objected to the Tribunal's jurisdiction. Ex. 14 at 171.

On the question of jurisdiction, Mr. Hernández and the other individual respondents argued (i) that the Tribunal lacked jurisdiction to decide questions of arbitrability because that question had not been delegated to the Tribunal; and (ii) that, in any event, the Tribunal lacked jurisdiction over the individual respondents. *See, e.g.*, Ex. 15 (Resps.' Opening Pre-Hearing Mem.) at 33–37.

Petitioners sought to justify the Tribunal's jurisdiction on theories of estoppel, waiver, and veil-piercing. Ex. 16 (Pets.' Responsive Pre-Hearing Mem.) at 24-25. They alleged (i) that the individual respondents can be compelled to arbitrate because they are direct beneficiaries of the Shareholders Agreement as directors of the Company and that Mr. Hernández is expressly conferred with other benefits in his individual capacity, *id.* at 25 (citing S.D.N.Y Br. at 17-19); (ii) that Terra, TBS, and DT Holdings are the alter ego of Mr. Hernández, *id.*; and (iii) that the individual respondents had participated substantively in the arbitration for years, including by submitting witness statements and providing live testimony, and thereby waived an objection, *id.* at n.34.

In March 2025, the Tribunal issued the 5PFA. *See* ECF 277-1 ("**5PFA**"). Unlike the previous awards, the 5PFA purported to bind Mr. Hernández to the arbitration clauses in the

Shareholders Agreement and the Development Agreement. Substantively, the Tribunal purported to impose liability on Mr. Hernández for alleged tortious interference and breach of fiduciary duty. The Tribunal also purported to bind Mr. Hernández retroactively as an "obligor" to the Third Partial Award. 5PFA ¶ 170 n.46.

The Tribunal declined to reach Petitioners' claims of alter ego and waiver. Instead, the Tribunal asserted jurisdiction over Mr. Hernández only under the theory of "direct benefits estoppel." *See id.* ¶ 168 ("'[A] nonsignatory to an agreement to arbitrate containing an arbitration clause may be compelled to arbitrate with a signatory where the non-signatory knowingly accepts benefits directly derived from the agreement.'" (quoting *Belzberg v. Verus Investments Holdings, Inc.*, 21 N.Y.3d 626, 631 (2013)).

In support of that finding, the 5PFA states, without evidence, that Mr. Hernández is the "sole owner" of both Terra and DTH. 5PFA ¶¶ 165–166. The 5PFA goes on to assert, again without evidence, that Mr. Hernández exploited his alleged sole ownership for pecuniary and non-pecuniary benefits that "fit comfortably" within the direct benefits estoppel doctrine. *Id.* ¶ 168.

With respect to Terra, the 5PFA asserts that Mr. Hernández's alleged sole ownership gives him "the right to receive personally or to decide who would receive Terra's share of the proceeds of a Company sale." *Id.* ¶ 165. And in non-pecuniary terms, the Tribunal asserted that Mr. Hernández's alleged sole control enables him the benefit of "appoint[ing] two Directors to the Company's Board who were in practical terms accountable only to him and he could replace them on the Board at any time." *Id.*

With respect to DTH, the Tribunal concluded that Mr. Hernández's alleged sole ownership directly conferred upon him the pecuniary benefit of the monthly payment specified

in the Development Agreement. *Id.* ¶ 166. According to the Tribunal, Mr. Hernández, could allocate that money however he saw fit, whether to the support services that DTH was required to provide to the Company or to himself or his designees as a profit, bonus, or dividend. *Id.* In non-pecuniary terms, the Tribunal pointed to what it assumed to be true of Mr. Hernández as an alleged sole owner—that he had the "power" to compensate DTH employees and "otherwise influence them because he held sole power to terminate them from their DTH positions." *Id.* ¶ 167.

In short, based on its assumption that Mr. Hernández is the sole owner, controller, and beneficiary of Terra and DTH, the Tribunal concluded—without any supporting evidence—that it was "obvious" that he is bound by the arbitration clause in the Shareholders Agreement because he "has an economic interest in keeping majority control of the Company, continuing the business relationship between the Company and DTH, and retaining in perpetuity . . . the equity investments made by Claimants in 2015." *Id.* ¶ 176. Those factual findings are incorrect and without basis, as set forth below.

## ARGUMENT

## I.    THE COURT SHOULD VACATE OR, IN THE ALTERNATIVE, DECLINE TO ENFORCE THE AWARD BECAUSE THE TRIBUNAL LACKED JURISDICTION OVER MR. HERNÁNDEZ.

The Federal Arbitration Act permits the Court to vacate an award where the Tribunal exceeded its powers, including where it purported to exercise jurisdiction over a nonsignatory. 9 U.S.C. § 10(a)(4). The New York Convention permits a Court to decline enforcement of an arbitral award where there is no agreement to arbitrate the dispute between the parties. *See* N.Y. Convention, Art. V(a) & (c). Indeed, under settled federal law, a court may not confirm and should vacate an "award against a person who is not a party to an arbitration agreement" because

arbitrators lack jurisdiction over nonparties. *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 589 (S.D.N.Y. 2024). An award against nonparties necessarily exceeds the arbitrators' powers and is subject to vacatur under Section 10(a)(4) of the FAA. The Court should thus vacate the 5PFA because the Tribunal lacked jurisdiction over Mr. Hernández.

### A.    This Court Owes the Tribunal's Findings and Conclusions No Deference.

When "a party disputes whether it is bound to an arbitration agreement, the issue of arbitrability is for the Court in the first instance." *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 493 (S.D.N.Y. 2018). A court, not an arbitrator must decide whether a nonsignatory is bound by an arbitration agreement. *See Eletson Holdings, Inc.*, 731 F. Supp. 3d at 587-88 (collecting cases); *see also Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963) (decision as to non-signatories within the province "only of the court."); *Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 348 (S.D.N.Y. 2018) (question for the court whether company-owner nonsignatories bound to an employment agreement between company and employee).

In deciding "whether an agreement to arbitrate has been made," courts do not apply any presumption in favor of arbitrability. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). The court's review must be "independent," including making findings of fact as necessary. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 947 (1995); *see also Trina Solar US, Inc. v. Jasmin Solar Pty Ltd*, 954 F.3d 567, 570 (2d Cir. 2020) (noting whether nonsignatories to an arbitration agreement may nevertheless be bound by the agreement, "is often fact specific and differs with the circumstances of each case." (brackets omitted)). Accordingly, this Court should accord no deference to the Tribunal's findings and conclusions regarding whether the arbitration agreement could bind Mr. Hernández.

**B.    The Tribunal Lacked Jurisdiction Over Mr. Hernández, Who Is Not a Party to the Shareholders Agreement or Development Agreement.**

Arbitration is "contractual by nature," and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Accordingly, in general, agreements to arbitrate do not bind nonsignatories. "Absent an express agreement to arbitrate," the Second Circuit "has recognized only limited theories upon which it is willing to enforce an arbitration agreement against a nonsignatory." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). Specifically, the Second Circuit has recognized five narrow circumstances in which a nonsignatory may be bound by an arbitration agreement: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *MAG Portfolio Consult., GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001). "District courts are instructed to narrowly construe these five theories, each of which is governed by ordinary principles of contract and agency law." *Eletson Holdings*, 731 F. Supp. 3d at 589 (internal quotation marks omitted).[6] The "mere fact of a nonsignatory's affiliation with a signatory will not suffice to estop the nonsignatory from avoiding arbitration, no matter how close the affiliation is." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68 (2d Cir. 2021).

Here, it is undisputed that Mr. Hernández is not a signatory to the arbitration agreement. *Supra* at 5–7. The agreement therefore does not bind Mr. Hernández to arbitrate absent one of those five narrow exceptions. None of the exceptions applies here. The Tribunal found Mr. Hernández bound by estoppel and expressly did not "decide whether alter ego-veil piercing

---

[6] A sixth justification for binding a non-party—if that person initiates the arbitration or participates, without objection, in the arbitration proceedings—does not apply here, where Mr. Hernández objected to the Tribunal's authority over him from the start. *See supra* at 8.

principles would also apply." 5FPA ¶ 168 n.44. But as explained below, neither an estoppel nor an alter-ego theory binds Mr. Hernández. Mr. Hernández is not bound by any principles of agency either. And there can be no argument that Mr. Hernández is bound through either incorporation by reference—he never signed an agreement that incorporated by reference the Shareholders Agreement—or assumption—Mr. Hernández has not engaged in any conduct that would indicate an assumption of the obligation to arbitrate.

### 1. Mr. Hernández Did Not Directly Benefit from the Agreement.

"To be bound under a theory of direct benefits estoppel, '[t]he nonsignatory beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit.'" *Gater Assets Ltd.*, 2 F.4th at 68. Because Mr. Hernández did not invoke the Shareholders Agreement to obtain any benefit, and because the agreement does not expressly provide him with any benefit, the Tribunal was wrong to exercise jurisdiction over Mr. Hernández.

### a. Mr. Hernández did not invoke the agreement to obtain any benefit.

Typically, "courts seriously consider applying direct benefits estoppel" only where "the nonsignatory had brought suit against a signatory premised in part upon the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003); *see also Med-IM Dev. Inc. v. General Elec. Cap. Corp.*, 2008 WL 901489, at *4 (S.D.N.Y. Mar. 31, 2008).

In contrast, here, Mr. Hernández does not "seek the benefit of an arbitration agreement but rather resists being compelled to arbitrate pursuant to an agreement that [he] did not sign." *Kwatinetz*, 356 F. Supp. 3d at 349. Mr. Hernández has not asserted any claim based on the Shareholders Agreement (or any other agreement at issue), and he has not otherwise invoked the Shareholders Agreement to obtain any benefit. Mr. Hernández filed a response to Petitioners'

first arbitration demand solely to object to the jurisdiction and authority of the arbitral tribunal over him (he did the same in response to Petitioner's first amended demand). *Supra* 8. Mr. Hernández never waived his right to challenge the Tribunal's jurisdiction, nor did he assert any counterclaims. Mr. Hernández did not seek any relief from the Tribunal or affirmatively participate in the arbitration in his personal capacity. Mr. Hernández therefore is not bound to arbitrate on the ground that he has directly invoked the Shareholders Agreement or any other agreement to obtain a benefit.

> **b.  The Shareholders Agreement does not expressly provide Mr. Hernández with any benefit.**

The Shareholders Agreement does not confer on Mr. Hernández any direct benefit, and the Tribunal wrongly exercised jurisdiction over Mr. Hernández on that ground. A nonsignatory is estopped "only when the agreement itself confers a tangible and definite benefit." *Gater Assets Ltd.*, 2 F.4th at 69. "The benefits must be direct—which is to say, flowing directly from the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001). That is, "the benefit gained by the nonsignatory . . . can be traced ***directly to the agreement*** containing the arbitration clause." *Belzberg*, 21 N.Y.3d at 633. That an agreement may "prove advantageous to the nonsignatory" is not a direct benefit that would justify "compelling arbitration by a nonparty to the underlying contract." *Id.*

Here, the parties agreed there are no third-party beneficiaries to the Shareholders Agreement, explaining that the agreement benefits only "the parties hereto and their permitted assigns and successors," and nothing in the agreement "is intended to or will confer upon any other person or entity, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of" the agreement. SHA § 8.08. The parties did the same in the Development Agreement, establishing that the "Agreement shall inure to the benefit of and be binding upon

the Parties and their respective successors" and that "[n]othing in this Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights or remedies under or by reason of this Agreement." Dev. Agmt. § 3.7. Those provisions make clear that the agreements themselves do not bestow any benefit on Mr. Hernández.

Petitioners agreed to those provisions at the bargaining table and cannot now disavow them to try to bind Mr. Hernández to the arbitration clause and assert claims against him before an arbitral tribunal. *See, e.g.*, *Trina Solar*, 954 F.3d at 573 (refusing to apply direct benefit estoppel where contract provided it was not "intended to confer on any person who is not a party hereto any right to enforce any term of this Contract"); *Certain Underwriters at Lloyd's, London v. Allied Pros. Ins.*, 2023 WL 4449570, at *5 & n.4 (W.D.N.Y. July 11, 2023) (explaining policy at issue provided there were no third-party beneficiaries so nonsignatory could not directly enforce it).

In short, the so-called benefits that the Tribunal identified are not expressly bestowed on Mr. Hernández by either the Shareholders Agreement or the Development Agreement. That is fatal to Petitioners' attempt to bind Mr. Hernández to the 5PFA. To bind a nonsignatory, "the contract must ***expressly provide*** the beneficiary with a benefit." *Trina Solar*, 954 F.3d at 572. For that reason, in *Trina Solar*, the Second Circuit refused to bind the defendant to an arbitration provision even though the defendant "surely benefited from the contractual relationship" when it received solar panels. *Id*. The Court explained that the defendant never "invoked the Contract to demand delivery of the solar panels, and the Contract itself [did] not provide [the defendant] any direct benefit." *Id*. at 572-73. So too here: even assuming *arguendo* that Mr. Hernández has benefited in some way from the parties' contractual relationship, Mr. Hernández has not directly

invoked the Shareholders Agreement to obtain any benefit, and the agreement itself does not expressly confer any benefit on Mr. Hernández.

In line with *Trina Solar*, district courts regularly refuse to invoke direct benefit estoppel to bind nonsignatories to arbitration provisions in situations like the one here, where the agreement containing the arbitration provision does not expressly confer a benefit on the nonsignatory. *See, e.g.*, *CollegeStreet Import and Export (Tianjin) Co. Ltd. v. TL x HF LLC*, 2025 WL 979756, *8 (S.D.N.Y. Apr. 2, 2025) (declining to bind nonsignatory even though it received $350,000 worth of membership units, which were important "to the overall transaction between the parties" but not a "concrete benefit from the . . . agreement itself"); *Green v. XPO Last Mile, Inc.*, 504 F. Supp. 3d 60, 68 (D. Conn. 2020) (arbitration provision not binding on individuals who signed agreement in a representative, not personal and individual capacity"); *Kwatinetz*, 356 F. Supp. 3d at 351-52 (nonsignatories who benefited only "because of their interests" in company signatory could not be compelled to arbitrate); *Veera v. Janssen*, 2005 WL 1606054, at *4 (S.D.N.Y. July 5, 2005) (staying arbitration where benefit received was "incidental" to managing directors "agency relationship with" company signatories); *Schaad v. Susquehanna Cap. Grp.*, 2004 WL 1794481, at *5 (S.D.N.Y. Aug. 10, 2004) (denying in part petition to confirm award where nonsignatory benefited by retaining authority to make corporate placements but there was no "nexus between . . . alleged benefit and" agreement containing arbitration provision); *Arhontisa Maritime Ltd. v. Twinbrook Corp.*, 2001 WL 1142136, at *4 (S.D.N.Y. Sept. 27, 2001) (individual who represented signatory to arbitration agreement not required to arbitrate because he was merely a "contractually-specified conduit for a funds transfer").

And in fact, Mr. Hernández has received no benefit that could be traced to the Shareholders Agreement. To begin with, all of Mr. Hernández's activities relating to the

19

signatory entities were in his official capacity, not in any individual or personal capacity. Mr. Hernández's prior role as an officer of a signatory company is not sufficient to bind him to the results of this arbitration. "As a corporate shareholder and officer will always benefit, often even 'directly,' from corporate contracts, applying 'direct benefits' estoppel" to bind shareholders or officers to a corporation's contracts "would swallow—and federalize—this area of state corporate law." *Bilyeu v. Johanson Berenson LLP*, 809 F. Supp. 2d 547, 561 (W.D. La. 2011) (court unaware "of any court which [had] applied equitable estoppel in [that] way); *see also Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1280 (D. Utah 2018) (shareholders, directors, and officers receiving benefits that corporations received from agreement were too indirect to form the basis of direct benefits estoppel); *Rafferty v. Xinhua Finance Ltd.*, 2011 WL 335312, at *8 (S.D.N.Y. Jan. 31, 2011) (former directors and officers of signatory company not bound to arbitrate as nonsignatories).

And "district court cases holding that nonsignatories may be bound to arbitration agreements on the ground of estoppel illustrate the concepts that the nonsignatories must be more than mere agents acting on behalf of disclosed principals, and they must receive clear benefits because of a relationship greater than their agency." *Veera*, 2005 WL 1606054, at *5. Here, Mr. Hernández did not sign any agreement to arbitrate in his individual capacity and therefore cannot be bound to arbitrate in his individual capacity. *See Kwatinetz*, 356 F. Supp. at 352 (declining to require nonsignatories to arbitrate "because of actions they took on behalf of their principal" because that would "abrogate the corporate form").

In any event, the Tribunal had the facts wrong. The Tribunal relied on benefits that Mr. Hernández purportedly received as "sole owner of Terra," "sole owner of DTH," and from the Development Agreement. Mr. Hernández has never received a salary or any other

compensation from Terra, TBS, or DTH. JH Decl. ¶ 29. Hernández does not own shares in the

Company, Terra, TBS, or DTH. *Id.* ¶¶ 19, 12, 14, 16. Nor has Mr. Hernández ever received a

distribution from the Foreign Trust. *Id.* ¶ 31. The Shareholders Agreement named him Chairman

of the Board, but Mr. Hernández resigned from that position when asked to by the Foreign Trust

in February 2023. *Id.* ¶ 21. Mr. Hernández has not held any position within the Company since

then. And, in the event of a sale, the Foreign Trust—not Mr. Hernández—would ultimately

control the distribution of any proceeds from a sale of the Company flowing to majority

shareholders Terra and TBS. *Id.* ¶ 37. This Court is not bound by the Tribunal's incorrect factual

findings. *See supra* at 15.

Because the Shareholders Agreement does not itself bestow any benefit on

Mr. Hernández in his individual capacity, this Court should vacate any portion of the award

purporting to award relief against Mr. Hernández.

### 2.  Mr. Hernández Is Not the Alter Ego of Any Signatory to the Arbitration Agreement.

As a threshold matter, while "an alter ego to a participant in an arbitration or a party to an

arbitration agreement can also be required to satisfy an arbitral award," the proper vehicle to hold

the alter ego liable is "not an application under the FAA or the New York Convention to confirm

the award." *Eletson Holdings*, 731 F. Supp. 3d at 589.

"[Case] law is clear that in the commercial arbitration context the corporate veil cannot

be pierced as part of a motion to confirm the arbitration award." *Dist. Council No. 9 v. APC

Painting, Inc.*, 272 F. Supp. 2d 229, 240 (S.D.N.Y. 2003) (citing *Productos Mercantiles E

Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46-47 (2d Cir. 1994)); *see also Orion

Shipping & Trading Co.*, 312 F.2d at 301 (explaining "action for confirmation is not the proper

time for a District Court to 'pierce the corporate veil'"); *GE Transp. (Shenyang) Co. v. A-Power*

*Energy Generation Sys., Ltd.*, 2016 WL 3525358, at *4 (S.D.N.Y. June 22, 2016) (declining to enforce award against alleged alter egos and limiting permanent injunction to not cover alter egos); *Schaad*, 2005 WL 1794481, at *5 ("A determination of the identities of parties bound by an arbitration agreement is one that is properly made *before* arbitration in the context of a motion to compel arbitration pursuant to section 4 of the FAA."); *Imagineering, Inc. v. Lukingbeal,* 94 Civ. 2589, 1997 WL 363591, at *5 n.11 (S.D.N.Y. June 30, 1997) ("[A] judgment cannot be enforced against an alleged alter ego who has not had an opportunity to litigate whether or not such a relationship did exist.") (citation omitted).

Instead, the party seeking recovery must institute "a separate action in court to pierce the corporate veil." *Eletson Holdings*, 731 F. Supp. 3d at 589. And it would be left for the district court to make an "independent finding of alter ego." *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–CIO v. Custom Air Systems, Inc.*, 357 F.3d 266, 268 (2d Cir. 2004). Petitioners have not done so here. Accordingly, there are no grounds on which the Court could find that Mr. Hernández is the alter ego of any signatory to the Shareholders Agreement.

In any event, Mr. Hernández is not the alter ego of any party bound by the agreement to arbitrate. "A district court's independent determination of alter ego signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [agreement]." *Id.*[7] In the context of a parent-subsidiary relationship, a "relationship that will

---

[7] Mr. Hernández also is not bound under the agency exception. An individual who "executed the [relevant] agreements solely as [an] agent[] acting on behalf of disclosed principals" and who the agreement does not refer to "personally" "cannot be compelled to arbitrate pursuant to the agency exception to the rule that nonsignatories cannot be compelled to arbitrate their disputes." *Veera*, 2005 WL 1606054, at *4 (holding managing directors of signatory companies could not be compelled to arbitrate). *See also Merrill Lynch Inv. Managers v. Optibase, Ltd*, 337 F.3d 125, 130-32 (2d Cir. 2003); *Salim Oleochemicals, Inc. v. M/V Shropshire*, 2001 WL 428255, at *5 n.3 (S.D.N.Y. Apr. 25, 2001).

permit a non-signatory to act as an alter ego . . . exists where the parent corporation so dominates and controls the affair of its subsidiary that the subsidiary cannot be said to have any independent existence of its own." *Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., Inc.*, 933 F. Supp. 1170, 1179 (S.D.N.Y. 1996). To determine whether two entities are alter egos, courts consider a number of factors, including: (1) the existence of corporate formalities; (2) overlap in ownership, directors and personnel; (3) inadequate capitalization; (4) common office space, address and telephone numbers; (5) whether the related corporation deals with the allegedly dominated corporation at arms length; (6) whether the corporations are treated as independent profit centers; and (7) the amount of business discretion displayed by the allegedly dominated corporation. *Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *7 (S.D.N.Y. Feb. 13, 2004).

Under New York law, a party that seeks to pierce a corporate veil must show both that "the owner exercised complete domination over the corporation with respect to the transaction at issue; and . . . that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

Here, Petitioners have put forth no evidence regarding corporate separateness or the lack thereof that the court could rely on to pierce the corporate veil. *See, e.g.*, *Thomson-CSF*, 64 F.3d at 778 (concluding not sufficient evidence of "control . . . necessary to justify piercing the corporate veil"); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975) (finding nonsignatory not bound where there was no evidence in the record that "control was used to perpetrate a fraud or something akin to fraud," which is "a sina qua non to holding a nonsignatory bound by an arbitration agreement"); *Boroditskiy*, 314 F. Supp. 3d at 494

(explaining fact that corporation operated out of "same office space" as signatory "occupied" not enough to find alter ego relationship); *Matter of Arb. Between Keystone Shipping Co. and Texport Oil Co.*, 782 F. Supp. 28, 30-31 (S.D.N.Y. 1992) (refusing to pierce the corporate veil based on a "lone allegation of mere affiliation").

As explained above, Mr. Hernández does not own shares in or control any of the parties to the agreement to arbitrate. *See supra* 5-7. Mr. Hernández has not served as a director of Terra or TBS since 2018. JH Decl. ¶¶ 13, 15. And he has never had authority or control over who the Foreign Trust appoints to the boards of Terra, TBS, or DTH. *Id*. ¶ 19. Mr. Hernández exercises no control over the signatory parties, much less control to the extent that would permit a finding that Mr. Hernández is the alter ego of a party bound to arbitrate. The alter ego exception does not apply here.

## II. THE TRIBUNAL SHOULD DECLINE TO ENFORCE THE AWARD BECAUSE PETITIONERS LACKED THE CAPACITY TO SUE MR. HERNÁNDEZ DERIVATIVELY ON BEHALF OF THE COMPANY.

Article V(l)(a) of the New York Convention permits the Court to decline confirmation and enforcement where "[t]he parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity." "Capacity to sue depends on whether the person who is bringing suit has authority to use the courts of the jurisdiction in question. This is a problem of power and depends neither on the court involved nor on the cause of action asserted." *Basch v. Talley Industries, Inc.*, 53 F.R.D. 9, 11 (S.D.N.Y. 1971). Capacity to sue on behalf of a corporation is determined by the law where it is organized. Fed. R. Civ. P. 17(b)(2).

The Court should decline to enforce those portions of the Award that were brought by Petitioners derivatively on behalf of the Company. Under the controlling law of the British Virgin Islands, where the Company is incorporated, shareholders may only bring derivative

claims with permission of the High Court of the British Virgin Islands. That conclusion is dictated by Section 6 of the BVI Companies Act 184C, which provides that, "[e]xcept as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company." ECF 320-14 (BVI Companies Act) at 129. It is undisputed that Petitioners neither sought nor received such permission.

Nonetheless, Petitioners brought claims against Mr. Hernández "derivatively, on behalf of" the Company. Ex. 13. The Tribunal concluded that "[m]ost of [Petitioners'] derivative claims relate to how Terra's affiliate [DT Holdings] profits from its relationship to the Company." 5PFA ¶ 73. These included amounts that the Company paid DT Holdings for (i) the development of certain tower sites, (ii) monthly SG&A expenses, and (iii) sums allegedly due for "Offset Rights." *Id.* ¶ 326. The Tribunal granted these derivative claims against Mr. Hernández "based on tortious interference or breach of fiduciary duty" to the Company, *id.* ¶¶ 85, 103, and ordered Mr. Hernández, jointly with Terra, TBS, and DT Holdings, to deposit $43.58 million plus interest and $480,000 per month, *id.* ¶¶ 85, 93, 107, into an escrow account as both a coercive measure to "secure specific performance," *id.* ¶ 107, and "as security for eventual satisfaction of the monetary obligations of Respondents arising from this Award," *id.* ¶ 85.

Petitioners lacked the capacity to bring those derivative claims. The Court should therefore decline to enforce the relief set forth in Award ¶ 3(a) of the 5PFA.

## III.    THE COURT SHOULD VACATE THE AWARD BECAUSE THE TRIBUNAL EXCEEDED ITS AUTHORITY.

Petitioners admit that "[m]any of the remedies that came from the arbitrators, frankly, were not suggested by us." ECF 293 at 41:14-15. That admission is significant. A tribunal's power is limited to the dispute that the parties have submitted to it. And Article V(1)(b) of the New York Convention "allows for nonenforcement where 'the party against whom the award is

invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." *Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020). In other words, "Article V(1)(b) essentially sanctions the application of the forum state's standards of due process." *Id.* (internal quotation marks omitted). Arbitrators therefore cannot depart from the parties' submission—and the relief requested—in favor of their own brand of industrial justice. *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 96 (2d Cir. 1988). But that is precisely what the Tribunal did.

Petitioners sought to exchange their shares in the Company for a payment equal to the funds they would have received from the contemplated sale to Torrecom in 2021. ECF 320-6 at 114:16-115:21. Petitioners claimed that Respondents breached the Shareholders Agreement by failing to consummate the sale, and the proposed remedy—money in exchange for shares at the time of the alleged breach—would put them in the position they would have occupied had the sale gone through. The Tribunal's refusal to confine itself to that relief sought by Petitioners improperly and significantly inflated the damages figure.

Relatedly, and specific to Mr. Hernández, the Tribunal—in a footnote, *see* 5PFA ¶ 170 n.46—purported to bind Mr. Hernández to prior awards. Again, Petitioners did not request that relief and therefore Mr. Hernández had no notice that such an action was even on the table. As a result, even assuming the Tribunal properly exercised jurisdiction over Mr. Hernández, it improperly awarded relief against him without first affording him notice and an opportunity to be heard. "Under American standards of due process, a party is entitled to notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Pagaduan*, 830 F. App'x 62. Because the Tribunal did not afford Mr. Hernández that opportunity, at the very least, the Court should

vacate the award insofar as it retroactively binds Mr. Hernández to the results of prior proceedings. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) ("[W]hen a court grants relief not requested and of which the opposing party has no notice . . . the unasked for relief should not be granted.").

## IV.    THE TRIBUNAL SHOULD VACATE THE AWARD BECAUSE THE TRIBUNAL FAILED TO ISSUE A MUTUAL, FINAL, AND DEFINITE AWARD.

Confirmation is only appropriate where the award "finally and conclusively" disposes of "a separate and independent claim" that is not "subject to [either] abatement [or] set-off." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986). "[C]ourts should not be called upon to review preliminary rulings of arbitrators." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980). The Tribunal ordered certain funds in escrow pending the further sale of the Company, subject to which there may be future claims for damages or setoff. *See* 5PFA ¶ 326. The Court cannot reduce the 5PFA to a definite sum in any judgment because the amount is not final. The Tribunal has effectively ordered an interim accounting of liability and damages to be further decided upon the sale of the Company. That is not a final award.

Application of 2PFA and 3PFA to Mr. Hernandez would also take those instruments and make them final, even though 2PFA did not resolve a claim, was not the product of a request for a final award, and resulted from the tribunal improperly creating jurisdiction where non existed. 2PFA also called on this Court to review the impartiality of the tribunal before the conclusion of the arbitration, directly contrary to Second Circuit precedent. *Michaels*, 624 F.2d at 414 (noting that it is "well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award").

Similarly, 3PFA did not resolve a claim, creates an escrow account valued at USD 41,416,371.17 without providing the basis for calculating the number or allowing for modification of the amount if the damages claims in the foreign arbitrations were dismissed. 3PFA creates an injunction but puts compliance in the hands of Petitioners, making it functionally impossible for Mr. Hernandez to ever comply.

The Court has not had occasion to consider these arguments, which were not brought by Terra, TBS, or DT Holdings, but if Petitioners purport to now apply those instruments to Mr. Hernandez, he would have the ability to raise these arguments.

## CONCLUSION

For the foregoing reasons, this Court should vacate or, in the alternative, deny enforcement of the Fifth Partial Award insofar as it imposes any liability on Mr. Hernández.

Dated: June 27, 2025                              Respectfully submitted,


_____/s/_____                         _____/s/_____
Rodney Quinn Smith II                           Lucila I. M. Hemmingsen
(admitted *pro hac vice*)                       **The Fladgate Firm PC**
**GST LLP**                                     305 Broadway, 7th Floor
78 SW 7th Street, Suite 500                      New York, NY
Miami, FL 33130                                 Phone: (646) 369-5843
Phone: (305) 856-7723                           lh@hemmingsenadr.com
quinn.smith@gstllp.com

*Counsel for Mr. Hernandez*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this document complies with the word count limitations. There are 8,584 words in this document.

*/s/ Quinn Smith*
Rodney Quinn Smith II