UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------------------ X | | |
| TELECOM BUSINESS SOLUTION, LLC, *et al.*, | : | Civil Action: 1:22-cv-01761 |
| | : | |
| Petitioners, | : | Judge Lewis A. Kaplan |
| v. | : | |
| | : | Magistrate Judge Robert W. Lehrburger |
| TERRA TOWERS CORP., *et al.*, | : | |
| | : | |
| Respondents. | : | |
| ------------------------------------------------------------------ X | : | |

### PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY AND PERMANENT ANTI-SUIT INJUNCTION AND CIVIL CONTEMPT SANCTIONS AND MOTION FOR FURTHER FINDINGS OF CIVIL CONTEMPT AND SANCTIONS

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

Despite multiple representations by Respondents'[1] counsel that they did not represent Hernandez in these proceedings (a farce that was furthered by the appearance of separate counsel to defend Hernandez at his deposition), Hernandez now seeks a second bite at the apple in his Opposition to Petitioners' Motion for Civil Contempt and Sanctions Against Jorge Hernandez (ECF 389, the "Opposition"), which advances many of Terra/DTH's same tired arguments that this Court and the Tribunal have repeatedly rejected.[2]

The record is clear that Respondents initiated the Criminal Actions to interfere with the sale of the Company, in violation of the 1PFA Judgment, and that Hernandez has ultimate control over the actions of Respondents, including DTH and its agents that initiated those actions. Hernandez tries to rewrite history and evade this reality through misdirection.

Hernandez's primary argument—that he does not actually control DTH and thus cannot be held in contempt for its lawless conduct—is precluded by the sound factual findings in the Tribunal's prior awards, which have been confirmed by this Court and affirmed by the Second Circuit Court of Appeals. Indeed, in its recent April 22, 2025 Order finding Respondents in contempt (ECF 295, the "April 22 Order"), this Court again confirmed that Hernandez controls DTH—something Hernandez himself has admitted numerous times in the past. His self-serving denials of control in the face of a contempt motion defy credulity.

Hernandez then attempts to perpetuate the same charade that he supports the sale of the

---

[1] Unless otherwise noted, all defined terms herein have the same meaning as in Petitioners' Memorandum of Law (ECF 368, the "Brief") in Support of their Motion for Further Findings of Civil Contempt and Sanctions (ECF 367, the "Motion"), and the Proposed Order filed therewith (ECF 367-1). All citations to "Ex." refer to exhibits to the Declaration of Katherine M. Poldneff filed herewith.

[2] While the Court ordered that Hernandez file an opposition to the "Contempt Motion" (ECF 243) "no later than June 20, 2025" (ECF 381 at 15), the Opposition opposes both the "Contempt Motion"—which Hernandez defines as the "First Sanctions Motion"—and Petitioners' Motion for Further Findings of Civil Contempt and Sanctions (ECF 367), which he defines as the "Second Sanctions Motion" (ECF 389 at 4). Therefore, Petitioners file this reply in support of both motions.

1

Company and that the Criminal Actions he has personally initiated against the Company's CEO, Jorge Gaitán ("Gaitán"), are driven by a purportedly genuine belief that Gaitán has threatened his life. Yet, as demonstrated by the Petitioners (*see, e.g.*, ECF 243, 244, 269, 305, 353, 368, 382, and 383, collectively "Petitioners' Contempt Briefing"), the evidence is clear that Respondents, including Hernandez, initiated the Criminal Actions (almost all of which are based on allegations previously debunked by the Tribunal) as part of Respondents' "long-running series of misconduct intended to thwart the provisions of the SHA, the awards of the Tribunal, and the judgments of this Court." ECF 381 at 12. Hernandez's Opposition provides no basis to disturb this Court's April 22 Order.

For the reasons set forth in Petitioners' Contempt Briefing, this Court should find that the proceedings based upon Respondents' and Hernandez's fabricated allegations interfere with a sale of the Company and (i) hold Hernandez in contempt of this Court's orders and judgments, and (ii) impose sanctions to compel his compliance with those orders and judgments.

I. **HERNANDEZ'S SELF-SERVING ATTEMPTS TO DISTANCE HIMSELF FROM TERRA/DTH ARE CONTRARY TO THIS COURT'S ORDERS AND NOT CREDIBLE**

A recurring theme in this case, especially recently, when it comes time for anyone to take responsibility for Respondents' conduct, they mysteriously find themselves no longer affiliated with Terra/DTH. First, the Peru Contemnors used sham and invalid purported transfers of employment from a DTH subsidiary to a Company subsidiary—a transparent attempt to evade the 3PFA and provide cover for their ongoing actions in concert with Respondents and Hernandez, in violation of the 3PFA Judgment. *See* ECF 353 at 5-6, 10-16. Next, Respondents conveniently attempted to distance themselves from long-time DTH CFO Quisquinay—who provided "sworn testimony" concerning Gaitán's purported unlawful use of electronic devices to communicate with

Mr. Schachter while in prison—despite Quisquinay's own testimony, the Tribunal's awards, and this Court's orders confirming that he was an agent of Respondents. ECF 383 at 2-3.

Hernandez has taken the same approach, asking this Court to believe that he is not in control of DTH and, therefore, not responsible for its conduct or that of its subsidiaries and affiliates. In furtherance of this sham defense strategy, when DTH's 30(b)(6) representative, Mr. Pimentel—a non-employee attorney who knew nothing about the noticed deposition topics—was asked who "the ultimate decision-maker for DT Holdings" is, Mr. Pimentel responded that there was none: "At this time, **the prior directors renounced their positions, and that's the reason why I was retained to provide this deposition**." ECF 365-5 at 69:25-70:4 (emphasis added). But at his deposition hours later, Hernandez took a different position, stating that elders" in his family control DTH. ECF 369-48 at 21:2-23:14, 40:4-41:9. When asked to identify the "elders," he refused. DTH's counsel also separately declined to identify those "elders." *See* ECF 369-51.

The absurd proposition that no one controls DTH—or that it is controlled by unnamed "elders" in Hernandez's family, never before mentioned in the five years of these proceedings—is utterly precluded by the prior factual findings of the Tribunal, confirmed (and recently reaffirmed) by this Court, and not remotely credible in light of the fulsome record demonstrating Hernandez's control. *See, e.g.*, *Manolis v. Brecher*, 634 F. App'x 337, 338 (2d Cir. 2016) ("[T]he law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings in the same case." (internal quotations omitted)); Apr. 22 Order at 40 ("Hernandez owns and controls Terra and DTH"); *id.* at 39 ("Specifically, the Tribunal found that Hernandez had sole control over Terra's representatives on the Company's board, and he was responsible for those representatives' insistence on the inclusion of dealbreaker conditions in the engagement letter with Citibank."), *id.* at 41-42 ("Hernandez likewise is subject to civil

3

contempt relief because the arbitration claimants are subject to his control and he is responsible for the foreign arbitration proceedings."); *see also* ECF 369–8 ¶ 8 n.1 (Hernandez controls Respondents); *id.* ¶ 40(7) (Hernandez controls DTH's individual country DTH affiliates); ECF 245-6 ¶ 37 (foreign arbitrations center on "Peppertree-appointed Company Board members' allegedly improper refusals to approve proposals for Tower development advanced by Terra and its Tower-construction affiliate owned and controlled by Jorge Hernandez, DTH").

This most recent farce is likewise at odds with Hernandez's and Terra/DTH's own long-standing positions in this dispute:

- Hernandez testified that he is "the **ultimate decisionmaker** for all of the DT[H] companies as needed," and that he has "never given up [his] right to **staff and manage the DT[H] companies the way [he] believe[s] they should be managed**." ECF 245-3 ¶ 13 (emphasis added).

- In a December 2021 letter to the Tribunal, Terra's counsel wrote: "If the Tribunal were to order a sale of the Company, it would leave Terra defenseless from having the B and C Shareholders again attempt a sham squeeze-out merger in order to obtain a greater profit for themselves while **cheating Mr. Hernandez out of his share of a business he has spent a lifetime building**." Ex. 1 (emphasis added); *see also* ECF 229 ¶ 344.

For the reasons explained in the Brief and as further detailed below, Hernandez's clear control over Terra/DTH—as repeatedly confirmed by this Court and admitted by Hernandez himself—is fatal to virtually all of his arguments in opposition to Petitioners' contempt motions.

II. **THE COURT'S APRIL 22 ORDER PROPERLY FOUND RESPONDENTS TO BE IN CONTEMPT OF 1PFA AND 3PFA, AND THE COURT SHOULD MAKE THE SAME FINDING AS TO HERNANDEZ**

In its April 22 Order, this Court held Respondents in contempt for their continued failure to obey the specific performance provisions of the 1PFA and the judgment confirming that award, Apr. 22 Order at 32, and determined that Respondents were also in contempt of the 3PFA and the Court's judgment confirming that award because they failed to terminate, or prevent the commencement of additional, foreign proceedings, *id.* at 35-37. The reasoning underlying those

4

findings applies equally to Hernandez. *See id.* at 40 ("[T]he extensive record in the arbitration demonstrates that Hernandez's interests are indistinguishable from the interests of Terra and DTH."); *id.* at 41 (Hernandez is "legally identified with Respondents").

As detailed in Petitioners' Brief, Respondents and Hernandez continue to interfere with the Tribunal's awards and this Court's orders confirming them. These interference efforts also violate the 2PFA, which sanctioned Respondents for their failure to comply with the Tribunal's interim order requiring them to restore Gaitán and COO Carol Echeverria, reasoning that "finality with regard to the status of [Gaitán and Echeverria] is desirable for the process of sale of the Company to proceed in an efficient way." ECF 369-8 ¶119, 78.1. For all the reasons stated in Petitioners' prior briefing (*see* ECF 368; 383), Respondents' continued coordinated campaign of criminal prosecutions—resulting in the seizure of 163 Company towers and imprisonment of both the Company's CEO and COO—interfere with the sale process in violation of this Court's orders.[3]

Despite Respondents' arguments to the contrary, such contempt has not been purged. *See* ECF 382 at 3. Specifically, Hernandez's argument that he has done "his part" to purge the contempt fails. The sole basis for Respondents' letter motion is the execution of a Board resolution to engage Santander Banca de Inversion Colombia S.A.S. ("Santander") as the investment bank to sell the Company pursuant to the Company's governing Shareholders Agreement. *See* ECF 371. However, the mere execution of a Board resolution to engage an investment bank to sell the Company—a step Terra has taken before—does not demonstrate full compliance with the 1PFA Judgment and Terra's affirmative obligation to sell the Company. On the contrary, Respondents'

---

[3] Contempt cannot "be avoided by some literal or hypertechnical reading of an order." *Nat'l Rsch. Bureau, Inc. v. Kucker*, 481 F. Supp. 612, 615 (S.D.N.Y. 1979). Rather, "it is proper to observe the objects for which the relief was granted and to find a breach of the decree in violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942); *see also* ECF 368 at 21.

continued coordinated actions, including through their various agents, to both interfere with and obstruct the required sale of the Company are in direct violation of the 1PFA Judgment. Additional enforcement mechanisms, including the imposition of sanctions, are required to ensure the Company's sale. *See* ECF 382.

Moreover, Hernandez failed to timely comply with the affidavit requirements of the April 22 Order. *See* Apr. 22 Order at 47 (¶ 5.2), 48 (¶ 6.2). When he did file affidavits, he utilized them as an opportunity to try to distance himself from DTH—an effort that has been rejected by the Tribunal and this Court time and time again. Finally, Hernandez's only response on the El Salvador-Related BVI Action, which Respondents have ***still*** failed to terminate in a continued violation of the Court's April 22 Order, is that it is "outside the control of Mr. Hernandez." ECF 389 at 11. But Hernandez's argument that he does not control DTH or its agents is contradicted by the prior factual findings of both the Tribunal and this Court. *See supra* at 2-4.

### III. FOR THE REASONS SET FORTH IN PETITIONERS' MOTION FOR FURTHER CONTEMPT AND SANCTIONS, HERNANDEZ SHOULD BE HELD IN CONTEMPT OF THE COURT'S ORDERS

In light of the countless findings that Hernandez owns and controls Terra and DTH, this Court should also find that Hernandez is in contempt of this Court's orders because that control makes him responsible for Respondents' initiation and continuation of the criminal proceedings aimed at impeding a sale of the Company, in violation of the 1PFA. *See generally* ECF 368, 383.[4] It is undisputed that Hernandez, Quisquinay, and other DTH agents have initiated and supported multiple Criminal Actions against Gaitán, Echeverria, Mr. Schachter, Company subsidiaries, and others. *See* ECF 368-1. And it is undisputed that the subset of Criminal Actions that led to Gaitán's and his father's criminal charges, arrests, and subsequent incarcerations over the last few months

---

[4] Petitioners incorporate the arguments in the Petitioners' Contempt Briefing by reference herein.

6

are based on the same criminal complaints that the Tribunal found Respondents responsible for initiating over three years ago that "had no merit" and were part of a "false narrative of misconduct and criminality." *See* ECF 369-37 at 6-8 ¶¶ 10-14; 369-8 ¶¶ 9, 80. Respondents' recent escalation of criminal proceedings also conspicuously coincides with the issuance of 5PFA, which assigned specific roles to Mr. Schachter and Gaitán in the required sale of the Company. *See* ECF 368-1; 369-24 at 193 (¶ 8), 195 (¶ (8)e).

The criminal action against Gaitán that Hernandez personally initiated based on alleged threats against Hernandez's life is not a basis to avoid sanctioning him for all the other improper criminal and civil actions that he is responsible for, even if it were a legitimate criminal complaint. And, indeed, it is not. Hernandez claims that "Petitioners have zero evidence that these threats lack credibility" and "Petitioners cannot expect Mr. Hernandez to refuse to report the threats against him."[5] ECF 389 at 12. But that is belied by Hernandez's own admission that he did not file the March 17, 2025 complaint against Gaitán stemming from purportedly threatening text messages until **ten months after** he became aware of those messages (conveniently filing the claim on the eve of the issuance of the 5PFA), and only after Gaitán was already incarcerated. *See* ECF 368 at 8-9. Hernandez even admitted that at the time he filed the complaint, he did not believe Gaitán had committed a crime. *Id.*

> **A.      While Adverse Inferences are Not Necessary for Petitioners to Prevail, Hernandez Provides No Support for His Claim that He Cannot be Subject to Adverse Inferences for Terra/DTH's Discovery Abuses.**

Hernandez claims that there is no basis for adverse inferences because at the time of the discovery authorized by this Court, he was a "non-party." ECF 389 at 16. But Hernandez cites no

---

[5] This is also consistent with Respondents' history of fabrications at critical times in this litigation (*see generally* ECF 368-1; 369-16; 369-24).

authority for the position that he cannot be subject to adverse inferences here, where the entities that were indisputably obligated to produce responsive documents and failed to do so are parties that both the Tribunal and this Court have already found Hernandez to own and control. In any event, as set forth in Petitioners' briefing, adverse inferences are not necessary to find Respondents (and Hernandez) in contempt of the 1PFA and 2PFA for their initiation and maintenance of baseless criminal proceedings to obstruct a sale. *See* ECF 368 at 29-31; 383 at 6.

### B. There is No Dispute that the Criminal Actions Impede the Sale of the Company, and that Hernandez is Ultimately Responsible for the Actions of Terra/DTH.

Hernandez likewise fails to meaningfully dispute Petitioners' arguments that the Criminal Actions impede the sale of the Company. *See* ECF 368 at 9-10, 13, 19-24. Instead, he claims: (1) "[t]here is no evidence that the criminal proceedings will block the sale of the Company" (ECF 389 at 11); and (2) he is not "behind the other criminal cases," (*id*. at 11). First, Hernandez does not, and cannot, provide any authority to support his argument that Petitioners must provide evidence that the criminal proceedings will fully "block the sale." Rather, Respondents' subversive interference with this Court's Orders, making it more difficult to sell the Company, is sufficient to find a violation. *Motorola Credit Corp. v. Uzan*, 2002 WL 1963301, at *5 (S.D.N.Y. Aug. 22, 2002) ("Whatever lame excuses [Respondents] may now offer for this materially misleading conduct, the real reason [is] to conceal as long as possible their involvement **in these collusive suits and their intent to use them, if all else failed, to subvert the orders of this [c]ourt and the [c]ourt of [a]ppeals**.") (emphasis added). There is no dispute that the imprisonment of the Company's CEO and COO and the government seizure of 163 Company towers will interfere with the sale of the Company, which requires those 163 towers to be sold and in which the CEO should have a role. In fact, Respondents have conceded that the Criminal Actions could "somehow interfere" with a sale. *See* ECF 375 at 19.

Second, Hernandez's claim that he is "not behind the other criminal cases" is contradicted both by the Tribunal's and this Court's multiple findings that he controls Terra and DTH[6], and by the undisputed evidence that Hernandez, Quisquinay, and other DTH agents have initiated and supported the multiple Criminal Actions. *See generally* ECF 368-1.

## IV. THE COURT HAS THE AUTHORITY TO HOLD HERNANDEZ IN CONTEMPT AND ISSUE NECESSARY COERCIVE SANCTIONS

Just as Respondents did, Hernandez misrepresents the relief Petitioners seek in order to argue that this Court has no authority to enforce its own judgments. *See* ECF 389 at 4, 5, 9-11. As the Court is aware, it does have such power in its ability to make findings of contempt and issue coercive sanctions against contemnors. *See* ECF 368 at 19-24, 30, 32-33. Petitioners are *not* seeking an anti-suit injunction against the Criminal Actions, or any "relief that would require foreign prosecutors or courts to do anything." *Id*. at 28. Instead, the Court should order Respondents, including Hernandez, to withdraw the baseless criminal complaints they filed in various jurisdictions to purge their own contempt. Hernandez tellingly ignores the substantial case law demonstrating the Court's broad contempt and sanctions powers. *Id*. at 19-21, 24.

Petitioners are not asking the Court to intervene in the conduct of foreign prosecutions, or to disturb the activities of those foreign prosecutorial authorities. Principles of comity are therefore inapplicable.[7] Rather, Petitioners *are* asking the Court to exercise its discretion to issue contempt findings and sanctions, including an order that Respondents withdraw their bogus criminal

---

[6] When it suits his purposes, Hernandez is the "ultimate decisionmaker for all of the DT companies as needed." ECF 369-4 at 5, ¶ 13. At other times, he purports to have no control whatsoever. *See, e.g.*, ECF 369-48 at 32:24-33:4.

[7] Indeed, even if principles of international comity controlled here—they do not—such considerations would not be dispositive of the relief Petitioners seek. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 409 (1964) (the Supreme Court "has called 'comity' in the legal sense neither a matter of absolute obligation . . . nor of mere courtesy and good will"), *superseded on other grounds by statute*; *see also* Br. at 29 n.16 (any comity "concerns are readily outweighed by each of the *China Trade* factors in light of Respondents' vexatiously perpetuating the [Criminal Actions], which indisputably undermine the jurisdiction of the Court, the Tribunal, and international arbitration as an institution.").

9

complaints designed to frustrate the sale of the Company, to compel Respondents' compliance with the Court's prior orders and directives. None of the cases Hernandez cites concerns similar facts or circumstances, let alone forecloses such relief, nor does Hernandez explain how this Court's enforcement of its orders would violate the "Guatemalan Constitution" and the "Inter-American Convention on Human Rights." ECF 389 at 10-11.[8] In short, his position is that Guatemalan law permits him to violate U.S. law, but offers no explanation as to why. Because it isn't so.

Hernandez has flouted the Tribunal's awards and this Court's orders for years. He has trafficked in lies, disinformation, and evasion at every turn to prevent the Company from being sold. He has tried to evade this proceeding while continuing to escalate vicious and fraudulent attacks on the Company, its CEO, COO, and independent counsel. For these reasons and as set forth in Petitioners' prior briefing, civil confinement and criminal contempt sanctions are warranted under these circumstances.[9] *See* ECF 368 at 33-36; ECF 383 at 8-11.

## V.    CONCLUSION

Petitioners respectfully request that the Court affirm its April 22 Order holding Respondents, including Hernandez, in contempt and subject to monetary sanctions, and that it also grant the pending Motion, find all Respondents in further contempt of the Court's orders, and impose additional sanctions, including civil confinement of Hernandez, to compel Respondents' compliance. *See* ECF 367-1.

---

[8] Hernandez cites to Article 5, which he asserts gives him the "right to do what the law does not prohibit," but the nature of Court orders is that they generally prohibit conduct that is otherwise not expressly prohibited by law.

[9] *See also, e.g.*, *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL 324061 (S.D.N.Y. Jan. 24, 2013) (ordering civil confinement for failure to post $10 million prejudgment security).  Such escalating sanctions are warranted where a contemnor "behave[s] as if the [Court's] Judgment[s] . . . do not exist. He has disregarded his obligations," and "[t]he likelihood that he will continue to do so is high."  *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 505 (S.D.N.Y. 2019) (Kaplan, J.), *aff'd in relevant part*, 990 F.3d 191 (2d Cir. 2021).

Dated: June 27, 2025

By: */s/ Michael N. Ungar*
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

Respectfully submitted,

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on June 27, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

                                                  */s/ Michael N. Ungar*
                                                 *Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*