**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X
TELECOM BUSINESS SOLUTION, LLC, LATAM   :   Civil Action No.: 1:22-cv-01761
TOWERS, LLC, AMLQ HOLDINGS (CAY), LTD.   :
   :   Judge Lewis A. Kaplan
           Petitioners,   :
    v.   :   Magistrate Judge Robert W.
   :   Lehrburger
TERRA TOWERS CORP., TBS MANAGEMENT,   :
S.A., DT HOLDINGS, INC., JORGE HERNANDEZ   :
   :
          Respondents.   X
------------------------------------------------------------------

## PETITIONERS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PETITION TO CONFIRM THE FIFTH PARTIAL FINAL AWARD, AND IN OPPOSITION TO RESPONDENTS' CROSS-PETITION TO VACATE

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:   (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:   (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:   (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:   (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...............................................................................................3

III.  LAW AND ARGUMENT ...................................................................................3

    A.    The Court Must Confirm an Award If There is a "Barely Colorable Justification for the Outcome Reached"........................................................3

    B.    The Portions of the 5PFA Awarding Relief on Petitioners' Contract Claims Related to the Sale of the Company Should Be Confirmed....................................4

        1.    Respondents' Argument That the Tribunal Exceeded Its Authority is Meritless........................................................................................... 4

            a.    The AAA Rules Vest a tribunal with broad authority to award any relief it deems "just and equitable," and, as a result, vacatur based on a tribunal exceeding its power is exceedingly rare. ................... 5

            b.    Respondents fail to establish that the Tribunal "exceeded its powers". ............................................................................. 6

        2.    Respondents' argument that the 5PFA is not a mutual, final, and definite award is meritless...................................................................... 12

        3.    Respondents' argument that the Tribunal disregarded New York law of contract interpretation is meritless ............................................. 15

        4.    The Tribunal did not award a double recovery ......................................... 17

    C.    The Portions of the 5PFA Awarding Relief on Petitioners' Derivative Claims Should Be Confirmed ........................................................................19

        1.    Respondents' argument that the Tribunal exceeded its authority by awarding equitable relief on Peppertree/AMLQ's derivative claims is meritless. ........................................................................................ 19

            a.    The Tribunal has broad authority to fashion and award relief it "deems just and equitable" on any issue presented to it. ............. 19

            b.    The Tribunal exercised its broad authority under the AAA Rules to properly award equitable relief in the 5PFA................................ 21

        2.    Respondents' argument that the BVI Companies Act precludes relief on Petitioners' derivative claims is meritless................................................. 24

            a.    Respondents waived any argument that the BVI Companies Act applies in this Arbitration or provides a basis for vacatur. ........... 24

            b.    Respondents' argument fails because they fail to establish that the BVI Companies Act applies or supports vacatur......................... 26

    D.    Respondents' Argument That They Did Not Receive an Opportunity to be Heard is Meritless. .......................................................................................28

1.       To vacate the 5PFA, Respondents must demonstrate that their right to be heard has been "grossly and totally blocked"............................................ 28

2.       Respondents establish no cognizable basis to vacate the Tribunal's award of derivative relief and equitable remedies.............................................. 30

3.       Respondents received a full and fair opportunity to be heard on any legally cognizable affirmative defenses................................................................ 30

       a.      The Tribunal did not "dismiss" Respondents' defenses but found them to be legally insufficient...................................................... 30

       b.      Respondents' remaining arguments are meritless and provide no support for vacatur. ...................................................................... 33

IV.    CONCLUSION......................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*,
  2022 WL 2916578 (S.D.N.Y. Jul. 25, 2022) ........................................................28, 29, 30, 33

*Adult Use Holdings Inc. v. FaZe Clan Inc.*,
  631 F. Supp. 3d 174 (S.D.N.Y. 2022)..................................................................................28, 29

*Am. Univ. of Antigua Coll. of Med. v. Leeward Const. Co.*,
  2015 WL 1958971 (S.D.N.Y May 1, 2015), *aff'd*, 653 F..........................................................14

*Ashmore v. CGI Grp., Inc.*,
  923 F.3d 260 (2d Cir. 2019)....................................................................................................26

*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
  344 F.3d 255 (2d Cir. 2003)....................................................................................................3, 6

*BCB Holdings Ltd. v. Gov't of Belize*,
  232 F. Supp. 3d 28 (D.D.C. 2017) ..........................................................................................27

*Cap. Enters. Co. v. Dworman*,
  173 A.D.3d 466 (1st Dep't 2019) ..............................................................................................6

*Carmel v. CSH & C*,
  32 F. Supp. 3d 434 (W.D.N.Y. 2014) ......................................................................................14

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  316 F. Supp. 3d 635 (S.D.N.Y. 2018)......................................................................................27

*China Nat. Bldg. Material Inv. Co. v. BNK Int'l LLC*,
  2009 WL 4730578 (W.D. Tex. Dec. 4, 2009) ........................................................................27

*Controlotron Corp. v. Siemens Energy & Automation, Inc.*,
  2010 WL 5422520 (S.D.N.Y. Dec. 23, 2010), *aff'd*, 465 F. App'x 8 (2d Cir.
  2012) .......................................................................................................................................20

*Dennis v. JP Morgan Chase & Co.*,
  342 F. Supp. 3d 404 (S.D.N.Y. 2018) (Kaplan, J.).............................................................24, 26

*Dufuerco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003)....................................................................................................15

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005)........................................................................................................2

*Freeman v. Rochester Psychiatric Ctr.*,
   2018 WL 4562078 (W.D.N.Y. Sept. 24, 2018) ....................................................................4

*Herman Miller, Inc. v. Worth Cap., Inc.*,
   1999 WL 132183 (2d Cir. 1999) .....................................................................................11

*InterChem Asia 2000 Pte Ltd. v. Oceana Petrochems. AG*,
   373 F. Supp. 2d 340 (S.D.N.Y. 2005) ..............................................................................5

*Iran Aircraft Indus. v. Avco Corp.*,
   980 F.2d 141 (2d Cir. 1992) ......................................................................................28, 29

*JA Apparel Corp. v. Abboud*,
   682 F. Supp. 2d 294, 307-308 (S.D.N.Y. 2010) ...............................................................17

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ...........................................................................................................22

*Kondot S.A. v. Duron LLC*,
   586 F. Supp. 3d 246 (S.D.N.Y. 2022) .............................................................................28

*Landmark Ventures, Inc. v. InSightec, Ltd.*,
   63 F. Supp. 3d 343 (S.D.N.Y. 2014), *aff'd*, 619 F. App'x 37 (2d Cir. 2015) ..................16

*Lanesborough 2000, LLC v. Nextres, LLC*,
   2024 WL 3914523 (S.D.N.Y. Aug. 15, 2024) ................................................................23

*LifeVoxel.AI Inc. v. Mamillapalli*,
   2024 WL 1343590 (D. Conn. Mar. 29, 2024) ..................................................................11

*Loc. 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO v.*
*CNH Mgmt. Assocs., Inc.*,
   669 F. Supp. 632 (S.D.N.Y. 1987)...................................................................................12

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
   790 F.2d 280 (2d Cir. 1986).......................................................................................13, 24

*Molina v. Faust Goetz Schenker & Blee, LLP*,
   230 F. Supp. 3d 279 (S.D.N.Y. 2017).............................................................................26

*Nadeau v. Equity Residential Props. Mgmt. Corp.*,
   251 F. Supp. 3d 637 (S.D.N.Y. 2017).............................................................................11

*New York City Dist. Council of Carpenters Pension Fund v. Tadco Const. Corp.*,
   2008 WL 540078 (S.D.N.Y. Feb. 28, 2008).....................................................................11

*Nicholls v. Brookdale U. Hosp. & Med. Ctr.*,
   204 F. App'x 40 (2d Cir. 2006) .....................................................................................4, 33

*Oxford Health Plans LLC v. Sutter*,
      569 U.S. 564 (2013)................................................................17

*Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*,
      508 F.2d 969 (2d Cir. 1974)...............................................29, 30

*Polytek Eng'g Co. v. Jacobson Cos.*,
      984 F. Supp. 1238 (D. Minn. 1997).......................................27

*Qingdao Free Trade Zone Genius Int'l Trading Co. v. P & S Int'l, Inc.*,
      2009 WL 2997184 (D. Or. Sept. 16, 2009) ...........................29

*Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt.,L.P.*,
      2016 WL 3959277 (S.D.N.Y. July 13, 2016) .....................20, 21, 24

*Sanluis Devs., LLC v. CCP Sanluis, LLC*,
      498 F. Supp. 2d 699 (S.D.N.Y. 2007)......................................5

*Schwartz v. Merrill Lynch Co.*,
      665 F.3d 444 (2d Cir. 2011)....................................................17

*Sea Shipping Inc. v. Half Moon Shipping, LLC*,
      848 F. Supp. 2d 448 (S.D.N.Y. 2012)....................................15

*Seneca Nation of Indians v. New York*,
      988 F.3d 618 (2d Cir. 2021)....................................................16

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,
      57 F.4th 372 (2d Cir. 2023) ..............................................14, 26

*Stone v. Theatrical Inv. Corp.*,
      64 F. Supp. 3d 527 (S.D.N.Y. 2014)........................................6

*Superadio Ltd. P'ship v. Winstar Radio Prods., LLC*,
      446 Mass. 330 (Mass. 2006) ...................................................5

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
      592 F.3d 329 (2d Cir. 2010).....................................................16

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
      2023 WL 257915 (S.D.N.Y. Jan. 18, 2023) (Kaplan, J.).........4

*U.S. Bank, Nat. Ass'n v. Commonwealth Land Title Ins. Co.*,
      2015 WL 3457060 (S.D.N.Y. May 27, 2015) .......................23

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) ...................................................................................14

*Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*,
  244 F. Supp. 2d 195 (S.D.N.Y. 2002) ......................................................................29

*York Hannover Holding A.G. v. Am. Arbitration Ass'n*,
  1993 WL 159961at (S.D.N.Y. May 11, 1993) ..........................................................21

*York Rsch. Corp. v. Landgarten*,
  927 F.2d 119 (2d Cir. 1991) .....................................................................................21

**Statutes**

AAA Rule R-4(e) ..............................................................................................................11

AAA Rule R-6(b) ..............................................................................................................20

AAA Rule R-37 ...........................................................................................................6, 16

AAA Rule R-47(a) ..............................................................................................................6

BVI Companies Act ..............................................................................................25, 26, 27

Federal Arbitration Act ............................................................................................ *passim*

**Other**

Rebecca Callahan, *Five Things Litigators Must Know Before Stepping Into An
  Arbitration*, ADVOCATE, Sept. 2021,
  https://www.advocatemagazine.com/article/2021-september/five-things-
  litigators-must-know-before-stepping-into-an-arbitration .......................................19

Theodore O. Rogers, Jr., *The Procedural Differences Between Litigating in Court
  and Arbitration: Who Benefits?*, 16 OHIO ST. J. ON DISP. RESOL. 633, 634
  (2000) .......................................................................................................................19

Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ" or "Petitioners") hereby respectfully submit this Memorandum in Further Support of their Petition to Confirm the Tribunal's Fifth Partial Final Award ("5PFA") (ECF 257-258 ("Petition to Confirm")), and in Opposition to Respondents[1] Petition to Vacate (ECF 318-319 ("Petition to Vacate")).

## I.    <u>INTRODUCTION</u>

This Court has confirmed the first four unanimous partial final awards issued by the Tribunal in this Arbitration and denied each and every one of Respondents' petitions to vacate. In their latest petition, Respondents once again seek to vacate another unanimous, exhaustive, and well-reasoned award from the highly experienced and well-respected Tribunal—this time the 200-plus-page 5PFA, which held Respondents, including Hernandez, jointly and severally liable for over $300 million in compensatory damages that Petitioners have incurred as a result of Respondents' never-ending campaign to prevent a sale of the Company. The 5PFA, which primarily addresses a straightforward breach of contract and compensatory damages claim, was the culmination of an exceedingly robust and fair process, including extensive pre- and post-hearing briefing, multiple evidentiary hearings, a live, four day merits hearing, and multiple rounds of post-hearing oral argument during which both sides (including Respondents) vigorously arbitrated their claims and defenses. Petitioners won. Respondents lost. Disappointed with the

---

[1]    The 5PFA was issued in an arbitration administered by the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA"), captioned *Telecom Business Solution, LLC*, et al. *v. Terra Towers Corp.*, et al., AAA/ICDR Case No. 01-21-0000-4309 ("Arbitration"), and presided over by a panel of three highly qualified and experienced arbitrators ("Tribunal"). The Arbitration is among Peppertree/AMLQ, Respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), Terra's affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Respondents"), Jorge Hernández (whom both the Tribunal and this Court have found owns and controls Respondents), Alberto Arzu, Alejandro Sagastume, and William Mendez, and Continental Towers LATAM Holdings Limited ("Company"). Unless otherwise noted, all other defined terms herein shall have the same meaning as in the Petition to Confirm (ECF 257-258).

results caused by their complete and utter disregard of the Company's governing documents and the rule of law, Respondents seek yet another do-over.  "It is long since time that counsel and his clients recognize that they have lost.  Their endless repetition is ***vexatious and inappropriate*** . . . ." ECF 233 at 2 (emphasis added).  As with all of the prior awards (each unanimous), there are no grounds for vacatur (*see, e.g.*, ECF 124, 182, 207), and Respondents have failed to meet their high burden.

Indeed, Respondents' convoluted and discursive attacks against the 5PFA do not even come close to meeting this Circuit's extremely high, narrow, and exacting standard to vacate an arbitration award pursuant to the Federal Arbitration Act ("FAA") or the New York Convention. They utterly fail to provide ***any*** compelling reason to stray from the "strong public policy in favor," and binding nature, of arbitration, as well as the very limited scope of review of final arbitration awards.[2]  Nor could they.  Respondents' conduct has been so egregious and malicious that a Tribunal comprised of three highly experienced and respected arbitrators ***unanimously*** saw fit to award $25 million in punitive damages on top of the nearly $300 million compensatory damages award.

In the face of such misconduct—all well documented and largely undisputed, the extremely thorough 200-page 5PFA, and the record of the extensive Phase 2 proceedings leading up to it, Respondents resort to their same tired mudslinging and mischaracterization of Petitioners' claims, the underlying record, and the findings of the 5PFA itself.

Though Respondents raise a myriad of purported issues, they predictably fail to support them with either law or fact and likewise fail to explain how these issues could possibly justify vacatur under well settled governing Second Circuit law.  Instead, the record is clear that: (i)

---

[2] *See, e.g., Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).

Peppertree/AMLQ did not limit their claim for breach of contract damages to an award of damages *in exchange for* their shares of the Company; (ii) Peppertree/AMLQ sought specific performance *and* damages for separate, distinct breaches of the Shareholders Agreement, and the 5PFA was carefully crafted to **prevent** a double recovery; (iii) the Tribunal had broad authority to fashion any relief it "deem[ed] just and equitable" regarding Peppertree/AMLQ's derivative claims; and (iv) Respondents themselves brought derivative claims, thus contradicting their untimely, waived, and legally incorrect argument that Peppertree/AMLQ's derivative claims were improper.

The unanimous and well-supported 5PFA easily clears the prevailing "barely colorable justification for the outcome reached" standard for confirming an award. Accordingly, Petitioners respectfully request that this Court grant the Petition to Confirm the 5PFA and deny the Petition to Vacate.

## II.    **BACKGROUND**

In their Petition to Vacate, Respondents continue to advance a misleading narrative, unsupported by the record, that grossly misrepresents the underlying Arbitration. The full factual background relating to the 5PFA proceedings—which included document discovery, a four day evidentiary hearing, four rounds of pre- and post-hearing briefing, two rounds of closing arguments, and additional post-closing written submissions—is set forth in the Petition to Confirm. ECF 257 ¶¶ 17-164; ECF 258 at 10-34.

## III.    **LAW AND ARGUMENT**

### A.    **The Court Must Confirm an Award If There is a "Barely Colorable Justification for the Outcome Reached"**

As this Court is well aware, and as laid out in greater detail in Peppertree/AMLQ's Petition to Confirm, *see* ECF 258 at 29-30, Courts afford great deference to an arbitration panel's award, and the award must be confirmed if there is a "***barely colorable*** justification for the outcome

reached." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (emphasis added); *see also Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2023 WL 257915, at *4 (S.D.N.Y. Jan. 18, 2023) (Kaplan, J.) (arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation"; an award should be confirmed so long as there is a "barely colorable justification" for the outcome reached, even if the Court "disagree[s] with it on the merits"). Indeed, judicial confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Id.* The 5PFA provides far more than that "barely colorable justification for the outcome reached"; to the contrary, it was well-reasoned, thorough, and unanimous.

Respondents, on the other hand, face an extremely high burden to vacate the 5PFA. A mere "disagreement with the [Tribunal's] weighing of the evidence," without more, is insufficient to meet this burden. *Freeman v. Rochester Psychiatric Ctr.*, 2018 WL 4562078, at *2 (W.D.N.Y. Sept. 24, 2018); *see also Nicholls v. Brookdale U. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) ("it is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-settled that a federal court may not conduct a reassessment of the evidentiary record.") (internal quotation omitted). The FAA specifies only four limited bases to vacate an award. *See* ECF 258 at 36 n.14. In extremely rare and limited circumstances, a court can also vacate an award where it was rendered in manifest disregard of the law. Respondents fail to show that any of these limited bases exist here.

**B.    The Portions of the 5PFA Awarding Relief on Petitioners' Contract Claims Related to the Sale of the Company Should Be Confirmed**

**1.    *Respondents' Argument That the Tribunal Exceeded Its Authority is Meritless.***

In an attempt to avoid the significant damages Respondents caused by breaching the

Shareholders Agreement, first by refusing to sell the Company starting in late 2020, and then by relentlessly obstructing that required sale *for years*, Respondents now claim that the Tribunal somehow "exceeded its powers" in awarding Petitioners damages for those breaches. This argument is not supported by law or fact. It is telling that the only support Respondents offer is a mischaracterization of Petitioners' sale claims and the underlying record. *See* ECF 319 at 12-14.[3]

<blockquote>

**a.    The AAA Rules Vest a tribunal with broad authority to award any relief it deems "just and equitable," and, as a result, vacatur based on a tribunal exceeding its power is exceedingly rare.**

</blockquote>

Vacatur based on a tribunal exceeding its power is extremely rare. *See InterChem Asia 2000 Pte Ltd. v. Oceana Petrochems. AG*, 373 F. Supp. 2d 340, 352-53 (S.D.N.Y. 2005). Indeed, the Second Circuit has "consistently accorded the narrowest of readings to the [FAA's] authorization to vacate awards 'where the arbitrators exceeded their powers.'" *Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 703 (2d Cir. 1978) (quoting 9 U.S.C. § 10(d)). "Courts have been reluctant to vacate commercial arbitration awards on this ground, ***especially where there is no express restriction on the remedies an arbitrator is authorized to award in the arbitration agreement***." *Sanluis Devs., LLC v. CCP Sanluis, LLC*, 498 F. Supp. 2d 699, 706 (S.D.N.Y. 2007) (emphasis added) (internal quotation omitted).

Here, the Tribunal's "authority derives from the [Shareholders Agreement], which contains a broad arbitration provision, and from the AAA rules, which the agreement incorporates and which have a broad remedial provision." *Superadio Ltd. P'ship v. Winstar Radio Prods., LLC*, 446 Mass. 330, 337 (Mass. 2006); ECF 272-1 § 8.15 (Shareholders Agreement) ("The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association [the 'AAA Rules'].").  Because the parties stipulated that the AAA Rules

---

[3]    Page references to ECF filings refer to the ECF page notations.

govern this proceeding, the Tribunal is vested with broad authority to issue relief pursuant to those rules, including specific performance and injunctive relief. *See id*. § 8.12; AAA[4] Rules R-37, R-47(a) ("The arbitrator may grant ***any remedy or relief that the arbitrator deems just and equitable***") (emphasis added); ECF 258 at 35-36 (collecting cases); *see also Banco de Seguros del Estado*, 344 F.3d at 261 ("[A]rbitrators have wide discretion to order remedies they deem appropriate."); *Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 541 (S.D.N.Y. 2014) (confirming award appointing receiver); *Cap. Enters. Co. v. Dworman*, 173 A.D.3d 466, 466-67 (1st Dep't 2019) (confirming award dissolving partnership). Given the Tribunal's broad authority under both the Shareholders Agreement and the AAA Rules, as well as the exacting FAA standard for vacatur, Respondents have not come close to establishing that vacatur is warranted.

> **b.** **Respondents fail to establish that the Tribunal "exceeded its powers"**

Respondents' arguments that the Tribunal "exceeded its powers" are largely confusing, but their primary attack appears to be premised on the argument that the Tribunal ruled on a contract claim that was never asserted. ECF 319 at 12-13. Respondents' argument rests entirely on false factual contentions that: (i) Peppertree/AMLQ's only sale claim involved "seeking a damages award against which [Peppertree/AMLQ] would convey their shares in the Company," *id*. at 12, (ii) their damages "claim was in the alternative to a sale of the Company, not in addition to it," *id*. at 13; and (iii) the Tribunal found breaches of the Shareholders Agreement occurred in 2023 even though Peppertree/AMLQ claimed breaches in 2021, *id*. The actual Arbitration record confirms that *none* of these assertions are true, which is fatal to Respondents' argument.

*First*, Respondents distort a single statement made by counsel during opening statements

---

[4]    For the Court's convenience, a copy of the governing AAA Rules is attached as **Exhibit 1** to the Declaration of Gregg L. Weiner ("Weiner Declaration"), filed herewith. Unless otherwise noted, all references to "Exhibit __" refer to exhibits to the Weiner Declaration.

at the July 2024 arbitration hearing to argue that Peppertree/AMLQ could only be awarded sale damages if they transferred their shares in the Company to Respondents. The context of the statement, however, reveals that counsel was providing one potential hypothetical damages formulation for the Tribunal's consideration *that was contingent on Respondents' immediate payment of Peppertree/AMLQ's hundreds of millions in sale damages*:

> [Mr. Weiner]: If we're awarded – whatever our damages are, if it's based on the $185 million, and there's interest, which is substantial . . . but we continue to own our interest in the company, all Respondents have to do, and *we will agree to this, if they pay the award within I'll say 90 days of the award being issued*, we will hand over our shares.

ECF 320-6 at 114:16-25 (emphasis added). Respondents, of course, still have not paid the approximately $2 million they owe in connection with the Tribunal's prior partial final awards, (*see* ECF 395), let alone the nearly $250 million they now owe Peppertree/AMLQ in sale damages and interest under the 5PFA; thus, the premise for the hypothetical scenario never materialized and the hypothetical scenario is now moot. Importantly, Respondents wholly ignore that in pre-hearing briefing, far from "seeking a damages award against which they would convey their shares in the Company" (ECF 319 at 12), Peppertree/AMLQ only raised the potential tender of their shares once in a footnote, again making clear that it was just one potential damages formulation for the Tribunal's consideration to address any concern that there could be a double recovery if the Company was later sold after the damages award had been satisfied: "In the unlikely event Respondents satisfied a monetary award prior to a sale of the Company, the declaratory relief *could be* crafted such that Peppertree/AMLQ would tender their shares to Respondents." ECF 275-22 at 29 n.29 (emphasis added). Critically, Petitioners also expressly sought $185 million in damages (plus interest) and demonstrated that it was highly likely the only way they could recover their damages was from the proceeds of the required sale, which is why an escrow of the sale proceeds

was "necessary to render any award meaningful." ECF 273-46 at 48-52; *see id*. at 15-17. Thus, Petitioners never claimed the sale damages were somehow contingent on an exchange of their shares.[5]

**Second**, Respondents' contention that Peppertree/AMLQ's damages claim was only in the alternative to a sale of the Company gets them nowhere. It ignores that this issue was already fully litigated by the parties and addressed by the Tribunal at the very beginning of Phase 2, *nine months* prior to the Phase 2 hearing, and again in the 5PFA. In a September 11, 2023 submission to the Tribunal, Peppertree/AMLQ noted that the Tribunal retained jurisdiction to award money damages for their breach of contract claims even though it had already ordered that the Company be sold in Phase 1 because "New York law provides that *both* specific performance *and* damages may be awarded as separate remedies for the same breach of contract." ECF 272-37 at 2, 5-6 (collecting cases). Subsequently, in its October 26, 2023 Procedural Order No. 2023-09, the Tribunal rejected the very same argument Respondents raise now, finding, "Claimants did not make an express election of remedies" and permitting the damages claims for Respondents' failure to sell the Company. ECF 272-48 at 7. The Tribunal again confirmed this ruling in the 5PFA. ECF 276-41 ¶ 53 ("There was no election of remedy by the Claimants.").

**Third**, Respondents ignore that, in their Consolidated and Amended Statement of Claims (ECF 320-1 ("Amended Claims")), Peppertree/AMLQ pled three separate and independent breaches for Respondents' failure to sell the Company, which occurred: (i) after Terra rejected the Torrecom Offer in November 2020 but refused to engage an Investment Bank as required by

---

[5]   Respondents' claim makes even less sense given that Peppertree/AMLQ claimed—and were awarded—tens of millions of dollars in damages above and beyond their damages on the sale claim—damages they likewise could only ever recover from the proceeds of a sale. Thus, they certainly never contended they would transfer their shares to Respondents in exchange for a damages award, rendering the remainder of their damages effectively uncollectible.

the Shareholders Agreement ("Torrecom Rejection Breach" [6]),[7] ECF 320-1 ¶¶ 122-140, 142-44,

305, 309; (ii) after Peppertree sent Terra a second sale notice in January 2021 pursuant to Section

5.04(b)(ii) of the Shareholders Agreement ("PFA-1 Breach"), *id.* ¶¶ 141-44, 306, 310; and (iii)

from January 2021 to late 2023 (when the Amended Claims were submitted) due to Respondents'

ongoing obstruction of the sale ("Ongoing Breach Claim")—including via actions they took to

obstruct the engagement of Citi as the investment bank the Board authorized to sell the Company

in 2023, as this Court already found in its April 22, 2025 contempt order. *Id.* ¶ 207 (explicitly

alleging Terra obstructed the required sale by "refusing to execute an engagement letter with an

Investment Bank as required"); *see also id.* ¶¶ 145-206 (alleging numerous ongoing breaches from

2021 to 2023), ¶¶ 208-10, 335-45. In the 5PFA, the Tribunal sustained *all three* claims based on

independent breaches of the Shareholders Agreement. ECF 276-41 ¶ 36 (sustaining Torrecom

Rejection Breach and finding Terra's failure to sell the Company *after* its rejection of the Torrecom

Offer "constitutes a separate breach of contract, but the measure of damages is what Claimants

---

[6]    For ease of reference, these claims are defined the way the Tribunal defined them in the 5PFA.

[7]    After all this time, Respondents still mischaracterize Petitioners' claim based on the Torrecom Offer when they argue, "respondents thus believed, rightfully, that they had to show there was no breach of contract in rejecting the Torrecom Offer. . . ." ECF 319 at 12. As Petitioners made abundantly clear in their Phase 2 briefing—and in accordance with Section 5.04(b) of the Shareholders Agreement—Petitioners argued that Terra breached the Shareholders Agreement *not* by rejecting the Torrecom Offer, which it was free to reject, but by refusing to sell the Company *after* it rejected the Torrecom Offer. ECF 273-46 at 18-19; *see also* ECF 320-1 (SHA) § 5.04(b). Indeed, the Tribunal properly came to this conclusion in the 5PFA: "Section 5.04(b) did not obligate Terra to accept the Torrecom Offer under any circumstances. It did obligate Terra, if it elected not to accept the Torrecom Offer, to (i) base its rejection on an Investment Bank's opinion letter about fair value, and (ii) **initiate the Company sale process under § 5.04(b)(ii).**" ECF 276-41 ¶ 36 (emphasis added).

Their bizarre statement that "[t]he tribunal permitted the petitioners to contradict their own view of whether the Terra Parties had submitted a valid 'opinion' that would justify rejecting the Torrecom Offer" (ECF 319 at 13-14) is not only false but wholly inapposite. First, in both their Amended Claims and pre-hearing submissions, Peppertree/AMLQ argued and presented evidence that the letter from UBS Terra sent in connection with its rejection of the Torrecom Offer was not a valid opinion; nevertheless, Terra *conceded* that its rejection of the Torrecom Offer triggered the parties' obligation to sell the Company pursuant to Section 5.04(b). *See* ECF 273-46 at 18; ECF 320-1 ¶ 132 (alleging Terra rejected the Torrecom Offer by tendering documents "***purporting to be*** an 'opinion'" from an investment bank). Second, the Tribunal did not rule on whether the purported "opinion" from UBS was valid given Respondents' admission that they were obligated to proceed with a Company sale and failed to do so. ECF 276-41 ¶ 36. Thus, the validity of the opinion is irrelevant to the findings in the 5PFA.

would have obtained from a rightful rejection"), ¶¶ 48-55 (sustaining damages claim based on PFA-1 Breach initially found in the Tribunal's First Partial Final Award), and ¶¶ 18, 20 (sustaining Ongoing Breach Claim).    Thus, all of Respondents' arguments based on the fiction that Peppertree/AMLQ only pled, and the Tribunal only sustained, a single claim based on only one breach of Terra's obligation to sell the Company necessarily fail.

These facts also dispose of Respondents' contention that the Tribunal identified breaches in 2023 that Peppertree/AMLQ purportedly did not plead and that, as a result, "in 5PFA, the 'but for' precedes the date of the breach by two years and presumes that the Terra Parties rightfully rejected the Torrecom offer."  ECF 319 at 13.  Respondents' convoluted argument is contradicted by the 5PFA itself, and the only three paragraphs on which Respondents rely (18, 20, and 22(1)) are unavailing.  Paragraphs 18 and 20 (in the section of the 5PFA related to the Ongoing Breach Claim) do no more than properly confirm that Respondents' refusal to engage Citi to sell the Company in 2023 constituted a "violation of the 'no objection' obligation in Section 5.04(b)" of the Shareholders Agreement.  ECF 276-41 ¶ 18; *see also id*. ¶ 20 (finding "Respondents' refusal to engage Citibank . . . constitutes an additional basis to find that Claimants' claim of an ongoing breach of Section 5.04 should be sustained").  Paragraph 22(1), on the other hand, is part of the Tribunal's analysis of Peppertree/AMLQ's *separate* Torrecom Rejection Breach claim, and the "but for" scenario the Tribunal discusses therein is for damages related to that claim, which was based on conduct that occurred in late 2020 and early 2021, not 2023.[8]

---

[8]    Respondents' related argument that they "never received notice or an opportunity to be heard regarding alleged breaches in 2023 for the 'Ongoing Breach Claim'" (ECF 319 at 26), must be rejected for the same reasons—namely, that (i) Peppertree/AMLQ expressly pled facts in the Amended Claims relating to ongoing breaches from 2021 to 2023, including Terra's failure to engage Citi, and presented related Phase 2 evidence (ECF 320-1 ¶¶ 145-210, 335-45; ECF 273-48 ¶¶ 49-52 (Ranieri Witness Statement, setting forth details regarding Terra's failure to engage Citi in 2023)), (ii) Peppertree/AMLQ pled—and the Tribunal sustained—three different breaches of contract based on Respondents' refusal to sell the Company in violation of the Shareholders Agreement, and (iii) the fictitious "but for" scenario Respondents peddle simply is not in the 5PFA.  *See also* III.D.1., *infra* (setting forth the high and exacting standard for vacating an arbitration award based on denial of an opportunity to be heard).

Respondents' argument fails for the additional reason that it attempts to impose a draconian pleading standard on Peppertree/AMLQ that simply does not exist in arbitration—a tactic they employ throughout their Petition to Vacate. "Arbitration demands are not subject to formalistic requirements, nor are they comparable to pleadings in federal court." *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 642 (S.D.N.Y. 2017); *see also LifeVoxel.AI Inc. v. Mamillapalli*, 2024 WL 1343590, at *4 (D. Conn. Mar. 29, 2024) (requiring a "brief statement of the nature of the dispute", but not imposing "technical pleading requirements") (internal quotation omitted); AAA Rule R-4(e) (requiring only "a statement setting forth the nature of the claim including the relief sought and the amount involved"); *see also* III.C.1.a., *infra*. Here, Peppertree/AMLQ's 114-page, over 500-paragraph Amended Claims set forth the general nature of their claims and far exceeds any possible arbitration pleading requirement. *See generally* ECF 320-1. They were certainly not required to plead every underlying fact or theory on which they intended to rely to support those claims, and Respondents cite no authority suggesting otherwise. Thus, to the extent any of Respondents' vacatur arguments are based on the unsupported notion that Peppertree/AMLQ were required to plead more than "a brief statement of the nature of the dispute," they must be rejected. *See LifeVoxel.AI*, 2024 WL 1343590, at *4.[9]

Finally, to the extent Respondents argue that the Tribunal exceeded its jurisdiction in ruling on any of the contract (or derivative) claims presented to it, such argument should not even be considered here because Respondents waived that argument both by failing to object in the Arbitration, and by fully participating in the Arbitration proceedings, including by filing counterclaims (ECF 272-47). *See Herman Miller, Inc. v. Worth Cap., Inc.,* 1999 WL 132183, at

---

[9]    The Tribunal likewise rejected Respondents' pleading argument in the 5PFA. *See* III.C.1.b., *infra* (citing ECF 276-41 ¶ 11 n.14).

*1 (2d Cir. 1999) ("[a] party may be found to have waived its objection to arbitrability, . . . if it has participated extensively in arbitration proceedings without asserting its objection in timely fashion."); *New York City Dist. Council of Carpenters Pension Fund v. Tadco Const. Corp.*, 2008 WL 540078, at *4 (S.D.N.Y. Feb. 28, 2008) ("It is well settled in this Circuit that, if a party participates in arbitration proceedings without making an explicit objection to the submission of the dispute to arbitration, that party may be found to have effectively waived its right to object to the arbitration later.").

Accordingly, Respondents have failed to demonstrate that the Tribunal exceeded its powers because it awarded the damages Peppertree/AMLQ sought on the three separate sale claims that Peppertree/AMLQ both alleged and briefed.[10]

### 2. Respondents' argument that the 5PFA is not a mutual, final, and definite award is meritless

Respondents next contend that the Tribunal "failed to issue a mutual, final, and definite award on damages and the post-sale escrow," characterizing the damages award and post-sale escrow relief as non-final and "interim in nature". ECF 319 at 17-18. There is nothing interim or non-final about the Tribunal's award of over $300 Million in damages to Petitioners—including over $186 Million in damages for Respondents' ongoing breach of the Shareholders Agreement in regard to a Company sale; nor is the post-sale escrow relief—a provisional remedy designed to secure payment—lacking in finality. *See Loc. 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO v. CNH Mgmt. Assocs., Inc.*, 669 F. Supp. 632 (S.D.N.Y. 1987) (finding an "Order and Interim Award" directing the minimum amount of money that would be due as

---

[10] For avoidance of doubt, in the 5PFA, the Tribunal only issued a single damages award for Respondents' failure to sell the Company in the amount that Peppertree/AMLQ were entitled to recover if the Company had been properly sold in early 2021 as contemplated, plus interest. *See* ECF 276-41, p. 198, ¶ 4. However, as set forth above, Peppertree/AMLQ were entitled to these damages on multiple, independent bases due to Respondents' multiple and ongoing breaches of, and DTH and Hernandez's tortious interference with, the Shareholders Agreement.

damages to an escrow fund "ripe for confirmation" where it was "designed to protect the ultimate integrity of the final award").

The law is well-settled.  A partial final award which "finally and conclusively disposed of a separate and independent claim" and which is "subject to neither abatement nor set-off" may be confirmed.  *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986). The 5PFA is a partial final award, not an interim award.  It finally and definitely disposed of certain separate and independent disputes between the parties, including, among others, Petitioners' claims for damages related to the Respondents' ongoing breach of the Shareholders Agreement in regard to a Company sale and Petitioners' request that the proceeds of an eventual Company sale be placed in escrow as security.  The 5PFA is not subject to abatement or set-off.

Respondents nevertheless argue that the 5PFA *might* be subject to various "setoffs," including deductions for transfer taxes, "necessary divestment of towers within 500 feet of a competitor", and "future setoff in the (unlikely) event" the Tribunal ever finds Respondents met the conditions to lift the stay of Terra's counterclaims.  ECF 319 at 18. As a threshold matter, Respondents ignore the obvious: The Tribunal never found that the 5PFA is subject to any abatement or set-off.  Their argument fails for additional reasons too.

Respondents misrepresent that the Tribunal should have applied deductions for transfer taxes, and "[left] them open to future calculation."  ECF 319 at 17-18.  The Tribunal did no such thing.  The discussion at paragraphs 22(3), 36, and 38-40 of the 5PFA makes clear that the Tribunal considered and credited testimony that, "in an actual transfer of the Company, there would be transfer taxes payable . . . , reducing net proceeds"; but then resolved the question to arrive at a final damages number based on Respondents' own contentions:

> **Even with deduction of all escrows in addition to transfer taxes, Respondents'
> projection in 2021 and again in 2024 was that net proceeds would have been**

**$417,414,456.43, of which Claimants' *pro rata* share (44.55%) would have been $185,958,140 – slightly higher than the $185,752,900 Claimants seek as Company Sale damages**.  We see this as a validation of Claimants' claim that a Company Sale at that time would have yielded for them 'at least' $185,752,900, and we will sustain the Claimants' Company Sale breach claims for $185,752,900.

ECF 276-41 ¶ 38-39 (emphasis added).  As the Tribunal explained, it awarded a damages figure *less than Respondents' projection*, and Respondents' projection *deducted "all escrows"* of proceeds that would later be released to the parties *and transfer taxes*.[11]

Respondents next vaguely contend, without citation to the record, that "necessary divestment of towers within 500 feet of a competitor" is a deduction that was "litigated but not decided".  ECF 319 at 18.  Though this argument is not developed, in any event, the damages awarded for Respondents' failure to sell the Company were within the purview of the Tribunal's broad discretion, particularly here, where the Tribunal's damages award was for *less* than Respondents' own contemporaneous valuation of the Company at the time of the breach.  Further, the Tribunal obviously concluded that no setoff for purportedly "necessary divestment of towers" was warranted.  *See generally* ECF 276-41.  Nor was the Tribunal required to "delve into every argument made by the parties"; "[a] reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it."  *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co*., 57 F.4th 372, 383 (2d Cir. 2023) (internal quotation omitted).[12]

---

[11]  To the extent the 5PFA provides for any damages calculations related to a future sale of the Company, "[p]roviding for [such] possible future occurrences does not make the award any less definite or final."  *Am. Univ. of Antigua Coll. of Med. v. Leeward Const. Co.*, 2015 WL 1958971, at *6 (S.D.N.Y May 1, 2015) (confirming award that "preemptively addressed . . . 'double liability' scenario with . . . indemnification provision"), *aff'd*, 653 F. A'ppx 48 (2d Cir. 2016).

[12]  *A fortiori*, it is not the job of this Court—in reviewing the Tribunal's award—to "sift through" the record "to determine if some nugget is buried somewhere in that mountain of papers" to support an argument that Respondents claim was never decided. *Carmel v. CSH & C*, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014); *c.f. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Finally, the hypothetical—and "unlikely"—possibility that Respondents might someday meet the conditions to lift the stay of Terra's counterclaims does not render the 5PFA damages award subject to abatement or setoff, and Respondents fail to meet their burden to show otherwise.

With regard to the post-sale escrow relief, the Tribunal sustained Petitioners' request that any proceeds from an eventual Company sale should be placed in escrow as security.  ECF 276-41 ¶¶ 61-67.  Far from "particularly inappropriate," as Respondents contend, the post-sale escrow relief is particularly appropriate, warranted, and necessary to prevent Respondents from further flouting their obligations under the Shareholders Agreement by absconding with any sale proceeds. *See id*. ¶ 61.  The Tribunal found that Petitioners "proved irreparable harm by proving that there is a legitimate collection risk justifying the proposed measure."  *Id*. ¶ 63.

The sole basis for Respondents' argument that the post-sale escrow relief is "interim" in nature, evidently, is the Tribunal's citation to Rule R-37 in paragraph 61 of the 5PFA.  There, the Tribunal relied on Rule R-37 to make the point that "[a] request for a provisional measure is not necessarily a 'claim,'" and that such a request "need not always be included in a pleading."  *See* ECF 276-41 ¶ 61.  The post-sale escrow relief is not interim in nature.  It is, instead, among the remedies awarded in the 5PFA, a partial *final* award, which grants separate and independent relief and is ripe for confirmation.

### 3.     *Respondents' argument that the Tribunal disregarded New York law of contract interpretation is meritless*

Grasping at straws, Respondents next contend that the 5PFA should be vacated because the Tribunal manifestly disregarded New York law requiring the interpretation of every word in a contract.  ECF 319 at 18-21.  "[R]eview under the doctrine of manifest disregard is *severely limited*," and "obtaining judicial relief for arbitrators' manifest disregard of the law is rare." *Dufuerco Int'l Steel Trading*, 333 F.3d at 389 (internal quotation omitted) (emphasis added); *see*

*also Sea Shipping Inc. v. Half Moon Shipping, LLC*, 848 F. Supp. 2d 448, 455 (S.D.N.Y. 2012) ("Arbitral awards should be vacated under the manifest disregard standard only in those ***exceedingly rare*** instances where some egregious impropriety on the part of the arbitrator is apparent.") (emphasis added) (internal quotation omitted).    A party "seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden . . . ." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).    To meet their "heavy burden," Respondents must show that (1) the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it, and (2) the disregarded legal principle was "well defined, explicit, and clearly applicable."    *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation omitted).    Further, arbitrators' interpretation of a contract is not a basis for vacatur.    *See, e.g.*, *Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 356 (S.D.N.Y. 2014), *aff'd*, 619 F. App'x 37 (2d Cir. 2015) ("disputes over contractual interpretation do not rise to the level of manifest disregard of the law") (rejecting vacatur).    For the reasons below, Respondents' arguments fall far short of this high bar.

This argument is based solely on Respondents' claim that the Tribunal used the word "surplusage" in a footnote to describe the term "unaffiliated" as used in Section 5.04(b) of the Shareholders Agreement and purportedly failed to give meaning to that term.    ECF 319 at 19.    Yet, the 5PFA reveals precisely the opposite.    In footnote 24, the Tribunal stated:

> We are skeptical of Respondents' argument that the combination of the adjective 'unaffiliated' with the definition of the term 'Third-Party Purchaser' (which already excludes an affiliate) necessarily means that the Third-Party Purchaser must have no business dealings at all with a Shareholder; ***the far more straightforward interpretation is that the provision is simply redundant***.    Although New York law cautions against 'surplusage' and instructs us to find meaning in every contractual phrase, ***New York law does not require that we depart from common sense, and here the straightforward interpretation of this contractual provision is that the***

> *purchaser could not be affiliated with a Shareholder in the usual sense, rather than requiring 'a more stringent test than merely being an entity which is not an Affiliate,'* as Respondents urge.

ECF 276-41 ¶ 46, n.24 (emphases added).  In that footnote, and in multiple paragraphs leading up to and after it, the Tribunal painstakingly *considered* the parties' arguments on the meaning of the term "unaffiliated" and Section 5.04(b) in its entirety.  *See id.* ¶¶ 44-47.[13]  Indeed, it carefully considered the language, rejected the reading urged by Respondents, and adopted a reading that it deemed more "straightforward" and consistent with "common sense".  *See JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 307-308 (S.D.N.Y. 2010) (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 407 (2d Cir. 2009)) ("[T]he rule [against surplusage] should nonetheless be applied with a grain or two of salt when examining a list of words having similar or even overlapping meaning in a commercial agreement.").  Moreover, "unaffiliated third party" is a common unitary phrase, rather than two separate terms.  Respondents thus fail even to identify, let alone establish, any "well-defined, explicit, and clearly applicable" law that the Tribunal purportedly manifestly disregarded.  *See Schwartz v. Merrill Lynch Co.*, 665 F.3d 444, 452 (2d Cir. 2011); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

#### 4.    *The Tribunal did not award a double recovery*

Respondents' next claimed basis for vacatur—that by granting both specific performance and damages on Petitioners' claims related to the sale of the Company, the Tribunal awarded a double recovery (ECF 319 at 21-23)—is a red herring founded on misrepresentations of both the 5PFA and the underlying record.

---

[13] The Tribunal also considered, and rejected, Respondents' claim "that there was any relationship between Torrecom and Peppertree, existing or contemplated at any time, that caused the Torrecom Offer to fail to satisfy the 'unaffiliated Third-Party Purchaser' requirement in SHA § 5.04(b)."  ECF 276-41 ¶ 47.  Even if Torrecom was not an "unaffiliated Third-Party Purchaser" (it was), as the Tribunal aptly pointed out, "Terra's breach lies not in its failure to accept the Torrecom Offer, but in its failure to reject the Offer in the manner the Agreement required."  ECF 276-41 ¶ 22(1),  Thus, the Torrecom Offer provided *evidence* of Peppertree/AMLQ's damages, but it was not *the* damages.

The 5PFA readily demonstrates that the Tribunal did not award a double recovery; to the contrary, the 5PFA was carefully crafted to **prevent** a double recovery. Respondents fail to show otherwise, and neither cite to nor analyze any specific provisions of the 5PFA. *See id.* at 21-23. The 5PFA is clear that, in the event the Company is sold, the proceeds of the sale will be placed into escrow as security for all of the monetary damages awarded to Petitioners, and distributed to ensure that there is **no** double recovery. ECF 276-41 ¶ 67. Specifically, (i) Terra's share of the sale proceeds will only be distributed when the escrow agent "is satisfied that all sums owed to Claimants [by Respondents] as a result of any award of money under any of the Tribunal's Partial Final Awards have been received by Claimants" (*id.* ¶ 67(2)); and (ii) "Claimants shall make prompt written reports to the escrow agent . . . of sums received from sources other than the escrow in partial satisfaction of amounts due to them under our Awards, and ***the escrow agent shall make a corresponding reduction in amounts potentially payable to Claimants out of the escrow accounts***" (*id.* ¶ 67(8)) (emphasis added). Accordingly, if Respondents pay Petitioners all damages owed prior to a sale, Terra will be entitled to distribution of its share of sale proceeds without any deductions for Petitioners' damages. But if Respondents fail to pay any or all of Petitioners' damages prior to a sale, the unpaid portion shall be paid to Petitioners out of the escrowed sale proceeds before Terra is to receive its share.[14]

---

[14]    Respondents again claim, "[t]he petitioners then sought damages ***where payment would be in exchange for their shares in the Company***," (ECF 319 at 22) (emphasis added), now citing to page 86 of the Amended Claims. But that page (or any page) of the Amended Claims does not state that Petitioners sought damages in exchange for their shares. Rather, Petitioners sought damages in an amount to be proved at the Arbitration, including "the more than $185 million to which Peppertree and AMLQ were entitled as the result of the Proposed Sale" (ECF 320-1 ¶ 309, p. 86)—the amount properly awarded by the Tribunal on the sale claim in the 5PFA (exclusive of interest). The only mention of shares is later in the same paragraph where Petitioners refer to "consideration to be received for the shares or assets of the Company upon the consummation of an Approved Sale" (*id.*), referring to a transfer of all of the shares of the Company to a buyer that would occur only when the Company is sold, not a transfer of shares to Terra when they satisfy a damages award. As the Tribunal correctly found in the 5PFA, in the Amended Claims, Petitioners pled alternative damages formulations depending on both their different sale claims and whether or not the Company was sold prior to issuance of a Phase 2 award. ECF 276-41 ¶ 58.

Moreover, the propriety of seeking both specific performance and damages on the same contract claim was briefed and decided at the beginning of Phase 2 when Peppertree/AMLQ sought to amend their claims to seek damages related to Respondents' failure to sell the Company in addition to the specific performance awarded in Phase 1. *See supra* III.B.1.b.[15]  Accordingly, consistent with governing New York law, the Tribunal properly awarded both specific performance and damages on Petitioners' claims based on Terra's repeated failure to sell the Company.

### C.    The Portions of the 5PFA Awarding Relief on Petitioners' Derivative Claims Should Be Confirmed

#### 1.    *Respondents' argument that the Tribunal exceeded its authority by awarding equitable relief on Peppertree/AMLQ's derivative claims is meritless.*

Respondents argue that "[t]he tribunal exceeded its powers" when it granted "equitable relief that the [P]etitioners did not seek."  ECF 319 at 14-17.  In the 5PFA, the Tribunal properly fashioned and awarded necessary equitable relief on the issues presented to it.

#### a.    The Tribunal has broad authority to fashion and award relief it "deems just and equitable" on any issue presented to it.

As set forth above, vacatur based on a tribunal exceeding its powers is exceedingly rare,

---

Similarly, Respondents cite to the Tribunal's Procedural Order No. 2024-06 as purported support for the statement that "[t]he tribunal recognized that specific performance is an 'alternative remedy' to damages but made it duplicative" with respect to the sale claim.  ECF 319 at 22-23.  However, the Procedural Order does not refer to remedies related to the sale claim at all, stating only that Petitioners "seek specific performance 'in the alternative' to damages or declaratory relief with respect to the Offset Right."  ECF 320-3 at 6-7.  These are yet additional examples of how Respondents' citations to the record fail to support the factual contentions they make in their brief.

[15]    Petitioners also made abundantly clear in their Phase 2 briefing that they were not seeking a double recovery, only that their significant damages be paid out of the proceeds of a future sale, both because (i) that is likely the only way they would ever receive such damages, and (ii) one potential damages component pursuant to Section 5.04(b)(ii) of the Shareholders Agreement was contingent on the difference between the amount of the Torrecom Offer and the price of a future approved sale, and, therefore, could not be calculated until a sale occurred.  ECF 273-46 at 48-52, 52 N.35; 275-22 at 17, 19, 21 ("any award of damages in Phase 2 may need to be deducted from any future sale proceeds to avoid a double-recovery, which is an additional reason why Claimants also seek declaratory relief that any future sale proceeds be safeguarded in escrow to ensure that any Phase 2 award is given meaning and effect, and that the parties receive their proper percentage of any sale proceeds, less any damages").

and the AAA Rules grant the Tribunal power to award "any remedy or relief that the arbitrator deems just and equitable." *See supra* III.B.1.a, (citing AAA Rule R-47(a)). Additionally, arbitration requires a party to plead only a brief statement "setting forth the nature of the claim".[16] *See supra* III.B.1.b. (citing AAA Rule R-4(e)). AAA Rule R-6(b) requires only "the arbitrators' consent" for a party to add a "new or different claim," and as the Tribunal found in the 5PFA, it "does not insist upon an amended pleading." ECF 276-41 ¶ 61; *see also Controlotron Corp. v. Siemens Energy & Automation, Inc.*, 2010 WL 5422520, at *4 (S.D.N.Y. Dec. 23, 2010) (finding arbitrator had the power, under Rule 6(b), to allow amendment of a claim at any time, but even if arbitrator had acted improperly in allowing amendment, vacatur would not be appropriate relief because resolution of procedural matters arising out of the arbitration is generally left to the arbitrator), *aff'd*, 465 F. App'x 8 (2d Cir. 2012).

Similarly, there are no strict requirements on pleading relief in arbitration, and arbitrators' broad authority to grant any relief they "deem[] just and equitable" is not limited by the relief requested by the parties. "The question is not whether a potential remedy was presented to the arbitrators, but whether an issue was presented to the arbitrators." *Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt., L.P.*, 2016 WL 3959277, at *5 (S.D.N.Y. July 13, 2016) (denying vacatur under Section 10(a)(4) of the FAA where neither party requested precisely the relief granted but "the relevant issue was presented to the arbitrators," and finding that pursuant to AAA Rule R-47(a), it fell within the arbitrators' discretion to devise what it

---

[16] "The arbitration process is intended to be informal and inexpensive." Theodore O. Rogers, Jr., *The Procedural Differences Between Litigating in Court and Arbitration: Who Benefits?*, 16 OHIO ST. J. ON DISP. RESOL. 633, 634 (2000). For example, "there are no pleading requirements in arbitration." Rebecca Callahan, *Five Things Litigators Must Know Before Stepping Into An Arbitration*, ADVOCATE, Sept. 2021, https://www.advocatemagazine.com/article/2021-september/five-things-litigators-must-know-before-stepping-into-an-arbitration. In an arbitration, "pleadings can be short and conclusory, with a one-sentence statement of the claim being sufficient to initiate proceedings." Rogers, *supra*, 16 OHIO ST. J. ON DISP. RESOL. at 634.

deemed a "just and equitable" award) (internal quotation omitted).  In *Harper Ins. Ltd. v. Century Indem. Co.*, the court declined to hold "that the arbitrators necessarily exceeded the scope of their authority by fashioning relief not specifically requested, even though the relief was ordered to remedy an issue [petitioners] concede was submitted to the Panel" because "[s]uch a holding is fundamentally at odds with the role of the courts in reviewing arbitration awards."  819 F. Supp. 2d 270, 277 (S.D.N.Y. 2011).

> **b.    The Tribunal exercised its broad authority under the AAA Rules to properly award equitable relief in the 5PFA.**

As in *Harper Ins. Ltd.*, Respondents "conflate the question of whether an *issue* was presented to the arbitrators with the question of whether a *potential remedy* was presented to the arbitrators."  819 F. Supp. 2d at 277.  All of the derivative claims and underlying issues on which the Tribunal granted equitable relief—the Company's continued payment of $480,000 per month in SG&A expenses to DTH long after the Company should have been sold, payments to DTH for unauthorized tower construction, and Respondents' failure to apply the Offset Right—were pled in the Amended Claims.  *See* ECF 320-1 ¶¶ 62-71, 90-98, 346-72 (Offset Right); ¶¶ 103-114, 373-78 (unauthorized towers); ¶¶ 117-18, 210, 237, 310 (SG&A expenses).  Thus, contrary to Respondents' contentions, the Tribunal did not award relief on any "new claims."  And, in any event, it has "substantial power to fashion remedies that it believes will do justice between the parties," *Benihana, Inc.*, 784 F.3d at 902 (citation modified), even if Petitioners did not explicitly seek that relief, *Redeemer Comm. of Highland Credit Strategies Funds*, 2016 WL 3959277, at *5.  Respondents' argument should be rejected on this basis alone.

The Tribunal, pursuant to its authority to interpret and apply the AAA rules[17], also

---

[17]    *See York Rsch. Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991) ("Given the parties' designation of the AAA as the supervisory authority regarding the resolution of disputes under the agreement, the AAA's view of the meaning of its rules is of considerable significance."); *York Hannover Holding A.G. v. Am. Arbitration Ass'n*, 1993

considered and squarely rejected Respondents' argument in the 5PFA:

> [Petitioners] did not submit after the [Amended Claims] any 'new or different claim' governed by Rule 6(b). A modified analytical approach to the same claim is not a 'different claim' under that Rule. Neither is the suggestion of an approach to a remedy that is at variance with the remedial approach articulated in a pleading.

ECF 276-41 ¶ 11 n.14. The Tribunal further found that even if Petitioners' variation of a remedy could be considered a "new or different claim," Petitioners nonetheless met the requirements for amendment under Rule 6(b), and that the "broad application of Rule 6(b)" urged by Respondents "is so antithetical to the objectives of efficient dispute resolution that [the Tribunal] cannot conceive that this was the intention of the Rule's drafters . . . .". *Id*.[18]

With regard to Petitioners' claim for SG&A expenses, the Tribunal granted equitable relief (which Petitioners sought in Phase 2 briefing) in the form of a permanent injunction requiring the Company to make its monthly $480,000 payments to an escrow account from which disbursements can then be made to DTH for "reasonable and appropriate" SG&A expenses. ECF 276-41 ¶ 93; *see also* ECF 276-17 at 34-35.[19] Respondents argue "petitioners did not cite to any rule or law that provided the elements of the proposed injunction" or "allege irreparable harm". ECF 319 at 14-15. This argument completely ignores the law of the case established in the now confirmed 1PFA that the source of the Tribunal's power to grant equitable remedies like specific performance was not New York law but the Shareholders Agreement and AAA Rules. ECF 272-23 (1PFA) ¶ 57; *see also* ECF 320-3 ¶ 9 (making same finding in P.O. 2024-06). Respondents' next argument

---

WL 159961at *5 (S.D.N.Y. May 11, 1993) ("The AAA is responsible for interpreting the AAA Rules and the parties are not free to simply ignore interpretations they do not agree with.").

[18]    Respondents' contention that they were not permitted to be heard on their affirmative defenses is both a misrepresentation of the record and unavailing. *See infra* III.D.3.

[19]    Any arguments Respondents attempt to make that they had no opportunity to respond to a request made in post-hearing briefing is unavailing given such opportunities in post-hearing responsive briefing, two rounds of post-hearing oral argument, and an additional post-argument submission afforded Respondents. *See* ECF 257 ¶¶ 141-46.

is that the Tribunal found a breach of the implied covenant of good faith and fair dealing of the

Development Agreement that Petitioners did not allege.  ECF 319 at 14-15.  The Tribunal acted

well within its authority to find that Respondents' conduct on issues that Petitioners presented to

the Tribunal constituted a breach of such implied contractual covenant.[20]  *See Kamen v. Kemper*

*Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the

court is not limited to the particular legal theories advanced by the parties, but rather retains the

independent power to identify and apply the proper construction of governing law."); *U.S. Bank,*

*Nat. Ass'n v. Commonwealth Land Title Ins. Co.*, 2015 WL 3457060, at *1 (S.D.N.Y. May 27,

2015) (denying motion for reconsideration even where winning party did not "advance the theory

that formed the basis for the decision").  And the Amended Claims are rife with supporting

allegations that Respondents breached, and/or tortiously interfered with, their agreements via bad

faith and malicious conduct.  *See, e.g.*, ECF 320-1 ¶¶ 22, 389, 489, 492.[21]

   With respect to the unauthorized towers claim, Petitioners expressly requested damages

and specific performance in the form of a permanent injunction against additional unauthorized

tower expenditures, putting the issue squarely before the Tribunal.  ECF 276-17 at 34-35.  This

---

[20]    While Respondents do not argue that the Tribunal manifestly disregarded any applicable law, they still suggest the Tribunal's finding that Respondents breached the implied covenant of good faith and fair dealing was improper because that claim was "duplicative of the [other] claims for breach of contract."  ECF 319 at 19.  First, Respondents do not establish that any claims were duplicative.  But, even if they could, this Court has confirmed arbitration awards granting relief for both breach of contract and breach of the implied covenant of good faith and fair dealing.  *See, e.g., Lanesborough 2000, LLC v. Nextres, LLC*, 2024 WL 3914523, at *1 (S.D.N.Y. Aug. 15, 2024), *on recon. in part*, 2025 WL 785071 (S.D.N.Y. Mar. 12, 2025).  Moreover, here, the Tribunal did not find a breach of the covenant of good faith and fair dealing *and* a separate breach of contract, both based on the same underlying facts regarding the SG&A expenses; rather, it found one breach of the covenant of good faith and fair dealing regarding the SG&A expense provision and granted the appropriate equitable relief.  *See generally* ECF 276-41 ¶¶ 87-93.

[21]    Respondents repeatedly pepper their brief with other vague assertions but fail either to explain or to demonstrate that they provide any basis for vacatur.  For example, Respondents claim: "It is also unclear if any breach of the implied covenant of good faith can form the basis for a permanent injunction" (ECF 319 at 15) but never claim it cannot (apparently, Respondents do not know themselves).  Similarly, Respondents state that the Tribunal found a "misapplication of [ ] funds, but it never defined the misapplication," before immediately moving on to the next, unrelated contention.  *Id*.  The Court should reject unsupported "arguments" of this nature.

should come as no surprise to Respondents because the parties first litigated this same request for equitable relief in Phase 1, but it was ultimately deferred to Phase 2. *Id.* at 35 (incorporating Phase 1 briefing on this issue into Phase 2 submissions). While the Tribunal did not award direct damages, it ordered Respondents to deposit $37 million (plus interest)—the amount of the unauthorized funds taken from the Company—into an escrow account as security for the damages awarded in the 5PFA. ECF 276-41 ¶ 85. Respondents contend such relief "is 'interim,' not final, by its very nature." ECF 319 at 16. They are once again wrong. The Tribunal awarded this relief in a partial *final* award, which "finally and conclusively disposed of" Petitioners' "separate and independent claim" related to unauthorized tower expenditures, and it is ripe for confirmation. *Metallgesellschaft A.G.*, 790 F.2d at 283; *see also supra* III.B.2.

Finally, Respondents do not dispute that Petitioners sought equitable relief from the Tribunal on their Offset Right claim. ECF 319 at 16; *see also* ECF 276-41 ¶ 96. That the Tribunal granted that relief but not in the precise manner Petitioners sought provides no grounds for vacatur.[22] *See Redeemer Comm. of Highland Credit Strategies Funds*, 2016 WL 3959277, at *5.

### 2. Respondents' argument that the BVI Companies Act precludes relief on Petitioners' derivative claims is meritless.

Respondents next contend the Court should vacate the Tribunal's rulings on Petitioners' derivative claims pursuant to Articles V(1)(a) and (b) of the New York Convention because they did not obtain leave from the High Court in the BVI prior to asserting these claims in the Arbitration. ECF 319 at 23-25. This argument fails for multiple, independent reasons.

### a. Respondents waived any argument that the BVI Companies Act applies in this Arbitration or provides a basis for vacatur.

---

[22]    To the extent Respondents attempt to argue that the Tribunal exceeded its jurisdiction in ruling on any of Petitioners' derivative claims, they waived that argument for the same reasons as set forth above with respect to the sale claims. *See* III.B.1.b., *supra*.

Respondents had ample opportunity to raise this argument in the over nine months between the filing of Petitioners' Amended Claims (dated Oct. 11, 2023) and the Phase 2 hearing (July 15, 2024), and failed to do so until their post-hearing brief (filed August 30, 2024). Thus, they waived it. *See Dennis v. JP Morgan Chase & Co.*, 342 F. Supp. 3d 404, 411 (S.D.N.Y. 2018) (Kaplan, J.) (capacity to sue defense may be waived if not raised at the first pragmatically possible time and where unfair prejudice would result from the delay).

The underlying facts—conspicuously absent from the Petition to Vacate—are instructive here. Since the initiation of the Arbitration in 2021, both Peppertree and Terra pled derivative claims because the parties' disputes involved the use of Company funds. *See generally* ECF 272-5, 272-7. Indeed, Peppertree's derivative claim for specific performance of the tower development provisions of the Shareholders Agreement and Development Agreement was fully briefed and argued in Phase 1 but then deferred to Phase 2, and Respondents never argued in their Phase 1 briefing that this claim was somehow prohibited by the BVI Companies Act. *See generally* ECF 32-13; ECF 49-5. Then, at the initiation of Phase 2, Peppertree/AMLQ again pled derivative claims in their Amended Claims (*see* ECF 320-1 ¶¶ 346-89), and Terra itself again alleged derivative claims in its October 25, 2024 Counterclaim without seeking the purportedly required leave from a BVI court (*see* ECF 272-47, p. 172 *et seq.*,¶¶ 142, 149, 153, 158, and 163).[23] On October 19, 2023, Respondents raised objections to the Amended Claims ***but again did not argue that Peppertree/AMLQ lacked the ability to bring derivative claims***. *See* ECF 272-44. And on October 26, 2023, the Tribunal accepted the Amended Claims in their entirety. ECF 272-48 at 7.

Subsequently, in the parties' Phase 2 pre-hearing briefing, Respondents again failed to raise any objection to Peppertree/AMLQ's right to bring derivative claims (*see* ECF 275-2, ECF 275-

---

[23] Terra pleads every single one of its counterclaims as a derivative claim, alleging harm to the Company.

29), and these claims were fully litigated during the July 2024 Phase 2 hearing.  It was only in their

August 30, 2024 post-hearing brief that Respondents, *for the first time*, argued that Petitioners

were not permitted to bring their derivative claims without leave of a BVI court.[24]  *See* ECF 276-

20 at 45.[25]  Respondents' failure to object sooner waived their right to make this argument.  *See*

*Dennis*, 342 F. Supp. 3d at 411.  Moreover, by sustaining Peppertree/AMLQ's derivative claims

and awarding relief in the 5PFA, the Tribunal rejected this argument.  It is not required to "delve

into every argument made by the parties" because "a reasoned award sets forth the basic reasoning

of the arbitral panel on the central issue or issues raised before it."  *See Smarter Tools Inc.*, 57

F.4th at 383 (citation modified).[26]

> **b.    Respondents' argument fails because they fail to establish that the BVI Companies Act applies or supports vacatur.**

Even if Respondents had not waived this argument (they did), Respondents fail to support

their contention that, under Article V(1)(a) of the New York Convention, the 5PFA should not be

---

[24]    Respondents are also judicially estopped from belatedly raising this argument due to their delay and prior inconsistent positions.  Judicial estoppel is invoked at the court's discretion "to prevent a party who plays fast and loose with the court from gaining unfair advantage through the deliberate adoption of inconsistent positions. . . ." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (internal quotation omitted).  The doctrine "'protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"  *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).  Judicial estoppel is appropriate where 1) a party's later position is clearly inconsistent with its earlier position; 2) the party has persuaded the court to accept the earlier position; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.  *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 284 (S.D.N.Y. 2017) (Kaplan J.) (quoting *Zedner v. United States*, 547 U.S. 489, 504 (2006)).  Relief should be limited to instances where the risk of inconsistency and its adverse impact on judicial integrity is certain.  *Id.* (citing *DeRosa v. Nat. Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)).  But these factors set forth neither an "inflexible prerequisite" nor an "exhaustive formula"—specific factual context also informs application of the doctrine.  *Id.* (quoting *New Hampshire*, 532 U.S. at 751).

[25]    Contrary to their current position, in their post-hearing brief, Respondents argued, "[i]n any event, none of Claimants' claims are actually derivative," (ECF 276-20 at 45), meaning that, per their own argument, the BVI Companies Act provision they now cite would not apply to these claims.

[26]    In the event the Court vacates any relief the Tribunal awarded on Petitioners' derivative claims due to a purported failure to seek approval of the BVI court (and for the reasons set forth herein, it should not), any arguments Respondents make related to Terra's inability to litigate its counterclaims must necessarily fail.  As demonstrated below, *all* of Terra's claims are pled derivatively, and Terra never sought or obtained approval of a BVI court to bring them in the Arbitration.  *See infra* III.C.2.b.  As such, under Respondents' new theory, Terra should not have been permitted to litigate any of those claims in the Arbitration.

confirmed because Petitioners "were under an incapacity to bring a derivative claim" in the Arbitration because they did not first obtain leave from the BVI court. ECF 319 at 24-25. As a threshold matter, Respondents fail to establish that the BVI Companies Act 184C applies in the context of a New York arbitration applying New York law pursuant to a contractual arbitration provision. They do not provide relevant case law or an affidavit regarding relevant BVI law to support their argument, nor do they cite to a single case establishing that an arbitration award has been—or may be—vacated on this basis. They likewise fail to support their argument that a New York arbitration tribunal is bound by considerations of foreign public policy.[27]

Respondents also misconstrue Article V(1)(a) and the meaning of "incapacity." The incapacity defense requires Respondents to prove that *Respondents* "were under some incapacity at the time of the agreement rather than at the time of the arbitration." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 652 (S.D.N.Y. 2018) (internal quotation omitted); *see also China Nat. Bldg. Material Inv. Co. v. BNK Int'l LLC*, 2009 WL 4730578, at *5–6 (W.D. Tex. Dec. 4, 2009) (Article V(1)(a) "as a whole appears to refer to the validity of the underlying agreement to arbitrate"); *Polytek Eng'g Co. v. Jacobson Cos.*, 984 F. Supp. 1238, 1242 (D. Minn. 1997) ("[t]he challenging party must prove . . . it was under an incapacity at the time the agreement was made"); *BCB Holdings Ltd. v. Gov't of Belize*, 232 F. Supp. 3d 28, 47 (D.D.C. 2017) ("a

---

[27]    It is well established that BVI statutes, unless expressly stated, do not have extraterritorial effect, and there is no such express statement in the BVI Companies Act. *See R v Sec'y of State for the Home Dep't* [2023] UKSC 23. As such, the Tribunal is not bound by the BVI Companies Act and properly heard and decided the derivative claims the parties had agreed to arbitrate without reference to the BVI court. In any event, even assuming the BVI Companies Act applied, and the Tribunal should have applied it (which it was not required to do), a failure to seek prior approval of the BVI court when instituting a derivative action in the name of a BVI company would not be of any practical effect. The BVI court has the power to retrospectively validate a claim brought without permission, and it would plainly exercise that power here, not least given the litany of serious adverse findings made by the Tribunal against the Respondents. *See Wilton v Shuttleworth* [2017] EWHC 2195, cited with approval in *Int'l Trading v Med Trading* BVIHCM2019/0061. (For the Court's convenience, the BVI authorities cited herein are provided as **Exhibit 2**.)

challenge brought under Article V(1)(a) must be brought against the agreement to arbitrate").[28]
Respondents do not contend that they suffered from some incapacity at the time the Shareholders
Agreement was signed; in fact, they admit "[t]his is not the kind of capacity issue that goes to the
making of the arbitration agreement."  ECF 319 at 24.  Article V(1)(a) simply does not apply to
arguments that the prevailing parties in Arbitration lacked capacity to assert derivative claims on
behalf of a corporation.  Respondents' argument thus fails for this reason as well.

### D.    Respondents' Argument That They Did Not Receive an Opportunity to be Heard is Meritless.

Respondents' final argument is that that the 5PFA should be vacated because Respondents
were "unable to present their case."  ECF 319 at 25-31.  This contention is incredible given that,
as set forth in detail in the Petition to Confirm, the Phase 2 process, which lasted well over a year,
involved dozens of submissions, and included nearly 300 pages of substantive pre- and post-
hearing briefing, nine witness statements, over 600 exhibits, six expert reports, and two post-
hearing arguments—all of which afforded Respondents ample opportunities to be heard.  ECF 257
¶¶ 96-151.  Perhaps that is why, in making this argument, Respondents attempt to reframe the
applicable standard for vacatur and rely on case law outside of the arbitration context.  *See* ECF
319 at 25-26.

### 1.    To vacate the 5PFA, Respondents must demonstrate that their right to be heard has been "grossly and totally blocked".

The New York Convention, Article V(1)(b), permits courts to refuse to recognize
arbitration awards under very limited circumstances and only where "the party against whom the
award is invoked was … unable to present his case."  *Adult Use Holdings Inc. v. FaZe Clan Inc.*,

---

[28]    None of the cases cited in Respondents brief (*see* ECF 319 at 24) address an argument that the opposing party lacked capacity as a shareholder to assert derivative claims on behalf of a corporation at the time of the arbitration, and Petitioners' own research identified no such case.

631 F. Supp. 3d 174, 183 (S.D.N.Y. 2022).[29]  That is hardly the case here.  Article V(1)(b) ensures "the fundamental requirement of due process" that a party receive an "opportunity to be heard at a meaningful time and in a meaningful manner."  *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) (citation modified).[30]

A proceeding is only fundamentally unfair if the party's "***right to be heard has been grossly and totally blocked***." *245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, 2022 WL 2916578, at *4 (S.D.N.Y. Jul. 25, 2022) (internal quotations omitted) (emphasis added) (analyzing grounds for refusal to enforce and vacatur under FAA § 10(a)(3) and Article V(1)(b) together). There is no basis to vacate an award where both parties were entitled to offer relevant evidence and have a hearing.  *See Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 209 (S.D.N.Y. 2002) (refusing to vacate arbitral award because it issued only after the parties had ample opportunity to argue their respective positions).  The undisputed record makes clear that did not happen here.  There is also a "powerful presumption" that an arbitral body acted within its discretion.  *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974).  "As long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding fundamentally unfair, the arbitrator is acting within the liberal sphere of permissible discretion." *245 Park Member*, 2022 WL 2916578, at *4 (citation modified).  Moreover "arbitration proceedings are not constrained by formal rules of evidence or procedure" and "an arbitrator need not follow all the niceties observed by the federal courts."  *Adult Use Holding*, 631 F. Supp. 3d at

---

[29]    The Convention only provides bases for a court to refuse to enforce an award—not for vacatur.  *Kondot S.A. v. Duron LLC*, 586 F. Supp. 3d 246, 255 (S.D.N.Y. 2022) (citations omitted).

[30]    This Court has repeatedly found that the grounds for refusal to enforce under Article V(1)(b) are similar to the grounds for vacatur under FAA § 10(a)(3).  *Adult Use Holdings*, 631 F. Supp. 3d at 183; *245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, 2022 WL 2916578, at *3 n.4 (S.D.N.Y. Jul. 25, 2022).

183-84 (citation modified).[31]

### 2.    Respondents establish no cognizable basis to vacate the Tribunal's award of derivative relief and equitable remedies.

Relying on their previous arguments, Respondents yet again claim that the relief the Tribunal granted on Petitioners' derivative claims should be vacated because the "5PFA creates new claims and remedies without granting the respondents notice and an opportunity to be heard". ECF 319 at 27. This argument should be rejected for the reasons set forth above, including that the Tribunal did not create any new claims and has broad authority under the governing AAA Rules to fashion any relief it deems "just and equitable" on the issues presented to it. *See supra* III.C.1. Here, the Arbitration record does not establish that Respondents' "right to be heard has been grossly and totally blocked," *245 Park Member*, 2022 WL 2916578, at *4, and, thus, provides no bases upon which to vacate any derivative relief or equitable remedies the Tribunal awarded in the 5PFA.

### 3.    Respondents received a full and fair opportunity to be heard on any legally cognizable affirmative defenses

Respondents also argue—incredibly—that the *entire* 5PFA should be vacated because they did not receive an opportunity to be heard on their affirmative defenses. ECF 319 at 27-31. This argument is, again, based on misrepresentations of the underlying record and otherwise fails to provide a basis for vacatur.

### a.    The Tribunal did not "dismiss" Respondents' defenses but

---

[31]    Respondents cite only two instances where an arbitral award was not enforced on Article V(1)(b) grounds. Both are readily distinguishable. In *Iran Aircraft*, the tribunal specifically led a party to believe it had met requirements to substantiate its claim but later rejected the party's claim for lack of proof. 980 F.2d at 146. No such conduct is claimed to have occurred (or did occur) here. In *Qingdao*, the award could not be enforced because the other party had not received notice of the proceedings. *Qingdao Free Trade Zone Genius Int'l Trading Co. v. P & S Int'l, Inc.*, 2009 WL 2997184, at *5 (D. Or. Sept. 16, 2009). That obviously did not happen here and, indeed, is not even alleged. Respondents were afforded every opportunity to participate (and did participate) in proceedings before the Tribunal. Mere exposure to risks anticipated when a party relinquishes his courtroom rights in favor of arbitration (*e.g.*. lowered pleading standards and broad tribunal discretion) does not equate to lack of an opportunity to be heard. *Parsons*, 508 F.2d at 975.

**found them to be legally insufficient.**

As a threshold matter, contrary to their contentions, Respondents' defenses were never "dismissed." In Procedural Order No. 2024-6 ("P.O. 2024-06"), on which Respondents rely, the Tribunal found, "Respondents cannot pursue *their Counterclaims* under the rubric of defenses" because most (but not all) of the defenses, as alleged, were legally insufficient. *See* ECF 320-3 p. 8 and ¶¶ 4-6, 8, 11, 13. Nowhere in this order does the Tribunal rule that the defenses were "dismissed" or that Respondents were prohibited in Phase 2 from raising any specific facts that could form the basis of a cognizable legal defense to any of Petitioners' claims. Indeed, Respondents do not—and cannot—point to any portion of the underlying record in which the Tribunal denied them the ability to argue or present evidence on applicable defenses. Importantly, Respondents' purported "defenses" were nearly all based on seven breaches of contract alleged in Terra's Counterclaim (the "Counterclaim Breaches"). ECF 272-47, p. 168, ¶ 1 n.45; *see also id.* ¶¶ 1-5 and 8. Thus, Respondents attempted to use their "defenses" as a backdoor to litigating the counterclaims, which were properly stayed as a sanction in the Second Partial Final Award ("2PFA") that has now been confirmed by this Court and affirmed by the Second Circuit. The Tribunal did not permit this gamesmanship, and neither should this Court.

Respondents received a full and fair opportunity to be heard on this issue through the submissions the parties made on the relevance and materiality of the counterclaims prior to issuance of P.O. 2024-06. *See* ECF 273-10, 273-11; *see also* ECF 272-40, 272-41 (Respondents' additional submissions seeking that the Tribunal lift the stay). In P.O. 2024-06, the Tribunal painstakingly analyzed whether any of the alleged affirmative defenses, as pled, were legally sufficient to constitute a cognizable affirmative defense to Petitioners' Phase 2 claims, finding most were not. *See generally* ECF 320-3.

Moreover, contrary to Respondents' contention that the Tribunal "expressly discarded the

defense of unclean hands because there was no claim for equitable relief," (ECF 319 at 27), the Tribunal properly found: (i) because "the doctrine of unclean hands is a judicial procedural principle applicable when a court sits as a court of equity, rather than an aspect of New York law of contracts," "the version of the unclean hands doctrine applicable in this case [pursuant to the AAA Rules] is that the alleged wrongful or bad faith conduct that will support a defense of unclean hands must relate to Respondents' contractual obligation that Claimant seeks to enforce and not to a collateral matter." ECF 320-3 ¶¶ 9-10 (citations omitted). The Tribunal then found that none of the Counterclaim Breaches met this standard. *Id.* ¶ 11.

Still, Respondents were permitted to argue their defenses in Phase 2. For example, in their Answer, Respondents alleged the unclean hands defense was based on facts regarding the engagement of Citi for the Company sale (ECF 272-47, p. 171, ¶ 11), which Respondents litigated in Phase 2 and the Tribunal ruled on in the 5PFA (*see* ECF 276-41 ¶¶ 12-21). Likewise, the Tribunal found the Tower Rejection Breach "appear[s] to plead a material breach of the [Shareholders Agreement] *in its entirety*" such that unclean hands could potentially provide a cognizable defense and permitted Respondents to conduct related discovery. ECF 320-3 at ¶ 5 and p. 8. Thus, the Tribunal afforded Respondents the opportunity to litigate the only Counterclaim Breach that could constitute a legally sufficient defense to Petitioners' Phase 2 claims, and Terra did so, arguing in its pre-hearing briefing that Peppertree improperly rejected tower proposals. ECF 275-2 at 19-24. In the 5PFA, the Tribunal expressly considered and rejected the defense on factual grounds: "[W]e reject Respondents' defense to the Company Sale breach claims based on Claimants' alleged failure to perform an obligation under the Governing Documents to approve tower development." ECF 276-41 ¶ 80 n.28; *see also id.* ¶¶ 80-81.[32]

---

[32]  Respondents' vague and unsupported contention that "[t]he tribunal never clarified if the allegations related to the Tower Rejection Breach were admissible," ECF 319 at 27, is irrelevant as Respondents fail to establish both that

Tellingly, in the Petition to Vacate, Respondents do not elaborate on their purported defenses, explain which defense may have been related to which of Petitioners' Phase 2 claims, or otherwise even attempt to establish their purported relevance or applicability. They simply ask the Court to vacate the *entire* 5PFA merely because the Tribunal acted in accordance with the stay of counterclaims in the 2PFA and did not permit Respondents to litigate those counterclaims. This request should be rejected because it is wholly unsupported by the factual record.[33]

### b. Respondents' remaining arguments are meritless and provide no support for vacatur.

The last section of Respondents' brief is more of their proverbial "kitchen sink" approach where they throw together a string of factual contentions or argumentative statements yet fail to make any cognizable legal argument demonstrating why any of their claims provide a basis for vacatur. *See* ECF 319 at 28-31. Indeed, they do not even come close to demonstrating that Respondents' "right to be heard has been grossly and totally blocked." *245 Park Member*, 2022 WL 2916578, at *4. Their arguments should be rejected.

Any arguments based on disputed factual contentions necessarily fail because the Tribunal's factual findings must be afforded deference, and "it is well-settled that a federal court may not conduct a reassessment of the evidentiary record." *See Nicholls*, 204 F. App'x at 43 (citation modified). In any event, Respondents' factual contentions are either false or unsupported. For example, Respondents contend that "[t]he tribunal opines on the falsity of charges in El

---

the Tribunal had any duty to clarify this point, and that Respondents ever sought any clarity from the Tribunal in the more than four months between the issuance of P.O. 2024-06 and the July 2024 Phase 2 hearing. Respondents certainly were never prevented from presenting proof of, or argument on, their Tower Rejection Breach allegations in Phase 2, nor do (or can) they so claim.

[33]   Respondents also falsely contend that the 5PFA imposed new conditions for compliance with the 2PFA in that it provided "respondents also had to rehire Mr. Berger and Ms. Umana." ECF 319 at 30. In the 5PFA, the Tribunal only discusses Mr. Berger and Ms. Umana in connection with awarding Petitioners reimbursement for advancing salary payments. ECF 276-41 ¶ 133. It certainly imposes no additional requirements on the 2PFA.

Salvador…even though those charges were filed after 2PFA" (ECF 319 at 28), but ignore that the El Salvador complaint is based on the same allegations of embezzlement and tax evasion, which, in the 2PFA, the Tribunal expressly found had "no merit" (ECF 272-26 ¶ 80).  They then continue to promote the fiction that Mr. Hernandez does not own Respondents (although they conspicuously do not claim he does not control them) (ECF 319 at 29), despite both the Tribunal's and this Court's repeated findings to the contrary (ECF 295 at 39-42; ECF 369-8, pg. 6, ¶ 8 n.1, pg. 20. ¶ 40(7); ECF 245-6 ¶ 37; *see also* ECF 400 at 2-4).  And they claim the Tribunal's finding is "in direct contradiction to Mr. Hernandez's testimony" (ECF 319 at 29), even though Mr. Hernandez declined to testify at the Phase 2 hearing and thus offered *no* testimony in the Arbitration on this point.[34]  Finally, Respondents make the blanket claim that the Tribunal did "not consider[] the respondents' evidence" (ECF 319 at 29), but fail to demonstrate that the Tribunal indeed did not consider relevant evidence, as opposed to simply finding it not credible.  Thus, Respondents' claim amounts to no more than self-serving speculation.[35]

Respondents' remaining contentions are likewise irrelevant, unsupported, or otherwise unavailing.  Respondents argue, without support, that "[t]he tribunal applied [a] different evidentiary rule, requiring a formal request to admit evidence into the record" and "[n]o such formality applies to the claimants" (ECF 319 at 30), when the record demonstrates the Tribunal, in its broad discretion, consistently either accepted or rejected evidence, including rejecting

---

[34] In response to Mr. Hernandez's opposition to Petitioners' motions seeking that he be held in contempt and sanctioned, Petitioners demonstrated that the Tribunal's and Court's prior findings should be upheld, and Mr. Hernandez's belated, self-serving denials are simply not credible.  *See* ECF 400.

[35] Respondents' contention regarding confidentiality is indecipherable, not least because they claim "the tribunal has understood its Confidentiality Order to prevent public disclosure of the orders and awards," but then cite to a portion of the 5PFA that states "Claimants and the Company", not the Tribunal, had that understanding.  ECF 319 at 29 (citing ECF 270, Ex. 4, p. 10).  But their claim that the Tribunal has permitted publication of its awards "despite the absence of a motion to unseal" is patently false.  As the Tribunal explained in Procedural Order No. 2025-02, issued in connection with the 5PFA, the Company made a motion—which Petitioners supported and Respondents did not oppose—seeking to make public the Tribunal's awards and orders, and the Tribunal granted the requested relief.  ECF 276-42 at 184; *see also* ECF 276-41 at 10.

evidence submitted with Claimants' post-hearing brief (*see e.g.*, ECF 257 ¶ 142 n.12).  They also claim the Tribunal expected Respondents to examine Mr. Gaitán "even though his appearance was [purportedly] a surprise" at the post-hearing argument (ECF 319 at 30), but ignore that they could have sought to depose him prior to the hearing or requested to question him at the hearing to the extent relevant to any of their defenses.  They simply failed to do so.  They further claim the Tribunal refused to accept evidence related to Respondents' coordinated fake news campaign but fail to identify the specific evidence that was not accepted or its purported relevance.  *Id.*  (citing to transcript pages that refer to documents that are not in the record before this Court).  In any event, the Tribunal properly excluded belated, *post-hearing* witness statements that Respondents attempted to submit on issues that could have been addressed at the hearing when the witnesses were subject to proper cross-examination.  As the Tribunal found, these witness statements from Mr. Hernandez (a party) and others in Respondents' control "fall within our procedural rule stated in 2021 that the Tribunal reserved the discretion to omit from the record the witness statement of a witness who declined to be cross-examined."[36]  ECF 276-41 ¶ 219 and n.55.

## IV.  **CONCLUSION**

For the foregoing reasons, as well as those in the Petition to Confirm (ECF 257-258), Petitioners respectfully request that the Court grant the Petition to Confirm as soon as possible and in its entirety under both the FAA and the New York Convention, and deny the Petition to Vacate.

---

[36]  The AAA Rules afford the Tribunal "broad discretion over procedural aspects of the arbitration."  *Telecom Business Solution, LLC*, 2023 WL 257915, at *5 (*quoting Duferco*, 2011 WL 666365, at *5).  While "[a]rbitrators must give each of the parties to the dispute an adequate opportunity to present its evidence and argument, [they] need not follow all the niceties observed by the federal courts such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence."  *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (internal citations omitted).

Dated:  July 2, 2025

Respectfully submitted,

By: _/s/ Michael N. Ungar_____
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

By: _/s/ Gregg L. Weiner_____
Gregg L. Weiner
Andrew S. Todres
Ethan Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on July 2, 2025.  Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

*/s/ Gregg L. Weiner*
*Counsel for AMLQ Holdings (Cay), Ltd.*
