UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                Petitioners,

      -against-                         22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

                Respondents.
------------------------------------------x

## MEMORANDUM OPINION

Appearances:

    Gregg L. Weiner
    Ethan Fitzgerald
    Daniel V. Ward
    Katherine M. McDonald
    ROPES & GRAY LLP

    David A. Landman
    Michael N. Ungar
    Katherine M. Poldneff
    Gregory C. Djordjevic
    ULMER & BERNE LLP

    *Attorneys for Petitioners*

    Rodney Quinn Smith, II
    GST LLP

    Lucila I.M. Hemmingsen
    THE FLATGATE FIRM PC

    *Attorneys for Respondents and Non-Party Jorge Hernandez*

    James S. O'Brien Jr.
    Aliette D. Rodz
    Eduardo de la Peña Bernal
    Martha M. Ferral
    SHUTTS & BOWEN LLP

    *Attorneys for Non-Parties Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez*

LEWIS A. KAPLAN, *District Judge.*

In its Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies ("April 22 Opinion"), the Court issued coercive civil contempt sanctions against Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), and DT Holdings, Inc. ("DTH," and together with Terra, "Respondents") arising from their non-compliance with two of this Court's judgments confirming arbitral awards. The Court, in reliance on Fed. R. Civ. P. 65(d)(2)(C), issued contempt sanctions also against non-parties on the basis that they were bound by the judgment, aware of the injunction, and aided and abetted Respondents' violations. A subset of those non-party contemnors — Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez ("Peru Contemnors") — now moves for reconsideration of the April 22 Opinion as it relates to them.

*Facts*

The Court assumes familiarity with the underlying facts and procedural history. It summarizes here only that necessary to the present motion.

On October 22, 2015, Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," and together with Peppertree, "Petitioners") and Terra entered into a shareholders agreement ("SHA") whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"). After the expiration of a five-year lock-up period, Petitioners sent a letter to the Company and Respondents

3

exercising their right under the SHA to initiate a sale of the Company to Torrecom Partners LP ("Torrecom") pursuant to Section 5.04(b) of the SHA.[1] After Terra refused to sell, Petitioners commenced the arbitration underlying this action (the "Arbitration") before a three-member panel (the "Tribunal"). In February 2022, the Tribunal issued its first partial final award ("FPFA"), later confirmed by this Court, which ordered the sale of the Company.[2] Subsequently, the Tribunal issued a second partial final award ("SPFA") staying Respondents' counterclaims pending compliance with certain of the Tribunal's prior orders.[3]

In January 2023, the Company notified the Tribunal that an arbitration case (the "Peru Arbitration") had been filed in Peru against the Company and Peppertree by the Company's Peru-based, Peru-organized wholly-owned subsidiaries, and the company managers of those subsidiaries — the Peru Contemnors listed above.[4] In its third partial final award ("TPFA"), the Tribunal determined that Respondents had "full capacity to bring about the termination of" the Peru Arbitration and ordered Respondents to terminate it.[5] In addition, the Tribunal ordered Respondents to prevent the commencement of additional similar arbitrations or proceedings.[6] The TPFA was

---

[1] Dkt 9-22 (hereinafter, "FPFA") at ¶ 10.

[2] Dkts 124; 125.

[3] Dkt 331-2.

[4] Dkt 331-3 (hereinafter, "TPFA") at ¶ 2.

[5] *Id.* at 42–43.

[6] *Id.*

4

confirmed by this Court on September 6, 2023,[7] the judgment of which later was affirmed by the Second Circuit.[8]

In defiance of the TPFA, the Peru Arbitration continued, culminating in the issuance of awards on June 10, 2024, and October 23, 2024.[9] In November 2024, Peru Contemnors successfully moved to confirm the June 10 award in an action in the Eastern Caribbean Supreme Court in the British Virgin Islands ("Peru-Related BVI Action").[10]

In its April 22 Opinion, the Court held that Respondents were in contempt of the Court's judgment confirming the TPFA by (1) failing to terminate the Peru Arbitration, and (2) failing to prevent the commencement of the Peru-Related BVI Action.[11] The Court further held that Peru Contemnors were in contempt also because they "self-evidently refused to terminate [the Peru arbitration and the Peru-Related BVI Action] . . . for the benefit of Respondents and to assist them in violating the TPFA."[12]

---

[7] Dkts 182; 183.

[8] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016 (2d Cir. Feb. 6, 2024).

[9] Dkt 254-11.

[10] Dkt 245-22.

[11] Dkt 295 at 35–36.

[12] *Id.* at 41.

5

Peru Contemnors now move for reconsideration of the Court's imposition of contempt sanctions against them.[13] They do not seek reconsideration of the merits of the April 22 Opinion as applied to them. Rather, they assert that the Court lacks personal jurisdiction over them.

### *Discussion*

I.  Legal Standard

   A.  *Motion for Reconsideration*

Peru Contemnors frame their motion as seeking reconsideration under Rules 59(e), and 60(b). Those rules apply to motions seeking to amend or to obtain relief from a judgment. As the contempt proceedings in this action are ongoing, the Court analyzes this motion instead under Rule 54(b), under which a Court may reconsider any decision or order before the entry of final judgment.[14] Inasmuch as Peru Contemnors are not parties to this action and did not participate in the proceedings leading up to the April 22 Opinion the Court considers their factual submissions now notwithstanding the proscription by local rule of considering such materials on motions for reconsideration.[15]

---

[13] Dkt 322.

[14] *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 378 (2d Cir. 2024). Although the April 22 Opinion contemplates the entry of judgments against Peru Contemnors, no such judgments have been entered.

[15] Petitioners argue that Local Rule 6.3 prohibits Peru Contemnors from submitting evidence in support of their motion. Petitioners cite a single case in which this Rule has been applied to non-parties, *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2012 WL 3686289 (S.D.N.Y. Aug. 23, 2012), but the relevant portion of the order from which reconsideration was sought was vacated on appeal. *See Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 Fed. Appx. 550, 552–53 (2d Cir. 2014). In light of the fact that the Peru

6

   B.   *Personal Jurisdiction*

In *Shaoxing Bon Textiles Co. v. 4-U Performance Group LLC*,[16] Judge Rakoff set forth the legal standard applicable here:

> Many circuits, including the Second Circuit, agree that nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum. Such recalcitrant non-parties have established minimum contacts because the intentional violation of a court order is often designed to have purpose and effect in the forum. Exercising jurisdiction is fair and just because the authority to force compliance is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.
>
> More recently, however, the Second Circuit instructed lower courts to engage in a more searching examination of these factors when dealing with foreign nonparties, suggesting that lower courts focus on the connection between the nonparty's contacts with the forum and the order at issue.[17]

II.  *Personal Jurisdiction Over Peru Contemnors*

In *Shaoxing Bon Textiles*, the court held that it had personal jurisdiction over two Chinese non-parties who were "the controlling agents" of a contemnor party and were "the only identified individuals" who knew the location of missing assets that had been moved contumaciously by the contemnor party.[18] The court noted further that the non-parties "directly [were] causing a New

---

Contemnors, as non-parties, were not heard on the motion that resulted in the April 22 Opinion and of the Court's treatment of the present motion as falling under Fed. R. Civ. P. 54, the Court is not bound to reject their factual submissions in deciding this motion.

[16] No. 16-CV-6805 (JSR), 2018 WL 11389637 (S.D.N.Y. Aug. 20, 2018).

[17] *Id.* at *2–3 (cleaned up) (citations omitted).

[18] *Id.* at *3.

7

York corporation . . . to flout this Court's orders. This suffices to show that [they] have purposefully directed their conduct toward this forum, establishing the required minimum contacts."[19]

Here, the connection between the Peru Contemnors and New York is through Respondents. As in *Shaoxing Bon Textiles*, Peru Contemnors are closely linked to party contemnors — they are subject to Respondents' control and acting for their benefit.[20] Unlike in *Shaoxing Bon Textiles*, they are not aiding and abetting a New York entity in its contempt — they are aiding and abetting parties which agreed to arbitrate disputes over the SHA in and subject to the law of New York and are subject to orders and judgments of this Court. The relevant personal jurisdiction inquiry therefore appropriately focuses on the connection between Peru Contemnors, the SHA, and the subsequent proceedings here.

The Peru Contemnors state that they are employees of Telecom Business Solution, S.R.L. ("TBS Peru"),[21] and general managers of TBS Peru, Continental Towers Peru, S.R.L. ("CT Peru") and Collocation Technologies Peru, S.R.L. ("CLL Peru" and, together with CT Peru, "Peruvian CT Subsidiaries").[22] The SHA states that the Company "shall use commercially reasonable efforts" to assign assets from Peruvian CT Subsidiaries to TBS Peru.[23] It states also that all assets and outstanding shares of TBS Peru and the Peruvian CT Subsidiaries shall be included

---

[19] *Id.*

[20] Dkt 295 at 16–18, 41.

[21] Dkt 360 at 2; Dkt 361 at 2.

[22] Dkt 360 at 3; Dkt 361 at 3.

[23] Dkt 143-78 at 28.

8

in an approved sale of the Company.[24] And it provides that actions of any of the subsidiaries — including amendments to their constitutional documents, commencement or litigation of legal claims, and the transfer of assets — are subject to the approval of the Company board of directors.[25] In sum, the SHA governs almost all facets of the activities of the companies that Peru Contemnors control. And the SHA provides that any dispute arising from the SHA will be resolved via arbitration, the seat of which "shall be New York, New York."[26]

Peru Contemnors contend that they "no longer [were] employees of [Respondent] DTH" at the time the BVI actions were initiated and were not subject to Respondents' control.[27] But this argument ignores the facts that TBS Peru and the Peruvian CT Subsidiaries are subject to the SHA, and the SHA prescribes New York as the exclusive venue for resolving disputes arising therefrom.

Setting aside the question of whether the Peru Contemnors are subject to the control of Respondent DTH, they are subject to the specific jurisdiction of this Court by virtue of their relationship to the SHA through the companies they control. While neither they nor their companies are signatories to the SHA, they nevertheless are aware that the SHA governs the companies they control, contains an arbitration clause, and sets New York as the seat of the arbitration. Their actions to help frustrate both the arbitration awards and this Court's judgments are sufficient bases for this

---

[24] *Id.* at 29–30.

[25] *Id.* at 21–22.

[26] *Id.* at 49.

[27] Dkt 323 at 8.

<pre>                                                                                                9</pre>

Court's exercise of personal jurisdiction over them.

### III.     *Modification of the Contempt Order*

In the alternative, the Peru Contemnors state that the April 22 Opinion – which afforded them fourteen days in which to purge their contempt by terminating the Peru-Related BVI Action and vacating any relief granted to them in that proceeding – "needs modification" in consideration of the their attempts to comply with it.[28] While the Peru-Related BVI Action has not been terminated nor the relief the Peru Contemnors there obtained vacated, the Peru Contemnors rely on a declaration from a BVI lawyer who has recommended that the best way to vacate the BVI judgment would be the filing of an application by the Company seeking to set aside the judgment, made with the consent of the Peru Non-Parties.[29] The Peru Contemnors state that they have purged their contempt because they have agreed to consent to such a motion, but that Petitioners have refused to go along to this approach. As always, the devil is in the details.

The Peru Contemnors' offer to consent to such a motion by the Petitioners was not unconditional. Rather, the offer to consent was conditioned on Petitioners absolving the Peru Contemnors of any "potential past, present, or future liability of any kind."[30] Peru Contemnors do

---

[28] Dkt 359 at 6.

[29] Dkt 310-7.

[30] Dkt 299-2

not dispute having insisted on this demand.[31]

The Court assumes (without deciding) that the best and most expeditious means of accomplishing in the BVI what this Court has required is to pursue the route recommended by the Peru Contemnors' BVI lawyer – an application by the Petitioners with the expressed consent of the Peru Contemnors. And while it may be — as the Peru Contemnors put it — "understandable" why they would seek broad absolution from any liability to Petitioners, just as it may be "understandable" why a vendor might seek an excessive price in a sale of any goods and services, neither have any right to receive their hearts' desires. The Peru Contemnors' demand for absolution is entirely unjustified. It is just a bald faced attempt to extract something to which they are not entitled in exchange for doing what they have a legal obligation to do. Their insistence on absolution from liability as a *quid pro quo* for getting rid of the Peru-Related BVI Action is without any proper basis.

Even if Peru Contemnors are correct that they cannot terminate unilaterally the Peru-Related BVI judgment, their unreasonable insistence on a broad liability waiver appears to be the proximate barrier to compliance with the Court's order. Accordingly, Peru Contemnors' supposed attempts at compliance with the April 22 Opinion do not warrant a modification or a stay of the contempt sanctions.

### *Conclusion*

The motion for reconsideration filed by Telecom Business Solution, S.R.L.,

---

[31] The fact that the Peru Contemnors insist on such absolution is undisputed. Dkt 360 at 5 n.2 ("[I]t is understandable that we would seek assurances that we will not be subjected to any liability related to the Peru-Related BVI Proceeding.") ; Dkt 361 at 5 n.3 (same).

Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez (Dkt 323) is denied.

      SO ORDERED.

Dated:     July 6, 2025

                                                                     _____
                                                                      Lewis A. Kaplan
                                                                 United States District Judge