UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TELECOM BUSINESS SOLUTION, LLC, *et al.*, | Civil Action: 1:22-cv-01761 |
| Petitioners, | Judge Lewis A. Kaplan |
| v. | |
| TERRA TOWERS CORP., *et al.*, | Magistrate Judge Robert W. Lehrburger |
| Respondents. | |

**PETITIONERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST RESPONDENTS FOR CONTINUED NON-COMPLIANCE WITH INFORMATION SUBPOENAS AND SUBPOENAS *DUCES TECUM***

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

Although directed by the Court on June 17, 2025 to "provide [P]etitioners with full and complete responses to the information subpoenas and subpoenas *duces tecum*" served upon them (the "Information Subpoenas") "forthwith," Respondents admit in their opposition to Petitioners' Motion for Contempt (ECF 395, the "Motion") that they have not done that.[1] Instead, they continue to thumb their nose at lawful legal processes and at this Court's orders to comply, serving partial responses that are chock full of untimely and voluminous objections, and evasive non-answers and denials. Even where Respondents do offer up a modicum of information, that information is so patently incomplete (and in some instances, not credible) that Respondents concede that contempt sanctions are justified here and attempt to control the damage by requesting that the sanction be light. But Respondents further concede that their proposed sanction will not, in fact, compel compliance, claiming the purportedly non-cooperative (but wholly owned) subsidiaries of DTH are refusing to provide Respondents with information they need to respond to the Subpoenas. That absurd contention—that Respondents have no control over the conduct of their wholly owned subsidiaries and are thus unable to comply with Court orders—leads them to conclude that, at most, a minimal fine might somehow encourage their wholly owned subsidiaries (and, in turn, Respondents) to cooperate. Nonsense. Respondents' deliberate failure and refusal to comply—even in the face of this Court's orders—is clear, as is the need for civil and/or criminal sanctions sufficient to coerce compliance with the Court's orders. This Court has gotten the Respondents' attention with its threats of coercive sanctions, and those sanctions are now warranted here.

**I.   RESPONDENTS' CONTINUED NON-COMPLIANCE COMPELS A FINDING OF CONTEMPT**

As set forth in the initial memorandum in support of the Motion, Respondents failed to provide *any* response to the Information Subpoenas even in the face of clear and emphatic judicial

---

[1]   Unless otherwise noted, capitalized terms herein have the same definitions as in the Motion (ECF 395).

1

commands to fully and completely respond "forthwith." ECF 396-7; ECF 388. Only after Petitioners were forced to file the Motion did Respondents finally provide *any* form of substantive response. The responses they provided, however, consisted of patently incomplete and evasive answers to the Information Subpoenas. Respondents now point to those same responses to claim—implausibly and without support—that they have somehow satisfied their obligations. *See* Ex. 1[2] (7/9/25 Poldneff email setting forth Respondents' deficiencies in detail). Even a cursory reading of their responses reveals their ongoing evasiveness and gamesmanship.

A. **Terra**

Respondents' suggestion that the belated responses to the Information Subpoenas provided by Terra somehow satisfies their discovery obligations is not remotely credible. As an initial matter, Terra's responses to the Information Subpoenas must be viewed in light of their untimely and voluminous objections, which purported to limit the scope of each response. *See generally* ECF 408-2, 408-3. However, Respondents waived all objections to the Information Subpoenas by failing to timely respond or object in writing.[3] To the extent Respondents are continuing to withhold information or documents on the basis of objections that have long since been waived,

---

[2] "Ex. __" refers to exhibits to the Declaration of Katherine M. Poldneff, filed herewith.
[3] *See, e.g.*, *Gibbons v. Smith*, 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010) ("By issuing no response to the interrogatories and showing no good cause to the Court for his failure to do so, Petitioner has waived any objections he might otherwise have raised to the interrogatories."); *Rexnord Holdings, Inc. v. Bidermann*, 1994 WL 714394, at *3 (S.D.N.Y. Dec. 21, 1994) ("responses and objections to discovery must be made in writing and are waived if not timely made") (finding claims of privilege waived, and ordering judgment debtor to produce all documents to judgment creditor); *see also Pich v. Queens Garden Nursery Inc.*, 2025 WL 747643, at *2 (E.D.N.Y. Mar. 10, 2025) ("despite receiving the duly-served subpoenas and after counsel's attempts to confer, the Nursery has not responded. . . . The Nursery therefore waives any objections to Plaintiff's subpoenas by failing to timely respond or object in writing"); *Consumer Fin. Prot. Bureau v. MacKinnon*, 2021 WL 4461695, at *5 (W.D.N.Y. Sept. 29, 2021) ("All other objections, including to the temporal scope of the request for production of documents, interrogatories and information subpoenas, are waived.") (finding party in contempt for failure to comply with court order to answer information subpoenas, and taking note that it was "part of a contemptible pattern of dilatory tactics that will no longer be countenanced"); *Ametek, Inc. v. N. Shore Int'l, Inc.*, 2017 WL 3172821, at *2 (E.D.N.Y. July 26, 2017) ("when a party served with a plaintiff's post-judgment discovery demands fails to object to—or otherwise ignores—those demands, that party has waived any objections it might otherwise have raised"); *Gesualdi v. Oyster Bay Sand & Gravel, Inc.*, 2015 WL 1509481, at *3 (E.D.N.Y. Mar. 31, 2015) ("Defendant has waived any objections to Plaintiffs' discovery demands based on Defendant's failure to timely respond in writing as required or object to the demands").

that is only further evidence of Respondents' contempt. Moreover, having failed to provide any support for its self-serving assurances in response to the Motion that there is no responsive information and no assets beyond what it has asserted—*i.e.*, no assets beyond an ownership interest in the Company, no bank accounts, no debts or credits due, and no asset transfers—Terra included in its belated responses what appear to be either outright fabrications or else evasions based on an unspecified reliance on its waived objections and on the caveat that each response was "[b]ased on a reasonable search and to the best of its knowledge." *See, e.g.*, ECF 408-2, No. 7.

Terra's assurances of full compliance, moreover, are readily shown to be false. Terra maintains that its only asset is stock in the Company, as if that were the total extent of its business dealings. However, as public filings will attest, the fact that Terra has been in litigation with other tower companies arising from other deals betrays the lie of its baseless representations. *See, e.g.*, Ex. 2 (Complaint, *Terra Towers Corp., et al. v. American Tower Intl., Inc.*, Fla. 11th Dist. Cir. Ct. (filed Dec. 12, 2022)).[4] Terra's claims that it has disclosed everything because there is nothing to disclose is not just implausible, it is entirely unsupported. Its self-serving responses (and those by DTH, for that matter) were neither signed nor certified by counsel, as required under Federal Rule of Civil Procedure 11; and the "authorized agent" who swore under oath that the responses were true and correct is Raul Pimentel Mata—a third-party with no personal knowledge about the matters sworn to therein. Additionally, Terra fails to provide any documentary support for the proposition that its interest in the Company is its sole asset. In sum, Terra has no basis to assert that its untimely and unsupported non-answers have satisfied its obligations.

---

[4] Petitioners are also aware of other litigation, in the form of private arbitrations, between Hernandez/Terra and various tower companies unrelated to the business of the Company, further undercutting Terra's characterization of itself as purely an ownership vehicle for stock in the Company.

3

B.     DTH

In response to the Motion, DTH remarkably admits to "the fact of [its] post-judgment discovery misconduct" and has conceded that the imposition of coercive contempt sanctions may well be necessary and appropriate to secure its own compliance with its discovery obligations. ECF 407 at 7. In its responses, DTH claimed that its only directly held asset beyond ownership interests in numerous wholly owned subsidiaries, which supposedly hold substantially all the DTH assets but about which DTH provided virtually no information, is a single, now "suspended" bank account, with a balance of just over $20,000. ECF 408-4, Nos. 1, 6, 7.

This cannot possibly be true. *First*, as familiar to all parties and to the Court, the Company sends DTH a monthly SG&A payment of $480,000. *See, e.g.,* 276-41 (5PFA) ¶¶ 48, 93. *Second*, Respondents (and Hernandez) have caused the Company to siphon hundreds of thousands of dollars more every month to DTH in unauthorized tower funds not approved by the Company's Board, as the Tribunal expressly found in the 5PFA. *See id.* ¶ 76.[5]

Attempting to square these undisputed facts with its unsupported assertion, DTH offers another unsupported claim that the "[t]he SG&A payment and the payments for the construction of towers on behalf of the Company go directly to the wholly owned subsidiaries of DT Holdings." *Id.* No. 3.[6] Under the Development Agreement, however, these payments are payable to DTH— not its wholly owned subsidiaries. ECF 401-3, § 1.1(f). DTH then concedes that it was obligated to provide details concerning the bank accounts and other assets of each of its wholly owned

---

[5]    Available evidence also demonstrates that DTH has substantial business dealings separate and apart from the Company and has been involved in various disputes with other tower companies. *See, e.g.,* Exs. 2 (American Towers Complaint) (demonstrating proposed deals between DTH and American Towers), 3 (PTI T'script) (demonstrating business deals between DTH and Pheonix Tower International), 4 (Dun & Bradstreet report) (demonstrating DTH business in the Philippines, including reported assets over $1 million, where the Company does not operate).

[6]    To be sure, DTH would be able to support this claim if it were true because the Company's finances are controlled by their agent Juan Francisco Quisquinay (*see* ECF 245-36 (Quisquinay disbursed Company funds to pay for improper collateral foreign proceedings)). Respondents have utterly failed to support their new claim that he is no longer their agent (*see* ECF 383 at 2-3).

4

subsidiaries. ECF 407 at 7. Yet, once again, it concedes it has failed to produce such records to allow the funds and assets to be traced.

Adding another level to this house of cards, DTH claims to have no knowledge of the bank accounts or financial information of its own wholly owned subsidiaries, because, it claims, its wholly owned subsidiaries are refusing to cooperate. *Id.* Again, this defies credulity. Tellingly, DTH failed to document either its requests for information from its wholly owned subsidiaries or their refusals. And if DTH truly pays funds to its wholly owned subsidiaries, how could it be in the dark about their bank accounts?

It is simply not believable that these wholly owned subsidiaries operate as separate and independent rogue entities that are beyond the control or even influence of their parent. This is especially so since their relationship with the Company flows from the Company's relationship with DTH under the Development Agreement. If Respondents' representations were true, then DTH would *never* redirect hundreds of thousands of dollars in fees that are contractually due and payable to DTH to these purportedly rogue wholly owned subsidiaries who could simply abscond with the money.[7]

In all events, DTH's efforts to shift the blame to its wholly owned subsidiaries does nothing to relieve its obligations here. "[W]hen the parent is served with an interrogatory, it is no defense to claim that the information is within the possession of a wholly owned subsidiary, because such a corporation is owned and controlled by such interrogee. The same principle applies to Information Subpoenas for documents …." *Twentieth Century Fox Film Corp. v. Marvel Enters.,*

---

[7] Such arguments are of a piece with the similar protestations of independence by the Peru Contemnors in connection with the Peru-Related BVI Action that this Court has recently rejected. *See* ECF 406 at 7 ("Peru Contemnors are … subject to Respondents' control and acting for their benefit."). The same "control" and "benefit" exist here. The governance of the Company—over which Respondents have improperly seized control—is also instructive. The record reveals that the Company's El Salvadoran subsidiary has been requesting and obtaining funds from the Company to pay BVI legal fees (without Board approval), belying any suggestion of a separateness of finances. *See* ECF 244 at 22 n.8. It is highly unlikely that DTH does not function similarly.

5

*Inc.*, 2002 WL 1835439, at *3-4 (S.D.N.Y. Aug. 8, 2002) (internal quotations and citations omitted); *see also Motorola Credit Corp. v. Uzan*, 2013 WL 6098388 (S.D.N.Y. Nov. 20, 2013) ("Control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from the non-party to the action. (citation omitted). This pragmatic approach to understanding 'control' will often result in a finding that a parent corporation has, practically speaking, sufficient control over its wholly owned subsidiaries to require that it search them in compliance with a subpoena served on the parent.").

### C. Hernandez

Respondents next attempt to distance their leader, Jorge Hernandez, from their failure to meet their discovery obligations. The fact that Hernandez was not directly the subject of any of the Information Subpoenas on which this Motion is based does not immunize him against sanctions for contempt. As a principal who exercises considerable control over the affairs of the subject parties, Hernandez can and should be sanctioned for Respondents' evasive and outright non-answers to the Information Subpoenas. *See Stulz Air Tech. Sys. v. G Builders VIII, LLC*, 2018 U.S. Dist. LEXIS 11765 (S.D.N.Y. 2018) (sanctioning principal of responding party "consistent with long-established case law"); *Wilson v. U.S.*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the [order] directed to the corporation … fail to take appropriate action within their power for the performance of the corporate duty, they no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.").

Hernandez strives to distance himself from the conduct of Terra, DTH, and their wholly owned subsidiaries. This has been a recurring theme in these proceedings. It continues to ring hollow. "[A] non-party may not avoid contempt or other sanctions through self-serving statements

6

that artificially claim that the individual is no longer associated with the contemptuous party." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3487350 (S.D.N.Y. July 12, 2013), *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015). As in *Universitas*, the record here readily confirms Hernandez's control of the Respondent entities and, thus, his responsibility for Respondents' contempt. Hernandez's self-serving claims that he no longer controls the Respondent entities are precluded by prior findings of this Court and the Tribunal's confirmed prior awards. *See* ECF 295 at 40 ("Hernandez owns and controls Terra and DTH."); ECF 369-8 ¶ 8 n.1 (finding Hernandez controls Respondents) and ¶ 40(7) (finding Hernandez controls DTH's wholly owned subsidiaries); *see also, generally*, ECF 400 at 2-4 (detailing the record evidence of Hernandez's control over Respondents). Here, Respondents attempt to avoid a contempt finding with their continuing gamesmanship, wordsmithing, and evasive answers purportedly based on their limited knowledge and a supposed inability to demand compliance from DTH's wholly owned subsidiaries. Consistent with this Court's prior orders finding Hernandez personally in contempt for Respondents' ongoing refusals to comply with its orders, the Court should once again include Hernandez in its contempt order as the best means to obtain compliance. *See* ECF 295 at 39 (finding Hernandez in contempt because of his "sole control over Terra's representatives on the Company's board").

## II. RESPONDENTS' OBVIOUS AND CONTINUED OBSTRUCTIONIST TACTICS WARRANT SUBSTANTIAL COERCIVE SANCTIONS, BOTH CIVIL AND CRIMINAL

Despite Respondents' feigned confusion, the Motion was clear in its request for coercive sanctions, including civil and/or criminal, to compel Respondents' compliance with the Information Subpoenas and with this Court's plain orders requiring the same. That Petitioners chose to leave the extent of those sanctions to the Court's sound discretion is in no way an infirmity of the Motion. While Respondents contend that no sanctions are warranted for Terra or Hernandez,

7

***they concede DTH's failure to comply and the propriety of coercive sanctions as to DTH***. ECF 407 at 7. Respondents suggest, however, that civil sanctions should be limited to a modest fine of $250 per day. They further argue that criminal contempt is unwarranted because there was no willful noncompliance on their part. Respondents are wrong on all counts.

Respondents' willful disregard for their discovery obligations is clear and unmistakable. They provided *no* responses to the Information Subpoenas, then *no* response even to a motion to compel, because they insisted responses were forthcoming. Yet, even when the Court ordered those responses be complete and made "forthwith," Respondents *still* failed to respond, necessitating the filing of the instant Motion. Only then did Respondents provide their evasive and patently incomplete answers, along with empty assurances to supply certain of the missing information "in the next 2 to 3 days." ECF 408-4, No. 6. Yet again, though, Respondents' promises of compliance proved empty, with Respondents now attempting to shift blame to their own rogue wholly owned subsidiaries. It's ridiculous. Respondents also misrepresent the nature and extent of their responses and their own prior acknowledgements as to what information is still due and owing. They now claim that the responses were complete save for account numbers of DTH wholly owned subsidiaries, even though DTH previously acknowledged in response to the Information Subpoenas that there were other assets of its wholly owned subsidiaries that it had yet to disclose. *Compare* ECF 407 at 3 ("Those responses were complete, except for account numbers of wholly owned subsidiaries of DT Holdings."), *with* ECF 408-4, No. 7 ("DTH is attempting to identify all of the assets owned by its wholly owned subsidiaries."). Even for the one asset of a DTH subsidiary Respondents identified, Respondents mispresent its status. *Compare* ECF 407 at 8 (describing the asset as currently for sale), *with* Ex. 5 (Lopez affidavit) (referring to an ongoing due diligence process concerning the *use* (not sale) of infrastructure owned by DT Peru) *and* ECF 408-4 No. 9

(identifying no sales or other transfers of assets). These "hide the ball" antics must stop.

The Information Subpoenas were necessitated, of course, by Respondents' ongoing failure to satisfy the judgments contained in the already confirmed awards. Respondents urge the Court to take into consideration their allegedly good faith "intent" to satisfy those judgments, illustrated by their representation that an "initial payment" was to be remitted the same day of their response to the Motion. ECF 407 at 2. Respondents have long claimed their good "intentions" as a means to beg the Court's patience, all to no avail.[8] Consistent with that pattern, Respondents have now offered to pay "about $50,000," a relative pittance compared to the approximately $2,000,000 owed under the Court's judgments,[9] and as such, a hollow attempt to feign compliance. Ex. 7.

While Terra rests upon its implausible assertions of complete compliance, DTH is forced to admit that a coercive sanction is necessary. However, DTH's suggestion that a maximum fine of $250 per day is sufficient—despite conceding it is substantially less than prior coercive fines levied by the Court—is one that not even DTH can support. Indeed, DTH can make no such assurance beyond the "hope" that this modest fine *might* persuade its recalcitrant wholly owned subsidiaries—over which it purports to have no control—to comply when DTH's own supposed entreaties (of which it provides no evidence) and even this Court's orders were apparently ineffective to procure that compliance.

Moreover, DTH's argument that the amount of the fine should be measured relative to the

---

[8] Respondents also insist they have "demonstrated past compliance" with other discovery obligations and court orders. ECF 407 at 2. To the contrary, Respondents have repeatedly ignored their obligations and clear orders of the Court and the Tribunal and, in fact, continue to do so. *See, e.g.,* ECF 400; ECF 6 (Tribunal's Procedural Order No. 2024-10, granting Claimant's Application for Discovery Sanctions); and ECF 295 (demonstrating Respondents' ongoing failure to comply with confirmed awards, including their continued refusal to dismiss the Peru-Related and El Salvador-Related BVI Actions).

[9] As of the date of this filing, Respondents now owe Peppertree more than *an additional $1.8 million* pursuant to the 3PFA for the enjoined, collateral Peru Arbitration which Respondents never dismissed. The tribunal in the Peru Arbitration recently issued an award rejecting all of Respondents' towers-related claims against Peppertree; however, it ordered Peppertree to pay over $1.8 million for half of the arbitration fees, which, pursuant to the 3PFA, it is Respondents' obligation to now pay. *See* 272-27 (3PFA) at p. 44, ¶ 5.

amount of post-judgment interest owed is misplaced in multiple respects: *First*, post-judgment interest relates to the underlying judgment and is irrelevant to Respondents' defiance of the Court's discovery orders. *Second*, post-judgment interest is a compensatory measure and is not designed to be coercive in nature. And *third*, accrual of post-judgment interest has thus far apparently had no sway over Respondents—suggesting, if anything, that a sanction intended to coerce compliance would need to be vastly higher.

In its June 18, 2025 Order, the Court warned that "any failure to comply with th[e] order may constitute civil and/or criminal contempt of court." ECF 388. Consistent with the sanctions expressly contemplated by the Court, Petitioners request a finding of civil and criminal contempt against Terra, DTH and their affiliates,[10] and Hernandez, and defer the extent of sanctions to the Court's sound discretion.

### III. CONCLUSION

For the reasons set forth above and in their initial memorandum in support of the Motion, the Motion should be granted.

---

[10] As this Court has already demonstrated, contempt sanctions may be levied against non-parties working in conjunction with and/or under the control of parties to evade the Court's directives. *See* ECF 295. Given Respondents' repeated insistence that their assets are in the hands of affiliates and their efforts to pass blame for their non-compliance onto these supposedly uncontrollable affiliates, any contempt order must reasonably include those affiliate companies.

| | |
|---|---|
| Dated: July 16, 2025 | Respectfully submitted, |

By: */s/ Michael N. Ungar*  
Michael N. Ungar  
(admitted *pro hac vice*)  
Katherine M. Poldneff  
Ashtyn N. Saltz  
(admitted *pro hac vice*)  
**UB GREENSFELDER LLP**  
1660 West 2nd Street, Suite 1100  
Cleveland, Ohio 44113-1406  
Phone: (216) 583-7000  
Fax:    (216) 583-7001  
mungar@ubglaw.com  
kpoldneff@ubglaw.com  
asaltz@ubglaw.com  

David A. Landman  
**UB GREENSFELDER LLP**  
1700 Broadway, Suite 1802  
New York, New York 10019-7710  
Phone: (917) 262-0470  
Fax:  (917) 262-0480  
dlandman@ubglaw.com  

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

By: */s/ Gregg L. Weiner*  
Gregg L. Weiner  
Andrew S. Todres  
Ethan R. Fitzgerald  
**ROPES & GRAY LLP**  
1211 Avenue of the Americas  
New York, New York 10036-8704  
Phone: (212) 596-9000  
Fax:  (212) 596-9090  
gregg.weiner@ropesgray.com  
andrew.todres@ropesgray.com  
ethan.fitzgerald@ropesgray.com  

Daniel V. Ward  
(admitted *pro hac vice*)  
**ROPES & GRAY LLP**  
Prudential Tower  
800 Boylston Street  
Boston, Massachusetts 02199-3600  
Phone: (617) 951-7000  
Fax:  (617) 951-7050  
daniel.ward@ropesgray.com  

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on July 16, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

<i>/s/ Michael N. Ungar</i><br>
<i>Counsel for Telecom Business Solution, LLC</i><br>
<i>and LATAM Towers, LLC</i>