**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------  X
TELECOM BUSINESS SOLUTION, LLC, LATAM       :    Civil Action No.: 1:22-cv-01761
TOWERS, LLC, AMLQ HOLDINGS (CAY), LTD.      :
                                            :    Judge Lewis A. Kaplan
                    Petitioners,            :
           v.                               :    Magistrate Judge Robert W.
                                            :    Lehrburger
TERRA TOWERS CORP., TBS MANAGEMENT,         :
S.A., DT HOLDINGS, INC., JORGE HERNÁNDEZ    :
                                            :
                    Respondents.            X
------------------------------------------------------------
```

<u>**PETITIONERS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR**</u>
<u>**PETITION TO CONFIRM THE FIFTH PARTIAL FINAL AWARD, AND IN**</u>
<u>**OPPOSITION TO HERNÁNDEZ'S CROSS-PETITION TO VACATE**</u>

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business*
*Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings*
*(Cay), Ltd.*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND ..........................................................................................................4

III.    LAW AND ARGUMENT .............................................................................................7

      A.   There Is No Basis to Vacate the Tribunal's Determination that It Has Jurisdiction Over Hernández ...........................................................................................................7

          1.   The Tribunal's Determination is Entitled to the Same Deference as the Rest of the 5PFA ........................................................................................ 7

          2.   Hernández's New Argument that He Does Not Own or Control Terra/DTH Was Never Raised to the Tribunal and Is Contradicted by Factual Findings Repeatedly Confirmed by This Court ............................ 9

          3.   The Tribunal Correctly Applied the Doctrine of Direct Benefits Estoppel ......................................................................................... 11

      B.   Hernández's Remaining Arguments Have All Been Made by Terra/DTH and Are Meritless ..................................................................................................................15

          1.   Hernández's Repackaged Arguments from the Terra/DTH Petition Should be Rejected ............................................................................................. 15

          2.   Hernández's Arguments that Terra/DTH Made in the Second Circuit Should be Rejected .............................................................................. 18

IV.     CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*,
  2022 WL 2916578 (S.D.N.Y. Jul. 25, 2022) ..........................................................................17

*Ace Am. Ins. Co. v. Huntsman Corp.*,
  255 F.R.D. 179 (S.D. Tex. 2008) ..........................................................................................13

*Arhontisa Maritime Ltd. v. Twinbrook Corp.*,
  2001 WL 1142136 (S.D.N.Y. Sept. 27, 2001) .......................................................................14

*Ashraf & Republic New York Sec. Corp.*,
  14 F. Supp. 2d 461 (S.D.N.Y. 1998) .......................................................................................9

*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
  344 F.3d 255 (2d Cir. 2003) ....................................................................................................7

*Basch v. Talley Indus., Inc.*,
  53 F.R.D. 9 (S.D.N.Y. 1971) .................................................................................................15

*Batesville Casket Co., Inc. v. United Steelworkers of America*,
  2007 WL 4289983 (E.D.Tenn. Dec. 5, 2007) ..........................................................................9

*Belzberg v. Verus Investments Holdings, Inc.*,
  21 N.Y.3d 626 (2013) ............................................................................................................14

*Bilyeu v. Johanson Berenson LLP*,
  809 F. Supp. 2d 547 (W.D. La. 2011) ...................................................................................14

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
  345 F.3d 347 (5th Cir. 2003) .................................................................................................14

*Certain Underwriters at Lloyd's, London v. Allied Pros. Ins.*,
  2023 WL 4449570 (W.D.N.Y. July 11, 2023) .......................................................................14

*CollegeStreet Import and Export (Tianjin) Co. Ltd. v. TL x HF LLC*,
  2025 WL 979756 (S.D.N.Y. Apr. 2, 2025) ...........................................................................14

*Commonwealth Assocs. v. Letsos*,
  40 F. Supp. 2d 170 (S.D.N.Y. 1999) .......................................................................................9

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005) ......................................................................................................8

*Gater Assets Ltd. v. AO Moldovagaz,*
    2 F.4th 42 (2d Cir. 2021) ................................................................14

*Green v. XPO Last Mile, Inc.,*
    504 F. Supp. 3d 60 (D. Conn. 2020) ...............................................14

*Hartford Fire Ins. Co. v. The Evergreen Org., Inc.,*
    410 F. Supp. 2d 180 (S.D.N.Y. 2006) .....................................11, 12, 14

*HD Brous & Co. v. Mrzyglocki,*
    2004 WL 376555 (S.D.N.Y. Feb. 26, 2004) ......................................13

*Hernández v. Telecom Bus. Sol., LLC,*
    2024 WL 3401092 (S.D.N.Y. July 12, 2024) ..............................5, 7, 8

*Inception Mining, Inc. v. Danzig, Ltd.,*
    311 F. Supp. 3d 1265 (D. Utah 2018) ..............................................14

*India.com, Inc. v. Dalal,*
    412 F.3d 315 (2d Cir. 2005).............................................................13

*JCI Commc'ns, Inc. v. Int'l Bhd. Of Elec. Workers, Loc. 103,*
    324 F.3d 42 (1st Cir. 2003).................................................................9

*Kwatinetz v. Mason,*
    356 F. Supp. 3d 343 (S.D.N.Y. 2018) ..............................................14

*Life Techs. Corp. v. AB Sciex Pte. Ltd.,*
    803 F. Supp. 2d 270 (S.D.N.Y. 2011)..............................................12

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC,*
    268 F.3d 58 (2d Cir. 2001)...............................................................14

*In re Marine Pollution Serv., Inc.,*
    857 F.2d 91 (2d Cir. 1988)...............................................................17

*McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.,*
    2015 WL 144190 (S.D.N.Y. Jan. 12, 2015) ................................12, 13

*Med-IM Dev. Inc. v. General Elec. Cap. Corp.,*
    2008 WL 901489 (S.D.N.Y. Mar. 31, 2008) .....................................14

*Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.,*
    2002 WL 31106409 (S.D.N.Y. Sept. 20, 2002)...................................8

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,*
    820 F.3d 527 (2d Cir. 2016).............................................................9

*Nicholls v. Brookdale U. Hosp. & Med. Ctr.*,
204 F. App'x 40 (2d Cir. 2006) ...................................................................9

*Pagaduan v. Carnival Corp.*,
830 Fed. App'x 61 (2d Cir. 2020)..............................................................17

*Rafferty v. Xinhua Finance Ltd.*,
2011 WL 335312 (S.D.N.Y. Jan. 31, 2011) ..............................................14

*Schaad v. Susquehanna Cap. Grp.*,
2004 WL 1794481 (S.D.N.Y. Aug. 10, 2004)............................................14

*Smoothline Ltd. v. N. Am. Foreign Trading Corp.*,
2002 WL 31885795 (S.D.N.Y. Dec. 27, 2002) .........................................11

*Sprietsma v. Mercury Marine*,
537 U.S. 51 (2010)......................................................................................19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)..............................................................................19, 20

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*,
2023 WL 257915 (S.D.N.Y. Jan. 18, 2023) (Kaplan, J.)............................7

*Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*,
954 F.3d 567 (2d Cir. 2020).......................................................................13

*Veera v. Janssen*,
2005 WL 1606054 (S.D.N.Y. July 5, 2005) ..............................................14

*Vitol, Inc. v. Copape Produtos de Petroleo Ltda.*,
2024 WL 1216660 (S.D.N.Y. Mar. 21, 2024) ...........................................13

*Wallace v. Buttar*,
378 F.3d 182 (2d Cir. 2004)..........................................................................9

*WTA Tour, Inc. v. Super Slam Ltd.*,
339 F. Supp. 3d 390 (S.D.N.Y. 2018)........................................................12

**Statutes**

FAA § 10(a)(3) ...................................................................................................17

New York Convention, Article V(1)(b)...............................................................17

Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ" or "Petitioners") respectfully submit this Memorandum in Opposition to Jorge Hernández's Petition to Vacate the Fifth Partial Final Award (ECF 399, the "Hernández Petition") and in further support of their Petition to Confirm the 5PFA (ECF 257-258, the "Petition to Confirm").[1]

## I.    **INTRODUCTION**

Last year, on the eve of the Phase 2 final evidentiary hearing, Hernández petitioned this Court to stay the Arbitration, arguing that he was not bound by the broad arbitration agreement in the Company's governing documents (which he negotiated and signed as the owner and controller of the majority shareholder). This Court rejected the Petition to Stay and expressly held that Hernández's jurisdictional objections should be raised to and considered by the Tribunal as part of Phase 2. That is exactly what happened. Hernández raised his objections to the Tribunal—which the Tribunal gave him every opportunity to do, including at their express invitation and over the course of extensive pre- and post-hearing briefing. The Tribunal then ultimately considered his jurisdictional arguments and, in its highly detailed and well-reasoned opinion, determined them to be without merit.

Now, despite being specifically directed by this Court to raise his jurisdictional objections to the Tribunal—and having raised those objections to the Tribunal and lost—Hernández seeks a second bite at the apple, asking this Court to disregard the Tribunal's determinations and, on a *de novo* basis, find that the Tribunal lacked jurisdiction over him based on the charade of an argument that he purportedly does not own or control Terra or DTH. That request is utterly baseless and should be rejected, including because: (i) this Court's determination that Hernández "forfeited any

---

[1] Unless otherwise noted, all other defined terms herein shall have the same meaning as in the Petition to Confirm.

right to a pre-award judicial challenge of [his] obligation to arbitrate" necessarily means that the Tribunal's jurisdictional determination is not subject to *de novo* judicial review; (ii) he offers no basis to disregard the Tribunal's determination that, under he doctrine of direct benefits estoppel, he was bound to arbitrate Petitioners' claims against him that arose from the Shareholders Agreement he signed on behalf of Terra, (iii) the arguments he now raises in support of his request to disregard the Tribunal's determination were never presented to the Tribunal and thus have been waived, and, (iv) in any event, his waived arguments have no basis in fact and are contrary to factual findings that this Court has expressly confirmed, that subsequently have been affirmed by the Second Circuit, and on which this Court has repeatedly relied, including in its recent April 22 Order.

   ***No basis to disregard Tribunal's determination***.  The Hernández Petition comes nowhere close to meeting the exceedingly high "barely colorable justification" standard for vacatur under federal law.  Tellingly, it barely acknowledges that this is the high burden Hernández must meet, instead suggesting that the question of whether Hernández was bound to arbitrate should somehow be decided *de novo*.  But this Court already held Hernández's jurisdictional objections should be decided by the Tribunal, dismissing his eleventh hour, pre-hearing attempt to have them decided in the first instance by this Court as "gamesmanship."  The Tribunal considered Hernández's arguments and ruled against him, finding that he directly benefitted from the Company's governing documents including based on his previously self-professed role as Terra/DTH's owner and controller.  The Tribunal made that determination based on a careful review of the record and relevant law; indeed, it declined to exercise jurisdiction over the other Terra Directors (which the Hernández Petition tellingly omits).  Hernández has not identified any valid basis to vacate this determination, regardless of the standard of review.

***Ownership and control argument waived***.  Instead, Hernández's proffered basis for vacatur—supported by a self-serving affidavit appended to his brief—is that the Tribunal lacks jurisdiction over him because he does not own or control Terra or DTH.  But he did not raise that argument to the Tribunal, let alone submit evidence concerning his ownership or control of Terra or DTH; in fact, he deliberately chose not to submit *any* evidence in the Phase 2 proceedings or testify at the hearing.  He cannot now be heard to argue that the Tribunal improperly rejected an argument that he did not even make—and that waived argument certainly cannot be a basis for vacatur here.

***Ownership and control argument is factually and legally baseless***.  In any event, the Tribunal and this Court have repeatedly found that Hernández owns and controls Terra/DTH, and his new assertion that he does not—raised ***years*** after this determination was made in multiple awards that have been confirmed by this Court and affirmed by the Second Circuit—is simply not credible, let alone well-supported.  It rings especially hollow in light of Hernández's own prior testimony that he is "the ultimate decisionmaker for all of the DT[H] companies as needed." ECF 245-3 ¶ 13.  And while Hernández attempts to inundate the Court with inapposite and readily distinguishable case law, this Court's own precedent—on which the Tribunal expressly relied but which the Hernández Petition ignores entirely—and multiple other cases support the Tribunal's finding that it has jurisdiction over Hernández under the doctrine of direct benefits estoppel.

***Other vacatur arguments fail***.  Hernández's other arguments, largely cribbed from the Terra/DTH Petition or already litigated, fare no better.  Like Terra/DTH, Hernández waived his argument that Petitioners lacked the capacity to bring derivative claims against him and fails to support it in any event.  Hernández also fails to establish that the Tribunal exceeded its broad authority under the applicable arbitration rules in awarding the remedies it deemed necessary to

make Petitioners whole for the years of misconduct Hernández and Terra/DTH have wrought. Finally, the 5PFA is a mutual, final, and definite award, not subject to set-off, and Hernández's attempt to undermine it with arguments about the 2PFA and 3PFA that the Second Circuit refused to consider when Terra/DTH raised them should also be rejected.

For these reasons, and those set forth in the Petition to Confirm and Petitioners' opposition to the Terra/DTH Petition (ECF 404, the "First Opposition"), the Hernández Petition should be denied and the 5PFA should be confirmed in its entirety.

## II.    **BACKGROUND**

While this Court is unquestionably familiar with the history of this dispute and Hernández's central role in it, the procedural history leading to the Tribunal's determination that Hernández is subject to its jurisdiction and jointly and severally liable to Petitioners for over $300 million, including $25 million in punitive damages, is summarized herein for the convenience of the Court.

Hernández was first named as a party to the Arbitration in 2021.  *See* ECF 257 ¶ 58. Although Hernández raised jurisdictional objections at that time, ***he took no action on them for years***, even as the Tribunal issued four prior partial final awards, all of which were *confirmed* by this Court, expressly identifying him as the owner and controller of Terra/DTH.  *See, e.g.*, ECF 124 at 3 n.6 ("DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernández . . . .") (confirming 1PFA); ECF 272-26 (2PFA) at 5 n.1 ("DTH is controlled by Jorge Hernández, who is the controlling person of Respondents Terra Towers Corp. and TBS Management S.A. (herein collectively 'Terra'), the majority shareholders of the Company."); ECF 272-27 (3PFA) at 3 ("Terra Towers Corp. and TBS Management, S.A. ('Terra'), each 100% owned and controlled by individual Respondent Jorge Hernández, are together the majority Shareholders

of the Company, . . . the operations are run by Respondent DT Holdings ('DTH') — 100% owned by Mr. Hernández . . . .").[2]

It was not until May 2024, mere weeks before the final evidentiary hearing in Phase 2 of the Arbitration was set to begin, that Hernández and the other Terra Directors filed their Petition to Stay the Arbitration in New York State Court, arguing that only a court and not the Tribunal could resolve their objections to the Tribunal's jurisdiction. *See generally Hernández v. Telecom Bus. Sol., LLC*, 2024 WL 3401092 (S.D.N.Y. July 12, 2024) (the "Stay Dismissal").[3]  On July 12, 2024, this Court dismissed Hernández and the Terra Directors' "last minute petition," holding that they "forfeited any right to a pre-award judicial challenge to their alleged obligation to arbitrate by waiting . . . years to seek a stay" and noting that their decision to wait to file the Petition to Stay "until the eve of a merits hearing on, among other things, the very issue they" were asking the Court to resolve, "strongly suggest[ed] gamesmanship."  *Id.* at *3.

Accordingly, the Court determined that Hernández and the Terra Directors had to "await the [T]ribunal's decision and then, if necessary, raise the issue in post-award judicial proceedings." *Id.*  Hernández was then given more than ample opportunity to raise jurisdictional defenses before the Tribunal.  Petitioners and Respondents (including Hernández, represented by the same counsel as here) submitted extensive briefing on the issue of whether Hernández and the other Terra Directors were subject to the Tribunal's jurisdiction—indeed the Tribunal specifically directed the parties to brief the issue.   *See* ECF 257 ¶156; 275-2 at 33-37, 275-22 at 24-26, 275-29 at 13-14, 276-17 at 21, 276-20 at 8-10, 276-21 at7-15, 276-22 at 3-5.  Notably, in none of these submissions

---

[2] Hernández negotiated and executed the governing documents on which the parties' dispute is based—the Shareholders Agreement and Development Agreement—on behalf of Terra and DTH.  *See* ECF 272-1 at 51; ECF 272-2 at 9.

[3] Inconsistent with this later jurisdictional position, at the start of the Arbitration and in Phase 2, Terra (controlled by Hernández) asserted claims against Peppertree's appointees to the Company's board of directors.  *See* ECF 272-7 at 85; ECF 272-20 at 102; ECF 272-47 at 175-76.

did Respondents dispute the determination that Hernández owns and controls Terra/DTH.  Nor could they.  Hernández had already testified to the exact opposite several times prior to Phase 2.  *See, e.g.*, ECF 245-3 ¶ 13 (Hernández testimony that he is "the ultimate decisionmaker for all of the DT[H] companies as needed," and that he has "never given up [his] right to staff and manage the DT[H] companies the way [he] believe[s] they should be managed.").[4]  He chose not to provide any testimony whatsoever in Phase 2.

On March 24, 2025, the Tribunal issued the 5PFA.  Like all of the Tribunal's prior awards, the 5PFA was meticulously written and unanimous.  Therein, the Tribunal, relying on well-settled law, including a precedent decided by Judge Kaplan, determined that it had jurisdiction over Hernández under the doctrine of direct benefits estoppel.  *See* ECF 276-41 at 97.  The Tribunal found that the other Terra Directors were not subject to its jurisdiction under direct benefits estoppel, and declined to decide whether Hernández could also be bound as the alter ego of Terra/DTH or to bind him under the intertwined claims theory of estoppel.  *See id.* at 98-99.  The Tribunal then proceeded to address, in 68 pages of thorough analysis, Petitioners' claims against Hernández for tortious interference with the Shareholders Agreement and for punitive damages.  *See id.* at 100-67.  The Tribunal determined that Hernández had committed tortious interference, and was liable to Petitioners for over $300 million, including $25 million in punitive damages.  *See id.* at 110, 163, 191.  The Hernández Petition does not make any arguments challenging the

---

[4] Hernández's claim that his participation in the Arbitration was "only in his official capacity as a director of the Company" (ECF 399 at 10) is neither relevant nor correct.  The Tribunal's determination that Hernández is subject to its jurisdiction under the doctrine of direct benefits estoppel has nothing to do with his participation in the Arbitration, and moreover, before he resigned as one of Terra's appointees to the Company's board of directors, Hernández testified in the Arbitration on behalf of DTH (*see, e.g.*, ECF 245-3), and in Phase 2, was subject to claims arising from actions he took after his resignation.  *See, e.g.*, ECF 276-41 at 108-09 (finding Respondents' prevention of the engagement of Citibank to run the sale of the Company in 2023 constituted malice as to Hernández).

Tribunal's determination that Hernández committed tortious interference and is liable for punitive damages.

On March 27, 2025, Petitioners filed the Petition to Confirm and promptly attempted to serve it on Hernández, first through his counsel in the Arbitration and in this action and then by leaving the Petition to Confirm with Hernández's son at the family's estate in Napa Valley. *See generally* ECF 381. Hernández attempted to avoid and ultimately moved to quash service, before this Court ordered he be served at his @terratowerscorp.com email address. *See id.* Service at that email address was effected on June 13, 2025. ECF 386. The Hernández Petition was then filed pursuant to the Court's order on June 27, 2025. ECF 399.

## III.    LAW AND ARGUMENT

### A.    There Is No Basis to Vacate the Tribunal's Determination that It Has Jurisdiction Over Hernández

#### 1.    The Tribunal's Determination is Entitled to the Same Deference as the Rest of the 5PFA

As this Court is well aware, and as laid out in greater detail in Peppertree/AMLQ's Petition to Confirm and First Opposition (*see* ECF 258 at 29-30, ECF 404 at 3-4), Courts afford great deference to an arbitration panel's award, and the award must be confirmed if there is a "***barely colorable*** justification for the outcome reached." *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (emphasis added); *see also Telecom Bus. Sol., LLC v. Terra Towers Corp.*, 2023 WL 257915, at *4 (S.D.N.Y. Jan. 18, 2023) (Kaplan, J.) (arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation"; an award should be confirmed so long as there is a "barely colorable justification" for the outcome reached, even if the Court "disagree[s] with it on the merits"). Indeed, judicial confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment

of the court." *Id*.  On the other hand, Hernández (like Terra/DTH) faces an extremely high burden to vacate the 5PFA.  The 5PFA provides far more than that "barely colorable justification for the outcome reached"; to the contrary, it is well-reasoned, thorough, and unanimous, and Hernández fails to show that any of the limited bases for vacatur exist here.

Tellingly, Hernández seeks to avoid his burden altogether.  He claims that the Tribunal's threshold determination that he was bound to arbitrate is somehow owed no deference by the Court, and accordingly, that the 5PFA should be vacated as to him so long as the Court reaches a different conclusion, thereby substituting its judgment for the unanimous decision of the Tribunal.  *See* ECF 399 at 13-24.  But this argument flies in the face of this Court's determination in the Stay Dismissal that because Hernández and the other Terra Directors had "forfeited any right to a pre-award judicial challenge to their alleged obligation to arbitrate," they had to "*await the [T]ribunal's decision* and then, if necessary, raise the issue in *post-award* judicial proceedings."  Stay Dismissal at *3 (emphasis added).  Given the Court's ruling requiring the parties to litigate this issue before the Tribunal, proceed with the Arbitration, and have the Tribunal decide the issue and the merits of the claims against Hernández and the other Terra Directors in a final award, it would make no sense for the Court to then disregard that determination completely and start from scratch in deciding this issue itself, as Hernández now suggests.  His self-serving gloss on the Court's decision defies not only logic and federal law, but also the "strong public policy in favor," and binding nature, of arbitration.  *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).

Indeed, where non-signatories have failed to make a timely judicial challenge to arbitral jurisdiction and their objections were therefore properly decided by arbitrators in the first instance, those determinations have received the same deference as any other arbitration award.  *See, e.g.*,

*Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*, 2002 WL 31106409, at *3 (S.D.N.Y. Sept. 20, 2002) (non-signatory bound to arbitrate as alter ego was "wrong in claiming that the standard of review on that issue is *de novo*" where issue was "put to the arbitrator" after non-signatory had failed to timely seek a judicial stay).[5] The Tribunal's findings here—which, notably, rejected Petitioners' arguments that the other Terra Directors were subject to the Tribunal's jurisdiction (a detail Hernández tellingly omits)—deserve the same deference.

> **2.    *Hernández's New Argument that He Does Not Own or Control Terra/DTH Was Never Raised to the Tribunal and Is Contradicted by Factual Findings Repeatedly Confirmed by This Court***

Hernández next attacks the Tribunal's determination that it had jurisdiction over him by arguing that its conclusion he was bound to arbitrate under the doctrine of direct benefits estoppel is "based on its assumption . . . without any supporting evidence" that "Hernández is the sole owner, controller, and beneficiary of Terra and DTH . . . ."  ECF 399 at 13; *see also id.* at 16-21.[6] But as an initial matter, this argument was not presented to the Tribunal during the Arbitration and is, therefore, not part of the underlying record.  *See generally* ECF 275-2, 275-29, 276-20, 276-22. Accordingly, Hernández has waived his new contention that he does not own or control Terra/DTH, and it cannot provide a basis for vacating the 5PFA.[7]

---

[5] Of course, the authorities Hernández cites in support of this argument—decisions on motions to compel arbitration or reviewing awards involving non-signatories that were made without prior court involvement—are inapposite, as none dealt with a situation where, as here, a court reviewed an arbitrator's determination as to its own jurisdiction made after the court decided that the arbitrator would decide the jurisdictional issue in the first place.

[6] *But see Nicholls v. Brookdale U. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) ("[I]t is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-settled that a federal court may not conduct a reassessment of the evidentiary record.").

[7] It is well-settled that if a party fails to raise arguments in the underlying arbitration, those arguments are waived and cannot be used later as a basis to vacate (or oppose enforcement of) an arbitration award.  *Ashraf & Republic New York Sec. Corp.*, 14 F. Supp. 2d 461, 467 (S.D.N.Y. 1998) (merchant's failure to invoke provisions of the NFA Code to raise issues before the arbitrator *was fatal to argument for vacatur because "a party may not 'wait in ambush' to make claims before the court that could have been raised before the arbitration panel*.") (emphasis added) (internal quotation omitted); *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 540 (2d Cir. 2016) ("[A] party cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from

To be sure, and as set forth in Section II, *supra*, Hernández briefed his jurisdictional challenges in the underlying Arbitration in both pre- and post-hearing briefing. *See* ECF 275-2 at 1 ("Hernández . . . together with Terra and DTH . . . submit this Pre-Hearing Memorial . . . ."), 38-42; 275-29 at 19-20, 30; 276-20 at 9-11; 276-22 at 4-6.   Therein, Hernández **never** argued that he does not own or control Terra/DTH—even though (i) this Court expressly determined that whether the Tribunal had jurisdiction over Hernández would be decided in the Arbitration, (ii) the Tribunal raised, and the parties briefed, the theory of direct benefits estoppel, and (iii) Hernández knew of the Tribunal's multiple prior findings that he owned and controlled Terra/DTH.   Now, Hernández bases his jurisdictional arguments on purported facts set forth in a new declaration he filed with this Court. *See* ECF 403-1 (the "Declaration").   But Hernández never filed a similar declaration or witness statement with the Tribunal. *See generally* ECF 275-2 at 38-42 and 7-8 (identifying witness statements presented); 275-29 at 19-20, 30 and 11 (identifying witness statements presented); 276-20 at 9-11; 276-22 at 4-6.   Indeed, he did not testify in Phase 2 of the Arbitration at all and, thus, failed to present these purported facts to the Tribunal.[8]

The Court should not permit Hernández to circumvent the Tribunal's decision by relying on testimony outside of the record that he purposefully did not provide for the Tribunal's consideration.   Such continued gamesmanship should not be rewarded.   Accordingly, all of the

---

the first." (quotation marks omitted)).   The reviewing court's role is not to reassess the evidentiary record that was before the Tribunal. *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).   Rather, it is to review "the merits of the arbitral decision **based on the record before the arbitrator** under a narrow standard of review . . . ." *JCI Commc'ns, Inc. v. Int'l Bhd. Of Elec. Workers, Loc. 103*, 324 F.3d 42, 50 (1st Cir. 2003) (emphasis added); *see also Batesville Casket Co., Inc. v. United Steelworkers of America*, 2007 WL 4289983, at *1 (E.D.Tenn. Dec. 5, 2007) (e-mail correspondence not before the arbitrator could not be considered by the court when determining whether to vacate the award).   Consequently, failure of the moving party to offer a complete record is sufficient to require rejection of a party's arguments challenging an arbitration award. *Commonwealth Assocs. v. Letsos*, 40 F. Supp. 2d 170, 175 (S.D.N.Y. 1999) (Kaplan, J.).

[8] Moreover, Hernández can make no argument that any of the purported facts in the Declaration are "new," such that he could not have presented them to the Tribunal in mid-2024 with his jurisdictional briefing. *See, e.g.*, ECF 403-1 ¶¶ 12-18 (describing purported events occurring from 2007 to 2018), ¶¶ 19-24 (describing purported events occurring from 2015 to 2023), ¶¶ 25-28 (describing purported events occurring in 2018 and 2023).

arguments in the Hernández Petition based on his newfound contentions that he does not own or control Terra/DTH should be rejected as waived, and the Court should not consider the Declaration, which was not in the record before the Tribunal.

In any event, yet again, Hernández's new argument that he does not own or control Terra/DTH defies prior decisions of this Court, including those confirming the multiple awards determining that Hernández owns and controls Terra/DTH.[9]   And as Petitioners recently demonstrated, the Tribunal's and Court's prior findings regarding Hernández's ownership and control of Terra/DTH should be upheld, and his belated, self-serving, and unsupported denials (such as that Terra/DTH are owned and controlled by "elders" in his family he and Terra/DTH refuse to identify, but not by Hernandez himself) are simply not credible.  *See* ECF 400 at 2-4; *see also* ECF 272-1 (Shareholders Agreement) § 5.01(d) (providing that "Hernández may transfer **his shares** in the Initial A Shareholders" *i.e.*, Terra) (emphasis added).

### 3.    *The Tribunal Correctly Applied the Doctrine of Direct Benefits Estoppel*

In the face of this record, Hernández resorts to the legal cliché "if the facts are bad, argue the law," flooding the Court with inapposite and distinguishable cases in an attempt to paper over the Tribunal's and the Court's determinations and underlying evidence.  *See* ECF 399 at 16-21. But the Hernández Petition completely ignores the primary authority relied on by the Tribunal (*see* ECF 276-41 at 98) in finding he is bound to arbitrate under the doctrine of direct benefits estoppel.

---

[9] *See, e.g.*, ECF 124 at 3 n.6 ("DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernández . . . .") (confirming 1PFA); ECF 272-26 (2PFA) at 5 ("DTH is controlled by Jorge Hernández, who is the controlling person of Respondents Terra Towers Corp. and TBS Management S.A. (herein collectively 'Terra'), the majority shareholders of the Company."); ECF 272-27 (3PFA) at 3 ("Terra Towers Corp. and TBS Management, S.A. ('Terra'), each 100% owned and controlled by individual Respondent Jorge Hernández, are together the majority Shareholders of the Company, . . . the operations are run by Respondent DT Holdings ('DTH') — 100% owned by Mr. Hernández . . . ."); ECF 381 at 2 ("Terra and DTH are controlled by . . . Jorge Hernández.") (authorizing service on Hernández via email).

That authority is **this Court's decision** in *Hartford Fire Ins. Co. v. The Evergreen Org., Inc.*, 410 F. Supp. 2d 180 (S.D.N.Y. 2006).[10]

*Hartford* is precisely on point. There, this Court held that non-signatories directly benefitted from an agreement, and thus were bound to arbitrate under direct benefits estoppel, by diverting funds from the signatory entity they controlled "that were in [the signatory]'s hands only by virtue of the agreement." *Id.* at 187. So too here, as, among other things, the Tribunal determined that Hernández has "sole control over how [the $480,000 DTH receives each month from the Company under the SG&A Agreement] is spent," including use of those funds to compensate the DTH employees/agents who manage the Company's local subsidiaries, and who have acted to undermine Petitioners' interests and the Tribunal's awards at every turn. ECF 276-41 at 97; *cf. id.* at 98-99 (determining the other Terra Directors were not bound as *indirect* beneficiaries of the Shareholders Agreement).

Accordingly, it is beyond question that direct benefits estoppel may be applied in circumstances like those here to bind a non-signatory like Hernández to arbitration. *See also WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 401 (S.D.N.Y. 2018) (non-signatory individual directly benefitted from agreement through which tennis tournament was owned by company he wholly owned, where it was "understood" that he was "the real party in interest and the true owner

---

[10] *Hartford* also supports finding Hernández is subject to the Tribunal's jurisdiction under the "intertwined claims" theory of estoppel because this Court found that there, as here, the non-signatories did not "deny the obvious fact that the issues that [the party seeking to compel arbitration wa]s seeking to resolve in the arbitration [we]re intertwined with the agreement that [the entity controlled by the non-signatories] signed." 410 F. Supp. 2d at 187. The Hernández Petition fails to address this branch of estoppel, but does argue that Hernández is not subject to the Tribunal's jurisdiction as Terra/DTH's alter ego, even though the Tribunal did not reach that issue in the 5PFA. *Cf.* ECF 399 at 21-24; ECF 276-41 at 98. While the Court need not consider bases for binding Hernández that the Tribunal itself did not reach in the 5PFA, to the extent the Court does address the Tribunal's jurisdiction over Hernández *de novo*, as he urges (*id.* at 14), the Court can find he is also bound to arbitrate under the "intertwined claims" and alter ego doctrines. *See Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, 2002 WL 31885795, at *11 (S.D.N.Y. Dec. 27, 2002) (non-signatory compelled to arbitrate under alter-ego theory where it had engaged in "intercompany transfers . . . designed to drain money" from the signatories).

of" tournament and he "represented himself to the press as owning the" tournament); *McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, 2015 WL 144190, at *12 (S.D.N.Y. Jan. 12, 2015) (benefit was direct where signatory used proceeds derived from agreement to transfer funds to corporation controlled by non-signatory); *Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 274 (S.D.N.Y. 2011) (licensee estopped from avoiding arbitration under purchase agreement to which it was not a party where purchase agreement "explicitly contemplate[d] the license of the relevant trademarks to [affiliate of the non-signatory], and the License Agreement explicitly reference[d] the Purchase Agreement in its recitals"); *HD Brous & Co. v. Mrzyglocki*, 2004 WL 376555, at *7 (S.D.N.Y. Feb. 26, 2004) (non-signatory compelled to arbitrate where agreement "intentionally benefit[ted them] by establishing the terms of its business relationship with" signatory).[11]

 In all events, as the Second Circuit instructs and as Hernández acknowledges, "whether nonsignatories to an arbitration agreement may . . . be bound by the agreement[] 'is often fact specific and differs with the circumstances of each case.'" ECF 399 at 14 (quoting *Trina Solar*

---

[11] Hernández's invocation of the Shareholders Agreement's "no third party beneficiaries" clause is of no moment. *See* ECF 399 at 17-18. *First*, that clause was not dispositive of the estoppel issue in either of the cases Hernández cites in support of this argument. *Second*, such provisions have a different purpose: they are designed to avoid a non-party to an agreement claiming to have contractual rights under the agreement. *See India.com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) ("Under New York law, the effectiveness of a negating clause to preclude third-party beneficiary status is well-established: where a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, that provision is decisive."). Accordingly, "the bases for estoppel are examined independently of whether the contractual language excludes the nonsignatory as a party." *Vitol, Inc. v. Copape Produtos de Petroleo Ltda.*, 2024 WL 1216660, at *11 (S.D.N.Y. Mar. 21, 2024); *see also McKenna Long & Aldridge*, 2015 WL 144190 at *9-12 (separately analyzing direct benefits and third party beneficiary theories to bind nonsignatories); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 199 (S.D. Tex. 2008) ("Under third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed. Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed." (citation omitted)).

*US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020)).[12]  As such, the distinguishable and inapposite cases cited in the Hernández Petition are especially unpersuasive.[13]

For all these reasons, the Tribunal's exercise of jurisdiction over Hernández under the doctrine of direct benefits estoppel and this Court's decision in *Hartford* were proper and do not provide a basis to vacate the 5PFA.

---

[12] In *Trina*, the court held that the non-signatory principal of the buyer in a purchase agreement for solar panels could not be bound under agency or direct benefits estoppel theories because "there [wa]s no record evidence that [the non-signatory] ever invoked the Contract to demand delivery of the solar panels" and the agreement identified another third party, not the buyer's principal, as the buyer's guarantor.  954 F.3d at 571-72.  In contrast here, the Tribunal found that Hernández "personally secured" and "directly obtained" the benefits of the Company's governing documents by appointing Terra's representatives on the Company's board, deciding how to distribute Terra's proceeds from a sale of the Company and the money DTH receives from the Company, and exercising influence over the DTH employees managing the Company's operations.  ECF 276-41 at 97.

[13] *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68-69 (2d Cir. 2021) (non-signatory's being able to discharge obligations not a sufficiently "tangible and direct" benefit for estoppel); *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001) (non-signatories did not "knowingly exploit" agreement by "successfully compet[ing] against and acquir[ing] business from" signatories); *CollegeStreet Import and Export (Tianjin) Co. Ltd. v. TL x HF LLC*, 2025 WL 979756, *8 (S.D.N.Y. Apr. 2, 2025) (non-signatory not required to arbitrate its claims against signatory where claims arose from separate transaction); *Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 352 (S.D.N.Y. 2018) (non-signatories not required to arbitrate claims against signatory where benefits were indirect as they only had limited interest in signatory company that directly benefitted); *Rafferty v. Xinhua Finance Ltd.*, 2011 WL 335312, at *8 (S.D.N.Y. Jan. 31, 2011) ("Nowhere in his brief does Rafferty mention or discuss theories of . . . estoppel."); *Med-IM Dev. Inc. v. General Elec. Cap. Corp.*, 2008 WL 901489, at *4 (S.D.N.Y. Mar. 31, 2008) (non-signatory to purchase agreement containing arbitration provision that provided financing to buyer under separate financing agreement without arbitration provision did not directly benefit from purchase agreement); *Veera v. Janssen*, 2005 WL 1606054, at *4 (S.D.N.Y. July 5, 2005) (signatories' non-signatory agents did not directly benefit from limitation of liability clause in agreement); *Schaad v. Susquehanna Cap. Grp.*, 2004 WL 1794481, at *5 (S.D.N.Y. Aug. 10, 2004) ("[Signatory]'s 'list of 'ten ways' [non-signatories directly benefitted from agreement] is not, in fact, a list of benefits at all, but rather a series of factual allegations demonstrating the close relationship between [non-signatory] and its [signatory] corporate affiliates."); *Arhontisa Maritime Ltd. v. Twinbrook Corp.*, 2001 WL 1142136, at *4 (S.D.N.Y. Sept. 27, 2001) (non-signatory did not receive direct benefit from agreement providing he receive funds in personal account on behalf of principal where there was no evidence he retained funds); *Green v. XPO Last Mile, Inc.*, 504 F. Supp. 3d 60, 68 (D. Conn. 2020) (non-signatories not required to arbitrate their claims against signatory where benefits came not from terms of agreements but from general business dealings with signatory); *Certain Underwriters at Lloyd's, London v. Allied Pros. Ins.*, 2023 WL 4449570, at *5 & n.4 (W.D.N.Y. July 11, 2023) (non-signatory association of insurance underwriters not required to arbitrate its claims for reimbursement against signatory policy issuer where non-signatory's "right to reimbursement d[id] not flow directly from the [insurance p]olicy, but rather from principles of equity"; *Belzberg v. Verus Investments Holdings, Inc.*, 21 N.Y.3d 626, 633 (2013) (non-signatory not required to arbitrate its claims against signatory where benefits stemmed from relationship with non-signatory third party); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003) (rejecting argument that direct benefits estoppel could be applied where application of intertwined claims estoppel was reversed and there was no finding of knowing exploitation); *Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1280 (D. Utah 2018) (applying Utah law); *Bilyeu v. Johanson Berenson LLP*, 809 F. Supp. 2d 547, 561 (W.D. La. 2011) (non-signatories not required to arbitrate their claims against signatory where claims did not arise under agreement containing arbitration provision).

**B.    Hernández's Remaining Arguments Have All Been Made by Terra/DTH and Are Meritless**

The remainder of the Hernández Petition simply parrots arguments that Terra/DTH has made, either in the Terra/DTH Petition or elsewhere. *Compare* ECF 319 (Terra/DTH Pet.) at 11-31 *with* ECF 399 (Hernández Pet.) at 24-28. But Hernández's conspicuous failure to acknowledge that these are the same arguments does not make them any better. As when Terra/DTH made them, none warrant vacatur.

**1.    *Hernández's Repackaged Arguments from the Terra/DTH Petition Should be Rejected***

First, just as Terra/DTH did in the Terra/DTH Petition, Hernández contends that "the Tribunal should decline to enforce the award because Petitioners lacked the capacity to sue Mr. Hernández derivatively on behalf of the Company." ECF 399 at 24-25; *see also* ECF 319 at 23-25.[14] He argues that the relief the Tribunal awarded on Petitioners' derivative claims should not be enforced pursuant to Articles V(1)(a) of the New York Convention because they did not obtain leave from a BVI court prior to asserting these claims in the Arbitration. *Id.* at 29. This argument fails for the very same reasons set forth in Petitioners' First Opposition—namely, that Hernández waived this argument by failing to raise it in the Arbitration, and now fails to support it. *See* ECF 404 at 19-28.[15]

Next, Hernández argues that the Tribunal "exceeded its authority," contending, just as Terra/DTH did, that "Petitioners sought to ***exchange their shares*** in the Company for a payment

---

[14] Petitioners assume Hernández is requesting that this Court, and not the Tribunal, should decline to enforce the 5PFA.

[15] The only case Hernández cites—*Basch v. Talley Indus., Inc.*, 53 F.R.D. 9 (S.D.N.Y. 1971) from over 50 years ago—is inapposite. In *Basch*, which was in the context of a motion to dismiss in litigation and not confirmation of an arbitration award, the court did no more than define "capacity to sue" generally. 53 F.R.D. at 11. The court did not mention Article V(1)(a) of the New York Convention, let alone interpret the meaning of "incapacity" therein. *See generally id.* And it certainly did not decline to enforce an arbitration award based on an argument that "incapacity," as used in Article V(1)(a), may be applied to preclude a party's derivative claims based on the purported requirements of a foreign statute. *See generally id.*

15

equal to the funds that they would have received from the contemplated sale to Torrecom in 2021" and sought "money in exchange for shares at the time of the alleged breach." ECF 399 at 31 (emphasis added); *see also* ECF 319 at 12-14. As when Terra/DTH made it, this argument fails because Hernández misstates the record and wholly misrepresents Petitioners' claims and requested relief with respect to the sale of the Company. *See* ECF 404 at 12-19. Far from exceeding its authority, the Tribunal awarded the sale damages Petitioners sought on the three separate sale claims that Petitioners both alleged and briefed. *See id.*

Hernández then claims that the Tribunal exceeded its authority because in binding him to the 3PFA, it awarded relief that Petitioners did not explicitly request. ECF 399 at 31 (citing ECF 276-41 ¶ 170 n.46 ("we determine today that [Hernández] is an obligor of the relief issued against Respondents in PFA-3")). But this argument is just a repackaging of Terra/DTH's legally flawed argument that the 5PFA should be vacated because it grants relief Petitioners did not specifically request. *See* ECF 319 at 14-17. There is no question that the issue of Hernández's liability for the foreign arbitrations (which are the subject of the 3PFA) was squarely presented to the Tribunal in Petitioners' Phase 2 Consolidated and Amended Statement of Claims. Specifically, Petitioners pled a claim for tortious interference with the Shareholders Agreement against Hernández on the basis that he obstructed the sale of the Company and deprived Petitioners of their right to arbitrate by causing the improper foreign arbitrations to be initiated and litigated. ECF 320-1 ¶¶ 181-93 (expressly alleging that "Respondents," defined to include Hernanez, initiated and litigated improper and duplicative foreign arbitrations both to attack the Arbitration and to obstruct the required sale of the Company), 488 (expressly alleging that Hernández "obstruct[ed] the required sale of the Company" and "deprive[d] Claimants of the right to arbitration pursuant to the arbitration provision" of the Shareholders Agreement); *see also id.* 484-93. The Tribunal sustained

this claim.  ECF 276-41 ¶¶ 182-83, 272-73.  Thus, Hernández's argument fails for the same reason as Terra/DTH's: in the 5PFA, the Tribunal exercised its broad authority under the governing AAA Rules to properly fashion and award "just and equitable" relief on the issues presented to it.  *See* ECF 404 at 19-24.

So too with Hernández's claim that he was not afforded "notice" or an "opportunity to be heard" with regard to the relief binding him to the 3PFA.  ECF 399 at 31; *see also* ECF 319 and 25-31.[16]  The Arbitration record demonstrates that the Phase 2 proceedings were fundamentally fair and that Respondents, including Hernández, had every opportunity to present their case.  *See* ECF 404 at 28-30.  Because Petitioners pled a tortious interference claim against Hernández in October 2023 based on his wrongful conduct in initiating and refusing to terminate the foreign arbitrations that were the subject of the 3PFA, Hernández had ample notice of this issue and his potential liability.  And he fully participated in the robust Phase 2 proceedings.  *See* § II, *supra*.[17]

Finally, Hernández claims that the award is not final and should be vacated because "[t]he Tribunal ordered certain funds in escrow pending the further sale of the Company, subject to which

---

[16] In doing so, he conflates two different bases for vacatur and/or nonenforcement of an arbitration award.  While he frames his argument as one based on the Tribunal exceeding its authority, he then appears to transition to an argument based on his purported inability to "present his case" pursuant to Article V(1)(b) of the New York Convention.  But to meet his burden, Hernandez must show that his "***right to be heard has been grossly and totally blocked***." *245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, 2022 WL 2916578, at *4 (S.D.N.Y. Jul. 25, 2022) (internal quotations omitted) (emphasis added) (analyzing grounds for refusal to enforce and vacatur under FAA § 10(a)(3) and Article V(1)(b) together).

[17] The two cases Hernández cites fail to support his argument.  In fact, *Pagaduan v. Carnival Corp.*, 830 Fed. App'x 61 (2d Cir. 2020) supports confirmation of the 5PFA.  There, the Court found that appellant provided no basis for nonenforcement of an arbitration award under Article V(1)(b) of the New York Convention where he "submitted multiple lengthy briefs" but "chose to focus his arguments almost entirely on whether the Arbiter had jurisdiction over the case." *Id*. at 62.  That is precisely what Hernández did in the Arbitration, where he failed to make any specific arguments that he was not liable for his tortious interference with the Shareholders Agreement by causing the foreign arbitrations to be initiated and litigated.  Hernández contends that *In re Marine Pollution Serv., Inc.*, 857 F.2d 91 (2d Cir. 1988) stands for the proposition that arbitrators "cannot depart from the parties' submission—and the relief requested—in favor of their own brand of industrial justice." ECF 399 at 31.  However, in that case, the Court refused to enforce an arbitration award not because it granted relief not requested by the parties (an issue it did not even address), but because the arbitrator completely ignored a relevant and governing contract in favor of his own resolution of the case.  *In re Marine Pollution Serv., Inc.*, 857 F.2d at 95-96.  That certainly did not occur here, and Hernández fails even to contend that the Tribunal ignored any governing contractual provision.

there may be future claims for damages or setoff," and, as a result, "[t]he Court cannot reduce the 5PFA to a definite sum in any judgment because the amount is not final."  ECF 399 at 32.  This argument fails for the same reasons set forth in the First Opposition (where Petitioners responded to the very same argument made by Terra/DTH), including that the Tribunal never found that the 5PFA is subject to any abatement or set-off.  *See* ECF 404 at 12-15.

### 2. *Hernández's Arguments that Terra/DTH Made in the Second Circuit Should be Rejected*

Hernández next claims that the 5PFA is not a final award, subject to confirmation, because it holds him jointly and severally liable for the 2PFA and 3PFA, which he also contends are not final.  ECF 399 at 32-33.  In making this argument, Hernández attempts to use a footnote in the 5PFA to reopen argument on the long-since confirmed and affirmed 2PFA and 3PFA.  But Hernández's argument, while absent from the Terra/DTH Petition, was made by Terra/DTH before the Second Circuit when they sought to reverse this Court's decisions confirming those awards. The Second Circuit rejected Terra/DTH's argument as waived, and the result should be the same here.  And even if the Court were to address the merits of this argument, it fails.  The Court should not countenance such continued gamesmanship designed to undo years of Arbitration.

As an initial matter, Hernández has been a party to, and represented by counsel in, the Arbitration since 2021.[18]  Despite his recent, self-serving, and not credible contentions to the contrary, both the Tribunal and this Court have repeatedly found that he controls Terra/DTH, based on, *inter alia*, **his own sworn testimony** in the Arbitration.  *See* ECF 400 at 2-4.  As a result, he has been on notice of—and, in fact, has participated in—the proceedings leading to issuance of the 2PFA and 3PFA.  Indeed, the Tribunal found that both the 2PFA and 3PFA are a direct result

---

[18] Indeed, he has been represented by the same counsel as Terra/DTH in the Arbitration since 2022, just as he is represented by the same counsel as Terra/DTH in the current litigation before this Court.

of ***his misconduct***.[19]   Yet Hernández never previously objected to the finality of these awards.

Likewise, Terra/DTH, whom Hernández controls, never previously objected to their finality in

confirmation briefing before this Court.   Accordingly, Hernández has long since waived any

objections to the 2PFA and 3PFA.   *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S.

662, 670 n.2 (2010); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 56 n.4 (2010).

     Importantly, in their brief to the Second Circuit appealing this Court's confirmation of the

2PFA and 3PFA, Terra/DTH argued, for the first time, that those awards were not final.   *See* Ex. 1

at 9-16.[20]   They lost.   As the Second Circuit correctly found, Terra/DTH forfeited those arguments

by failing to raise them with this Court.   Ex. 3 at 3-4.   Hernández's current scheme is transparent.

He is attempting to use the 5PFA to obtain a second bite at the apple and resurrect Terra/DTH's

waived finality arguments in yet another attempt to avoid the rulings of both the Tribunal and this

Court.

     Even assuming, *arguendo*, Hernández were permitted to relitigate the confirmation of the

now affirmed 2PFA and 3PFA (which he should not be), he presents no legally cognizable

arguments demonstrating that either award is not final or not ripe for confirmation.   With respect

to the 2PFA, he states only (and without citations) that "it was not the product of a request for a

final award, and resulted from the tribunal improperly creating jurisdiction where non existed,"

---

[19] *See, e.g.*, ECF 272-26 ¶¶ 8 (finding the controversy leading to the 2PFA "had its starting point" "during a sequence of interactions" between Company management and Hernández), 8 n.1, 17 (addressing the Tribunal's request for Hernández's testimony), 23 n.4, 29 (explaining "the position advanced by Mr. Joseph as counsel to DTH and Mr. Hernández"), 40(7), 44, 44 n.15 , 46, 49, 55, 58-59, 63-65, 68, 70-71, 77, 78(1)-(2) (explaining Hernández's significant misconduct), 79-80, and 88 (explaining Hernández was a source of "deliberate falsehoods" relating to allegations of criminality against the Company's CEO); ECF 272-27 ¶¶ 2 n.4, 3, 5 (finding the foreign arbitrations "are a product of collusion between Mr. Hernández . . . and the Company Subsidiary Managers as his and the other Respondents' agents"), 7, 41, 49, 55-59, 62, 68, 70-78, 116 ("Our finding that Mr. Hernández has supported the Foreign Arbitrations…compels the conclusion that Mr. Hernández breached the implied covenant of good faith and fair dealing, and that this breach is attributable to the other Respondents, who are under his control."); ECF 276-41 ¶¶ 180-82 (confirming the "final determination[s]" in 2PFA that Hernández "wrongfully ousted" the Company CEO and COO and improperly brought criminal proceedings against them).

[20] "Ex. __" refers to exhibits attached to the Declaration of Gregg L. Weiner, filed herewith.

and that it "called on this Court to review the impartiality of the tribunal before the conclusion of the arbitration . . . ." ECF 399 at 32. But he fails to explain or support these statements in any way, let alone demonstrate how they provide any basis to vacate (or not enforce) the 2PFA. And the statement that the 2PFA somehow "called on this Court to review the impartiality of the tribunal" is nonsensical. In their petition to vacate the 2PFA, Terra/DTH claimed partiality of the Tribunal, putting the issue before this Court. Hernández's argument suggests that any partial final award could be rendered non-final simply because the losing party raises a partiality argument in support of vacatur. There is no legal support for such a proposition, and, not surprisingly, Hernández offers none, following the complete rejection of Terra/DTH's prior, unfounded claims of partiality.

The 2PFA was indeed a final award and ripe for confirmation, as the Second Circuit has now affirmed. Specifically, the 2PFA is constitutionally ripe for review under the two-pronged inquiry that the U.S. Supreme Court reiterated in *Stolt-Nielson* because (i) the issues in the 2PFA were fit for judicial decision since the 2PFA finally and conclusively resolved discrete issues submitted to the Tribunal in Petitioners' motion for sanctions, and (ii) the hardship of withholding court consideration was clear Ex. 2 at 55-63 (citing *Stolt-Nielsen*, 559 U.S. at 670 n.2). The 2PFA finally and definitely disposed of a separate and independent dispute between the parties regarding the status of Company management—an issue first addressed by the Tribunal in earlier interim orders—and it makes clear that the Tribunal intended for it to be final. *See id.* at 57-59.

With respect to the 3PFA, Hernández contends only:

3PFA did not resolve a claim, creates an escrow account valued at USD 41,416,371.17 without providing the basis for calculating the number or allowing for modification of the amount if the damages claims in the foreign arbitrations were dismissed. 3PFA creates an injunction but puts compliance in the hands of Petitioners, making it functionally impossible for Mr. Hernández to ever comply.

ECF 399 at 33. These two sentences are the entirety of his "argument," for which he once again fails to provide any factual or legal support, including no support for the contention that any of these purported facts renders the 3PFA non-final or provides a basis to vacate. To be sure, this argument is incorrect: (i) the specific terms of the 3PFA prescribe the amount to be deposited in escrow and need only be applied mechanically; in that regard, it is no different from an award providing for interest accruing from the date of the award; and (ii) the 3PFA provides explicit notice of the conduct that is required for compliance—causing termination of the foreign arbitrations and preventing the commencement of new ones—which is routinely granted by arbitrators and confirmed by courts to prevent collateral litigation that interferes with arbitration. Ex. 2 at 90-93.

The 5PFA, just like the 2PFA and 3PFA that preceded it, is a mutual, final, and definite award, and should be confirmed. There is far more than a "barely colorable justification" to support it. Hernández, who has been on notice of the 2PFA and 3PFA *for years*, should not be permitted to use a footnote in the 5PFA as an excuse to relitigate the 2PFA and 3PFA, which have been final judgments of this Court for well over a year and have now been confirmed by the Second Circuit.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, as well as those in the Petition to Confirm and the First Opposition, Petitioners respectfully request that the Court grant the Petition to Confirm as soon as possible and in its entirety under both the FAA and the New York Convention, and deny the Hernández Petition.

Dated:  July 17, 2025

By:  */s/ Michael N. Ungar*
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

Respectfully submitted,

By:  */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on July 17, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

*/s/ Gregg L. Weiner*_____
*Counsel for AMLQ Holdings (Cay), Ltd.*
