UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                    Petitioners,

        -against-                                  22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

                    Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OPINION

Appearances:

    Gregg L. Weiner
    Ethan Fitzgerald
    Daniel V. Ward
    Katherine M. McDonald
    ROPES & GRAY LLP

    David A. Landman
    Michael N. Ungar
    Katherine M. Poldneff
    Gregory C. Djordjevic
    ULMER & BERNE LLP

*Attorneys for Petitioners*

    Rodney Quinn Smith, II
    GST LLP

    Lucila I.M. Hemmingsen
    THE FLATGATE FIRM PC

*Attorneys for Respondents and Non-Party Jorge Hernandez*

    James S. O'Brien Jr.
    Aliette D. Rodz
    Eduardo de la Peña Bernal
    Martha M. Ferral
    SHUTTS & BOWEN LLP

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/21/25

*Attorneys for Non-Parties Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez*

LEWIS A. KAPLAN, *District Judge.*

In its Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies ("April 22 Opinion"), the Court issued coercive civil contempt sanctions against Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), and DT Holdings, Inc. ("DTH," and together with Terra, "Respondents") arising from their non-compliance with two of this Court's judgments confirming arbitral awards.[1] The Court issued sanctions also against non-parties who were aiding and abetting Respondents' non-compliance, including non-party Jorge Hernandez, who controls Terra and DTH.[2]

On June 13, 2025, the Court vacated the contempt sanctions imposed upon Hernandez personally because he had not been served effectively with the motion seeking to impose those sanctions (the "Contempt Motion").[3] The Court authorized service of the Contempt Motion on Hernandez via email and afforded Hernandez an opportunity to file any opposition. Following service and the filing of Hernandez's opposition, the Court now addresses the Contempt Motion as it relates to Hernandez.

---

[1] Dkt 295.

[2] *Id.*

[3] Dkt 381.

3

*Facts*

The Court assumes familiarity with the underlying facts and procedural history. In sum, Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") and Terra in 2015 entered into a shareholders agreement ("SHA") whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"), the business of which is the development and operation of telecommunications towers in Central and South America.[4] Hernandez signed the SHA signed on behalf of Terra and the Company.[5]

Petitioners commenced the arbitration underlying this action (the "Arbitration") on February 2, 2021. They alleged, *inter alia*, that Terra had breached the SHA by obstructing the proposed sale of the Company, which they contended was required pursuant to the SHA. On February 24, 2022, the Tribunal issued its unanimous first partial final award ("FPFA"), which ordered a sale of the Company. The FPFA was confirmed by this Court on January 18, 2023,[6] and the Second Circuit later affirmed the confirmation of the FPFA.[7]

The Tribunal has issued four additional partial final awards. This Court has confirmed the Tribunal's second, third, and fourth partial final awards (the "SPFA," "TPFA," and "4thPFA" respectively),[8] and the Second Circuit has affirmed those confirmations.[9] Among other

---

[4] Dkt 9-22 ("FPFA") at ¶ 1.

[5] Dkt 245-1 at 53.

[6] *See* Dkts 124; 125.

[7] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *1 (2d Cir. Feb. 6, 2024) (summary order).

4

relief, those awards ordered Respondents to terminate foreign proceedings that Respondents and others had brought to undermine the Arbitration and to prevent new ones.[10] The petition to confirm the fifth partial final award ("5thPFA")[11] remains pending.

Respondents in substantial part have not complied with the Tribunal's awards or with this Court's judgments confirming them.[12] Consequently, on March 18, 2025, Petitioners filed the Contempt Motion, which sought to enjoin and sanction Respondents and non-parties affiliated with them, including Hernandez.[13]

The April 22 Opinion granted in part the relief sought by Petitioners. The Court enjoined Respondents, their agents, and persons in active concert or participation with them — including Hernandez — from prosecuting, litigating, participating in, or taking any action to obtain or enforce relief that had been granted in foreign actions in El Salvador (the "El Salvador Action") and the British Virgin Islands (the "Peru-Related BVI Action" and the "El Salvador-Related BVI Action," collectively the "BVI Actions").[14] The Court further held that Hernandez was in civil

---

[8] Dkts 207; 208 (confirming second partial final award); Dkts 182; 183 (confirming third partial final award); Dkts 202; 203 (confirming fourth partial final award).

[9] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-7312, 2025 WL 1177768 (2d Cir. Apr. 23, 2025).

[10] Dkt 133-47 at ¶ 127.

[11] Dkt 262-41 ("5thPFA"); Dkt 257 (petition to confirm the 5thPFA).

[12] *See* Dkt 295 at 2, 29–38.

[13] Dkt 243.

[14] Dkt 295 at 44–45.

5

contempt of this Court's orders because (1) he aided and abetted Terra's non-compliance with this Court's judgments confirming the FPFA ("Judgment No. 1") and TPFA ("Judgment No. 2"), and (2) he is legally identified with Respondents.[15]  Consequently, the Court imposed civil contempt sanctions against Hernandez, beginning on May 6, 2025.[16]

On June 13, 2025, the Court vacated the sanctions imposed against Hernandez in the April 22 Opinion because he had not been served effectively with the Contempt Motion, although he did have notice of it.[17]  In the same order, Court authorized alternative service of the Contempt Motion on Hernandez via email and provided him with an opportunity to file an opposition to it.

## *Discussion*

### I.   *Legal Standard*

"The purpose of civil contempt is not to punish but to compensate for injury caused by any violation of a court order or process, to coerce compliance, or both. In order to prevail on a civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a

---

[15] *Id.* at 38–42.

[16] *Id.* at 46–48.

[17] Dkt 381.  Hernandez filed a notice of appeal of the April 22 Opinion before the Court issue that order. Dkt 339. Since the filing of that notice of appeal arguably ousted this Court of jurisdiction to vacate the contempt finding as to Hernandez and the sanctions imposed upon him, the Court issued an order indicating, pursuant to Fed. R. Civ. P. 62.1, that it would reach the same result were the Court of Appeals to conclude that the Court lacked jurisdiction to vacate the contempt sanctions and remand to this Court for that purpose.  Dkt 387.

6

reasonable manner. . . . A court order is clear and unambiguous when it 'leaves no uncertainty in the minds of those to whom it is addressed.'"[18] Courts regularly order civil contempt sanctions to induce compliance with judgments confirming arbitration awards.[19]

A court may hold in contempt a non-party who, with notice of an injunction, aids and abets a party in violating the injunction.[20] "Under an aiding-and-abetting theory, a court first must conclude that 'the party subject to the court's mandate committed contempt.'"[21] "A court must next conclude that 'the challenged action' of the nonparty 'was taken for the benefit of, or to assist, a party subject to the decree' in violating the injunction."[22] "The enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct."[23]

Courts may also hold in contempt non-parties who are "legally identified" with an enjoined party.[24] A non-party is "legally identified" with an enjoined party where, "as a practical

---

[18] *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 488–89 (S.D.N.Y. 2019) (footnotes omitted) (quoting *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)), *aff'd in relevant part*, 990 F.3d 191 (2d Cir. 2021).

[19] *See Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320, 328 (S.D.N.Y. 2012); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615–21 (S.D.N.Y. 2008).

[20] *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023).

[21] *Id.* at 112 (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).

[22] *Id.* (quoting *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015)).

[23] *Id.* at 113.

[24] *See People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir. 1996).

7

matter," the two individuals or entities are "one and the same."[25] Courts have found that this standard is satisfied where the non-party is the defendant's chief executive and principal.[26]

II.  *Contempt of Judgment No. 1*

In the April 22 Opinion, the Court held:

"With respect to Hernandez, the Tribunal found in the 5thPFA that he caused Terra to prevent the engagement of Citibank [to facilitate a sale of the Company], in violation of the FPFA. Specifically, the Tribunal found that Hernandez had sole control over Terra's representatives on the Company's board, and he was responsible for those representatives' insistence on the inclusion of dealbreaker conditions in the engagement letter with Citibank. The Tribunal further determined that the self-evident motivation for such conduct was to prevent Petitioners from seeking the type of sales proceeds escrow for which they have applied to the Tribunal and to create collection risk for Petitioners on money damages that might be awarded to them. The direct beneficiary of such collection risk would be Mr. Hernandez, as sole shareholder of Terra. In other words, Hernandez's motivation was to prevent Terra from complying with the FPFA until he could secure more favorable terms for them. Accordingly, Hernandez is in civil contempt for abetting Terra's non-compliance with the FPFA.

"In the alternative, Hernandez is in civil contempt to the extent that he is legally identified with Respondents and therefore bound by the FPFA and TPFA. A non-party is legally identified with an enjoined party where, as a practical matter, the two individuals or entities are one and the same. Courts have found that this standard is satisfied where the non-party is the defendant's chief executive and principal. Here, Hernandez owns and controls Terra and DTH, and he signed the SHA as director of Terra. Further, the extensive record in the arbitration demonstrates that Hernandez's interests are indistinguishable from the interests of Terra and DTH. Therefore, it would be reasonable to conclude that his rights and interests have been represented and adjudicated in the arbitration and proceedings in this Court concerning the confirmation of the arbitral awards. Accordingly, Hernandez is subject to civil contempt sanctions on the separate ground that he is

---

[25] *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F.Supp. 683, 684–85 (S.D.N.Y.1996).

[26] *Id.* at 685; *Absolute Nevada, LLC v. Grand Majestic Riverboat Co. LLC*, No. 19-CV-11479 (PKC), 2021 WL 4894556, at *1 (S.D.N.Y. Sept. 17, 2021); *Yimby, Inc. v. Fedak*, No. 17 CIV. 223 (PAC), 2017 WL 2693719, at *5 (S.D.N.Y. June 22, 2017).

legally identified with Respondents."[27]

In his opposition, Hernandez offers no compelling reasons to depart from these conclusions. Instead, Hernandez asserts only that he no longer owns Terra or DTH, and therefore he cannot aid or abet Respondents or be legally identified with them.

First, Hernandez need not formally own either entity to aid or abet them. The contumacious conduct set forth above demonstrates that Hernandez took challenged actions — orchestrating objections to the sale of the Company — to assist Respondents in avoiding the injunctive relief in Judgment No. 1, which satisfies the aiding and abetting standard regardless of whether he personally owns Terra or DTH. Accordingly, as of April 22, 2025, Hernandez was in contempt of Court for aiding and abetting Respondents' non-compliance with Judgment No. 1.

Second, the evidence demonstrates that Hernandez retains control of Respondents such that "as a practical matter," Respondents and Hernandez are "one and the same."[28] The SHA, which Hernandez signed on behalf of Terra, recognizes that Hernandez owns and controls Terra.[29] Regarding DTH, Hernandez testified to the Tribunal in October 2021 that "my family is the ultimate owner of [DTH] and the ultimate decisionmaker for all of the DT companies as needed. . . . I have never given up my right to staff and manage the DT companies the way that I believe they should be managed."[30] Indeed, the Tribunal consistently has found that Hernandez owns and has sole

---

[27] Dkt 295 at 39–41 (footnotes omitted) (cleaned up).

[28] *Spectacular Venture*, 927 F.Supp. at 684–85.

[29] Dkt 245-1 at 26, 28 (referring to Terra's shares in the Company as "his shares" in reference to Hernandez); *id.* at 51 (Hernandez signature of the SHA on behalf of Terra as its "director").

[30] Dkt 245-3 at ¶ 13.

9

control over Respondents.[31]  Most recently, the Tribunal found in the 5thPFA:

> "As sole owner of Terra, Mr. Hernandez personally secured the benefits the SHA conferred on Terra as a Shareholder. Those benefits in pecuniary terms included the right to receive personally or to decide who would receive Terra's share of the proceeds of a Company Sale. In non-pecuniary terms, Mr. Hernandez's sole control of Terra enabled him (among other things) to appoint two Directors to the Company's Board who were in practical terms accountable only to him and he could replace them on the Board at any time.
>
> "Also, Mr. Hernandez as sole owner of DTH directly obtained [a] pecuniary benefit . . . with sole control over how that money was spent. He alone was given the ability to decide how much would be spent on support services that DTH was required to provide to the Company and how much would be distributed to himself or his designees as profit, bonus, dividend, etc."[32]

Nevertheless, Hernandez now claims that he *never* owned Terra or DTH.[33] And while he concedes that he controlled them at some point in time, he asserts that he no longer does. These self-serving assertions are devoid of any documentary or other evidentiary support, and the Court does not credit them. Accordingly, as of April 22, 2025, Hernandez was in contempt of Court on the separate basis that he was legally identified with Respondents, who were in contempt of Judgment No. 1.

In the alternative, Hernandez argues that he no longer is in contempt of Judgment No. 1 because Respondents have purged their contempt of that judgment. To determine whether Hernandez remains in contempt of Judgment No. 1, the Court must assess whether (1) Judgment No. 1 was clear and unambiguous, (2) the proof of Hernandez's noncompliance is clear and convincing, and (3) Hernandez has not attempted diligently to comply in a reasonable manner.

---

[31] *See, e.g.*, Dkt 331-2 ("SPFA") at ¶ 8 n.1; Dkt 331-3 ("TPFA") at ¶ 37.

[32] 5thPFA at ¶¶ 165–66.

[33] Dkt 338-1 at 1; Dkt 369-48 at 39:1–2.

10

The FPFA states that "[Petitioners'] request that specific performance be granted as a remedy . . . is sustained."[34] The FPFA further orders that Respondents "shall cause their appointed members of the Board of Directors of the Company to vote in favor of the engagement of an Investment Bank" proposed by Petitioners to facilitate the sale of the Company and that "[t]he Approved Sale of the Company shall proceed on the basis of [Petitioners'] Proposed Sale Notice of January 19, 2021 and pursuant to the engagement of the Investment Bank . . . ."[35]

These directions are clear and unambiguous in so far as they order Respondents to vote in favor of the engagement of the Investment Bank and proceed with the sale of the Company pursuant to the proposed sale notice. Hernandez caused Terra to prevent the engagement of the Investment Bank proposed by Petitioners, Citibank,[36] thereby aiding and abetting Terra's non-compliance with these clear and unambiguous provisions. As set forth above and in the April 22 Opinion, this conduct put Hernandez in contempt of Judgment No. 1.

However, the April 22 Opinion provided Respondents and Hernandez an opportunity to purge their contempt. The April 22 Opinion ordered:

> "Unless [Respondents and Hernandez], on or before June 9, 2025, shall have caused the members of the Company's board of directors appointed by Terra and TBS to vote in favor of a resolution (I) approving the engagement of an Investment Bank as defined in the SHA at a Board meeting to be held within 45 days from the date of this Order, provided that Petitioners notify Respondents in writing of the Investment Bank that Petitioners propose within 30 days from the date of this Order, and (ii)

---

[34] FPFA at 42.

[35] *Id.*

[36] 5thPFA at ¶¶ 190–93; see also id. at 195 ("Without the intervention of Mr. Hernandez to cause Terra and DTH to commit the breaches of contract" — including the violations of the FPFA — "there would have been no such breaches.").

    stating that the board of directors will not require, as a condition of the engagement, that there must be an immediate pro rata distribution of all received proceeds at closing or that the investment bank must provide its own current valuation of the Company, the FPFA Contemnors thereby shall continue in civil contempt of Judgment No. 1."[37]

On June 4, 2025, the Company's board of directors, including the members appointed by Respondents, approved a resolution (1) engaging an investment bank to facilitate the sale of the Company, and (2) stating that the board would not require as a condition of the engagement an immediate pro rate distribution of the received proceeds.[38] In doing so, Respondents and Hernandez complied with the clear and ambiguous provisions of the FPFA and the April 22 Opinion.

  Petitioners argue that Respondents and Hernandez remain in contempt of the FPFA notwithstanding the approval of the resolution. Petitioners accurately note that Respondents previously have taken similar steps, but have taken other measures to thwart the sale.[39] In their view, "[a]dditional enforcement mechanisms, including the imposition of sanctions, are required to ensure the Company's sale."[40]

  It is possible that Respondents and Hernandez will take further steps to thwart the sale of the Company. But contempt sanctions are not available as a preemptive strike against potentially contumacious conduct. They serve to coerce compliance with the Court's judgments where a contemnor is in ongoing violation of a clear and unambiguous order. Here, the continued

---

[37] Dkt 295 at 46.

[38] Dkt 371-1.

[39] Dkt 400 at 5.

[40] *Id.* at 6.

imposition of contempt sanctions would not coerce Respondents and Hernandez to take any particular action. It would punish them for their previous non-compliance — an impermissible purpose for civil contempt sanctions.[41]

Accordingly, the Court holds that Hernandez is not in contempt of Judgment No. 1 at this juncture.[42]

### III.   *Contempt of Judgment No. 2*

With respect to Judgment No. 2, the April 22 Opinion held that Hernandez "is subject to civil contempt relief because the arbitration claimants [who initiated the BVI Actions] are subject to his control and he is responsible for the foreign arbitration proceedings. In addition, Hernandez is liable for civil contempt for his role in instigating the foreign actions because, as set forth above, he is legally identified with Respondents."[43]

In the TPFA, the Tribunal found:

> "The evidence of Respondents' control over the [claimants in the foreign arbitrations underlying the BVI Actions (the "Manager Claimants")] is considerable, while the evidence that they are acting without Respondents' blessing here is almost nil. Respondents have not disputed that Mr. Hernandez has the sole discretion to terminate the Manager Claimants from their non-Company positions at DTH. And the Manager Claimants provided evidence in this arbitration. . . . Also, the Manager Claimants were in the forefront of Respondents' failed effort, before the Company's

---

[41] *Chevron*, 384 F. Supp. 3d at 488–89; *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)).

[42] Petitioners have moved separately for further contempt sanctions against Respondents and non-parties, including Hernandez. Dkt 367. That motion remains pending, and this ruling does not address the availability contempt sanctions against Hernandez in relation to that motion.

[43] Dkt 295 at 41–42.

Board and in turn before the Tribunal, to justify disobedience to [the Tribunal's] Interim Relief Orders . . . ."[44]

In addition, the Tribunal pointed to at least one instance in which Hernandez unilaterally brought about the dismissal of a manager of one of the Company's subsidiaries,[45] indicating he has the capacity to do so at his discretion.

Hernandez argues that the Manager Claimants no longer are employees of DTH and therefore are not subject to his control.[46] For the Manager Claimants involved in the El Salvador-Related BVI Action, Hernandez provides no evidence of this alleged change in employer. There is no evidentiary basis to revisit the well-supported factual conclusions of the Tribunal with respect to Hernandez's control over those individuals. For the Manager Claimants involved in the Peru-Related BVI Action, Hernandez cites documents which purport to show the transfer of their employment from DTH to "TBS Peru," a Company subsidiary.[47] This formal change in employer does not show that Manager Claimants no longer are subject to Hernandez's control. Indeed, Hernandez's argument — that they are subject only to the Company's control, not his — asks the Court to overlook the well-established fact that Hernandez has seized control of the management of the Company, through which he exercises control over the Manager Claimants.[48]

In the alternative, Hernandez argues that he no longer is in contempt of Judgment No.

---

[44] TPFA at ¶ 57.

[45] *Id.* at ¶ 58.

[46] Dkt 389 at 6, 14–15.

[47] *See* Dkt 359 at 2; Dkt 360 at 2.

[48] *See, e.g.*, SPFA at ¶ 78; 5thPFA at ¶ 73.

14

2 because Respondents have purged (or reasonably attempted to purge) their contempt of that judgment.

The April 22 Opinion states:

"Unless [Respondents, Hernandez, and Manager Claimants] on or before May 5, 2025, shall have caused the termination of the BVI Actions and vacatur of any relief granted to them therein, each of them shall pay a coercive civil fine to the Clerk of Court with respect to May 6, 2025, and each subsequent day from that date until the date on which they fully purge themselves of this contempt."[49]

To date, the relief granted in the BVI Actions — judgments confirming arbitration awards procured in violation of Judgment No. 2 — has not been vacated. Hernandez argues that the proper mechanism to vacate the relief granted in the BVI Actions is disputed, and that he "is not aiding or abetting this legal dispute."[50] This framing misses the forest for the trees. Hernandez is responsible for the initiation of the BVI Actions in violation of Judgment No. 2. He has not taken any steps to unwind the judgments produced by his contumacious conduct. That the purging of this contempt is complicated by entry of judgments in the BVI Actions is a complication entirely of his own and other contemnors' making.

Accordingly, the Court reaffirms its rulings that Hernandez is in contempt because the Manager Claimants behind the BVI Actions are subject to his control and he is responsible for those actions. In addition, Hernandez committed civil contempt in instigating the BVI Actions because, as set forth above, he is legally identified with Respondents. The entry of sanctions is appropriate to coerce Hernandez to comply with Judgment No. 2 and the April 22 Opinion by taking

---

[49] Dkt 295 at 48.

[50] Dkt 389 at 15.

15

concrete steps to vacate the judgments in the BVI Actions.[51]

### *Conclusion*

The foregoing constitute the Court's findings of fact and conclusions of law. Petitioners' motion for an anti-suit injunction and civil contempt sanctions (Dkt 243) is granted with respect to non-party Jorge Hernandez to the extent hereafter set forth.

1. As of April 22, 2025, Jorge Hernandez was in contempt of this Court's January 18, 2023, judgment confirming the First Partial Final Award ("Judgment No. 1").

---

[51] In denying a motion for reconsideration of the April 22 Opinion filed by Peruvian non-party contemnors (the "Peru Contemnors"), the Court " assume[d] (without deciding) that the best and most expeditious means of accomplishing in the BVI what this Court has required is to pursue the route recommended by the Peru Contemnors' BVI lawyer – an application by the Petitioners with the expressed consent of the Peru Contemnors." Dkt 406 at 10. The proximate impediment to this course of action was Peru Contemnors' unreasonable insistence on a broad liability waiver as a condition for their cooperation. *Id.* In sum, the ball is in the court of those subject to Hernandez's control — Respondents and other non-party contemnors — to come into compliance with Judgment No. 2.

2. Hernandez has purged his contempt of Judgment No. 1. To the extent that Petitioners' motion seeks remedial compensatory sanctions for Hernandez's contumacious conduct, that aspect of the motion is denied without prejudice.

3. Jorge Hernandez is in contempt of this Court's September 6, 2023, judgment confirming the Third Partial Final Award ("Judgment No. 2").

4. Hernandez shall pay a coercive civil fine to the Clerk of Court with respect to the day of the entry of this order, and each subsequent day from that date until the date on which he fully purges himself of his contempt of Judgment No. 2. The amount of the coercive fine shall begin at $10,000 for the date of this order, and shall double every fourteen days so long as he fails fully to purge himself of this contempt. The Clerk of Court shall enter all coercive fines as judgments in favor of the United States against Hernandez.

SO ORDERED.

Dated:    July 20, 2025

_____
Lewis A. Kaplan
United States District Judge