UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                Petitioners,

-against-                                                                                          22-cv-1761 (LAK)


TERRA TOWERS CORP., *et al.*,

                Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

> Gregg L. Weiner
> Ethan Fitzgerald
> Daniel V. Ward
> Katherine M. McDonald
> ROPES & GRAY LLP
>
> David A. Landman
> Michael N. Ungar
> Katherine M. Poldneff
> Gregory C. Djordjevic
> ULMER & BERNE LLP
>
> *Attorneys for Petitioners*
>
> Rodney Quinn Smith, II
> GST LLP
>
> Lucila I.M. Hemmingsen
> THE FLATGATE FIRM PC
>
> *Attorneys for Respondents and Non-Party Jorge Hernandez*
>
> James S. O'Brien Jr.
> Aliette D. Rodz
> Eduardo de la Peña Bernal
> Martha M. Ferral

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/21/25

SHUTTS & BOWEN LLP

*Attorneys for Non-Parties Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez*

LEWIS A. KAPLAN, *District Judge.*

In its Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies ("April 22 Opinion"), the Court issued coercive civil contempt sanctions against Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), and DT Holdings, Inc. ("DTH," and together with Terra, "Respondents") arising from their non-compliance with two of this Court's judgments confirming arbitral awards.[1] The Court issued sanctions also against non-parties who were aiding and abetting Respondents' non-compliance, including non-party Jorge Hernandez, who controls Terra and DTH.[2]

Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") now move for further contempt sanctions against Respondents, Hernandez, and various non-parties.

*Facts*

The Court assumes familiarity with the underlying facts and procedural history. In sum, Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") and Terra in 2015 entered into a shareholders agreement

---

[1] Dkt 295.

[2] *Id.*

3

("SHA") whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"), the business of which is the development and operation of telecommunications towers in Central and South America.[3]

Petitioners commenced the arbitration underlying this action (the "Arbitration") on February 2, 2021. They alleged, *inter alia*, that Terra had breached the SHA by obstructing the proposed sale of the Company, which they contended was required pursuant to the SHA. On February 24, 2022, the Tribunal issued its unanimous first partial final award ("FPFA"), which ordered a sale of the Company. The FPFA was confirmed by this Court on January 18, 2023,[4] and the Second Circuit later affirmed the confirmation.[5]

The Tribunal has issued four additional partial final awards. This Court has confirmed the Tribunal's second, third, and fourth partial final awards (the "SPFA," "TPFA," and "4thPFA" respectively),[6] and the Second Circuit has affirmed those confirmations.[7] Among other relief, those awards ordered Respondents to terminate foreign proceedings that Respondents and

---

[3] Dkt 9-22 ("FPFA") at ¶ 1.

[4] *See* Dkts 124; 125.

[5] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *1 (2d Cir. Feb. 6, 2024) (summary order).

[6] Dkts 207; 208 (confirming second partial final award); Dkts 182; 183 (confirming third partial final award); Dkts 202; 203 (confirming fourth partial final award).

[7] *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-7312, 2025 WL 1177768 (2d Cir. Apr. 23, 2025).

4

others had brought to undermine the Arbitration and to prevent new ones.[8] The petition to confirm the fifth partial final award ("5thPFA")[9] remains pending.

In March 2025, Petitioners moved for an anti-suit injunction and civil contempt sanctions against Respondents and various non-parties.[10] Among other relief, Petitioners sought an order directing Respondents to withdraw criminal complaints they or their agents had initiated against Jorge Gaitán, the chief executive officer ("CEO") of the Company. As set forth in the Court's April 22 Memorandum Opinion Granting Anti-Suit Injunction and Coercive Civil Contempt Remedies ("April 22 Opinion"):

> "Petitioners submit that Respondent DTH, Hernandez, and/or entities or individuals affiliated with them have initiated at least seven criminal matters against Gaitán and other Company officials.
>
> "Those efforts allegedly culminated in the arrest of Gaitán and his father on January 26, 2025, and their subsequent imprisonment in early March 2025. According to information received by counsel for the Company, Adam Schachter, Gaitán was detained in connection with an El Salvador criminal proceeding ('El Salvador Criminal Action' that was initiated by Tierras Nacionales Ltda. de C.V. ('Tierras'), an affiliate of DTH. According to documents provided by Jose Azucena, a Salvadoran lawyer retained by Respondents, the El Salvador Criminal Action involves allegations that Gaitán and his father misappropriated over $1 million from Tierras between 2016 and 2021.
>
> "According to a declaration by Josue Cifuentes, a Guatemalan lawyer retained by Respondents, Gaitán has been incarcerated pursuant to a separate, Guatemala-based criminal proceeding [(the 'Company Devices Action')] . . . . According to Cifuentes, the judge in that case ordered Gaitan's incarceration after Gaitán's ex-wife purportedly discovered a laptop that did not belong to him at their shared

---

[8] Dkt 133-47 ("TPFA") at ¶ 127.

[9] Dkt 262-41 ("5thPFA"); Dkt 257 (5thPFA Petition).

[10] Dkt 243.

residence."[11]

Ultimately, the April 22 Opinion did not order Respondents to terminate any of the criminal complaints pending against Gaitán because (1) such an order would heave been an anti-suit injunction, and (2) neither of the two threshold criteria for an anti-suit injunction were met.[12] The Court noted that it did not "rule on (1) the Tribunal's authority to enjoin or sanction Respondents' participation in those matters, or (2) the availability of a tortious interference, breach of fiduciary duty, or other claim for damages arising from Respondents' participation in those matters."[13]

About a month later, Schachter informed the Tribunal that Gaitán and his father had been "violently taken into custody" by officials at the prison where they were incarcerated and "may also have been coerced into signing documents under threats of physical violence."[14] In a subsequent letter, Schachter relayed — based on information received from Gaitán's Guatemalan counsel — that Gaitán and his father had been extracted from the prison pursuant to an order transferring them to a maximum security prison.[15] According to Schachter, that order followed on the heels of a new criminal complaint alleging that Gaitán impermissibly had possessed electronic devices and used them to send emails while incarcerated (the "Mobile Devices Complaint").[16]

---

[11] Dkt 295 at 11–13 (footnotes omitted).

[12] *Id.* at 24–26.

[13] *Id.* at 26 n. 115.

[14] Dkt 369-38.

[15] Dkt 331-12 at 5–6.

[16] *Id.*

6

Following this notification, Petitioners requested that the Tribunal order Respondents to withdraw the criminal complaints that resulted in Gaitán's incarceration.[17] On May 17, 2025, the Tribunal issued a procedural order in response.[18] The Tribunal observed that "it appears that Respondents are responsible for the proceedings that have led to Mr. Gaitán's incarceration . . . [and] that Mr. Gaitán's incarceration in Guatemala and the pending criminal charges against him in El Salvador are predicated exclusively on factual allegations propounded by Respondents that this Tribunal has previously adjudicated to be unsubstantiated in [the SPFA]."[19] Nevertheless, the Tribunal concluded:

> "Respondents' activities concerning Mr. Gaitán . . . and the current circumstances of Mr. Gaitán's, and his father's, incarceration as reported by Mr. Schachter, may impede the sale of the Company, which we ordered to occur in [the FPFA]. That award has become a judgment of the Court, affirmed by the Second Circuit, and the Court has already entered an Order adjudicating Respondents to be in contempt of that Judgment. This Tribunal is therefore not a proper forum to address additional actions of Respondents that may impede sale of the Company and that may constitute additional acts of contempt and may bear on the severity of contempt sanctions to be imposed and the timing of their imposition."[20]

Consequently, the Tribunal ordered Petitioners to seek emergency relief from this Court.

On May 20, 2025, Petitioners moved on an emergency basis for an order directing Respondents and various non-parties to terminate five criminal actions, including the El Salvador

---

[17] Dkt 330 at 2–4.

[18] Dkt 331-11.

[19] *Id.* at 2.

[20] *Id.* at 3.

7

Criminal Action.[21] The next day, the Court denied the motion without prejudice and authorized limited discovery related to the pending criminal actions.[22]

Petitioners filed their renewed motion on June 6, 2025 ("June 6 Motion"),[23] which requests that the Court:

- Make new findings of contempt arising from criminal actions in Guatemala and El Salvador against Jorge Gaitán (the Company's CEO), Adam Schachter (the Company's counsel in the arbitration), and the Company ("Criminal Actions");

- Order Respondents to withdraw existing criminal complaints, and prohibit them from filing new complaints, against the Company, Gaitán, and Schachter;

- Find Respondents (including Hernandez) in contempt of this Court's April 22 Order;

- Order the civil confinement of Hernandez, and put Respondents on notice of possible criminal contempt sanctions; and

- Award Petitioners attorney's fees.

On June 17, 2025, the Court heard argument on the June 6 Motion during which the parties provided information about five of the "Criminal Actions":

- The El Salvador Criminal Action and corresponding extradition proceedings in Guatemala (together, the "Extradition Action");

- The Company Devices Action;

- The Mobile Devices Complaint;

- Proceedings before the Seventh Multi-Personal Court of First Instance for Criminal Matters, Drug Activity, and Environmental Crimes of Guatemala that resulted in a "pre-authorship embargo" prohibiting the transfer or alienation of 163

---

[21] Dkt 329.

[22] Dkt 351 at 19:3–23:10.

[23] Dkt 367.

    telecommunications towers owned by the Company (the "Tower Seizures Case");[24] and

•  A criminal complaint alleging various misconduct by Schachter, the Company, and Gaitán filed under the pseudonym Rafael Carrera (the "Carrera Complaint").

Following the June 17 hearing, Petitioners notified the Court that Carol Echevarria — the Company's chief operating officer, who attended the argument in this Court — was arrested and imprisoned upon her return to Guatemala.[25] It is not clear whether that detention arises from one of the above actions or a separate criminal action.

## *Discussion*

### I.  Legal Standard

"The purpose of civil contempt is not to punish but to compensate for injury caused by any violation of a court order or process, to coerce compliance, or both. In order to prevail on a civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner. . . . A court order is clear and unambiguous when it 'leaves no uncertainty in the minds of those to whom it is addressed.'"[26] Courts regularly order civil contempt sanctions to

---

[24]  *See* Dkt 369-23.

[25]  Dkt 390.

[26]  *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 488–89 (S.D.N.Y. 2019) (footnotes omitted) (quoting *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)), *aff'd in relevant part*, 990 F.3d 191 (2d Cir. 2021).

induce compliance with judgments confirming arbitration awards.[27]

## II. Requested New Findings of Contempt

Petitioners argue that Respondents' initiation and prosecution of the Criminal Actions is contumacious of the FPFA, the SPFA, and this Court's judgments confirming them. In Petitioners' view, "Respondents have (i) violated this Court's judgment confirming [the FPFA] by maintaining and continually raising objections to a sale, and (ii) violated this Court's judgment confirming [the SPFA] by continually refusing (in the most egregious ways) to abide by its directive to restore Gaitán as CEO."[28]

The FPFA ordered Respondents to follow certain procedures to allow for the sale of the Company to proceed. Petitioners contend that the Criminal Actions undermine the FPFA because they impede the sale of the Company. But they do not violate a "clear and unambigous" order, as required to establish contempt.[29] At most, they would support the entry of an anti-suit injunction — discussed in greater detail below — or give rise to a separate claim for breach of the SHA.

Petitioners' argument with respect to the SPFA fares no better. Petitioners contend that the Criminal Actions are contumacious because they prevent the restoration of Gaitán to his position as CEO. That restoration was ordered by the Tribunal an interim order preceding the SPFA

---

[27] *See Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320, 328 (S.D.N.Y. 2012); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615–21 (S.D.N.Y. 2008).

[28] Dkt 368 at 25.

[29] *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

10

(the "November 12 Order")[30] — not in the SPFA itself.[31]

First, it is not clear that the Criminal Actions violate the November 12 Order. The Criminal Actions undoubtedly impede Respondents' ability to comply with that order. And Respondents may be estopped from raising impossibility of compliance as a justification for their non-compliance if they are responsible for the Criminal Actions creating that impossibility. But that does not mean that the Criminal Actions themselves violate the November 12 Order.

Second, even if the Criminal Actions do violate the November 12 Order, that order is not a judgment of the Court. As set forth in the April 22 Opinion:

> "The SPFA stayed Respondents' counterclaims in the underlying arbitration pending Respondents' compliance with the FPFA and interim orders of the Tribunal. One of those interim orders required Respondents to restore Gaitán to his position as CEO. Petitioners contend that Respondents are in ongoing violation of the SPFA by refusing to restore Gaitán to his position as CEO and by initiating criminal proceedings against him.
>
> "Respondents' non-compliance with interim orders of the Tribunal does not support the entry of civil contempt sanctions. The Court's order confirming the SPFA confirmed the stay of Respondents' counterclaims — it did not convert the Tribunal's interim orders into enforceable judgments. The conduct complained of in relation to the SPFA therefore does not warrant entry of civil contempt sanctions."[32]

Petitioners argue that the Court should revisit this ruling — but they do not explain *why* the Court should do so.[33] Petitioners point to a stray line from Respondents' briefing on appeal, which states that the SPFA "converts the [interim] orders into enforceable elements of an interim

---

[30] *See* Dkt 369-8 ("SPFA") at ¶ 8.

[31] *See id.* at 52–53.

[32] Dkt 295 at 32–33 (footnotes omitted).

[33] *See* Dkt 368 at 20 n.14.

partial award."[34] But that is not the case. The SPFA itself does not order the restoration of Gaitán to his role as CEO. It stayed Respondents' counterclaims as a sanction for their noncompliance with the Tribunal's interim orders.[35] In confirming the stay, the Court did not convert the interim orders into judgments of this Court.

Accordingly, the Criminal Actions do not warrant additional contempt findings.

### III.    *Requested Order to Withdraw Criminal Actions*

In the April 22 Opinion, the Court did not order Respondents to withdraw criminal complaints initiated against Gaitán. The Court ruled that (1) the relief sought by Petitioners would have been tantamount to an anti-suit injunction under the Second Circuit's *China Trade* decision,[36] and (2) neither of the two threshold criteria for an anti-suit injunction had been met there.[37]

Petitioners again request that the Court order Respondents to withdraw criminal complaints. The Court once again assesses whether *China Trade* applies to the relief sought and, if so, whether the relief sought would be warranted under that standard.

#### A.    *Applicability of Anti-Suit Injunction Standard*

Petitioners say they "are not asking the Court to intervene in the conduct of foreign

---

[34] *Id.*

[35] SPFA at 52–53.

[36] *See China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987).

[37] Dkt 295 at 24–26.

prosecutions, or to disturb the activities of those foreign prosecutorial authorities. Principles of comity are therefore irrelevant."[38] Not so. As set forth in the April 22 Opinion:

> "An anti-suit injunction is one that prevents a litigant from pursuing litigation before a foreign tribunal. In *China Trade*, the Second Circuit recognized that the fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, because such an order effectively restricts the jurisdiction of the court of a foreign sovereign.
>
> "Here, Petitioners concede that while this Court cannot control the decisions of foreign prosecutors, it can nonetheless grant effective relief by directing Respondents to withdraw their false criminal claims and not to commence any new ones. In support, Petitioners submit a declaration from a Guatemalan lawyer, Alejandro Morales, who states that criminal complaints in Guatemala are subject to withdrawal or discontinuance by the claimant or petitioner.
>
> "The relief sought here would affect a foreign sovereign because it would cause the termination of the pending criminal actions in foreign courts. It therefore would qualify as an anti-suit injunction."[39]

Petitioners do not argue convincingly why the Court should revisit this holding or why it does not apply to the relief they seek. Indeed, their motion emphasizes that "where private criminal complaints are withdrawn in those countries, they are likely to be abandoned by prosecutors."[40] *China Trade* is clear that "[t]he fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, because such an order effectively restricts the jurisdiction of the court of a foreign sovereign."[41]

---

[38] Dkt 383 at 8.

[39] Dkt 295 at 24–25 (cleaned up) (footnotes omitted).

[40] Dkt 368 at 29.

[41] 837 F.2d at 36 (citation omitted).

13

Accordingly, an order directing Respondents to withdraw criminal complaints would amount to an anti-suit injunction.

    B.    *Application of Anti-Suit Injunction Standard*

"[T]o qualify for an anti-suit injunction, (1) the parties to the action in the enjoining court must be the same as those in the parallel litigation, and (2) resolution of the case before the enjoining court must be dispositive of the action to be enjoined."[42]

With respect to the first condition, the Second Circuit has held that it is satisfied where there is "substantial similarity and affiliation" between the parties.[43] The Court previously held that Respondents' long-time employee and agent, Juan Francisco Quisquinay, satisfied this criterion where he was "clearly advancing Respondents' interest" and was "controlled by and acting on behalf of Respondents."[44]

Here, the link between Salvador and Guatemalan prosecutors is much more tenuous. The current record provides no direct evidence that those prosecutors are subject to Respondents' control. And even if such evidence arose, the Court is aware of no precedent for treating agents of a foreign government as substantially similar to private litigants. Further, no party in this action is substantially similar to Gaitán, even if that party has an interest in keeping him out of prison.

The Towers Seizure Case, or at least a civil action related to it, is the sole action that

---

[42] Dkt 295 at 15.

[43] *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004).

[44] Dkt 209 at 3.

may satisfy the first threshold criterion. At the June 17 argument, Respondents' counsel stated that the embargo on the transfer of cell towers ordered therein was issued to secure enforceability of any judgment that might be procured in a fraud case initiated by a DTH subsidiary against a subsidiary of the Company. The underlying fraud action therefore may satisfy the first criterion. Without more information in the record, the Court cannot determine conclusively whether the parties in the two proceedings are substantially similar. However, to the extent that action "involv[es] all or any of the subject of matter of Respondents' counterclaims in [the] arbitration," the TPFA already requires Respondents to prevent its commencement and to make escrow deposits of one-half of the maximum damages demanded.[45] Therefore, upon a proper showing by Petitioners in a motion for contempt sanctions, Respondents may be subject to contempt sanctions for their role in the civil action underlying the Towers Seizure Case. But the record does not now justify such relief.

With respect to the second criterion, Petitioners assert that the SPFA is dispositive of the allegations against Gaitán. But the SPFA long predated the time during which the events giving rise to the Mobile Devices Complaint took place. And there is no indication that the SPFA dealt with the allegations at issue in the Towers Seizure Case or the Carrera Complaint.

The Tribunal did find in the SPFA that the allegations underlying the Extradition Action and the Company Devices Action were meritless. It did so to determine whether Respondents could comply with the Tribunal's interim orders to restore Gaitán to his position as CEO.[46] Resolution of the contractual disputes between Petitioners and Respondents was not

---

[45] TPFA at 42.

[46] The SPFA recognized that these proceedings were a "sideshow to the merits of the arbitration." SPFA at 1.

15

dispositive of Gaitán's (or Schachter's or the Company's) criminal liability vis a vis Guatemalan or Salvador authorities. Moreover, although the Tribunal passed on some of the allegations, it did so before the discovery of purported new evidence supporting the allegations in the Company Devices Case — that Gaitán's ex-wife discovered that he was in possession of the devices.[47]

Accordingly, the Criminal Actions satisfy neither of the threshold criteria required for an anti-suit injunction, and the Court may not properly enjoin Respondents from participating in those actions.

Petitioners argue that refusal to grant this relief creates a loophole whereby Respondents may attack this Court's judgments without consequence through weaponized criminal complaints. While the Court is sympathetic to this concern, the Court is bound by the Second Circuit's precedents and gives due regard to principles of international comity. Furthermore, Respondents are not without recourse. For example, as noted in the April 22 Opinion, Respondents may pursue tortious interference, breach of fiduciary duty, or other claims for damages arising from Respondents' participation in those matters.[48] The Court does not pass on the merits of such claims — they have not been raised before the Court, and in any event they would fall within the scope of the SHA's arbitration clause, requiring them to be brought before the Tribunal. The Court notes the availability of these alternatives, however, to dispel the notion that Petitioners lack recourse for injuries they suffer resulting from allegedly baseless criminal complaints.[49]

---

[47] Dkt 254-24 at ¶ 30.

[48] Dkt 295 at 26 n.114.

[49] In so noting, the Court does not determine whether the Criminal Actions are baseless, a determination that would be impossible to reach on the present record.

16

IV.     *Request to Find Respondents and Hernandez in Contempt of the Court's April 22 Opinion*

Petitioners argue that Respondents are in contempt of the Court's April 22 Opinion because Respondents (1) failed to withdraw foreign proceedings, (2) failed to pay any of the monetary awards pending against them, and (3) failed to file timely affidavits signed by Hernandez stating the measures taken to comply with the FPFA and to terminate foreign actions.

      A.     *Withdrawal of Foreign Legal Actions*

The April 22 Opinion enjoined Respondents, their agents, and persons in active concert or participation with them from "[p]rosecuting, litigating, participating in, or taking any action to obtain or enforce any relief or remedy that has been or hereafter may be issued or awarded in [a civil suit in El Salvador (the "El Salvador Action")] the El Salvador Action and/or either or both [suits in the British Virgin Islands (the "Peru-Related BVI Action" and the "El Salvador-Related BVI Action," collectively the "BVI Actions")] . . . ."[50]

Respondents represent that the Supreme Court of Justice of El Salvador dismissed the El Salvador Action and vacated the relief granted therein,[51] and they have filed a copy of that decision and a certified translation.[52] Accordingly, Respondents are in compliance with the April 22 Opinion with respect to the El Salvador Action.

With respect to the BVI Actions, Respondents do not argue that Respondents have been "[p]rosecuting, litigating, participating in, or taking any action to obtain or enforce any relief

---

[50]     Dkt 295 at 45.

[51]     Dkt 409.

[52]     Dkts 409-1; 409-2.

or remedy" granted therein. Rather, they fault Respondents for not taking affirmative action to cause the vacatur of judgments issued in the BVI Actions. But the anti-suit injunction component of the April 22 Opinion did not require them to do so. The April 22 Opinion separately issued contempt sanctions against Respondents and other non-party contemnors for violating the Court's judgment confirming the TPFA, and it afforded them an opportunity to purge that contempt. That process is ongoing,[53] and contempt sanctions continue to accrue until compliance is achieved. But Petitioners have not demonstrated that Respondents are in contempt of the April 22 Opinion itself.

### B.    *Non-Payment of Monetary Awards*

The April 22 Opinion held that "[t]he Court's 'contempt power should not be used to enforce a money judgment.'"[54] Petitioners do not argue why the Court should depart from that ruling here. Accordingly, Respondents' failure to pay monetary judgments does not support further findings on contempt.

### C.    *Filing of Affidavits*

The April 22 Opinion ordered Respondents and non-party contemnors to file an

---

[53] In denying a motion for reconsideration of the April 22 Opinion filed by Peruvian non-party contemnors (the "Peru Contemnors"), the Court " assume[d] (without deciding) that the best and most expeditious means of accomplishing in the BVI what this Court has required is to pursue the route recommended by the Peru Contemnors' BVI lawyer – an application by the Petitioners with the expressed consent of the Peru Contemnors." Dkt 406 at 10. The proximate impediment to this course of action was Peru Contemnors' unreasonable insistence on a broad liability waiver as a condition for their cooperation. *Id.* The record does not reflect what efforts, if any, have been taken with respect to the El Salvador-Related BVI Action.

[54] Dkt 295 at 37 (quoting *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 172 F. Supp. 3d 691, 698 (S.D.N.Y. 2016)).

affidavit, signed by Jorge Hernandez, on or before May 5, 2025, stating the measures taken to effectuate the termination of the El Salvador Action and the BVI Actions.[55] Respondents complied with that order.[56] The April 22 Opinion ordered also that the contemnors "serve and file such an affidavit every fourteen days thereafter so long as they fail fully to purge themselves of this contempt."[57] Respondents filed an affidavit from Hernandez on May 21, 2025, two days after it was due. They filed another affidavit on June 9, 2025, a week after it was due on June 2.[58]

Accordingly, the only arguable "further contempt" of this Court's orders identified by Petitioners is the belated filing of affidavits by Hernandez. These untimely filings do not warrant the entry of additional contempt sanctions at this juncture.

V.    *Requested Order for Civil Confinement of Hernandez*

For the reasons set forth above, Petitioners have not demonstrated that further findings of contempt are warranted. Accordingly, an escalation of the sanctions against Hernandez is not appropriate at this juncture.

---

[55] Dkt 295 at 47–48.

[56] Dkt 299-3.

[57] Dkt 295 at 47–48.

[58] The April 22 Opinion ordered also that Respondents and Hernandez to file a Hernandez affidavit on or before June 9, 2025, stating the measures taken to comply with the judgment confirming the FPFA. Respondents complied with this order. Dkt 371-2. The June 9 affidavit provided information about compliance with the FPFA and the termination of the El Salvador and BVI Actions.

*VI.    Attorneys' Fees*

Petitioners argue that the Court should award them attorneys' fees in connection with these contempt proceedings. An award of attorneys' fees would not be appropriate here because Petitioners are not a prevailing party.


[Balance of page left blank]

## Conclusion

For the foregoing reasons, Petitioners' motion for further findings of civil contempt and sanctions (Dkt 368) is denied.

SO ORDERED.

Dated:  July 20, 2025

_____
Lewis A. Kaplan
United States District Judge