UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                     Petitioners,

         -against-

TERRA TOWERS CORP., *et al.*,

                   Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22-cv-1761 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _08/07/2025_

**MEMORANDUM OPINION**

Appearances:

        Gregg L. Weiner
        Ethan Fitzgerald
        Daniel V. Ward
        Katherine M. McDonald
        ROPES & GRAY LLP

        David A. Landman
        Michael N. Ungar
        Katherine M. Poldneff
        Gregory C. Djordjevic
        ULMER & BERNE LLP

        *Attorneys for Petitioners*

        Rodney Quinn Smith, II
        GST LLP

        Lucila I.M. Hemmingsen
        THE FLATGATE FIRM PC

        *Attorneys for Respondents and Non-Party Jorge Hernandez*

        James S. O'Brien Jr.
        Aliette D. Rodz
        Eduardo de la Peña Bernal
        Martha M. Ferral
        SHUTTS & BOWEN LLP

        *Attorneys for Non-Parties Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez*

2

LEWIS A. KAPLAN, *District Judge.*

Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") are engaged in a long-running arbitration involving Respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), and DT Holdings, Inc. ("DTH," and together with Terra, "Respondents") and Jorge Hernandez. On March 24, 2025, a three-arbitrator panel (the "Tribunal") unanimously issued its Fifth Partial Final Award ("5thPFA"), which, *inter alia*, awarded $300,749,761 to Petitioners.[1] Before the Court is the petition to confirm the 5thPFA (Dkt 257) and the cross-petitions of Respondents (Dkt 318) and Jorge Hernandez (Dkt 399) to vacate that award.

*Facts*

As set forth in the Court's opinion confirming the Tribunal's first partial final award ("FPFA"):

"On October 22, 2015, Petitioners and Terra entered the [shareholders agreement ('SHA')] whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the 'Company'), the business of which is the development and operation of telecommunications towers in Central and South America. Pursuant to the SHA, Terra became the majority shareholder of the Company, holding about 55 percent, and Petitioners became the minority shareholders of the Company, holding about 45 percent. The SHA provides that, five years after the effective date of the agreement (the 'Lock-Up Period'), Petitioners unilaterally could initiate a sale of the Company according to a procedure stated therein. The SHA provides also that it is governed by New York law and that the parties to the agreement are 'entitled to specific performance' of any provision under Sections 8.10 and 8.12, respectively.

---

[1]    Dkt 262-41 (hereinafter, "5thPFA") at 198.

* * *

"On November 4, 2020, two weeks after the expiration of the five-year Lock-Up Period, Petitioners sent a letter to the Company and Respondents purporting to initiate a sale of the Company to Torrecom Partners LP ('Torrecom') pursuant to Section 5.04(b) of the SHA. On November 24, 2020, Terra replied by letter rejecting the sale contemplated by Petitioners. Over the following two months, the parties exchanged several communications in which Petitioners sought to retain an investment bank to facilitate a sale of the Company to an unaffiliated third-party purchaser – as provided by Section 5.04(b) of the SHA – and Terra refused, instead seeking to buy out Petitioners' shares in the Company.

"On February 2, 2021, Petitioners commenced the arbitration underlying this action (the 'Arbitration'). They alleged, *inter alia*, that Terra had breached the SHA by obstructing their proposed sale of the Company and sought damages or specific performance.

* * *

"On February 24, 2022, upon consideration of the parties' extensive submissions and oral argument during an all-day hearing [. . .], the Panel issued its unanimous FPFA ordering a sale of the Company."[2]

The FPFA was confirmed by this Court on January 18, 2023,[3] and the Second Circuit later affirmed the confirmation of the FPFA.[4]

The Court's order confirming the Tribunal's third partial final award ("TPFA") picks up the story:

"On August 12, 2022, the Tribunal issued its Second Partial Final Award ('SPFA'), which sanctioned Respondents for engaging in a 'multi-faceted effort . . . to present

---

[2]     Dkt 124 at 2–7.

[3]     *See* Dkts 124; 125.

[4]     *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016, at *1 (2d Cir. Feb. 6, 2024) (summary order).

4

th[e] Tribunal and the Company's Board a false narrative of misconduct and criminality by' the Company's chief executive officer and chief operating officer.

* * *

"In December 2022, three of the Company's wholly owned subsidiaries and those subsidiaries' managers submitted a request for arbitration to the Arbitration Center of the Chamber of Commerce of Lima in Lima, Peru related to the Company and asserting claims substantially identical to Respondents' counterclaims that had been stayed in the NY Arbitration.   Then, in January 2023, the Company's two Guatemala-based wholly owned subsidiaries initiated the Guatemala Arbitration, in which they also asserted claims substantially identical to those stayed by the Tribunal in the NY Arbitration.  Although the parties differ between the NY Arbitration and the Foreign Arbitrations, the Tribunal has found that '[t]he real parties in interest . . . are precisely the same.'

"On January 20, 2023, Petitioners filed a motion in the NY Arbitration seeking an anti-suit injunction relating to the Foreign Arbitrations (the 'Motion').  Over the following three weeks, the parties submitted 'more than 80 (mostly single-spaced) pages of briefing and more than 1,300 pages of exhibits,' and the Tribunal heard nearly four hours of argument on the Motion.  The Tribunal unanimously issued the TPFA on February 22, 2023."[5]

In the TPFA, the Tribunal made, *inter alia*, the following factual and legal findings:

- "The real parties in interest in the Foreign Arbitrations and in this [NY] Arbitration are precisely the same."[6]

- "Respondents at a minimum have supported the Foreign Arbitrations, and . . . Respondents' proffer of a Board resolution purporting to seek dismissal of the Foreign Arbitrations was a pretense to mask their ongoing support for the Foreign Arbitrations."[7]

---

[5]    Dkt 182 at 2–5; *see also* Dkt 245-6 (hereinafter, "TPFA").

[6]    TPFA at ¶ 126.

[7]    *Id.* at ¶ 78.

- Respondents have made the "same claims and sought the same damages already claimed by Respondents in [the NY Arbitration] in counterclaims submitted in 2021."[8]

- Respondents "acknowleg[ed] that the foreign tribunals lack jurisdiction over [Petitioners] and agree[d] that the Foreign Arbitrations are 'bizarre.'"[9]

- Respondents "breached the implied covenant of good faith and fair dealing" in the SHA and the Company's other governing documents.[10]

Based on those findings, among others, the Tribunal issued the TPFA, which "require[d] Respondents to bring about the termination of the Foreign Arbitrations and [to] prevent new ones, and [to] bear financial risk if they fail[ed] to do so."[11]

The TPFA was confirmed by this Court on September 6, 2023,[12] the fourth partial final award ("4thPFA")[13] was confirmed on February 8, 2024,[14] and the SPFA was confirmed on

---

[8]

*Id.* at ¶¶ 2, 11.

[9]

*Id.* at ¶ 117.

[10]

*Id.* at ¶ 116.

[11]

*Id.* at ¶ 127.

[12]

Dkts 182; 183.

[13]

Dkt 272-28. The 4thPFA specified the amounts of attorneys' fees, expenses, and arbitrator fees Respondents are obligated to pay to Petitioners. *Id.* at ¶ 1.

[14]

Dkts 202; 203.

February 20, 2024.[15]    The Second Circuit later affirmed these decisions.[16]

II.    *5thPFA*

   In July and August 2023, the Tribunal began preparations for the second phase of the Arbitration ("Phase 2").[17]    After the Tribunal invited the parties to propose any additional or amended claims or counterclaims,[18] Petitioners submitted their Consolidated Amended Demand for Arbitration and Statement of Claims (the "ASOC").[19]

   As set forth in the 5thPFA, the ASOC includes three categories of claims: (1) those that related to continued non-occurrence of a Company Sale ("Company Sale Claims"); (2) direct claims of Petitioners for damages consisting of out-of-pocket expenditures for alleged Company obligations that Respondents allegedly refused to permit the Company to honor ("Company Obligation Claims"), and (3) derivative claims for harm to the Company allegedly resulting from Company actions taken at the direction of the Respondents through the exercise of Respondents' de facto control of the day-to-day affairs of the Company ("Derivative Claims").[20]    The ASOC stated

---

[15]  Dkts 207; 208.

[16]  *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-7312, 2025 WL 1177768 (2d Cir. Apr. 23, 2025).

[17]  *See* Dkts 259-30; 259-35.

[18]  Dkt 259-36.

[19]  *See* Dkts 259-39; 369-12.

[20]  5thPFA at ¶ 11.

claims not only against Terra and DTH, but also against non-parties Jorge Hernandez and other current and former Terra-appointed members of the Company's board of directors (the "Terra Directors").[21]   On October 26, 2023, the Tribunal accepted the ASOC, rejected Respondents' application to lift the previously entered stay of their counterclaims in the SPFA, and denied Respondents' request to stay Phase 2.[22]   Phase 2 discovery began shortly thereafter.[23]

On May 3, 2024 — several months after discovery had begun — the Terra Directors filed in a New York State court a petition to stay the arbitration.  After that action was removed, this Court dismissed the petition (the "July 12 Order").[24]   It there held that the Terra Directors had

> "forfeited any right to a pre-award judicial challenge to their alleged obligation to arbitrate by waiting for months or years to seek a stay.  Hernandez and Arzú have been parties to the arbitration for several years, and Sagastume and Mendez have been for more than six months. What is more, [the Terra Directors] did not file this action until the eve of a merits hearing on, among other things, the very issue they seek to litigate here, which strongly suggests gamesmanship. . . . [The Terra Directors] challenged the arbitration panel's authority over them only *before the arbitration tribunal*, implicitly consented to the panel resolving the issue, participated in the arbitration, and did not seek judicial relief until now. They forfeited their right to seek judicial relief, and this last minute petition for a stay must be dismissed."[25]

---

[21]   Petitioners' original statement of claims, filed in February 2021, named Jorge Hernandez and Alberto Arzú as respondents.   Dkt 259-5.  The ASOC added claims against Alejandro Sagastume, and William Mendez.

[22]   Dkt 259-48.

[23]   *See* Dkt 260-2.

[24]   *Hernandez v. Telecom Bus. Sol., LLC*, No. 24-cv-3457 (LAK), 2024 WL 3401092 (S.D.N.Y. July 12, 2024).

[25]   *Id.* at *3.

8

In July 2024, the parties participated in a four-day Phase 2 merits hearing before the Tribunal, during which the parties presented argument and called and questioned witnesses.[26] The parties subsequently filed extensive post-hearing briefing, and the Tribunal conducted additional hearings.[27]

On March 24, 2025, the Tribunal issued its fifth partial final award ("5thPFA"). With respect to the Company Sale Claims, the Tribunal held that Respondents were in ongoing breach of the SHA for refusing to sell the Company,[28] the award of damages was not barred as a consequence of the FPFA's award of specific performance,[29] and Respondents' objections to Petitioners' damages methodology were overruled,[30] and it directed that the proceeds of an eventual Company sale should be placed in escrow.[31] With respect to the Company Obligation Claims, the Tribunal held that Respondents wrongfully had refused to permit the Company to honor obligations that it owed.[32] With respect to the Derivative Claims, the Tribunal held that Respondents improperly had used

---

[26]

Dkts 261-49; 262-1; 262-2; 262-3.

[27]

*See* Dkt 258 at 25–27.

[28]

5thPFA at ¶¶ 12–21

[29]

*Id.* at ¶¶ 48–55.

[30]

*Id.* at ¶¶ 22–47, 56–60.

[31]

*Id.* at ¶¶ 61–67.

[32]

*Id.* at ¶¶ 108–62.

Company resources to fund cell tower developments without Petitioners' authorization,[33] Respondents were enjoined from transferring monthly payments from the Company to DTH subject to certain exceptions,[34] and Respondents were held obligated to respect an "offset right" owed to the Company and pay $6.58 million owed the Company into escrow.[35]

With respect to the Terra Directors, the Tribunal ruled that it had jurisdiction to determine Petitioners' claims against Jorge Hernandez under the doctrine of direct benefits estoppel, but that it did not have jurisdiction to hear claims against the other Terra Directors.[36]  Next, the Tribunal concluded that Hernandez had caused all of the breaches giving rise to the Company Sale, Company Obligation, and Derivative Claims in order to benefit himself and DTH, and that he and DTH therefore were liable for tortious interference.[37]  The Tribunal further concluded that Hernandez and DTH were liable for punitive damages based on Hernandez having (1) ousted Company management and filing fabricated criminal complaints against them,[38] (2) procured a fraudulent legal opinion with the intent to defraud the Tribunal,[39] (3) caused the publication online of false

---

[33]

   *Id.* at ¶¶ 76–86.

[34]

   *Id.* at ¶¶ 87–93.

[35]

   *Id.* at ¶¶ 94–107.

[36]

   *Id.* at ¶¶ 163–71.

[37]

   *Id.* at ¶¶ 172– 95.

[38]

   *Id.* at ¶¶ 210–13.

[39]

   *Id.* at ¶¶ 214–17.

10

allegations against Petitioners, Company management, and Tribunal members to obstruct the sale of the Company,[40] and (4) caused the filing and prosecution of the Foreign Arbitrations.[41]

In addition to various injunctive and declaratory relief, the 5thPFA awards $300,749,761 in damages to Petitioners, including $25,166,643 in punitive damages.[42]  It provides that the obligors of the award are Terra, DTH, and Hernandez, jointly and severally.[43]

Following the issuance of the 5thPFA, Petitioners moved to confirm the award under the Federal Arbitration Act (the "FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").[44]

## *Discussion*

### I.    *Legal Standard*

Arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[45]  An award should be confirmed so long as there is a "'barely colorable justification'"

---

[40]    *Id.* at ¶¶ 218–71.

[41]    *Id.* at ¶¶ 272–84.

[42]    5thPFA at 191–98.

[43]    *Id.*

[44]    Dkt 257; *see* Dkt 258 at 32–35.

[45]    *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997)).

for the outcome that the arbitrator reached, even if the Court "disagree[s] with it on the merits."[46]

There are four grounds on which an arbitration award may be set aside under the FAA: (1) "corruption, fraud, or undue means," (2) "evident partiality or corruption in the arbitrators, or either of them," (3) "misconduct [by the arbitrators] in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy," or (4) arbitrators' actions that "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."[47]   In addition, Article V of the New York Convention provides seven grounds upon which an arbitral award may not be enforced.[48]  And atop these discrete grounds is an "interpretive gloss" that contemplates vacatur where an award was rendered "in manifest disregard of the law."[49]

Satisfying these standards has been described as a "heavy burden" that requires "more

---

[46]

*Landy Michaels Realty Corp. v. Local 32B–32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)); *see also Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (Kaplan, J.) ("The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the [FAA]." (internal citations omitted)).

[47]

9 U.S.C. § 10(a)(1)–(4).

[48]

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013).

[49]

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340, 346 n.10 (2d Cir. 2010); *cf. Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662 (2010) (explaining that "manifest disregard" does not amount to a fifth ground for vacatur "separate from those enumerated in the [FAA]").

than error or misunderstanding with respect to the law."[50]  Judicial confirmation of an arbitration award is considered "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."[51]

## II.    Respondents' Objections

Respondents raise a number of arguments in support of their contention that the Court should not confirm the 5thPFA: (1) the Tribunal exceeded its power in awarding relief not requested by Petitioners, (2) the 5thPFA is not a final award, (3) the Company Sales damages were awarded in manifest disregard of New York contract law, and (4) multiple grounds for refusal offered in Article V of the New York Convention apply.  The Court assesses each in turn.

### A.    Exceeded Power

Respondents first argue that the Tribunal exceeded its power in awarding damages and injunctive relief for the Company Sale Claims.  In Respondents' view, the Tribunal identified breaches of contract never claimed by Petitioners, formulated a damages calculation inconsistent with Petitioners' damages model, improperly "pre-dated the vast majority of damages to 2021,"[52] and granted equitable relief that Petitioners did not seek.

---

[50]

*T.Co Metals, LLC*, 592 F.3d at 339 (quoting *Stolt–Nielsen*, 548 F.3d at 91–92); *see also VRG Linhas Aereas*, 717 F.3d at 325.

[51]

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

[52]

Dkt 319 at 12–14.

The SHA states that "[t]he arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association [(the "AAA Commercial Rules)]."[53]  Those rules state that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."[54]  Respondents do not identify any authority indicating the Tribunal was limited, in fashioning remedies, to those specifically proposed by Petitioners.  Moreover, for the reasons set forth in Petitioners' briefing,[55] the damages and injunctive relief awarded by the Tribunal are tethered to the Company Sale Claims stated in the ASOC.

Respondents have not shown that the Tribunal acted improperly, much less without sufficient justification.  Accordingly, the Tribunal did not exceed its powers in awarding the relief ordered in the 5thPFA.

## B.    Finality

Respondents argue that the 5thPFA is not a mutual, final, and definite award.  They assert that the damages award is not final because it did not account for various yet-to-be-determined deductions.  The 5thPFA states:

> "*Even with deduction of all escrows in addition to transfer taxes*, Respondents' projection in 2021 and again in 2024 was that net proceeds would have been $417,414,456.43, of which [Petitioners]' pro rata share (44.55%) would have been

---

[53]    Dkt 259-1 (hereinafter, "SHA") at 49.  The Tribunal applied the 2013 version of the AAA Commercial Rules. 5thPFA at ¶ 9.

[54]    *See* Dkt 405-1 ("AAA Commercial Rules (2013)") at Rule 47(a).

[55]    Dkt 404 at 6–12.

> $185,958,140 – slightly higher than the $185,752,900 Claimants seek as Company
> Sale damages. We see this as a validation of Claimants' claim that a Company Sale
> at that time would have yielded for them 'at least' $185,752,900, and we will sustain
> the Claimants' Company Sale breach claims for $185,752,900."[56]

In sum, the Tribunal accounted for transfer taxes and other deductions in its damages calculation. While Respondents may disagree with the Tribunal's conclusion, that disagreement does not affect the finality of the 5thPFA.

      Respondents contend also that the damages award is not final because it may be subject to future setoff by any damages awarded on their stayed counterclaims.[57] The mere possibility — which Respondents state is "unlikely"[58] — that Respondents' counterclaims may be adjudicated and yield a damages award in the future does not affect the finality of the 5thPFA's damages award. To hold otherwise would allow Respondents to avoid confirmation of a damages award so long as they refuse to fulfill the conditions necessary to lift the stay on their counterclaims.

      Respondents argue next that the Tribunal awarded equitable relief — including the order to place proceeds from a Company sale into escrow — that is not final. Respondents state conclusively that this relief is "interim in nature," but do not explain why this is so.[59] The injunctive relief awarded in the 5thPFA, including the escrow provision, is permanent in nature.

      Accordingly, the 5thPFA is a mutual, final, and definite award.

---

[56]    5thPFA at ¶ 39 (citation omitted).

[57]    Dkt 319 at 18.

[58]    *Id.*

[59]    *Id.*

C.    *Manifest Disregard of the Law*

Respondents argue that the Tribunal "manifestly disregarded New York law requiring the interpretation of every word in a contract,"[60] requiring vacatur of the damages awarded for the Company Sale Claims.

"[R]eview under the doctrine of manifest disregard is 'severely limited.'  It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare."[61]  Respondents' argument merely rehashes arguments considered and rejected by the Tribunal.  The Tribunal did not disregard New York law or words in the SHA — it applied New York law, analyzed the contractual language, and ultimately rejected Respondents' preferred interpretation of the SHA.[62]

Accordingly, the Tribunal did not act in manifest disregard of the law in issuing the 5thPFA.

D.    *New York Convention*

Under the New York Convention, a court must confirm an arbitral award "unless it finds one of seven grounds for refusal offered in Article V of the Convention.  'Given the strong public policy in favor of international arbitration,' the party seeking to avoid summary confirmance

---

[60]

*Id.*

[61]

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989)).

[62]

5thPFA at ¶¶ 41–47.

of an arbitral award has the heavy burden of proving that one of the seven defenses applies."[63]

Respondents argue that three grounds for refusal apply: the public policy defense,[64] the incapacity defense,[65] and the notice and opportunity to be heard defense.[66]

### 1.   Public Policy Defense

Article V allows that recognition and enforcement of an arbitral award may be refused if it "would be contrary to the public policy" of the country where recognition and enforcement is sought.[67]   The Second Circuit "has unequivocally stated that the public policy defense should be construed narrowly. It should apply only where enforcement would violate our 'most basic notions of morality and justice.'"[68]

Respondents argue that the public policy defense applies because the Tribunal's award of damages in the 5thPFA and specific performance in the FPFA arising from the Company Sale Claims effectively grants double recovery to Petitioners.   But the 5thPFA guards against this

---

[63]

> *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013) (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)).

[64]

> New York Convention, art. V(2)(b), June 10, 1958, 21 U.S.T. 2517 (hereinafter, "New York Convention").

[65]

> *Id.* at art. V(1)(a).

[66]

> *Id.* at art. V(1)(b).

[67]

> *Id.* at art. V(2)(b).

[68]

> *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 152 (2d Cir. 1984) (quoting *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir.1975)).

exact concern.  The 5thPFA provides that, if and when the Company is sold, the proceeds of the sale will be placed into escrow as security for the monetary damages awarded to Petitioners and distributed so that there is no double recovery.[69]  Furthermore, any speculative possibility of double recovery would not violate the most basic notions of morality and justice such that the public policy defense could apply.

Respondents argue also that the public policy defense applies because the Tribunal allegedly disregarded requirements under the British Virgin Island ("BVI") Companies Act for bringing a derivative action.  This technical dispute does not warrant application of the public policy defense because (1) it concerns the public policy of the BVI, not the country where recognition is sought (the United States), and (2) it does not implicate the most basic notions of morality and justice such that the public policy defense could apply.

### 2.    *Incapacity Defense*

Article V allows that recognition and enforcement of an arbitral award may be refused if the parties to the agreement "were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made."[70]  Respondents argue that this defense applies because Petitioners lacked the capacity to bring the Derivative Claims under BVI law and therefore were not entitled to damages arising from those claims.

---

[69]      5thPFA at ¶ 67.

[70]      New York Convention at art. V(1)(a).

18

Respondents' argument flagrantly misconstrues the meaning of the provision. The incapacity defense requires the party resisting enforcement to demonstrate that it was under some incapacity at the time it entered into the arbitration agreement such that the agreement was not valid.[71] It has nothing to do with the capacity of parties to an agreement to bring certain categories of claims — which is a legal issue properly reserved to the arbitrators. Respondents offer no authority to the contrary.

### 3.  *Notice and Opportunity to be Heard Defense*

Article V allows refusal of recognition and enforcement of an arbitral award may be refused if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."[72] Respondents do not argue that they lacked notice of the Tribunal's proceedings or that they could not present their case before the Tribunal. Indeed, the Tribunal conducted extensive hearings over several days, and supplemented those hearings with multiple opportunities for post-hearing briefing. Instead, they suggest that this defense applies because the Tribunal awarded unasked for relief, depriving them of notice and an opportunity to be heard on the propriety of that relief. But Respondents identify no authority supporting the argument that a court may refuse to confirm an award on this basis, although they do cite a Second Circuit case for the proposition that "unasked

---

[71]     *See, e.g., CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 652 (S.D.N.Y. 2018).

[72]     New York Convention at art. V(1)(b).

for relief should not be granted."[73]  But that decision did not frame that proposition as a matter of

due process.  In fact, it made clear that "a court can grant any relief to which a prevailing party is

entitled, whether or not that relief was expressly sought in the complaint."[74]  As set forth above, the

AAA Commercial Rules broadly authorize arbitrators to "grant any remedy or relief that they deem[]

just and equitable and within the scope of the agreement of the parties."[75]  Moreover, the relief

granted was tethered to the claims in the ASOC,[76] providing Respondents with ample notice.

* * *

            Accordingly, Respondents have fallen far short of satisfying the heavy burden that

any of the seven grounds for refusal offered in Article V of the New York Convention apply here.


III.    *Hernandez's Objections*

            Hernandez argues that the Court should vacate or decline to enforce the 5thPFA as

it applies to him because the Tribunal lacked jurisdiction over him.  The Court first assesses the

degree of deference owed to the Tribunal's determination and then proceeds to the merits of

Hernandez's argument pursuant to the applicable standard.  The Court finally assesses Hernandez's

non-jurisdictional objections, which are similar to those lodged by Respondents.

---

[73]
        *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004).

[74]
        *Id.*

[75]
        AAA Commercial Rule 47(a) (2013).

[76]
        *See* Dkt 404 at 6–12.

A.    *Deference to Tribunal*

In the July 12 Order, the Court held that the Terra Directors, "having forfeited their right to seek to stay the arbitration, . . . must await the tribunal's decision and then, if necessary, raise the issue in post-award judicial proceedings."[77]  The Court did not address whether and to what extent the Tribunal's ruling on arbitrability would be binding on this Court.  Hernandez argues that the Tribunal's decision must be reviewed *de novo*, while Petitioners argue that the Tribunal's conclusions are subject to the "very limited review" standard applicable to the 5thPFA overall.

Ordinarily, "arbitrability vis a vis a non-signatory is for the district court to decide."[78]  However, where a non-signatory to an arbitration agreement "put to the arbitrator the issue of arbitrability of the claims against him, he is wrong in claiming that the standard of review on that issue is *de novo*."[79]  Agreement to have the arbitrator decide the issue of arbitrability "may be implied from the conduct of the parties in the arbitration setting."[80]

---

[77]

*Hernandez*, 2024 WL 3401092 at *3.

[78]

*Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004).

[79]

*Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*, No. 02-cv-2820 (RWS), 2002 WL 31106409, at *3 (S.D.N.Y. Sept. 20, 2002); *see also Freight Drivers v. Kingsway Transports, Inc.*, No. 90-CV-593E, 1992 WL 281379, at *1 (W.D.N.Y. Aug.31, 1992) (when parties "submit the issue of arbitrability vel non to the arbitrator rather than reserving such for initial determination by a court, the review of the arbitrator's decision on such issue will be undertaken pursuant to the same deferential standard generally applied to an arbitrator's decision");

[80]

*George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*, 722 F.2d 1471, 1475 (9th Cir. 1984); *see also Loc. 36 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Whitney*, 670 F.3d 865, 869 (8th Cir. 2012); *Vic Wertz Distrib. Co. v. Teamsters Loc. 1038, Nat. Conf. of Brewery & Soft Drink Workers of the United States of Am. & Canada*, 898 F.2d 1136, 1140 (6th Cir. 1990) (same); *Jones Dairy Farm v. Loc. No. P-1236, United Food*

Here, Petitioners' original statement of claims named Jorge Hernandez as a respondent.[81]  In his response, filed on February 19, 2021, Hernandez objected to the Tribunal's jurisdiction over him, but he did not challenge its authority to resolve the issue of arbitrability.[82] Hernandez did not move to stay the arbitration proceedings until May 3, 2024,[83] and he did not object to the Tribunal's authority to decide the arbitrability of claims against him until May 20, 2024.[84]  As set forth in the July 12 Order, Hernandez "challenged the arbitration panel's authority over [him] only before the arbitration tribunal, implicitly consented to the panel resolving the issue, participated in the arbitration, and did not seek judicial relief until [May 2024]."[85]

Accordingly, Hernandez's conduct demonstrates that he agreed that the Tribunal may decide the issue of arbitrability, and the Court's review of that determination is subject to the same deferential standard generally applied to the 5thPFA.

B.    *Jurisdictional Analysis*

The Tribunal ruled that it had jurisdiction over Hernandez under the doctrine of direct benefits estoppel.  "To be bound under a theory of direct benefits estoppel, '[t]he nonsignatory

---

*& Com. Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175 (7th Cir. 1985).

[81]    Dkt 259-5.

[82]    Dkt 259-8 at ¶¶ 158–60.

[83]    *Hernandez*, 2024 WL 3401092 at *2.

[84]    Dkt 401-15 at ¶ 90.

[85]    *Id.* at *3.

beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit.'"[86]  The Tribunal ruled that this doctrine applied because Hernandez "personally secured the benefits the SHA conferred on Terra as a Shareholder," obtained the pecuniary benefits of the deal conferred on DTH as its sole owner, and obtained the power to select and direct managers of the Company and its subsidiaries.[87]

        Hernandez objects to the Tribunal's interpretation of the direct benefits estoppel doctrine and the factual conclusions underlying the Tribunal's decision.[88]  For example, Hernandez disputes "the Tribunal's incorrect factual findings" that he owns Terra and DTH and argues that he "has received no benefit that could be traced to the [SHA]."[89]  But he does not contend that any alleged error rises to the level of manifest disregard of the law.  As set forth above, review under this standard is "'severely limited'" and "highly deferential to the arbitral award."[90]  Hernandez has not shown — or attempted to show — that vacatur is warranted under this standard.

        Accordingly, vacatur of the Tribunal's ruling that it has jurisdiction over Hernandez

---

[86]

    *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68 (2d Cir. 2021) (alteration in original) (quoting *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd*, 954 F.3d 567, 572 (2d Cir. 2020)).

[87]

    5thPFA at ¶¶ 164–68.

[88]

    Dkt 399 at 16–21.

[89]

    *Id.* at 19–21.

[90]

    *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (quoting *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989)).

is not warranted.[91]


### C.    Non-Jurisdictional Objections

Like Respondents, Hernandez argues that Petitioners lacked the capacity to bring the Derivative Claims, the Tribunal exceeded its authority, and the Tribunal failed to issue a mutual, final, and definite award. To the extent those arguments mirror those raised by Respondents, they are without merit for the reasons stated above.

Hernandez does raise the distinct objection that the Tribunal exceeded its authority in purporting to bind Hernandez to the Tribunal's prior awards. The 5thPFA applies the restrictions and obligations imposed by the first four partial final awards to Hernandez and DTH.[92] Hernandez argues that the Tribunal improperly awarded this relief without first affording him notice and an opportunity to be heard. But, like Respondents, Hernandez was on notice of the claims against him and had ample opportunity to be heard before the Tribunal. The Tribunal had broad authority to award relief it deemed "just and equitable."[93] And relief awarded in the first four partial final awards is tethered to the claims made and the relief sought against Hernandez in the ASOC.[94]

Hernandez argues also that the SPFA and TPFA cannot be applied to him because

---

[91]

The parties dispute also whether the Tribunal could have exercised jurisdiction over Hernandez under an alter ego theory. But the Tribunal did not reach that question. *See* 5thPFA at ¶ 168 n.44. The Court cannot — and, given its ruling here, need not — confirm the 5thPFA based on a doctrine not relied upon by the Tribunal.

[92]

5thPFA at 191.

[93]

AAA Commercial Rule 47(a) (2013).

[94]

*See* Dkt 369-12 at ¶¶ 301–498; *id.* at 109–114.

they were not final awards. Terra raised similar arguments for the first time in its appeal of the confirmations of those awards, but the Second Circuit held that Terra had forfeited this argument by failing to raise it before the district court.[95]   Hernandez now seeks to leverage the 5thPFA's application of the relief awarded in the SPFA and TPFA to him to raise this argument for the first time before this Court.[96]

"[A]n award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration."[97] The SPFA stayed Respondents' counterclaims in response to a motion for sanctions,[98] a permissible exercise of its authority under the AAA Commercial Rules.[99]   The Tribunal left no ambiguity that the SPFA was intended to be a final award, and that it was intended finally and definitely to resolve a separate and independent claim — Petitioners' motion for sanctions.[100]

Hernandez argues that the relief granted in the SPFA was not final because it "did not

---

[95]

*Telecom Bus. Sol.*, 2025 WL 1177768 at *1.

[96]

Petitioners argue that Hernandez should not be permitted to raise an argument that Terra waived. Dkt 412 at 18–19. Hernandez did not have an opportunity, however, to raise these arguments before this Court previously, and he therefore has not waived them.

[97]

*Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).

[98]

SPFA at ¶¶ 6–7.

[99]

*Telecom Bus. Sol.*, 2025 WL 1177768 at *1 ("American Arbitration Association Rule 47(a) provides that an 'arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties.' That broad authority includes the power to impose sanctions.").

[100]

SPFA at ¶ 4.

resolve a claim, was not the product of a request for a final award, and resulted from the tribunal improperly creating jurisdiction where non [*sic*] existed."[101]  These conclusory arguments are devoid of any elaboration or citation to authority, and they do not engage with the applicable standard.  To the extent Hernandez argues that the SPFA was not final because the stay of Respondents' counterclaims was not permanent, the SPFA itself contains the conditions for lifting the stay and "excludes, with finality, conditions for the lifting of the stay other than those stated in this Award."[102]

Furthermore, the SPFA's stay of counterclaims does not appear to impose any restriction or obligation on Hernandez, who has not asserted any counterclaims individually in the Arbitration.  Even if Hernandez were to prevail in arguing that the SPFA was not a final award, any relief would apply only to him, not to Respondents.  In any event, to the extent that the SPFA would apply to counterclaims Hernandez may seek to raise before the Tribunal in the future, the relief awarded therein is final.

With respect to the TPFA, Hernandez argues only that it "did not resolve a claim, creates an escrow account valued at USD 41,416,371.17 without providing the basis for calculating the number or allowing for modification of the amount if the damages claims in the foreign arbitrations were dismissed. [The TPFA] creates an injunction but puts compliance in the hands of Petitioners, making it functionally impossible for Mr. Hernández to ever comply."[103]

These bare arguments are unpersuasive.  First, the TPFA did resolve a separate and

---

[101]     Dkt 399 at 27.

[102]     SPFA at ¶ 8.

[103]     Dkt 399 at 33.

independent claim — Petitioners' application for an anti-suit injunction.[104]  Second, the TPFA did

provide a basis for calculating the amount to be deposited in escrow — half the money demanded

in foreign arbitrations — and prescribed the conditions for release of the funds from escrow.[105]

Third, the TPFA did not put compliance "in the hands of Petitioners."  It simply required

Respondents to supply proof of the termination of foreign arbitrations to Petitioners.[106]

Hernandez finally argues that the Tribunal impermissibly amended its first four partial

final awards.[107]  The 5thPFA states that the "restrictions and obligations imposed" by those awards

"are imposed upon Respondents Jorge Hernandez and DTH (to the extent not already imposed on

DTH) by this Award."[108]  In so doing, the 5thPFA did not alter or modify the relief awarded in the

first four final awards, which remain binding on Respondents.  Instead, the 5thPFA awarded new

relief against an individual who previously was not subject to the Tribunal's awards.

Accordingly, Hernandez's non-jurisdictional objections to the 5thPFA do not support

vacatur.

---

[104]     TPFA at ¶ 1.

[105]     *Id.* at 43.

[106]     *Id.*

[107]     Dkt 422 at 8–9.

[108]     5thPFA at 191.

*Conclusion*

For the foregoing reasons, the petition to confirm the fifth partial final award (Dkt 257) is granted and the petitions to vacate the fifth partial final award (Dkts 318, 399) are denied.

SO ORDERED.

Dated:    August 7, 2025

_____

Lewis A. Kaplan

United States District Judge