**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------ X
TELECOM BUSINESS SOLUTION, LLC, et al.,           :  Civil Action No.: 1:22-cv-01761
                                                  :
                          Petitioners,            :  Judge Lewis A. Kaplan
        v.                                        :
                                                  :  Magistrate Judge Robert W.
TERRA TOWERS CORP., et al.,                       :  Lehrburger
                                                  :
                          Respondents.            :
------------------------------------------------------------------ X
```

**PETITIONERS' MEMORANDUM IN OPPOSITION TO PERU NON-PARTIES'
RENEWED MOTION FOR RECONSIDERATION OF, OR ALTERNATIVELY,
FOR RELIEF FROM, APRIL 22, 2025 MEMORANDUM OPINION [DKT 295] AND
JULY 7, 2025 MEMORANDUM OPINION ON RECONSIDERATION [DKT 406]**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................4

    A. The Court Issues the April 22 Order and Denies the Peru Contemnors' First Motion for Reconsideration .................................................................................4

    B. The Peru Contemnors and Terra Engage in a Carefully Orchestrated Campaign to Seek Unwarranted Reconsideration for the Second Time..................6

III. LAW AND ARGUMENT ...............................................................................................8

    A. Legal Standard for Reconsideration Under Rule 54(b) ..........................................9

    B. The Peru Contemnors Fail to Establish Any Basis for the Extraordinary Relief of Reconsideration and Should Not Be Rewarded for Their Refusal to Purge Their Contempt.........................................................................................9

        1. The Peru Contemnors Have Already Raised—and the Court Has Already Rejected—Their Purported Basis for Reconsideration ............... 10

        2. The Peru Contemnors Admit They Can Terminate the Peru-Related BVI Action Themselves but Still Have Not Taken the Steps to Do So ................................................................................................................ 11

        3. The Peru Contemnors Have Not Complied with April 22 Order Merely by Foisting Their Obligations onto Peppertree and the Company .................................................................................................. 11

        4. The Peru Contemnors and Terra Directors Ignore the Fundamental Flaws in Their Proposed Approach............................................................ 13

        5. The Peru Contemnors' Additional Excuses for Non-Compliance Are Unavailing............................................................................................ 14

IV. CONCLUSION..............................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Commerzbank AG v. U.S. Bank, N.A.*,
   100 F.4th 362 (2d Cir. 2024) ..................................................................................................9

*Cyrus v. City of New York*,
   450 F. App'x 24 (2d Cir. 2011) ..............................................................................................15

*Geo-Group Commc'ns, Inc. v. Shah*,
   2020 WL 5743516 (S.D.N.Y. Sept. 25, 2020) ..............................................................9, 10, 15

**Other Authorities**

Federal Rules of Civil Procedure 54(b) ....................................................................................9, 10

Federal Rules of Civil Procedure 59(e) ..........................................................................................9

Federal Rules of Civil Procedure 60(b) ..........................................................................................9

Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ," and together with Peppertree, "Petitioners"), hereby submit their Memorandum in Opposition to the Renewed Motion for Reconsideration of, or Alternatively, for Relief from, April 22, 2025 Memorandum Opinion and July 7, 2025 Memorandum Opinion on Reconsideration (ECF Nos. 417-418, the "Renewed Motion") and Supplemental Memorandum in Support (ECF No. 424, the "Supplemental Memorandum"), filed by Magali Merino Ascarrunz and Alejandro Garzaro Perez (together, the "Peru Contemnors"), purporting to act on behalf of Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., and Collocation Technologies Peru, S.R.L. (together, the "Peru Subsidiaries").[1]

## I.     INTRODUCTION

There is no basis to reconsider nor grant relief from, this Court's April 22 Order. Indeed, the Peru Contemnors already sought the extraordinary relief of reconsideration once. They lost. Now, they have filed *yet another* request for reconsideration on the same basis, engaging in the same vexatious and unnecessary motion practice as Respondents, whom this Court again confirmed control the Peru Contemnors. *See* ECF No. 414 at 8-9 (finding that "as a practical matter," Hernandez retains control of Terra/DTH), and 12-13 (finding Hernandez retains control of the Peru Contemnors regardless of whether their affiliation is with DTH or the Peru

---

[1] This action arises from an arbitration administered by the International Centre for Dispute Resolution of the American Arbitration Association, captioned *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, AAA/ICDR Case No. 01-21-0000-4309 (the "Arbitration") and presided over by a panel of three highly qualified and experienced arbitrators (the "Tribunal"). The Arbitration is pending among Petitioners, Continental Towers LATAM Holdings Limited (the "Company"), and respondents Terra Towers Corp. and TBS Management, S.A. (collectively, "Terra"), respondent and Terra affiliate DT Holdings, Inc. ("DTH" and together with Terra, "Terra/DTH"), and Terra/DTH's controller, respondent Jorge Hernandez ("Hernandez" and together with Terra/DTH, the "Respondents"). Terra is the majority shareholder of the Company together with minority shareholders Peppertree and AMLQ. Unless otherwise noted, all defined terms used herein shall have the same meaning as in the Court's April 22, 2025 Order (ECF No. 295, the "April 22 Order").

Subsidiaries). This should come as no surprise because, as the Renewed Motion makes clear, Respondents and the Peru Contemnors are engaged in a carefully orchestrated scheme to avoid the consequences of their continued wrongdoing and the Court's April 22 Order. The Court should not permit them to do so.

The sole basis for the Peru Contemnors' Renewed Motion (supported by an unauthorized supplemental memorandum of law) is the recycled, phony argument that the Company and Peppertree—not the Peru Contemnors themselves—must be the ones to terminate and vacate the relief granted in the Peru-Related BVI Action, *even though the Peru Contemnors, and not the Company, wrongfully initiated, appeared in, and litigated that action*. In making this argument, the Peru Contemnors seek to avoid responsibility for both the improper collateral action they initiated and litigated in direct violation of the TPFA and in direct violation of the April 22 Order, and to improperly foist that responsibility and cost of compliance with the April 22 Order onto the Company and Petitioners. Importantly, the Peru Contemnors *admit* that there are multiple ways they can comply with the April 22 Order, including by making their own request for relief. They likewise *admit* that since the April 22 Order, they have taken absolutely no action in the Peru-Related BVI Action to even attempt to comply with the April 22 Order.

Nevertheless, they and their co-conspirators at Terra continue to insist that the Company—which neither has appeared nor has counsel in the Peru-Related BVI Action—rather than the Peru Contemnors who commenced the BVI Action, should seek the relief the Court expressly ordered the Peru Contemnors to seek.

The Peru Contemnors' excuse for their failure to pursue this approach is that they are no longer demanding an indemnity in exchange for their consent to an application by the Company.[2] But having the Company file an application in the BVI is not what the Court ordered and, in any event, overlooks Petitioners' legitimate objections to that approach because it would require the Company to retain new BVI counsel and incur unnecessary costs in connection with that application. The Peru Contemnors have a direct path to terminating the Peru-related BVI Action without burdening the Company. Their failure to take that path justified the imposition of sanctions and continues to justify denial of the Renewed Motion.[3]

Simply put, the Renewed Motion changes nothing. In defiance of the TPFA, the Peru Contemnors pressed ahead with the Peru Arbitration where decisions were issued; the Peru Contemnors initiated a new proceeding in the BVI, seeking recognition of those decisions; the Court issued its April 22 Order finding them in contempt; and they have done *nothing* since to even attempt to purge such contempt (while not even paying the monetary sanctions ordered by the Court), other than demanding that the Company and Peppertree make filings to clean up the mess the contemnors themselves created and were ordered to fix. Thus, the Renewed Motion does not justify the extraordinary relief of reconsideration.

Accordingly, the Court should deny the wasteful, unnecessary, and, indeed, vexatious Renewed Motion and award Petitioners all attorneys' fees and costs incurred in connection with

---

[2] The Court found that the Peru Contemnors' indemnity demand was "just a bald faced attempt to extract something to which they are not entitled in exchange for doing what they have a legal obligation to do." ECF 406 at 10.

[3] Notably, the other BVI Contemnors, including Terra/DTH and Hernandez, also remain in contempt with respect to the El Salvador-Related BVI Action, which they likewise have failed to terminate and to seek vacatur of the relief granted therein. Indeed, Terra/DTH, Hernandez and the other BVI Contemnors have proposed no course of action to comply with the Court's April 22 Order with respect to the El Salvador-Related BVI Action, nor have they, to Petitioners' knowledge, made any filing in that action in an attempt to comply with the April 22 Order.

both the Renewed Motion and seeking termination of, and vacatur of the relief the Peru Contemnors obtained in, the Peru-Related BVI Action.

## II. FACTUAL BACKGROUND

### A. The Court Issues the April 22 Order and Denies the Peru Contemnors' First Motion for Reconsideration

After fulsome proceedings, the Court issued its April 22 Order, finding the BVI Contemnors—including the Peru Contemnors, Terra, DTH, and Hernandez—in contempt of its judgment confirming the TPFA and ordering them to terminate and vacate any relief obtained in the Peru-Related BVI Action by May 5, 2025, or be subject to escalating daily sanctions. ECF No. 295 ¶¶ 6.1, 7.18. The BVI Contemnors did *nothing* to comply and remained in contempt.

On May 20, 2025, the Peru Contemnors filed their first Motion for Reconsideration of the April 22 Order. ECF Nos. 322 and 323 (the "First Motion"). Therein, they advanced their argument that the Company and Peppertree should seek relief in the Peru-Related BVI Action ("Option 3"). ECF No. 323 at 9-11 (relying on ECF No. 310-4 (Peru Contemnors' May 5 Letter expressly stating at pp. 7-8 that the Company and **Peppertree** should seek relief)); ECF No. 326. Importantly, they relied on the Nicholson Declaration from their BVI counsel at Walkers, which confirmed that one of the options to make compliant filings was that the Peru Contemnors and Peru Subsidiaries—which initiated the Peru-Related BVI Action and obtained relief therein—make a filing themselves to set aside the recognition order ("Option 1"). ECF No. 326 ¶ 10; *see also* ECF No. 310-6 at 8-9 (Board Resolution confirming that the Peru Subsidiaries and Peru Contemnors should terminate the Peru-Related BVI Action).

Petitioners opposed the First Motion, arguing that the Peru Contemnors could not excuse their non-compliance by arguing that the onus for causing the termination of the Peru-Related BVI Action is somehow on the Company and Peppertree. ECF No. 353 (the "First Opposition") at 16.

In support of the First Opposition, Petitioners submitted the Tollis Declaration, which confirmed that Option 1 proposed by Walkers, whereby the Peru Contemnors and Peru Subsidiaries would seek relief in the Peru-Related BVI Action themselves, was most appropriate here, where the Court expressly ordered the BVI Contemnors to seek relief themselves and the Company did not even have BVI counsel.  ECF No. 354; *see also* ECF No. 326-2 (May 9, 2025 Maples & Calder Letter).[4] While this briefing was pending, the Peru Contemnors (and other BVI Contemnors) did nothing to comply with the April 22 Order.

On July 7, 2025, the Court denied the First Motion.  ECF No. 406 ("Reconsideration Order" and with the April 22 Order, the "Orders").  The Court rejected the Peru Contemnor's argument that they had complied with the April 22 Order merely by proposing that the Company and Peppertree make a filing in the Peru-Related BVI Action.  *See generally id*.  The Court also made clear that it was not deciding whether Option 3 was "the best and most expeditious means of accomplishing in the BVI what this Court has required."  *Id*. at 10.

After the Reconsideration Order was issued, the Peru Contemnors (and other BVI Contemnors) still did nothing to comply with the Court's April 22 Order.  Their current claims that they were "working diligently with the Continental Board to effectuate the intent of their resolutions aimed at complying with the injunction granted in the April 22 Contempt Order" (ECF No. 418 at 5) ring hollow as they made absolutely no filings in the Peru-Related BVI Action to meet their obligations and purge their contempt.

---

[4] *See also* ECF No. 305 (Petitioners' opposition to Peru Contemnors' Letter Motion for Extension of Time to Complete Compliance with the April 22 Order, in which Petitioners first argued that the Peru Contemnors were obligated to make the required filing in the Peru-Related BVI Action themselves); ECF No. 306-7 (May 9, 2025 Maples & Calder letter confirming that the Peru Contemnors and Peru Subsidiaries could seek the ordered relief themselves without improperly foisting their responsibilities onto Peppertree and the Company, who did not have counsel and had not appeared in the Peru-Related BVI Action).

### B. The Peru Contemnors and Terra Engage in a Carefully Orchestrated Campaign to Seek Unwarranted Reconsideration for the Second Time

Just days before the Peru Contemnors filed the Renewed Motion, they engaged in a carefully orchestrated series of communications with their co-conspirators at Terra to set the stage for the Renewed Motion, belying any suggestion that they are not acting in concert with each other. On the evening of Friday July 18, 2025, the Terra Directors sent an email to the Peru Contemnors ratifying Option 3, namely "(iii) that respondents, i.e. the Company, ***Telecom Business Solution LLC and Latam Towers LLC (the latter two being 'Peppertree')***, be the ones applying to set aside the Recognition Order . . . ." ECF No. 419-1 at 2 (emphasis added). On the morning of Monday July 21, 2025, Alejandro Garzaro, one of the Peru Contemnors, sent a letter to the Company's Board purportedly confirming the Peru Contemnors' "willingness to cooperate in seeking to set aside the Recognition Order" by pursuing Option 3, in which the Company and Peppertree, and not the Peru Contemnors, would seek relief. ECF No. 419-2 at 6.

Although the Peru Contemnors requested that the Peppertree Directors confirm their agreement to this same approach that Petitioners had previously rejected in May 2025, they did not wait for a response. Rather, that same day, they filed their Renewed Motion, which was based solely on the sham July 18 and 21 correspondence. *See generally* ECF No. 418.

On July 25, 2025, the Peppertree Directors sent correspondence directed to the Terra Directors related to the required termination of the BVI Actions, copying the Peru Contemnors because certain portions of the correspondence related to the Peru Contemnors' request. ECF No. 424-1 (the "July 25 Board Correspondence"). Therein, the Peppertree Directors again rejected Option 3 for the same reasons they had set forth in both prior correspondence to the Peru Contemnors and Terra and filings with this Court—namely, that the obligation to seek relief in the Peru-Related BVI Action belonged to the BVI Contemnors, *not* the Company or Petitioners, and

6

as Maples & Calder's communications made clear, the Peru Contemnors and Peru Subsidiaries were perfectly capable of seeking the required relief themselves. *Id*. at 1-2. The Peppertree Directors highlighted additional defects in Option 3, including that (i) it required the Company to engage BVI counsel, which would be problematic since Terra had previously refused to permit the Company to pay its prior BVI counsel, and (ii) it improperly relied on the Peru Contemnors' counsel to draft a filing on behalf of the Company, whose interests it could not adequately advance. *Id*. at 2. As a result, and given that it was abundantly clear that the BVI Contemnors had no intention of complying with the April 22 Order, Peppertree advised that, as the Peru Contemnors and Terra had repeatedly demanded, Peppertree intended to make filings in both the Peru-Related BVI Action and El Salvador-Related BVI Action to seek the ordered termination of those actions and vacatur of any relief issued therein. *Id*. It also demanded that the BVI Contemnors (not just the Peru Contemnors) agree to pay all attorneys' fees and costs incurred with respect to obtaining relief in the BVI Actions. *Id*. AMLQ confirmed its agreement with Peppertree's position. Ex. 1.[5]

On July 30, 2025, without leave of Court and only three business days before Petitioners' Opposition to the Renewed Motion was due, the Peru Contemnors filed their Supplemental Memorandum in support of the Renewed Motion. ECF No. 424. Notably, they did not advance any new or different arguments. They merely rehashed everything they had said before in multiple filings, dating back to early May 2025, once again arguing that they would only agree to proceed with Option 3 and that Petitioners' desire not to do so somehow excused them of any obligations to comply with the April 22 Order. *See generally id*. Importantly, while the Peru Contemnors attempted to use the July 25 Board Correspondence (which took the same position Petitioners had expressed multiple times before) as a basis for the Supplemental Memorandum, the Supplemental

---

[5] Exhibit references herein refer to exhibits to the Declaration of Katherine M. Poldneff, filed herewith.

Memorandum was not limited to a discussion of the July 25 Board Correspondence, which easily could have been addressed on reply. Remarkably, in the Supplemental Memorandum, the Peru Contemnors claim—and expect this Court to believe—that the carefully orchestrated July 18 and 21 correspondence, followed closely by the July 21 filing of the Renewed Motion was not a "coordinated effort" but merely "coincidental". ECF No. 424 at 6-7. This claim is reminiscent of what this Court has previously referred to as the "immaculate incarceration."

On August 4, 2025, the Terra Directors responded, yet again demanding that Peppertree agree to Option 3, proposed by the Peru Contemnors' personal counsel at Walkers. Ex. 2 at 3-6. Notably, they failed to address any of the issues Peppertree identified in its July 25 Board Correspondence relating to a potential Company filing, including failure to propose Company counsel to make such a filing. *See id*. They also affirmatively misrepresented this Court's July 7, 2025 Order by claiming the Court "assume[d] what this Court has required is to pursue the route recommended by the Peru Contemnors' BVI lawyer" (*id*.), when it expressly stated that ***it did not decide*** "the best and most expeditious means of accomplishing in the BVI what this Court has required". ECF No. 406 at 10 (finding the court "assume[d] *(without deciding)*" the best course of action (emphasis added)); *see also* ECF No. 415 at 17 n.53. On August 12, 2025, the Peppertree Directors responded, advising that the parties had already repeatedly expressed their positions on these issues and again rejecting Option 3. Ex. 2 at 2-3. They also reiterated that unless the BVI Contemnors themselves make the necessary filings in the BVI Action in compliance with the April 22 Order—which they are fully capable of doing—Petitioners will be forced to make those filings themselves and seek all related fees and costs. *Id*. at 3.

### III.  LAW AND ARGUMENT

The Renewed Motion should be denied because the Peru Contemnors provide no legal basis for the extraordinary relief of reconsideration, let alone upon a *second* request on the very

8

same basis as the first. The Court has already rejected the Peru Contemnors' argument that attempting to impose their obligations on the Company and Peppertree somehow purges their contempt under the April 22 Order. That outcome should stand.

### A.     Legal Standard for Reconsideration Under Rule 54(b)

Although the Peru Contemnors again moved for reconsideration and, alternatively, amendment pursuant to Federal Rules of Civil Procedure 54(b), 59(e), and 60(b), as the Court found in its Reconsideration Order, only Rule 54(b) governs here. ECF 406 at 5. Under Rule 54(b), courts are permitted (but not required) to reconsider or revise any decision or order before the entry of final judgment. *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 378 (2d Cir. 2024). Courts may revise nonfinal decisions when there is a change in controlling law, new evidence is available, or to correct clear error or manifest injustice. *Geo-Group Commc'ns, Inc. v. Shah*, 2020 WL 5743516, at *10 (S.D.N.Y. Sept. 25, 2020) (citing *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).[6]

### B.     The Peru Contemnors Fail to Establish Any Basis for the Extraordinary Relief of Reconsideration and Should Not Be Rewarded for Their Refusal to Purge Their Contempt

The Peru Contemnors fall far short of the high standard that applies here. They fail to point to any controlling decisions or facts that the Court originally overlooked that might reasonably be expected to alter the Court's Orders. Nor have they identified *any* new relevant evidence, clear error, or manifest injustice warranting reconsideration of not one but *two* prior orders of this Court. The sole basis for the Peru Contemnors' second request for reconsideration is their stale but oft-

---

[6] To the extent the Court considers the Renewed Motion pursuant to Federal Rules 59(e) or 60(b), the Renewed Motion still should be denied. The strict standards applicable to those rules are fully set forth in Petitioners' First Opposition and incorporated by reference herein. *See* ECF No. 353 at 6-10. Because the Peru Contemnors only seek to relitigate a decided issue and did not (and cannot) show that the Court overlooked any decisions or evidence, or made a legal or factual mistake, the Peru Contemnors fail to establish a basis for reconsideration under any applicable standard.

repeated argument that the Company and Peppertree should be responsible for and pay the costs of terminating the improper Peru-Related BVI Action. *See generally* ECF No. 418. This is not a basis for the Court to grant the extraordinary remedy of reconsideration. Indeed, there is nothing to reconsider—the Peru-Related BVI Action was wrongfully maintained by the Peru Contemnors and Terra; it is their responsibility under the TPFA and this Court's April 22 Order to shut it down and, per their own counsel (Walkers) they have a path to do so.

### 1. The Peru Contemnors Have Already Raised—and the Court Has Already Rejected—Their Purported Basis for Reconsideration

As a preliminary matter, the Peru Contemnors already raised this argument as a basis for reconsideration in the First Motion, which was already considered and denied by this Court. The law of the case doctrine governs Rule 54(b) motions and "[w]hen a court has ruled on an issue, that decision should generally be adhered to . . . unless 'cogent and compelling reasons militate otherwise.'" *Geo-Group Commc'ns, Inc. v. Shah*, 2020 WL 5743516, at *9 (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). That is, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted to battle for it again." *Id.* (quoting *Zdanok v. Glidden Co.*, 327 F.3d 944, 953 (2d Cir. 1964)). To grant reconsideration on these grounds would be "inconsistent with [] objectives of efficiency and finality." *Id.* (citing *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017)). Yet, in the First Motion, the Peru Contemnors already argued, as they do here, that the Company and Peppertree should make a filing in the Peru-Related BVI Action to comply with the April 22 Order. *See* ECF No. 323 at 9-11 (proposing the same Option 3 they advocate for now). The Court denied the First Motion and declined to decide whether the Peru Contemnors' proposed approach was either the best or most expeditious way to terminate the Peru-Related BVI Action and dismiss the recognition order. *See* ECF No. 406 at 9-10 (expressly noting that the Court did

not decide "the best and most expeditious means of accomplishing in the BVI what this Court has required"). Thus, the Peru Contemnors offer nothing new in their Renewed Motion. Not surprisingly, they offer no case law support for their argument that reconsideration is somehow warranted under similar circumstances. The Renewed Motion is anything but "compelling" and should be denied for this reason alone.

### 2. The Peru Contemnors Admit They Can Terminate the Peru-Related BVI Action Themselves but Still Have Not Taken the Steps to Do So

Moreover, as set forth in the First Opposition, what the Peru Contemnors continue to propose does not constitute compliance with the April 22 Order. *See* ECF No. 353 at 12. In the April 22 Order, the Court required that the Peru-Related ***BVI Contemnors*** (including the Peru Contemnors), not the Company and Petitioners, terminate the Peru-Related BVI Action and cause the vacatur of any relief granted therein. ECF No. 295 ¶ 6.1. It is beyond dispute that in the nearly four months since issuance of the April 22 Order, the Peru Contemnors have not only failed to do so, but also have failed to take any action at all in the Peru-Related BVI Action. Indeed, the Peru Contemnors' hollow claim that they "have done everything they can to facilitate Respondents' compliance with the [April 22] Order" (ECF 418 at 12) is undone by the fact that their own BVI counsel has admitted that they can easily make their own filing in the Peru-Related BVI Action seeking the required relief. *See* ECF No. 310-7 (describing the first option of "an application, by the applicants, the Peru Non-Parties to the BVI Commercial Court for an Order discharging the Recognition Order"); ECF No. 326 ¶ 10 (referring to "an application by the Applicants, the Peru Non-Parties, to the Commercial Court" as one of "three possibilities").

### 3. The Peru Contemnors Have Not Complied with April 22 Order Merely by Foisting Their Obligations onto Peppertree and the Company

The Peru Contemnors argue that they should be relieved of their obligations under the April 22 Order because they have agreed that Peppertree and the Company should pursue Option 3. *See*

11

*generally* ECF 424.[7] But as Peppertree explained (again) in the July 25 Board Correspondence, the Peru Contemnors' proposal to foist their obligation on the Company and Petitioners is simply insufficient and demonstrates that their real objective is to delay the vacatur of the orders entered against the Company in the BVI Actions in the midst of the sale process ordered by this Court. *See* ECF No. 424-1. The Peru Contemnors' unwillingness to properly comply with the April 22 Order is further demonstrated by their rigid and unreasonable objection to Peppertree's July 25 Board Correspondence, which they disingenuously complain was sent to "bully the Peru-[Contemnors] into continued non-compliance through . . . unreasonable and irrational demands." ECF 424 at 2. Not so. In the Board Correspondence, Peppertree merely advised that because the Peru Contemnors have remained in contempt for months and have refused to make their own compliant filing in the Peru-Related BVI Action, Peppertree is now forced to do so itself. *See* ECF No. 424 at 8; ECF No. 424-1 at 2. The Peru Contemnors' apparent opposition to this course of action is incredible given that they have repeatedly suggested that Peppertree, as a respondent in the Peru Arbitration, should seek relief. *See, e.g.*, ECF No. 310-4 at 6-7 (proposing "option (iii)" in which "respondents, i.e. the Company, Telecom Business Solution LLC and Latam Towers LLC (the latter two being **'Peppertree')**, be the ones applying to set aside the Recognition Order" (emphasis in original)); ECF No. 310-5 at 4 (Peru Contemnors' May 8, 2025 Board correspondence again proposing that the Company ***and Peppertree*** make an application in the Peru-Related BVI Action). Now that Peppertree is forced to do so, the Peru Contemnors reverse course and claim that *only* the Company should seek relief.

---

[7] It is telling that in their May 5, 2025 letter explaining the three potential options for compliant filings in the Peru-Related BVI Action, the Peru Contemnors asked the Board which of the three options it wanted them to pursue (*see* ECF No. 310-4 at 7); however, now, the Peru Contemnors—who do not represent the Company or its best interests—*demand* that the Company agree to the option they choose.

12

### *4.  The Peru Contemnors and Terra Directors Ignore the Fundamental Flaws in Their Proposed Approach*

In addition, the Peru Contemnors' proposed option conveniently ignores key facts Petitioners have repeatedly raised that militate against a Company filing. *See, e.g.*, ECF No. 326-2; ECF No. 424-1; Ex. 2 at 3-6. Specifically, the Company does not have BVI counsel, and the last time the Board agreed to engage BVI counsel—which was only necessary to oppose the prior improper BVI action initiated by Respondents' agent Juan Francisco Quisquinay, which has since been enjoined by this Court—***Terra refused to permit the Company to continue paying them***. ECF No. 424-1 at 2. The Peru Contemnors' personal counsel cannot represent the Company, since that counsel initiated the Peru Contemnors' suit against the Company, thereby underscoring the vast divergence between their interests and those of the Company. In addition, the Board must agree on the substance of any filings made by the Company, which is certainly not as simple as merely agreeing to anything the Peru Contemnors' personal counsel—who does not represent the best interests of the Company—proposes. It is not surprising that in all of their correspondence on these matters, neither the Peru Contemnors nor the Terra Directors even attempt to address these issues, merely demanding that Petitioners agree to whatever they propose.[8] Also, given the

---

[8] Rather than make any cognizable legal argument, in their Supplemental Memorandum, the Peru Contemnors resort to making multiple blatant misrepresentations regarding the July 25 Board Correspondence. For example, they claim the July 25 Board Correspondence is somehow "aggressive and hostile" and is purportedly meant "to essentially bully the Peru [Contemnors] into continued non-compliance" (ECF No. 424 at 2), even though it is directed to Terra (not the Peru Contemnors) and espouses the very same view Petitioners have communicated for months that the Peru Contemnors should make their own filing in the Peru-related BVI Action (*see* ECF No. 326-2, dated May 9, 2025), which the Peru Contemnors' counsel admitted was one available option. They also wrongly claim that the "Peppertree Directors [purportedly] delayed confirmation of, and agreement to, a proposed written resolution of the Continental Board requesting the Peru-Related BVI Action be vacated, dismissed, terminated and/or withdrawn," when the record demonstrates that the Peppertree Directors promptly agreed to such a Board resolution (although it certainly was not necessary) but exercised their rights to revise the proposed resolution rather than blindly signing anything the BVI Contemnors sent their way. *See* Ex. 4. Tellingly, this prior correspondence again demonstrates the carefully calculated nature of the Peru Contemnors' and Terra's actions as the proposed Board resolution was sent by Terra on Saturday May 3 (*id*. at 3), and referred to by the Peru Contemnors themselves in a letter to the Board dated Monday May 5 (ECF No. 310-4), which was immediately followed by their May 6 Letter Motion for Extension of Time to Comply with the April 22 Order (ECF No. 299), even though Peppertree willingly executed the wholly unnecessary resolution on May 5, the first business day after which it was sent (Ex. 4 at 2-3; *see also* Exs. 3, 5). The Peru Contemnors further misrepresent that Peppertree demanded only the Peru Contemnors pay their attorneys' fees to terminate the Peru-

Company's need for its own BVI counsel to enter an appearance to make such a filing, the Peru Contemnors' claim that "they will bear the cost of the application" (ECF No. 424 at 7) is simply not true, including because nowhere in their correspondence do they agree to pay the Company's counsel.[9]

### 5. The Peru Contemnors' Additional Excuses for Non-Compliance Are Unavailing

Finally, the Peru Contemnors' recycled arguments that the Court should reconsider or modify its Orders because the Peru Contemnors purportedly are unable to pay the ordered monetary sanctions[10] and it will take them more than two weeks to comply with the April 22 Order (ECF No. 418 at 12) are unavailing. If the Peru Contemnors cannot pay the monetary sanctions, the solution is to terminate the Peru-related BVI Action, not complain to the Court. But because they have done neither, they remain in contempt and if anything, further sanctions are warranted, not fewer.

In any event, the Peru Contemnors already made these arguments in the First Motion (*see* ECF No. 323 at 9-11), which was rejected by the Court. Indeed, in the Renewed Motion, the Peru Contemnors do not support these arguments in any way other than citing to their prior filings. *See*

---

Related BVI Action (ECF No. 424 at 10) when Peppertree properly claimed that the Peru-Related *BVI Contemnors* (including Terra/DTH and Hernandez) do so (ECF No. 424-1 at 2). In all events, none of these false characterizations are relevant to the Peru Contemnors' pending request for relief as they fail to relate to any applicable standard for reconsideration or amendment of the April 22 Order, and the Peru Contemnors do not even attempt to demonstrate otherwise.

[9] The Peru Contemnors again mischaracterize the July 25 Board Correspondence by claiming that Peppertree attempts to hold them responsible for the El Salvador-Related BVI Action. *See* ECF No. 424 at 9. Not so. The Peru Contemnors once again ignore that the July 25 Board Correspondence was directed to the Terra Directors (*see* ECF No. 424-1), and Terra, its affiliate DTH, and its controlling person Jorge Hernandez are *all* BVI Contemnors, who are responsible for the El Salvador-Related BVI Action. Thus, that correspondence addressed the termination of both of the BVI Actions, not just the Peru-Related BVI Action. The Peru Contemnors' repeated insistence that Board correspondence, which addresses multiple related issues the Board must consider, is somehow solely directed to and targeting them is demonstrably untrue.

[10] Notably, the Peru Contemnors somehow have the funds to pay their counsel in this action for filing endless, unwarranted reconsideration requests.

14

*id*.  Moreover, they do not support their contentions that they cannot pay with any evidence other than their own self-serving statements.[11]  And, as set forth above, remaking the same proposal that the Company and Petitioners assume the Peru Contemnors' compliance obligations the same day they filed their Renewed Motion does nothing to purge their continuing contempt.  The Peru Contemnors' restated and unsupported arguments thus fail to provide any basis for the Court to reconsider or amend its well-reasoned Orders, and the Court should not countenance the Peru Contemnors' wasteful and vexatious renewed attempt to do so.

In sum, the Peru Contemnors have failed to demonstrate a change in controlling law, new relevant evidence is available, or that reconsideration or amendment is warranted to correct a clear error in, or manifest injustice resulting from, the April 22 Order.  *See Geo-Group Commc'ns, Inc. v. Shah*, 2020 WL 5743516, at *10.  Accordingly, the Renewed Motion should be denied.  *See Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011) (affirming denial of motion for reconsideration where movant "fail[ed] to point to any case law or other relevant information that the district court overlooked," and his arguments merely "amount[ed] to a disagreement with the district court's conclusions").

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Peru Contemnors' Renewed Motion, award Petitioners all costs and fees incurred in connection with both the Renewed Motion and terminating and vacating any relief granted in the Peru-related BVI Action[12], and grant such other and further relief as this Court deems just and warranted.

---

[11] The Peru Contemnors falsely claim that the April 22 Order to pay fines for failure to terminate the Peru-Related BVI Action applies only to them.  ECF No. 424 at 3.  But the April 22 Order requires "each" contemnor to pay the escalating daily fine, including Terra, DTH, and Hernandez.  It is undisputed that none of the BVI Contemnors have paid the required fines, further thumbing their nose at this Court's orders.

[12] As the El Salvador-Related BVI Contemnors—including Terra/DTH and Hernandez—have also failed to take any actions or make any filings to comply with the April 22 Order with respect to the El Salvador-Related BVI Action,

15

Dated: August 12, 2025                           Respectfully submitted,

By: */s/ Michael N. Ungar*                       By: */s/ Gregg L. Weiner*
Michael N. Ungar                                 Gregg L. Weiner
(admitted *pro hac vice*)                        Andrew S. Todres
Katherine M. Poldneff                            Ethan R. Fitzgerald
**UB GREENSFELDER LLP**                          **ROPES & GRAY LLP**
1660 West 2nd Street, Suite 1100                 1211 Avenue of the Americas
Cleveland, Ohio 44113-1406                       New York, New York 10036-8704
Phone: (216) 583-7000                            Phone: (212) 596-9000
Fax:    (216) 583-7001                           Fax:    (212) 596-9090
mungar@ubglaw.com                                gregg.weiner@ropesgray.com
kpoldneff@ubglaw.com                             andrew.todres@ropesgray.com
                                                 ethan.fitzgerald@ropesgray.com

David A. Landman                                 Daniel V. Ward
**UB GREENSFELDER LLP**                          (admitted *pro hac vice*)
1700 Broadway, Suite 1802                        **ROPES & GRAY LLP**
New York, New York 10019-7710                    Prudential Tower
Phone: (917) 262-0470                            800 Boylston Street
Fax:    (917) 262-0480                           Boston, Massachusetts 02199-3600
dlandman@ubglaw.com                              Phone: (617) 951-7000
                                                 Fax:    (617) 951-7050
*Counsel for Petitioners Telecom Business*       daniel.ward@ropesgray.com
*Solution, LLC and LATAM Towers, LLC*

                                                 *Counsel for Petitioner AMLQ Holdings (Cay),*
                                                 *Ltd.*

---

Petitioners respectfully request that the Court likewise award them all attorneys' fees and costs incurred in connection terminating and seeking vacatur of any relief granted in that action. Should the Court so require, Petitioners would be happy to submit a fee application in connection with such fees and costs once incurred.

16

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on August 12, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

/s/ *Michael N. Ungar*
*Counsel for Telecom Business Solution, LLC
and LATAM Towers, LLC*