UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Telecom Business Solution, LLC, *et al.*, | Civil Action No.: 1:22-cv-01761 |
| Petitioners, | Judge Lewis A. Kaplan |
| v. | |
| Terra Towers Corp., *et al.*, | Magistrate Judge Robert W. Lehrburger |
| Respondents. | |

**PERU NON-PARTIES' REPLY TO PETITIONERS' RESPONSE [DKT 430] TO RENEWED MOTION FOR RECONSIDERATION OF, OR ALTERNATIVELY, FOR RELIEF FROM, APRIL 22, 2025 MEMORANDUM OPINION [DKT 295] AND JULY 7, 2025 MEMORANDUM OPINION ON RECONSIDERATION [DKT 406]**

Pursuant to Local Rule 6.3 and the *Stipulation And Order To Set Briefing On Peru Non-Parties' Renewed Motion For Reconsideration* (Dkt 426), the Peru Non-Parties reply to Petitioners' response (Dkt 430, 431, "**Response**") to the Peru Non-Parties' renewed motion for reconsideration (Dkt 417-419, "**Renewed Motion**") of: (i) the April 22, 2025 *Memorandum Opinion* (Dkt 295, "**Contempt Order**"), as it relates to them *only*; and (ii) the July 7, 2025 *Memorandum Opinion* denying reconsideration/modification of the Contempt Order (Dkt 406, "**July 7 Order**").

**INTRODUCTION**

Petitioners' Response (Dkt 430) mischaracterizes the record, omits critical facts, and is further evidence that Petitioners are not really interested in terminating the Peru-Related BVI Action. In the July 7 Order, the Court signaled that the "proximate barrier to compliance" with the Contempt Order is that Mr. Garzaro and Ms. Merino required a "broad liability waiver," which they promptly removed. What do Petitioners do? They try to move the goal posts, whine, and do

nothing but prevent actual compliance. Now, according to Petitioners, the "proximate barrier" is the course of action (Option 3) that the Court "assume[d] (without deciding) [is the] best and most expeditious means of accomplishing in the BVI what this Court has required." Option 3, which BVI counsel (Walkers) recommended as "the most straightforward, quickest, and most cost-effective route to achieving the objective," is the "issue" because according to Petitioners, Walkers also outlined another "option" (Option 1) (Dkt 326, ¶9). But Petitioners omit what Walkers said about Option 1, *i.e.*, that it is not likely to succeed, is not straightforward, would require oral argument, and may take some time to be heard. (Dkt. 310-7, ¶13, Dkt 326, ¶22). It appears Petitioners want to keep the Peru Non-Parties tied to this matter, and thus, they keep rejecting any opportunity to entertain Option 3, taking advantage of the fact that Option 3 requires their cooperation. The Peru Non-Parties have rightfully exercised the right to seek reconsideration once they removed the condition that led the Court to deny the first reconsideration motion and respectfully request that the Court reconsider its Contempt Order, as to the Peru Non-Parties only, as well as the July 7 Order.

## ARGUMENT

Petitioners are not being reasonable—they are taking an obstinate position that goes against the record evidence and which should not be condoned by this Court. The Peru Non-Parties seek renewed reconsideration because the July 7 Order identified an issue that, if eliminated, should lead to resolution of the contempt issue as it relates to the Peru-Related BVI Action:

> The Court assumes (without deciding) that the best and most expeditious means of accomplishing in the BVI what this Court has required is to pursue the route recommended by the Peru Contemnors' BVI lawyer – an application by the Petitioners with the expressed consent of the Peru Contemnors [Option 3]. …
> ***
> Even if Peru Contemnors are correct that they cannot terminate unilaterally the Peru-Related BVI judgment, their unreasonable insistence on a broad liability waiver appears to be **the proximate barrier** to compliance with the Court's order.

2

Dkt 406 at 10 (emphasis added). The Peru Non-Parties have eliminated that proximate barrier. (Dkt 418 at 4). This is new relevant evidence. The Peru Non-Parties have not engaged in vexatious and unnecessary motion practice. But Petitioners will not waste an opportunity to remind the Court of Respondents' actions in this case, accuse the Peru Non-Parties of purportedly engaging in an orchestrated scheme with Respondents, and now even characterize them as co-conspirators, for the purpose of maligning the Peru Non-Parties in the eyes of the Court. Petitioners disingenuously state the Peru Non-Parties did not wait for a response to their July 21 correspondence and proceeded to file the Renewed Motion. Had the Peru Non-Parties not timely sought renewed reconsideration, Petitioners would have been before the Court arguing that procedural deficiency.

Instead of stalling, Petitioners, and thus the Board, could have responded with a Resolution in early May expressly directing the option to pursue, whether it be Walkers' recommended Option 3, or Petitioners' preferred Option 1, without conditions. But that would have been too easy and would not have allowed Petitioners to continue to drag the Peru Non-Parties in their action.

After this Court issued its July 7 Order, the Peru Non-Parties confirmed to the Board they were and remain ready, willing, and able to move forward, that Option 3 is still the best course of action to terminate the BVI Action and vacate the Recognition Order, and they would do so ***unconditionally and without any request for waiver or release***. *See* Dkt 417-419 (July 21, 2025 renewed reconsideration filings); Dkt 424 at 5-6, 10-11 (July 30, 2025 supplemental memorandum).

Petitioners disregard that new development and continue to oppose Option 3 without reason. Their position is that, because the Terra Directors had the same reaction as the Peru Non-Parties to the July 7 Order—eliminating the waiver barrier so Option 3 can be pursued—this somehow means the Terra Directors and the Peru Non-Parties "orchestrated [a] campaign to seek

3

unwarranted reconsideration." Dkt 430 at 5-8.  It does not.  The Renewed Motion is a reasonable reaction to eliminate the proximate barrier identified in the Court's Order—the waiver, which is gone.  Similarly, Petitioners disregard the Peru Non-Parties' efforts to coordinate with the Board since early May 2025, regarding which of the 3 options to pursue.  Dkt 430 at 11-12.  Contrary to Petitioners' position, that outreach was reasonable and necessary.  That is because Option 3 has "the greatest certainty of success, is likely to take the shortest amount of time, likely within four weeks of the Application being submitted, and the lowest expenditure of costs." (Dkt 326 at ¶¶ 25-28).  Most importantly, Option 3 could not be pursued without Board approval.

In contrast, Option 1 is not likely to succeed.  Dkt 326 at ¶¶15-24 (concluding at ¶22 "an application by the Applicants [Option 1] would not be straightforward, would require oral argument and . . . may take some time to come on for hearing. Further, . . . such an application is not certain to succeed."); Dkt 362 at ¶12 (discussing drawbacks of Option 1).  Walkers has provided three separate declarations, all recommending the same course of action – Option 3, the last of which responds to the Tollis Declaration submitted by Petitioners, wherein Walkers states that Option 1 is not guaranteed to be successful and would take time (Dkt 362).

Petitioners do not contest that is the correct process.  That is, Board approval is required for Option 3.  But even now, without any request for waiver of liability, Petitioners oppose Option 3 because they claim:

- "the obligation to seek relief in the Peru-Related BVI Action belonged to the BVI Contemnors, not the Company or Petitioners"; and

- Option 3 is defective because it (i) requires the Company to engage BVI counsel and Terra previously refused to permit the Company to pay its prior BVI counsel, and (ii)

4

improperly relied on Walkers drafting a filing on behalf of the Company, whose interests were not aligned.

Dkt 430 at 6-7, 11-14. These purported issues can be properly addressed and resolved with Petitioners' cooperation and/or the Court.

As to the first argument, there is no valid basis to disregard Option 3. As this Court "assumed (without deciding)" based on all of the competing filings, Option 3 presents "the best and most expeditious means of accomplishing in the BVI what this Court has required .…" (Dkt 406 at 10). Option 3 is likely to obtain the desired result; it requires the help of both Continental (to file the application) and the Peru Non-Parties (to consent to the application), which in both instances Walkers will prepare. This represents the bulk of the work. Company's counsel will need to review and approve the submission and file it. The scope of that work is minimal. If Petitioners have an issue *at that point*, that Petitioners and the Peru Non-Parties cannot resolve, it can be brought before the Court. Complaining or refusing now is telling.

With respect to the second set of arguments, and specifically the issue of the Company's BVI counsel, that is an issue to be addressed by the Board or the Court, not the Peru Non-Parties. They cannot do anything about it.

Once Petitioners confirm they will cooperate, the Peru Non-Parties will immediately task Walkers with preparation of the submission and end this issue. That can only happen with Option 3. When Petitioners insist Option 1 is the way forward (Dkt 430 at 3-5), what Petitioners are asking is to file "something," regardless of its negative outcome. The Peru Non-Parties can proceed with Option 1, and will do so if the Court deems fit, but what they have sought at all times is to proceed with an option that will result in compliance. That is Option 3. Petitioners' actions seek to prolong and not terminate the BVI Action and conflict with the directive of the Contempt

5

Order.  Option 1 could take anywhere from 3 to 7 months (Dkt 310-7, ¶13), with an unlikely favorable result.

In the Response, Petitioners claim further sanctions, not fewer, are warranted against Ms. Merino and Mr. Garzaro.  How?  The record reflects otherwise.  In fact, Petitioners know the imposition of sanctions would have a detrimental effect on Ms. Merino and Mr. Garzaro, whose monthly salaries are approximately $12,400.00 and $8,300.00, respectively (Dkt 361-1, 360-1).  Further, the truth of the matter is that the termination of the BVI Action is not an impediment to the sale of the Company.  Perhaps Petitioners seek the sale of the Company, the displacement of Ms. Merino and Mr. Garzaro as a result thereof, while the Contempt Order remains in place as against them.  Petitioners' stance appears vindictive and unsupported and should be disregarded by the Court.

For these reasons, without waiving their asserted defenses to lack of personal jurisdiction and due process, the Peru Non-Parties respectfully reiterate their request the Court reconsider its Contempt Order (Dkt 295) and its July 7 Order (Dkt 406) as to the Peru Non-Parties only, modify those Orders as stated in the Renewed Motion, the Supplemental Memorandum, and above, and for such further relief as the Court deems just.

Dated: August 19, 2025

Respectfully submitted,

*/s/ Eduardo de la Peña Bernal*

| | |
|---|---|
| **PRYOR CASHMAN LLP** | **SHUTTS & BOWEN LLP** |
| James Stephen O'Brien , Jr | Eduardo De la Peña Bernal |
| Erik Bakke | Aliette D. Rodz |
| 7 Times Square, Ste. 40th Floor | Martha Ferral |
| New York City, NY 10036 | 200 S. Biscayne Blvd., Ste. 4100 |
| (212) 421-4100 | Miami, FL 33131 |
| Fax: (212) 326-0806 | (305) 358-6300 |
| ebakke@pryorcashman.com | edelapena@shutts.com |
| jobrien@pryorcashman.com | arodz@shutts.com |
| | mferral@shutts.com |

*Counsel for Peru Non-Parties, Telecom Business Solution S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Marino Ascarrunz, and Alejandro Garzaro Perez*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on August 19, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

*/s/ Eduardo de la Peña Bernal*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the word count limitations of Local Civil Rule 6.3 and 7.1(c)—this reply consists of 1,693 words.

*/s/ Eduardo de la Peña Bernal*