UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
TELECOM BUSINESS SOLUTION, LLC, *et al.*,   :   Civil Action : 1:22-cv-01761
                                             :
              Petitioners,                   :   Judge Lewis A. Kaplan
         v.                                  :
                                             :   Magistrate Judge Robert W.
TERRA TOWERS CORP., *et al.*,                :   Lehrburger
                                             :
              Respondents.                   :
                                             :
------------------------------------------------------------------ X

**PETITIONERS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS
AGAINST RESPONDENTS FOR FAILURE TO COMPLY WITH ORDER**

<div style="columns:2">

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER LLP**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:    (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com

David A. Landman
**UB GREENSFELDER LLP**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:    (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:    (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:    (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings
(Cay), Ltd.*

</div>

162608775_6

Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree") and AMLQ Holdings (Cay) Ltd. ("AMLQ," and together with Peppertree, "Peppertree/AMLQ"), respectfully submit this memorandum of law in support of their Motion for Civil and/or Criminal Contempt Sanctions Against Respondents for Failure to Comply with Order (ECF 440, the "Motion").

I.  **INTRODUCTION AND BACKGROUND**

This Motion concerns Respondents' repeated blatant refusals to produce documents—in violation of this Court's orders—related to an action initiated by Respondents and their agents in Guatemala, which resulted in the seizure of 163 of the Company's towers worth approximately $25 to $38 million USD. On July 21, 2025, this Court issued a Memorandum Opinion (ECF 415, the "Opinion") regarding Peppertree/AMLQ's Motion for Further Findings of Civil Contempt and Sanctions.[1] In the Opinion, this Court observed that "Respondents may be subject to contempt sanctions for their role in the civil action underlying the Towers Seizure Case," particularly if the action "involves all or any of the subject of matter of Respondents' counterclaims in the arbitration," but that such a determination could not be made "without more information." ECF 415 at 14 (internal alterations and quotations omitted). Petitioners promptly sought to obtain that information from Respondents, and those efforts culminated in this Court's September 3, 2025 order requiring Respondents to "produce, no later than September 10, 2025, all documents in their possession, custody, or control concerning the Towers Seizures Case and any related underlying proceedings." ECF 440 at 2 (the "September 3 Discovery Order").

**In violation of that order, Respondents did not produce any documents by September 10, still have not produced any documents to date, and have not even acknowledged their**

---

[1] Unless otherwise noted, all defined terms herein shall have the same meaning as in the Opinion.

2

**Court-ordered obligation to do so**. They should now be held in contempt for their undisputed failure to comply with September 3 Discovery Order. Respondents' refusal to provide documents regarding the Towers Seizure Case as ordered by the Court is easily explained: those documents would show that the Tower Seizure Case is yet another effort by Respondents to litigate in a foreign jurisdiction the counterclaims that were stayed by the Tribunal in the SPFA and which Respondents were enjoined from litigating in the TPFA.

Respondents' pursuit of such improper foreign collateral actions, including criminal proceedings, is already well-established in the record before this Court, and those efforts have only increased in recent months. These are not isolated or independent actions, but a concerted and calculated campaign by Respondents designed to continue to undermine this Court's orders, sow chaos, and ultimately interfere with the sale of the Company. In fact, just yesterday, Petitioners learned that just four days before this Court issued the Opinion, **a court in El Salvador issued arrest warrants for three U.S.-based Peppertree executives** based on prosecutors' allegations that the Peppertree executives "orchestrated a corporate boycott that included pressure and threats against Antonieta María Granillo de Galindo, [the DTH agent who manages the Company's El Salvador subsidiary], and Jorge Hernández Ortiz, majority shareholder of Terra Towers," and that their "objective was to devalue Continental Towers in order to acquire it at a price much lower than that offered by other interested parties."[2] **These allegations are substantively identical to the arbitration counterclaims that were stayed by the Tribunal in the SPFA and which Respondents were enjoined from litigating in the TPFA**. *See generally* ECF 133-47 (TPFA).

---

[2] Ex. 1 Translation of El Mundo article; *see also* Ex. 2 Translation of El Salvador Court indictment. Citations to "Ex." Refer to exhibits to the declaration of Michael N. Ungar being filed herewith.

3

According to the indictment, the purported victims of the alleged fraud include Respondent Jorge Hernandez.

Having successfully abused foreign criminal justice systems to attack the Company's management, Respondents are now enlisting foreign courts and prosecutors to (i) advance their Arbitration counterclaims in violation of the Court's judgment confirming the TPFA and (ii) seek corrupt criminal reprisals against innocent U.S. citizens.[3] While this new El Salvador action is not the subject of the instant Motion, these actions reinforce the intentionality of Respondents' repeated violations of this Court's orders and the misconduct at issue in the Tower Seizure Case and the instant Motion, and Petitioners reserve all rights—including to take additional discovery and to seek sanctions—with respect to this new proceeding as they discover more facts related to it.

As for the Towers Seizure Case, the documents Claimants seek from Respondents would undoubtedly confirm that these foreign proceedings were pursued in violation of the TPFA. On September 12, 2025 Petitioners filed a letter motion ("September 12 Letter Motion") with the Court requesting that this Court hold Respondents in contempt for their blatant violation of the September 3 Discovery Order and order them (again) to produce relevant documents. Pursuant to the Court's decision and directive concerning the September 12 Letter Motion (ECF 444), Petitioners hereby renew their motion and request that the Court find Respondents in civil and/or criminal contempt and issue sanctions against Respondents that the Court deems just, proper, and necessary to coerce compliance with this Court's Order in light of the fact that monetary

---

[3] Unfortunately, as Petitioners feared, Respondents have also treated the Court's denial of prior motions to sanction them in respect of the foreign criminal proceedings as a green light to escalate their severe misconduct as part of an effort to thwart a sale. Respondents have continually touted the Court's rejection of Petitioners' requests to cause the termination of the foreign criminal proceedings in correspondence with Petitioners and other third parties, including the investment bank that was engaged to facilitate a sale of the Company (which Respondents are again in the process of trying to hinder). Petitioners reserve all rights to seek further relief in connection with Respondents' violation of this Court's judgments regarding the sale of the Company.

sanctions—which Respondents have never paid—have proven to be ineffective in coercing compliance with this Court's orders.

## II. LAW AND ARGUMENT

### A. Legal Standard

"Our judicial system could not function if litigants were free to evade lawful orders of the [c]ourt." *United States v. Mongelli*, 857 F. Supp. 18, 21 (S.D.N.Y. 1994). A district court has inherent authority to hold a party in civil contempt for violation of a court order where (1) the order a party fails to comply with is "clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the [violating party] has not [been reasonably] diligent [and energetic] in attempt[ing to accomplish what was ordered]." *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 488-89 (S.D.N.Y. 2019) (Kaplan, J.), *aff'd in relevant part*, 990 F.3d 191, 206 (2d Cir. 2021). The moving party need not establish that the "violation was willful." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). "In contrast, in order to hold a [party] in criminal contempt, a court must find that the violation was willful, *i.e.*, that the act was committed with 'a specific intent to consciously disregard an order of the court.'" *Herbalist & Alchemist, Inc. v. Alurent Prods., Inc.*, No. 16 CIV. 9204 (ER), 2018 WL 11219074, at *2 (S.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lynch*, 162 F.3d 732, 735 (2d Cir. 1998)). Respondents' actions easily satisfy this higher standard.

"The public interest in orderly government demands respect for compliance with court mandates." *United States v. Petito*, 671 F.2d 68, 72 (2d Cir. 1982). "Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both." *Universal City Studios, Inc. v. N.Y. Broadway Int'l*

5

*Corp.*, 705 F.2d 94, 96 (2d Cir. 1983) (citation omitted); *see also Petito*, 671 F.2d at 72 ("A trial court ordinarily first applies the coercive remedy of civil contempt and only makes use of the criminal sanction when the disobedience continues."). "'One who defies the public authority and willfully refuses his obedience, does so at his peril.'" *Id*. (quoting *United States v. United Mine Workers of America*, 330 U.S. 258, 303 (1947)). It is also within courts' authority to order civil confinement to compel compliance. *See, e.g.*, *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL 324061 (S.D.N.Y. Jan. 24, 2013) (ordering civil confinement for failure to post $10 million prejudgment security). Such escalating sanctions are warranted where a contemnor "behave[s] as if the [Court's] Judgment[s] . . . do not exist. He has disregarded his obligations," and "[t]he likelihood that he will continue to do so is high." *Donzinger*, 384 F.Supp. 3d at 505.[4]

### B. Respondents Are in Contempt of the Court's Order

Yet again, Respondents are openly defying this Court's orders and their discovery obligations. *See, e.g.*, ECF 295, 365, 406, 414. Astoundingly, Respondents' failure to make the production required by the Court's September 3 Discovery Order comes in the wake of the Court issuing contempt sanctions against Terra/DTH for their multiple discovery failures the very same day. *See* ECF 441 (the "September 3 Sanctions Order").

Respondents are plainly in contempt of the September 3 Discovery Order. **First**, the Court's Order is clear and unambiguous. It expressly requires Respondents to "produce, no later than September 10, 2025, all documents in their possession, custody, or control concerning the Towers Seizures Case and any related underlying proceedings." ECF 440. Respondents have

---

[4] It is also well-settled even a "non-party" respondent, which Hernandez has purported to be—notwithstanding that he was validly joined to this proceeding after being held personally liable as a Respondent for over $300 million in the 5PFA, which the Court has now confirmed—may be held in contempt of a court order where that non-party aids and abets a party's violation of the order. *See* ECF 414 at 8-9 (rejecting Hernandez's assertions that "that he no longer owns Terra or DTH, and therefore he cannot aid or abet Respondents or be legally identified with them"); *see also* ECF 295 at 39-41; ECF 429 at 19-26 (rejecting Hernandez's objections to 5PFA).

never denied that such documents exist; indeed, when Petitioners requested the documents four months ago, Respondents conceded that they exist by arguing that collecting, reviewing, and producing the "Communications" sought by Petitioners would be unduly burdensome. *See* ECF 374 at 2. And to be sure, the existence of the documents is also established by the facts that, as Petitioners set forth in their Motion to Compel (i) Respondents have admitted that the Towers Seizure Case derives from a complaint made by a DTH subsidiary, (ii) Petitioners learned of the Towers Seizure Case when they were notified by the DTH agent purportedly representing the Company subsidiary in that action; (iii) one of the co-plaintiffs that requested the seizure is yet another DTH agent; and (iv) documents from the Towers Seizure Case were signed on behalf of the DTH subsidiary by the same lawyer who has represented Hernandez and the subsidiary in other proceedings. *See* ECF 432 at 3. **Second**, the proof of Respondents' intentional noncompliance is clear and convincing. Respondents never produced any documents in response to the September 3 Discovery Order, and have yet to even acknowledge it, even since Petitioners filed the September 12 Letter Motion. **Third**, given their complete failure to respond or acknowledge the September 3 Discovery Order, Respondents cannot demonstrate any diligent, reasonable, or good-faith efforts to comply with the same. Respondents' contumacy of the Court's orders is willful, ongoing, complete, and escalating—making drastic sanctions, including but not limited to civil confinement, entirely appropriate.[5]

---

[5] Petitioners served additional discovery requests as authorized by the September 3 Discovery Order, to which responses are due on October 1, 2025. Because the September 3 Discovery Order specifically contemplated that those requests would be served *after* Respondents had already produced documents regarding the Towers Seizure Action, Petitioners reserve the right to serve supplemental requests if Respondents make a production. In addition, should Respondents fail to properly respond to Petitioners' forthcoming requests or to fulfill its obligations under the September 3 Sanctions Order—including their failure to file "an affidavit stating the measures taken to comply with the DTH Subpoena and the June 18 Order" (ECF 441 at 10) by September 17—Petitioners reserve all rights to seek further sanctions and other appropriate relief from this Court, including adverse inferences.

### C. The Court Should Issue Non-Monetary Sanctions

This Court has "broad discretion to design a remedy that will bring about compliance" with its orders and directives. *Paramedics Electromedicina Comercial*, 369 F.3d at 657.[6] It is clear that the monetary sanctions ordered to date have been ineffective in compelling Respondents' compliance and ending their tedious game of cat and mouse. Indeed, Respondents have not paid any of the daily monetary sanctions that have been accruing pursuant to the Court's orders for ***over six months***. *See* ECF 414 at 14 ("Accordingly, the Court reaffirms its rulings [in the April 22 Opinion (ECF 295)] that Hernandez is in contempt . . . . The entry of sanctions is appropriate to coerce Hernandez to comply with Judgment No. 2 and the April 22 Opinion."). And as this Court is well aware, their pattern of flagrantly disobeying obligations—whether contractual, Tribunal-ordered, or Court-ordered—has persisted for many years. Civil and/or criminal contempt sanctions are amply warranted on this record, and the Court should exercise its broad discretion to design strong remedies that will bring about compliance with this Court's September 3rd Discovery Order.

### III. CONCLUSION

For the foregoing reasons, Peppertree/AMLQ respectfully request that the Court grant this Motion, hold Respondents in contempt of the September 3 Discovery Order, and order further sanctions as it deems appropriate.

---

[6] *See also CBS Broad Inc. v. FilmOn.com Inc.*, 2013 WL 4828592, at *7 (S.D.N.Y. Sept. 10, 2013) ("Courts possess broad discretion to require a party to take affirmative steps when such steps are required to bring that party into compliance with a court order.") (ordering party "to bring himself into compliance with" provisions of court-ordered consent judgment).

Dated: September 18, 2025

By: */s/* Michael N. Ungar
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
**UB GREENSFELDER**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax:   (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com

David A. Landman
**UB GREENSFELDER**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax:   (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

Respectfully submitted,

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax:   (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax:   (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

9

**CERTIFICATE OF SERVICE**

      I hereby certify that an as-filed copy of the foregoing was filed electronically on September 18, 2025. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

<div align="right">

*/s/ Michael N. Ungar*  
*Counsel for AMLQ Holdings (Cay), Ltd*

</div>