UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                Petitioners,

      -against-                              22-cv-1761 (LAK)

TERRA TOWERS CORP., *et al.*,

                Respondents.
------------------------------------------x

**MEMORANDUM OPINION**

Appearances:

> Gregg L. Weiner
> Ethan Fitzgerald
> Daniel V. Ward
> Katherine M. McDonald
> ROPES & GRAY LLP
>
> David A. Landman
> Michael N. Ungar
> Katherine M. Poldneff
> Gregory C. Djordjevic
> ULMER & BERNE LLP
>
> *Attorneys for Petitioners*
>
> Rodney Quinn Smith, II
> GST LLP
>
> Lucila I.M. Hemmingsen
> THE FLATGATE FIRM PC
>
> *Attorneys for Respondents and Non-Party Jorge Hernandez*
>
> James S. O'Brien Jr.
> Aliette D. Rodz
> Eduardo de la Peña Bernal
> Martha M. Ferral
> SHUTTS & BOWEN LLP
>
> *Attorneys for Non-Parties Telecom Business Solution, S.R.L., Continental Towers Peru, S.R.L., Collocation Technologies Peru, S.R.L., Magali Merino Ascarrunz, and Jorge Alejandro Garzaro Perez*

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/6/25

2

LEWIS A. KAPLAN, *District Judge.*

On September 3, 2025, the Court ordered Respondents Terra Towers Corp. ("Terra"), TBS Management, S.A. ("TBS"), DT Holdings, Inc. ("DTH,"), and Jorge Hernandez (collectively, "Respondents") to produce, no later than September 10, 2025, documents in their possession, custody, or control related to an ongoing criminal case in Guatemala (the "Towers Seizure Case"). Respondents did not produce any documents by the September 10 deadline. Petitioners Telecom Business Solution, LLC, LATAM Towers, LLC, and AMLQ Holdings (Cay), Ltd. (collectively, "Petitioners") subsequently filed a motion for contempt sanctions against Respondents.

*Facts*

The Court assumes familiarity with the underlying facts and procedural history. In sum, Petitioners entered into a shareholders agreement ("SHA") with Terra and TBS in 2015 whereby they co-own and operate Continental Towers LATAM Holdings, Ltd. (the "Company"), the business of which is the development and operation of telecommunications towers in Central and South America.[1] On February 2, 2021, Petitioners commenced the arbitration underlying this action before a three-arbitrator panel (the "Tribunal"). Petitioners alleged, *inter alia*, that Terra and TBS had breached the SHA by obstructing the proposed sale of the Company, which Petitioners contended was required pursuant to the SHA.

The Tribunal has issued five partial final awards, all of which have been confirmed by this Court. Relevant to this motion is the third partial final award ("TPFA"), which ordered that "Respondents shall prevent the commencement of any similar Foreign Arbitration or other legal

---

[1] Dkt 9-22 at ¶ 1.

3

proceeding involving all or any of the subject matter of Respondents' counterclaims in [the] arbitration . . . ."[2] Since the Court's confirmation of the TPFA, Respondents and their agents have continued to initiate legal proceeding involving the subject matter of their counterclaims in the arbitration, in violation of the TFPA.[3] Consequently, on April 22, 2025, the Court imposed coercive civil contempt sanctions against Respondents and certain non-party contemnors who were aiding and abetting Respondents' non-compliance.[4]

On July 21, 2025, Petitioners moved the Court to impose additional contempt sanctions and order Respondents to withdraw certain criminal actions initiated by Respondents' agents in Guatemala and El Salvador against Company officers.[5] The Court denied the motion.[6] The Court held that the relief sought by Petitioners would have been tantamount to an anti-suit injunction and therefore they must satisfy the test set forth in the Second Circuit's *China Trade* decision.[7] To qualify for an anti-suit injunction under *China Trade*, "(1) the parties to the action in the enjoining court must be the same as those in the parallel litigation, and (2) resolution of the case

---

[2] Dkt 331-3 at 41.

[3] *See* Dkt 295.

[4] *Id.*

[5] Dkt 368.

[6] Dkt 415 at 9–11.

[7] *Id.* at 11–13.

4

before the enjoining court must be dispositive of the action to be enjoined."[8]  Applying this framework, the Court ruled that the criminal actions satisfied neither of these threshold criteria.[9]

In so ruling, the Court did note that one action, the "Towers Seizure Case," may satisfy the anti-suit injunction threshold criteria or violate the TPFA:

> "The Towers Seizure Case, or at least a civil action related to it, is the sole action that may satisfy the first threshold criterion.  At the June 17 argument, Respondents' counsel stated that the embargo on the transfer of cell towers ordered therein was issued to secure enforceability of any judgment that might be procured in a fraud case initiated by a DTH subsidiary against a subsidiary of the Company. The underlying fraud action therefore may satisfy the first criterion. Without more information in the record, the Court cannot determine conclusively whether the parties in the two proceedings are substantially similar. However, to the extent that action 'involv[es] all or any of the subject of matter of Respondents' counterclaims in [the] arbitration,' the TPFA already requires Respondents to prevent its commencement and to make escrow deposits of one-half of the maximum damages demanded.  Therefore, upon a proper showing by Petitioners in a motion for contempt sanctions, Respondents may be subject to contempt sanctions for their role in the civil action underlying the Towers Seizure Case. But the record does not now justify such relief."[10]

Petitioners thereafter moved for an order compelling Respondents to produce documents related to the Towers Seizure Case and granting Petitioners leave to serve new discovery requests related to the Towers Seizure Case.[11]  On September 3, 2025, the Court granted the motion (the "September 3 Order").  The September 3 Order provided that:

> "Respondents shall produce, no later than September 10, 2025, all documents in their possession, custody, or control concerning the Towers Seizures Case and any related

---

[8]  *Id.* at 13.

[9]  *Id.* at 13–15.

[10]  *Id.* at 13–14 (alterations in original) (quoting TPFA at 42).

[11]  Dkt 432.

5

underlying proceedings. Petitioners may serve on Respondents, no later than September 17, 2025, any additional discovery requests related to the Towers Seizure Case, and Respondents shall serve their responses and any responsive documents by no later than October 1, 2025."[12]

Respondents did not produce any documents pursuant to the September 3 Order by the September 10 deadline. On September 18, 2025, Petitioners moved to impose contempt sanctions against Respondents for their failure to comply with the September 3 Order.[13]

After Petitioners served additional discovery requests on September 17, 2025, Respondents served their responses on October 1, 2025,[14] which Respondents contend "cured any contempt of the September 3 Order."[15] Those responses state in relevant part:

> "DT Holdings requested from its subsidiary, Proyectos Terrestres Ltda., [documents related to the Towers Seizure Case]. Proyectos Terrestres presented this request to the prosecuting authorities. On September 18, 2025, the prosecuting authorities responded, denying the request and stating that the case cannot be subject to any interference. The position of the prosecuting authorities makes clear that there is nothing that DT Holdings can do, as well as anyone else."[16]

## *Discussion*

I.    Legal Standard

"The purpose of civil contempt is not to punish but to compensate for injury caused by any violation of a court order or process, to coerce compliance, or both. In order to prevail on a

---

[12] Dkt 440 at 2.

[13] Dkt 446.

[14] Dkts 481-1, 481-2, 481-3.

[15] Dkt 451 at 4.

[16] Dkt 481-1 at 13, 14.

6

civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner. . . . A court order is clear and unambiguous when it 'leaves no uncertainty in the minds of those to whom it is addressed.'"[17]

## II.    Clarity of the September 3 Order

The September 3 Order requires that "Respondents shall produce, no later than September 10, 2025, all documents in their possession, custody, or control concerning the Towers Seizures Case and any related underlying proceedings."[18] This command leaves no uncertainty about what is required of Respondents, and Respondents do not contend that there is any ambiguity.

## III.    Clear and Convincing Proof of Non-Compliance

As of September 10, 2025, Respondents did not produce any documents pursuant to the September 3 Order. The question of their contempt therefore turns on whether there is clear and convincing evidence that there were responsive documents in their possession, custody, or control as of that date concerning the Towers Seizures Case and any related underlying proceedings.

According to declarations by Guatemalan attorneys filed by Respondents in this

---

[17] *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 488–89 (S.D.N.Y. 2019) (footnotes omitted) (quoting *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)), *aff'd in relevant part*, 990 F.3d 191 (2d Cir. 2021).

[18] Dkt 440 at 2. The latter part of the order — requiring Respondents to serve responses to additional discovery requests by October 1, 2025 — is not at issue in this motion, which was filed before the October 1 responses were served.

7

litigation, the Towers Seizure Case was initiated by Proyectos Terrestres through a criminal complaint.[19] At the very least, Proyectos Terrestres possesses the criminal complaint it filed to initiate the Towers Seizure Case, along with any other materials provided to Guatemalan authorities.

Respondents do not dispute that documents possessed by Proyectos Terrestres, a DTH subsidiary,[20] are within the control of DTH. Any argument to the contrary therefore has been waived. Even if Respondents had preserved this argument, the record plainly shows that documents possessed by Proyectos Terrestres are within DTH's control. "In determining a parent's control over a subsidiary in this context, district courts in this Circuit consider '[1] the degree of ownership and control exercised by the parent over the subsidiary, [2] a showing that the two entities operate as one, [3] demonstrated access to documents in the ordinary course of business, and [4] an agency relationship.'"[21]

Respondents admit that DTH is the "sole shareholder" of Proyectos Terrestres.[22] Furthermore, contracts between DTH and the Company demonstrate that DTH and its subsidiaries effectively operate as one. For example, DTH entered into a "development agreement" and an "offshore turnkey engineering, procurement and management contract" whereby DTH subsidiaries

---

[19] Dkt 270-6 at 4–5; Dkt 452-3 at 2–3.

[20] *See* Dkt 451 at 6.

[21] *Sicav v. Wang*, No. 12 CIV. 6682 PAE, 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014) (quoting *DeSmeth v. Samsung Am., Inc.*, No. 92 Civ. 3710(LBS)(RLE), 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998)).

[22] Dkt 451 at 6.

8

are obligated to provide services to the Company and its subsidiaries.[23]  These documents do not evince any meaningful distinction between DTH and its subsidiaries.  Finally, Proyectos Terrestres has initiated numerous criminal actions against Company subsidiaries and officers, including the Towers Seizure Case.[24]  The Tribunal has determined that a number of these actions are groundless,[25] that they are intended to give Respondents *de facto* control of the Company,[26] and that they result in DTH reaping substantial profits from its continued relationship with the Company that otherwise would be jeopardized by a change in control.[27]  This conduct strongly suggests that Proyectos Terrestres is acting at DTH's direction in initiating the criminal actions, including the Towers Seizure Case.

In sum, there is clear and convincing evidence that (1) Proyectos Terrestres possesses documents concerning the Towers Seizure Case, (2) those documents are within the possession, custody, or control of DTH, and (3) DTH did not produce those documents by September 10, notwithstanding the September 3 Order.  On the other hand, Petitioners have not offered any evidence demonstrating that Proyectos Terrestres is subject to the control of Terra, TBS, or Hernandez.  Accordingly, there is clear and convincing proof of DTH's noncompliance with the September 3 Order, but no such evidence of noncompliance by the remaining Respondents.

---

[23] Dkts 401-3, 401-4.

[24] Dkt 270-6 at 4–5.

[25] *See generally* Dkt 331-2.

[26] *See* Dkt 369-24 at ¶ 73.

[27] *See id.*

### IV.     Attempts at Compliance

Respondents contend that they belatedly complied with the September 3 Order by providing discovery responses on October 1.[28] But Respondents did not provide any documents related to the Towers Seizure Case. Instead, they claimed that Proyectos Terrestres requested documents concerning the Towers Seizure Case from Guatemalan prosecuting authorities, who denied their request.[29] Respondents assert that, consequently, "there is nothing that DT Holdings can do, as well as anyone else" to obtain the documents.[30]

Respondents' position is absurd. Proyectos Terrestres filed the criminal complaint initiating the Towers Seizure Case. That document, at least, is within its possession and DTH's control, as are any other documents relating thereto furnished to prosecutors by Proyectos Terrestres. DTH does not need to retrieve the complaint and other documents from prosecutors. Even if DTH in good faith sought to obtain documents from Guatemalan prosecutors — which is not at all clear from the record[31] — it would be in contempt for its failure to produce documents within its control.

---

[28] Dkt 451 at 4.

[29] Dkt 481-1 at 13, 14.

[30] *Id.*

[31] Respondents attached to their opposition to the motion a copy of a letter purportedly from Guatemalan prosecutorial authorities written in Spanish. Dkt 452-2. Respondents have not provided any translation of the letter, much less a certified one, and the Court thus is unable to assess fully its contents. The letter mentions Petitioners' attorneys in this case and appears to threaten those individuals with obstruction of justice charges. *Id.* at 3. It is unclear how or why the names of Petitioners' attorneys came to the attention of the prosecutors in relation to the request for documents, or what the basis for the threatened obstruction charges is. This threat echoes correspondence from Respondents' counsel in the underlying arbitration, which threatened "legal consequences under obstruction of justice" against Petitioners'

### *Conclusion*

For the foregoing reasons, Petitioners' motion for contempt sanctions (Dkt 446) is granted in part.

Respondent DT Holdings, Inc. ("DTH"), is in contempt for its failure to obey this Court's September 3, 2025, order (the "September 3 Order") requiring it to produce all documents in its possession, custody, or control concerning the Towers Seizures Case and any related underlying proceedings. DTH shall pay a coercive civil fine of $5,000 to the Clerk of this Court with respect to the date of this order and each subsequent day until the date on which it has complied fully with the September 3 Order.

The motion is denied in all other respects.

SO ORDERED.

Dated:     November 6, 2025

_____
Lewis A. Kaplan
United States District Judge

---

attorneys. *See* Dkt 358-21 at 2. These facts suggest that Respondents have attempted to engineer obstruction charges against Petitioners' attorneys, calling into question the good faith of their interactions with Guatemalan authorities.