**United States District Court**
**Southern District of New York**

| | |
|---|---|
| Telecom Business Solution, LLC, *et al.*, | Civil Action No.: 1:22-cv-01761 |
| Petitioners, | Judge Lewis A. Kaplan |
| v. | Magistrate Judge Robert W. Lehrburger |
| Terra Towers Corp., *et al.*, | |
| Respondents. | |

**RESPONSE IN OPPOSITION TO PETITIONERS' MOTION FOR**
**CONTEMPT AND SANCTIONS AGAINST RESPONDENTS**
**FOR NON-COMPLIANCE WITH TURNOVER ORDER**

Rodney Quinn Smith, II
(admitted *pro hac vice*)
**GST LLP**
78 SW 7th Street, Suite 500
Miami, FL 33130
Phone: (305) 856-7723
Fax: (305) 856-7724
quinn.smith@gstllp.com

*Counsel for Respondents*

Lucila I. M. Hemmingsen
**Sagiance LLP**
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 520-6672
lhemmingsen@sagiancellp.com

Respondents, Terra Towers Corp. ("Terra"), TBS Management S.A. ("TBS") (together, the "Terra Parties"), DT Holdings Inc. ("DT Holdings"), and Jorge Hernandez (collectively, "Respondents"), hereby respond to Motion for Contempt and Sanctions against Respondents for Non-Compliance with Turnover Order (ECF 535, 536) (the "Motion"), filed by Telecom Business Solution, LLC, LATAM Towers, LLC (together, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ") (collectively, "Petitioners"), and in support thereof state as follows.

## INTRODUCTION

Petitioners have opted for another motion for sanctions without analyzing the applicable law, specifying the contumacious conduct by each of Respondents, or otherwise dealing with the material issues prohibiting compliance. The Court should deny the Motion for the following reasons:

- Respondents have undertaken diligent efforts to comply, which have been thwarted by potential criminal liability. Petitioners' arguments about the ability for corporations to act without directors or officers are meritless.

- In addition to not engaging with the legal standard, the requested sanctions would complicate the dispute and not coerce compliance with the Turnover Order. The requested sanctions would complicate the sale and put the Court in the position of having to govern non-parties, such as the Joint Venture Company and its subsidiaries. There are further problems, including a prior restraint on speech and relief without any statutory basis.

For these reasons and those set forth below, Respondents respectfully request that the Court deny the Motion.

## BACKGROUND

The factual background in many ways is similar as it relates to Peppertree's motion for civil confinement and criminal contempt. ECF 540. For the sake of completeness, Respondents have included the factual background in opposition to both motions.

Following the Court's opinion (ECF 521) and judgment (ECF 520) dated January 21, 2026 (the "Turnover Order"), the directors of the Terra Parties reviewed the Turnover Order and consulted legal counsel. Ex. 1, pp. 1-2; Ex. 2, p. 1; Ex. 3; Ex. 4; Ex. 5, p. 1 (translated at Ex. 6, p. 1); Ex. 7, p. 1 (translated at Ex. 8, p. 1). Mr. Porras and Mr. Sagastume were the directors of Terra Towers Corp. and TBS Management S.A., which is now TBS Management S.R.L. Ex. 3; Ex. 4; Ex. 5, p. 1 (translated at Ex. 6, p. 1); Ex. 7, p. 1 (translated at Ex. 8, p. 1). Mr. Porras and Mr. Sagastume were the directors appointed by the A Shareholders to the board of directors of Continental Towers Latam Holdings Limited (the "Joint Venture Company"). Ex. 1, p. 1; Ex. 2, p. 1. They both resigned from this position and others. *Id*. Mr. Porras and Mr. Sagastume cited the conflict between the Turnover Order and orders in Central America. Ex. 1, pp. 1-2; Ex. 2, p. 1; Ex. 3; Ex. 4; Ex. 5, p. 1 (translated at Ex. 6, p. 1); Ex. 7, p. 1 (translated at Ex. 8, p. 1). The resignations referred to legal opinions (*id*.), which are described below and were provided to Peppertree prior to filing the Motion. ECF 537-4, pp. 6-11.

*The El Salvador Legal Opinion*

The Directors sought a legal opinion from Dr. Rommell Ismael Sandoval Rosales, a lawyer in El Salvador who was admitted to the bar in 1993. Ex. 9, p. 7. Dr. Sandoval has a Ph.D. from the Autonomous University of Barcelona and a specialization in constitutional law from Carlos III University of Madrid. *Id*. He cites experience working with USAID, the Inter-American Development Bank, the World Bank, and others. *Id*.

Dr. Sandoval analyzed the criminal proceedings in El Salvador, which are the same proceedings that Dr. Azucena opined on about a year ago. ECF 254-17. The proceedings started with a criminal complaint filed on May 13, 2022 (ECF 254-17, p. 6), which is after the facts that culminated in 2PFA. ECF 94-103, p. 5 (noting the filing of criminal complaints in December

2021 and January 2022). The proceedings resulted in an indictment on May 27, 2024. ECF 254-17, p. 5. These proceedings have followed due process. *Id*., p. 8. Peppertree has never challenged this conclusion with expert evidence. Guatemala later extradited Mr. Gaitan Paredes to face the charges against him in El Salvador. *Id*., p. 10.

Dr. Sandoval opined on the structure of the criminal system in El Salvador and then reached a conclusion that is directly applicable:

> Any director who is part of the corporate structure of Continental Towers or its partners, who signs instruments or performs acts intended to facilitate the transfer of ownership or control of the various companies to third parties, whether local or foreign, including those carried out in compliance with a foreign court, may be held liable for the crime of DISOBEDIENCE OF PRIVATE INDIVIDUALS Art 338 of CP, or the crime of CONCEALMENT Art. 308 of CP[.]

The relevant provisions are Article 308 of the Penal Code, which states that "[a]nyone who, with knowledge that a crime has been committed and without prior agreement, commits any of the following acts shall be punished with imprisonment for six months to three years[.]" Ex. 11. Those acts include "[a]ssisting in evading investgations . . . procuring or assisting some in obtaining the disappearance, concealment, or alteration of traces, evidence, or instruments of the crime . . . and [a]cquiring, receiving, or concealing money, goods, or effects derived from a crime[.]" *Id*. Article 338 of the same code is shorter, stating as follows: "[a]nyone who disobeys an order issued in accordance with law and issued by a public official or authority in exercise of their functions shall be punished with imprisonment for one to three years and a fine of fifty to one hundred days." *Id*.

*The Guatemala Legal Opinion*

The Directors sought a legal opinion from Prof. Luis Abel Urizar Tuells, a lawyer and professor of criminal law at Francisco Marroquin University. Ex. 10, p. 4. Prof. Urizar cited an

"identifiable conflict of jurisdiction" between the present case and criminal proceedings in Guatemala. Based on the absence of a "civil court order from a foreign country" that is "ratified in Guatemala," the directors are bound to comply with Guatemalan law. Prof. Urizar opined that there is a path for foreign orders to have effect in Guatemala: "[a]lthough it is true that an arbitration order issued abroad may eventually be recognized by a Guatemalan judicial authority[.]" *Id.*, p. 3. He then continued: "it should be noted that there are criminal proceedings that take priority and that, if the criminal proceedings are affected, the person who fails to comply with a criminal court order is personally liable and may in turn be punished as the perpetrator of contempt of court." *Id*. He concluded that "[a]ny director who fails to comply with an order issued by a criminal court . . . may be held liable for committing a crime." *Id.*, p. 4. The relevant provision is Article 414 of the Criminal Code, which provides that "[a]nyone who openly disobeys an order . . . shall be punished with a fine[.]" There is also criminal liability under Article 474. It states as follows:

> A person is responsible for concealment if, without prior agreement, collusion, or arrangement with the perpetrators or accomplices of the crime but with knowledge of its commission, they intervene subsequently by performing any of the following acts:
> 1. Hiding the offender or facilitating their escape.
> 2. Refusing, without justifiable reason, to hand over to the authorities a suspect, fugitive, or offender who is in the residence or dwelling of the person requested,
> 3. Helping the perpetrator or accomplice to evade investigation by the authorities or escape from their investigation,
> 4. Receiving, concealing, destroying, rendering useless, using, storing, hiding, trafficking, or negotiating in any way objects, effects, instruments, evidence, or traces of the crime. Ex. 12.

*Current Search for New Directors*

Mr. Porras and Mr. Sagastume presented their resignations on January 29, 2026. Ex. 1, pp. 1; Ex. 2, p. 1; Ex. 3; Ex. 4; Ex. 5, p. 1 (translated at Ex. 6, p. 1); Ex. 7, p. 1 (translated at Ex.

8, p. 1). Shortly thereafter, the shareholders of the Terra Parties appointed Raúl Pimentel Mata to search for suitable candidates to be directors of the two companies. Ex. 13. That search is ongoing and has not yet yielded any results. Ex. 14, p. 2.

## LEGAL ARGUMENT

**I.     Respondents have undertaken good faith efforts to comply with the Turnover Order**

"The purpose of civil contempt is not to punish but to compensate for injury caused by any violation of a court order or process, to coerce compliance, or both. In order to prevail on a civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner .... A court order is clear and unambiguous when it leaves no uncertainty in the minds of those to whom it is addressed." ECF 295, p. 14 (citations omitted).

A.     <u>Terra and TBS have diligently attempted to comply</u>

The Motion begins with a discussion of corporate law, arguing that it is "plainly meritless" that the Terra Parties cannot comply when they have no directors. Mot., p. 7. This argument is difficult to square with principles of corporate law. "A corporation can only act through its directors and officers, and we look to state law to determine who has the authority to act on behalf of a corporation[.]" *In Re: Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147 (2d Cir. 2021) citing *Burks v. Lasker*, 441 U.S. 471, 478 (1979). It is not "meritless" to argue that a corporation can only act through its officers and directors. Rather, a corporation "can only act through its directors and officers." The Terra Parties do not have directors or officers, and the shareholders are searching for new directors. Ex. 14.

Petitioners seem to be confusing the directors of the Joint Venture Company with the directors of the Terra Parties. Mot., p. 9 ("[w]hether or not the Company has any directors

appointed by Terra is entirely irrelevant"). There is an issue about the directors of the Joint Venture Company executing the relevant documents to record the transfer of shares. ECF 511, p. 7. But before reaching that point, the Terra Parties must take corporate action to turn over the shares. This requires directors or officers, of which the Terra Parties have none.

The remaining argument is the assumption by Petitioners that there is a director, perhaps undisclosed. Mot., pp. 9-10. There is no support for this argument. The Terra Parties provided the resignations, and the shareholders have appointed an individual to identify new directors. He has confirmed that there are no directors or officers. Ex. 14. No further evidence is necessary.

B.    The legal opinions show that the Terra Parties have diligently attempted to comply

"Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply." *United States v. Bryan*, 339 U.S. 323, 330 (1950). "Civil contempt is a coercive sanction, and thus a person held in civil contempt must be able to comply with the court order at issue. Individuals unable to comply, because of their own bad faith actions or otherwise, may be subject to criminal sanctions, but may not be held in civil contempt." *In Re Marc Rich & Co., A.G., et al v. United States*, 736 F.2d 864 (2d Cir. 1984) (citations omitted).

The Terra Parties have provided clear, unmistakable evidence that they cannot presently comply with the Turnover Order. Despite having the legal opinions, the Motion avoids any meaningful engagement with the legal opinions, preferring to summarily criticize them. There is no attack on the credentials of the individuals or contrary statements of Guatemalan or Salvadoran law. The legal opinions reach concrete conclusions as to the conflict between the Turnover Order and proceedings in El Salvador and Guatemala. The legal opinions cite to the applicable criminal law. The Terra Parties had no obligation seek out these opinions until the

Turnover Order existed, defeating any argument of waiver. Petitioners had the opportunity to consult their own lawyers or retain expert witnesses to dispute these conclusions, and they have chosen not to. This decision forestalls any order of contempt or sanctions, especially those sought by Petitioners.

        C.      <u>The relief sought would not effectuate the Turnover Order</u>

As this Court has found in the past, determining the appropriate sanction for contempt requires considering "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Spectacular Venture, L.P. v. World Star International, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996), *citing New York State NOW v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). Petitioners do not engage with this standard, arguing for essentially complete control of the daily operations of the Joint Venture Company. ECF 535-1.

While the parties litigate, the Joint Venture Company continues to operate throughout Latin America, from Guatemala to Peru through a variety of subsidiaries and affiliates, the vast majority of which are not parties. There are daily decisions that must be taken by management to honor contracts, deal with labor relations, and otherwise operate the Joint Venture Company. The relief sought by Petitioners would either halt this activity by permitting Respondents to stop any transfers they do not like (Mot., p. 12) or be completely ineffective. For example, it is highly unlikely that the Joint Venture Company can be sold without "the involvement or approval" of at least the Terra Parties. Mot., p. 11. Courts in Guatemala and El Salvador are unlikely to recognize any such order, as shown in the legal opinions. This ties up a substantial portion of the assets of the Joint Venture Company. Foreign, non-party banks do not have respect the orders or

our courts, and the employees of the various subsidiaries, also non-parties, are not bound by the relief Petitioners seek. The numerous non-parties that would be touched by the relief sought are not in continued contumacy of the Turnover Order and have no business interests in the United States. The relief offered by Petitioners is therefore unlikely to be effective.

There are other components of the requested relief that pose substantial problems. There is a request to limit the interaction of a list of people and what those individuals can say. ECF 535-1, p. 3. The limitation on "false statements regarding the Company or Company Management" will likely operate as a prior restraint based on what Petitioners believe to be a false statement. The Second Circuit has opined that "[a] prior restraint on expression comes . . . with a heavy presumption' against its constitutional validity." *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 239 F.3d 172 (2d Cir. 2001) (citations omitted). Prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). This is especially true when a prior restraint takes the form of a court-issued injunction. *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 763 (1994). The Second Circuit has vacated injunctions that restrain defamatory or harassing speech. *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 239 F.3d 172 (2d Cir. 2001).

Petitioners are not close to satisfying these concerns. The Motion wants to prohibit "false statements," which are not necessarily defamatory. This puts the Motion below the standard in *Metropolitan Opera Assoc.* There are other compelling concerns, such as the ongoing criminal proceedings in various jurisdictions. The relief sought by Petitioners will undoubtedly be used to limit those cases. The Court would thus be put in the place of policing speech in other countries,

as well as this one, in search of whether a "statement" is false. The requested relief would thus be a prior restraint as well as ineffectual since it restricts the speech of individuals in foreign countries who have their free speech rights under the respective constitutions. The comity concerns, coupled with the constitutional implications, counsel against granting any such relief.

Finally, there is a request in the Proposed Order for attorneys' fees, even though Petitioners have offered no support or legal argument. Perhaps, Petitioners hope that the Court will not read the Proposed Order, but there is no statutory basis for attorneys' fees. This request should be denied.

<blockquote>

D. <u>The Motion does not offer arguments showing that Mr. Hernandez or DT Holdings are in contempt</u>

</blockquote>

DT Holdings appears as one of "Respondents" that are the subject of the proposed order (ECF 535-1), but DT Holdings does not appear in the Memorandum of Law other than the generic use of the word "Respondents" and one mention in the penultimate paragraph. Mot., p. 12. There is no description of how DT Holdings is not complying with the Turnover Order, something that does not implicate DT Holdings at all. The Motion should be denied as to DT Holdings.

The role of Mr. Hernandez similarly lacks specificity. As more fully described in the opposition to Peppertree's motion for civil confinement and criminal contempt, there are specific obligations in the Turnover Order. Some go to the Terra Parties. Others go to Mr. Hernandez. For Petitioners to prove contempt as to Mr. Hernandez, they need to show what Mr. Hernandez did, not merely point to the Terra Parties. The Motion has not undertaken this task, and it should be denied.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the Motion in its entirety.

Dated: February 24, 2026                                         Respectfully submitted,


_____/s/_____                                          _____/s/_____
Rodney Quinn Smith II                                            Lucila I. M. Hemmingsen
(admitted *pro hac vice*)                                        **Sagiance LLP**
**GST LLP**                                                      125 Park Avenue, 25th Floor
78 SW 7th Street, Suite 500                                      New York, NY 10017
Miami, FL 33130                                                  Phone: (212) 520-6672
Phone: (305) 856-7723                                            lhemmingsen@sagiancellp.com
quinn.smith@gstllp.com

*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this document complies with the word count limitations. There are 2,951 words in this document.

*/s/ Quinn Smith*
Rodney Quinn Smith II