UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
TELECOM BUSINESS SOLUTION, LLC, *et al.*,   :   Civil Action: 1:22-cv-01761
                                            :
           Petitioners,                     :   Judge Lewis A. Kaplan
                                            :
    v.                                      :
                                            :   Magistrate Judge Robert W.
TERRA TOWERS CORP., *et al.*,               :   Lehrburger
                                            :
           Respondents.                     :
                                            :
------------------------------------------------------------------- X

**PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION FOR CONTEMPT AND SANCTIONS AGAINST RESPONDENTS FOR NON-COMPLIANCE WITH TURNOVER ORDER**

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax: (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com

David A. Landman
**UB GREENSFELDER**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax: (917) 262-0480
dlandman@ubglaw.com

Joon H. Kim
Rahul Mukhi
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza

Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

New York, NY 10006
Phone: (212) 225-2000
Fax: (212) 225-3999
jkim@cgsh.com
rmukhi@cgsh.com

*Counsel for Petitioners Telecom Business
Solution, LLC and LATAM Towers, LLC*

# INTRODUCTION

Respondents' Opposition to the Motion (ECF No. 546, the "Opposition") fails to provide any basis to deny the Motion.[1] On the contrary, it is detached from reality and not supported by any evidence. It is self-evidently nothing more than a continuation of their familiar excuses and nearly five-year campaign to avoid compliance with the Tribunal's Awards and this Court's Orders, all calculated to prevent a sale of the Company and enrich themselves by stealing the Company's funds in violation of the 5PFA and the Turnover Order.

The critical facts are undisputed: (1) Respondents received the Turnover Order; (2) they failed to comply with the Court's mandate to "IMMEDIATELY turn over . . . 100% of Terra's shares"; (3) the Terra Directors resigned within days of the Turnover Order; (4) neither Terra Towers Corp. nor TBS Management, S.A. executed the transfer documents within the three-day deadline ordered by this Court, and they have not executed the transfer documents as of the date of this Reply; and (5) Hernandez (who did not submit a sworn declaration with the Opposition) controls Terra, as confirmed repeatedly by this Court. Consistent with Respondents' *modus operandi* in the face of orders from this Court, instead of complying with the Turnover Order, Respondents offer nothing more than hollow excuses for the failure to comply.

Their principal excuse—that the Terra Directors resigned based on purported "legal opinions" warning of criminal liability in Central America—is not only obviously pretextual, but also facially unsupported by the so-called "legal opinions" themselves. Neither the Guatemalan nor Salvadoran "legal opinions" cite *any* specific order from *any* court or governmental authority in *any* jurisdiction that prohibits compliance with the Turnover Order; nor do they cite any law

---

[1] Unless otherwise noted, all defined terms herein shall have the same meaning as in Petitioners' Memorandum of Law in Support of Their Motion for Contempt and Sanctions Against Respondents for Non-Compliance with Turnover Order (ECF No. 536, the "Motion").

1

that would prevent the turnover of Terra's shares. The Terra Directors' resignations were not compelled by any legal requirement; they were obviously engineered to obstruct this Court's Turnover Order. Terra's excuse is just as legally baseless, since Terra's owners can cause the transfer documents to be executed, as evidenced by the fact that Terra continues to take actions in this litigation and otherwise. This is confirmed by the law of both the British Virgin Islands ("BVI") and Panama, where the Terra entities are incorporated.

Respondents have not identified any legitimate basis for Terra's refusal to comply with the Turnover Order; the Court should, therefore, hold Terra and Hernandez in contempt. This latest charade, coupled with Respondents' long history of willful noncompliance with this Court's orders, including consistent disregard for monetary sanctions and the recent sabotage of the sale process, as set forth in the pending 1PFA Contempt Motion, necessitates the relief set forth in Petitioners' Proposed Order (ECF No. 535-1), and any other relief the Court deems appropriate.

## LAW AND ARGUMENT

### I. RESPONDENTS HAVE PRESENTED NO EVIDENCE EXCUSING THEIR UNDISPUTED FAILURE TO COMPLY WITH THE TURNOVER ORDER.

Respondents offer argument, but little evidence, to support their Opposition. Once again, there is no sworn affidavit or declaration from Mr. Hernandez that contradicts or explains **anything**. Instead, Respondents merely contend that they have engaged in ***good faith*** efforts to comply, evidenced, they say, by two irrelevant "legal opinions." ECF No. 547 at 6–8.[2] But Respondents have failed to demonstrate good faith efforts to comply because: (1) nothing in these purported "legal opinions" states that the Terra Directors are prohibited from executing the transfer

---

[2] This is not the first time Respondents have attempted to rely on a manufactured "legal opinion" to avoid sanctions for failure to comply with an order based on purported legal exposure. In the confirmed and affirmed Second Partial Final Award ("2PFA"), the Tribunal rejected Respondents' attempts to justify their non-compliance by relying on a "legal opinion" that they procured from Morrison & Forester by supplying facts that were "were materially misleading by both omission and affirmative misstatement." *Id*. ECF No. 369-8 at 53.

documents; and (2) even if the "legal opinions" did provide a good faith excuse for Terra's failure to execute the documents (which they do not), Terra's owners, who are currently making decisions on Terra's behalf, remain fully capable of executing the transfer documents.

### A. The Foreign Legal Opinions Provide No Basis for Respondents' Non-Compliance, Let Alone Demonstrate Good Faith Efforts to Comply.

First, Respondents' Opposition rests almost entirely on the claim that Messrs. Porras and Sagastume resigned because compliance with the Turnover Order would expose them to criminal liability in El Salvador and Guatemala. This Court need not wade into issues of foreign law because nothing on the face of these purported "legal opinions" actually prohibits either them or Terra from complying with the Court's order and executing the transfer documents.[3] Therefore, Respondents raise no issues that actually hinge on the Court's interpretation of any foreign laws. The opinions speak in generalities about potential liability, but they do not identify **any specific order** from a court of competent jurisdiction or governmental authority actually prohibiting the transfer of Terra's shares. Respondents have identified no injunction, no court order, and no specific legal prohibition that would prevent compliance, which is simply and easily achieved. Accordingly, they have failed to carry their "burden . . . to establish [their] inability clearly, plainly, and unmistakably." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).

In addition to failing to identify **any** foreign legal authority that conflicts with the Turnover Order, the conclusions advanced by Respondents in their Opposition are unsupported by their

---

[3] Respondents fault Petitioners for not procuring legal opinions of their own prior to filing the Motion (*see* Opp. at 7–8), but because there is nothing in Respondents' opinions actually explaining why Terra cannot comply with the Turnover Order, there is nothing for Petitioners' counsel in Guatemala and El Salvador to opine on. Respondents failed to cure that fatal defect in their Opposition and, accordingly, Petitioners are not filing submissions from their foreign counsel here. In any event, Terra did not argue in its opposition to Petitioners' Turnover Motion or at any time prior to entry of the Turnover Order that any foreign legal order would prevent it from complying with the relief Petitioners sought. *See* ECF No. 511. Thus, any legal argument that Terra could not comply with the Turnover Order has been waived. *See Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 385–86 (S.D.N.Y.2018) (holding that a defendant waived an argument raised for the first time in a motion for protective order when the argument for noncompliance with discovery could have been raised in opposition to motion to compel).

"legal opinions." Respondents vaguely direct this Court to foreign criminal laws, including "Disobedience of Private Individuals" and "Concealment." ECF No. 547 at 4–6. But the "legal opinions" do ***not even attempt*** to connect the dots and show how compliance with this Court's Turnover Order could be considered a violation of *any* law, and nothing on the face of the cited criminal statutes even remotely supports that conclusion. *Id.* Respondents point to a "conclusion" in Dr. Sandoval's opinion and claim it is "directly applicable"; yet, that conclusion is unsupported by any legal analysis in the opinion itself and thus is no more than *ipse dixit*:

> Any director who is part of the corporate structure of Continental Towers or its partners, who signs instruments or performs acts intended to facilitate the transfer of ownership or control of the various companies to third parties, whether local or foreign, including those carried out in compliance with a foreign court, may be held liable for the crime of DISOBEDIENCE OF PRIVATE INDIVIDUALS Art 338 of CP, or the crime of CONCEALMENT Art. 308 of CP[.]

*See* ECF No. 547 at 4. Not only does this "conclusion" contravene the plain language of the cited criminal statutes, it also is not "directly applicable" on its face because the Turnover Order requires a transfer of Terra's shares to *Petitioners*, who are *current owners* of the Company, not a "transfer of ownership or control … to third parties." *Id*.

Even had Respondents identified a *single order* that is at odds with the Turnover Order—which they have not—that would still not excuse Respondents' failure to comply. *United States v. Chase Manhattan Bank, N.A.*, 590 F. Supp. 1160, 1163 (S.D.N.Y. 1984); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 616–17 (S.D.N.Y. 2008) (Lynch, J.), *aff'd*, 351 F. App'x 467 (2d Cir. 2009). *Telenor Mobile* is particularly instructive. There, as here, a shareholder argued "that contempt is not warranted because courts may not order a party to take any action that would violate the civil or criminal law of foreign country." *Id*. at 617. The Court rejected that argument, finding, in part, that "a foreign court order prohibiting compliance with this Court's order does not make compliance impossible." *Id*. at 616. Specifically, the Court found

4

that "[w]hile the injunction issued in the [Ukrainian court proceeding] does purport to prohibit any corporate action by [the shareholder], and hence, actions in compliance with the Final Award, for the reasons discussed above, the mere existence of this injunction does not excuse [the shareholder's] non-compliance." *Id.* at 617.[4] Importantly, the Court found that "[a] contemnor's burden of proving impossibility is particularly high 'where the defendants have a long history of delay and the plaintiffs' needs are urgent.'" *Id.* (quoting Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir.1986)). Both facts are abundantly present here.

The "legal opinions" simply do not support the Terra Directors' excuse—that their resignations were somehow compelled by a legal impediment. To the contrary, the coordinated and nearly identical resignation letters were clearly a strategic ploy designed to frustrate this Court's Turnover Order. Inability to comply must be legitimate, not self-imposed. *See United States v. Bryan*, 339 U.S. 323, 330–31 (1950). Where, as here, the alleged inability results from the contemnor's own deliberate actions—engineering the resignation of its directors to create an excuse for noncompliance with the Turnover Order—no defense exists. *Id.* Critically, Hernandez, who controls Terra, has the power to effect compliance at any time. The claim of inability to comply is meritless.

### B. The Contrived Resignations of the Terra Directors Are Not an Excuse for Non-Compliance with the Turnover Order.

Not only does Terra's choreographed resignations ploy fail for being contrived, but it also fails because it provides no legal excuse for not complying with the Turnover Order. Terra's "justification" for noncompliance with this Court's Turnover Order is based on both the purported

---

[4] In rejecting the shareholder's argument, the Court noted that, just as Respondents have done here, the shareholder "agreed to resolve disputes with [another shareholder] by arbitration in New York, knowing that this might present conflicts with the laws and courts in Ukraine. Consequently, it must now 'accept the consequences' for the privileges it sought from the protection of New York law." *Id.* at 617.

5

resignation of the Terra Directors and Terra's claimed inability to identify new directors, who Terra claims are necessary to execute the transfer documents. ECF No. 547 at 7 ("…the Terra Parties must take corporate action to turn over the shares. This requires directors or officers, of which the Terra Parties have none."). Setting aside the bogus contrivance of this entire scenario—indeed, the Opposition fails to explain how Terra's counsel could have been authorized to file it if there is no one capable of acting on Terra's behalf—Terra is simply wrong in alleging that either of the Terra entities is presently unable to execute the transfer documents.

Obviously, the Terra entities have the ability to act—they just refuse to comply with the Turnover Order because they don't like it. This commonsense conclusion supported by Terra's current actions, including its continuing litigation before this Court and Terra's shareholder's purported appointment of other counsel to search for new directors. ECF No. 547 at 6; ECF No. 549-14 at ¶ 4. It is further confirmed by the law of both the BVI and Panama (where the Terra entities are organized). As set forth in the Declaration of Stuart Rau ("Rau Declaration"),[5] filed herewith, "on the basis of the circumstances described by the Respondents, the powers otherwise exercisable by the directors of Terra Towers **have now reverted to the Shareholder, who is therefore empowered to cause Terra Towers to comply with the Turnover Order**." Rau Declaration at ¶ 12 (emphasis added). The Shareholder of both Terra Towers and TBS Management (collectively "Terra") is another BVI entity that has two directors in place, as recorded on the BVI Financial Services Commission's List of Directors dated March 2, 2026, who are long time Hernandez agents: (i) Juan Francisco Quisquinay, whom this Court enjoined from

---

[5] Stuart Rau is a qualified BVI Legal Practitioner (Rau Declaration at ¶ 3) and is a Partner in the BVI office of Maples and Calder (*id.* at ¶ 1). Terra Towers Corp. ("Terra Towers") is a company registered in the BVI and, therefore, subject to BVI law with respect to corporate governance. Respondents' entire argument that they cannot execute the transfer documents is based on a single U.S. case citing a very general proposition of U.S. corporate law that has nothing to do with the specific circumstances here, let alone a BVI company subject to the laws of the BVI. ECF No. 547 at 6.

bringing an improper collateral action against the Company in the BVI, and (ii) Kristha Pineda, a DTH officer who testified for Respondents in the Arbitration. *See* ECF 209; ECF Nos. 261-3 (English) & 261-4 (Spanish) (Witness Statement of Kristha Pineda submitted in support of Respondents' Pre-Hearing Memorial in the Arbitration); ECF 535-1 (proposed order).

Further, with respect to TBS Management, which is incorporated in Panama—Terra's claimed inability to comply fails for additional reasons. To begin, public records in Panama show that Terra Director Andres Porras Castillo never had any position with TBS Management. *See* Declaration of Joaquín De Obarrio ¶ 9. Accordingly, his purported resignation, on which Terra relies in the Opposition, is a nullity and moreover, reveals their "excuse" for noncompliance to be a completely manufactured charade. *See* ECF 549-5. And those same records show that the resignation of TBS Management's actual administrators—Sagastume and, yet again, Quisquinay—were not even effective as a matter of Panamanian law as of the date TBS Management was required to execute the transfer documents. *See* Obario Decl. ¶¶ 10-15. Indeed, the filings needed to effectuate their resignation were not made until February 27, three days **after** Terra filed the Opposition. *See id*. ¶ 9. The resignation of Quisquinay only became effective as of the date of this filing, March 3, 2026. *Id*. at ¶ 12. The resignation of Sagastume is **still** not effective. *Id*. at ¶ 13. In other words, the resignation of Terra's directors was not only a complete ruse, but it also provides no legal basis for its noncompliance with the Turnover Order.

## II. THE COURT CAN AND SHOULD ISSUE THE RELIEF REQUESTED IN THE PROPOSED ORDER.

Respondents fault Petitioners for not expressly citing *Spectacular Venture, L.P. v. World Star International, Inc.*, 927 F. Supp. 683 (S.D.N.Y. 1996)[6], but that case's three-factor test for

---

[6] Respondents point to three considerations in determining an "appropriate sanction," including: "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the

determining the appropriate sanction for contempt is fully incorporated in the authority cited by Petitioners. *See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657–58 (2d Cir. 2004). In any event, the factors used by *Spectacular Venture* readily **confirm** that the sanctions Petitioners seek are appropriate. First, the character and magnitude of the harm threatened by Respondents' continued contumacy is substantial: Petitioners are denied the benefit of the Turnover Order, Respondents continue to help themselves to the Company's substantial cash, and this Court's authority is undermined by Respondents' open defiance. Second, the relief sought in the Proposed Order has a greater likelihood of bringing about compliance than additional monetary sanctions, which have proven wholly ineffective. Third, while Petitioners are not seeking additional monetary sanctions, Respondents have failed to demonstrate inability to pay or comply; to the contrary, the record shows Respondents control substantial assets and have the power to cause compliance at any time. *See* Peppertree's March 3, 2026 Reply in Support of Motion for Civil Confinement and a Criminal Contempt Order and Referral at pp. 4–5.

In opposing the relief requested by Petitioners, Respondents argue that this Court is powerless to ensure compliance with its own orders. Forecasting their next wave of contempt, Respondents claim that the requested relief will be "completely ineffective" because "[f]oreign, non-party banks do not have [to] respect the orders or our courts, and the employees of the various subsidiaries [such as the Peru Non-Parties who have appeared in this case], also non-parties, are not bound by the relief Petitioners seek." ECF No. 547 at 8–9. Under Respondents' twisted and circular application of the law, the Court should not issue any sanctions against non-parties because the non-parties will not comply. However, Respondents do not dispute that under Fed. R. Civ. P.

---

sanction's burden." ECF No. 547 at 8 (quoting *Spectacular Venture, L.P. v. World Star International, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996) (citing *New York State NOW v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)). Respondents do not challenge considerations (1) or (3) and therefore concede those considerations are not at issue here.

8

65(a)(2), an injunction issued by the Court will bind their "officers, agents, servants, employees, and attorneys" and anyone else "in active concert or participation with them," whether or not such individuals are personally named as parties to this action. Moreover, it is well settled that "[a] nonparty respondent may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance or if it is legally identified with that party." *Spectacular Venture, L.P. v. World Star Intern., Inc.*, 927 F. Supp. 683, 684–85 (S.D.N.Y. 1996) (Kaplan, J.). Here, as discussed further below, there is no dispute that Hernandez controls Respondents, including DTH, and thus also controls the "various subsidiaries" that Respondents vaguely reference in their Opposition. ECF No. 547 at 8–9. Just as in *Spectacular Venture*, they are "one and the same"—all subject to this Court's authority. *See id.* at 685.

Respondents are, once again, plainly wrong and have identified no authority to support their claim that the relief proposed by Petitioners does not fall within this Court's broad discretion to enforce its own orders.[7] This Court has previously confirmed its "broad discretion to design a remedy that will bring about compliance." *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 505 (S.D.N.Y. 2019) (Kaplan, J.), *aff'd in relevant part*, 990 F.3d 191, 206 (2d Cir. 2021). Indeed, "[c]ourts possess broad discretion to require a party to take affirmative steps when such steps are required to bring that party into compliance with a court order." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 2013 WL 4828592, at *24 (S.D.N.Y. Sept. 10, 2013) (ordering party "to bring himself into

---

[7] Even if the standard for contempt were not satisfied here (it certainly is), the Court would nonetheless be empowered to issue an order to ensure compliance with its prior orders. *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) ("[A] federal court's interest in orderly, expeditious proceedings justifies any reasonable action taken by the court to secure compliance with its orders.") (internal quotations omitted) (citations omitted); *see also Soundkillers LLC v. Young Money Ent., LLC*, 2016 WL 4990257, at *3 (S.D.N.Y. Aug. 2, 2016) ("Where a district court imposes a remedy to compel compliance with its own order, that remedy may be treated as a sanction imposed upon an order of contempt, even if no finding of contempt is explicitly made." (citing *Berger*, 771 F.2d at 1569 n.19)), *report and recommendation adopted*, 2016 WL 4926198 (S.D.N.Y. Sept. 15, 2016); *Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir. 1983) ("Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both.") (citation omitted).

compliance with" provisions of court-ordered consent judgment by, *inter alia*, removing certain material from websites in party's control). Thus, this Court unquestionably has broad discretion to fashion and enter an order that will bring about Respondents' compliance, and it should exercise that discretion here, especially in light of Respondents' record of contempt, the historical ineffectiveness of monetary sanctions, and the current critical juncture in the sale process.

### III.  HERNANDEZ IS SUBJECT TO, AND IS IN CONTEMPT OF, THE TURNOVER ORDER.

Finally, in another attempt to perpetuate the fiction that Terra operates independently from Hernandez—a claim that has repeatedly been rejected by both the Tribunal[8] and this Court[9]—Respondents argue that Petitioners "need to show what Mr. Hernandez did, not merely point to the Terra Parties." ECF No. 547 at 10. But as set forth in Peppertree's reply in support of its parallel motion for civil confinement and criminal contempt sanctions as to Hernandez (ECF No. 539) being filed contemporaneously, Hernandez is bound by the Turnover Order and subject to severe sanctions for his failure to comply with it.[10]

### CONCLUSION

For the foregoing reasons as well as those set forth in the Motion, Petitioners respectfully request that the Court grant the Motion in its entirety and issue the Proposed Order filed therewith, and order such further "different and more onerous" sanctions against Respondents as the Court deems appropriate under these circumstances.

---

[8] ECF No. 124 at n.6 ("DTH is a holding company that, like Terra, is owned and controlled by Jorge Hernández").
[9] ECF No. 414 at 8 ("Respondents and Hernandez are 'one and the same.'").
[10] Respondents also argue that "there is no description of how DT Holdings is not complying with the Turnover Order, something that does not implicate DT Holdings at all." ECF No. 547 at 10. But the Turnover Order requires compliance by Terra ***and*** "all those in active and participation with Terra, **including, without limitation, DT Holdings, Inc.** and Jorge Hernandez," and thus the instant Motion seeks relief against all Respondents and anyone else in active concert and participation with them, including by requiring DTH to comply with Peppertree's directives regarding Company operations. ECF No. 520 at 2 (emphasis added).

| | |
|---|---|
| Dated: March 3, 2026 | Respectfully submitted, |

By: */s/ Michael N. Ungar*
Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax: (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax: (917) 262-0480
dlandman@ubglaw.com

Joon H. Kim
Rahul Mukhi
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Phone: (212) 225-2000
Fax: (212) 225-3999
jkim@cgsh.com
rmukhi@cgsh.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

By: */s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew S. Todres
Ethan R. Fitzgerald
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Phone: (212) 596-9000
Fax: (212) 596-9090
gregg.weiner@ropesgray.com
andrew.todres@ropesgray.com
ethan.fitzgerald@ropesgray.com

Daniel V. Ward
(admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050
daniel.ward@ropesgray.com

*Counsel for Petitioner AMLQ Holdings (Cay), Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that an as-filed copy of the foregoing and related filings was filed electronically on March 3, 2026. Notice of this filing will be sent to all counsel of record through the Court's electronic notice system.

<u>/s/ Michael N. Ungar</u><br>
*Counsel for Petitioners Telecom Business*<br>
*Solution, LLC and LATAM Towers, LLC*