UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
TELECOM BUSINESS SOLUTION, LLC, *et al.*,        : Civil Action: 1:22-cv-01761
                                                 :
        Petitioners,                        : Judge Lewis A. Kaplan
   v.                                            :
                                                 : Magistrate Judge Robert W.
TERRA TOWERS CORP., *et al.*,                    : Lehrburger
                                                 :
        Respondents.                        :
---------------------------------------------------------------- X


# PEPPERTREE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CIVIL CONFINEMENT AND A CRIMINAL CONTEMPT ORDER AND REFERRAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 42

Michael N. Ungar
(admitted *pro hac vice*)
Katherine M. Poldneff
Ashtyn N. Saltz
(admitted *pro hac vice*)
**UB GREENSFELDER**
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Fax: (216) 583-7001
mungar@ubglaw.com
kpoldneff@ubglaw.com
asaltz@ubglaw.com

David A. Landman
**UB GREENSFELDER**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax: (917) 262-0480
dlandman@ubglaw.com

Joon H. Kim
Rahul Mukhi
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Phone: (212) 225-2000
Fax: (212) 225-3999
jkim@cgsh.com
rmukhi@cgsh.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*

## PRELIMINARY STATEMENT

Respondents' Opposition confirms what five years of litigation have made abundantly clear: Respondents will manufacture any excuse and deploy any tactic to avoid complying with binding arbitral awards and this Court's orders.[1]

*First*, as set forth in Petitioners' Reply in Support of their Motion for Civil Contempt Sanctions ("Civil Contempt Reply"), ECF No. 550, being contemporaneously filed and expressly incorporated herein, Respondents' excuse for their noncompliance is a transparent pretext that merely underscores the need for the most severe sanctions available. As to the appropriate remedies, Respondents make the untenable argument that Hernandez is not subject to the Turnover Order. That is contradicted by both the text of the Turnover Order—which names him specifically—and Rule 65(d)(2), which covers agents and those in active concert with contemnors. Hernandez's failure to cause Terra to comply with the Turnover Order—and, indeed, his active obstruction—is inexcusable. Monetary sanctions have proven ineffective—Respondents have not paid a single dollar of escalating fines. The time for ordinary civil remedies has passed.

*Second*, Respondents' suggestion that civil confinement is inappropriate because Hernandez does not travel to the United States would mean any party remaining outside the country could violate court orders with impunity. As this Court has previously held, that is not the law.

*Third*, Respondents' standing argument on criminal contempt likewise fails—a private party may always bring facts warranting criminal contempt to the Court's attention. Such facts

---

[1] Unless otherwise indicated, all capitalized terms are as defined in Peppertree's opening Memorandum of Law, ECF No. 540 (the "Motion" or "Mot."). The "Opposition" or "Opp." refers to Respondents' Memorandum in Opposition to Peppertree's Motion, ECF No. 546.

are overwhelmingly present here.

*Fourth*, Respondents' invocation of *United States v. First Nat'l City Bank*, 396 F.2d 897 (2d Cir. 1968) is equally meritless. None of the factors from that decision excuse Respondents' contempt. Nor does it require this Court to defer to sham criminal proceedings that Respondents themselves orchestrated as an excuse for evading compliance with this Court's orders.

## ARGUMENT

### I. HERNANDEZ IS SUBJECT TO AND HAS COMMITTED CONTEMPT

***The Turnover Order expressly binds Hernandez.*** Respondents argue that Hernandez was not named in the Turnover Order and had no personal obligations under it. Opp. at 8. This argument misstates the Turnover Order and ignores black letter law.

The Turnover Order by its terms requires "Terra (and all those in active concert and participation with Terra, including, without limitation, DT Holdings, Inc. and ***Jorge Hernandez***)" to "take any and all actions, and [to] cause the members of the Company's Board appointed by Terra to take any and all actions, required to effectuate the immediate turnover of Terra's shares in the Company to Petitioners." ECF No. 520 at 2 (emphasis added). It further commands that "***Jorge Hernandez***" and others "shall take no action . . . that in any way interferes with or obstructs the turnover." *Id*. (emphasis added). Hernandez is thus bound by the plain language of the Turnover Order itself.

Federal Rule of Civil Procedure 65(d)(2) likewise confirms Hernandez is bound, as it provides that an injunction binds parties' officers, agents, and "other persons who are in active concert or participation with" the parties. Fed. R. Civ. P. 65(d)(2)(B)–(C). This Court has already found that "Respondents and Hernandez are 'one and the same.'" ECF No. 414 at 8; *see Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996)

2

(Kaplan, J.) ("principal" who was "one and the same" with a corporate entity held in contempt for the corporation's failure to comply with prior sanctions).

Even accepting Respondents' inaccurate argument that Hernandez had no affirmative obligations under the Turnover Order, he violated his requirement to "take no action . . . that in any way interferes with or obstructs the turnover." ECF No. 520 at 2. Within eight days, the directors whose signatures were necessary to effectuate the transfer resigned—a result Hernandez clearly caused, and at minimum could have prevented, as the control person. *See* ECF No. 550 at 5–7. By facilitating or permitting the resignations, Hernandez directly violated the Turnover Order. Hernandez and Terra are "one and the same," ECF No. 414 at 8, and Hernandez therefore has the power to cause Terra's owners to comply at any time, as fully explained in the Civil Contempt Reply. ECF No. 550 at 5–7. His refusal to do so—and his actions in obstructing compliance—constitute violations of the Turnover Order for which he is personally liable.

## II. CIVIL CONFINEMENT IS NECESSARY AND APPROPRIATE

Respondents contend that civil confinement is unwarranted because the Terra Parties have "diligently attempted to comply" with the Turnover Order. Opp. at 9–10. This argument is refuted by the record. *See* ECF No. 550 at 2–7.

Respondents also fault Peppertree for not expressly citing this Court's decision in *Spectacular Venture*, but that case's three-factor test is incorporated in the authority Peppertree cited. *See A.V. By Versace*, No. 96 Civ. 9721 (PKL) (THK), 2004 WL 691243, at *8 (S.D.N.Y. Mar. 31, 2004); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, No. 03 Civ. 5562, 2005 WL 1983905 (JGK) (AJP), at *11 (S.D.N.Y. Aug. 18, 2005); *Genzyme Corp. v. Rice*, No. 15 Civ. 7892 (SAS), 2016 WL 397673, at *2 (S.D.N.Y. Jan. 29, 2016). In any

event, the *Spectacular Venture* factors further confirm civil confinement is appropriate. 927 F. Supp. at 685.

*First*, the character and magnitude of the harm threatened by Respondents' continued contumacy is substantial: Petitioners are denied the benefit of the Turnover Order, Respondents continue to wrongfully profit from the Company, and this Court's authority is undermined by Respondents' open defiance, not only of the Turnover Order but many others as well. *Second*, civil confinement is the only sanction with any prospect of bringing about compliance. Monetary sanctions have proven completely ineffective. Despite this Court's imposition of escalating daily fines beginning at $10,000 per day and doubling every 14 days, Respondents have not paid a single dollar. *See* ECF No. 295 at 47; ECF No. 414 at 16.

*Third*, Hernandez has not shown an inability to pay prior monetary sanctions. The burden of showing such inability is on the contemnor and must be established "clearly, plainly, and unmistakably." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). Respondents have not come close to meeting their burden. *See Spectacular Venture*, 927 F. Supp. at 685. While Hernandez implausibly claimed in discovery he had no assets, his nuclear family resides in a lavish Napa estate and owns upscale olive oil and winery businesses. *See* ECF Nos. 343-1–3, 343-6–8, 343-11–17. Hernandez owns a Maserati, *see* ECF No. 343-18, and is the primary beneficiary of significant assets of the HF (*i.e.*, "Hernandez Family") 2018 Dynasty Trust previously disclosed in this proceeding, *see* ECF No. 471 at 6. Moreover, DTH continues to misappropriate over $480,000 per month from the Company, as well as additional funds for the development of unauthorized towers, all in violation of the 5PFA. *See* ECF No. 369-24 at 195. Notably, while Respondents fund ongoing litigation—including over ten appeals and numerous

4

collateral proceedings—they claim no funds to pay court-ordered fines. This itself puts the lie to their claims.

Respondents' history of willful contempt is also undeniable. *First*, their claim of compliance with the 2023 judgment confirming the 1PFA is absurd—they refused to sell the Company for years, only engaged an investment bank after being found in contempt, and then sabotaged the sale process by terminating that bank. *See* ECF No. 495 (pending Contempt Motion for violation of 1PFA). *Second*, no BVI Contemnors, including Respondents, have purged their contempt in the El Salvador-Related BVI Action. *Third*, DTH remains in contempt for discovery failures. *See* ECF Nos. 441, 484. *Fourth*, Respondents never terminated any of the four foreign arbitrations in Latin America as required by the 3PFA judgment. Now they have added contempt of the Turnover Order to this record of contumacious misconduct.

Respondents suggest that the Terra Parties cannot comply with the Turnover Order because they have no directors. Opp. at 12. This is false for the reasons fully explained in the Civil Contempt Reply. *See* ECF No. 550 at 2–7. In any event, a claimed inability to comply is no defense when it is of the contemnor's own making. *See United States v. Bryan*, 339 U.S. 323, 330–31 (1950). Here, Respondents engineered the very obstacle they now cite—the resignation of directors—to manufacture an excuse for defying the Turnover Order. That provides no shield from contempt. Moreover, Hernandez, as the controller, has the power to cause compliance at any time. He is directing Terra's litigation and appointed a third party to search for new directors. *See* Opp. at 5; ECF No. 548-13 ("For the record, I, Raul Pimentel, confirm that I was contacted by the shareholders of Terra Towers Corp. and TBS Management SRL to identify and propose director candidates for these companies."). If he and Terra can take these actions, they can also comply with the Turnover Order.

Finally, Respondents argue that civil confinement is inappropriate because Hernandez does not travel to the United States. Hernandez submitted to and invoked this Court's authority. He cannot now claim immunity from enforcement simply because he chooses to remain abroad. This Court has full authority to order Hernandez to appear, and if he refuses, take additional enforcement measures. *See A.V. By Versace*, 2004 WL 691243, at *9; *CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12 Civ. 8087, 2013 WL 324061, at *3–4 (S.D.N.Y. Jan. 24, 2013).

This Court rejected an identical argument in *F.T.C. v. Verity Int'l, Ltd.* in issuing a civil confinement order against foreign contemnors. 140 F. Supp. 2d 313, 318 (S.D.N.Y. 2001) (Kaplan, J.). There, the Court found that while foreign contemnors "may be able to remain outside the country for a long period in order to avoid arrest, it seems likely that such conduct would interfere with their ability to manage their United States interests and otherwise give them an incentive to comply with the Court's order." *Id.* Here, the same calculus favors civil confinement: as noted above, Hernandez has strong personal, business, and asset ties to the United States. A civil confinement order will give Hernandez a meaningful incentive to comply if he wishes to access these substantial U.S. interests.[2]

Indeed, citing this Court's decision, Judge McMahon also found a civil commitment order appropriate in directly analogous circumstances, involving another foreign contemnor who would not comply with an order enforcing an arbitral award. *See CE Int'l*, 2013 WL 324061, at *2–3 (citing *Verity Int'l*, 140 F. Supp. 2d at 318). The contemnor was "elusive," but because he

---

[2] In *Spectacular Venture*, this Court held that Federal Rule of Civil Procedure 4.1(b) limited the location of service of contempt orders issued in diversity cases because they were not enforcing "federally-created rights." *Spectacular Venture*, 927 F. Supp. at 686 (civil commitment orders in diversity cases could only be served within New York or within 100 miles from the courthouse). This action is brought based on the federally-created rights under the Federal Arbitration Act and the New York Convention treaty, *see* ECF No. 1 ¶¶ 9–11, and, in any event, any enforcement limitation does not prevent the Court from issuing a contempt order.

6

was "an international businessman of means with business interests in the United States," a civil confinement order was appropriate as it would "potentially interfer[e] with those business interests [and] may indeed coerce [the contemnor's] compliance." *Id.* at *3. The same reasoning squarely applies here.

### III. THE ELEMENTS OF CRIMINAL CONTEMPT ARE MET

***Respondents' standing argument is meritless.*** Respondents argue that Peppertree, as a private party, cannot seek or obtain an order for criminal contempt. This argument fundamentally mischaracterizes both the law and Peppertree's request.

Peppertree requests that this Court make a referral under Rule 42, which provides that "[t]he court must request that the contempt be prosecuted by an attorney for the government." Fed. R. Crim. P. 42(a)(2); *id.* ("If the government declines the request, the court must appoint another attorney to prosecute the contempt."). Peppertree brings facts to the Court's attention that warrant such a referral—it does not seek to prosecute the contempt itself. *Cf. Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809 (1987). As Respondents' own authority held, a private party may "bring to the Court's attention facts that would give rise to an order of criminal contempt," even if the party itself cannot compel the Court to issue such an order. Order at 1, *Keawsri v. Ramen-ya Inc.*, No. 1:17-cv-02406 (S.D.N.Y. Nov. 16, 2023), ECF No. 774; *Spectacular Venture*, 927 F. Supp. at 686 (stating that "criminal contempt proceeding [] may be instituted either by the United States *or by the plaintiff*") (emphasis added).[3]

***The elements of criminal contempt have been met.*** Respondents do not seriously contest the first three elements of criminal contempt: (1) a reasonably specific order; (2) knowledge of that order; and (3) violation of that order. Instead, they focus their argument

---

[3] In *Keawsri*, the court denied a motion for criminal contempt in part because "several of the Defendants/Judgment Debtors [had] come into compliance with the Court's orders." *Id.* at 2. Here, by contrast, Respondents remain in open defiance of the Turnover Order (among others) and have shown no intention of complying.

7

on the fourth element—willfulness—contending that the Terra Parties "could not carry out the terms of the Turnover Order due to the possibility of criminal liability." Opp. at 9–10.

Willfulness "requires a specific intent to consciously disregard an order of the court," and "[e]ven godly motivation does not cancel this intent." *United States v. Donziger*, No. 19 Cr. 561 (LAP), 2021 WL 3141893, at *67 (S.D.N.Y. July 26, 2021), *aff'd*, 38 F.4th 290 (2d Cir. 2022). The same factors supporting civil confinement demonstrate willfulness here: (1) Respondents' prior history of contempt on at least four occasions; (2) their complete disregard for monetary sanctions; (3) their engineering of director resignations following the Turnover Order; (4) their pretextual excuses; and (5) their five-year history of defiance and misconduct. Mot. at 8.

Respondents suggest the directors' reliance on legal opinions demonstrates good faith. Opp. at 12. As set forth in the Civil Contempt Reply, those legal opinions provide no good faith basis to evade compliance. *See* ECF No. 550 at 2–7. Moreover, "[g]ood faith is only a defense . . . where the defendant has made a reasonable effort to comply with a court order but has failed because of the indefiniteness of the order or some other inability to do so." *United States v. Remini*, 967 F.2d 754, 757 (2d Cir. 1992). Here, Respondents sought legal cover for continued defiance, not advice on how to comply.

***Respondents' conflict of laws arguments fail.*** Finally, Respondents invoke the five-factor test from *First Nat'l City Bank*, 396 F.2d at 902, arguing this Court should defer to the "competing demands" of criminal proceedings in Guatemala and El Salvador. This argument fails on every factor. *Id.* at 902–05 (finding that bank's civil liability under German law was not justification for disobeying a grand jury subpoena).

*First*, vital national interests. The United States has a paramount interest in enforcing its court judgments. Guatemala and El Salvador have no legitimate interest in shielding

8

Respondents from compliance with a U.S. judgment enforcing an arbitration award issued in the U.S. pursuant to Respondents' agreements with Peppertree. This is particularly so where the criminal proceedings Respondents invoke arose from false complaints that this Court and the Arbitration Tribunal have condemned at every turn, finding that they lacked any "good faith factual basis" and were "retaliatory" and "an entirely pretextual effort to manufacture false evidence of criminality." ECF No. 94-103 ¶¶ 81–85.

Respondents' claim that the Tribunal has made no findings of fact regarding any conduct by the Company's CEO after August 12, 2022, Opp. at 8, is a red herring. As Peppertree and AMLQ demonstrated in their June 6, 2025 Motion for Further Findings of Civil Contempt and Sanctions, pending Guatemalan and Salvadoran criminal proceedings against the CEO are still based on the same allegations made in early 2021/2022 criminal complaints that *were* part of the proceedings before the Tribunal leading to their August 12, 2022 2PFA. *See* ECF No. 368 at 17; ECF No. 369-37 ¶¶ 12, 23 (demonstrating the evidence used to support the criminal proceedings in 2025 was the same evidence presented to and rejected by the Tribunal in 2022). Indeed, one premise for that motion was the Tribunal's determination "that there is an imminent threat to Mr. Gaitán's life and health" and that "Respondents are responsible for the proceedings that have led to Mr. Gaitán's incarceration," which are "***predicated exclusively on factual allegations propounded by Respondents that this Tribunal has previously adjudicated to be unsubstantiated***" in the 2PFA. ECF No. 369-39 ¶¶ 2–3 (emphasis added).

*Second*, hardship from inconsistent enforcement. Respondents claim the directors face criminal liability for compliance, but the purported "legal opinions" do not identify any credible basis for criminal or other liability for the transfer of Terra's shares—only speculative potential

9

exposure. *See* ECF No. 550 at 3–5. Moreover, any hardship Respondents face is of their own making: they orchestrated the very criminal proceedings they now invoke as a shield.

*Third*, location of required conduct. The transfer of Terra's shares can be effectuated from anywhere—it requires only the execution of documents. While the BVI-incorporated Company operates in Central America, the share transfer itself does not require conduct within Guatemala or El Salvador.

*Fourth*, nationality. Terra Towers Corp. and TBS Management S.A. are not Guatemalan or Salvadoran entities—they are incorporated in the BVI and Panama, respectively. Hernandez is a Guatemalan national, but he is subject, and has submitted, to this Court's jurisdiction.

*Fifth*, likelihood of achieving compliance. Hernandez has the power to cause the transfer at any time. According to Respondents, "compliance" with the purported foreign proceedings would mean permanent noncompliance with this Court's Turnover Order. That is both contrary to law and facially unsupported by their own legal "opinions." *See* ECF No. 550 at 3–5. Moreover, this Court is not required to defer to sham proceedings orchestrated by the very parties seeking to avoid compliance. *See Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 617 (S.D.N.Y. 2008) (Lynch, J.) (rejecting impossibility of compliance defense based on foreign court order, citing "the suspicious circumstances of that litigation, the circumstantial evidence linking [contemnors] to [third party's] court filings, and [contemnor's] long history of using 'collusive and vexatious' litigation in the [foreign] courts"), *aff'd*, 351 F. App'x 467 (2d Cir. 2009).

## CONCLUSION

Peppertree respectfully requests that the Court grant the Motion.

| | |
|---|---|
| Dated: March 3, 2026 | Respectfully submitted, |

| | |
|---|---|
| By: */s/ Michael N. Ungar* | By: */s/ Joon H. Kim* |
| Michael N. Ungar | Joon H. Kim |
| (admitted *pro hac vice*) | Rahul Mukhi |
| Katherine M. Poldneff | **CLEARY GOTTLIEB STEEN &** |
| **UB GREENSFELDER** | **HAMILTON LLP** |
| 1660 West 2nd Street, Suite 1100 | One Liberty Plaza |
| Cleveland, Ohio 44113-1406 | New York, NY 10006 |
| Phone: (216) 583-7000 | Phone: (212) 225-2000 |
| Fax: (216) 583-7001 | Fax: (212) 225-3999 |
| mungar@ubglaw.com | jkim@cgsh.com |
| kpoldneff@ubglaw.com | rmukhi@cgsh.com |

David A. Landman
**UB GREENSFELDER**
1700 Broadway, Suite 1802
New York, New York 10019-7710
Phone: (917) 262-0470
Fax: (917) 262-0480
dlandman@ubglaw.com

*Counsel for Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC*