UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TELECOM BUSINESS SOLUTION, LLC, *et al.*,

                     Petitioners,

            -against-

TERRA TOWERS CORP., *et al.*,

                     Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/12/2026

22-cv-1761 (LAK)

## MEMORANDUM AND ORDER DENYING
## MOTION FOR STAY PENDING APPEAL

LEWIS A. KAPLAN, *District Judge.*

        Respondents,[1] who remain in perhaps unprecedented defiance of multiple judgments and other Court process, again have been held in civil contempt of court in a lengthy and detailed opinion (the "May 7 Opinion")[2] and an accompanying contempt and remedial order (the "May 7 Order").[3]  They now seek a stay pending appeal, arguing principally that they are likely to prevail on the merits of their appeal and are threatened with irreparable injury.  Their arguments are entirely without merit.

_____

[1]      For purposes of this memorandum, the "respondents" are Terra Towers Corp. and TBS Management, S.R.L. (collectively, "Terra"), and Jorge Hernandez.  Unless otherwise indicated, all other capitalized terms are as defined in the May 7 Opinion.

[2]      *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-cv-1761 (LAK), 2026 WL 1257290 (S.D.N.Y. May 7, 2026); Dkt 569.

[3]      Dkt 570.

2

**Facts**

The Court assumes familiarity with the May 7 Opinion, its many previous decisions in this sad saga, and the Second Circuit's numerous decisions in this case, *all* of which upheld prior orders and judgments of this Court. By way of general background, it suffices for present purposes to restate the following from the May 7 Opinion:

> "About a decade ago, the petitioners in this litigation – three entities affiliated with American financial firms – invested scores of millions of dollars to acquire 45 percent of the shares of a private, foreign company that builds and operates telecommunications towers in Central and South America. A shareholders agreement included several carefully bargained-for provisions to safeguard their investment. One was the right to force a sale of the company following a five-year lockup period. Another was an arbitration agreement enforceable in U.S. and, in theory, foreign courts under the so-called New York Convention.

> "The petitioners initiated that sale process more than five years ago, but no sale has occurred. The majority shareholders (respondents here) have thwarted a sale at every turn, rather than comply with their contractual obligations. *   *   *

> "First, these respondents yet again are in contempt of this Court's judgment requiring specific performance of the sale provision. The Court previously held them in contempt of that judgment for effectively preventing the hiring of an investment bank to commence and manage the sale process. Facing those sanctions, the majority shareholders pretended to relent and agreed to hire a bank in June 2025. But the pretextual nature of that agreement soon was exposed, as they went on to induce that bank to terminate its engagement at the end of last year, halting an otherwise promising sale process.

> "Second, the majority shareholders and Hernandez are in contempt of this Court's subsequent order requiring them to transfer their shares in the company to the petitioners in partial or full satisfaction of the more than $300 million in damages that respondents owe petitioners on a separate but related judgment of this Court. The terms of the order requiring the transfer of shares could not have been more clear. Nonetheless, the majority shareholders, controlled by Hernandez, continuously have flouted it.

> "This defiance of this Court's decisions demands appropriate remedies. Perhaps more important, that defiance, if permitted to stand, will undercut severely the ability of the New York Convention — a 1958 U.N. treaty with over 170 state

parties, including the United States – to provide a safe, secure, and effective means of resolving international business disputes."[4]

**Discussion**

*The Applicable Standard*

Four factors are relevant to a determination whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[5]  As respondents concede, "[a] stay pending appeal 'is not a matter of right' but an exercise of judicial discretion."[6]

*Likelihood of Success*

Respondents claim that they are likely to prevail on appeal for two reasons.  Each is without merit.

**1.**      Although their first argument is none too clear,[7] it appears to rest on the turnover order that this Court entered in January 2026 under N.Y. C.P.L.R. § 5225(a) and Fed. R. Civ. P. 69(a) in proceedings to enforce petitioners' $300 million money judgment (the "Turnover

---

[4]   *Telecom Bus. Sol., LLC*, 2026 WL 1257290, at *1-2.

[5]   *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002).

[6]   Resp'ts' Mem. (Dkt 573) at 6 (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).

[7]   *See id.* at 7.

4

Order").[8]  Terra appealed from that order – but notably opted simply to defy it rather than comply or seek a stay pending appeal.  Respondents' present argument seems to be that the filing of the appeal from the Turnover Order transferred jurisdiction from the district court to the court of appeals and thus prevented the district court from enforcing that order as it effectively did in the May 7 decision.[9]  But they are mistaken.

To be sure, "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[10]  The objective of the rule, however, is to promote efficiency by preventing two courts from addressing the same matter at the same time.[11]  And the rule has no bearing here.

To start, Respondents entirely fail to grapple with the fact that the May 7 Order was issued to enforce not just the Turnover Order but also this Court's judgment confirming the First Partial Final Award, which the Second Circuit affirmed more than two years ago.[12]  Terra's

---

[8]    Dkts 520, 521.

[9]    Resp'ts' Mem. (Dkt 573) at 7.

[10]    *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).

[11]    *See, e.g.*, *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996).

[12]    *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 23-144, 2024 WL 446016 (2d Cir. Feb. 6, 2024).

5

interlocutory appeal of the Turnover Order certainly does not prevent this Court from continuing to issue rulings respecting other aspects of this complex litigation.[13]

Even putting that aside, respondents were and remain obliged by law to comply with the Turnover Order unless and until it is stayed or reversed,[14] neither of which has occurred. The May 7 Opinion and Order seek to force them to do what they in any case have been obliged to do by the Turnover Order since January. As respondents have refused to comply with it, the May 7 Order simply gives them one last chance to do so, failing which the May 7 Order, as contemplated by Fed. R. Civ. P. 70(a), will place the ability to transfer the shares in the hands of the Clerk of the Court. Thus, although respondents argue that this Court "must maintain the *status quo*" pending appeal,[15] they overlook that the *status quo* under the Turnover Order is that petitioners' are entitled to receipt of Terra's shares so that those shares can be liquidated in a sale of the Company. If Respondents simply had complied with that order, as they were bound to do, the shares already would be in petitioners' possession pending appeal.

There is no inconsistency between the pendency of an appeal from the Turnover Order and this Court enforcing either or both that order, which remains in full force in

---

[13] *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) ("Another exception to total divestiture of district court jurisdiction occurs when the judgment appealed from does not determine the entire action, in which case the district court may proceed with those matters not involved in the appeal.").

[14] "[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

[15] Resp'ts' Mem. (Dkt 573) at 7.

effect, and the judgment confirming the First Partial Final Award, which already has been affirmed on appeal.  Accordingly, the filing of the notice of appeal from the Turnover Order months ago did not oust this Court of jurisdiction to act on the contempt motions decided on May 7.  Indeed, respondents' papers in opposition to those motions did not even hint at such an argument.

       **2.**     The second argument is even less meritorious.  It contends – without any factual or legal basis or support – that:

> "The May 7 Order creates substantial risks of violating other countries' laws. The assets of the Joint Venture Company are in El Salvador and Guatemala, among other countries. The directors appointed by the Terra Parties have already resigned to the conflict with the jurisdiction of the courts in those countries. Carrying out the terms of the May 7 Order will magnify this conflict."[16]

It further asserts that, "[a]s the Second Circuit has stated, 'no court should order the performance of an act in a foreign country when that act will violate the foreign country's laws.'"[17]  But the argument borders on the risible.

       First, Respondents offered up this crutch in resisting the contempt motions that produced the May 7 decision.  As the May 7 Opinion clearly shows, the argument is entirely unsupported by the vague and conclusory "opinions" of the foreign lawyers respondents provided.[18] Those purported "opinions" do not even approach showing that the May 7 Order violates any foreign law or, for that matter, creates any such risk.  They are little more than eyewash.  Moreover, the relevancy of the fact that the "assets of the Joint Venture Company are in El Salvador and

---

[16]    *Id.* at 8.

[17]    *Id.* at 7 (quoting *United States v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962)).

[18]    *Telecom Bus. Sol., LLC,* 2026 WL 1257290, at *14-16, 20.

Guatemala, among other countries," escapes this Court. The location of the *assets* owned by the Company has nothing to do with whether to enforce an order requiring the respondents to live up to their obligation to turn over their *shares* in the "Joint Venture Company," regardless of the location of any assets held directly or indirectly by that company, in order to facilitate the petitioners in collecting their judgment of more than $300 million. Respondents' unsupported musings do not even remotely support their arguments and certainly afford no basis for supposing that the respondents have any realistic possibility of success in the court of appeals.

So too the vague allusions to the possibility that the May 7 Order may not be "enforceable" in the British Virgin Islands or "compl[ied] with" by the Company's subsidiaries in other countries.[19] These assertions – which, even if true, would be of questionable relevance to the enforcement of this Court's duly entered judgments – are unsupported by law or fact and thus do not remotely demonstrate an abuse of this Court's broad equitable discretion to remedy contempt.

Finally, the same lack of merit characterizes the claim that "no court should order the performance of an act in a foreign country when that act will violate the foreign country's laws." The premise – that transfer of respondents' 55 percent interest in the joint venture in satisfaction of all or part of their more than $300 million liability to the petitioners would violate any other country's laws – is entirely unsubstantiated. But even if it were, that would be only the beginning – not the end – of the analysis. As the Supreme Court clearly has stated in another context, for example, a United States court in appropriate circumstances may order compliance with

---

[19]    Resp'ts' Mem. (Dkt 573) at 8.

8

discovery orders even where compliance would violate the laws of a foreign country.[20]  What is called for in cases of clear and unavoidable conflict between U.S. and foreign law is an exercise of comity.[21]  But where there is no conflict, or where the contention that compliance with U.S. law would violate foreign law is as devoid of merit as it is here, there really is no issue.

*    *    *

For the foregoing reasons, the Court concludes that the respondents have no meaningful possibility of success on the merits of their appeal.

***Threatened Irreparable Injury***

The respondents' entire irreparable injury argument is that the enforcement of the May 7 decision would transfer their majority interest in the Company, presumably resulting in its irretrievable sale.[22]  Respondents fail to explain why they would be harmed (let alone irreparably harmed) by a sale of the Company, other than by misreading this Court's decision in *In re St.*

---

[20]  *E.g., In re DiDi Global Sec. Litig.*, No. 21-cv-5807 (LAK), 2025 WL 267893, at *2 (S.D.N.Y. Jan. 22, 2025) ("The Supreme Court has made clear that foreign statutes do not deprive American courts of the power to order parties subject to their jurisdiction to produce evidence even though the act of production may violate such statutes." (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 28 (1987)).

[21]  *See In re DiDi Global Sec. Litig.*, 2025 WL 267893, at *2; *Société Nationale*, 482 U.S. at 543-44, 544 n.28.

[22]  Resp'ts' Mem. (Dkt 573) at 8-9.

*Johnsbury Trucking Co.*,[23] which made clear that its finding of irreparable harm was *not* premised on "the loss of the right to appeal *vel non*."[24]

The other fundamental difficulty with the argument is that the deal petitioners and respondents made in the first place was that petitioners had the right to force sale of the Company after a five year lockup period. Respondents, in bald defiance of their contractual obligation to sell, for years have frustrated every attempt by petitioners to compel the sale to which petitioners are entitled. It is petitioners who have been injured irreparably for years now by being locked into an illiquid minority position in the Company despite their clear contractual right to force a sale. And it is petitioners who would suffer further irreparable injury if a stay pending appeal were granted.

In the last analysis, respondents' argument is evocative of the oft told tale of a plea for mercy by a child about to be sentenced for murdering its parents on the ground that the child is an orphan. Moreover, sight should not be lost of the fact that the Turnover Order and the May 7 decision seek in part to enforce a $300 million money judgment, previously confirmed by this Court,[25] by conventional means for doing so – the seizure and liquidation of property subject to execution. Like any other judgment, that damages award must be satisfied unless and until stayed or reversed.[26] And, indeed, respondents have means of obtaining a stay of that judgment as a matter

---

[23]      185 B.R. 687 (S.D.N.Y. 1995).

[24]      *Id.* at 690 n.1.

[25]      Dkt 429.

[26]      *See Maness*, 419 U.S. at 458; *Bank of America, N.A. v. New England Quality Serv., Inc.*, No. 16-cv-83, 2019 WL 10888179, at *2 (D. Vt. Oct. 24, 2019).

of right pursuant to Fed. R. Civ. P. 62(b).  All they need do is post a bond or other security in sufficient amount.

### *Balance of Hardships*

Finally, respondents argue that the petitioners would not be injured by a stay pending appeal because the Company is being operated profitably.[27]  Of course, they have submitted no evidence in support of that assertion.  Moreover, respondents' assertion is patently deceptive and misleading.[28]  And even if true, the proposition would be quite beside the point.

The petitioners invested a nine-figure sum in the Company on the basis that they would have the right to compel a sale of the Company – and thus liquidate their investment – after the five-year lockup period.  Respondents have welched on that commitment.  Petitioners are stuck with an enormous amount of capital tied up in the Company despite respondents' clear obligation to facilitate their exit.  Petitioners thus have been deprived for years now of the use of their frozen capital and, were a stay granted, would continue to be so deprived.  There simply is no telling the extent of the economic harm that respondents have visited upon them and wish to continue.

The balance of hardships here is perfectly plain.  On the one hand, respondents, in the absence of a stay, merely would be obliged to live up to the deal they made years ago.  On the other hand, petitioners, were a stay granted, would suffer incalculable damage by virtue of having

---

[27] Resp'ts' Mem. (Dkt 573) at 9.

[28] In fact, petitioners have been provided with no Company financial and operating information for months.  Petitioners have received no distributions or other moneys from the Company *since October 2020.*  And the Company has been misappropriating  funds for the benefit of respondents and their affiliate DTH.  Ranieri Decl. (Dkt 580) *passim.*

11

their capital locked up for an additional and uncertain period. The balance weighs overwhelmingly in favor of denying a stay.

## Conclusion

The respondents' emergency motion to stay the May 7 order (Dkt 572) is denied in all respects. The temporary stay granted by paragraph 3 of this Court's May 8 memorandum endorsement (Dkt 578) is vacated. Respondents shall comply with paragraph 2 of the May 7 order **no later than 4 p.m. on May 14, 2026.**

SO ORDERED.

Dated:        May 12, 2026

_____
Lewis A. Kaplan
United States District Judge