UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Telecom Business Solution, LLC, *et al.*,

Petitioners,

v.

Terra Towers Corp., *et al.*,

Respondents.

Civil Action No.: 1:22-cv-01761

Judge Lewis A. Kaplan

Magistrate Judge Robert W. Lehrburger

**COUNSEL'S REPLY TO PETITIONERS' RESPONSE TO THE SUBMISSION OF RESPONDENTS' COUNSEL PURSUANT TO THE COURT'S JULY 13, 2026 ORDER TO SHOW CAUSE**

GST LLP, Rodney Quinn Smith II, Sagiance LLP, and Lucila I. M. Hemmingsen ("Counsel") hereby reply, pursuant to ECF 616, to Petitioners' filing dated August 10, 2026 (the "Response"), and in support thereof, state as follows:

## INTRODUCTION

Petitioners have not only acknowledged that they never sought sanctions against Counsel, but have to date completely failed to identify any subjective bad faith conduct specifically tied to Counsel that would justify such sanctions. Instead, they rely on misstatements of the law and a general "context" that has little to do with Counsel's specific conduct and is rather an attempt to lead the Court into finding that implicit conduct of their clients could potentially warrant sanctions on Counsel individually. The Response should only buttress the Court's decision to decline to sanction Counsel and is unhelpful for the following reasons:

- The Response confirms that there must be clear evidence, stated explicitly and with a high degree of specificity, that Counsel, not Respondents, acted with subjective bad faith in filing the Stay Motion, but then fails to identify any such specific conduct.

- The Response rehashes the general context of this litigation, and even adds new evidence of an email received by Petitioners' counsel from an unknown individual that has no connection whatsoever to Counsel, that is irrelevant for present purposes, as this Court's determination is limited to the Motion to Stay. The result is a shifting basis for sanctions and an argument for sanctions against Counsel based implicit actions or conduct totally outside of Counsel's control.

- Confirms Respondents are not seeking sanctions on Counsel, but instead use the Response as an attempt to rehash Respondents' conduct throughout this litigation, and inappropriately even add new evidence with emails from individuals that have no connection to Counsel, to influence the Court's decision.

Respondents sought leave from this Court to file a Response indicating that they were aiming at addressing "this Court's sua sponte sanctions authority and certain representations of the record" made by Counsel. ECF 614, p. 1. The Response does none of these things and has served to only add more time and expense to the exercise. Counsel once again affirms in good faith that at no time throughout these proceedings have they ever conducted themselves in bad faith, seeking any ulterior motives (such as harassment or delaying these proceedings) other than zealously representing their clients with the resources available. Counsel's respectful request that this Court decline to impose any sanctions against them.

## BACKGROUND

On May 26, 2026, Petitioners sought an award of attorneys' fees and costs arising from the Stay Motion (the "Sanctions Motion"). ECF 587. Petitioners sought sanctions be imposed against Respondents under Rule 11 and this Court's inherent authority. ECF 588, pp. 6-9. No sanctions were sought against Counsel. The Terra Parties and Mr. Hernandez filed their opposition (ECF 594), and Petitioners filed their reply on June 16, 2026 (the "Sanctions Reply" or ECF 595). This led to the Show Cause Order, dated July 13, 2026 (the "July 13 Order"), which Counsel timely responded to ("Counsel's Response"). ECF 611.

Two days later, Petitioners sought leave to file further papers to "address the Court's sua sponte sanctions authority and certain representations of the record contained in [Counsel's Response]." ECF 614, p. 1. Counsel objected on numerous grounds, beginning with Petitioners' misstatement as to Counsel's opposition. ECF 615, p. 1. Counsel further objected because of the risk that Petitioners would seek to "change the basis for the sanctions sought[.]"*Id*. The Court permitted the additional papers in a memorandum endorsement. ECF 616, p. 2.

In the Response, Petitioners inappropriately added an expanded basis for sanctions, arguing for "context" and referencing an email received by Petitioners. ECF 617, p. 8; 618-1. Petitioners also reserved the right to seek fees for filing the Response, even though they were the ones who sought permission for further briefing. ECF 618, p. 7, fn 1. In other words, despite not having to respond, and despite Counsel's own objections to that filing, Petitioners contemplate another fees motion.

## Legal Standard

Although Petitioners sought leave to file a response to Counsel's Response indicating that they wanted to clarify the Court's "sua sponte sanctions authority" (ECF 614, p.1), the legal standards advanced regarding the Court's authority add little more than attempted confusion. Petitioners agree that (1) the Court has inherent powers to impose sanctions; (2) that sanctions on lawyers should exclusively be grounded on an "explicit" finding of substantive bad faith; (3) that the Court's sua sponte Rule 11 relief is more circumscribed and sanctions should be limited merely to what suffices to deter repetition of conduct, and (4) an attorney subject to sanctions must have notice of the specific conduct alleged and the standard under which it will be assessed to preserve due process. ECF 617, pp. 5-6. No additional papers were needed for this.

The Response then does not meaningfully engage with any cases cited by Counsel. Petitioners do not deny that close cases are resolved in favor of the signer, (ECF 611, p. 4), dispute the degree of specificity required for a finding of subjective bad faith in the context of sanctions on counsel (*id.*), argue with the prohibition against sanctions based on implicit conduct (*id.*), or analogize to Counsel any of the extreme examples of subjective bad faith that have ocassionally justified the application of sanctions on attorneys under the applicable case law. *Id.*, pp. 5-6. Indeed, the Response does not identify a single case regarding sanctions on counsel that concludes subjective bad faith based solely on filing a motion found to be objectively unreasonable. The Response cites only one case to urge *inferring* bad faith: *Susana v. NY Waterway Tours, LLC*, 662 F. Supp. 3d 477, 495 (S.D.N.Y. 2023). ECF 617, p. 5. That case is unhelpful and inapplicable. In *Susana*, the Court sanctioned the defendant, not counsel, $660 for failing to attend an independent medical examination. *Susana*, 662 F. Supp. 3d at 496. This is nowhere close to the extreme and egregious sanctionable conduct for which courts have imposed sanctions on counsel, as detailed in Counsel's Response. ECF 611, pp. 5-6. Moreover, this inapplicable case cannot stand, as Petitioners want to, for an overarching rule that the general context of a litigation is sufficient to <u>infer</u> subjective bad faith sufficient to sanction counsel, especially in light of the unchallenged limitations courts routinely apply to assess sanctions against lawyers, as detailed in Counsel's Response. ECF 611, pp. 6-7.

## LEGAL ARGUMENT

### A. Petitioners urge the Court to engage in legal error and fail to identify any "misapplication" of the applicable law

The Response begins its analysis by failing to show where, in Petitioners' papers, Counsel were advised of their individual and specific conduct being sanctionable. ECF 617, p. 6. There is no citation to anything in the Sanctions Motion or Sanctions Reply that argues any

conduct by Counsel. *Id*. And the existence of the July 13 Order is beside the point. Petitioners need to show where the Sanctions Motion and the Sanctions Reply identified bad faith conduct by Counsel. Even after the work of Petitioners' extensive legal teams, they have found nothing.

The Second Circuit requires much more. A "sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (citation omitted). The Show Cause Order points to "the same conduct identified in petitioners' papers in support of sanctions against the respondents" as the basis for potential sanctions. ECF 602 at 2. But Petitioners' papers do not identify any specific conduct *from Counsel* (rather than from Respondents). Petitioners not only did not seek sanctions on Counsel, but they also failed to identify any specific conduct from Counsel that could lead to sanctions.

Petitioners' second point further supports Counsel's argument. The "reason to believe sanctions were possible" is crucial with dealing with subjective bad faith. ECF 617, p. 7. And due process is not satisfied by Counsel's Response. If, as Counsel understands it, Petitioners' papers did not identify with specificity the conduct attributed expressly to Counsel that could be sanctionable because it was deemed to be carried out with subjective bad faith, then the first prong prescribed by *Nuwesra* (specific identification of the conduct) was still absent, and thus Counsel's understanding still stands that due process requirements have not been fulfilled.

This is precisely the point flagged by Counsel in their objections on July 30, 2026. ECF 616. The basis for sanctions started with the Sanctions Motion and the Sanctions Reply, and it has now grown to other allegations or filings. By indirectly addressing sanctions on Counsel, Petitioners have added new evidence (an email sent to Petitioners' counsel from a person

unknown to Counsel) (ECF 618-1), characterized the papers forming the basis for the July 13 Order, and have continually shifted the purported basis for sanctions. More briefing does not cure Counsel's identified breach to due process; if anything, it compounds it.

The third point is difficult to follow. Petitioners do not disagree that findings cannot be "implicit." ECF 617, p. 7. There is no attempt to distinguish anything textual in *Rossbach*, nor is there any citation to a case where counsel can be held generally liable for the conduct of its clients in a wide-ranging assessment of the case at large, as Petitioners seek this Court to find. The due process issues would be substantial in any such situation, and Petitioners have left them completely unaddressed. Counsel should not be made to guess as to what conduct over the course of this litigation created the basis for sanctions, particularly when the conduct pointed at was conduct attributed to Respondents, not to Counsel specifically.

The fourth point is a concession that Counsel is correct regarding Rule 11's limitation for an award of Petitioners' attorneys' fees against Counsel. Petitioners then go on to mischaracterize cases or add decisions that do not support their proposition that the Court has discretion to use any remedy when imposing sanctions under its inherent authority. *Chambers* did not support imposition of fee-shifting on any lawyer, but rather only on the party. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). *Yukos*, on the other hand, also does not deal with attorneys' fees on counsel, but instead supports Counsel's request for no sanctions. While Petitioners focus on *Yukos'* underscoring the Court's discretion as a way to argue the Court can choose any remedy, *Yukos* in fact stands for the opposite proposition: the opinion highlights that inherent powers must be exercised "with restraint and discretion," and characterizes them as a rare, residual backstop. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). This is not the foundation for the standard Petitioners advocate.

The fifth point is an implied invitation to sanction Counsel for unnamed actions by Respondents that are outside Counsel's control. Again, there is no attempt by Petitioners to engage with the serious due process issues in seeking sanctions for non-sanctionable conduct and the chilling effect this would have on an any representation. The best reading of the Response is an attempt, based on citation to *Susana*, a case of sanctions against *a party*, to lead the Court into error and rely on impermissible "context" or actions taken by Respondents who are not controlled by Counsel.

**B. The Response offers no meaningful corrections to the factual record**

In a stretched attempt to identify some basis to inappropriately justify imposing liability on Counsel for Petitioners' fees, the Response asserts a "serious mischaracterization" in Counsel's argument that directly cited to the May 7 Order. ECF 617, pp. 8-9. This is largely a re-argument of the Stay Motion. It is difficult to see any "mischaracterization" when Counsel cited to the document and compared it 1PFA. As Respondents have maintained, 1PFA solely granted an order of specific performance of the Shareholders Agreement. The May 7 Order does not do this. It orders direct transfer of the shares. On this point, Counsel relied on recognized legal concepts, which is far from a "serious mischaracterization." There is no argument that the citation was inaccurate, and the Court can choose to weigh the citation as it deems appropriate.

On the second point, the Response takes issue with Counsel's steps to investigate the facts, but it does not identify any subjective bad faith. The Response questions Mr. Porras's access to the records during the last three months, but it does not dispute the existence of ongoing audit or the identity of the auditor (Deloitte), or even the fact that the company had received clean audits in the past and the same result was expected for this year. ECF 320-13, p. 4. Again, there is no bad faith identified anywhere. Even if Respondents or this Court found these

efforts—carried out in the very constrained, less than 24 hour period Counsel had to obtain further information—were insufficient to obtain all financial information necessary to demonstrate the company's profitability, that could amount to insufficient effort, but objectively could not be understood as subjective bad faith.

The third and fourth points relate to Counsel's consultation with Mr. Webster. ECF 617, pp. 10-11. There is no subjective bad faith argued. Rather, there is a difference of opinion on what damages were awarded in 5PFA, which undoubtedly included remedies on the derivative claims. ECF 270-41, p. 199. As such, the BVI Business Companies Act could apply and lead to additional issues at the moment of enforcement in the BVI. The Response goes on to argue that Counsel should have submitted an expert report. ECF 617, p. 11. This is beside the point, and Petitioners have presented no contrary evidence in their favor.

Petitioners identify what they believe to be a misquote by failing to put in quotation marks the part they like about the Webster Declaration. ECF 617, pp. 10-11. This is not a correction to the factual record. Counsel has only argued what Mr. Webster testified to. Indeed, the fact that there are parts of the Webster Declaration they like shows that Mr. Webster submitted an honest opinion that took into account the potential for refusing to recognize 5PFA in the event that there was enforcement in the BVI. Mr. Webster recognized there could be reticence by a court, but he did not rule out the conclusion offered by Respondents—that the entirety of 5PFA could fall. Again, there is no bad faith argued by Petitioners in presenting the Webster Declaration or citing to it later.

Petitioners' reference to the May 7 Order and its treatment of the Guatemalan and Salvadoran experts rehashes the Stay Decision. Again, there is no subjective bad faith alleged.

The Court rejected the Stay Motion in strong terms, but there is no allegation that Counsel somehow engaged in subjective bad faith by relying on experts whose opinions were rejected.

The final point is a blatant attempt to sanction Counsel merely because of their clients' actions or omissions, and because they represent Mr. Hernandez. ECF 617, p. 13. There is no case cited for this proposition, and Counsel have full faith that the Court would not countenance such an argument that would functionally enable judges to use sanctions motions to deprive clients from Counsel. There is no subjective bad faith alleged in any of the corrections, and they are unhelpful to the issue.[1]

## CONCLUSION

Based on the foregoing, Counsel respectfully requests that the Court decline to order any sanctions against them.

Dated: August 17, 2026

Respectfully submitted,

/s/
Rodney Quinn Smith II
(admitted *pro hac vice*)
**GST LLP**
78 SW 7th Street, Suite 500
Miami, FL 33130
Phone: (305) 856-7723
quinn.smith@gstllp.com

/s/
Lucila I. M. Hemmingsen
**Sagiance LLP**
125 Park Avenue, 25th Floor
New York, NY 10017
Phone: (212) 520-6672
lhemmingsen@sagiancellp.com

[1] Petitioners cite a letter that is apparently considered harassing. ECF 617, p. 13. Counsel has no connection to these emails and has no knowledge as to who is behind him. It is unclear why Counsel should be sanctioned for confusing emails sent by unknown people.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this document complies with the word count limitations. There are 2,630 words in this document.

*/s/ Quinn Smith*
Rodney Quinn Smith II