October 19, 2026

**BY CM/ECF & HAND DELIVERY**

The Honorable Lewis A. Kaplan
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: ***Telecom Business Solution, LLC, et al., v. Terra Towers Corp., et al.,***
Civil Action No. 1:22-cv-01761 (S.D.N.Y.)

Your Honor:

We write on behalf of Petitioners Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay), Ltd. ("AMLQ," together with Peppertree, "Peppertree/AMLQ"), to oppose the "emergency" request by twenty-five "non-parties" (the "Non-Parties") to stay the Court's Order compelling Holland & Knight LLP ("H&K") to produce all documents responsive to Petitioners' subpoena that was served on H&K in November 2025 (ECF No. 633). That Order correctly held that Respondent Jorge Alberto Francisco Hernandez Ortiz ("Hernandez") waived privilege, and the Non-Parties' request should be summarily denied. As H&K itself told this Court, "its former client [is] ***Jorge Alberto Francisco Hernandez Ortiz***." (ECF No. 631 at 1 (emphasis added); *id.* (identifying Hernandez alone as its "Former Client")). The Non-Parties offer ***no*** evidence that any of them had an attorney-client relationship with H&K, thus failing to meet their burden under settled Second Circuit law, which alone warrants denial. Indeed, the evidence overwhelmingly shows that this request is yet another transparent attempt to delay and evade enforcement of this Court's judgments and orders. As it has done before in response to such conduct, the Court should therefore award Petitioners their fees for yet again having to be burdened with responding to the Non-Parties' unreasonable and vexatious multiplication of these proceedings and bad-faith litigation conduct.

***Background.*** The Non-Parties are Hernandez's wife Ana, daughter Marcela, son Jorge Hernandez Anguiano, and a long list of LLCs they hold in a Hernandez Family trust, the HF 2018 Dynasty Trust.[1] Each of the Non-Parties is a named defendant in the Napa County action Peppertree filed to collect the more than $300 million judgment against Hernandez. Frank Busch, an attorney who seeks to appear *pro hac vice* in this Court, represents them in the Napa County action, where they have now sought a stay to bring that litigation to a halt on the heels of bankruptcy petitions filed by two of the defendants there—Non-Parties Calistoga Vintner Services LLC and Knights Valley California LLC—entities associated with the Hernandez Family's wine business.

***Argument.*** After being served with Petitioners' subpoena nearly a year ago, H&K identified Hernandez as its former client and the privilege holder and, on July 24, 2026, provided the responsive documents to Hernandez's counsel, GST LLP, for privilege review. (ECF No. 631,

[1] *See* **Appendix A** hereto for a glossary of the 25 non-parties and their relation to Hernandez.

at 1, 3.) In the nearly three months since, Hernandez has neither served a privilege log nor otherwise asserted any privilege concerning any of the H&K documents. Hernandez, through his counsel in these proceedings, received notice of Petitioners' October 6, 2026 Motion to Compel, and neither opposed it nor contested Petitioners' showing of waiver. (*See* ECF Nos. 632, 633.) The Court therefore properly held that Hernandez waived privilege and ordered H&K to produce the responsive documents by October 16. (ECF No. 633, ¶¶1-2.)

It is black-letter law in this Circuit that a party asserting the attorney-client privilege bears the burden of establishing each of its elements—including the existence of an attorney-client relationship—through competent evidence such as engagement letters, retainer agreements, billing records, or sworn affidavits. *See, e.g.*, *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting"). As the Second Circuit has held, "[t]hat burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (citation omitted). The failure to offer actual evidence of an attorney-client relationship is fatal to a privilege claim. *See id.* (affirming rejection of privilege claim for lack of "required factual support"); *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (holding that a client failed to produce any evidence, such as a retainer agreement, to meet its burden of establishing attorney client privilege); *United States v. Stern*, 511 F.2d 1364, 1667 (2d Cir. 1975) (to succeed on a claim of privilege, a claimant is obliged to prove a relationship with an attorney). Notably, the Non-Parties offer no such evidence—indeed, no proof of any kind—that any one of them holds the privilege they seek to assert. To the contrary, they concede that H&K's invoices were billed "c/o Jorge Hernandez." (*Id.*) This was not merely an "administrative notation" or an "isolated, inadvertent error" (ECF No. 635 at 1, 2) (citation omitted)—H&K itself identified Hernandez as the privilege holder and represented to this Court that Hernandez alone was its "Former Client." (ECF No. 631 at 1 (defining "Former Client" as only "Jorge Alberto Francisco Hernandez Ortiz" and stating that the privilege decision "rests squarely with H&K's Former Client and his current litigation counsel, GST LLP").) Indeed, evidence produced in these proceedings confirms that it was Hernandez who was at all times directing H&K.[2] *See, e.g.*, **Exs. 1-8**. The Non-Parties have produced nothing to contradict this overwhelming evidence.

That failure of proof is dispositive, and it renders the Non-Parties' authorities beside the point. Every case they cite presupposes precisely what the Non-Parties have not shown: that the party resisting disclosure actually held the privilege. (ECF No. 635 at 2.) None holds, or even suggests, that a stranger to the attorney-client relationship may block a court-ordered production simply by asserting, without evidence, that the privilege is its own.

The Non-Parties also claim that neither they nor their counsel received notice of the subpoena—though they claim to have somehow miraculously learned of the Order compelling

[2] The fact that the anticipated H&K production "includes over 2,000 documents hitting on the term 'Illumination Technologies'" (ECF No. 635 at 1) is irrelevant and does nothing to show that any one of the three Illumination Technologies LLCs was, in fact, a client entitled to assert privilege. If anything, the obvious inference is that those documents discuss these entities in the context of the assets being placed into trust *by Hernandez*.

H&K's production. (ECF No. 635 at 1.) That claim is both irrelevant, because the Non-Parties were not H&K's clients, and disingenuous (at best). Mr. Busch—who purports to represent only the Non-Parties before this Court—filed invoices with Napa County court identifying ***Hernandez*** as his client. **Ex. 9**.[3] This flatly contradicts the claim of counsel for the Non-Parties (including Mr. Busch) to this Court that they do not represent Respondent Hernandez and the suggestion they were not on notice the subpoena to H&K. (ECF No. 635 at 2 (referring to "Respondent Jorge Hernandez, whom undersigned counsel do not represent").)

The Non-Parties' unsubstantiated claim that Hernandez "has no ownership interest in any of the Non-Parties" is both beside the point and simply an extension of Hernandez's obstinate refusal to confront reality and persistent attempts to avoid it. (ECF No. 635 at 2.) Indeed, this Court has already declined to "afford any weight" to a similar claim by Marcela and Jorge Jr. that their father "'never' has had a membership interest in" two of the Non-Parties. (ECF No. 486 at 7.) And this Court has thoroughly rejected the same gambit with respect to Terra.[4] Although the point is ultimately immaterial here—the Non-Parties' request fails for want of any evidence that they hold the privilege they assert—the Court should reject the identical shell game that Hernandez continues to play with respect to his trust and assets.

***Conclusion.*** The Non-Parties do not dispute that Hernandez failed to assert privilege, nor do they explain his failure either to timely assert privilege or to oppose the Motion to Compel. Having failed to show that they hold any privilege, the Non-Parties have no right to review H&K's files or to delay a court-ordered production by yet another 60 days—relief that would serve only to further obstruct Petitioners' efforts to collect on this Court's judgment.

For these reasons, the Court should deny the Non-Parties' request and reaffirm that Order, compelling H&K to produce all of the remaining documents responsive to the subpoena forthwith. The Court should also award Petitioners their reasonable attorneys' fees incurred in opposing the Non-Parties' unsupported, misleading, and frivolous "emergency" request. 28 U.S.C. § 1927; *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) ("the court has inherent power to sanction parties and their attorneys"); *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 CIV. 6441(LAK), 2003 WL 134989, at *5 (S.D.N.Y. Jan. 17, 2003) ("the district court enjoys broad

---

[3] Petitioners filed notice of their intent to serve the subpoena on H&K and several other Hernandez proxies on this Court's docket on November 20, 2025. (ECF No. 489.) It simply defies credulity that Mr. Busch and the Non-Parties did not receive notice of the H&K subpoena then (or shortly after) for several reasons. First, Mr. Busch represented several other recipients of the November 2025 subpoenas in objecting to them. *See* **Ex. 10** (group of objections served). This is the same time period for which Mr. Busch listed Mr. Hernandez as his client in invoices submitted in Napa County. *See* **Ex. 9**. Second, Hernandez—whose wife and eldest children are among the Non-Parties—received notice of the subpoenas via ECF notifications to his counsel at GST LLP. Those notifications were also sent to Danielle Kirby—Terra's General Counsel, who "as an associate at Holland & Knight LLP, . . . represented Terra in the negotiation of the parties' operative agreements in 2015" (ECF No. 229 ¶ 2)—who receives ECF notifications in this case sent to Mr. Smith at her ***Illumination Technologies*** email address (dkirby@illuminationtechnologies.com). *See* **Ex. 11**.

[4] In its May 7, 2026 Opinion, the Court rejected Hernandez's claim that he had given up control of Terra when he "purported to resign from the Company's Board at the supposed direction of his family," finding that he "continued to direct Terra's conduct even after February 2023," and that he "offered no documentary evidence proving that he does not retain beneficial ownership and control of Terra regardless of how many degrees of separation or even informality might exist between him and that interest and power." (ECF No 569, at 51, 53.)

discretion in determining whether to impose sanctions") (Kaplan, J.).

Respectfully submitted,

/s/ *Gregg L. Weiner*
Gregg L. Weiner

*Counsel for AMLQ Holdings (Cay), Ltd.*

/s/ *Michael N. Ungar*
Michael N. Ungar

*Counsel for Telecom Business Solution, LLC and LATAM Towers, LLC*

/s/ *Rahul Mukhi*
Rahul Mukhi

*Counsel for Telecom Business Solution, LLC and LATAM Towers, LLC*

CC: All Counsel of Record (via CM-ECF)
Matthew R. DiBlasi, Esq., Counsel for Non-Party Holland & Knight LLP (via email, without Exhibits)